10:50 AM

# In The United States Court of Federal Claims

RECEIVED OVER THE COUNTER

APR 19 2007

THE OFFICE OF THE CLERK
U.S. COURT OF FEDERAL CLAIMS

Plaintiff(s) or Petitioner(s) The Ravens Group, Inc. 07-243 C

If this is a multi-plaintiff case, pursuant to RCFC 20(a), please attach an alphabetized, numbered list of all plaintiffs.

Name of the attorney of record (See RCFC 83.1(c)): Daryle A. Jordan

Firm Name: Patrick Henry LLP

Post Office Box: N/A

Street Address: 7619 Little River Turnpike, Ste 340

City-State-Zip: Annandale, Virginia 22003

Telephone & Facsimile Numbers: 703-256-7754; 703-256-7883 (fax)

Is the attorney of record admitted to the Court of Federal Claims Bar? ☒ Yes ☐ No

Does the attorney of record have a Court of Federal Claims ECF account? ☒ Yes ☐ No

If not admitted to the court or enrolled in the court's ECF system, please call (202) 357-6402 for admission papers and/or enrollment instructions.

Nature of Suit Code: 1 4 0

Select only one (three digit) nature-of-suit code from the attached sheet and if numbers 118, 134, 226, 312, 356, or 528 are used, please explain.

Agency Identification Code: D C D

See attached sheet for three-digit codes.

Amount Claimed: $ N/A

Use estimate if specific amount is not pleaded.

Disclosure Statement:

Is a RCFC 7.1 Disclosure Statement required? ☒ Yes ☐ No

If yes, please note that two copies are necessary.

Bid Protest:

Indicate approximate dollar amount of procurement at issue: $ 22,000,000

Is plaintiff a small business? ☒ Yes ☐ No

Vaccine Case:

Date of Vaccination: N/A

Related Cases:

Is this case directly related to any pending or previous case? ☐ Yes ☒ No

If yes, you are required to file a separate notice of directly related case(s). See RCFC 40.2.

IN THE UNITED STATES COURT OF FEDERAL CLAI
(Bid Protest)

FILED
APR 1 9 2007
U.S. COURT OF FEDERAL CLAIMS

| | |
|---|---|
| THE RAVENS GROUP, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 07-243 C |
| THE UNITED STATES | ) |
| Defendant. | ) |

**COMPLAINT FOR**
**INJUNCTIVE AND DECLARATORY RELIEF**

**COMES NOW** Plaintiff, The Ravens Group, Inc. ("The Ravens Group"), by and through the undersigned counsel, and as its Complaint hereby protests the failure of the United States Defense Intelligence Agency ("DIA"), through its Contracting Officer, Cheong J. Chon at the agency's contracting office at Bolling Air Force Base, Washington, D.C., to obey the requirements of Federal procurement law, including the Federal Acquisition Regulation ("FAR") by announcing the agency's intention to award a janitorial/custodial services contract to Rowe Contracting Services, Inc. ("Rowe"). DIA's actions are arbitrary, unreasonable, and contrary to well-established procurement law.

The Ravens Group also protests DIA's bad faith in its award of Option Year 2 of the Contract to The Ravens Group in November 2006 without any reservation or condition, inexplicably followed by its award one (1) month later in December 2006, of the same contract requirement to Rowe without any explanation or discussion with The Ravens Group. DIA's

award to Rowe also condones Rowe's use of unfair, unethical, and potentially unlawful business practices to The Ravens Group's competitive disadvantage.

Additionally, DIA's award to Rowe represents the Government's failure to correct deficiencies in its evaluation methodology and process in that it is the sixth (6th) "best value" award of this single procurement to three (3) different contractors, applying the same work requirements, evaluation factors and award criteria, and is thus arbitrary and unreasonable.

Moreover, under the totality of the circumstances, the only reasonable and fair remedy for all of the contractors is for DIA to begin this procurement action anew, including the issuance of a new solicitation, receipt of new proposals, establishment of a new competitive range, and establishment of a new source selection authority and source selection decision. Among other specific prejudicial actions that adversely impacted this procurement, DIA: 1) failed to provide required notices to The Ravens Group; 2) awarded this single procurement six (6) times to three (3) different contractors; 3) failed to take proper corrective action in response to substantial and compelling evidence of Rowe's unfair and potentially unethical acquisition and use of information concerning The Ravens Group's proposal; and 4) breached its duty of good faith and fair dealing when it awarded an Option for The Ravens Group to continue performing the custodial/janitorial services Contract in November 2006 without any reservation and awarded a contract to Rowe for identical services covering the same period of time in December 2006. In addition, because NOSLOT was not eligible to protest, its original protest of The Ravens Group's contract was invalid and *void ab inicio*. Thus, the original protest of the award to The Ravens Group was unlawful at its inception. Finally, under the totality of circumstances, including the prejudicial actions taken by DIA, Rowe's unfair and potentially unlawful business practices, and the substantial change in scope of the requirement since DIA's issuance of the

original solicitation two (2) years ago, fairness and the integrity of the procurement system requires DIA to commence this procurement action anew.

