07/19/2005 17:16 FAX 2025129749 GAO PL DIV ☒002
07/19/2005 16:26 FAX 6104306889 ROSENTHAL & GANISTER

B-296914

# ROSENTHAL AND GANISTER

ATTORNEYS AND COUNSELORS AT LAW

31 TURNER LANE
WEST CHESTER, PA 19380
(610) 430-6890
FAX (610) 430-6889
E-MAIL: ROSEGANIST@AOL.COM

July 19, 2005

Copy Via Telefax and
Overnight Courier
202-512-9749

RECEIVED
USGAO
2005 JUL 19 PM 4:53

General Counsel
Government Accountability Office
441 "G" Street, N.W.
Room 1139
Washington, D.C. 20548

Attn: Procurement Law Control Group

Re: Protest of Olympus Building Services, Inc.
Solicitation No. HHM402-05-R-0017
Bid Protest No. B-__
NEW PROTEST ACTION

Dear sir:

Please be advised that this office represents Olympus Building Services, Inc. (herein "Olympus") of 244 S. Main Street, New Hope, PA 18938-1212; telephone: (215)862-5066; fax (215) 862-7066 with regard to the afore-referenced solicitation. On behalf of Olympus we herewith protest the award made under said solicitation and the evaluation conducted thereunder.

Olympus protests the award which was made under the above referenced solicitation to The Ravens Group LLC. The bases of this protest are that:

1 The Olympus offer was misinterpreted and therefore misevaluated and otherwise would have resulted in being the successful offer under the solicitation;



07/19/2005 TUE 16:32 [TX/RX NO 9457] ☒002

JUL-19-2005 16:34 2025129749 97% P.01

ROSENTHAL AND GANISTER

Government Accountability Office
July 19, 2005
Page 2

2. The awardee is not qualified to receive an award under the terms of the solicitation; and

3. The awardee's price is unrealistically high and therefore should have been eliminated under the terms of the solicitation.

The instant solicitation was issued by the Virginia Contracting Activity, Bowling Air Force Base, Building 6000, Washington, D.C. 2340-5100 for the supply of janitorial services at the Defense Intelligence Analysis Center at Bowling Air Force Base, Washington, D.C. The solicitation was for services of a base period of July 1,2005 through October 30, 2005 with 4 option years extending annually through September 30, 2009. The point of contact listed on the solicitation is Ms. Juanita Jones. A contracting officer is not identified on the solicitation.

Olympus submitted a timely offer in response to the solicitation. By letter dated June 27, 2005 Olympus was advised by Mr. Guy A. Torres who is identified as the contracting officer thereon that its offer was not successful and that award was made to The Ravens Group, LLC for a total price including the base period and all options of [redacted] See Exhibit 2. Olympus was advised that it could request a debriefing period. Olympus did request a debriefing, and a debriefing was held on July 12, 2005.

At the debriefing, Olympus was advised that its offer received [redacted] for past

**ROSENTHAL AND GANISTER**

Government Accountability Office
July 19, 2005
Page 3

performance and [redacted] rating for all elements of the technical proposal section with the exception of the agency's interpretation of Olympus's ability to meet the overall objective regarding the security clearance of personnel that within 6 months after contract award the contractor must have a minimum of 60% of its personnel cleared at a Top Secret/SCI level. Olympus was advised at the debriefing that this element in the evaluation caused Olympus not to receive an award under the solicitation.

The solicitation requires offerors to submit a technical and price proposal. The technical proposal was to be composed of two parts, one for technical capability and the other for relevant past performance. See Exhibit 1, solicitation at page 37.[1]

The evaluation criteria for evaluation for award selection are set forth in the solicitation at pages 40-42. The evaluation criteria provide that: "Award will be made to the responsible offeror whose offer, conforming to the solicitation, is determined to be the best overall value to the government, price and other factors considered." The evaluation criteria further provide that: "The Government will perform a trade-off analysis of non-price factors against price to determine the best value to the Government," and the solicitation further provides: "Relative weight of non-price factors (technical and past performance) when combined are more important than price." With regard to the evaluation of the technical factors, the solicitation specifically provides at page 41 under

[1] Exhibits will be attached to the hard copies of this protest. Exhibits will not be attached to the faxed copies of this protest.

"Management Area" that offerors are required to "quote further separate evidence and rosters to show that 20% of the work forcer [sic] will have their security clearances at the start of work as required by the statement of objectives." There is no indication in the evaluation criteria that the 60% /6 month personnel security clearance requirement would be considered as part of the evaluation criteria.

