Law Offices
DAVIS & STEELE

**CONTAINS PROTECTED INFORMATION SUBJECT TO GAO PROTECTIVE ORDER**



[redacted]

**Chart TA - 23**

**Machine Scrub Schedule**

[redacted]

*See* NOSLOT Proposal, Technical Area – pp. 45-47 (emphasis added).

Thus, as is apparent, NOSLOT addressed both the schedule of work and staffing of work to be performed in the expansion building (referred to in the NOSLOT proposal as the "new building" or "New Facility"). Consequently, NOSLOT should have received a rating higher [redacted] for the Technical factor. Had the Agency properly evaluated NOSLOT under the

LAW OFFICES
DAVIS & STEELE

**CONTAINS PROTECTED INFORMATION SUBJECT TO GAO PROTECTIVE ORDER**



Technical factor NOSLOT would have received a rating [redacted] With a price more than [redacted] lower than TRG's price, NOSLOT's proposal would have been selected as providing the best value to DIA. For this additional reason, NOSLOT's protest must be sustained.

**B. TRG Made A Material Misrepresentation And Therefore Is Ineligible For Award**

The solicitation required offerors to provide evidence that 20% of the workforce had approved Level 6 security clearances. NOSLOT learned during the debriefing that DIA did not waive this requirement for any offeror. However, as explained *infra*, TRG did not have a work force with the requisite approved security clearances. Rather, on information and belief, TRG proposed to use the incumbent workforce. [redacted] Therefore, TRG could not have truthfully represented that it had obtained commitements and, therefore, had obtained the requisite 20% cleared Level 6 employees.

GAO has consistently held that bidders who make a material misrepresentation in a proposal are disqualified from further participation in the procurement at issue. *See, e.g., Ultra Technology Corp.*, Comp. Gen. B-230309.6, 89-1 CPD ¶ 42 (contract should be terminated because awardee misrepresented that it had received permission to include the resume of a specified individual in its proposal), *aff'd on reconsideration*, 89-1 CPD ¶ 528; *Informatics, Inc.*, 57 Comp. Gen. 217, 78-1 CPD ¶ 53 (where awardee had misstated the basis for its commitment from incumbent personnel to work on the contract, the awardee should be disqualified from further participation in the procurement).

The basis for this rule is that the integrity of the procurmenet process demands that the contracting officer be in a position to take the documents contained in an offeror's submission at face value. Where there is a material misrepresentation, the contracting officer is no longer able

LAW OFFICES
DAVIS & STEELE

**CONTAINS PROTECTED INFORMATION SUBJECT TO GAO PROTECTIVE ORDER**



to give the documents contained in the offeror's submission equal weight and credibility with those submitted by other offerors. *See Informatics, supra,* at 225.

In this case, there can be no question that TRG's misrepresentation was material. TRG stated that it had fulfilled the requirement for 20% Level 6 employees at the time it submitted its proposal. The only way TRG could do this, of course, was to have commitments from the existing workforce. [redacted] Clearly, DIA considered the representation concerning the existing workforce to have been material to DIA's award decision.

Moreover, given the importance of preserving the integrity of the procurement system, even if TRG currently is able to employ the existing work force, TRG's misrepresentation still reaquires that TRG be eliminated from any consideration for award:

> The agency has a right to rely on the factual accuracy of information submitted by bidders.... [W]e believe that the submission of a misstatement . . . which materially influences consideration of a proposal should disqualify the proposal. The integrity of the system demands no less. <u>Any further consideration of the proposal in these circumstances would provoke suspicion and mistrust and reduce confidence in the competitive procurmente system.</u>

*Informatics*, 57 Comp. Gen. At 225 (citations omitted) (emphasis added).

Accordingly, GAO should grant this ground for protest, find that TRG is ineligible for award, and recommend that DIA terminate the contract to TRG and award it to NOSLOT.

### C. DIA Performed an Improper Technical Evaluation of TRG's Proposal vis à vis NOSLOT's Proposal

In addressing the evaluation criteria for award, the solicitation provides:

LAW OFFICES
DAVIS & STEELE

**CONTAINS PROTECTED INFORMATION SUBJECT TO GAO PROTECTIVE ORDER**



> Non-price factors (Technical and Past Performance), when combined, are more important than price. Of the non-price factors, technical is more important than Past Performance.

Solicitation, at 43.

In addition, in the criteria for contract award, the Solicitation states, in Section B, Management Area, that contractors were to, "Furnish separate evidence and rosters to show that 20% of the work force will have their security clearances at the start of work as required by the Statement of Objectives." Solicitation at 43.

As explained above, it is highly unlikely that TRG has met the solicitation requirement to have 20% approved Level 6 cleared personnel prior to the award of the contract. [redacted] Hence, TRG could not have provided reliable evidence that the existing incumbent work force would be used to satisfy the 20% cleared personnel requirement. Moreover, there is a scarcity of available custodial workers with a level 6 security clearance. Consequently, it is highly unlikely that TRG has been able to obtain, prior to contract award, the requisite 20% cleared personnel. For the same reasons, it is highly unlikely that TRG had "ample cleared personnel to escort cleaning employees" as required by the solicitation.

By contrast, NOSLOT provided evidence and rosters to show that 20% of the work force would have their security clearances prior to contract award. [redacted]

Clearly, DIA has placed significant emphasis on compliance with the technical requirements of the solicitation. An offer that satisfies the technical requirements of the

LAW OFFICES
DAVIS & STEELE

**CONTAINS PROTECTED INFORMATION SUBJECT TO GAO PROTECTIVE ORDER**



solicitation must be rated higher than an offer that does not. Although agencies maintain broad discretion in the manner in which they conduct their technical evaluations, GAO will overturn agency evaluations that it determines are unreasonable. *See, e.g., Programmatics Inc.* B-228916.2, 88-1 CPD ¶ 35. As demonstrated herein, DIA's technical evaluation of NOSLOT's technical proposal vis-à-vis TRG's was improper and unreasonable. NOSLOT's Technical proposal evaluation should have been [redacted] rating, and TRG's proposal, at best, should have been eliminated as ineligible for award and, at worst, shold have been [redacted] Consequently, DIA's evaluation cannot be allowed to stand.

