GAO
Accountability * Integrity * Reliability

Comptroller General
of the United States

United States Government Accountability Office
Washington, DC 20548

# Decision

**Matter of:** The Ravens Group, Inc.–Reconsideration

**File:** B-296741.7

**Date:** July 14, 2006

## DECISION

The Ravens Group, Inc. requests reconsideration of our May 16, 2006 dismissal (B-296741.5, B-296741.6) of its protest regarding request for proposals (RFP) No. HHM402-05-R-0017, issued by the Defense Intelligence Agency (DIA) for janitorial and custodial services.

We deny the request.

The solicitation was issued on April 14, 2005, and DIA made award to Ravens on June 28. On June 29, NOSLOT Cleaning Services, Inc. challenged the award in a protest filed in our Office. We dismissed the protest on August 4 (B-296741.2), after DIA notified our Office that it intended to take corrective action. In implementing the corrective action, DIA reevaluated the proposals it had received, conducted discussions, received and evaluated final proposal revisions, evaluated the revised proposals, and selected Rowe Contracting Services for award on March 22, 2006. Ravens protested the award decision on March 27 and April 6. We dismissed those protests (B-296741.3, B-296741.4) as academic on April 6 and April 17, respectively, after the agency again proposed corrective action, this time in the form of reconsidering the award decision.

While DIA was implementing the second round of corrective action, Ravens filed two additional protests (B-296741.5, B-296741.6), in which it alleged that Rowe had improperly obtained access to the automated system (JPAS) the Department of Defense uses to maintain information regarding its employees and contractors, and manipulated data to make it appear that Ravens's personnel were Rowe employees. Ravens further asserted that, while its initial protest was pending in our Office, Rowe improperly obtained information about Ravens's proposal by making payments to Ravens employees. Ravens argued that these actions compromised the procurement and required that Rowe be eliminated from the competition. We dismissed the protests on May 19 for failure to state a valid protest basis, because the proposals on

which the award to Rowe was based were submitted prior to the actions about which Ravens was complaining. Since DIA's proposed corrective action was to be based on a reevaluation of those same proposals, and Rowe therefore would be unable to use any of the allegedly improperly acquired information to gain a competitive advantage, we concluded, Ravens would not be competitively prejudiced even if its allegations were correct. Ravens requests that we reconsider our decision.

To obtain reconsideration, the requesting party either must show that our prior decision contains errors of fact or law, or must present information not previously considered that warrants reversal or modification of the decision. 4 C.F.R. § 21.14(a) (2006). We will not reconsider a decision where the request is based on information that was available to the requester and could have been presented during our initial consideration of the protest. Department of Commerce–Recon., B-294121.5, Apr. 12, 2005, 2005 CPD ¶ 64; Specialty Marine, Inc.–Recon., B-292053.2, July 29, 2003, 2003 CPD ¶ 135 at 3 n.2.

Ravens argues that our decision is based on errors of fact and law because at least some of Rowe's allegedly improper conduct took place while NOSLOT's protest was pending, that is, prior to the time that offerors submitted their revised proposals. Thus, Ravens asserts, our decision wrongly concluded that the new evaluation and award decision will be based on proposals submitted before Rowe's improper conduct. To support this argument, Ravens points to sworn statements by Ravens employees that were submitted with Ravens's April 6 protest. Ravens maintains that these statements recount how, on April 3, 2006[1] and March 27, 2006, respectively, a Rowe official told these Ravens employees that Rowe received the award following the original corrective action because Rowe submitted a work schedule that was based on the schedule that Ravens submitted with its initial proposal.[2] Ravens argues that these statements show both that Rowe obtained information–Ravens's

---

[1] This statement actually indicates that the conversation took place on April 3, 2005. However, since this is before the solicitation was issued, it appears that the date in the statement is a typographical error.

[2] Ravens's reconsideration request includes another sworn statement by this employee, dated June 1, 2006, in which the employee now recounts that during the April 3 communication the Rowe official admitted having certain information about Ravens's proposal while the agency was implementing the corrective action in response to the NOSLOT protest, that is, before final proposal revisions (FPR) were submitted. This conversation allegedly took place on April 3, however, so that the information was available on April 6, when Ravens first protested Rowe's allegedly improper conduct. Since the information was not presented at that time, it cannot now be used to form the basis of a reconsideration request. Department of Commerce–Recon., supra; Specialty Marine, Inc.–Recon., supra.

work schedule–from Ravens's proposal before Rowe submitted its final proposal revision, and that Rowe used the information in its final proposal revision to win the award.

Ravens mischaracterizes the Ravens employee's statements. The first statement declares, in relevant part, that "[the Rowe representative] informed me that during the initial bid The Ravens Group submitted a schedule whereas his company did not submit one." Similarly, the second statement recounts, in relevant part, that "[the Rowe representative stated] the only reason he did not win the original bid was because The Ravens Group submitted a work schedule and he did not." These statements do not indicate that the Rowe official stated that its employees viewed Ravens's work schedule before, or even after, Rowe submitted its FPR, or stated that the firm's work schedule was based on Ravens's. Further in this regard, Ravens stated in its April 6 protest that its employees admitted that Rowe had paid them for information regarding Ravens's schedule and employees "during the pendency of the Ravens Group's Protest."[3] Ravens's protests, as discussed above, were submitted after Rowe received the contract award and, therefore, after Rowe's FPR had been submitted. We conclude that Ravens has not demonstrated that our decision was based on an error of fact or law.

The request for reconsideration is denied.

Gary L. Kepplinger
General Counsel

[3] Ravens also reiterates its argument that we should require the agency to eliminate Rowe from the competition based on its allegedly improper business practices –accessing the JPAS database and paying Ravens's employees for information. However, this constitutes no more than disagreement with our conclusion that these actions did not cause any competitive harm to Ravens. Accordingly, this argument provides no basis for us to reconsider the decision. See HK Sys., Inc.–Protest and Recon., B-291647.6, B-291647.7, Aug. 29, 2003, 2003 CPD ¶ 159.

GAO
Accountability * Integrity * Reliability

United States Government Accountability Office
Washington, DC 20548

# Facsimile Transmission Sheet

**Date:** July 14, 2006 Number of pages, including this cover sheet:

**Re:** B-296741.7

**Protest of:** The Ravens Group, Inc.

From: Mary G. Curcio, Senior Attorney

| Name | Firm/Agency | Phone | Fax |
|---|---|---|---|
| Daryle A. Jordan, Esq. | Patrick Henry LLP | 703-256-7754 | 703-256-7883 |
| Denise .Carter | Defense Intelligence Agency | 202-231-2838 | 202-231-2831 |
| Kenneth B. Weckstein, Esq. | Epstein Becker & Green, P.C. | 202-861-1860 | 202-296-2882 |

Patrick Henry LLP
7619 Little River Turnpike
Suite 340
Annandale, Virginia 22003
(703) 256-7754
Fax: (703) 256-7883

# FAX COVER SHEET

FROM: Daryle A. Jordan
FAX No. 703.256.7883
PHONE No. 703.256.7754
Client/Matter: The Ravens Group, Inc.
Date: September 23, 2006

| DOCUMENTS | NUMBER OF PAGES (including cover)* |
|---|---|
| | |
| **The Ravens Group, Inc. Protest of Defense Intelligence Agency's Termination of a Contract Award to The Ravens Group and Award to NOSLOT Cleaning Services, Inc.** | Eight (8) |
| | |
| | |

