> (B) Insert proposed unit and extended prices for each Contract Line Item, including all option periods, on pages 2 and 3. The offeror shall include a fully completed price schedule of the solicitation in this section of their proposal. Any offeror, which fails to cite a price for each item, or fails to make an entry, will be rejected as non-responsive to this solicitation. **Only firm-fixed price offers will be evaluated.**

Solicitation, at 39 (emphasis added). The Solicitation also provided that "[i]f additional information was required to support price reasonableness, each offeror may be requested to provide" additional back up information. *Id.*

***The Selection of NoSlot:***

On or about September 13, 2006, the Agency advised Rowe that NoSlot had been selected for award. *See* Letter from Cheong J. Chon to Mr. Scott Rowe, dated Sept. 13, 2006, attached hereto as Exhibit 3. That letter disclosed that NoSlot's price for the base period and all options was higher than the price offered by Rowe. NoSlot's price was [redacted] *Id.* Rowe offered to perform the work for the base period and the option years at the firm, fixed price [redacted] lower than the price offered by NoSlot.

***Rowe's Proposal and Debriefing:***

By letter dated September 14, 2006, Rowe requested a debriefing from the Agency. The Agency provided a written debriefing on September 15, 2006. The written debriefing revealed that Rowe was the lowest priced offeror, and it revealed that Rowe had received the highest evaluation ratings available under both the Technical and the Past Performance evaluation criteria. Yet, Rowe was not selected for award.

The written debriefing stated: "The Government found that Rowe's technical and past performance to be "EXCELLENT". *See* Letter from Cheong J. Chon to Rowe Contracting Services, Inc., dated September 15, 2006, attached hereto as Exhibit 4. The Agency noted, however, that in this firm-fixed price contract, "[t]he proposed **cost** [of Rowe's proposal] has weaknesses." *Id.* (Emphasis added.)

The Source Selection Authority ("SSA") identified three specific weaknesses that she allegedly had found with Rowe's cost proposal. (The SSA noted that she concurred with the Technical Evaluation Panel's ("TEP") evaluation of Rowe's Technical proposal.) *Id.* The three alleged weaknesses identified by the SSA with Rowe's cost proposal were:

- [redacted]
- [redacted]
- [redacted]

PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER

*Id.*

As required by the Solicitation, Rowe's Price Proposal was limited to a firm-fixed price offer, with unit prices for the specific Contract Line Items and extended prices for those same items—plus a budget submission indicating the various prices included in the offer. [redacted] *Id.*

[redacted]

**Retention/Recruiting Bonuses from Rowe's Price Proposal**

| Contract Term | Monthly Budget | Yearly Budget |
|---|---|---|
| Base Year (7 Months) (Building 6000) | [redacted] | [redacted] |

PROTECTED MATERIAL: TO BE DISCLOSED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER

| Contract Term | Monthly Budget | Yearly Budget |
|---|---|---|
| **Base Year (7 Months)** (Expansion Building) | [redacted] | [redacted] |
| **1st Option Year** (Building 6000) | [redacted] | [redacted] |
| **1st Option Year** (Expansion Building) | [redacted] | [redacted] |
| **2nd Option Year** (Building 6000) | [redacted] | [redacted] |
| **2nd Option Year** (Expansion Building) | [redacted] | [redacted] |
| **3rd Option Year** (Building 6000) | [redacted] | [redacted] |
| **3rd Option Year** (Expansion Building) | [redacted] | [redacted] |
| **4th Option Year** (Building 6000) | [redacted] | [redacted] |
| **4th Option Year** (Expansion Building) | [redacted] | [redacted] |

*See* Rowe Budget, submitted with Schedule B Price Proposal, attached hereto as Exhibit 5 ("Retention/Recruiting Bonuses" is a line item under the "Other Operating Costs" category on the spreadsheet).

Accordingly, Rowe's budget submitted with its Price Proposal indicated that, over and above the direct labor for its employees, Rowe had budgeted an ad[redacted]

in the base period, and an [redacted] for each subsequent option year for the express purpose of paying retention and recruiting bonuses to its employees. Notably, according to the Price Proposal, Rowe would have [redacted] total employees performing work under the resulting contract. Of that [redacted] employees, [redacted] would be full time janitors, and [redacted] would be part time janitors. Thus, Rowe's budget indicated that Rowe had included substantial monies in its firm-fixed price to the [redacted].[3]

Notwithstanding Rowe's [redacted] e SSA explained in Rowe's debriefing:

[redacted]

[3] Rowe also specifically addressed [redacted] in its Technical Proposal as discussed below.

