Attachment B, p. 2 (emphasis added). This approach is contrary to the cost/price-technical tradeoff approach to proposal evaluation set forth in the solicitation.

**LEGAL ARGUMENT**

**I. The Air Force Did Not Properly Apply The Evaluation Criteria In The Solicitation When It Evaluated Offerors' Proposals.**

**A. GAO Will Examine The Agency's Evaluation Of Proposals To Confirm That It Is Reasonable And In Accordance With The Evaluation Criteria In The Solicitation.**

In reviewing bid protests, GAO "will not reevaluate the technical proposals, but instead will examining the agency's evaluation to ensure that it was reasonable and in accordance with the RFP evaluation criteria." John W. Gracey, B-228740, 88-1 CPD ¶ 199. It is well established that the evaluation of technical proposals is wholly within the discretion of the contracting officer, Rainbow Technology, Inc., B-232589.2, 89-1 CPD ¶ ; Abt Associates Inc., B-237060.2, 90-1 CPD ¶ 223. The protester's mere disagreement with the agency's judgment does not establish that an evaluation was unreasonable. Hanford Environmental Health Foundation, B-292858.2, B- 292858.5, 2004 CPD ¶ 164 at 4. However, the Government's solicitation documents, not internal evaluation materials, forms the compact between the agency and offerors about how proposals will be evaluated. Lear Siegler Servs., Inc., B-280834, B-280834.2, 98-2 CPD, ¶136 at 6; Loral Aeronutronic, B-259857.2, B-259858.2, 95-2 CPD, ¶ 213 at 9.

**B. The Evaluation Of Offers Was Not Reasonable Because The Air Force Did Not Follow The Evaluation Plan Stated In The Solicitation.**

The Evaluation Plan in the solicitation provided clear notice to offerors that the agency considered offerors' technical capability and its past performance experience to be more important than price in this procurement. In particular, offerors such as Olympus, that have excellent past

performance ratings, relied on the Air Force's stated preference for excellent past performance over low price.

However, when the Air Force evaluated offers, it did not apply the Evaluation Plan stated in the solicitation. Instead, the Air Force considered only one non-price factor in the evaluation, i.e., the quality of the offerors' technical proposals. The Air Force considered offerors' past performance as merely a "sub-sub-factor" in its evaluation of the technical proposals. This is contrary to the stated Evaluation Plan in the solicitation, which required the Air Force to consider Past Performance as one of two non-price evaluation factors.

**C. The Air Force's Improper Application Of The Evaluation Criteria Prejudiced Olympus.**

Olympus has a considerable past performance record, and has regularly received high ratings for its Past Performance. This Past Performance record is reflected in the Air Force's evaluation of Olympus' [redacted] for the purpose of this procurement. However, the Air Force's failure to properly consider Past Performance as one of two non-price evaluation factors, instead relegating Past Performance to a "sub-sub-factor," prejudiced Olympus because it denied Olympus the full benefi[redacted] Past Performance rating as a key factor in the Air Force's award decision. If the Air Force had properly considered Past Performance as an evaluation factor, rather than as a sub-sub-factor, the Air Force would have determined that Olympus' [redacted] technical proposal, combined with its [redacted]ast Performance more than offset the less than [redacted]difference between Olympus' price and NOSLOT's price.

## II. The Air Force Did Not Perform A Proper Cost/Price-Technical Tradeoff When It Selected NOSLOT For Award.

### A. The Air Force Performed a "Technically Acceptable, Low Price" Analysis, Instead Of The "Cost/Technical Tradeoff" Analysis Specified In The Solicitation.

The solicitation also provides clear notice to offerors that the "Government will perform a trade-off analysis of non-price factors against price to determine the best value to the Government." Solicitation, p. 40. This analysis must be performed in accordance with FAR 15.101-1.

> (b) When using a tradeoff process, the following apply:
>
> (1) All evaluation factors and significant subfactors that will affect contract award and their relative importance shall be clearly state in the solicitation; and
>
> (2) The solicitation shall state whether all evaluation factors other than cost or price, when combined, are significantly more important than, approximately equal to, or significantly less important than cost or price.
>
> (c) <u>This process permits tradeoffs among cost or price and non-cost factors and allows the Government to accept other than the lowest priced proposal. The perceived benefits of the higher priced proposal shall merit the additional cost, and the rationale for tradeoffs must be documents in the file in accordance with 15.406</u>.

Id. (emphasis added). Thus, Olympus, and the other offerors, reasonably expected the Air Force to perform such a tradeoff analysis.

However, the Air Force did not do this. Instead, the Air Force performed a "lowest price technically acceptable" analysis, as specified in FAR 15.101-2. When the Government intends to perform this type of evaluation, it must provide offerors notice of the Evaluation Plan in the solicitation.

> (b) When using the lowest price technically acceptable process, the following apply:

> (1) The evaluation factors and significant subfactors that establish the requirements of acceptability shall be set forth in the solicitation. Solicitations shall specify that award will be made on the basis of lowest evaluated price or proposal meeting or exceeding the acceptability standards for non-cost factors.