By this filing, The Ravens Group seeks to enjoin DIA from terminating its contract—Contract No. HHM402-06-C-0026 (the "Contract"), and from permitting the performance of any contract awarded to Rowe or any other offeror other than the Plaintiff to perform janitorial/custodial services at DIA's Bolling Air Force Base facility. Additionally, The Ravens Group seeks a ruling from the Court that the original award of the Contract to The Ravens Group was proper and that the termination of The Ravens Group's Contract and award to Rowe would be an abuse of discretion, or that DIA cannot use any funds obligated to the performance of The Ravens Group's Contract in the performance of any contract awarded to Rowe.

In the alternative, The Ravens Group seeks a ruling that, as a result of DIA's mishandling of this procurement action, including the improper acquisition and use by Rowe, of proprietary and confidential information of The Ravens Group, DIA is required to conduct a new procurement action, including issuance of a new solicitation, receipt and review of new proposals, and establishment of a new source selection plan and source selection decision.

Finally, The Ravens Group requests a ruling that the business tactics Rowe employed against The Ravens Group were unfair, unethical, or unlawful, and, as a result, Rowe should be disqualified from any further participation in this procurement action.

**Parties**

1. Plaintiff, The Ravens Group is a corporation with its principal office located in Lanham, Maryland. The company is a Service-disabled Veteran-owned small business, and provides general contracting and facilities management services to government and commercial clients, among other services.

2. The Ravens Group was founded by Lieutenant General (Retired) Joe N. Ballard, its sole owner, President and Chief Executive Officer. General Ballard served many years as a commissioned officer in the United States Army, including his final tour of duty as Commander of the Corps of Engineers, the Government's senior civil engineer and construction official, a position to which he was appointed by the President of the United States.

3. The Defendant is the United States Government, acting through the Defense Intelligence Agency.

**Jurisdiction**

4. Jurisdiction in this Court is based on the Tucker Act, 28 U.S.C. § 1491.

**Factual Assertions**

5. On April 14, 2005, DIA issued Request for Proposal ("RFP") No. HHM402-05-R-0017 for janitorial/custodial services at its Bolling Air Force Base facility.

6. The RFP required the successful offeror to provide janitorial and custodial services at DIA's high security facilities located at Bolling Air Force Base. *See* RFP (Overall Objectives). Among other significant requirements, the RFP required the successful offeror to have at least twenty percent (20%) of its personnel cleared with a Top Secret—Special Compartmented Information ("TS-SCI") clearance prior to award and a minimum of sixty percent (60%) of its personnel cleared with a top secret clearance within six (6) months after contract award. *See* RFP, p. 6. As a result of the attacks of September 11, 2001, and the overhaul of government security requirements, the demand and expense for cleared personnel increased enormously.

7. In accordance with the evaluation criteria of the RFP, award of the contract was to be made to "the responsible offeror whose offer, conforming to the solicitation, is determined to be the 'best value' to the Government." *See* RFP, p. 40. DIA awarded the Contract to The Ravens

Group on June 28, 2005, and The Ravens Group began performance of the Contract on or about July 1, 2005. Since June 28, 2005, the date of original award to The Ravens Group, DIA has awarded two (2) option periods of the Contract to The Ravens Group, based on its determination, as required by Federal Acquisition Regulation Subpart 17.207, that the award of those options to The Ravens Group represented the "most advantageous method of fulfilling the Government's need, price and other factors considered."

8. On June 29, 2005, one (1) day following the original award to The Ravens Group, NOSLOT, Inc. ("NOSLOT"), a competing contractor for the procurement, filed a protest of the award to The Ravens Group at the Government Accountability Office ("GAO"). DIA, however, did not notify The Ravens Group of the protest until on or about August 30, 2005. Significantly, between the date of original award and the date DIA finally notified The Ravens Group of NOSLOT's protest, The Ravens Group made substantial investments in personnel, equipment, vehicles, and facilities in reasonable reliance of a long-term contractual relationship to perform custodial/janitorial services at DIA's Bolling Air Force Base facility.

9. By email, dated August 11, 2005, DIA notified The Ravens Group for the first time of DIA's intent to re-evaluate "all technical proposals under the referenced Request for Proposals." DIA's August 11th email did not notify The Ravens Group that a protest had been filed or otherwise provide any explanation regarding its decision to re-evaluate the offerors' proposals.

10. By reply email, dated August 15, 2005, The Ravens Group questioned the bases for DIA's decision to re-evaluate the proposals, and the lack of any prior notice from DIA regarding this action.