In responding to the solicitation, Olympus included as part of its proposal, its security plan for addressing the necessity of having Top Secret/SCI cleared personnel. Olympus provided a list of all personnel which it determined would be required in order to service the jobsite and demonstrated that at the start of the contract it would more than meet the 20% per cent requirement for Top Secret/SCI cleared personnel. In its proposal in the proportion relating to security clearances, Olympus indicated that it would not meet the 6 month, 60% requirement personnel clearance at the time of commencement of any contract by 4 employees. It then proceeded to indicate the steps that it had taken and would take to assure that the requisite number of cleared employees would be on site at the required times. See copy of portion of Olympus proposal attached hereto at Exhibit 5.[2] At the debriefing, Olympus was advised that the evaluators interpreted the Olympus proposal as indicating that it would not meet the 6 month, 60% requirement at the 6 month mark, not at the time of contract award as intended by Olympus. Based on that understanding, Olympus was advised at the debriefing that the evaluators determined the Olympus offer to be unacceptable as not

[2] Please note that the Tab function for the headers for the columns on the chart is misaligned as this page has printed. The column headings should align with the columns so that each column receives a heading.

meeting the necessary security clearance requirements set forth in the solicitation.

The awardee, The Ravens Group, LLC, is not a custodial service contractor. The awardee entity does not possess a Top Secret security clearance. Information gathered by Olympus concerning the awardee indicates that the awardee does not and has never performed janitorial services of any kind and has only provided corporate consulting services. The data collected by Olympus concerning the awardee indicates that the awardee only employs 3 people. The NAISC code applicable to the awardee is not the NAISC code applicable to the instant solicitation. The price at which the award was made to The Ravens Group, LLC under the instant solicitation is approximately [redacted] higher than the price offered by Olympus and nearly double the price offered by Olympus.

1. <u>The Olympus Offer Was Misevaluated.</u>

As noted above, the Olympus proposal provided a chart which indicates the anticipated personnel which Olympus intended to employ under any contract awarded to it pursuant to the instant solicitation. The chart reflects the anticipated employment by Olympus of the current workforce at the site. The current contractor only employed 33 people at the jobsite of which only 21 held the Top Secret/SCI clearances. Olympus anticipated employing 45 people to service the job. The chart included by Olympus with its proposal indicated how many of the existing personnel at the commencement of the contract performance would possess the necessary Top Secret/SCI security clearances. The chart clearly indicates that at the time of contract award, Olympus would have within

ROSENTHAL AND GANISTER



its employee count for this contract well over the net required 20% (for the Olympus anticipated workforce 8 people) required Top Secret/SCI security cleared personnel. The chart also revealed at the time of contract award, Olympus would be short against the 6 month/60% requirement for Top Secret/SCI security cleared personnel. Olympus acknowledged that fact within the paragraph referring to the snapshot picture of employment at the time of contact award. Olympus then proceeded in its proposal to describe how it would meet the security clearance requirements to obtain the requisite number required Top Secret/SCI cleared personnel. Olympus did not indicate that it would not meet the security clearance requirements of the solicitation in any resulting contract. Olympus was clear in the chart that the numbers were being compared to the number of cleared personnel then employed by the incumbent contractor. The chart was not a statement that Olympus did not intend to comply with the contract requirements. To the contrary, Olympus immediately follows the chart with its proposal for obtaining and retaining the requisite number of cleared personnel.

The interpretation attributed to the Olympus offer as described to Olympus at the debriefing is not consistent with the offer. Olympus at all times indicated that it intended to fully comply with the overall objectives of the contract including obtaining all necessary and requisite Top Secret/SCI cleared personnel. Given the detailed description which Olympus provided regarding how it intended to comply with the security requirements of the solicitation, the evaluating personnel should have fully understood that it was always Olympus' intention to fully comply with the security requirements of the solicitation. Olympus submits that the evaluation rating assigned to it for the security aspects of

the contract was inappropriate given the clear affirmation which it voiced in its proposal to meet all of the security requirements of the solicitation.

In addition, we note that the solicitation at the evaluation factors, in any event, indicates only that the 20% requirement will be considered as an evaluation factor. See page 41 of the solicitation. Olympus understands from the information provided to it at the debriefing that it was downgraded with regard to security clearance issues because the evaluating personnel did not understand that it would in fact meet the 60%/6 month Top Secret/SCI security cleared personnel provision of the Statement of Objectives of the solicitation. There never was any doubt that the evaluation personnel understood that Olympus would in fact meet the 20% requirement at contract start. Under the evaluation factors set forth at pages 40-42 of the solicitation, it appears that only the 20% factor was in fact an evaluation factor for consideration for award. Accordingly, regardless of the misinterpretation of the Olympus offer, the evaluation and downgrading of the Olympus offer over the security plan personnel issue is inappropriate since the 60%/6 month Top Secret/SCI security cleared personnel objective was not in fact part of the evaluation factors.