NOSLOT submitted a detailed, logical, and comprehensive technical proposal which should have been evaluated as superior to TRG's, particularly for the Technical factor For this reason, NOSLOT's protest should be sustained.

**D. DIA Did Not Properly Evaluate TRG's Proposal for the Past Performance Evaluation Criteria**

The RFP required offerors to identify past performance on contracts involving similar work that the offeror has held within the past three years, and similar contracts currently in progress. Solicitation at 41. NOSLOT's proposal demonstrated substantial significant experience in providing custodial services at Government installations like the DIAC at Bolling AFB. NOSLOT has over two decades of experience in providing custodial services at Government installations.

TRG, in stark contrast, is a management consulting concern whose principal business involves providing administrative management and general management consulting

LAW OFFICES
DAVIS & STEELE

**CONTAINS PROTECTED INFORMATION SUBJECT TO GAO PROTECTIVE ORDER**

Office of the General Counsel
July 12, 2005
Page 19

services. *See* Dun & Bradstreet Report, at 5, attached hereto as attachment 2. They have no demonstrated expertise in the area of custodial services. With this procurement, TRG would be foraying into new territory, whereas NOSLOT has experience identical to that called for by the solicitation. Given that NOSLOT possesses requisite experience while TRG has no identical, or even substantially similar experience, there is no rational basis for awarding the procurement to TRG rather than NOSLOT. *See, NavCom Defense Electronics, Inc.*, B-276163, 97-1 CPD ¶ 189. For this additional reason, this protest must be sustained.

**E. DIA Failed to Perform a Proper Best Value Analysis**

In deciding to award the contract to TRG the DIA apparently used adjectival ratings and awarded the contract with the highest adjectival rating, even though an award to TRG would result in a price premium of [redacted]

From all indications, the Source Selection Authority ("SSA") did not perform any type of best value analysis; the award was based purely on the offeror's adjectival ratings. If the DIA in fact did perform a best value analysis, that analysis was unreasonable. This is so because TRG's technical rating should not have been superior to NOSLOT's.

The fact that technical is a more important factor than price does not absolve DIAC of its responsibility to perform a reasonable "best value" analysis. The Federal Acquisition Regulation provides that the best value process, "permits tradeoffs among price and non-price

LAW OFFICES
DAVIS & STEELE

**CONTAINS PROTECTED INFORMATION SUBJECT TO GAO PROTECTIVE ORDER**



factors and allows the Government to accept other than the lowest priced proposal. The perceived benefits of the higher priced proposal shall merit the additional cost, and the rationale for tradeoffs must be documented in the file in accordance with 15.406." FAR § 15.101-1(c). In this case, where the perceived benefit of TRG's allegedly higher technical rating is nonexistent at best, it can hardly be said to be significant enough to offset TRG's significant price premium.

Even when technical is a more important factor than price, the Government in performing a "best value" analysis should examine and document whether the extent of technical superiority warrants a premium in price. The Comptroller General has determined that "before a contracting agency can award to a higher priced . . . superior offeror, the contracting agency is required to justify such award in light of the extra expenditure required." *Reliability Sciences, Inc.*, B-205754.2, 83-1 CPD ¶ 612 at 8 and cases cited therein; *University Foundation, California State University, Chico*, B-200608, 81-1 CPD ¶ 54 at 3-4. In this case, DIA is not justified in paying a $3,574,866.09, or 16% price premium where TRG's technical "advantage" is threadlike at best.

Congress, in adopting the Competition in Contracting Act, 10 U.S.C. § 2305 (1999) ("CICA"), rejected the notion that contracting officers could ignore price considerations in negotiated procurements. Rather, contracting agencies are required to perform an in-depth analysis of the price/technical tradeoff. The type of superficial lip service the DIA has provided is woefully inadequate and falls far short of CICA's requirements. 10 U.S.C. § 2305(b)(4)(D).

LAW OFFICES
DAVIS & STEELE

**CONTAINS PROTECTED INFORMATION SUBJECT TO GAO PROTECTIVE ORDER**



Thus, the DIA violated the statutory mandate in 10 U.S.C. § 2305(b)(4)(D) as well as the terms of the Solicitation by failing to consider price adequately, and in particular whether the price premium of 16% was warranted.

The RFP indicated that technical was a significantly more important consideration than price. Even so, the Government was required to make a trade-off analysis and award to other than the lowest priced offeror only if the technical benefits offered warranted paying a higher price. In this case, TRG's alleged technical "advantage" does not justify the substantial price premium. For this additional reason, this protest must be sustained.

**F. The DIA's Award Determination is Unreasonable And is Inconsistent With the Stated Evaluation Scheme**

As detailed above, the DIA's award determination is based on unreasonable evaluations of NOSLOT's proposal in the technical area. It is also based on unreasonable evaluations of TRG's proposal in the areas of technical and past performance. It is axiomatic that an award determination based upon erroneous information is *per se* unreasonable. *See, e.g., U.S. Sprint Communications Co., LTd. Partnership,* B-243767, 91-2 CPD ¶ 201 (elimination from competitive range unreasonable where based on erroneous information); *Eigen,* B-249860, 92-2 CPD ¶ 426 (contract award improper where cost/technical trade-off decision was not based on actual price difference between offerors). In other words, an evaluation of offerors' proposals, and the determination as to which proposal represents the best overall value to the Government, must be based on the true and correct differences between proposals and not on erroneous or

LAW OFFICES
DAVIS & STEELE

**CONTAINS PROTECTED INFORMATION SUBJECT TO GAO PROTECTIVE ORDER**



misleading information. *Bendix Oceanics, Inc.*, B-247225.3, 92-2 CPD ¶ 54. Here, the award determination is based on clearly erroneous determinations that NOSLOT's technical proposal [redacted] and TRG's Technical proposal [redacted]

Because DIA's evaluation of NOSLOT's and TRG's proposals lacks any reasonable basis, these evaluations and the price/technical tradeoff based thereon cannot support the award determination. A reasonable evaluation in accord with the factors set forth in the Solicitation would have demonstrated that NOSLOT's proposal represents the best overall value to the Government. Accordingly the DIA's determination to award the contract to TRG cannot be upheld.