**PLEASE DELIVER TO THE FOLLOWING INDIVIDUALS IN YOUR ORGANIZATION**

| NAME | ORGANIZATION | PHONE # | FAX # |
|---|---|---|---|
| Office of the General Counsel, GAO | Procurement Law Control Group | 202.512.8234 | 202.512.9749 |
| Cheong J. Chon, Contracting Officer | Virginia Contracting Activity, Bolling Air Force Base | 202.231.8416 | 202.231.2831 |
| Joe N. Ballard | The Ravens Group | 301.577.8585 | 301.577.9097 |

COMMENTS:

*The information contained in this facsimile message is information protected by attorney-client and/or the attorney/work product privilege. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by facsimile. If the person actually receiving this facsimile or any other reader of the facsimile is not the named recipient or the employee or agent responsible to deliver it to the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the above address via U.S. Postal Service.*

*NOT COUNTING COVER SHEET. IF YOU DO NOT RECEIVE ALL PAGES, PLEASE TELEPHONE US IMMEDIATELY AT:

Protected Information To Be Disclosed Only
In Accordance With United States Court of
Federal Claims Protective Order

P.002/025
202 231 2831
09/23/2006 14:57 #100 P.002
703 256 7883
AE-2A
SEP-25-2006 16:37 From:Patrick/Henry LLP

7619 Little River Turnpike
Suite 340
Annandale, VA 22003
Tel: 703.256.7754
Fax: 703.256.7883

RICHARD E. PATRICK
admitted in VA, DC

MAYNARD M. HENRY, SR.
admitted in VA, DC, PA, MI

SHARON L. THEODORE-LEWIS
admitted in MD, DC, NY, OH

DARYLE A. JORDAN
admitted in VA, DC, PA

Of Counsel

YUVORA NONG
admitted in VA, DC, FL

ETHEL MITCHELL
admitted in MD, DC, TX
US Virgin Islands, China

MALIK N. DRAKE
admitted in VA, DC
USPTO Registration

ELTON F. NORMAN
admitted in DC, MD, CA

MARYLAND OFFICE
5900 Princess Garden Parkway
Suite 640
Lanham, MD 20706
Tel: 240.296.3488

246

**PROTECTED MATERIAL:**
**TO BE DISCLOSED ONLY IN ACCORDANCE WITH**
**GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER**

September 23, 2006

**VIA U.S. MAIL & FACSIMILE**
Office of the General Counsel
U.S. Government Accountability Office
441 G Street, N.W.
Washington, D.C. 20548

Attention: Procurement Law Control Group

**Re: Protest of the Ravens Group, Inc.**
**Under Request for Proposal No. HHM402-05-R-0017**
**Defense Intelligence Agency**

Dear Sir:

The Ravens Group, Inc. ("Ravens Group"), 9901 Business Parkway, First Floor, Suite H, Lanham, Maryland 20706, by its undersigned counsel, hereby protests the Defense Intelligence Agency's ("DIA" or "Agency") proposed revocation of its award to the Ravens Group of a contract pursuant to Request for Proposal No. HHM402-05-R-0017 (the "RFP") and award of this requirement to NOSLOT Cleaning Services, Inc. ("NOSLOT"). The Ravens Group's telephone number is 301.577.8585 and its facsimile number is 301.577.9097. The Contracting Officer for this procurement is Cheong J. Chon, Virginia Contracting Activity, 200 MacDill Boulevard, Building 6000, Bolling Air Force Base, Washington, D.C. 20340-5100. The Contracting Officer's telephone number is 202.231.8416 and his facsimile number is 202.231.2831. A copy of this protest is being sent via facsimile to the Contracting Officer.

The Ravens Group first learned of the information upon which this Protest is based, including the prejudice to The Ravens Group, on September 14, 2006. Because this protest is being filed within ten (10) days of The Ravens Group's notice of the bases of the Protest, the Protest is timely filed. 4 C.F.R. § 21.2(a)(2) (2006).

***The Ravens Group requests that GAO notify the Defense Intelligence Agency today of this protest because notice today appears necessary to secure a "stay" of performance pursuant to FAR 33.104(c).***

SEP-25-2006 16:38 AE-2A 202 231 2831 P.003/025
From:Patrick/Henry LLP 703 256 7883 09/23/2006 14:57 #100 P.003

247



## I. SUMMARY

This is the third award of this same procurement. By letter, dated June 17, 2005, DIA awarded the contract to The Ravens Group, stating that award "was determined to be in the best interest of the Government . . . price and other factors considered." By letter, dated March 23, 2006, nearly nine (9) months later, DIA awarded this same contract to Rowe Contracting Services, Inc. ("Rowe"), stating again that award "was determined to be in the best interest of the Government . . . price and other factors considered." By letter, dated September 13, 2006, received by The Ravens Group September 14, 2006, DIA awarded this contract for the third time—this time to NOSLOT. Once again, DIA stated in its ward letter that award to NOSLOT was the "best value to the Government, price and other factors considered."

Under well-established GAO case law, The Ravens Group hereby protests the termination of its contract and award to NOSLOT on the basis that the termination is improper; there was no defect in the original award decision to The Ravens Group. Moreover, even if the initial award to The Ravens Group is determined to be improper, the corrective action taken by DIA is insufficient to protect the integrity of the competitive system.

## II. BACKGROUND

### A. Initial Contract Award to The Ravens Group

DIA issued RFP No. HHM402-05-R-0017 for janitorial/custodial services at its facility located on Bolling Air Force Base on April 14, 2005.

In accordance with the evaluation criteria of the RFP, award of the contract was to be made to "the responsible offeror whose offer, conforming to the solicitation, is determined to be the "best value" to the Government." *See* RFP, p. 40. DIA awarded the Contract to The Ravens Group on June 28, 2005, and The Ravens Group began performance of the Contract on or about July 1, 2005.

### B. Protest of Original Award to The Ravens Group

In June 2005, NOSLOT filed a protest of the award to The Ravens Group. DIA, however, did not notify The Ravens Group of the protest until on or about August 30, 2005. The protest was ultimately dismissed based on DIA's agreement to take corrective action; however, DIA never provided The Ravens Group an explanation regarding its delay in notifying The Ravens Group about the NOSLOT protest.

On March 23, 2006, nine (9) months following the original contract award, DIA notified The Ravens Group that it had completed the corrective action, and had determined that the contract should be awarded to Rowe.

**C. The Ravens Group's Protests**

In response to the award to Rowe, The Ravens Group filed the first of three (3) protests on March 27, 2006. GAO dismissed the March 27th protest on April 6, 2006, based on DIA's agreement to take corrective action.

The Ravens Group subsequently filed protests on April 6, 2006, and April 20, 2006, alleging that Rowe engaged in unfair and unethical conduct that competitively disadvantaged The Ravens Group. GAO dismissed these protests on the ground they would serve no practical consequence in light of DIA's decision to take corrective action. The Ravens Group filed a third protest on May 12, 2006, on the ground that the corrective action proposed by DIA would be inadequate due to the unfair and unethical conduct by Rowe. This protest was also dismissed by GAO.