[redacted]

[redacted]

[redacted]

*See* Ex. 4. at 2 (emphasis added). Contrary to the finding of the SSA, Rowe proposed [redacted] each out (option) year. *See* Ex. 5.

---

[4] This is an incorrect description of Rowe's firm-fixed price offer for the work covered by the contract. As discussed above, the Solicitation sought firm-fixed unit prices inclusive of all work and supplies. The Contract Schedule expressly provided:

> The contractor shall provide all personnel, supervision, equipment and material, except as specified by the Government, to accomplish Custodial Services at the Defense Intelligence Analysis Center (DIAC) at Bolling AFB, Washington, DC in accordance with the attached Statement of Objectives (SOO), and technical exhibits.

*See* Ex. 2, Solicitation, Amendment 10 Schedule B, Line Item 0001, 0002, 0003, 0004 and 0005. Each of those Line Items in turn requested a unit (monthly) price for all of that work for two areas: "Provide Basic Cleaning Services" for Building 6000 (Line Item 0001AA, 0002AA, 0003AA, 0004AA, and 0005AA) and "DIAC Expansion" (Line Item 0001AB, 0002AB, 0003AB, 0004AB and 0005AB).

The SSA continued:

[redacted]

[redacted]

*See* Ex. 4.

Again, it would appear that the SSA mis-read Rowe's proposal. As discussed in more detail below, Rowe's Technical Proposal outlined Rowe's specific plan for retention, which among other things included, paying the cleared employees **from the outset of contract performance** approximately [redacted]r more than they currently were receiving—and specific bonuses for employees.

## IV. PROTEST GROUNDS

### A. The evaluation of Rowe's proposal was arbitrary and unreasonable.

As discussed above, the Agency erred in evaluating Rowe's price/cost proposal. Specifically, each of the weaknesses noted by the SSA in the written debriefing as to Rowe is arbitrary and unreasonable. Where, as here, the Agency's evaluation is

unreasonable and/or arbitrary, GAO will sustain the protest. *See The Arora Group, Inc.*, B-2777,674, 98-1 CPD ¶ 64 (Nov. 10, 1997) (sustaining protest where agency's price realism evaluation was unreasonable and inconsistent with the evaluation criteria of the solicitation); *see also Rockwell Electronic Commerce Corp.*, B-286,201, 2001 CPD ¶ 65 (Dec. 14, 2000) (stating that "[i]n reviewing a protest, [GAO] will examine the record to ensure that the agency's evaluation was reasonable and consistent with the stated evaluation criteria.")

**1. Assessing a weakness for Rowe's labor rates was unreasonable and arbitrary.**

The first "weakness" the SSA noted was that Rowe's "cost proposal indicates that the same labor rates are offered by Rowe for all five years and there is no indication of any increase in the out (option) years." Ex. 4, at 1. What the SSA fails to note is that the labor rate proposed by Rowe ([redacted] significantly higher than both the wage determination rate incorporated into the contract **and** the prevailing rate being paid to the workers currently performing under the predecessor contract.

The Solicitation includes Wage Determination No. 94-2103 Rev (33), dated March 10, 2005. *See* Solicitation. That Wage Determination proscribes an hourly wage for a Janitor (Occupation Code 11150) of $10.12, plus an additional $2.59/hour for

health and welfare benefits—or a total of $12.71/hour.[5] Rowe's budgeted hourly rate of [redacted]r obviously far exceeds the minimum wage required by the Solicitation. This fact, however, seemingly was not considered by the SSA when she determined that Rowe's proposed wages underlying its firm-fixed price offer should be assessed as a weakness. This position is, of course, unreasonable, where, as here, the proposed rate, without increases, already is set at a high enough level to ensure employee retention.