Id. (emphasis added).

The debriefing letter revealed that the Air Force determined the technical proposals of two or more of the offerors in the competitive range were "comparable," i.e., they were both technically acceptable. Attachment B, pp. 1-2. The Air Force then proceeded to make an award decision based upon low-price. Although the Air Force is not prohibited from conducting such an evaluation, it cannot do so unless it provides notice in the solicitation to all offerors that it intends to perform a "technically acceptable, low price" evaluation. The Air Force failed to do this.

**B. The Air Force's Failure To Perform A Proper Best Value Analysis Prejudiced Olympus.**

The Air Force's decision to evaluate offers based upon a "technically acceptable, low price" approach, instead of the "cost/price-technical tradeoff" approach stated in the solicitation prejudiced Olympus because it gave Olympus the false hope that the Air Force would consider Olympus' excellent technical and past performance proposals, compared with those of other offerors in these areas, in making the award decision. Instead, the Air Force considered low price to be the key evaluation factor. The absence of any reference in the solicitation to the use of the "technically acceptable, low price" approach lulled Olympus into believing that the Air Force would put a premium upon excellent technical merit and past performance experience over price. Olympus prepared its proposal accordingly, to its peril.

**III. The Air Force's Determination That NOSLOT's Technical Proposal And Past Performance Were "Comparable" To Olympus' Offer Was Unreasonable.**

The Air Force did not provide information in the debriefing letter on NOSLOT's technical and past performance ratings, but instead referred to NOSLOT's offer as "comparable" to Olympus' offer. On information and belief, it was unreasonable for the Air Force to determine that NOSLOT's Technical and Past Performance proposals were "comparable" to Olympus' [redacted] ratings in both of these areas.

It is unusual for an offeror to obtain [redacted] for both Technical and Past Performance. The Air Force identified six separate Advantages in Olympus' proposal, and no Disadvantages or weaknesses in Olympus' Technical and Past Performance proposals. Attachment B, pp. 1-2. On information and belief, NOSLOT's Technical and Past Performance proposals did not contain similar Advantages, therefore the Air Force's "comparable" rating of NOSLOT's offer was unreasonable.

**IV. The Air Force's Best Value Determination Is Unreasonable Because It Was Based Upon The Improper Upon Flawed Technical And Past Performance Evaluations And Upon An Irrational Cost/Price-Technical Tradeoff.**

**A. A Best Value Determination Is Unreasonable If It Is Based On Flawed Technical And Past Performance Evaluations.**

FAR § 15.302 provides that "[t]he objective of source selection is to select the proposal that represents the best value." This objective cannot be achieved when the agency's decision is premised on defective technical, performance risk, or cost/price evaluations.

Indeed, the Comptroller General has held best value analyses to be irrational when these analyses have been based on faulty cost or technical evaluations. See, e.g. Gemmo Impianti SpA, B-290427, 2002 CPD ¶ 146 (Navy's source selection decision was unreasonable when the Navy's evaluation supporting the best value decision contained material defects under two of the three

technical factors, and the tradeoff analysis was based on an erroneous assumption about relative price difference"); Lockheed, IMS, B-248686, 92-2 CPD ¶ 180 (sustained protest on grounds of inadequate best value analysis noting that "HHS' failure to fully evaluate proposed costs makes the validity of the cost/technical tradeoff questionable"); Lockheed Aeronautical Systems Co., B-252235.2, 93-2 CPD ¶ 80 (improper life cycle cost (LCC) evaluation rendered cost/technical tradeoff flawed, even though cost was least significant evaluation factor); Bendix Oceanics, Inc., B-247225.3, 92-2 CPD ¶ 54 (improper evaluation of technical proposals requires Navy to conduct new cost/technical tradeoff based on new technical evaluation); SeaSpace, B-241564, 91-1 CPD ¶ 179 (protest sustained where the agency based its cost/technical tradeoff on flawed technical evaluations).

**B. The Air Force's Best Value Decision Is Irrational Because It Was Based On Improper Technical And Past Performance Evaluations.**

Assuming, for the purpose of argument only, that the Air Force performed a proper cost/price-technical tradeoff in determining that NOSLOT's offer represented the best value to the Government, the resultant best value decision would be irrational because it was not based upon reasonable Technical and Past performance evaluations. Here, as in the cases discussed above, the agency's best value decision was based upon improper technical and past performance evaluations. As noted above, the Air Force's unreasonable determination that NOSLOT's Technical and Past Performance proposals were "comparable" to Olympus,' i.e., that, like Olympus, NOSLOT should receive [redacted] chnical and Past Performance, cannot form the foundation for a proper best value decision, because these Technical and Past Performance evaluations were in themselves unreasonable.