11. In an undated communication to The Ravens Group, received by The Ravens Group on August 30, 2005, DIA notified The Ravens Group for the first time of NOSLOT's protest of

DIA's original award to The Ravens Group. In its notification, DIA apologized for the late notification of NOSLOT's protest, a violation of FAR § 33.104, which required DIA to "immediately" notify The Ravens Group following DIA's receipt of notice from GAO that a protest had been filed. As a result of DIA's failure to notify The Ravens Group of NOSLOT's protest in a timely manner, The Ravens Group incurred substantial expense for recruitment, training, and acquisition of security clearances for the personnel required to perform the Contract.

12. NOSLOT, the only contractor to protest DIA's original award to The Ravens Group, was not eligible for award when it filed its protest of DIA's original award to The Ravens Group, because it did not possess the "Top Secret" security clearance required by paragraph 24 (Clause 52.999-4031d) of the Solicitation as amended. But for NOSLOT's protest, the award to The Ravens Group would not have been disturbed. NOSLOT had no standing to protest the original award to The Ravens Group; thus, its protest should be deemed *void ab initio*, and the award to The Ravens Group should be declared proper, conclusive, and final.

13. On December 20, 2005, approximately four (4) months following DIA's notification to The Ravens Group of NOSLOT's protest, DIA executed Option Year 1 of the Contract, extending The Ravens Group's performance from October 31, 2005, through October 31, 2006. DIA made the award without any reservation or condition. As a requirement and precondition of awarding Option Year 1 of the Contract to The Ravens Group, DIA determined in accordance with FAR Subpart 17.207, that award of the option to The Ravens Group represented the "most advantageous method of fulfilling the Government's need, price, and other factors . . . considered."

14. In reliance on DIA's award of Option Year 1 of the Contract to The Ravens Group, The Ravens Group continued to incur substantial expense for recruitment, training, and acquisition of security clearances for the many personnel required to perform the Contract.

15. On March 23, 2006, nine (9) months following the original contract award, DIA notified The Ravens Group that it had completed the corrective action, and had determined that the Contract would be awarded to Rowe.

16. The Ravens Group filed a protest with GAO, dated March 27, 2006. In response, DIA decided to take further corrective action by re-evaluating all of the proposals again. As a result of DIA's decision to take corrective action, GAO dismissed the protest.

17. During the pendency of DIA's continued corrective action and re-evaluation of the proposals, officials of The Ravens Group learned for the first time, that Rowe had used unfair, unethical, and potentially unlawful business tactics to obtain confidential and proprietary information about The Ravens Group, including information about The Ravens Group's recruiting, staffing and scheduling methodology, and pricing, which it [Rowe] used to enhance its best and final proposal, and which resulted in the Contract award to Rowe on March 23, 2006.

18. On March 27, 2006, during a discussion at the DIA facility, Mr. Rowe admitted to Milton Grant, The Ravens Group Director of Facilities Management and Security, that Rowe had obtained confidential and proprietary information about The Ravens Group. Mr. Rowe admitted that he had used this information to enhance Rowe's revised proposal prior to submitting it to DIA in response to DIA's request for new best and final offers incident to DIA's re-evaluation of the proposals in response to the NOSLOT protest.

19. Specifically, Mr. Rowe admitted the following: 1)Rowe obtained information regarding The Ravens Group's technical and pricing proposal, including information regarding The Ravens

Group's staffing methodology, a critical aspect of The Ravens Group's technical proposal; 2) he [Mr. Rowe] knew that the only reason Rowe did not originally win award of the contract was its [Rowe's] failure to submit a staffing and work schedule like the one The Ravens Group submitted; 3) Rowe used the information regarding The Ravens Group technical proposal, and essentially copied The Ravens Group's staffing scheme to enhance its own technical proposal; 4) Rowe used the information it obtained regarding The Ravens Group price to underbid The Ravens Group's pricing proposal by approximately $3,000,000; and 5) but for its submission of a revised staffing schedule like the one submitted by The Ravens Group and the reduction of its price based on the knowledge it acquired regarding The Ravens Group's price proposal, Rowe would not have received the March 23, 2006, contract award. Mr. Rowe later repeated this conversation in front of other Ravens Group personnel, and also stated that he had obtained access to the Joint Personnel Adjudication System ("JPAS"), a Department of Defense automated confidential network for monitoring security clearances, and retrieved private information regarding The Ravens Group's personnel. Other actions by Rowe, detailed below, corroborate Mr. Rowe's statements to The Ravens Group's officials, and provide compelling evidence of Rowe's motive, opportunity, and willingness to employ unfair and unethical information gathering techniques, to gain an unfair competitive advantage over The Ravens Group.

20. On April 3, 2006, Ernest Fields, a Ravens Group's Project Manager at the DIA Bolling Air Force Base facility, informed The Ravens Group that Mr. Rowe had made cash payments to him and another Ravens Group Manager, Wendy Scott, in exchange for information regarding The Ravens Group.