Your office has repeatedly held that where an offer is improperly excluded from the competitive range due to an improper evaluation of the offer by the designated evaluators, the correct action is for the improperly excluded offer to be added to the competitive range and be reevaluated. Alternatively, where, as here, the procurement has gone to award, the correct action may be to cause a re-evaluation of improperly excluded offers and if necessary terminate the awarded contract and re-

award to the new successful offeror. See Kathpal Technologies, Inc., B-283137.3 December 30, 1999; DNL Properties, Inc., Crawford/Edgewood Managers, Inc.; Pearl Properties, B-253734, B-253614.5, B-253614.3, B-253614.2, 93-2 CPD 301; Northwest EnviroService, Inc., B-247380, B-247380.2, 92-2 CPD 38.

Olympus therefore submits that the evaluation of its offer under the instant solicitation is defective in that it was held to a standard not articulated in the solicitation and was down-graded for alleged deficiencies in its proposal which in fact did not exist. Olympus submits that its offer should be re-evaluated and that the awards made should be terminated and award should be made to Olympus who represents in fact the best value to the Government considering all articulated evaluation criteria as set forth in the solicitation, or at a minimum, offers should be re-evaluated in accordance with the evaluation criteria as actually set forth in the solicitation.

Accordingly, Olympus submits that it was misevaluated with regard to the security plan issues as they related to personnel and that its offer should be reevaluated and reconsidered for award under the instant solicitation.

2. The Awardee is Not Qualified to Receive an Award under the Instant Solicitation.

The awardee, The Ravens Group, LLC, is not a custodial service company has no experience in the custodial and/or janitorial services business. Information pertaining to the awardee which Olympus has been able to accumulate is attached hereto at Exhibit 3. You will note that the NAICS

code applicable to the instant solicitation is 561720 which is for custodial services. You will also note that the NAICS code listed for the Ravens Group, LLC is 541618 for "Other Management Consulting Services" and 541611 for "Administrative Management and General Management Consulting Services". The information indicates that The Ravens Group only employs 3 people.

The awardee has no experience in janitorial and custodial services. The awardee therefore, could not have met the required past performance requirements of the solicitation which required offerors to provide past performance information of at least 3 but no more than 5 of the most relevant contracts performed for federal agencies and commercial customers within the last three years of the solicitation closing date that demonstrate the ability of the offeror to perform to the proposed effort required by the solicitation. Even if the awardee received a Neutral rating for past performance, the Olympus Excellent rating for past performance should have put Olympus into a higher evaluated position than the awardee under the evaluation scheme set forth in the solicitation.

Furthermore, the solicitation requires a security plan for any resulting contract. The solicitation is specific that the DIAC is a high security facility and all direct employees assigned to the DIAC must meet the investigative requirement for Top Secret with Access to Special Compartmented Information (TS-SCI) clearance. The awardee organization and ownership do not possess such TS-SCI security clearance. Accordingly, Olympus submits that the awardee organization is non-responsive to the solicitation requirements.

ROSENTHAL AND GANISTER

Government Accountability Office
July 19, 2005
Page 10

The solicitation provides at pages 34 and 35 the security requirements pertaining thereto and incorporates by reference DFAR 52.999-4031. Those provisions require that the contractor shall maintain and administer a security program in accordance with the Industrial Security manual DoD 5220.22M and the DIA Manual 50-5. It further requires the contractor to meet all of the requirements of the DD Form 254 Contract Security Classification Specifications. It specifically provides that the security classification for the contract is Top Secret/ Sensitive Compartment Information (TS/SCI). In order for a company to be able to obtain security classifications for employees, the company must have completed the DD Form 254 and have received an appropriate classification itself in order to be able to present employees or potential employees for classification review. The Defense Security Service manual for preparation of the DD Form 254 is clear that the contractor itself must posses the requisite classification in order to be able to obtain clearances for its employees. The Manual specifically states that: "The contractor must have a valid facility clearance at least as high as the classification indicated." See Exhibit 4 attached hereto at page 2.

The Ravens Group, LLC does not appear to have held a valid Top Secret/SCI clearance as of the time of award of the contract to it. Insofar as Olympus is presently aware, The Ravens Group does not yet hold such a clearance. As such, pursuant to the terms of the solicitation, and specifically the Security Requirements thereof, The Ravens Group, LLC's offer was non-responsive to the terms of the solicitation and should have been rejected.