## IV. Conclusion and Relief Requested

Based on the above, it is clear that the DIA's decision to award to TRG lacked any reasonable basis. Furthermore, the award to TRG was in violation of law. Accordingly, NOSLOT respectfully requests:

1. That the DIA produce the documents listed on the "Request for Documents" listed below.

2. A hearing on this protest, which is necessary to show the inconsistency between the DIA's evaluation of the NOSLOT and TRG proposals.

3. A ruling by the Comptroller General sustaining this protest and recommending award to NOSLOT or that the DIA perform a proper technical evaluation of the competing proposals and make a new, best value award decision.

4. Attorneys' fees and related protest costs.

LAW OFFICES
DAVIS & STEELE

**CONTAINS PROTECTED INFORMATION SUBJECT TO GAO PROTECTIVE ORDER**



5. Other relief that the Comptroller General deems appropriate.

## V. Request for Documents[5]

Pursuant to 4 C.F.R. § 21.3(c) and § 21.3(e), the protestor requests that the contracting agency be required to provide, in addition to those documents and reports required to be provided pursuant to § 21.3(c), the following documents:

i. The Government's independent estimate of pricing.

ii. All documents concerning, relating to, or reflecting the evaluation notes and scoring sheets of the proposals of the protestor and TRG for all evaluations, including the initial evaluations and the re-evaluations.

iii. All documents concerning, relating to, or reflecting the contemporaneous evaluation narratives and the ratings of all evaluators with respect to the proposals of NOSLOT and TRG;

iv. All documentation concerning, relating to, or reflecting the evaluation of the NOSLOT and TRG proposals;

v. A copy of all letters requesting clarification or discussions with any offerors of this solicitation;

vi. Copies of all written correspondence, including meeting memoranda or written oral discussions with all offerors;

[5] "Document" or "Documents" refer to, and include, but are not limited to, the following items, whether printed or recorded or reproduced by any other mechanical process, or written or produced by hand: communications, hearings and reports, correspondence, telegrams, memoranda, summaries of records of meetings or conferences, summaries or reports of evaluations or negotiations, opinions or reports of consultants, photographs, video tape, emails, drafts, letters, any marginal comments appearing on any documents, and all other writings.

LAW OFFICES
DAVIS & STEELE

**CONTAINS PROTECTED INFORMATION SUBJECT TO GAO PROTECTIVE ORDER**



vii. All tape recordings and/or transcripts of all meetings and/or discussions with all offerors;

viii. All documents concerning, relating to, or reflecting the source selection plan used in the source selection process;

ix. All documents concerning, relating to, or reflecting the evaluation plan used in the source selection process;

x. All documents concerning, relating to, or reflecting the information used in making the source selection decision;

xi. All documents concerning, relating to, or reflecting any best value analysis performed by the agency;

xii. All other documents concerning, related to, or reflecting the source selection;

xiii. All documents concerning, related to, or reflecting recommendations and revisions thereof to or by the source selection authority;

xiv. All communications to and from the source selection authority;

xv. Copies of eachy letter to disappointed offerors notifying them that TRG had been awarded the contract; and

xvi. All drafts or revisions of any of the documents requested in items I through xv.

LAW OFFICES
DAVIS & STEELE

**CONTAINS PROTECTED INFORMATION SUBJECT TO GAO PROTECTIVE ORDER**

Office of the General Counsel
July 12, 2005
Page 25

**VI. Request for Protective Order**

In accordance with 4 C.F.R. § 21.4, NOSLOT requests that GAO issue a protective order in this protest.

Respectfully submitted,

Janice Davis
Counsel for NOSLOT Cleaning Services, Inc.

DAVIS & STEELE
1100 15th Street, N.W.
Suite 300
Washington, DC 20005
Phone (202) 530-5828
Fax (202) 530-5717

Enclosures (2)

cc: Juanita Jones, Contracting Officer

ATTACHMENT 1

**From:** David Tolson [twsinc@erols.com]

**Sent:** Wednesday, June 22, 2005 1:51 PM

**To:** 'Jones, Juanita'

**Subject:** Follow-up Regarding Janitorial Requisition #448/0114Z/05

Hi Ms. Jones,

I have heard a "rumor" that the above referenced contract has been awarded. If so, when do you expect to send out the official notice of award? And furthermore, please let this serve as an official notice for a debriefing for NOSLOT Cleaning Services, Inc. if it has been awarded. We can do the debriefing by telephone if it is more convenient; however, I would like to have it before July 1, 2005, since I will be on travel for about 10 days.

Sincerely,

David R. Tolson
301-704-3309

ATTACHMENT 2

D&B Small Business Solutions

Comprehensive Insight Plus Report for
RAVENS GROUP LLC, THE
Report Printed: June 29, 2005

D-U-N-S #: 01-377-8225

- Print this report
- *To save this report to your PC:* Select File and then Save As from the browser menu bar. Click on the Save in: drop-down menu and select a location for your file. Enter a file name and save the report as a .html or .txt file.