By agreeing to take corrective action, DIA has acknowledged deficiencies or irregularities with this procurement on two (2) occasions. In each instance, however, because of its decision to take corrective action, no agency report was issued. Given the mounting mistakes and delays in resolving this procurement action, it is now incumbent upon DIA in the interest of the integrity of the procurement, to issue an agency report and allow a comprehensive review of the agency's proposal evaluations and award decisions.

**III. <u>BASES OF PROTEST</u>**

**A. The Initial Award to The Ravens Group was Proper; therefore, the Proposed Termination of The Ravens Group's Contract is Improper**

The initial award to The Ravens Group was entirely proper; there was no impropriety in the initial award to The Ravens Group. Thus, the decision to terminate The Ravens Group's contract is not justified. Generally, GAO will not review a contracting officer's decision to terminate a contract for convenience. Where, however, the "contracting agency's action is based upon the determination that the contract was improperly awarded, our Office [GAO] will review the validity of the procedures leading to the award to the terminated contractor." *See Government Associates,* B-240682.5, 93-2 CPD ¶ 215 (Oct. 12, 1993).

GAO's review of the initial award to The Ravens Group is justified in this instance because the procurement is a "best value" procurement and The Ravens Group provided the best

SEP-25-2006 16:38 From:Patrick/Henry LLP AE-2A 703 256 7883 09/23/2006 14:58 #100 P.005 202 231 2831 P.005/025





value to the Government, a fact the Government has acknowledged twice. In its June 17, 2005, award letter, the Government acknowledged in writing that The Ravens Group provided the "best value" to the Government. In December 2005, DIA again, determined that award to The Ravens Group presented the "best value" to the Government, when DIA exercised the first option period of the Contract.

Before exercising a Contract option, the contracting officer must review the circumstances existing at the time of its consideration of the option and make a number of important determinations. FAR § 17.207 (c) provides that a contracting officer may exercise options only after determining: ". . . the exercise of the option is the most advantageous method of fulfilling the Government's need, price and other factors . . . considered."

Thus, by exercising the Contract option, which it was under no obligation to do, DIA made a second affirmative determination that award to The Ravens Group provided the "best value" to the Government.

The Ravens Group still provides the "best value" to the government "price and other factors considered." Thus, the termination of The Ravens Group's contract is improper.

**B. Even if the Initial Award to The Ravens Group was Improper, the Corrective Action Taken by DIA is Insufficient to Protect the Integrity of the Competitive Procurement System**

As discussed above, the initial award to The Ravens Group was proper. Even if, however, the initial award to The Ravens Group is determined to have been improper, the termination of The Ravens Group's contract and award to NOSLOT, based on the corrective action announced by DIA, is wholly inadequate and insufficient to protect the integrity of the competitive procurement system. As discussed above, it is well-established that GAO will review the validity of the initial award of a contract in those circumstances where the initial awardee is terminated for convenience. *See Government Associates, supra.* Even if, however, GAO determines that the initial award was improper, it must make a further finding regarding "whether the corrective action taken is sufficient to protect the integrity of the competitive procurement system." *See Allied Trailer Sales & Rentals*, B-224816.2, 86-2 CPD ¶ 522 (Nov. 5, 1986); *O.K. Tool & Die Co.*, B-219806, 85-2 CPD ¶ 398 (Oct. 9, 1985).

The corrective action announced by DIA was simply to conduct a new source selection by reviewing the "offerors previously submitted proposals." DIA's record in this case, however, strongly suggests that the administration of this procurement, including DIA's application of the established evaluation factors may be severely and irreparably flawed. Thus, mere review of the offerors previously submitted proposals, would be inadequate and insufficient to protect the

SEP-25-2006 16:39 AE-2A 202 231 2831 P.006/025
From:Patrick/Henry LLP 703 256 7883 09/23/2006 14:58 #100 P.006





integrity of the competitive procurement system. DIA has made a number of notable, serious, and prejudicial mistakes in connection with this procurement action, including: 1) failing to notify The Ravens Group in timely manner of the NOSLOT protest; 2) taking an unreasonably long period—nine months—to take corrective action following NOSLOT's protest; 3) determining that Rowe presented the "best value" to the Government; 4) taking an unreasonably long period—almost six months—to take corrective action following The Ravens Group's protest; and 5) determining that NOSLOT now presents the "best value" to the Government. Thus, DIA has determined that three (3) different contractors present the "best value" to the government, presumably applying the same RFP requirements, evaluation scheme, and evaluation factors. The questionable history of this procurement argues against the mere review of previously provided proposals and compels a comprehensive review of the entire procurement process through the protest procedures. The corrective action taken by DIA in this instance, is inadequate and insufficient to protect the integrity of the competitive procurement system.

Given the above, and the fact that The Ravens Group has successfully performed this requirement for over a year, the totality of the circumstances requires a comprehensive review of this procurement, including the issuance of an agency report, and all of the RFP and source selection documents.

The necessity of a comprehensive review of the procurement procedures in this case, significantly outweighs the need for a speedy resolution of this procurement. As discussed above, DIA took nine (9) months to complete its corrective action following the NOSLOT protest. It took almost six (6) additional months to complete its corrective action following The Ravens Group initial protest. Thus, DIA has not itself acted efficiently in resolving this procurement. Moreover, as noted, The Ravens Group has successfully performed the requirement for over a year. Accordingly, there is no need to rush to fulfill this requirement. Thus, a further slight delay in the resolution of this procurement, to take prudent and appropriate action to review the procurement process in this instance, is essential to determine whether DIA made other prejudicial errors, and to ensure the integrity of the procurement system.

## IV. CONCLUSION

The Ravens Group requests a ruling on its protest by GAO that DIA's decision to terminate its original award to The Ravens Group was improper; and therefore, award to The Ravens Group was in fact proper and presents the "best value" to the Government. The Ravens Group therefore respectfully requests that the GAO recommend the following:

SEP-25-2006 16:39 From:Patrick/Henry LLP 703 256 7883 09/23/2006 14:59 #100 P.007 202 231 2831 P.007/025 AE-2A



251

1. that DIA reverse its decision to terminate the Contract Award to the Ravens Group on the ground that the award decision was proper, in accordance with the RFP and evaluation factors, and justified; and
2. that DIA reinstate The Ravens Group on the ground that the initial award decision to The Ravens Group was proper; and
3. that DIA pay the Ravens Group its attorneys fees and other costs incurred in pursuing this protest.

In the alternative, the Ravens Group requests that GAO recommend that:

1. DIA issue a new solicitation and begin this procurement action again, including the receipt and review of new proposals;

## V. DISCOVERY REQUEST

The Ravens Group requests that DIA produce the following documents:[1]

1. All documents evidencing or reflecting NOSLOT's original protest of the award to The Ravens Group, including the original protest letter, the contracting officer's statement, the legal opinion, the agency report, and any other communication regarding the original protest.

2. All documents evidencing or reflecting the technical evaluation of The Ravens Group and the other offerors.

3. All documents evidencing or reflecting the bases for DIA's original decision to award the Contract to The Ravens Group, its subsequent decision to award to Rowe, and its most recent decision to award to NOSLOT.

4. All documents upon which The DIA relied in evaluating the Ravens Group and the other offerors.

5. All documents evidencing or reflecting DIA's evaluation of the capabilities of The Ravens Group and the other offerors.