In fact, Rowe explained as much in its Technical Proposal,[6] writing:

[redacted]

[5] The Solicitation also incorporates by reference FAR 52.222-43, Fair Labor Standards Act and Service Contract Act—Price Adjustment (Multiple Year and Option Contracts). Under that clause, an offeror that was proposing to pay its workers at the wage determination rates would be precluded from including wage increases for out years in its offer. *See L&E Assocs., Inc.*, B-258808.4, 95-1 CPD ¶ 288 (June 22, 1995) ("FAR clause 52.222-43(b) requires the contractor . . . to warrant 'that the prices in this contract do not include any allowance for any contingency to cover increased costs for which adjustment is provided under this clause.' . . . Thus, estimates of wage increases covered by the [Service Contract Act] are not to be included in the offeror's prices, presumably because any applicable DOL wage increase will be passed through to the government when it actually happens—as opposed to when the contractor is speculating (in its option-year pricing) that it might happen.")

[6] The debriefing suggests that the SSA limited her review to the Price Proposals, accepting instead the technical evaluations from the TEP. However, a number of the SSA's observations credited to Rowe's "Cost Proposal" in fact are taken from Rowe's Technical Proposal.

[redacted]

Rowe Technical Proposal for Custodial Services at the DIA at Bolling AFB, dated 13 May 2005 ("Rowe's Technical Proposal"), at Tab 2, Technical Capabilities, A.[7] Operational Functions (emphasis added).

Rowe also advised the DIA:

[redacted]

Rowe's Technical Proposal, at Tab 2, A.1.(b) (emphasis added).[8] And, Rowe included a "Transition/Retention Plan" as part of its Technical Proposal. That Plan provided in part:

<u>Retention</u>

[redacted]

---

[7] Portions of Rowe's Technical Proposal cited herein collectively are included as Exhibit 6, hereto.

[8] Rowe also indicated that its employees would be contractually obligated to "continue to work for a minimum of 30 months" for Rowe "at the time of SCI Access" being granted. *Id.* This was another feature of Rowe's retention plan.

**PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER**

> [redacted]
>
> [redacted]
>
> [redacted]
>
> [redacted] [redacted]
>
> [redacted] [redacted]

Rowe Technical Proposal, Tab 6 (emphasis added).

It appears that the SSA failed to consider the complete retention plan that Rowe was proposing. The plan included [redacted] In light of these facts, the SSA's assessment of a weakness to Rowe [redacted]

---

[9] The Technical Proposal actually understates the total amount that Rowe had budgeted for Recruiting/Retention Bonuses under its Price Proposal. *See*, discussion above and Ex.5.

unreasonable and arbitrary.[10] *See The Arora Group, Inc.*, B-277674, Nov. 10, 1997, 98-1 CPD ¶ 64 (sustaining protest where agency's conclusion that protester's use of "flat compensation rates posed an unacceptable price realism risk was neither reasonable nor consistent with the evaluation criteria"). In *Arora*, the Navy eliminated the protester from the competition after concluding the protester's fixed price offer lacked price realism because if did not include salary escalation. Here, unlike the protester in *Arora*, Rowe's price proposal was not found to be unrealistic by DIA. *Arora*, however, still is instructive.

In *Arora*, the protester explained that it had addressed employee retention by: a) obtaining long-term employment agreements with its workers; and b) budgeting "into its G&A costs to provide for recruitment of replacement employees or bonuses for retention of current ones." GAO ultimately concluded that the Navy's evaluation was unreasonable and inconsistent with the solicitation in large part because the agency's analysis of the protester's proposal was based on a miscalculation of the amount of monies that the protester had budgeted for bonuses for its workers. The agency in *Arora* ultimately conceded that its evaluators had "misunderstood and misevaluated" the protester's proposal—analyzing "a sum of money amounting to one-tenth of the actual amount proposed" by the protester for bonuses. Because the evaluators' flawed analysis (based on an incorrect reading of Arora's proposal) provided the basis for the agency's price realism conclusions of Arora's proposal. GAO noted that the agency's

---

[10] Moreover, to the extent that the Agency credited NoSlot with a strength for offering wage increases in the out years, even if those wages did not meet or exceed the wages proposed by Rowe, the Agency's evaluation of Rowe was unreasonable and arbitrary for this additional reason. Similarly, the evaluation of NoSlot also would have been flawed.