C. **The Air Force's Best Value Decision Is Irrational Because Olympus' "Excellent" Rated Technical And Past Performance Proposals Offset Olympus' Less Than Two Percent Higher Price.**

Finally, even if the Air Force performed proper Technical and Past Performance evaluations of offers, and even if the Air Force performed a proper cost/price-technical tradeoff, the Air Force's decision to award the contract to NOSLOT is irrational because Olympus' Excellent-rated proposal is clearly most advantageous to the Government in light of the less than [redacted] difference in Olympus' price, compared with NOSLOT's price. It was unreasonable for the Air Force to reject Olympus' Excellent-rated offer, in favor of NOSLOT's less advantageous proposal, based upon less than [redacted] ifference in price.

**CONCLUSION**

Based on the foregoing, we request that the Government Accountability Office ("GAO") sustain Olympus' protest because the Air Force's contract award to NOSLOT is improper and in violation of law. Accordingly, Olympus respectfully requests the following relief:

1. That the Comptroller General stay NOSLSOT's performance of the subject contract pending the resolution of this protest, pursuant to the Competition In Contracting Act ("CICA"), 31 U.S.C. 3553(d).

2. That the Comptroller General issue a ruling sustaining this protest;

3. That the Comptroller General recommend that the agency terminate NOSLOT's contract, and award a contract to Olympus as representing the best value to the Government.

4. That the Comptroller General declare that Olympus is entitled to its reasonable cost of filing and pursuing this protest, including attorneys' fees, and proposal preparation costs; and

5. That the Comptroller General make such other recommendations as necessary to promote compliance and any revisions or amendments to the same.

Olympus reserves the right to request a hearing in this protest.

Pursuant to 4 C.F.R. § 21.2(d)(2) and 21.3(c), Olympus requests Air Force to produce the following documents, whether or not Air Force intends to include them with the Agency Report. In addition to documents and copies of documents, this request includes electronic documents or communications (E-mail), whether or not previously printed in hard copy. All of the documents requested below are relevant to this protest.

1. The contract awarded to NOSLOT in this procurement.

2. The complete proposals, and all revisions or amendments thereto, submitted by the offerors in this procurement.

3. The Air Force's Source Selection Plan and/or Acquisition Plan, required in FAR § 15.303(b)(2), for this acquisition, and all amendments thereto.

4. The Air Force's Source Selection Decision for this acquisition, as required by FAR § 15.308, and all related drafts of the Source Selection Decision.

5. All documents that Air Force reviewed or considered in making its decision to award a contract to NOSLOT.

6. All documents prepared by Air Force evaluators in performing analysis or review of the proposals for the purpose of selecting the best value proposal for contract award.

7. All documents reflecting communications between any other person or entity within Air Force or outside that agency relating to the selection of the best value proposal for contract award.

8. All documents related to Air Force's conduct of discussions with offerors from receipt of initial proposals until the date of contract award.

9. All documents reflecting or relating to Air Force's evaluation of each response to the discussions from receipt of initial proposals until the date of contract award.

10. All documents identifying Air Force's individual evaluators who evaluated each element in factor in the proposals.

11. All documents relating to or explaining any changes in the composition of the Air Force's evaluation team.

12. All documents relating to or explaining Air Force's evaluation of technical proposals.

13. All documents relating to or explaining Air Force's evaluation of offerors past performance.

14. All documents relating to Air Force's evaluation of the offerors' price proposals.

15. All notes or evaluation forms of individual evaluators who participated in the evaluation of offerors' technical and price proposals and their past performance.

16. All documents reflecting or relating to Air Force's explanation of the weights to be applied to the evaluation factors in the Solicitation.

17. All instructions provided to the members of Air Force's evaluation team related to performing the evaluation of proposals in the mailing systems and services procurement.

18. All documents relating to the debriefings of offerors following Air Force's selection of NOSLOT for award.

SEYFARTH SHAW LLP ATTORNEYS



These documents all relate to the counts set forth in Olympus' protest.

Sincerely yours,

SEYFARTH SHAW LLP

Grace Bateman
Kevin P. Connelly
Counsel for Olympus Building Services, Inc.

cc: C. Chon, Contracting Officer (via facsimile and first class mail)
A. Hipple (via first class mail)

**ATTACHMENT A**

VIRGINIA CONTRACTING ACTIVITY
200 MACDILL BLVD., BLDG 6000
BOLLING AIR FORCE BASE
WASHINGTON, D.C. 20340-5100

U-0934/AE-2A

SEP 13 2006

Mr. Anthony C. Hipple, President
Olympus Building Services, Inc.
244 S. Main Street
New Hope, PA 18938

Dear Mr. Hipple:

Your firm responded to this Agency's Request for Proposal (RFP) for the Janitorial/Custodial Services for the Defense Intelligence Agency, Bolling AFB, Washington, DC. The RFP was issued to twenty (20) contractors and only nine (9) proposals were received. A competitive range was established and, a result, there were five (5) offerors that qualified within the competitive range.

Upon careful reconsideration by the new Source Selection Authority, the following offeror's proposal was selected as being the best value to the Government, price and other factors considered:

NOSLOT Cleaning Services, Inc.
303 Post Office Road, Suite B-3
Waldorf, MD 20602

Total price including the base period and all options — $19,401,698.00

If you desire a debriefing, please submit your request via fax to Juanita Jones at (202) 231-2831 within three (3) calendar days from receipt of this letter. The Government will provide a written debriefing.