21. On April 14, 2006, Monica Belanger, a Ravens Group employee, was informed by her Security Manager that a routine review of her JPAS file had revealed that she was employed by Rowe. This revelation surprised and greatly concerned Ms. Belanger, because she had never worked for Rowe; had no knowledge of Rowe; and had not given her permission to Rowe to access or alter her security file. Following its own investigation to determine whether any other Ravens Group personnel had been compromised, The Ravens Group learned that Rowe had entered the JPAS and transferred all of The Ravens Group's personnel security clearance records to Rowe. This was done without The Ravens Group's knowledge or authorization or the knowledge or authorization of any of The Ravens Group's personnel.

22. The above information regarding Mr. Rowe's discussions with Ravens Group officials is documented in sworn statements prepared and executed by Mr. Grant and Jeff Roberson, an Executive Vice President at The Ravens Group (*see copies attached, Exhibits A-D*). The Ravens Group's concerns and the evidence corroborating its concerns were provided to DIA; however, DIA never investigated Rowe's conduct.

23. The sworn statements and Mr. Rowe's own actions provide substantial, compelling, and uncontroverted evidence that Rowe used unfair, improper, and potentially unlawfully means to obtain confidential and/or proprietary information about The Ravens Group to gain an unfair competitive advantage vis-à-vis The Ravens Group.

24. Based on the substantial evidence of Rowe's questionable business tactics, The Ravens Group filed a series of additional protests at GAO between April and June 2006. GAO incorrectly determined that Rowe's unfair business tactics, if true, occurred after all of the proposals had been received by DIA and therefore were not prejudicial, and that DIA's corrective action would cure The Ravens Group's concern. GAO's conclusion, however, is expressly

refuted by Mr. Rowe's statements that Rowe used information regarding The Ravens Group's proposal, to enhance its own proposal and win the contract.

25. On or about September 13, 2006, DIA awarded this same procurement to NOSLOT, and notified The Ravens Group of the termination of its [The Ravens Group's] existing contract. The award to NOSLOT represented DIA's fourth (4th) award of this single procurement to three (3) different contractors. In each case, DIA determined that the award represented the "best value' to the Government.

26. The Ravens Group protested the award to NOSLOT on September 23, 2006. In response to The Ravens Group's September 23rd protest, DIA notified The Ravens Group that it would again take corrective action, and re-evaluate the offerors' proposals again. DIA, however, did not conduct discussions with The Ravens Group or allow The Ravens Group to revise its proposal even though DIA possessed compelling evidence that Rowe had used information it obtained from The Ravens Group to enhance its [Rowe's] proposal. GAO subsequently dismissed The Ravens Group's protest as being of "purely academic interest."

27. In a letter to The Ravens Group, dated October 12, 2006, DIA rescinded its termination for convenience of the award to The Ravens Group and notified The Ravens Group that its current contract would remain in effect until "further notice."

28. By Contract Modification effective November 2, 2006, DIA provided The Ravens Group the "further notice" it promised in its October 12th letter. By Contract Modification P00009, DIA exercised Option Year 2 of the Contract, and awarded Option Year 2 of the Contract—the fifth (5th) award of this procurement, to The Ravens Group without any reservation or condition.

29. Notably, in accordance with FAR Subpart 17.207, DIA determined that the award to The Ravens Group represented the "most advantageous method of fulfilling the Government's need,

price and other factors considered." This determination by DIA represented the third time in this procurement action, that DIA had determined The Ravens Group to represent the "best value" to the Government.

30. By letter dated December 19, 2006, received by The Ravens Group on December 29, 2006, DIA notified The Ravens Group of its decision to award the Contract to Rowe. This award represented the sixth (6th) award of this single procurement. The Ravens Group learned of the new award decision in the afternoon of December 29, 2006, just hours before the onset of a long New Years holiday weekend. Notably, DIA faxed the notice to a fax number that The Ravens Group had advised DIA on numerous occasions was not the correct fax number to which to send information regarding the Contract.

31. DIA's submission of the notice using an incorrect fax number, delayed The Ravens Group receipt of the award notice and deprived The Ravens Group of the opportunity to request and receive a debrief.

32. DIA's December 19th notice of award to Rowe states that Rowe's contract price, including the base and all options is $19,217,360.00. This is the same contract price Rowe proposed in its best and final offer to perform the entire contract, including options, in connection with the corrective action DIA undertook in response to NOSLOT's protest of DIA's original award of the Contract to The Ravens Group.

33. Given the passage of time and The Ravens Group's performance of the base period, Option Year 1 and a substantial part of Option Year 2 of the Contract, the scope and price of the requirement has changed substantially. Thus, DIA's award of a contract to Rowe for this requirement at the same price Rowe proposed for performance of the entire contract, including all option periods, is unreasonable and in violation of the Competition in Contracting Act.

Likewise, allowing Rowe to modify its price or other aspects of its proposal without allowing The Ravens Group the opportunity to revise its proposal, would also violate the requirement for competition.