3 The Awardee Offer Should Have Been Rejected as Being Unrealistically High.

The solicitation is specific at page 58, Part III Cost/Price Section that: "Unrealistically low or high proposed costs or prices initially or subsequently may be grounds for eliminating your proposal from competition either on the basis that the offeror does not understand the requirement or has made an unrealistic proposal." The awardee's price of [redacted] is over [redacted] higher than the Olympus price and nearly double the Olympus offered price. Olympus has extensive experience cleaning top secret cleared facilities in the Washington, D.C. area and is well acquainted with the necessity of paying higher wages in order to be able to attract qualified personnel to work at such facilities. However, Olympus submits that the price at which the award was placed under the instant solicitation is indeed unrealistically high and should have resulted in rejection of the awardee's offer under the provisions of the instant solicitation.

In this regard, we note that the Building Owners and Management Association International has performed studies concerning the cost of performing janitorial and custodial services in various regions around the United States including the District of Columbia. The 1997 edition of the BOMA Guidelines for Custodial Service Organizations indicate the average cleaning costs per square foot for cleaning Government facilities was $1.49 per square foot. As noted above, because of the security requirement at a facility such as the DIAC, personnel costs are normally higher and therefore the cost to clean on a square footage basis for a facility such as DIAC will be higher than the norm. The Olympus offer translates to a cost per square foot of space of [redacted] The Raven's Group, LLC cost per square foot translates to a cost of [redacted] per square foot. Olympus has significant experience

performing under top secret clearance contracts in the Washington, D.C. area. Olympus believes that the offer which it made under the instant solicitation was reasonable and would have fully permitted it to attain all requirements pertaining to the solicitation and any resultant contract. The offer which was selected by the agency was exorbitant and clearly constitutes an unrealistically high price which should have been eliminated from competition on the basis that it was an unrealistic proposal. See page 38, part 3 (C) of the solicitation.

Request for Relief

For all of the reasons articulated herein, we request that your office order that the agency terminate the award made and award the contract for the services procured pursuant to the solicitation to Olympus, or at a minimum, require the agency to re-evaluate offers received in accordance with the solicitation's stated criteria for evaluation.

We request a copy of the administrative report prepared with regard to this matter and an opportunity to reply to the same. We further request that copies of all evaluations conducted with regard to the Olympus and other offers be included in said administrative report, or alternatively provided to the protestor pursuant to the provisions of 4 CFR 21.3(c). We also request that copies of all instructions given to the evaluators, all evaluation criteria used by the evaluators and all notes and other documentation generated by the evaluators in conjunction with their evaluations of this procurement, and all source selection documentation be included in the report or alternatively

ROSENTHAL AND GANISTER

Government Accountability Office
July 19, 2005
Page 13

provided to the protestor pursuant to the provisions of 4 CFR 21.3(e).

Inasmuch as this protest will involve the review of specific offers, we request that pursuant to 4 CFR 21.4 a protective order be entered with regard to this matter. A redacted version of this protest is also being provided. Olympus requests that if a protective order is issued in this matter, that only the redacted version of this protest be made publicly available.

We further request that if this protest is sustained, Olympus be awarded its bid preparation and protest costs. See 4 CFR 21.8(d).

This protest is being forwarded to your office via telefax, with a conforming copy to be supplied by overnight courier. The Contracting Officer has been served with this protest in like manner.

Sincerely,

Ruth E. Ganister

cc: Guy A. Torres
Contracting Officer
Anthony Hipple, President
Olympus Building Services, Inc.

GAO
Accountability * Integrity * Reliability

United States Government Accountability Office
Washington, DC 20548

Office of the General Counsel

July 26, 2005

Ruth E. Ganister
Rosenthal and Ganister

Major Peter H. Tran
Department of the Army

**File:** B-296914
**Protester:** Olympus Building Services, Inc.
**Agency:** Defense Intelligence Agency

**NOTIFICATION OF PROTECTIVE ORDER**

Attached is a copy of the protective order issued in connection with this matter. Counsel seeking admission must complete and submit the attached application to our Office within 3 days of receipt of this protective order, with a copy provided simultaneously to all parties; applications for consultants are available upon request. A party objecting to any individual's application must so advise our Office by the second day following receipt of the application. While applications may be filed by facsimile transmission, a hard copy with original signature must also be submitted. Failure to complete the application accurately may result in denial of admission and/or sanction.