Copyright 2004 Dun & Bradstreet - Provided under contract for the exclusive use of subscriber Janice Davis, Davis & Steele

Company Snapshot | Creditworthiness | Payment History & Trends | Public Filings | History & Operations | Banking & Finance

## Company Snapshot

### Business Summary

**Profile**
**RAVENS GROUP LLC, THE**
1101 Pennsylvania Ave Nw
Washington, DC 20004

**Tel:** 202 756-4556
www.theravensgroup.com
**D-U-N-S #:** 01-377-8225
**D&B Rating:** 2A2

**Company Stats**

| | |
|---|---|
| **Year started** | 2000 |
| **Management control** | 2001 |
| **Employees** | 3 |
| **Financing** | SECURED |
| **Financial condition** | GOOD |
| **Financial statement date** | Dec 31, 2004 |
| **Net worth F** | $816,707 |
| **Sales F** | $2,164,380 |
| **Chief Executive** | Joe N Ballard , Member |
| **S.I.C.** | 8748<br>8742 |

**Industry**
Business consulting srvcs. management consulting srvcs. building maintenance srvcs

This is a **single** location.

The Net worth amount in this section may have been adjusted by D&B to reflect typical deductions, such as certain intangible assets.

**Likelihood this company will not pay on time over the next 12 months** — MODERATE ⚠

**Credit Score Class: 3**

1 2 3 4 5 (Low — Moderate — High)

**Likelihood this company will experience financial distress in the next 12 months** — LOW ☑

**Financial Stress Class: 1**

1 2 3 4 5 (Low — Moderate — High)

**Timeliness of historical payments for this company**** — UNAVAILABLE

**Payment performance trend over the past 90 days** — UNAVAILABLE

D&B has not received a sufficient sample of payment experiences to establish a PAYDEX score.

**Based on 3 trade experiences on file with D&B

**D&B offers guidance on credit limits for this company based on its profile as well as profiles of other companies similar in size, industry, and credit usage** — Get details

**Evidence of bankruptcy, fraud, or criminal proceedings in the history of this business or its management** — NO ☑

**Noteworthy special events in this company's file** — YES ▲

**Total number of suits, liens and judgments in this company's file** — 0 ☑

**Value of open suits, liens and judgments for this company** — $0 ☑

Value of open records refers only to 10 most recent filings for each record type.

104

Company Snapshot | Creditworthiness | Payment History & Trends | Public Filings | History & Operations | Banking & Finance

## Creditworthiness

### Summary

**Likelihood this company will experience financial distress in the next 12 months** LOW

**Likelihood this company will not pay on time over the next 12 months** MODERATE

**D&B Rating: 2A2**
Financial strength: 2A is $750,000 to 1 million.
Composite credit appraisal: 2 is good.
This credit rating was assigned because of D&B's assessment of the company's financial ratios and its cash flow. For more information, see the D&B Rating Key.

### Default on Payment: Financial Stress Summary

**Likelihood this company will experience financial distress in the next 12 months** LOW

Financial Stress Class: 1




During the prior year, firms in this Financial Stress Class had a failure rate of 0.49%, which is 0.35 times lower than the national average.

Financial stress national percentile: 91 (high risk: 1%; low risk: 100%)
National percentile industry norm: 50 (high risk: 1%; low risk: 100%)

**Key Factors**
- 3 trade experiences exist for this company.
- Financial Stress Score: 1521 (high risk: 1,001;low risk: 1,850)
- No record of open suit(s), lien(s), or judgement(s) in the D&B files.
- 33% of trade experiences indicate slow payment(s) are present.
- Control age or date entered in D&B files indicates higher risk.
- D&B files indicate a net worth of $816,707.

### Payment within Terms: Credit Score Summary

**Likelihood this company will not pay on time over the next 12 months** MODERATE

Credit Score Class: 3




The Credit Score class of 3 for this company shows that during the previous year, 12.3% of the firms with this classification paid one or more bills severely delinquent, which is lower than the national average.

Credit score percentile: 51 (high risk: 1%; low risk: 100%)
Industry norm percentile: 46 (high risk: 1%; low risk: 100%)

**Key Factors**
- 3 trade experiences exist for this company.
- 33% of trade experiences indicate slow payment(s) are present.
- No record of open suit(s), lien(s) or judgment(s) in the D&B files.
- Control age or date entered in D&B files indicates higher risk.
- D&B files indicate a net worth of $816,707.
- Business does not own facilities.

105

### Additional Information

**Financial Stress Summary**
- The Financial Stress Class Indicates that this firm shares some of the same business and financial characteristics of other companies with this classification. It does not mean the firm will necessarily experience financial stress.
- The Incidence of Financial Stress shows the percentage of firms in a given Class that discontinued operations over the past year with loss to creditors. The Incidence of Financial Stress - National Average represents the national failure rate and is provided for comparative purposes.
- The Financial Stress National Percentile reflects the relative

**Credit Score Summary**
- The Incidence of Delinquent Payment is the percentage of companies with this classification that were reported 90 days past due or more by creditors. The calculation of this value is based on an inquiry weighted sample.
- The Percentile ranks this firm relative to other businesses. For example, a firm in the 80th percentile has a lower risk of paying in a severely delinquent manner than 79% of all scorable companies in D&B's files.

ranking of a company among all scorable companies in D&B's file.
- The Financial Stress Score offers a more precise measure of the level of risk than the Class and Percentile. It is especially helpful to customers using a scorecard approach to determining overall business performance.
- All Financial Stress Class, Percentile, Score and Incidence statistics are based on 2002.

Company Snapshot Creditworthiness Payment History & Trends Public Filings History & Operations Banking & Finance

## Payment History

### Summary

| | | | |
|---|---|---|---|
| **Average payment performance trend when weighted by dollar amount** | **UNAVAILABLE** | **Company's payment performance over the past 12 months compared with its peers** | **UNAVAILABLE** |

### Payment History Overview

| | | | |
|---|---|---|---|
| **Payment experiences on file with D&B:** | 3 | Average highest credit: | $883 |
| Payments made within terms: | N/A | Largest high credit: | $2,500 |
| Amount placed for collections: | 0 (0%) | Highest now owing: | $50 |
| | | Highest past due: | $0 |

D&B has not received a sufficient sample of payment experiences to establish a PAYDEX score.