6. All documents evidencing or reflecting DIA's consideration of The Ravens Group's past performance and experience in making its award decision.

[1] This request includes all information relating to DIA's original evaluation which led to the award to the Ravens Group as well as any subsequent evaluation relating to the determination to revoke the Ravens Group's award.

09/23/2006 14:59 #100 P.008
202 231 2831 P.008/025
/03 256 /883
AE-2A
SEP-25-2006 16:39
From:Patrick/Henry LLP



252

7. All documents evidencing or reflecting DIA's consideration of The Ravens Group's price proposal, Rowe's price proposal, and NOSLOT's price proposal in making its award decision.

8. Any and all information and communications between the Agency and The Ravens Group, the agency and Rowe, and/or the agency and NOSLOT, relating to the RFP and the multiple award decisions.

9. All Agency communications in connection with the RFP.

10. All documents relating to The Ravens Group's Rowe's and NOSLOT's proposals, including but not limited to all internal agency correspondence, memoranda and notes referring or relating to the RFP, including those relating to the proposals.

11. The source selection plan, if any.

12. Any and all other guidance provided to the evaluators, or referred to by them.

## VI. REQUEST FOR HEARING AND PROTECTIVE ORDER

If the issues in this case cannot be resolved on the basis of the documents requested, the Ravens Group requests a hearing on all of the matters set forth herein. 4 C.F.R. § 21.1(d) (2006). The Ravens Group also requests that a protective order be issued in this protest.

Respectfully submitted,

Patrick Henry LLP

Daryle A. Jordan
Counsel to The Ravens Group, Inc.

Enclosures

Cc: Cheong J. Chon
Contracting Officer
Virginia Contracting Activity
Bolling Air Force Base

DEPARTMENT OF THE ARMY
UNITED STATES ARMY LEGAL SERVICES AGENCY
901 NORTH STUART STREET
ARLINGTON, VA 22203-1837
(703) 696-2825; DSN 426; Fax ext. 1537
E-mail: Peter.Tran@hqda.army.mil

REPLY TO
ATTENTION OF

October 4, 2006

Contract and Fiscal Division

**VIA FACSIMILE**

Ms. Mary G. Curcio, Esq.
Office of the General Counsel
U.S. Government Accountability Office
441 G. Street, NW
Washington, D.C. 20548

Subject: Protest of The Ravens Group, Inc., B-296741.8

Dear Ms. Curcio:

Pursuant to 4 Code of Federal Regulations ("C.F.R.") § 21.3(b), enclosed please find the Agency's motion to summarily dismiss the subject protest. A copy of this motion has been sent to Daryle A. Jordan, Esq., counsel for The Ravens Group, Inc. (hereafter "Protester" or "Ravens Group"), on this date. This motion does not contain protected material. Any comments by the Protester regarding this motion should be sent directly to your office with a copy forwarded to:

MAJ Peter H. Tran
Contract and Fiscal Division, Team I
ATTN: JALS-KFLD
901 North Stuart Street, Suite 500
Arlington, Virginia 22203-1837

Solicitation No. HHM402-05-R-0007 ("Solicitation") is to provide janitorial/custodial service for the Defense Intelligence Analysis Center ("DIAC") and the expansion building at Bolling Air Force Base. The Solicitation calls for the contractor to assure that the DIAC and the DIAC expansion building to be neat clean, and dust free. In the protest submitted by Ravens Group, Protester cites two grounds for its protest of

the award of the solicitation to NOSLOT Cleaning Services, Inc. ("NOSLOT"). Protester's challenges, however, are not only untimely, but have no factual or legal basis to support a protest before the GAO. We believe this motion is well founded and if granted will dispose of this protest in its entirety. As such, we do not plan to file a formal Agency Report unless so directed by the GAO.

**FACTUAL SUMMARY**

1. The Defense Intelligence Agency ("DIA") issued Solicitation No. HHM402-05-R-0017 on April 14, 2005 with an original closing date of May 13, 2005. (Exhibit 1) On June 17, 2005, award was made to Ravens Group. (Exhibit 2)

2. On June 27, 2005, NOSLOT protested (B-296741) the award. GAO dismissed NOSLOT's protest on July 8, 2005 as being premature. (Exhibit 3) NOLSOT submitted a second protest (B-296741.2) on July 12, 2005. Olympus Building Services, Inc. ("Olympus") on also protested (B-296914) the award on July 19, 2005.

3. In response to the two protests, the Agency notified GAO of its intent to take corrective action on August 2, 2005.[1] (Exhibit 4) The Agency's notice of corrective clearly stated:

> The Agency intends to re-evaluate the nine proposals that were received at the close of the original submission deadline on May 13, 2005. Once the proposals have been re-evaluated, award may be made without discussions. If the Agency determines that discussions are warranted, a competitive range will be established and discussions will be conducted with all offerors within the range. Upon completion of discussions, offerors within the competitive range will be provided the opportunity to submit final revised proposals.

---

[1] Although the corrective action memo is dated August 1, 2005, it was not presented to GAO and the parties until August 2, 2005. Accordingly, the memo will hereto be referred to as the "August 2, 2005" notice of corrective action.

(Exhibit 4) Based on the Agency's notice of corrective action, GAO dismissed NOSLOT's protest on August 4, 2005. (Exhibit 5) Also, based on Olympus' voluntary withdraw, GAO closed the Olympus protest on August 8, 2005. (Exhibit 6)

4. Amendment 0005 to the Solicitation was issued on August 12, 2005 implementing the corrective action by notifying offerors of the Agency's intent to re-evaluate all technical proposals that had been submitted on May 13, 2005, and that no new proposals will be accepted for re-evaluation. (Exhibit 7)

5. On November 4, 2005, as part of the re-evaluation, discussion letters were sent out to offerors in the competitive range. (Exhibit 8) In the discussion letters, offerors were notified that Final Proposal Revisions ("FPR") were due to the Agency by November 22, 2005.

6. After receipt and evaluation of offeror's FPRs, award was made to Rowe Contracting Services, Inc. ("Rowe") on March 22, 2006. Ravens Group filed a protest (B-296741.3) on March 27, 2006. (Protest at 3) On April 3, 2006, the Agency notified GAO of its intent to take corrective action. (Exhibit 9) The notice of corrective action stated:

> The Agency intends to conduct a new source selection and a new Source Selection Decision will be issued. If after the new source selection is conducted and a contractor other than Rowe is deemed to be the appropriate awardee, the contract with Rowe will be terminated for convenience and the appropriate offeror awarded a contract for the reminder *[sic]* of the services required.