"rationale was clearly unreasonable and of little value in supporting the agency's conclusion." *Id.*

Here, the facts are analogous. As discussed above, DIA "misunderstood and misevaluated" Rowe's proposal. DIA evaluators incorrectly read Rowe's proposal—ultimately failing to consider the total amounts of recruitment/retention monies Rowe budgeted. And, the evaluators failed to properly consider t[redacted] Ultimately, the first weakness the Agency assigned to Rowe's "cost" proposal (and the two discussed below) all are based on the Agency's analysis that included clearly erroneous information regarding Rowe's proposal. Accordingly, as in *Arora*, Rowe's protest should be sustained.

2. **The SSA's assessment of a weakness for Rowe's failure to include specific bonus amounts for employees also was flawed.**

Next, the SSA assessed a weakness to Rowe explaining:

[redacted]

Ex. 4, at 1. The quoted language that the SSA credits to Rowe's "cost proposal" actually is taken from Tab 2, Technical Capabilities § a.1(b)6.b. of Rowe's Technical Proposal. That subparagraph reads:

[redacted]

[redacted]

Subparagraph d. of that particular section of Rowe's Technical Proposal expressly directs DIA to Rowe's "Transition/Contingency/Retention" Plan included at Tab 6 of Rowe's Technical Proposal. That Plan is quoted in the previous section of this protest. And, it expressly provides: [redacted] *See* Ex. 6, Rowe's Technical Proposal, Tab 6. As noted above, the Plan also expressly provides for:

- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]

*Id.* And, the Transition/Contingency/Retention Plan also identified that Rowe had additional monies budgeted specifically for Retention and Recruiting for the base year and all option years of the contract. Accordingly, the SSA factually was wrong. And, assessing a weakness against Rowe for information that expressly was included in the Technical Proposal is unreasonable and arbitrary.

**3. The SSA unreasonably assessed a weakness for Rowe's alleged failure to mention bonuses for other employees and for its alleged failure to discuss employee retention.**

Third, the SSA criticized Rowe's "cost proposal" noting:

[redacted]

Ex. 4. As noted (and quoted) above, the SSA simply is wrong fa[redacted] Accordingly, the evaluation of Rowe's proposal was unreasonable and arbitrary for this additional reason.

In its written debriefing, the Agency explains:

[redacted]

[redacted]

Ex. 4 (emphasis added).

The SSA's reliance on the Government's past experience with "several" other contractors in the context of Rowe's proposal was unreasonable and arb[redacted] And, it was unreasonable to assign a weakness to Rowe's proposal on this basis.

The SSA also unreasonably and arbitrarily determined that Rowe failed to address employee retention in connection with its proposal. As a practical matter, the Price Proposal format did not include a mechanism for such discussion. The

[redacted]

**B. The evaluation of Rowe's Price Proposal was inconsistent with the stated evaluation criteria of the Solicitation.**

GAO will sustain a protest where the Agency fails to evaluate proposals in accordance with the stated evaluation criteria in the Solicitation. *Liberty Power Corp.*, B-295502, March 14, 2005, 2005 WL 696284 ("[A]n agency may not announce one basis for evaluation and award in the RFP and then evaluate proposals and make award on a different basis.") Here, the Agency failed to conduct its re-evaluation in accordance with the stated evaluation criteria. Specifically, the SSA indicated in the debriefing:

> As this is a firm-fixed price contract, **the Government places value on the reduction in risk provided by offers who present realistic price proposals that incorporate acceptable employee wage increases.**

Ex. 4 (emphasis added). The SSA did not indicate that she found Rowe's price to be unrealistic.[11] And, the Solicitation was silent regarding any weighted benefit that would be assessed for a compensation plan providing for increases in out years. Under the

[11] To the extent the Agency found that Rowe could not perform at the price it bid, the Agency is incorrect. Moreover, any such finding would be an adverse finding of responsibility for a small business (Rowe) that the Agency would have been required to have referred to the Small Business Administration for a Certificate of Competency.

Government's logic, an offeror who, for example, proposed wage rates of $15/hour during the base period, $16/hour during option year 1, $17/hour during option year 2, $18/hour during option year 3, and $19/hour during option year 4, would be viewed by the Government as providing less risk to the Government than Rowe's proposal for [redacted] hat approach is unreasonable and contrary to the stated evaluation criteria of the Solicitation.