Your proposal indicated that considerable effort was involved in its preparation and DIA appreciates your effort.

Sincerely,

CHEONG J. CHON
Contracting Officer

TOTAL P.002

ATTACHMENT B

VIRGINIA CONTRACTING ACTIVITY
200 MACDILL BLVD., BLDG 6000
BOLLING AIR FORCE BASE
WASHINGTON, D.C. 20340-5100

U-0978/AE2A

OCT 1 1 2006

Olympus Building Services, Inc.
244 S. Main Street
New Hope, PA 18938

RE: DIA Janitorial Services Post-Award debriefing

Dear Ms. Beal:

In response to your faxed letter dated 15 September 2006, the Government provides a written debriefing in accordance with the FAR 15.506(b).

The award is made based on the solicitation announcement that the Government sought the best value reserved the right to award to other than the lowest offeror, and that an award could be made without discussions or negotiations with offerors. The Government found that Olympus' technical proposal and past performance to be "EXCELLENT." However, However, the proposed cost was not as advantageous as proposed by other comparable offerors.

SELECTION CRITERIA: Each company was evaluated using the same Technical Evaluation Sheets provided by the Contracting Office. The five sub-sub-factors of the Technical evaluation factor were: Understanding and Compliance (25%); Soundness of Approach (25%); Program Management Controls (16.66%); Past/Performance/Relevant Experience (16.66%), and Key Personnel (16.66%). Each company was rated by each member of the panel and a consensus report was produced reflecting the Technical Evaluation Panel's consensus evaluation.

As the new Source Selection Authority for this procurement, I have reviewed the Technical Evaluation Panel's (TEP's) technical evaluations, and I concur with the TEP's evaluation. The following assessments concerning your proposal were found by me.

**Advantages:**

[redacted]

[redacted]

**Disadvantages:**

[redacted]

**Basis For Award:**

This procurement utilizes the best value evaluation criteria identified in the solicitation. In accordance with the RFP, non-price factors (Technical and Past Performance), when combined, were more important than Price. Of the non-price factors, Technical is more important than Past Performance. Award will be made to the responsible offeror whose offer, conforming to the solicitation, is determined to be the best overall value to the Government, price and other factors considered. Based on those evaluation factors, NOSLOT, a comparable offeror with a lower proposed price, was awarded the contract. ] ←

If you require additional questions, please call the undersigned at (202) 231-8416.

Sincerely,

CHEONG CHON
Contracting Officer

GAO

Accountability - Integrity - Reliability

United States Government Accountability Office
Washington, DC 20548

Office of General Counsel

# Facsimile Transmission Sheet

Number of pages, including this cover sheet: 10

If transmission problems occur, please call 202-512-9739.
Our fax number is 202-512-9749.

**Date:** October 19, 2006

**Re:** B-296741.10
Protest of Olympus Building Services, Inc.

**From:** Mary G. Curcio, Senior Attorney

| Name | Firm/Agency | Phone | Fax |
|---|---|---|---|
| Grace Bateman, Esq. | Seyfarth Shaw LLP | 202-828-5359 | 202-828-5393 |
| Denise B. Carter | Defense Intelligence Agency | 202-231-2838 | 202-231-2831 |

**Comments:** None

GAO
Accountability * Integrity * Reliability

United States Government Accountability Office
Washington, DC 20548

Office of the General Counsel

October 19, 2006

Grace Bateman, Esq.
Seyfarth Shaw LLP

Denise B. Carter
Department of Defense
Defense Intelligence Agency

**File:** B-296741.10
**Protester:** Olympus Building Services, Inc.
**Agency:** Defense Intelligence Agency

## NOTIFICATION OF PROTECTIVE ORDER

Attached is a copy of the protective order issued in connection with this matter. Counsel seeking admission (and their law clerks, paralegals, or support staff if they are admitted as attorneys to a state bar) must complete and submit the attached application to our Office within 3 days of receipt of this protective order, with a copy provided simultaneously to all parties; applications for consultants are available upon request. A party objecting to any individual's application must so advise our Office by the second day following receipt of the application. Applications containing the original signature of the applicant that are filed by facsimile or electronic transmission (e.g., PDF file) are deemed to contain a valid and enforceable signature; if filed in this manner, a hard copy with original signature need not also be submitted. Failure to complete the application accurately may result in denial of admission and/or sanction.

Individuals covered under a protective order are required to take all precautions necessary to prevent disclosure of protected material. In addition to physically and electronically securing, safeguarding, and restricting access to the protected material in one's possession, these precautions include, but are not limited to, sending and receiving protected material using physical and electronic methods that are within the control of individuals authorized by this protective order or that otherwise restrict access to protected material to individuals authorized by this protective order. Examples of transmission methods that may require additional precautions include facsimile machines shared with individuals not admitted under this protective order, facsimile-to-electronic mail systems or services, and electronic mail. Electronic mail is now permitted under our protective order unless objected to by a party in the protest.