**COUNT I**

(Unfair Business Practices)

34. Plaintiff incorporates by reference the allegations in paragraphs 1 to 33 above.

35. Rowe admitted to obtaining information regarding The Raven Group's technical and pricing proposal.

36. Rowe's acquisition of the confidential and/or proprietary information belonging to The Ravens Group was not authorized.

37. Rowe's use of the confidential and/or proprietary information was not authorized.

38. Rowe used this information to gain a competitive advantage over The Ravens Group for the procurement.

39. But for Rowe's use of these unfair, unethical, and potentially unlawful business tactics, it would not have won award of the Contract.

**COUNT II**

(Irrational Contract Award)

40. Plaintiff incorporates by reference the allegations presented in paragraphs 1 to 39 above.

41. Since June 2005, DIA has awarded this single procurement a total of six (6) times to three (3) different contractors, under the same solicitation, under the same scope of work, and applying the same evaluation factors.

42. In three (3) separate instances, DIA determined that award to The Ravens Group represented the "best" or "most advantageous" contract award to the Government.

43. In November 2006, DIA executed Option Year 2 of the Contract with The Ravens Group. In exercising the option, DIA was required under FAR Subpart 17.207, to make a finding that award of the option represented the "best value" to the Government.

44. In awarding the option to The Ravens Group, DIA did so without any reservation or qualification.

45. In December 2006, just one (1) month later, DIA inexplicably notified The Ravens Group that it had determined that Rowe now represented the "best value" to the Government.

46. Given the prior awards to The Ravens Group on the basis that award to The Ravens Group represented the "best value" to the Government, including its most recent award in November 2006, the subsequent award to Rowe in December 2006, was inexplicable, irrational, and unreasonable.

47. DIA's actions were prejudicial to The Ravens Group, and The Ravens Group respectfully requests that the Court declare that DIA's actions are irrational, unreasonable, and in violation of law and regulation and enjoin DIA from terminating The Ravens Group's Contract, or from beginning or continuing performance of any other contractor under Solicitation No. HHM402-05-R-0017.

**COUNT III**

(DIA's Breach of the Implied Duty of Good Faith and Fair Dealing)

48. Plaintiff incorporates by reference the allegations presented in paragraphs 1 to 47 above.

49. In its October 12, 2006, letter, DIA notified The Ravens Group that its contract would remain in effect until further notice.

50. In November 2006, DIA provided The Ravens Group the "further notice" it referenced in its October 12th letter, by awarding The Ravens Group the second option year of the Contract.

51. At the time of the execution of the Contract Modification exercising Option Year 2, DIA did not advise The Ravens Group that it was continuing to re-evaluate other proposals, and specifically, never advised The Ravens Group of its intent to terminate The Ravens Group's Contract before the expiration of the second option period of the Contract.

52. The Contract Modification exercising Option Year 2 did not express any reservations or qualifications whatsoever.

53. The Ravens Group relied on DIA's words and actions that DIA's award of Option Year 2 to The Ravens Group was the agency's "further" and final determinative regarding this procurement.

54. In December 2006, a month after awarding the Contract to The Ravens Group, and without any discussion, DIA notified The Ravens Group of its decision to award the same procurement to Rowe.

55. DIA did not re-open discussions with The Ravens Group, and did not communicate with The Ravens Group until it notified The Ravens Group of the award to Rowe, notwithstanding The Ravens Group's several phone calls and written communications to DIA.

56. DIA did not notify The Ravens Group of a "Contracting officer's Notice of Corrective Action" that it issued on October 24, 2006. The record reveals that DIA provided the notice to Rowe, but did not notify The Ravens Group of the corrective action.

57. DIA has a duty to act in good faith, treat contractors fairly, and conduct the procurement in a fair manner.

58. By its arbitrary and capricious decision to award a contract to Rowe, DIA has breached its duty of good faith and fair dealing it owed The Ravens Group as an offeror under the existing procurement.

59. Based on these circumstances, DIA's actions are not justified and Plaintiff's protest should be sustained.

60. DIA's actions were prejudicial to The Ravens Group, and The Ravens Group respectfully requests that the Court declare that DIA's actions are in violation of law and regulation and enjoin DIA from terminating The Ravens Group's Contract, or from beginning or continuing performance of any other contract under Solicitation No. HHM402-05-R-0017.

**COUNT IV**

(Violation of FAR Notification Requirements)

61. Plaintiff incorporates by reference the allegations presented in paragraphs 1 to 60 above.

62. In violation of FAR § 33.104, DIA did not promptly notify The Ravens Group of NOSLOT's protest in June 2005.

63. In violation of FAR § 33.104, DIA did not promptly notify The Ravens Group of NOSLOT's protest in September.

64. DIA did not notify The Ravens Group of a "Contracting officer's Notice of Corrective Action" that it issued on October 24, 2006 even though the record reveals that DIA provided the notice to Rowe.