Individuals covered under a protective order are required to take all precautions necessary to prevent disclosure of protected material. In addition to physically and electronically securing, safeguarding, and restricting access to the protected material in one's possession, these precautions include, but are not limited to, sending and receiving protected material using physical and electronic methods that are within the control of individuals authorized by this protective order or that otherwise restrict access to protected material to individuals authorized by this protective order. Examples of transmission methods that may require additional precautions include facsimile machines shared with individuals not admitted under this protective order and facsimile-to-electronic mail systems or services. Protected material shall not be sent using electronic mail without the express consent of this Office.

competitive decisionmaking for a party to the protest or for any firm that might gain a competitive advantage from access to the protected material disclosed under this order, shall have access to information covered by this order. Individuals admitted under this protective order shall advise such support staff, prior to providing them access to protected material, of their obligations under this order.

4. Each party included under this protective order shall receive a single copy of the protected material and shall not duplicate that material, except as incidental to its incorporation into a submission to GAO or as otherwise agreed to by the parties with GAO's concurrence. However, each party that receives protected material in an electronic format may print a single copy of that protected material.

5. When any party sends or receives documents in connection with this protest that are not designated as protected, including proposed redacted versions of protected documents, the party shall refrain from releasing the documents to anyone not admitted under this protective order, including clients, until the end of the second working day following receipt of the documents by all parties. This practice permits parties to identify documents that should have been marked protected before the documents are disclosed to individuals not admitted under this protective order.

6. Each individual covered under this protective order shall take all precautions necessary to prevent disclosure of protected material. In addition to physically and electronically securing, safeguarding, and restricting access to the protected material in one's possession, these precautions include, but are not limited to, sending and receiving protected material using physical and electronic methods that are within the control of individuals authorized by this protective order or that otherwise restrict access to protected material to individuals authorized by this protective order. Protected material shall not be sent using electronic mail without the express consent of GAO. The confidentiality of protected material shall be maintained in perpetuity.

7. Within 60 days after the disposition of the protest(s) (or if a request for reconsideration or a claim for costs is filed, 60 days after the disposition of those matters), all protected material furnished to individuals admitted under this protective order, including all copies of such material, with the exception of a single copy of a protected decision or letter issued by our Office, shall be: (1) returned to the party that produced them; or (2) with the prior written agreement of the party that produced the protected material, destroyed and certified as destroyed to the party that produced them; or (3) with the prior written agreement of the party that produced the protected material, retained under the terms of this order for such period as may be agreed. Within the same 60-day period, protected pleadings (including copies in archival files and computer backup files) and written and electronic transcripts of protest conferences and hearings shall be destroyed, and the destruction certified to GAO and the other parties, unless the parties agree otherwise. In the absence of such agreement and for good cause shown, the period

for retention of the protected material under this paragraph may be extended by order of GAO. Any individual retaining material received under this protective order (except for the single copy of a protected decision or letter issued by our Office) beyond the 60-day period without the authorization of GAO or the prior written agreement of the party that produced the material is in violation of this order. The terms of this protective order (except those terms regarding the return or destruction of protected material) shall apply indefinitely to the single copy of the protected decision or letter issued by our Office that is retained by a party admitted under this order.

8. Any violation of the terms of this protective order may result in the imposition of such sanctions as GAO deems appropriate, including but not limited to referral of the violation to appropriate bar associations or other disciplinary bodies and restricting the practice of counsel before GAO. A party whose protected information is improperly disclosed shall be entitled to all remedies under law or equity, including breach of contract.

Jacqueline Maeder
Jacqueline Maeder
Senior Attorney

July 26, 2005
July 26, 2005

**UNITED STATES GOVERNMENT ACCOUNTABILITY OFFICE**
**OFFICE OF THE GENERAL COUNSEL**
**PROCUREMENT LAW DIVISION**
**Washington, D.C. 20548**

**Matter of:** Olympus Building Services, Inc.

**File:** B-296914

**Agency:** Defense Intelligence Agency

## PROTECTIVE ORDER

This protective order limits disclosure of certain material and information submitted in the above-captioned protest, so that no party obtaining access to protected material under this order will gain a competitive advantage as a result of the disclosure. Material to which parties gain access under this protective order is to be used only for the subject protest proceedings, absent express prior authorization from the Government Accountability Office (GAO). Such authorization must be requested in writing, with notice to all parties.

1. This protective order applies to all material that is identified by any party as protected, unless GAO specifically provides otherwise. Protected material includes information whether on paper or in any electronic format. This protective order applies to all proceedings associated with the protest, e.g., supplemental/amended protests, requests for reconsideration, and claims for costs.

2. Protected material of any kind may be provided only to GAO and to individuals authorized by this protective order. The first page of each document containing protected material is to be clearly marked as follows:

**PROTECTED MATERIAL**
**TO BE DISCLOSED ONLY IN ACCORDANCE WITH**
**GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER**

The party claiming protection must clearly identify the specific portion of the material for which it is claiming protection. Wherever such protection is claimed for a protest pleading, the party filing the pleading shall submit a proposed redacted version for public release when the protected version is filed.