### Payment History Details

| Date Reported | Paying Record | High Credit ($) | Now Owes ($) | Past Due ($) | Selling Terms | Last Sale Within (months) |
|---|---|---|---|---|---|---|
| 05/05 | Slow 5 | 100 | 50 | 0 | Net30 | 1 |
| 04/05 | Prompt | 50 | 0 | 0 | | 4-5 |
| 07/04 | Prompt | 2,500 | 0 | 0 | PROX | 6-12 |

Payment experiences reflect how bills are met in relation to the terms granted. In some instances payment beyond terms can be the result of dispute over merchandise, skipped invoices, etc.
Each experience shown is from a separate supplier. Updated trade experiences replace those previously reported.

Company Snapshot Creditworthiness Payment History & Trends Public Filings History & Operations Banking & Finance

## Public Filings

106

### Summary of Court Actions

**The following data includes both open and closed filings found in D&B's database on the subject company.**

| Record Type | Open Records | Open Value | Total Records | Most Recent Filing Date |
|---|---|---|---|---|
| **Suits** | 0 | 0 | 0 | - |
| **Liens** | 0 | 0 | 0 | - |
| **Judgments** | 0 | 0 | 0 | - |
| **UCC Filings** | 3 | N/A | 3 | 09/27/2004 |
| **Bankruptcy Proceedings** | 0 | N/A | 0 | - |

Public filing data is for informational purposes only and is not the official record. Certified copies can only by obtained from the official source. Number and value of open records refers only to 10 most recent filings for each record type.

### Special Events

**05/19/2005** The Chief Executive Officer is now Joe N Ballard, Member.

### UCC Filings

| Collateral | Type | Sec. Party | Debtor | Date Filed | Additional Details |
|---|---|---|---|---|---|
| All Inventory and proceeds - All Account(s) and proceeds - All General intangibles(s) and proceeds - All Equipment and proceeds - All Chattel paper and proceeds | Original | ACACIA FEDERAL SAVINGS BANK, FALLS CHURCH, VA | THE RAVENS GROUP, LLC | 09/27/2004 | Filing number: 4269781 5<br>Filed with: SECRETARY OF STATE/UCC DIVISION, DOVER, DE<br>Latest info Received: 10/21/2004 |
| All Inventory - All Account(s) - All General intangibles(s) - All Equipment - All Chattel paper | Original | ACACIA FEDERAL SAVINGS BANK, FALLS CHURCH, VA | THE RAVENS GROUP, LLC | 09/16/2004 | Filing number: 2004128324<br>Filed with: FINANCE & REVENUE DEPT, WASHINGTON, DC<br>Latest info Received: 11/22/2004 |
| Accounts receivable including proceeds and products - Account(s) including proceeds and products - Computer equipment including proceeds and products | Original | BRANCH BANKING AND TRUST COMPANY, COLLEGE PARK, MD | THE RAVENS GROUP, LLC | 06/07/2002 | Filing number: 2167153 0<br>Filed with: SECRETARY OF STATE/UCC DIVISION, DOVER, DE<br>Latest info Received: 06/22/2002 |

The public record items contained in this report may have been paid, terminated, vacated or released prior to the date this report was printed. Any public filings displayed in red are open.

### Government Activity

| Activity Summary | | Possible Candidate for Socio-Economic Program Consideration | |
|---|---|---|---|
| Borrower (Dir/Guar) | No | Labor Surplus Area | N/A |
| Administrative Debt | No | Small Business | Yes (2005) |
| Contractor | Yes | 8(A) Firm | N/A |
| Grantee | No | | |
| Party Excluded from Federal Program(s) | No | | |

*The details provided in the Government Activity section are as reported to D&B by the federal government and other sources.*

Company Snapshot Creditworthiness Payment History & Trends Public Filings History & Operations Banking & Finance

## History & Operations

| Topic | Description |
|---|---|
| History | Detailed information on the history of a company, including background information on the management team and key principals, and information on related companies. |
| Company Operations | Detailed information on a company's operations, including the identity of the parent company, the geographic scope of the business, and the key holdings. |
| Industry Classification | Details on the specific industry within which a company is classified. |

107

### History

**Officer(s):** JOE N. BALLARD, PRES-CEO

**Director(s):** THE OFFICER(S)

Corporate Details unavailable.

Business started 2001. 100% of capital stock is owned by Joe N. Ballard.

JOE N BALLARD born 1942. 2000 present active here. 1996-2000 he was the Chief Executive Officer for U.S Army Corporation. He graduated with a Bachlor of Science degree in electrical engineering from Southern University. He also received his Masters Degree in Engineering Management from the University Of Missouri.

Business address has changed from 1201 Pennsylvania Ave N.w., Suite #300, Washington, DC, 20004 to 1101 Pennsylvania Ave N.w., 6th Floor, Washington, DC, 20004.

### Company Operations

**Description:** Engaged in business consulting services. Provides management consulting services.

Net 10 days and contractual basis. Sells to commercial concerns.

**Employees:** 3 which includes officer(s).

**Facilities:** 1,494 sq. ft. on 7th floor of 11 story concrete block building.

### Industry Classification

| SIC | | NAICS | |
|---|---|---|---|
| 87480000 | Business consulting, nec | 541618 | Other Management Consulting Services |
| 87420000 | Management consulting services | 541611 | Administrative Management and General Management Consulting Services |

Based on information in our file, D&B has assigned this company an extended 8-digit SIC. D&B's use of 8-digit SICs enables us to be more specific to a company's operations than if we use the standard 4-digit code.

The 4-digit SIC numbers link to the description on the Occupational Safety & Health Administration (OSHA) Web site. Links open in a new browser window.