(Exhibit 9) Based on the Agency's intent to take corrective action, GAO dismissed the protest on April 6, 2006 as being "academic." (Exhibit 10)

7. Before the Agency was able to implement its proposed corrective action, Ravens Group submitted its second protest (B-296741.4) on April 6, 2006. (Protest at 3) GAO, *sua sponte*, dismissed the protest on April 17, 2006. (Exhibit 11)

8. Ravens Group filed its third and fourth protests on April 20, 2006 (B-296741.5) and May 12, 2006 (B-296741.6), respectively. (Protest at 3) In a response to a request from GAO, the Agency, on May 16, 2005, submitted a clarification memo regarding the proposed corrective action. (Exhibit 12) In the memo, the Agency clarified:

> The Agency simply intends to conduct a new source selection. The Agency will not be conducting a new technical evaluation of proposals or accepting revised proposals from any offerors. The new source selection will be based on the offerors' previously submitted proposals, which does not include a review of any Joint Personnel Adjudication System ("JPAS") files. The JPAS is a database managed by the DoD Agency Central Adjudication Facilities and is used to confirm the clearance validity of contractor personnel. The JPAS is a contract administration tool that is not used during the procurement process

(Exhibit 12) As before, GAO dismissed the two protests on May 19, 2006. (Exhibit 12) In dismissing the Ravens Group protests, GAO specifically found:

> Raven's assertions do not constitute a valid basis of protest because, even if we found them meritorious, they would not provide a basis for sustaining the protest. . . . It follows that Ravens was not competitively prejudiced, and that there would be no basis for sustaining the protest.

(Exhibit 13)

9. Subsequent to the dismissal of its latest protests, Ravens Group submitted a request for reconsideration to GAO on June 1, 2006. (B-296741.7) GAO summarily denied Protester's request for reconsideration on July 14, 2006. (Exhibit 14)

10. With all of Raven's protests dismissed, the Agency proceeded to implement the corrective action by conducting a new source selection with a new source selection authority ("SSA"). NOSLOT was awarded the contract under the new source selection,

and offerors were notified of award on September 14, 2006. (Exhibit 15) The notice of award to unsuccessful offerors included an offer to provide debriefings upon request. Ravens Group filed its latest protest (B-296741.8) with GAO on September 23, 2006, without requesting the offered debriefing.

## ARGUMENT

This protest must be dismissed because (1) Protester fails to state a valid for protest; and (2) the challenges to the corrective action are undeniably untimely.

### *I. The protest allegations do not state a basis for review by GAO.*

Protester asserts two allegations in its protest. Ravens Group claims in its first allegation:

> The initial award to The Ravens Group was entirely proper; there was no impropriety in the initial award to the Ravens Group. Thus the decision to terminate The Ravens Group's contract is not justified.

(Protest at 3) Generally, the determination of whether a contract should be terminated for the convenience of the government is a matter of contract administration and generally is not reviewable by the GAO under the Bid Protest Regulations. *Jets Services, Inc.*, B-190584, Nov. 22, 1977, 1977 U.S. Comp. Gen LEXIS 1842. However, even if GAO believes there is sufficient connection between the termination for convenience of Ravens Group and the award of the contract to NOSLOT to justify review, Protester is still required to provide some valid ground for protest. The Bid Protest Regulations[2] contemplate that protesters will provide, at a minimum, either allegations or evidence sufficient, if uncontradicted, to establish the likely likelihood of

---

[2] 4 C.F.R. § 21 (2006).

the protester's claim of improper agency action. *Alascom, Inc. – Second Reconsideration*, B-250407.4, May 26, 1993, 93-1 CPD ¶ 411. Here, Protester alleges nothing more than that because this was a "best value" procurement, Ravens Group cannot be terminated because it provided the best value to the Government. Protester has provided absolutely no substantive evidence other than an unqualified assertion to support its undefined allegation. Accordingly, any such allegations should be dismissed as failing to set forth a detailed statement of the legal and factual grounds to protest or failed to state legally sufficient grounds to protest. 4 C.F.R. § 21.5(f) (2005), citing 4 C.F.R. §§ 21.1(c)(4) and 21.1(f).

Protester also attempts to make the argument that because the Agency exercised the first option period on the contract with Ravens Group, the Agency had made some kind of "affirmative determination that award to The Ravens Group provided the 'best value' to the Government." (Protest at 4) This is a specious argument at best because Protester was fully aware, through the notice and issuance of Amendment 0005, that the solicitation for the janitorial services in question was in the process of a full re-evaluation as a result of the corrective action promised to GAO. (Exhibits 4 and 7) Accordingly, the Agency was not free to re-issue the solicitation or conduct a new competition for custodial service requirements. The Agency's notice of corrective action plainly provided:

> In light of the serious detrimental impact that would result from work stoppage under the present awarded contract, current janitorial and custodial services will continue unimpeded. If after the evaluation, another contractor is deemed the appropriate awardee, the contract with the Ravens Group, LLC, will be terminated for convenience and the appropriate offeror awarded a contract for the reminder [*sic*] of the services required. An amendment to the Solicitation will be issued implementing the corrective action at the close of the protest.

(Exhibit 4) As there was little choice available to the Agency but to exercise the option period on Ravens Group's contract during the pendency of proposal re-evaluation, it is hardly accurate, and completely misleading, to claim that the Government made a new "best value" determination about Protester's proposal in this circumstance. The Agency was only implementing the corrective action in accordance with the notice provided to GAO. Because the re-evaluation had not been completed, the Agency was obliged to continue janitorial services with Ravens Group by exercising the option at the expiration of the base period.

Furthermore, even if, *arguendo*, the unsupported assertion that Protester presented the "best value" to the Government constituted a reviewable allegation by GAO, the protest should still be denied. Protester's simple, unsupported assertion amounts to nothing more than a mere disagreement with the Agency's source selection decision. Although Ravens Group takes exception with the evaluation and award decision, Protester's mere disagreement with the Agency's conclusions does not render it unreasonable. *UNICCO Gov't Servs., Inc.*, B-277658, Nov. 7, 1997, 97-2 CPD ¶ 134. Therefore, this allegation should be dismissed.

Finally, to the extent that Protester is attempting, in this allegation, to protest the Agency's implementation of the corrective action approved by GAO, the protest is untimely and should be dismissed. The Agency responds to this allegation fully in the following section.

## *II. Protester's challenge to the corrective action is untimely.*

To the extent that Protest challenges the Agency's corrective action proposed on August 2, 2005, this allegation is without merit and, without a doubt, untimely. The notice of corrective action clearly stated:

> The Agency intends to re-evaluate the nine proposals that were received at the close of the original submission deadline on May 13, 2005. Once the proposals have been re-evaluated, award may be made without discussions. If the Agency determines that discussions are warranted, a competitive range will be established and discussions will be conducted with all offerors within the range. Upon completion of discussions, offerors within the competitive range will be provided the opportunity to submit final revised proposals.