**C. The price/technical tradeoff was flawed.**

As noted above, the Solicitation explained:

> (b) The Government will perform a trade-off analysis of non-price factors against price to determine the best value to the Government. Offers that are unrealistically low in total price will be considered indicative of a lack of understanding of the complexity and risk in meeting contract requirements and will not be considered for award.

Solicitation, at 41. The Government awarded Rowe ratings of "Excellent" for both Technical and Past Performance. And, Rowe was the lowest priced offeror. The Government did not find that Rowe had submitted an unrealistically low total price. Thus, as the offeror with the highest Technical ratings and the lowest price, Rowe should have been selected for award.

This, however, did not occur. The Government has failed to explain any trade off analysis that it performed that properly would support its selection of NoSlot, as a lower rated (or equally rated) higher priced offeror. The failure of the Government to perform a tradeoff analysis is contrary to the Solicitation and grounds for sustaining Rowe's protest. *See, e.g., A&D Fire Protection, Inc.*, B-288852.2, May 2, 2002, 2002 CPD ¶ 74 (sustaining protest where cost/technical tradeoff favoring higher priced offeror was

based on agency's erroneous judgment); *Preferred Systems Solutions, Inc.*, B-292322, Aug. 25, 2003, 2003 CPD ¶ 166 ("[A] cost/technical tradeoff requires a comparative assessment of the proposals considering all of the stated selection criteria[.]")

**D. The selection of NoSlot was improper and contrary to the Solicitation.**

As noted, Rowe was the highest rated and lowest priced offeror. On information and belief, NoSlot did not offer hourly wages for its employees that matched those offered by Rowe. And, on information and belief, NoSlot was not rated technically higher than Rowe. Moreover, if NoSlot was rated "Excellent" in Technical or in Past Performance, the Government's evaluation of NoSlot was flawed. Among other things, Rowe specifically proposed that at the time of contract implementation, Rowe would exceed the Solicitation's minimum requirement of having at least 20% of its employees with security clearances. [redacted] Additionally, Rowe indicated on its DD Form 254 (required as part of the Solicitation) that Rowe already held a Top Secret Security Clearance. On information and belief, NoSlot does not hold a Top Secret Security Clearance, and NoSlot was unable to propose that it would have 52% (or higher) of its employees already cleared at contract start. In fact, on information and belief, NoSlot has yet to even submit an application to obtain the Top Secret security clearance. *See* documents, attached as Exhibit 7. Thus, on information and belief, NoSlot does not have a history of past performance on contracts where the Top Secret Facility security clearance was required. Accordingly, the Government evaluation of NoSlot was

PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER

improper and contrary to the Solicitation to the extent that it rated NoSlot as equal to or better than Rowe in technical or past performance.

## V. REQUEST FOR A RULING

Rowe requests a ruling of the Comptroller General of the United States on its protest.

## VI. FORM OF RELIEF REQUESTED

For the reasons discussed above, GAO should sustain Rowe's protest and recommend that the Agency terminate its contract with NoSlot and award the contract to Rowe (or continue in effect the contract previously awarded to Rowe). Rowe also requests that it be reimbursed its attorneys' fees and costs incurred in pursuing this protest.

## VII. REQUEST FOR DOCUMENTS

Rowe requests that GAO require DIA to produce copies of the following documents:

1. All documents related to the Agency's corrective action taken in response to Protest of the Ravens Group, B-296741.4.
2. All documents related to the Agency's original decision to award to Rowe, including documents evidencing the rationale.
3. All documents related to the Agency's subsequent decision to award to NoSlot, including documents evidencing the rationale.
4. All documents relied upon by the Agency in evaluating Rowe's, NoSlot's and any other offeror's Technical Proposal.

5. All documents relied upon by the Agency in evaluating Rowe's, NoSlot's and any other offeror's Price Proposal.
6. All documents relied upon by the Agency in evaluating NoSlot's past performance.
7. All Agency communications regarding the corrective action and the subsequent source selection.
8. The Source Selection Decision and any documents related to that decision.
9. Any and all reports or evaluations of the Technical Evaluation Panel.
10. A complete copy of NoSlot's Technical, Past Performance and Price Proposals evaluated by the Agency.
11. Any guidance or other documents provided to the new Source Selection Authority related to the Agency's proposed corrective action in response to Protest, B-296741.4.
12. All documents related to the Agency's tradeoff analysis made in support of its award decision.
13. All documents related to whether NoSlot satisfied or could satisfy the requirement of the Solicitation regarding a Top Secret Facility security clearance and personal security clearances for its personnel.