–For the Associate General Counsel

**FOR FURTHER INFORMATION:**

GAO Attorney: Mary G. Curcio; 202-512-4788
Case Status Calls: 202-512-5436; Fax Number 202-512-9749
GAO's Guide to GAO Protective Orders is available at www.gao.gov.

Attachments

***Paragraphs 4, 6, and 7 of the order were revised in December 2005.***

UNITED STATES GOVERNMENT ACCOUNTABILITY OFFICE
OFFICE OF THE GENERAL COUNSEL
PROCUREMENT LAW DIVISION
Washington, D.C. 20548

**Matter of:** Olympus Building Services, Inc.

**File:** B-296741.10

**Agency:** Defense Intelligence Agency

## PROTECTIVE ORDER

This protective order limits disclosure of certain material and information submitted in the above-captioned protest, so that no party obtaining access to protected material under this order will gain a competitive advantage as a result of the disclosure. Material to which parties gain access under this protective order is to be used only for the subject protest proceedings, absent express prior authorization from the Government Accountability Office (GAO). Such authorization must be requested in writing, with notice to all parties.

1. This protective order applies to all material that is identified by any party as protected, unless GAO specifically provides otherwise. Protected material includes information whether on paper or in any electronic format. This protective order applies to all proceedings associated with the protest, e.g., supplemental/amended protests, requests for reconsideration, and claims for costs.

2. Protected material of any kind may be provided only to GAO and to individuals authorized by this protective order. The first page of each document containing protected material is to be clearly marked as follows:

**PROTECTED MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE WITH
GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER**

The party claiming protection must clearly identify the specific portion of the material for which it is claiming protection. Wherever such protection is claimed for a protest pleading, the party filing the pleading shall submit a proposed redacted version for public release when the protected version is filed.

3. Only individuals who are admitted under this protective order by GAO, and support staff (paralegal, clerical, and administrative personnel) who are employed or supervised by individuals admitted under this order, and who are not involved in competitive

decisionmaking for a party to the protest or for any firm that might gain a competitive advantage from access to the protected material disclosed under this order, shall have access to information covered by this order. Individuals admitted under this protective order shall advise such support staff, prior to providing them access to protected material, of their obligations under this order.

4. Each party included under this protective order shall receive up to 3 copies of the protected material (the original constitutes one copy), and shall not further duplicate that material, except as incidental to its incorporation into a submission to GAO or as otherwise agreed to by the parties with GAO's concurrence. For purpose of this provision, a "party" refers to the entity of record. Therefore, multiple attorneys or law firms representing a single party must determine among them how to allocate the maximum of 3 copies among the individuals admitted to the protective order. Each duplication of electronic media (e.g., CD Rom), whether in electronic or hard copy form, constitutes a single copy. E-mail transmissions to multiple recipients should be counted as generating one copy for the sender and one for each recipient.

5. When any party sends or receives documents in connection with this protest that are not designated as protected, including proposed redacted versions of protected documents, the party shall refrain from releasing the documents to anyone not admitted under this protective order, including clients, until the end of the second working day following receipt of the documents by all parties. This practice permits parties to identify documents that should have been marked protected before the documents are disclosed to individuals not admitted under this protective order.

6. Each individual covered under this protective order shall take all precautions necessary to prevent disclosure of protected material. In addition to physically and electronically securing, safeguarding, and restricting access to the protected material in one's possession, these precautions include, but are not limited to, sending and receiving protected material using physical and electronic methods that are within the control of individuals authorized by this protective order or that otherwise restrict access to protected material to individuals authorized by this protective order. Protected material may be sent using electronic mail unless objected to by any party in this protest. The confidentiality of protected material shall be maintained in perpetuity.

7. Within 60 days after the disposition of the protest(s) (or if a request for reconsideration or a claim for costs is filed, 60 days after the disposition of those matters), all protected material furnished to individuals admitted under this protective order, including all electronically transmitted material and copies of such material, with the exception of a single copy of a protected decision or letter issued by our Office, shall be: (1) returned to the party that produced them; or (2) with the prior written agreement of the party that produced the protected material, destroyed and certified as destroyed to the party that produced them; or (3) with the prior written agreement of the party that produced the protected material, retained under the terms of this order for such period as may be agreed. Within the same 60-day period, protected pleadings (including copies in archival files and computer backup files) and written and electronic transcripts of

protest conferences and hearings shall be destroyed, and the destruction certified to GAO and the other parties, unless the parties agree otherwise. In the absence of such agreement and for good cause shown, the period for retention of the protected material under this paragraph may be extended by order of GAO. Any individual retaining material received under this protective order (except for the single copy of a protected decision or letter issued by our Office) beyond the 60-day period without the authorization of GAO or the prior written agreement of the party that produced the material is in violation of this order. The terms of this protective order (except those terms regarding the return or destruction of protected material) shall apply indefinitely to the single copy of the protected decision or letter issued by our Office that is retained by a party admitted under this order.