65. DIA's failure to provide the above-referenced notices violate the FAR and procurement law.

66. DIA's actions were prejudicial to The Ravens Group, and The Ravens Group respectfully requests that the Court declare that DIA's actions are in violation of law and regulation and enjoin DIA from terminating The Ravens Group's Contract, or from beginning or continuing performance of any other contract under Solicitation No. HHM402-05-R-0017.

## COUNT V

(Unfair Business Practices)

67. Plaintiff incorporates by reference the allegations presented in paragraphs 1 to 66 above.

68. Rowe engaged in unfair business practices, including the making of cash payments to Ravens Group management personnel for the purpose of obtaining confidential and/or proprietary information regarding The Ravens Group.

69. Scott Rowe, Rowe's President admitted to obtaining information about The Ravens Group's staffing and pricing methodology, that it used against The Ravens Group in its [Rowe's] best and final offer to DIA in connection with DIA's re-evaluation of the procurement award following NOSLOT's protest.

70. Evidence of Rowe's unfair business practices is documented in sworn statements by Ravens Group's officials. The allegations and sworn statements have not been refuted by credible evidence.

71. Rowe has a history of using questionable tactics to obtain information regarding The Ravens Group.

72. Rowe's unfair business practices have severely prejudiced The Ravens Group.

73. DIA's actions were prejudicial to The Ravens Group, and The Ravens Group respectfully requests that the Court declare that DIA's actions are in violation of law and regulation and enjoin DIA from terminating The Ravens Group's Contract, or from beginning or continuing performance of any other contract under Solicitation No. HHM402-05-R-0017.

## COUNT VI

(Initial Award to The Ravens Group Was Proper)

74. Plaintiff incorporates by reference the allegations presented in paragraphs 1 to 73 above.

75. The original award to The Ravens Group was proper.

76. NOSLOT's protest of the original award to The Ravens Group was invalid as NOSLOT was not an interested party because it was ineligible for award because its personnel did not possess the requisite security clearances. Since NOSLOT was the only protester of the original award to The Ravens Group, and its protest was *void ab inicio*, the original award to The Ravens Group was proper and should be sustained.

77. Subsequent re-evaluations of the procurement were therefore invalid.

78. DIA's actions were prejudicial to The Ravens Group, and The Ravens Group respectfully requests that the Court declare that DIA's actions are in violation of law and regulation and enjoin DIA from terminating The Ravens Group's Contract, or from beginning or continuing performance of any other contract under Solicitation No. HHM402-05-R-0017.

**COUNT VII**

(Totality of the Circumstances)

79. Plaintiff incorporates by reference the allegations presented in paragraphs 1 to 78.

80. DIA made six (6) separate award determinations that three (3) different contractors provided the "best value" to the Government.

81. DIA failed to provide The Ravens Group required notices of protests, of corrective action taken, etc. in violation of Federal procurement law and regulations.

82. DIA allowed Rowe, a Ravens Group competitor, access to The Ravens Group's personnel and work site during the pendency of DIA's re-evaluation of its award decision.

83. DIA allowed Rowe's use of unfair business practices, to obtain confidential and/or proprietary information about The Ravens Group's technical and pricing methodologies, which

Rowe then used to enhance its own proposal to the competitive disadvantage of The Ravens Group.

84. In its October 12, 2006, letter, DIA directed The Ravens Group to continue performing the Contract pending "further notice." In November 2006, DIA provided the "further notice" when it awarded The Ravens Group Option Year 2 of the Contract without reservations or conditions.

85. Given the temporal proximity between the October 12, 2006, communication and DIA's award of a new option period in November without any reservation or condition, The Ravens Group was entitled to rely upon DIA's words and actions, that DIA had made a final determination that The Ravens Group would keep the award of the DIA contract.

86. The Ravens Group relied to its detriment on DIA's words and actions, that DIA had in fact determined that award to The Ravens Group represented the best value to the Government, and that The Ravens Group therefore would be allowed to complete its performance of the Contract.

87. DIA's actions were prejudicial to The Ravens Group, and The Ravens Group respectfully requests that the Court declare that DIA's actions are in violation of law and regulation and enjoin DIA from terminating The Ravens Group's Contract, or from beginning or continuing performance of any other contract under Solicitation No. HHM402-05-R-0017.

**Relief Requested**

**WHEREFORE** Plaintiff respectfully requests a judgment against the United States of America and further requests:

1. That the Court enjoin DIA from terminating The Ravens Group Contract.
2. That the Court declare that DIA's award of Contract No. HHM402-06-C-0026, to

The Ravens Group was proper, and that therefore The Ravens Group should be permitted to complete performance.

3. That the Court enjoin DIA from pursuing its announced course of action of awarding a contract for custodial/janitorial services at DIA's Bolling Air Force facility to Rowe.

4. Or in the alternative enjoining DIA from employing the funds obligated to the performance of Contract No. HHM402-06-C-0026 in the performance of any contract awarded to Rowe.