3. Only individuals who are admitted under this protective order by GAO, and support staff (paralegal, clerical, and administrative personnel) who are employed or supervised by individuals admitted under this order, and who are not involved in

–For the Associate General Counsel

**FOR FURTHER INFORMATION:**

GAO Attorney: Jacqueline Maeder; 202-512-9708
Case Status Calls: 202-512-5436; Fax Number 202-512-9749
GAO's Guide to GAO Protective Orders is available at www.gao.gov.

Attachments

***Paragraphs 1, 4, 6, and 7 of the order were revised in February 2002.***

G A O
Accountability * Integrity * Reliability

United States Government Accountability Office
Washington, DC 20548

**UNITED STATES GOVERNMENT ACCOUNTABILITY OFFICE**
**OFFICE OF THE GENERAL COUNSEL**
**PROCUREMENT LAW DIVISION**
**Washington, D.C. 20548**

**Matter of:** Olympus Building Services, Inc.

**File:** B-296914

**Agency:** Defense Intelligence Agency

**APPLICATION FOR ACCESS TO MATERIAL**
**UNDER A PROTECTIVE ORDER**
**FOR OUTSIDE COUNSEL**

1. I, ______________________________, hereby apply for access to protected material covered by the protective order issued in connection with this protest.

2. I am an attorney with the law firm of_____________________ and have been retained to represent_____________________________, a party to this protest.

3. I am a member of the bar(s) of _____________; my bar membership number(s) is/are

_________________________.

4. My professional relationship with the party I represent in this protest and its personnel is strictly one of legal counsel. I am not involved in competitive decisionmaking as discussed in U.S. Steel Corp. v. United States, 730 F.2d 1465 (Fed. Cir. 1984), for or on behalf of the party I represent, any entity that is an interested party to this protest, or any other firm that might gain a competitive advantage from access to the material disclosed under the protective order. I do not provide advice or participate in any decisions of such parties in matters involving similar or corresponding information about a competitor. This means that I do not, for example, provide advice concerning or participate in decisions about marketing

or advertising strategies, product research and development, product design or competitive structuring and composition of bids, offers, or proposals with respect to which the use of protected material could provide a competitive advantage.

5. I identify here (by writing "none" or listing names and relevant circumstances) those attorneys in my firm who, to the best of my knowledge, cannot make the representations set forth in the preceding paragraph:

(Attach additional pages for this and the following questions, if needed.)

6. I identify here (by writing "none" or listing names, position, and responsibilities) any member of my immediate family who is an officer or holds a management position with an interested party in the protest or with any other firm that might gain a competitive advantage from access to the material disclosed under the protective order:

7. I identify here (by writing "none" or identifying the name of the forum, case number, date, and circumstances) instances within the last 5 years in which I have been denied admission to a protective order, or had admission revoked, or been found to have violated a protective order issued by GAO or by an administrative or judicial tribunal:

8. I identify here (by writing "none" or listing the protest name and file number) any pending application for admission to a protective order issued by GAO:

9. I have read the protective order issued by GAO in this protest, and I will comply in all respects with that order and will abide by its terms and conditions in handling any protected material filed or produced in connection with the protest.

10. I acknowledge that any violation of the terms of the protective order may result in the imposition of such sanctions as GAO deems appropriate, including but not limited to referral of the violation to appropriate bar associations or other disciplinary bodies, and restricting my practice before GAO. I further acknowledge that a party whose protected information is improperly disclosed shall be entitled to all remedies under law or equity, including breach of contract.

CERTIFICATION

By my signature, I certify that, to the best of my knowledge, the representations set forth above (including any attached statements) are true and correct. I recognize that knowingly making a false statement on this application could render me liable to a $10,000 fine or 5 years imprisonment, or both, pursuant to 18 U.S.C. § 1001. I identify below the mailing address and facsimile number at which I may receive protected material in accordance with the terms of the protective order.

+________________________ Date
Signature
Executed

________________________
Typed Name and Title

________________________
Mailing Address

________________________
Facsimile Number

GAO
Accountability • Integrity • Reliability

United States Government Accountability Office
Washington, DC 20548

Office of General Counsel

# Facsimile Transmission Sheet

Number of pages, including this cover sheet: 9

If transmission problems occur, please call 202-512-9710.
Our fax number is 202-512-9749.