Company Snapshot Creditworthiness Payment History & Trends Public Filings History & Operations Banking & Finance

## Banking & Finance

### Statement Update

**05/23/2005**

108

**Fiscal statement dated DEC 31 2004:**

| Assets | | Liabilities | |
|---|---|---|---|
| Cash | 257,290 | Accts pay | 109,492 |
| Accts rec | 8,303 | Bank loans | 92,062 |
| Contracts receivable | 636,478 | Credit cards payable | 84,336 |
| Unbilled revenue | 828,182 | Taxes | 23,752 |
| Prepaid | 3,478 | Total equip lease payable | 5,520 |
| | | Loan payable-insurance/other | 104,183 |
| | | Other curr liabs | 489,887 |
| **Current Assets** | **$1,733,731** | **Current Liabilities** | **$909,232** |

| | | | |
|---|---|---|---|
| Fixt & equip | 121,937 | Loan payable-company/bank | 191,987 |
| Loan to officer | 58,588 | Total equipment lease payable | 9,636 |
| Deposits | 13,306 | Addit. pd.-in cap | 155,875 |
| | | Member distribution | (31,500) |
| | | Retained earnings | 692,332 |
| Total Assets | $1,927,562 | Total Liabilities | $1,927,582 |

From JAN 01 2004 to DEC 31 2004 annual sales $2,164,380; cost of goods sold $1,097,821. Gross profit $1,066,559; operating expenses $1,007,466. Operating income $59,093; other expenses $17,807; net income before taxes $41,287; net income $41,287.

Extent of audit, if any, not indicated.

Fixed assets shown net less $34,308 depreciation.

## Key Business Ratios

**Statement date:** Dec 31 2004

| | This Business | Industry Median | Industry Quartile |
|---|---|---|---|
| | **Industry Norms based on 43 establishments** | | |
| **Profitability** | | | |
| Return on Sales | 1.9 | 2.7 | 3 |
| Return on Net Worth | 5.1 | 16.5 | 3 |
| **Short-Trem Solvency** | | | |
| Current Ratio | 1.9 | 2.1 | 3 |
| Quick Ratio | 1.9 | 1.8 | 2 |
| **Efficiency** | | | |
| Assets Sales | 89.1 | 39.7 | 4 |
| Sales / Net Working Capital | 2.6 | 4.9 | 4 |
| **Utilization** | | | |
| Total Liabilities / Net Worth | 136.0 | 80.8 | 3 |

## Finance

**05/19/2005**

**One-year statement comparative:**

| | Fiscal Dec 31 2003 |
|---|---|
| Current Assets | 1,240,139 |
| Current Liabs | 249,056 |
| Current Ratio | 4.98 |
| Working Capital | 991,083 |
| Other Assets | 67,960 |
| Net Worth | 805,420 |
| Sales | 994,859 |
| Long Term Liab | 253,613 |
| Net Profit (Loss) | 711,071 |

**Fiscal statement dated DEC 31 2003:**

109

| Assets | | Liabilities | |
|---|---|---|---|
| Cash | 105,831 | Accts pay | 104,068 |
| Accts rec | 5,826 | Equipment lease payable | 1,336 |

| | | | | |
|---|---|---|---|---|
| Contracts rec | | 207,948 | Accruals | 2,515 |
| Unbilled revenue | | 917,748 | Taxes | 12,597 |
| Prepaid | | 2,786 | Loans payable | 70,130 |
| | | | Line of credit | 58,410 |
| | Current Assets | $1,240,139 | Current Liabilities | $249,858 |
| Fixd & equip | | 39,898 | Note/loan payable | 242,857 |
| Loan to officer | | 15,079 | Equipment lease payable | 10,756 |
| Deposits | | 12,973 | Addit. pd.-in cap | 155,875 |
| | | | Retained earnings | 649,545 |
| | Total Assets | $1,308,089 | Total Liabilities | $1,308,089 |

From JAN 01 2003 to DEC 31 2003 sales $994,859; cost of goods sold $96,958. Gross profit $897,901; operating expenses $186,830. Operating income $711,071. Net income $711,071.

Submitted JUL 15 2004 by Irma Hilario, Controller. Prepared from statement(s) by Accountant: Unknown.

**Accountant's Opinion**
The financial statement was reviewed by the accountant.

Fixed assets shown net less $12,140 depreciation.

On May 11, 2005, Joe N Ballard, Member, confirmed company name, address, principals, annual sales and operational information using Dun & Bradstreet's Internet-based update method (eUpdate) at www.dnb.com.

Company Snapshot Creditworthiness Payment History & Trends Public Filings History & Operations Banking & Finance

**Customer Service**

- Email us with your questions at sbsSupport@dnb.com
- If you'd like to speak to one of our member support technicians directly, call toll-free 1-866-472-7362, Monday through Friday, 7:00AM to 7:00 PM CST
- If this is a report on your own company use eUpdate, our easy online tool, to inform D&B of any changes to your business information.

- Print this report
- **To save this report to your PC:** Select File and then Save As from the browser menu bar. Click on the Save in: drop-down menu and select a location for your file. Enter a file name and save the report as a .html or .txt file.

Copyright 2004 Dun & Bradstreet – Provided under contract for the exclusive use of subscriber Janice Davis, Davis & Steele

110

DEPARTMENT OF THE ARMY
UNITED STATES ARMY LEGAL SERVICES AGENCY
901 NORTH STUART STREET
ARLINGTON, VA 22203-1837
(703) 696-2825; DSN 426; Fax ext. 1537
E-mail: Peter.Tran@hqda.army.mil

REPLY TO
ATTENTION OF

July 14, 2005

Contract Appeals Division

**VIA FACSIMILE**

Ms. Mary Curcio, Esq.
Office of the General Counsel
U.S. Government Accountability Office
441 G. Street, NW
Washington, D.C. 20548

Subject: Protest of NOSLOT Cleaning Services, B-296741.2

Dear Ms. Curcio:

This letter is to inform you that in accordance with 31 U.S.C. § 3553(d)(3)(C)(i)(I) and FAR 33.104(c)(2)(i), the Head of the Contracting Activity (HCA) for the Defense Intelligence Agency (DIA) determined that the best interest of the United States will not permit waiting for the decision of the Comptroller General and has authorized the Contracting Officer to continue performance of Contract No. HHM402-05-C-0026 awarded to The Ravens Group, LLC.