(Exhibit 4) Amendment 0005 to the Solicitation was issued on August 12, 2005 notifying all offerors of the Agency's intent to take corrective action. (Exhibit 7) By that date, Protester was plainly on notice of the Agency's intent to re-evaluate the proposals that had been submitted on May 13, 2005.[3] Even if Ravens Group had wanted to challenge the Agency's decision to take corrective action, Ravens Group would have had no basis to do so. An agency has broad discretion in a negotiated procurement to take corrective action where the agency determines that the action is necessary to ensure a fair and impartial competition. *Strand Hunt Constr., Inc.*, B-292415, Sept. 9, 2003, 2003 CPD ¶ 167 at 4; *SMS Data Prods. Group, Inc.*, B-280970.4, Jan. 29, 1999, 99-1 CPD ¶ 26 at 2. Where the agency has reasonable concern that there were errors

---

[3] Ravens Group alleges that it was not notified of the NOSLOT protest until the issuance of Amendment 0005, notifying offerors of the corrective action. Even if true, GAO has held that the failure to notify the awardee of a protest is a procedural deficiency which confers no substantive rights on the awardee and, at best, provides the basis for the right to a procedural remedy. *BDM Management Services Co.*, B-2111036.2, April 9, 1984, 84-1 CPD ¶ 392. As the Agency took corrective action before the Agency Administrative Report was due, Ravens Group suffered no prejudice due to any possible procedural errors. In fact, Protester suffered no prejudice because it has been allowed to continue to perform the contract since June of 2005 pending the resolution of the protests. Protester is the only party that has nothing to lose from submitting multiple protests in order to extend the time of its performance.

in the procurement, even if the protest could be denied, it as within the agency's discretion to take corrective action, which may include the amendment of a solicitation and the request for and evaluation of another round of final proposals. *Federal Sec. Sys., Inc.*, B-281745.2, Apr. 29, 1999, 99-1 CPD ¶ 86 at 5. Additionally, GAO will generally not object to the specific corrective action, so long as it is appropriate to remedy the concern that caused the agency to take corrective action. *Id.*; *Networks Elec. Corp.*, B-290666.3, Sept. 30, 2002, 2002 CPD ¶ 173 at 3. Consequently, the Agency's decision to conduct a full re-evaluation of the submitted proposals was not legally objectionable because the corrective action would protect the integrity of the procurement process but would also not cause any prejudice to an offeror. Furthermore, even if Ravens Group had objected to the scope of the corrective action, Protester's mere disagreement with the scope of the corrective action does not provide a basis to question the agency's actions. *See Hyperbaric Technologies, Inc.*, B-293047.2, B-293047.3, Feb. 11, 2004, 2004 CPD ¶ 87.

Finally, after discussions were conducted, Ravens Group submitted a Final Proposal Revision (FPR) on November 29, 2005 as part of the Agency's re-evaluation process. Clearly, not only was Protester aware of the Agency's intent to re-evaluate the proposals as stated in the notice memo and amendment to the Solicitation, but Protester was also a willing participant in the ongoing award process for the original solicitation requirements. There is no basis now for Protester to suddenly challenge the August 2, 2005 corrective action notice. Moreover, it is most telling that Protester raises this issue only after award was made to *another* offeror. Protester was otherwise silent during the period between the August 2, 2005 notice and the March 22, 2006

award to Rowe. This argument is plainly disingenuous and obviously self-serving. Furthermore, since Protester was not only aware of the Agency's corrective action but raised no objection at the time of notification, any attempt to presently protest the August 2, 2005 corrective action is unsupportable and unquestionably untimely. 4 C.F.R. § 21.2(a)(2); *The Real Estate Center*, B-274081, Aug. 20, 1996, 1996 CPD ¶ 74. For all the reasons stated, this allegation should be dismissed.

Subsequent to the award to Rowe on March 22, 2006, Ravens Group filed a protest (B-296741.3) on March 27, 2006. (Protest at 3) On April 3, 2006, the Agency notified GAO of its intent to take corrective action. Based on this notice, GAO dismissed Ravens Group's protest on April 6, 2006. The notice of corrective action stated:

> The Agency intends to conduct a new source selection and a new Source Selection Decision will be issued. If after the new source selection is conducted and a contractor other than Rowe is deemed to be the appropriate awardee, the contract with Rowe will be terminated for convenience and the appropriate offeror awarded a contract for the reminder *[sic]* of the services required.

In its second allegation, Protester now seeks to challenges the Agency's April 3, 2006 corrective action notice by asserting:

> Even if, however, the initial award to The Ravens Group is determined to have been improper, the termination of The Ravens Group's contract and award to NOSLOT, based on the corrective action announced by DIA, is wholly inadequate and insufficient to protect the integrity of the competitive procurement system.

(Protest at 4) This challenge is completely without merit and, as with Protester's first allegation, is definitely untimely.

In dismissing the B-296741.3 protest, GAO stated, "We view the protest as academic because the Agency has decided to reconsider the award decision." (Exhibit

10) In the decision, GAO specifically acknowledged that, "[GAO's] role in resolving bid protests is to ensure that the statutory requirements for full and open competition are met," and held that "[GAO] will not consider a protest where the issue presented has no practical consequences with regard to an existing federal government." *Id.* GAO made the same findings when it summarily dismissed Ravens Group's second (B-296741.4) protest on April 17, 2006. (Exhibit 12)

Subsequent to the dismissal of its second protest, Ravens Group filed its third (B-296741.5) and fourth (B-296741.6) protests. GAO, again, dismissed these protests, finding:

> Raven's assertions do not constitute a valid basis of protest because, even if we found them meritorious, they would not provide a basis for sustaining the protest. In this regard, prejudice is an essential element of any viable protest and, even where the record establishes a procurement deficiency, we will sustain a protest only where the deficiency resulted in the competitive prejudice to the protester. Ravens has not demonstrated competitive prejudice here. . . . It follows that Ravens was not competitively prejudiced, and that there would be no basis for sustaining the protest.

(citations omitted) (Exhibit 13) In its decision to dismiss the third and fourth protests, GAO made very specific findings regarding Protester's factual allegations, ultimately holding that Ravens Group presented no factual allegations that would constitute a valid basis to protest. *Id.*

Finally, after all four of Ravens Group's protests were dismissed, Protester submitted a request for reconsideration (B-296741.7) to GAO on June 1, 2006. Consistent with its previous decisions, GAO denied Protester's request for reconsideration on July 14, 2006. (Exhibit 14) In rendering its decision, GAO, again, made specific findings of fact regarding Protester's allegation that its previous decision

was based on errors of fact and law. One of the factual findings made by GAO In denying Protester's request for consideration was that, "**Ravens mischaracterizes the Ravens employee's statements**." (emphasis added) *Id.* GAO finally concluded that "Ravens has not demonstrated that our decision was based on an error of fact or law," and promptly denied Ravens Group's request for reconsideration. *Id.*

Contrary to Protest's present allegations, Protester's challenge to the Agency's notice of corrective action on August 2, 2005 has already been decided, on numerous occasions, by GAO. Ravens Group cannot now come back and challenge the Agency's corrective action as being "insufficient to protect the integrity of the competitive procurement system." (Protest at 5) In dismissing Protester's four previous protests and denying the request for reconsideration, GAO has determined the Agency's proposed corrective actions adequately responded to the protest challenges and rendered the protest issues "academic." This matter has been decided, and protester asserts no new errors of fact or law in its latest that would invalidate GAO's prior decisions. As such not only is the challenge untimely, but fails to state a valid basis for protest.[4] 4 C.F.R. § 21.5(f) (2005), citing 4 C.F.R. §§ 21.1(c)(4) and 21.1(f). *M.B. Shaw Company – Reconsideration*, B-247247.2, Feb. 12, 1992, 92-1 CPD ¶ 182.

Finally, Protester's reliance on the *Allied Trailer*[5] decision is misguided. In *Allied Trailer*, GAO held that while it does not generally review a contracting agency's decision

---

[4] An example of Protester's meritless basis for this allegation is the assertion that the Agency took "an unreasonably long period – almost six months – to take corrective action following The Ravens Group's protest." (Protest at 5) The fact is that it was only five months between GAO's dismissal of the Ravens Group's first protest (April 6, 2005) and announcement of the award (September 14, 2006). However, Protester, itself, caused **three** of those months in delays by filling multiple subsequent protests and a request for consideration. GAO's denial of Protester's request for reconsideration did not come until July 14, 2006.