## VIII. REQUEST FOR HEARING

Rowe requests a hearing. Rowe respectfully submits that given the history of this procurement and the changes in the Source Selection Authority, testimony will aid in the resolution of this protest.

**PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER**

Very truly yours,

Kenneth B. Weckstein
Tammy Hopkins

cc: Cheong J. Chon, Contracting Officer

KBW:th

**Declaration**

I, Scott Rowe, declare subject to 28 U.S.C. §1746 that I am President of Rowe Contracting Services, Inc. and that I have read the foregoing protest and all of the factual statements therein are true to the best of my knowledge.

Scott E Rowe

# EXHIBIT 1

DEPARTMENT OF THE ARMY
UNITED STATES ARMY LEGAL SERVICES AGENCY
901 NORTH STUART STREET
ARLINGTON, VA 22203-1837
(703) 696-2825; DSN 426; Fax ext. 1537
E-mail: Peter.Tran@hqda.army.mil

REPLY TO ATTENTION OF

May 16, 2006

Contract Appeals Division

**VIA FACSIMILE**

Ms. Mary G. Curcio, Esq.
Office of the General Counsel
U.S. Government Accountability Office
441 G. Street, NW
Washington, D.C. 20548

Subject: Protest of The Ravens Group, Inc., B-296741.4

Dear Ms. Curcio:

Enclosed please find a letter from the Contracting Officer clarifying the Agency's corrective action. If you have any questions regarding this matter, please contact MAJ Peter Tran at (703) 696-2825, facsimile (703) 696-1537.

Sincerely,

Peter H. Tran
Major, U.S. Army
Trial Attorney

Copies Furnished by facsimile:

Protester:

Daryle Jordan, Esq., Patrick Henry LLP
Telephone: (703) 256-7754; Facsimile: (703) 256-7883

Intervener:

Kenneth Weckstein, Esq., Epstein Becker & Green, P.C.,
Telephone: (202) 861-0900; Facsimile: (202) 822-4657

DEFENSE INTELLIGENCE AGENCY

WASHINGTON, D.C. 20340

U-2053/AE-2A

May 15, 2006

MEMORANDUM FOR MAJ Peter Tran, HQ. U.S. Army Legal Service Agency, Contract Appeals Division, Team I. ATTN: JALS-CAL 901 North Stuart Street, Suite 500, Arlington, Virginia 22203-1837

Subject: B-296741.5: Protest of The Ravens Group, Inc.

Contracting Officer's Statement

In response to GAO's request for clarification of the Contracting officer's Notice of Corrective Action, dated April 3, 2006, the following is provided. As the April 3, 2006 Notice of Corrective Action states,

> The Agency intends to conduct a new source selection and a new Source Selection Decision will be issued. If after the new source selection is conducted and a contractor other than Rowe is deemed to be the appropriate awardee, the contract with Rowe will be terminated for convenience and the appropriate offeror awarded a contract for the remainder of the services required.

The Agency simply intends to conduct a new source selection. The Agency will not be conducting a new technical evaluation of proposals or accepting revised proposals from any offerors. The new source selection will be based on the offerors' previously submitted proposals, which does not include a review of any Joint Personnel Adjudication System ("JPAS") files. The JPAS is a database managed by the DoD Agency Central Adjudication Facilities and is used to confirm the clearance validity of contractor personnel. The JPAS is a contract administration tool that is not used during the procurement process.

for GUY A. TORRES
Contracting Officer

TOTAL P.002

HQ, U.S. ARMY LITIGATION CENTER
DEPARTMENT OF THE ARMY
CONTRACT APPEALS DIVISION, USALSA
901 N. STUART STREET, SUITE 500
ARLINGTON, VA 22203-1837
Tracy.Williams@hqda.army.mil
(703) 696-2850 phone
(703) 696-1537 fax

# *facsimile transmittal*

Date: April 4, 2006

Re: GAO Protest of The Ravens Group, Inc. (B-296741.3)