8. Any violation of the terms of this protective order may result in the imposition of such sanctions as GAO deems appropriate, including but not limited to referral of the violation to appropriate bar associations or other disciplinary bodies and restricting the practice of counsel before GAO. A party whose protected information is improperly disclosed shall be entitled to all remedies under law or equity, including breach of contract.

Mary G. Curcio (signature)
Mary G. Curcio, Senior Attorney

Oct 19, 2006
October 19, 2006

GAO
Accountability * Integrity * Reliability

United States Government Accountability Office
Washington, DC 20548

**UNITED STATES GOVERNMENT ACCOUNTABILITY OFFICE**
**OFFICE OF THE GENERAL COUNSEL**
**PROCUREMENT LAW DIVISION**
**Washington, D.C. 20548**

**Matter of:** Olympus Building Services, Inc.

**File:** B-296741.10

**Agency:** Defense Intelligence Agency

**APPLICATION FOR ACCESS TO MATERIAL UNDER A PROTECTIVE ORDER FOR OUTSIDE COUNSEL**

1. I, ______________________, hereby apply for access to protected material covered by the protective order issued in connection with this protest.

2. I am an attorney with the law firm of ____________________ which has been retained to represent ______________________, a party to this protest.

3. I am a member of the bar(s) of ______________; my bar membership number(s) is/are

______________________.

4. My professional relationship with the party I represent in this protest and its personnel is strictly one of legal counsel. I am not involved in competitive decisionmaking as discussed in U.S. Steel Corp. v. United States, 730 F.2d 1465 (Fed. Cir. 1984), for or on behalf of the party I represent, any entity that is an interested party to this protest, or any other firm that might gain a competitive advantage from access to the material disclosed under the protective order. I do not provide advice or participate in any decisions of such parties in matters involving similar or corresponding information about a competitor. This means that I do not, for example, provide advice concerning or participate in decisions about marketing

or advertising strategies, product research and development, product design or competitive structuring and composition of bids, offers, or proposals with respect to which the use of protected material could provide a competitive advantage.

5. I identify here (by writing "none" or listing names and relevant circumstances) those attorneys in my firm who, to the best of my knowledge, cannot make the representations set forth in the preceding paragraph:

(Attach additional pages for this and the following questions, if needed.)

6. I identify here (by writing "none" or listing names, position, and responsibilities) any member of my immediate family who is an officer or holds a management position with an interested party in the protest or with any other firm that might gain a competitive advantage from access to the material disclosed under the protective order:

7. I identify here (by writing "none" or identifying the name of the forum, case number, date, and circumstances) instances within the last 2 years in which I have been denied admission to a protective order, or had admission revoked, or been found to have violated a protective order issued by GAO or by an administrative or judicial tribunal:

8. I identify here (by writing "none" or listing the protest name and file number) any pending application for admission to a protective order issued by GAO:

9. I have read the protective order issued by GAO in this protest, and I will comply in all respects with that order and will abide by its terms and conditions in handling any protected material filed or produced in connection with the protest.

10. I acknowledge that any violation of the terms of the protective order may result in the imposition of such sanctions as GAO deems appropriate, including but not limited to referral of the violation to appropriate bar associations or other disciplinary bodies, and restricting my practice before GAO. I further acknowledge that a party whose protected information is improperly disclosed shall be entitled to all remedies under law or equity, including breach of contract.

CERTIFICATION

By my signature, I certify that, to the best of my knowledge, the representations set forth above (including any attached statements) are true and correct. I recognize that knowingly making a false statement on this application could render me liable to a $10,000 fine or 5 years imprisonment, or both, pursuant to 18 U.S.C. § 1001. I identify below the mailing address and facsimile number at which I may receive protected material in accordance with the terms of the protective order.

______________________________ ______________________

Signature Date Executed

______________________________

Typed Name and Title

______________________________

Mailing Address

______________________________

Direct Dial Telephone Number

______________________________

Facsimile Number

______________________________

E-mail Address

GAO
Accountability * Integrity * Reliability

United States Government Accountability Office
Washington, DC 20548

# Memorandum

**Date:** December 16, 2005

**From:** Daniel I. Gordon, Managing Associate General Counsel

**Subject:** Protective Order Procedures

## NOTICE REGARDING CHANGES TO PROTECTIVE ORDER & CLARIFICATION OF FILING PROCEDURES

Please take notice that GAO has made the following changes to paragraphs 4, 6, and 7 of the Protective Order.

¶ 4: permits each party to make up to 3 copies (including the original and electronic copies) of protected material

¶ 6 permits the use of electronic mail to transmit protected documents, unless objected to by any party to the protest

¶ 7: requires that electronically transmitted material be disposed of at the end of the protest

In addition, GAO has modified paragraph 2 of the Application for Access to Material Under a Protective Order for Outside Counsel, and modified paragraph 7 to reflect a reduction in the reporting requirement for violations to 2 years. Applicants (which include law clerks or support staff admitted to a bar) are now required to provide more complete contact information, such as email addresses and direct dial telephone numbers. Please note that GAO no longer requires that applicants file the original signed application, so long as a signed copy was previously transmitted to GAO (e.g., by facsimile or electronic mail).