5. That in any event The Ravens Group be awarded its reasonable cost and attorneys' fees, its expectation damages arising from the termination of its Contract, and such further relief as is determined just and fair.

Date: 4-18-07

Respectfully submitted,

By: ______________________

Daryle A. Jordan
Patrick Henry LLP
7619 Little River Turnpike
Suite 340
Annandale, Virginia 22003
703.256.7754
703.256.7883 (fax)
Counsel for Plaintiff

The Ravens GROUP INC.
*We Can Do That!*

# S-W-O-R-N S-T-A-T-E-M-E-N-T

This statement reflects a conversation that took place on Monday, March 27, 2006, inside the Defense Intelligence Agency (DIA) at Bolling Air Force Base in Washington, DC. I, Milton James Grant III (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), was introduced to Scott E. Rowe, of Rowe Contracting Services Inc., by The Ravens Group's Contracting Offices Technical Representative (COTR) Ms. Mary Hennigan. Scott introduced himself as the company's president. Scott and I talked about the fact that he was being awarded the custodial contract we currently possessed as a result of an earlier protest lodged by an unknown company. Scott then stated that he had bid about $3,000,000.00 overall less than we did for the contract, and the only reason he did not win the original bid was because The Ravens Group submitted a work schedule and he did not. I told Scott I understood his position and that business is business. Scott began to tell me how he had Mrs. Verlene Cameron (The previous company's Project Manager) in his pocket feeding him information. Scott then stated he knew of our company in great detail. He stated that initially he thought of protesting the original contract but decided against it not wanting to incur what he felt would have been unnecessary legal fees. He stated he received a phone call some six months later inviting him to submit his bid again if he was still interested in the contract. Scott stated that he bid about 1.5 million a year less than The Ravens Group did on the contract. The following week, on Monday, April 3, 2006, in the DIA cafeteria, in the presence of the company's Executive Vice President; Jeff Robertson, Scott again stated he had bid about 1.5 million a year less than The Ravens Group, and had also reviewed several of our employees via JPAS, the network for monitoring security clearances.

## E-N-D O-F S-T-A-T-E-M-E-N-T

Milton J. Grant III
Director
Facilities Management and Security
The Ravens Group Inc.
9901 Business Parkway
Suite H
Lanham, MD 20706
Tel: 301-577-8585
Fax: 301-577-9097

EXHIBIT
A

The Ravens GROUP INC.
*We Can Do That!*

# S-W-O-R-N S-T-A-T-E-M-E-N-T

This statement reflects a conversation that began on Monday, April 3, 2006, at my residence; 4720 Lauriefrost Court, Alexandria, Virginia. I, Milton James Grant III (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), had engaged in a conversation with Ernest L. Fields, a recently terminated employee of The Ravens Group. I asked Ernest to confirm a rumor I heard involving him and Wendy Scott; the current Project Manager for the custodial contract at DIA both receiving cash payment in the amount of $500.00 each from Scott Rowe, President of Rowe Contracting Services Inc., in exchange for information on Ravens Group employees and the working and scheduling of the contract effort. Ernest stated that both he and Wendy Scott did in fact receive the $500.00 each from Scott Rowe in exchange for help and information to transition the contract from The Ravens Group to Rowe Contracting Services. According to Ernest Fields, this transaction took place on Tuesday, March 28, 2006 for Wendy Scott and on Wednesday, March 29, 2006 for him. The following day, on Tuesday, April 4, 2006 in my office at the company headquarters at 9901 Business Parkway, Lanham, Maryland 20706, Ernest repeated words to the same stating that Scott Rowe gave him and Wendy Scott $500.00 each in exchange for help and information. Ernest stated he returned his money to Scott in fear of being set up.

## E-N-D O-F S-T-A-T-E-M-E-N-T

Milton J. Grant III
Director
Facilities Management and Security
The Ravens Group Inc.
9901 Business Parkway
Suite H
Lanham, MD 20706
Tel: 301-577-8585
Fax: 301-577-9097
Cell: 703-965-6594

EXHIBIT
B

The Ravens GROUP INC.
*We Can Do That!*

# SWORN STATEMENT

# OF

# J. JEFF ROBERTSON

On Monday, April 3, 2005 around 7:45 am while in the Defense Intelligence Agency (DIA) cafeteria, Milton Grant and I was approached by Scott Rowe, President of Rowe Contracting Services, and one of his project managers. Scott began to engage Milton and me in a conversation about the DIA custodial contract. During the conversation Scott informed us that during the initial bid The Ravens Group submitted a schedule whereas his company did not submit one. He told us that he received a phone call from DIA 6 months later requesting that he resubmit his bid. Scott went on to say that his bid was $1.5 million less than our quote.

I solemnly swear affirm and declare under penalties of perjury and upon personal knowledge that the foregoing is true and correct.