**Date:** July 26, 2005

**Re:** B-296914
Protest of Olympus Building Services, Inc.

**From:** Jacqueline Maeder, Senior Attorney

| Name | Firm/Agency | Phone | Fax |
|---|---|---|---|
| Ruth E. Ganister | Rosenthal and Ganister | 610-430-6890 | 610-430-6889 |
| Major Peter H. Tran | Department of the Army | 703-696-2825 | 703-696-1535 |

**Comments:** None

ROSENTHAL AND GANISTER
ATTORNEYS AND COUNSELORS AT LAW

31 TURNER LANE
WEST CHESTER, PA 19380
(610) 430-6890
FAX (610) 430-6889
E-MAIL: ROSEGANIST@AOL.COM

July 27, 2005

***Via Overnight Courier and Fax***
***202-512-9749***

Jacqueline Maeder, Esquire
Senior Attorney
Office of the General Counsel
United States General Accounting Office
441 G Street, NW
Washington, D.C. 20548

Re: Protest of Olympus Building Services, Inc.
Bid Protest No. B-296914
Solicitation No. HHM402-05-R-0017

Dear Ms. Maeder:

Enclosed please find Application for Access to Materials Under Protective Order By Outside Counsel Ruth E. Ganister.

Should you have any questions or comments regarding the matter referenced hereinabove, please do not hesitate to contact the undersigned.

Sincerely,

Ruth E. Ganister

Enclosures

cc: Major Peter H. Tran, Esquire
(Via Fax and Overnight Courier)
Anthony Hipple

UNITED STATES GOVERNMENT ACCOUNTABILITY OFFICE
OFFICE OF THE GENERAL COUNSEL
PROCUREMENT LAW DIVISION
Washington, D.C. 20548

| | | |
|---|---|---|
| MATTER OF:<br>Olympus Building Services, Inc.<br><br>Under Defense Intelligence Agency<br>Solicitation No. HHM402-05-R-0017 | ) | B-296914 |

**APPLICATION FOR ACCESS TO MATERIALS**
**UNDER PROTECTIVE ORDER**
**BY OUTSIDE COUNSEL**

1. I, Ruth E. Ganister, hereby apply for access to protected materials covered by the protective order issued in connection with this protest.

2. I am an attorney with the law firm of Rosenthal and Ganister and have been retained to represent Olympus Building Services, Inc. ("Olympus"), a party to this protest.

3. I am a member of the bar of the Supreme Court of the Commonwealth of Pennsylvania; my bar membership number is 21368.

4. My professional relationship with the party I represent in this protest and its personnel is strictly one of legal counsel. I am not involved in competitive decision making as discussed in U.S. Steel Corp. v. United States, 730 F.2d 1465 (Fed. Cir. 1984), for or on behalf of the party I represent, any entity that is an interested party to this protest, or any other firm that might gain a competitive advantage from access to the material disclosed under the protective order. I do not provide advice or participate in any

decisions of such parties in matters involving similar or corresponding information about a competitor. This means that I do not, for example, provide advice concerning or participate in decisions about marketing or advertising strategies, product research and development, product design or competitive structuring and composition of bids, offers, or proposals with respect to which the use of protected material could provide a competitive advantage.

5. I identify here (by writing "none" or listing names and relevant circumstances) those attorneys in my firm who, to the best of my knowledge, cannot make the representations set forth in the preceding paragraph: None.

6. I identify here (by writing "none" or listing names, position, and responsibilities) any member of my immediate family who is an officer or holds a management position with an interested party in the protest or with any other firm that might gain a competitive advantage from access to the material disclosed under the protective order: None.

7. I identify here (by writing "none" or identifying the name of the forum, case number, date, and circumstances) instances in which I have been denied admission to a protective order, or had admission revoked, or been found to have violated a protective order issued by GAO or by an administrative or judicial tribunal: None.

8. I identify here (by writing "none" or listing the protest name and file number) any pending application for admission to a protective order issued by GAO: None.

9. I have read the protective order issued by GAO in this protest, and I will comply in all respects with that protective order and will abide by its terms and conditions in handling any protected material filed or produced in connection with the protest.

10. I acknowledge that any violation of the terms of the protective order may result in the imposition of sanctions as GAO deems appropriate, including but not limited to referral of the violation to the appropriate bar associations or other disciplinary bodies, and restricting my practice before GAO. I further acknowledge that a party whose protected information is improperly disclosed shall be entitled to all remedies under law or equity, including breach of contract.

**CERTIFICATION**

By my signature, I certify that, to the best of my knowledge, the representations set forth above (including any attached statements) are true and correct. I recognize that knowingly making a false statement on this application could render me liable to a $10,000 fine or 5 years imprisonment, or both, pursuant to 18 U.S.C. §1001.