If you have any questions regarding this matter, please contact MAJ Peter Tran at (703) 696-2825, facsimile (703) 696-1537.

Sincerely,

Peter H. Tran
Major, U.S. Army
Trial Attorney

Copies Furnished by facsimile:

Protester:

Janice Davis, Esq., DAVIS & STEELE
Telephone: (202) 530-5828; Facsimile: (202) 530-5717

Contracting Officer:

Guy Torres, Defense Intelligence Agency, Virginia Contracting Agency
Telephone: (202) 231-8077; Facsimile: (202) 231-2831

Field Attorney:

LtCol Joe Treanor, Esq., Defense Intelligence Agency
Telephone: (202) 231-2821; Facsimile: (202) 231-2831

**VIRGINIA CONTRACTING ACTIVITY**
**200 MACDILL BLVD., BLDG 6000**
**BOLLING AIR FORCE BASE**
**WASHINGTON, D.C. 20340-5100**

U-2052/AE-2A

13 July 2005

MEMORANDUM FOR Contracting Officer, DIA Office of the Acquisition Executive
Bolling AFB, Washington DC 20340

SUBJECT: Request for Authority to Continue Contract Performance in Face of Government Accountability Office (GAO) Protest.

Reference DIA Vice Deputy Director for Administration memorandum, dated 13 July, 2005, subject above.

Based upon the referenced Directorate for Administration memorandum and the Contracting Officer's Determination and Findings, approval to continue performance of contract HHM402-05-C-0026 for janitorial and custodial services for the Defense Intelligence Analysis Center (DIAC) building and DIAC expansion building is granted while the GAO Protest No. B-296741.2 is resolved.

The rationale for approving the override request is that it is in the best interests of the Government. The contracting officer shall comply with the requirements of FAR 33.104(d) to include a notice to the GAO.

Denise B. Carter
Denise B. Carter
Head of Contacting Activity

2 Enclosures
DA Memorandum (13 July 2005)
Contracting Officer's Determination and Findings (13 July 2005)

UNITED STATES GOVERNMENT

# memorandum

U-679-05

DATE: 13 July 2005

REPLY TO ATTN OF: Deputy Directorate for Administration

SUBJECT: Request for Continuation of Custodial Contract

TO: Denise Carter, AE

1. The continuation of the Defense Intelligence Agency Center (DIAC)'s campus custodial contract is critical to the health, safety, morale and welfare of our workforce population as well as continuity of DIA mission operations.

2. Besides improving the appearance of the DIAC, the DIAC custodial contract is an essential element of providing internal protection of our employee's health and provides them a safe work environment. Discontinuation or a single day's break in service will result in an estimated one half ton of refuse build up, over half of which includes food scraps from our DIAC cafeteria. Without custodial contract support, refuse will accumulate and the risk of rodents in our facility exponentially increases. This places our workforce health at risk and potentially impacts mission performance should portions of the building become inaccessible due to health and safety reasons.

3. Within the current DIAC facility, we have seventy six restrooms that require daily cleaning and restocking. Without a custodial contract in place, these basic but essential welfare areas will be uninhabitable. The contractor is also responsible for providing basic health items for our workforce such as toilet paper, fungicidal soap and hand towels.

4. Request your support in ensuring custodial contract service remain uninterrupted.

Kristi Waschull
Vice Deputy Director for Administration

114

GAO
Accountability • Integrity • Reliability

United States Government Accountability Office
Washington, DC 20548

Office of General Counsel

# Facsimile Transmission Sheet

Number of pages, including this cover sheet: ___

If transmission problems occur, please call 202-512-8280.
Our fax number is 202-512-9749.

**Date:** July 15, 2005

**Re:** B-296741.2
Protest of Noslot Cleaning Services, Inc.

**From:** Scott H. Riback, Senior Attorney

| Name | Firm/Agency | Phone | Fax |
|---|---|---|---|
| Janice Davis, Esq. | Davis & Steele | 202-530-5828 | 202-530-5717 |
| Denise B. Carter | Defense Intelligence Agency | 202-231-2838 | 202-231-2831 |

**Comments:** None

GAO
Accountability * Integrity * Reliability

United States Government Accountability Office
Washington, DC 20548

July 15, 2005

**File:** B-296741.2
**Protester:** Noslot Cleaning Services, Inc.
**Solicitation No.:** HHM402-05-R-0017
**Agency:** Defense Intelligence Agency

**DENIAL OF REQUEST FOR EXPRESS OPTION**

Confirming our telephonic notification, we have determined that the protest is not suitable for resolution under the express option provisions of our Bid Protest Regulations.

--For the Associate General Counsel

**FOR FURTHER INFORMATION**

GAO Attorney: Scott H. Riback / 202-512-8280
Case Status Calls: 202-512-5436
FAX Number: 202-512-9749

GAO
Accountability * Integrity * Reliability

United States Government Accountability Office
Washington, DC 20548

July 15, 2005

Janice Davis, Esq.
Davis & Steele

| | | | |
|---|---|---|---|
| **File:** | B-296741.2 | | |
| **Protester:** | Noslot Cleaning Services, Inc. | | |
| **Agency:** | Defense Intelligence Agency | | |
| **Solicitation No.:** | HHM402-05-R-0017 | | |
| **Report Due:** | August 11, 2005 | **Decision Due:** | October 20, 2005 |
| **GAO Attorney:** | Scott H. Riback | **Phone:** | 202-512-8280 |
| **Official Fax:** | 202-512-9749 | **Case Status:** | 202-512-5436 |

## ACKNOWLEDGMENT OF PROTEST

We have received your protest concerning the referenced procurement. The contracting agency is required to file a report in response to the protest by the Report Due date indicated above. Under our Bid Protest Regulations, 4 C.F.R. § 21.3(i) (2005), you are required to either submit written comments in response to the report or advise our Office that you desire to have the protest decided on the existing record. Written comments, or notification that no comments will be filed, must be received in our Office within 10 calendar days of your receipt of the report–otherwise, we will dismiss your protest. For purposes of determining when your response to the agency report must be submitted, we will assume that you received the report by the Report Due date unless you notify us otherwise at that time.