[5] *Allied Trailer Sales & Rentals*, B-224816.2, Nov. 5, 1986, 86-2 CPD ¶ 522.

to terminate a contract for convenience, it may do so where the decision to terminate is a result of an agency's finding that the initial award was improper. Here, the Agency's issuance of the first corrective action on August 2, 2005, was in response to NOSLOT's and Olympus' protests. The corrective action clearly stated the Agency intended to re-evaluate the all the proposals, and declared that:

> If after the evaluation, another contractor is deemed the appropriate awardee, the contract with the Ravens Group, LLC, will be terminated for convenience and the appropriate offeror awarded a contract for the reminder [*sic*] of the services required.

Protester was on notice of the Agency's decision to re-evaluate and terminate Protester's contract if another offeror was determined to be the appropriate awardee. Protester neither challenged the August 2, 2005 corrective action nor the issuance of Amendment 0005 to Solicitation, implementing the corrective action. As previously discussed, it is too late now for Protester to do so. 4 C.F.R. § 21.2(a)(2); *The Real Estate Center*, B-274081, Aug. 20, 1996, 1996 CPD ¶ 74. For all the reasons stated, this allegation should be dismissed.

**CONCLUSION**

WHEREFORE, for the reasons set forth above, the Agency respectfully requests that this protest be summarily dismissed. If you have any questions regarding this matter, please contact MAJ Peter Tran at (703) 696-2825; facsimile (703) 696-1537

Sincerely,

Peter H. Tran
Major, U.S. Army
Trial Attorney

Copies Furnished by facsimile:

Protester:

Daryle Jordan, Esq., Patrick Henry LLP
Telephone: (703) 256-7754; Facsimile: (703) 256-7883

Contracting Officer:

Cheong Chon, Defense Intelligence Agency, Virginia Contracting Agency
Telephone: (202) 231-8077; Facsimile: (202) 231-2831

Field Attorney:

LtCol Joe Treanor, Esq., Defense Intelligence Agency
Telephone: (202) 231-2821; Facsimile: (202) 231-2831

# SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS

*Offeror to Complete Blocks 12, 17, 23, 24, & 30*

1. Requisition Number: 448/01142/05

PAGE 1 OF 43

| 2. Contract No. | 3. Award/Effective Date | 4. Order Number | 5. Solicitation Number | 6. Solicitation Issue Date |
|---|---|---|---|---|
| | | | HHM402-05-R-0017 | Apr 14, 2005 |

7. [Solicitation Information Call:] a. Name JUANITA JONES | b. Telephone Number *(No collect calls)* (202)231-3613 | 8. Offer Due Date/Local Time May 13, 2005 / 14:00 PM

9. Issued By Code

10. This Acquisition is
- [X] Unrestricted
- [ ] Set-Aside % for
- [ ] Small Business
- [ ] HubZone Small Business
- [ ] 8(A)

NAICS: 561720

Size Standard: ____

11. Delivery for FOB Destination Unless Block is Marked.
[ ] See Schedule

12. Discount Terms

[ ] 13a. This contract is a rated order under DPAS (15 CFR 700)

13b. Rating

14. Method of Solicitation [ ] RFQ [ ] IFB [X] RFP

15. Deliver To Code HHP440

LOGISTICS APPLICATIONS INC.
3300 75TH AVE. REAR ENTRANCE
LANDOVER, MD 20785

16. Administered By Code

17a. Contractor/Offeror Code Facility Code

Telephone No. TIN:

18a. Payment Will Be Made By Code

17b. Check if Remittance is Different and Put Such Address in Offer. [ ]

18b. Submit Invoices to Address Shown in Block 18a Unless Box Below is Checked. [ ] See Addendum.

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | PLEASE NOTE PROPOSAL CLOSING DATE 13 MAY 2005 @ 2:00 P.M. | | | | |

25. Accounting and Appropriation Data

26. Total Award Amount *(For Govt. Use Only)*

[X] 27a. Solicitation incorporates by reference FAR 52.212-1, 52.212-4, FAR 52.212-3 and 52.212-5 are attached. Addenda [X] are [ ] are not attached

[ ] 27b. Contract/Purchase Order incorporates by reference FAR 52.212-4, 52.212-5 is attached. Addenda [ ] are [ ] are not attached

[ ] 28. Contractor is required to sign this document and return ______ copies to Issuing Office. Contractor agrees to furnish and deliver all items set forth or otherwise identified above and on any additional sheets subject to the terms and conditions specified herein.

[ ] 29. Award of Contract: Reference. ______ Offer Dated ______. Your offer on Solicitation (Block 5), including any additions or changes which are set forth herein, is accepted as to items:

30a. Signature of Offeror/Contractor

31a. United States of America *(Signature of Contracting Officer)*

30b. Name and Title of Signer *(Type or Print)* | 30c. Date Signed

31b. Name of Contracting Officer *(Type or Print)* | 31c. Date Signed

32a. Quantity in Column 21 Has Been
[ ] Received [ ] Inspected [ ] Accepted, and Conforms to the Contract, Except as Noted: ______

32b. Signature of Authorized Government Representative | 32c. Date | 32d. Printed Name and Title of Authorized Government Representative

32e. Mailing Address of Authorized Government Representative

32f. Telephone Number of Authorized Government Representative

32g. E-mail of Authorized Government Representative

33. Ship Number [ ] Final | 34. Voucher Number | 35. Amount Verified Correct For | 36. Payment [ ] Complete [ ] Partial [ ] Final | 37. Check Number

38. S/R Account Number | 39. S/R Voucher Number | 40. Paid By

41a. I certify this account is correct and proper for payment

41b. Signature and Title of Certifying Officer | 41c. Date

42a. Received By (Print)

42b. Received At (Location)

42c. Date Rec'd (YY/MM/DD) | 42d. Total Containers

267

**Exhibit 1**

STANDARD FORM 1449 (REV. 4/2002)

**SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS**
*Offeror to Complete Blocks 12, 17, 23, 24, & 30*

1. Requisition Number: 448/01142/05
PAGE 1 OF 16

2. Contract No.: 440205C0025
3. Award/Effective Date: Jun 15, 2005
4. Order Number:
5. Solicitation Number: HHM402-05-R-0017
6. Solicitation Issue Date: Apr 14, 2005

7. For Solicitation Information Call: a. Name: JUANITA JONES
b. Telephone Number (No collect calls): (202)231-3617
8. Offer Due Date/Local Time: May 13, 2005 / 14:00 PM

9. Issued By — Code HHQ402
Virginia Contracting Activity
ATTN: AE-2
Bolling AFB, Bldg. 6000
Washington, D.C. 20340-5100

10. This Acquisition is
[X] Unrestricted
[ ] Set-Aside % for
[ ] Small Business
[ ] HubZone Small Business
[ ] 8(A)
NAICS: 561770
Size Standard:

11. Delivery for FOB Destination Unless Block is Marked. [ ] See Schedule

12. Discount Terms
Discount: 0%
Days: 0
Net due: 30

[ ] 13a. This contract is a rated order under DPAS (15 CFR 700)
13b. Rating
14. Method of Solicitation [ ] RFQ [ ] IFB [X] RFP

15. Deliver To — Code HHT440
LOGISTICS APPLICATIONS INC
3300 75TH AVE. REAR ENTRANCE
LANDOVER, MD 20785

16. Administered By — Code ZD50
Virginia Contracting Activity
Building 6000
Washington, DC 20340-5100
ATTN: DIAC, AE-2

17a. Contractor/Offeror — Code 00004279 Facility Code
THE RAVENS GROUP LLC
1101 Pennsylvania Ave N.W.
Washington DC 20004
Telephone No. 202-756-4556
TIN: 52-2360182

18a. Payment Will Be Made By — Code NSA01A
NSA Finance and Accounting Office
P.O. Box 1695; ATTN: DP2111
Ft. George G. Meade, MD 20755-6856
(410) 854-7657

17b. Check if Remittance is Different and Put Such Address in Offer. [ ]

18b. Submit Invoices to Address Shown In Block 18a Unless Box Below is Checked.
[ ] See Addendum.