From: Tracy Williams, Paralegal Specialist

---

NUMBER OF PAGES (INCLUDING THIS COVER SHEET): 3

| Name | Firm/Agency | Phone No. | Fax No. |
|---|---|---|---|
| *Mary Curcio* | *GAO* | *202-512-* | *202-512-9749* |
| *Daryle Jordan* | *Protester* | *703-256-7754* | *703-256-7883* |
| *Kenneth Weckstein* | *Intervener* | *202-861-0900* | *202-822-4657* |
| *Guy Torres* | *Contracting Officer* | *202-231-8077* | *202-231-2831* |

## MESSAGE

If transmission problems occur, please contact Ms. Tracy Williams, (703) 696-2850, DSN: 426-2850. Direct all other questions to Major Peter Tran, Trial Attorney at 703-696-2825 or DSN 426-2825.

**Confidentiality Notice**

This facsimile transmission and/or the documents accompanying it may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify this office immediately by telephone or arrange the return of documents.

# EXHIBIT 2

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1 | 5

| | | | |
|---|---|---|---|
| 2. Amendment/Modification No. 0010 | 3. Effective Date 28 Feb 2006 | 4. Requisition/Purchase Req. No. 4-48/01142/05 | 5. Project No. (If applicable) |
| 6. Issued By Virginia Contracting Activity, ATTN: AE-2, Bolling AFB, Bldg. 6000, Washington, D.C. 20340-5100 | Code HHQ402 | 7. Administered By (If other than Item 6) Virginia Contracting Activity, Building 6000, Washington, DC 20340-5100, ATTN: DIAC, AE-2 | Code ZD50 |

| | | |
|---|---|---|
| 8. Name and Address of Contractor (No., Street, County, and Zip Code) | (X) | 9A. Amendment of Solicitation No. HHM402-05-R-0017 |
| | X | 9B. Date (See Item 11) Apr 14, 2005 |
| | | 10A. Modification of Contract/Order No. |
| | | 10B. Date (See Item 13) |
| Code / Facility Code | | |

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

[X] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers [X] is extended [ ] is not extended. Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as Amended, by one of the following methods, (a) By completing items 8 and 15, and returning 1 copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. Accounting and Appropriation Data (If required)

**13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACT/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

| (x) | |
|---|---|
| | A. This change order is issued pursuant to: (Specify authority) The changes set forth in Item 14 are made in the Contract Order No. in Item 10A |
| | B. The above numbered Contract/Order is modified to reflect the administrative changes (such as changes in paying office, appropriation date, etc.) Set fourth Item 14, pursuant to the authority of FAR 43.103 (b) |
| | C. This supplemental agreement is entered into pursuant to authority of: |
| | D. Other (Specify type of modification and authority) |

E. IMPORTANT: Contractor [ ] is not, [X] is required to sign this document and return 1 copies to the issuing office.

14. Description of Amendment/Modification (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

THE PURPOSE OF THIS AMENDMENT IS TO ACCOMPLISH THE FOLLOWING:

SEE PAGE 5.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| | | | |
|---|---|---|---|
| 15A. Name and Title of Signer (Type or Print) | | 16A. Name and title of Contracting Officer (Type or Print) | |
| 15B. Contractor/Offeror (Signature of person authorized to sign) | 15C. Date Signed | 16B. United States of America [signature] (Signature of Contracting Officer) | 16C. Date Signed 2/28/06 |

NSN 7540-01-152-8070 30-105 STANDARD FORM 30 (REV. 10-83)
PREVIOUS EDITIONS UNUSABLE Prescribed by GSA FAR (48 CFR) 53.243

THE PURPOSE OF THIS AMENDMENT IS TO ACCOMPLISH THE FOLLOWING:

. To inform all offerors that the scheduled beginning period of performance has been changed from 01 Mar 2006 to 01 Apr 2006. SEE REVISED SCHEDULE PAGE FOR CHANGE.

2. To requests all offerors revise cost schedule based upon period of performance change.

3. All revised cost proposals should be received by 4:00 P.M. on 3/7/06. Revised cost schedules may be faxed to 202-231-2831 or e-mailed to Juanita.Jones@dla.mil , however signatures are required.

4. All other terms and conditions remain the same.