Finally, GAO has made several changes to its Acknowledgment of Protest letter (sent to the protester) and Confirmation of Report Requirement (sent to the agency). These changes are to clarify aspects of our filing procedure and reflect the changes to our Protective Order discussed above. Please read these letters carefully.

TOTAL P.011

DEPARTMENT OF THE ARMY
UNITED STATES ARMY LEGAL SERVICES AGENCY
901 NORTH STUART STREET
ARLINGTON, VA 22203-1837
(703) 696-2825; DSN 426; Fax ext. 1537
E-mail: Peter.Tran@hqda.army.mil

REPLY TO
ATTENTION OF

October 26, 2006

Contract and Fiscal Law Division

**VIA FACSIMILE**

Ms. Mary G. Curcio, Esq.
Office of the General Counsel
U.S. Government Accountability Office
441 G. Street, NW
Washington, D.C. 20548

Subject: Protest of Olympus Building Services, Inc., B-296741.10

Dear Ms. Curcio:

Enclosed please find a letter from the Contracting Officer indicating the Agency's intent to take corrective action. Based upon this corrective action, the agency requests that the subject protests be dismissed as academic. *Dyna-Air Engineering Corp.*, B-278037, Nov. 7, 1997, 97-2 CPD ¶ 132.

If you have any questions regarding this matter, please contact MAJ Peter Tran at (703) 696-2825, facsimile (703) 696-1537.

Sincerely,

Peter H. Tran
Major, U.S. Army
Trial Attorney

Copies Furnished by facsimile:

Protester:

Grace Bateman, Esq., Seyfarth Shaw LLP
Telephone: (202) 838-5359; Facsimile: (202) 828-5393

Contracting Officer:

Cheong Chon, Defense Intelligence Agency, Virginia Contracting Agency

Telephone: (202) 231-8416; Facsimile: (202) 231-2831

Field Attorney:

LtCol Joe Treanor, Esq., Defense Intelligence Agency
Telephone: (202) 231-2821; Facsimile: (202) 231-2831

**DEFENSE INTELLIGENCE AGENCY**
Office of the Acquisition Executive
Building 6000, Bolling AFB
Washington, D.C. 20340-5100

October 25, 2006

U-2053/AE-2A

MEMORANDUM FOR MAJ Peter Tran, HQ, U.S. Army Legal Service Agency, Contract Appeals Division, Team I, ATTN: JALS-CAI, 901 North Stuart Street, Suite 500, Arlington, Virginia 22203-1837

Subject: B-296741.10; Protest of Olympus Building Services, Inc.

Contracting Officer's Notice of Corrective Action

RFP HHM402-05-R-0017 (the "Solicitation") for the procurement of janitorial and custodial services for the Defense Intelligence Analysis Center (DIAC) and its new expansion building was issued on 14 April 2005. The Solicitation closed on 13 May 2005. Nine offers were received in response to the Solicitation. Award was made to The Ravens Group, LLC, on 17 June 2005. On 12 July 2005 and 19 July 2005, two separate protests were filed with the GAO (B-296741.2 and B-296914). The Agency notified GAO that it intended to take corrective action on 3 August 2005. Consistent with the notice to GAO, the Agency re-evaluated the proposals, conducted discussions and allowed offerors the opportunity to submit final proposal revisions. From the re-evaluation, a new award was made to Rowe Contracting Service, Inc. on 22 March 2006. On 29 March 2006, GAO notified the Agency that Ravens Group had filed a protest. The Agency notified GAO on April 3, 2006 that it intended to conduct a new source selection and issue a new source selection decision. On September 13, 2006, consistent with its notice to GAO, the Agency announced award would be made to NOSLOT pursuant to the new source selection conducted by a new source selection authority. After receiving a requested debriefing, Olympus filed the present protest before GAO on October 13, 2006.

The Government has determined that the awardee, NOSLOT, does not currently possess the Top Secret (TS/SCI) security clearance required by paragraph 24 (Clause 52.999-4031d) of the Solicitation and Amendment 0002. Because NOSLOT is presently ineligible for award, the Agency has decided to take the following corrective action. The Agency intends to terminate the contract with NOSLOT for convenience and conduct a new source selection based on the current proposals. The Agency will not be conducting a new technical evaluation of proposals or accepting revised proposals from any offerors. The new source selection will be based on the offerors' previously submitted proposals. Once a new source selection is completed, a new Source Selection Decision will be issued, and the appropriate offeror will be awarded a contract for the reminder of the services required.