4/06/06
Date

J. Jeff Robertson
Executive Vice President

9901 Business Parkway • Suite H • Lanham, MD 20706 • 301-577-8585 voice • 301-577-9097 fax
1101 Pennsylvania Ave, NW • 6th Floor • Washington, DC 20004 • 202-756-4556 voice
www.theravensgroup.com

EXHIBIT C

The Ravens GROUP INC.
*We Can Do That!*

## SWORN STATEMENT

## OF

## J. JEFF ROBERTSON

On Monday, April 3, 2005 around 7:45 am while in the Defense Intelligence Agency (DIA) cafeteria, Milton Grant and I was approached by Scott Rowe, President of Rowe Contracting Services, and one of his project managers. Scott began to engage Milton and me in a conversation about the DIA custodial contract. During the conversation Mr. Rowe informed us that during the initial bid The Ravens Group submitted a schedule whereas his company did not submit one. This schedule was a key aspect of The Ravens Group's proposal, and as such, was carefully guarded information within the company. The only way Mr. Rowe could have known about our schedule was if he inspected our proposal, and we are certain that we did not authorize Mr. Rowe to review our technical proposal. Thus, any access he had to our technical proposal was unauthorized and improper. Mr. Rowe also stated that he knew this was the only reason Rowe did not win the original bid. He told us that he received a phone call from DIA 6 months after the original award to The Ravens Group requesting that he resubmit his bid. This would have been pursuant to the corrective action DIA agreed to take in response to the protest by NOSLOT. Mr. Rowe went on to say that Rowe's resubmitted bid was $1.5 million less than The Ravens Group's price. This statement suggested that Mr. Rowe had also seen our price proposal. Mr. Rowe admitted to having the above information prior to the best and final offer being submitted by Rowe in response to DIA's request for a best and final offer following DIA's agreement to take corrective action based on NOSLOT's protest. Mr. Rowe asserted that he won the award after corrective action because Rowe provided a work schedule based on the one that he had learned The Ravens Group had submitted. Furthermore, he submitted a lower quote then our quote since he was made aware of our numbers.

I solemnly swear affirm and declare under penalties of perjury and upon personal knowledge that the foregoing is true and correct.

6/01/06
Date

J. Jeff Robertson
Executive Vice President

9901 Business Parkway • Suite H • Lanham, MD 20706 • 301-577-8585 voice • 301-577-9097 fax
1101 Pennsylvania Ave, NW • 6th Floor • Washington, DC 20004 • 202-756-4556 voice
www.theravensgroup.com

EXHIBIT D

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

(Bid Protest)

FILED
APR 19 2007
U.S. COURT OF FEDERAL CLAIMS

| | |
|---|---|
| THE RAVENS GROUP, INC. | |
| Plaintiff, | |
| v. | CFC No. 07-243 C |
| THE UNITED STATES | |
| Defendant. | |

**MOTION FOR PRELIMINARY INJUNCTION**

**COMES NOW** The Ravens Group, Inc. ("The Ravens Group"), by and through undersigned counsel, and hereby files this Motion for Preliminary Injunction under Fed. R. Civ. P. 65(a) and the Rules of the United States Court of Federal Claims. As more fully described in the Memorandum in Support of The Ravens Group's Motion for Preliminary Injunction, filed concurrently herewith, the Court should enjoin the Defense Intelligence Agency ("DIA") from terminating The Ravens Group's contract with DIA—Contract No. HHM402-06-C-0026 (the "Contract"), or from terminating or reducing The Ravens Group performance under the Contract; or from commencing or continuing performance of any contract awarded to Rowe Contracting Services, Inc. ("Rowe") for custodial/janitorial services currently being performed under the Contract. Additionally, the Court should enjoin DIA from pursuing its announced course of action of awarding a contract to Rowe under Solicitation ("RFP") No. HHM402-05-R-0017.

**WHEREFORE** Plaintiff respectfully requests that the Court issue an order immediately enjoining the Government from taking the actions described above or in the alternative enjoining DIA from employing the funds obligated to the performance of Contract No. HHM40206C0026 in the performance of any contract awarded to Rowe or any entity other than the Plaintiff for these services.

Respectfully submitted,

Date: 4-18-07

By: ______________________
Daryle A. Jordan
Howard G. Cooley, Of Counsel
Patrick Henry LLP
7619 Little River Turnpike
Suite 340
Annandale, Virginia 22003
703.256.7754
703.256.7883 (fax)
Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of April 2007, a copy of the foregoing Motion for Preliminary Injunction was served by facsimile and hand delivery on:

Counsel for the United States, Roger Hipp, Esq., United States Department of Justice, Commercial Litigation Branch, 1100 L Street, N.W., Washington, DC 20530, fax (202) 305-7644

And

By hand delivery on: Counsel for Rowe Contracting Services, Inc., Kenneth B. Weckstein, Epstein Becker & Green, P.C., 1227 25th Street, N.W. Suite 700, Washington, D.C. 20037-1156.

______________________
Daryle A. Jordan