Date Executed: July 27, 2005

RUTH E. GANISTER

Rosenthal and Ganister
31 Turner Lane
West Chester, PA 19380
Telephone: (610) 430-6890
Fax: (610) 430-6889

ROSENTHAL AND GANISTER
ATTORNEYS AND COUNSELORS AT LAW

31 TURNER LANE
WEST CHESTER, PA 19380
(610) 430-6890
FAX (610) 430-6889
E-MAIL: ROSEGANIST@AOL.COM

FROM: Lucie Ganister

REFERENCE:

NUMBER OF PAGES INCLUDING COVER PAGE: 6

DATE: 5/27/05 TIME:

********************************************************

PLEASE DELIVER THE FOLLOWING PAGE(S) TO:

TO: Jacqueline Maeder, Esq. FAX#: 202-512-9749

TO: Mr. Peter Tran FAX#: 703-696-1535

TO: Anthony Hipple FAX#: 215-862-7066

TO: FAX#:

TO: FAX#:

MESSAGE/DESCRIPTION:

********************************************************

**THE INFORMATION CONTAINED IN THIS FAX MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL(S) OR ENTITY(S) TO WHICH IT IS ADDRESSED. THIS MESSAGE MAY BE AN ATTORNEY CLIENT COMMUNICATION AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL AND/OR MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, AND THAT ANY REVIEW, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.**

GAO
Accountability * Integrity * Reliability

United States Government Accountability Office
Washington, DC 20548

Office of the General Counsel

August 2, 2005

Ruth E. Ganister
Rosenthal and Ganister

Major Peter H. Tran
Department of the Army

**File:** B-296914
**Protester:** Olympus Building Services, Inc.
**Agency:** Defense Intelligence Agency
**Solicitation No.:** HHM402-05-R-0017

**NOTICE OF ADMISSION TO PROTECTIVE ORDER**

The Government Accountability Office has received and reviewed the application of Ruth E. Ganister, Esq. of the firm of Rosenthal and Ganister, retained by Olympus Building Services, Inc., to represent it in this protest.

Based on the information provided by the individual regarding relationships with the parties to the protest, and in the absence of any objection, the Government Accountability Office concludes that the risk of inadvertent disclosure of protected material is sufficiently minimal to warrant providing access under the protective order. The individual has represented that she have read the protective order issued by the Government Accountability Office on July 26, 2005, for this protest and will abide by its terms and conditions in handling any protected material that is produced in this matter. Accordingly, the individual listed above is hereby authorized to receive protected material.

Unless the Government Accountability Office expressly notifies the parties otherwise, all material identified by any party as falling within the protective order shall be covered by that order. For 2 working days following production, all documents, <u>including those not designated as protected</u>, shall be released only to persons admitted to the protective order, in order to permit identification of documents counsel believes should have been designated as protected.

Each individual covered under a protective order is required to take all precautions necessary to prevent disclosure of protected material. In addition to physically and electronically securing, safeguarding, and restricting access to the protected material

in one's possession, these precautions include, but are not limited to, sending and receiving protected material using physical and electronic methods that are within the control of individuals authorized by this protective order or that otherwise restrict access to protected material to individuals authorized by this protective order. Protected material shall not be sent using electronic mail without the express consent of this Office.

Jacqueline Maeder
Jacqueline Maeder
Senior Attorney

**NOTICE REGARDING PROTECTED MATERIALS**

GAO protective orders generally require that within 60 working days after the disposition of the protest (or if a request for reconsideration or a claim for costs is filed, 60 days after the disposition of those matters), all protected material, including copies of such material, with the exception of a single copy of a protected decision or letter issued by GAO, must either be (1) returned to the party that produced them; or (2) with the prior written agreement of the party that produced the protected material, destroyed and certified as destroyed to the party that produced them; or (3) with the prior written agreement of the party that produced the protected material, retained under the terms of the order for such period as may be agreed. Within the same 60-day period, protected pleadings (including copies in archival files and computer backup files) and written and electronic transcripts of protest conferences and hearings must be destroyed, unless the parties agree otherwise. The terms of the protective order (except those terms regarding the return or destruction of protected material) apply indefinitely to the single copy of the protected decision or letter issued by our Office that is retained by a party admitted under the order.

********************
*** RX REPORT ***
********************

RECEPTION OK

| | |
|---|---|
| TX/RX NO | 8012 |
| CONNECTION TEL | 2025129749 |
| SUBADDRESS | |
| CONNECTION ID | |
| ST. TIME | 08/03 14:22 |
| USAGE T | 02'11 |
| PGS. | 3 |
| RESULT | OK |