Also, the agency has been advised that if you have filed a request for specific documents, the agency should provide to all parties and GAO, at least 5 days prior to the Report Due date, a list of those documents, or portions of documents, that the agency has released to the protester or intends to produce in the report, and of the documents that the agency intends to withhold and the reasons for the proposed withholding. You must file any objection to the scope of the agency's proposed disclosure or nondisclosure with GAO and the other parties within 2 days of receipt of the list.

GAO bid protest decisions not subject to protective orders are distributed via the GAO Worldwide Web Internet site (www.gao.gov), and in most cases are available within 1 business day of the decision date. We will provide you or your representative e-mail notice of the availability of the decision on this protest upon issuance if you furnish us the e-mail address.

Please refer to our file number in all future correspondence regarding the protest.

–For the Associate General Counsel

---

GAO accepts bid protests, and subsequent associated filings, by facsimile transmission 24 hours a day, 7 days a week. Our Office hours are 8:30 a.m. until 5:30 p.m., eastern time, Monday through Friday. Documents are considered filed when time/date stamped. Facsimile transmissions will be time/date stamped upon receipt of the entire text of the filing. Correspondence received, and transmissions completed, after our Office hours will be time/date stamped as received on the next business day. When filing a document by facsimile, it is not necessary to file a duplicate original. If a duplicate original is provided, please indicate on the face of the duplicate original that it previously has been telecopied. Please refrain from sending voluminous transmissions; e.g., exhibits should be sent by mail.

GAO bid protest decisions appear at GAO's Worldwide Web Internet site (http://www.gao.gov) for 60 days after issuance, and indefinitely on the GPO WAIS server, which is accessible through the GAO site.

GAO
Accountability * Integrity * Reliability

United States Government Accountability Office
Washington, DC 20548

July 15, 2005

Denise B. Carter
Department of Defense
Defense Intelligence Agency

| | | | |
|---|---|---|---|
| **File:** | B-296741.2 | | |
| **Protester:** | Noslot Cleaning Services, Inc. | | |
| **Agency:** | Defense Intelligence Agency | | |
| **Solicitation No.:** | HHM402-05-R-0017 | | |
| **Report Due:** | August 11, 2005 | **Decision Due:** | October 20, 2005 |
| **GAO Attorney:** | Scott H. Riback | **Phone:** | 202-512-8280 |
| **Official Fax:** | 202-512-9749 | **Case Status:** | 202-512-5436 |

**CONFIRMATION OF REPORT REQUIREMENT**

This confirms our telephonic notice of the protest and report due date indicated above. Please advise us immediately of the individual(s) that will be representing the agency in the protest, including name, address (and Internet e-mail address, if any), and the telephone and fax numbers.

You should notify all intervenors that this protest has been filed and to communicate directly with us in connection with the protest. Copies of the report must be furnished to the protester and all intervenors not later than the date indicated above. Please advise the protester of its obligation to submit comments or request a decision on the existing record within 10 days of its receipt of the agency report. Please also advise all parties of their right to submit comments on the report to GAO within 10 days of its receipt. You should refer to our file number and the GAO attorney assigned in all future correspondence regarding the protest. Any request for dismissal should be filed as soon as practicable after receipt of this notice if the agency seeks resolution of the request by our Office prior to the stated report due date.

For your convenience, following is a list of the type of information to be included in your agency report:

--the contracting officer's statement of the relevant facts;

–a best estimate of the contract value;

–whether a statutory stay or suspension of performance is in place;

–a memorandum of law;

–a copy of all relevant documents, or portions of documents, not previously produced, including, as appropriate, any agency-level protest and decision, the bid or proposal submitted by the protester, the bid or proposal of the firm being considered for award or whose bid or proposal is being protested, all evaluation documents, the solicitation (with specifications), and the abstract of bids or offers; and

–an index identifying the contents of the report and the location of each document or enclosure. Where portions of the report have been redacted for any party (or where the agency has omitted certain documents from a party's report), please indicate which redactions or omissions apply to each party. Agency reports must be organized through the use of pagination, tabs, and binders, as appropriate.

If the protester has filed a request for specific documents, please provide to all parties and GAO, at least 5 days prior to the report due date, a list of those documents, or portions of documents, that you have released to the protester or intend to produce in your report, and of the documents you intend to withhold and the reasons for the withholding.

GAO bid protest decisions not subject to protective orders are distributed via the GAO Worldwide Web Internet site (www.gao.gov), and in most cases are available within 1 business day of the decision date. We will provide you or your representative e-mail notice of the availability of the decision on this protest upon issuance if you furnish us the e-mail address.

–For the Associate General Counsel

---

GAO accepts bid protests, and subsequent associated filings, by facsimile transmission 24 hours a day, 7 days a week. Our Office hours are 8:30 a.m. until 5:30 p.m., eastern time, Monday through Friday. Documents are considered filed when time/date stamped. Facsimile transmissions will be time/date stamped upon receipt of the entire text of the filing. Correspondence received, and transmissions completed, after our Office hours will be time/date stamped as received on the next business day. When filing a document by facsimile, it is not necessary to file a duplicate original. If a duplicate original is provided, please indicate on the face of the duplicate original that it previously has been telecopied. Please refrain from sending voluminous transmissions; e.g., exhibits should be sent by mail.

GAO bid protest decisions appear at GAO's Worldwide Web Internet site (http://www.gao.gov) for 60 days after issuance, and indefinitely on the GPO WAIS server, which is accessible through the GAO site.