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | PLEASE SUBMIT INVOICES TO MARY HENNIGAN @ 202-231-2915. | | | | |

25. Accounting and Appropriation Data
See Attached Schedule

26. Total Award Amount (For Govt. Use Only)
US 1,368,811.41

[ ] 27a. Solicitation incorporates by reference FAR 52.212-1, 52.212-4. FAR 52.212-3 and 52.212-5 are attached. Addenda [ ] are [ ] are not attached

[X] 27b. Contract/Purchase Order incorporates by reference FAR 52.212-4, 52.212-5 is attached. Addenda [X] are [ ] are not attached

[ ] 28. Contractor is required to sign this document and return copies to Issuing Office. Contractor agrees to furnish and deliver all items set forth or otherwise identified above and on any additional sheets subject to the terms and conditions specified herein.

[X] 29. Award of Contract: Reference Offer Dated . Your offer on Solicitation (Block 5), including any additions or changes which are set forth herein, is accepted as to items:

30a. Signature of Offeror/Contractor: [signature]

31a. United States of America (Signature of Contracting Officer): [signature]

30b. Name and Title of Signer (Type or Print): JOE N. BALLARD PRESIDENT
30c. Date Signed: 17 June 05

31b. Name of Contracting Officer (Type or Print): DENISE BYRD CARTER
31c. Date Signed: 28 Jun '05

32a. Quantity in Column 21 Has Been
[ ] Received [ ] Inspected [ ] Accepted, and Conforms to the Contract, Except as Noted:

32b. Signature of Authorized Government Representative
32c. Date
32d. Printed Name and Title of Authorized Government Representative
32e. Mailing Address of Authorized Government Representative
32f. Telephone Number of Authorized Government Representative
32g. E-mail of Authorized Government Representative

33. Ship Number [ ] Partial [ ] Final
34. Voucher Number
35. Amount Verified Correct For
36. Payment [ ] Complete [ ] Partial [ ] Final
37. Check Number
38. S/R Account Number
39. S/R Voucher Number
40. Paid By
41a. I certify this account is correct and proper for payment
41b. Signature and Title of Certifying Officer
41c. Date
42a. Received By (Print)
42b. Received At (Location)
42c. Date Rec'd (YY/MM/DD)
42d. Total Containers

STANDARD FORM 1449 (REV. 4/2002)

**Exhibit 2**

268

GAO
Accountability • Integrity • Reliability

Comptroller General
of the United States

United States Government Accountability Office
Washington, DC 20548

# Decision

**Matter of:** NOSLOT Cleaning Services, Inc.

**File:** B-296741

**Date:** July 8, 2005

## DECISION

NOSLOT Cleaning Services, Inc. protests the award of a contract to The Ravens Group, LLC under request for proposals No. HHM402-05-R-0017, issued by the Department of the Army.

We dismiss the protest.

NOSLOT was advised of the selection on June 27, 2005 and protested to our Office on June 29. NOSLOT also timely requested a debriefing from the Army, scheduled for July 8. Section 21.2(a)(2) of our Bid Protest Regulations, 4 C.F.R. § 21.2(a)(2) (2005), provides that our Office will not consider a protest challenging a procurement conducted on the basis of competitive proposals where, as here, a debriefing is required, if the protest is filed before the debriefing date offered to the protester; the protest instead should be filed not later than 10 days after the debriefing. This rule is designed to encourage early and meaningful debriefings and to preclude strategic or defensive protests. The Real Estate Ctr., B-274081, Aug. 20, 1996, 96-2 CPD ¶ 74.

We therefore dismiss the protest. See Global Eng'g & Constr. Joint Venture, B-275999.3, Feb. 19, 1997, 97-1 CPD ¶ 77. As section 21.2(a)(2) provides, a protest filed within 10 days of the debriefing will be considered timely with respect to bases known before or as a result of the debriefing. We point out, however, that the law requires the stay of contract performance only if the agency receives notice of a protest filing within 5 days after the offered debriefing date, or within 10 days after the award, whichever is later. 31 U.S.C. § 3553(d) (2000).

Anthony H. Gamboa
General Counsel

**DEFENSE INTELLIGENCE AGENCY**
Office of the Acquisition Executive
Building 6000, Bolling AFB
Washington, D.C. 20340-5100

August 1, 2005

U-2053/AE-2A

MEMORANDUM FOR MAJ Peter Tran, HQ, U.S. Army Legal Service Agency, Contract Appeals Division, Team I, ATTN: JALS-CAI, 901 North Stuart Street, Suite 500, Arlington, Virginia 22203-1837

Subject: B-296741.2; Protest of NOSLOT Cleaning Services, Inc.

Contracting Officer's Notice of Corrective Action

RFP HHM402-05-R-0017 (the "Solicitation") for the procurement of janitorial and custodial services for the Defense Intelligence Analysis Center (DIAC) and its new expansion building was issued on 14 April 2005. The Solicitation closed on 13 May 2005. Nine offers were received in response to the Solicitation. Award was made to The Ravens Group, LLC, on 17 June 2005. NOSLOT Cleaning Services, Inc. was debriefed on 8 July 2005. On 12 July 2005, NOLSOT filed a protest of the award with the Government Accountability Office (GAO) (B-296741.2). Due to the essential nature of the requirements, the DIA HCA, on 13 July 2005, authorized continued performance of the contract pending the outcome of the protest.

The Government has reviewed the allegations contained in the protest filed by NOSLOT Cleaning Services, Inc. Although the protest is not clearly meritorious, the Agency has decided to take the following corrective action. The Agency intends to re-evaluate the nine proposals that were received at the close of the original submission deadline on May 13, 2005. Once the proposals have been re-evaluated, award may be made without discussions. If the Agency determines that discussions are warranted, a competitive range will be established and discussions will be conducted with all offerors within the range. Upon completion of discussions, offerors within the competitive range will be provided the opportunity to submit final revised proposals.

In light of the serious detrimental impact that would result from work stoppage under the present awarded contract, current janitorial and custodial services will continue unimpeded. If after the evaluation, another contractor is deemed the appropriate awardee, the contract with The Ravens Group, LLC, will be terminated for convenience and the appropriate offeror awarded a contract for the reminder of the services required. An amendment to the Solicitation will be issued implementing the corrective action at the close of the protest.

GUY A. TORRES
Contracting Officer



Exhibit 4