CHEONG J. CHON
Contracting Officer

*HQ, U.S. ARMY LITIGATION CENTER*
*DEPARTMENT OF THE ARMY*
*CONTRACT AND FISCAL LAW DIVISION, USALSA*
*901 N. STUART STREET, SUITE 500*
*ARLINGTON, VA 22203-1837*
*Tracy.Williams@hqda.army.mil*
*(703) 696-2850 phone*
*(703) 696-1537 fax*

# *facsimile transmittal*

Date: October 26, 2006

Re: GAO Protest of **Olympus Building Services, Inc. (B-296741.10)**

From: Tracy Williams, Paralegal Specialist

---

**NUMBER OF PAGES (INCLUDING THIS COVER SHEET): 4**

| Name | Firm/Agency | Phone No. | Fax No. |
|---|---|---|---|
| *Mary Curcio, Esq.* | *GAO* | *202-512-* | *202-512-9749* |
| *Grace Bateman, Esq.* | *Protester* | *202-828-5359* | *202-828-5393* |
| *Lt Col Joe Treanor, Esq.* | *DIA* | *202-231-2821* | *202-231-2831* |
| *Cheong J. Chon* | *Contracting Officer* | *202-231-8416* | *202-231-2831* |

## ***MESSAGE***

**Accompanying this header sheet is the Agency's notice of intent to take corrective action in the above referenced protest. If transmission problems occur, please contact Ms. Tracy Williams, (703) 696-2850, DSN: 426-2850. Direct all other questions to Major Peter Tran, Trial Attorney at 703-696-2825 or DSN 426-2825.**

Confidentiality Notice

**This facsimile transmission and/or the documents accompanying it may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify this office immediately by telephone or arrange the return of documents.**

*******************************
*** MULTI TX/RX REPORT ***
*******************************

TX/RX NO 4855
INCOMPLETE TX/RX
TRANSACTION OK (1) 9912025129749
(2) 9912028285393
(3) 9912022312831
ERROR

HQ, U.S. ARMY LITIGATION CENTER
DEPARTMENT OF THE ARMY
CONTRACT AND FISCAL LAW DIVISION,
USALSA
901 N. STUART STREET, SUITE 500
ARLINGTON, VA 22203-1837
Tracy.Williams@hqda.army.mil
(703) 696-2850 phone
(703) 696-1537 fax

# facsimile transmittal

Date: October 26, 2006

Re: GAO Protest of **Olympus Building Services, Inc.** (**B-296741.10**)

From: Tracy Williams, Paralegal Specialist

**NUMBER OF PAGES (INCLUDING THIS COVER SHEET): 4**

| Name | Firm/Agency | Phone No. | Fax No. |
|---|---|---|---|
| Mary Curcio, Esq. | GAO | 202-512- | 202-512-9749 |
| Grace Bateman, Esq. | Protester | 202-828-5359 | 202-828-5393 |
| Lt Col Joe Treanor, Esq. | DIA | 202-231-2821 | 202-231-2831 |
| Cheong J. Chon | Contracting Officer | 202-231-8416 | 202-231-2831 |

## MESSAGE

Accompanying this header sheet is the Agency's notice of intent to take corrective action in the above referenced protest. If transmission problems occur, please contact Ms. Tracy Williams, (703) 696-2850, DSN: 426-2850. Direct all other questions to Major Peter Tran, Trial Attorney at 703-696-2825 or DSN 426-2825.



Confidentiality Notice

G A O
Accountability • Integrity • Reliability

Comptroller General
of the United States

United States Government Accountability Office
Washington, DC 20548

# Decision

**Matter of:** Olympus Building Services, Inc.

**File:** B-296741.10

**Date:** November 13, 2006

## DECISION

Olympus Building Services, Inc. protests the award of a contract to NOSLOT Cleaning Services under Defense Intelligence Agency solicitation No. HHM402-05-R-0017.

We dismiss the protest because the agency advises us that it will terminate the awardee's contract and make a new award determination.

The jurisdiction of our Office is established by the bid protest provisions of the Competition in Contracting Act of 1984, 31 U.S.C. §§ 3551-3556 (2000), amended by the Ronald W. Reagan National Defense Authorization Act for Fiscal Year 2005, Pub. L. No. 108-375, § 326, 118 Stat. 1811 (2004). Our role in resolving bid protests is to ensure that the statutory requirements for full and open competition are met. Pacific Photocopy and Research Servs., B-278698, B-278698.3, Mar. 4, 1998, 98-1 CPD ¶ 69 at 4.

Where an agency terminates an awardee's contract and makes a new award determination, a protest of the contract award is rendered academic. We will not consider academic protests. Dyna-Air Eng'g Corp., B-278037, Nov. 7, 1997, 97-2 CPD ¶ 132. Accordingly, the protest is dismissed.

Gary L. Kepplinger
General Counsel

GAO
Accountability • Integrity • Reliability

United States Government Accountability Office
Washington, DC 20548

# Facsimile Transmission Sheet

**Date:** November 13, 2006 Number of pages, including this cover sheet: 2

**Re:** B-296741.10
Protest of Olympus Building Services, Inc.

**From:** Mary G. Curcio, Senior Attorney

| Name | Firm/Agency | Phone | Fax |
|---|---|---|---|
| Grace Bateman, Esq. | Seyfarth Shaw LLP | 202-463-2400 | 202-828-5393 |
| Major Peter H. Tran | Department of the Army | 703-696-2825 | 703-696-1537 |

**Comments:** None