DEPARTMENT OF THE ARMY
UNITED STATES ARMY LEGAL SERVICES AGENCY
901 NORTH STUART STREET
ARLINGTON, VA 22203-1837
(703) 696-2850 DSN 426; Fax ext. 1537
E-mail: Tracy.Williams@hqda.army.mil

REPLY TO
ATTENTION OF

**S: December 1, 2006**

JALS-KFLD (715y) November 17, 2006

MEMORANDUM FOR HQ, Virginia Contracting Activity/Defense Intelligence Agency,
ATTN: Lt Col Joe Treanor, DIAC-DAP-2, Building 6000,
Bolling Air Force Base, Washington, DC 20340-5100

SUBJECT: GAO Protest by **Olympus Building Services, Inc. (B-296741.10)**

1. We enclose for your information and appropriate action a copy of the decision dismissing the subject protest.

2. In accordance with AFARS § 33.190-1, you are required to submit a bid protest after-action report (including agency-level protest) to this office not later than 15 days following the notification of resolution of the protests, including resolution by withdrawal.

3. If you should have any questions or comments, please contact Ms. Tracy Williams, Paralegal Specialist, at DSN 426-2850 or commercial 703-696-2850. Ms. Tracy Williams e-mail address is Tracy.Williams@hqda.army.mil.

Sincerely,

RAYMOND M. SAUNDERS
Chief Attorney for Bid Protests
Contract and Fiscal Law Division

Encls
1. Decision
2. After-Action Report Form

CF:
Virginia Contracting Activity/Defense Intelligence Agency, ATTN: Cheong J. Chon, Contracting Officer, Building 6000, Bolling Air Force Base, Washington, DC 20840-5100 via facsimile: 202-231-2831

*HQ, U.S. ARMY LITIGATION CENTER*
*DEPARTMENT OF THE ARMY*
*CONTRACT AND FISCAL LAW DIVISION, USALSA*
*901 N. STUART STREET, SUITE 500*
*ARLINGTON, VA 22203-1837*
*Tracy.Williams@hqda.army.mil*
*(703) 696-2850 phone*
*(703) 696-1537 fax*

# *facsimile transmittal*

Date: November 17, 2006

Re: GAO Protest of **Olympus Building Services (B-296741.10)**

From: Tracy Williams, Paralegal Specialist

---

NUMBER OF PAGES (INCLUDING THIS COVER SHEET): 4

| Name | Firm/Agency | Phone No. | Fax No. |
|---|---|---|---|
| *Lt Col Joe Treanor* | *DIA* | *202-231-2821* | *202-231-2831* |
| *Cheong J. Chon* | *Contracting Officer* | *202-231-8416* | *202-231-2831* |

## *MESSAGE*

**Accompanying this header sheet is the GAO Decision and After Action Report for the above referenced protest. If transmission problems occur, please contact Ms. Tracy Williams, (703) 696-2850, DSN: 426-2850. Direct all other questions to Major Peter Tran, Trial Attorney at 703-696-2825 or DSN 426-2825.**

Confidentiality Notice

This facsimile transmission and/or the documents accompanying it may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify this office immediately by telephone or arrange the return of documents.

********************
*** TX REPORT ***
********************

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 4936 |
| CONNECTION TEL | 992022312831 |
| SUBADDRESS | |
| CONNECTION ID | |
| ST. TIME | 11/17 15:26 |
| USAGE T | 01'32 |
| PGS. | 4 |
| RESULT | OK |

*HQ, U.S. ARMY LITIGATION CENTER*
*DEPARTMENT OF THE ARMY*
*CONTRACT AND FISCAL LAW DIVISION, USALSA*
*901 N. STUART STREET, SUITE 500*
*ARLINGTON, VA 22203-1837*
*Tracy.Williams@hqda.army.mil*
*(703) 696-2850 phone*
*(703) 696-1537 fax*

# *facsimile transmittal*

Date: November 17, 2006

Re: GAO Protest of **Olympus Building Services (B-296741.10)**

From: Tracy Williams, Paralegal Specialist

---

**NUMBER OF PAGES (INCLUDING THIS COVER SHEET): 4**

| Name | Firm/Agency | Phone No. | Fax No. |
|---|---|---|---|
| *Lt Col Joe Treanor* | *DIA* | *202-231-2821* | *202-231-2831* |
| *Cheong J. Chon* | *Contracting Officer* | *202-231-8416* | *202-231-2831* |

## ***MESSAGE***

**Accompanying this header sheet is the GAO Decision and After Action Report for the above referenced protest. If transmission problems occur, please contact Ms. Tracy Williams, (703) 696-2850, DSN: 426-2850. Direct all other questions to Major Peter Tran, Trial Attorney at 703-696-2825 or DSN 426-2825.**

DEPARTMENT OF THE ARMY
UNITED STATES ARMY LEGAL SERVICES AGENCY
901 NORTH STUART STREET
ARLINGTON, VA 22203-1837
(703) 696-2826; DSN 426; Fax ext. 1537
E-mail: frank.march@hqda.army.mil

REPLY TO
ATTENTION OF

January 29, 2007

Contract and Fiscal law Division

Protected Information To Be Disclosed Only In Accordance With United States Court of Federal Claims Protective Order

Mary G. Curcio, Esq.
Office of the General Counsel
Government Accountability Office
441 G. Street, NW
Washington, D.C. 20548
**Via E-mail: protests@gao.gov**

**PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH GAO PROTECTIVE ORDER**

Subject: Protest of Olympus Building Services, Inc. (B-296741.11)

Dear Ms. Curcio:

Please find enclosed the Government's administrative report ("AR") responding to the subject protest. Pursuant to 4 Code of Federal Regulations ("C.F.R.") § 21.3(c), the Government has sent a copy of the report directly to Grace Bateman, Esq., attorney for Olympus Building Services, Inc., (hereafter "Protester" or "Olympus") on this date. This report contains protected information. Any comments by the Protester regarding this motion should be sent directly to your office with a copy forwarded to:

LTC Frank A. March
Contract and Fiscal Law Division, Team I
ATTN: JALS-KFLD
901 North Stuart Street, Suite 500
Arlington, Virginia 22203-1837

## I. Statement of the Facts

The Defense Intelligence Agency ("DIA") issued request for proposals ("RFP") HHM402-05-R-0017 on April 15, 2005 for a firm-fixed-price contract to provide janitorial/custodial service for the Defense Intelligence Analysis Center (DIAC) at Bolling

AFB. (AR, tab 3) The RFP provided three evaluation factors: price, technical, and past performance. Id. at 40.

The RFP provided the following concerning the relative weight of the factors: [The] non-price factors (technical and Past Performance), when combined, are more important than price. Of the non-price factors, technical is more important than Past Performance. The importance of price in the evaluation for award will increase as the relative differences in non-price factors of offerors decreases." Id.

The technical factor was divided into two subfactors, the technical area and the management area. For the management area subfactor of the technical factor, "Past Performance/Relevant Experience" was specifically identified as one of three areas to be assessed. The RFP provided: "Identify experience in performing similar work to that described in the Statement of Objectives within the past (3) three years, and similar contracts currently in progress. Provide date on the level of experience in specific contracts of this type. Provide information on performance in these contracts, particularly as it relates to the offeror's overall abilities." Id. This "Past Performance/Past Experience" assessment under the technical factor was separate from the Past Performance evaluation.

The RFP set a closing date of May 13, 2005. Nine offerors submitted proposals in response to the RFP. (AR, tab 31, p. 7) Initial proposals were submitted and evaluated, discussion letters were issued, and revised proposals were accepted and evaluated. Two of the nine offerors were eliminated from the competitive range before discussions and two offerors were eliminated after discussions. Id. Another offeror was later eliminated after it was

determined that it failed to possess the required facility clearance. Id.

The final evaluation results and prices for the four remaining offerors are as follows:

| **Offeror** | **Technical** | **Past Performance** | **Price** |
| --- | --- | --- | --- |
| Rowe | [redacted] | [redacted] | [redacted] |
| Olympus | [redacted] | [redacted] | [redacted] |
| Ravens | [redacted] | [redacted] | [redacted] |
| D&A | [redacted] | [redacted] | [redacted] |

(AR, tab 31, p. 16)

Based on these prices and evaluations, the Contracting Officer conducted a tradeoff analysis:

> This procurement utilizes the best value evaluation criteria identified in the solicitation. In accordance with the RFP, non-price factors (**Technical** and **Past Performance**), when combined, were more important than **Price**. Of the non-price factors, **Technical** is more important than **Past Performance**. As the difference between offerors' non-price factors decreases, the importance of their price factor increases. Award will be made to the responsible offeror whose offer, conforming to the solicitation, is determined to be the best overall value to the Government, price and other factors considered.
>
> Of the four final offerors, Rowe proposes the lowest priced offer at a firm-fixed-price in the total amount of [redacted] including all labor [redacted] more employees than the next lowest priced offeror, Olympus), equipment, material, supplies and other items to fully support the janitorial service for the DIAC and the new expansion.
>
> Of the four final offerors, Olympus proposes the second lowest priced offer at a firm-fixed-price in the total amount of [redacted] including all labor ([redacted] employees), equipment, material, supplies and other items to fully support the janitorial service for the DIAC and the new expansion. Olympus' price is [redacted] higher than Rowe's.
>
> All offerors were rated [redacted] under the **Technical** evaluation factor. However, Olympus was the only offeror to receive a rating of [redacted] for its overall **Past Performance** evaluation factor, while the other three offerors received a rating of '[redacted] for their overall **Past Performance** evaluation factor. In a best value analysis, a comparison between Rowe and Olympus is not difficult. While both offerors received

> an [redacted]' in their **Technical** evaluation factor, Olympus received a lower **Past Performance** rating [redacted]ecause of the cure notice it had received from a previous customer. Additionally, not only does Olympus propose a higher price ([redacted] more) than Rowe, but it proposes this higher price while offering to staff [redacted]ess employees than Rowe proposes to do the work. Moreover, even if Olympus had received a rating o[redacted] for its **Past Performance**, making it comparable to Rowe in all non-price evaluation areas, **Price** would then become the determinative factor. As such, Rowe would still present the better value to the Government regardless of whether Olympus received a "Good" or "Excellent" in its **Past Performance** evalution factor. Accordingly, in any comparison between Rowe and Olympus, Rowe would present the better value because Rowe not only offers a lower price, but Rowe does this while proposing to staff mor[redacted] employees at the lower price.
>
> A comparison between Rowe and the other two offerors (D&A and Ravens Group) is also not difficult. Because Rowe has equivalent ratings to D&A and Ravens Group in both the **Technical** and **Past Performance** evaluation factors, **Price** again becomes the determinative factor. In this comparison, Rowe would present the better value than either D&A or Ravens Group because Rowe offers the lowest price for a comparable level of performance. Not only does Rowe offer a lower price [redacted] lower) than D&A, but it also proposes to staff [redacted] more employees than D&A to perform the services! Although Ravens Group does propose to staff [redacted] more employees than Rowe, I do not believe the benefit of eight added employees warrants the steep price premium o[redacted]hat Raven's proposal is offering. Consequently, I find that the savings of several million dollars between comparably rated offerors far outweighs any small advantage in the number of employees proposed by any particular offeror. Therefore, I have determined that Rowe presents the overall best value to the Government when compared to all other offerors.

Id. at 14-15.

Based on that tradeoff, the Contracting Officer found that Rowe Contracting Services, Inc. (hereafter "Awardee" or "Rowe") as the best value and selected Row for contract award. Id. at 17. On December 15, 2006, the Contracting Officer awarded Contract No. HHM402-07-C-0006 to Rowe. (AR, tab 33) On December 19, 2006, the Contracting Officer notified

Olympus that Rowe was selected for contract award. (AR, tab 34) On the same day, Olympus requested a debriefing. (AR, tab 35) On December 27, 2006, the Contracting Officer provided Olympus a written debriefing. (AR, tab 36)

On December 29, 2006, Olympus filed a protest with the GAO alleging: (1) the evaluation of offerors was not reasonable because DIA did not follow the evaluation plan stated in the solicitation; (2) DIA's past performance evaluation of Olympus' proposal was irrational; (3) DIA did not perform a proper cost/price-technical tradeoff when it selected Rowe for award; and (4) DIA's best value determination is unreasonable because it was based upon the flawed technical and past performance evaluations and up an irrational cost/price-technical tradeoff. (AR, tab 37, pp. 9-18) Pending resolution of this protest, contract performance under the contract is suspended.

## II. Argument

### A. The DIA's technical evaluation was reasonable.

The sole basis Protester's allegation regarding the technical evaluation is that it believes DIA evaluated offerors past performance twice – in the technical evaluation and in the past performance evaluation. Protester contends that it was not aware this would happen and that if it had known DIA was going to consider past performance as part of the technical evaluation, then it would have included detailed information on its past performance record. Apparently, Protester did not completely read the RFP. As the facts show above, the RFP clearly specifies that "past performance/relevant experience" would be assessed under the "management area"

of the technical factor.[1] Protester is mistaken when it states that the RFP "did not require offerors to list or explain the "quantity and extent" of their experience as an element in their technical proposals." The RFP clearly states under the management area of the technical factor that such information should be provided. (AR, tab 3, p. 41)

Assuming arguendo that this aspect of the technical evaluation was improper, Protester was not prejudiced by this aspect of the evaluation because Protester received an excellent rating for the technical factor. (AR, tab 27) "Competitive prejudice is an essential element of every viable protest, and even where an agency's actions may arguably have been improper, we will not sustain a protest where the record does not reflect that the protester was prejudiced." DuRette Construction Company, Inc., B- 294379, Sep. 15, 2004, 2004 U.S. Comp. Gen. LEXIS 184. Even though Protester is challenging its evaluation for the past performance factor, it received [redacted] for the technical factor and Protester's shortcomings in the past performance factor is based on poor performance of one of its contracts, not based on a failure to list sufficient past performance or relevant experience.[2]

The bottom line on this issue is that Protester has its facts wrong. The RFP does specify a past performance aspect of the technical evaluation. In any case, Protester received

---

[1] To the extent that Protester challenges the fact that the RFP specifies a scheme that considers past performance in both factors, this allegation is untimely. "Protests based upon alleged improprieties in a solicitation which are apparent prior to bid opening or the time set for receipt of initial proposals shall be filed prior to bid opening or the time set for receipt of initial proposals." 4 C.F.R. § 21.2(a)(1).

[2] The odd fact here is that it was Protester that provided the past performance reference that resulted in it receiving less than the highest possible rating for the past performance factor. Protester may have benefited from providing less information.

[redacted] rating for this factor and was not prejudiced by this aspect of the technical evaluation.

**B. DIA's past performance evaluation of Olympus' proposal was reasonable.**

As an initial matter, GAO provides the following standard of review for considering protests of evaluations: "Where an evaluation is challenged, [the GAO] will not reevaluate proposals, but instead will examine the record to determine whether the agency's judgment was reasonable and consistent with stated evaluation criteria and applicable statutes and regulations." Manufacturing Engineering Systems, Inc., B-293299.3, B-293299.4, Aug. 3, 2004, 2004 CPD ¶ 179.

Protester argues that its past performance rating was downgraded due to the fact that DIA has considered a cure notice that it alleges does not exist. In fact, Protester submits a declaration of one of its employees stating that it has never received a cure notice for poor performance. (AR, tab 37, attachment D)

The first defect in Protester's argument is t[redacted]ting does not constitute a downgrade as Protester alleges. The GAO has recognized that a proposal may have no identified weaknesses or deficiencies and still receive less than the highest technical rating. Pflow Industries, Inc., B-289970, May 20, 2002, 2002 CPD ¶ 85, 2002 U.S. Comp. Gen. LEXIS 61. In Pflow Industries, the protester argued that the Government failed to bring aspects of its past performance to its attention during negotiation. There, the GAO recognized that the Government did not have to bring the matter to protester's attention even though the protester received less than the maximum rating. The GAO noted that the protester received a

satisfactory rating and had no identified weaknesses or deficiencies. Protester's past performance was not downgraded. It merely did not receive the highest possible rating. Additionally, there was no requirement to discuss or conduct a clarification with Protester concerning this issue.

Another factor that minimizes the effect of Protester's [redacted] is the fact that the Contracting Officer made a contemporaneous comment in her documented source selection decision that Awardee would have been the same whether Protester received [redacted] rating for past performance. (AR, tab 32, p. 15) Accordingly, Protester is not prejudiced by its past performance rating.

And now the best part – **Protester did receive a cure notice!** (AR, tab 30) Protester provided three of its customers as past performance references. (AR, tab 29) One of those customers stated that it issued Protester a cure notice. Id. This October 13, 2004 cure notice identifies Protester's "failures in providing sufficient manpower, insufficient supervision, quality control, the repeated failure to clean assigned facilities as required under the contract, and the failure to submit required security clearance paperwork for personnel in a timely manner. . . ." (AR, tab 30) Also in the record is a November 10, 2004 response by Olympus. The source selection decision shows that the Contracting Officer considered this response by recognizing that Olympus was able to mitigate the unsatisfactory performance within 30 days. (AR, tab 32, p. 13) The bottom line is that there was a cure notice with a response that was considered by the Contracting Officer.

The Contracting Officer's decision to rate [redacted]or past performance based on this cure notice was reasonable. Additionally, Protester was not prejudiced because it would not have been selected for award because of its past performance rating due to its higher price.

**C. DIA did perform a proper trade-off when it selected Rowe for award.**

Protester contends that the DIA converted the basis of award from best value to low price/technically acceptable ("LP/TA"). Protester contends that by rating all offerors as [redacted] and selecting the lowest price offeror, it neglected its duty to conduct a trade-off.

Protester is wrong. Protester cites no authority for its contention that it is unusual for all offerors to receive [redacted] ratings. In fact, all offerors did not receive [redacted]atings – Protester received [redacted] rating for past performance.

In contrast to Protester's assumptions, the trade-off conducted by the Contracting Officer shows that she identified the evaluation factors and their relative weights. The Contracting Officer also recognized the portion of the RFP that provided that the importance of the price factor increases as the relative differences in the non-price factors decreases. (AR, tab 32, p. 14) The Contracting Officer also recognized the price difference between Protester and Awardee. Protester's price was [redacted]igher than Awardee's. The Contracting Officer also considered that Awardee proposed to perform the contract with [redacted] more employees than proposed by Protester. The bottom line here is that the Contracting Officer did perform a trade-off between Protester and Awardee and found Awardee to be the better value.

**D. DIA's best value determination was reasonable.**

Protester contends that DIA's best value decision is unreasonable because it was based on a flawed technical and past performance evaluation and an irrational trade-off. As shown above, this premise is undercut by the fact that those three allegations are factually incorrect. Additionally, the best value decision is reasonable. FAR 15.308 requires:

> The source selection authority's (SSA) decision shall be based on a comparative assessment of proposals against all source selection criteria in the solicitation. While the SSA may use reports and analyses prepared by others, the source selection decision shall represent the SSA's independent judgment. The source selection decision shall be documented, and the documentation shall include the rationale for any business judgments and tradeoffs made or relied on by the SSA, including benefits associated with additional costs. Although the rationale for the selection decision must be documented, that documentation need not quantify the tradeoffs that led to the decision.

The GAO has interpreted FAR 15.308:

> Section 15.308 of the FAR requires a source selection decision to be based on a comparative assessment of proposals against all of the solicitation's source selection criteria and documented, and that the documentation include the rationale for any business judgments and tradeoffs made or relied on by the SSA. The propriety of the cost/price-technical tradeoff decision turns not on the difference in the technical scores or ratings per se, but on whether the selection official's judgment concerning the significance of the difference was reasonable and adequately justified in light of the RFP's evaluation scheme.

Johnson Controls World Services, Inc., B-289942, May 24, 2002, 2002 U.S. Comp. Gen. LEXIS 70 at *12, citing Cygnus Corp., B-275181, Jan. 29, 1997, 97-1 CPD ¶ 63 at 11. Basically, the SSA must provide a "cogent rationale" in the documentation for the decision. Pharm-Chem Lab., Inc., B-244385, Oct. 8, 1991, 91-2 CPD ¶ 317.

The Contracting Officer provides a clear basis for selecting Rowe over Olympus. Protester's contends that it is the best value at a higher price. As stated in the source selection decision, Rowe was lower priced and higher rated. Rowe offered more employees at this lower price. The Contracting Officer even commented that this decision was "not difficult." She clearly lays out her rationale for selecting Awardee and that rationale is reasonable.

### III. Conclusion

The DIA's technical and past performance evaluation of Protester was reasonable. The DIA's best value trade-off and source selection decision was reasonable. Protester's allegations are factually wrong.

**WHEREFORE,** for the reasons set forth above, the Government respectfully requests that GAO deny Olympus' protest. If you have any questions regarding this matter, please contact LTC Frank March at (703) 696-2826; fax (703) 696-1537.

Sincerely,

Frank A. March
Lieutenant Colonel, U.S. Army
Chief, Trial Team I

Copies Furnished:

Protester:
Grace Bateman, Esq.
Seyfarth Shaw LLP
815 Connecticut Ave., NW, Suite 500
Washington, DC 20006-4004
Telephone: 703-256-7754

Facsimile: 703-256-7883

Intervenor :
Kenneth B. Weckstein, Esq.
Epstein Becker & Green, P.C.
1227 25th St., N.W., Suite 700
Washington, DC 20037
Telephone: 202-861-0900
Facsimile: 202-861-3560

Installation Attorney:
Virginia Contracting Activity/Defense Intelligence Agency
ATTN: Lt. Col. Joe Treanor, DIAC-DAP-2
Building 6000
Bolling Air Force Base
Washington, DC 20340-5100
Telephone: 202-231-2821
Facsimile: 202-231-2831

Directorate of Contracting:
Virginia Contracting Activity/Defense Intelligence Agency
ATTN: Cheong Chon, Contracting Officer
Building 6000
Bolling Air Force Base
Washington, DC 20840-5100,
Telephone: 202-231-8416
Facsimile: 202-231-2831

# SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS

*Offeror to Complete Blocks 12, 17, 23, 24, & 30*

1. Requisition Number: 448/0114Z/05

PAGE 1 OF 43

2. Contract No.
3. Award/Effective Date
4. Order Number
5. Solicitation Number: HHM402-05-R-0017
6. Solicitation Issue Date: Apr 14, 2005

olicitation ation Call: a. Name JUANITA JONES

b. Telephone Number (*No collect calls*) (202)231-3613

8. Offer Due Date/Local Time: May 13, 2005 / 14:00 PM

9. By Code

10. This Acquisition is
- [X] Unrestricted
- [ ] Set-Aside % for
- [ ] Small Business
- [ ] HubZone Small Business
- [ ] 8(A)

NAICS: 561720

Size Standard: ____

11. Delivery for FOB Destination Unless Block is Marked.
- [ ] See Schedule

12. Discount Terms

[ ] 13a. This contract is a rated order under DPAS (15 CFR 700)

13b. Rating

14. Method of Solicitation [ ] RFQ [ ] IFB [X] RFP

15. Deliver To Code HHP440
LOGISTICS APPLICATIONS INC.
3300 75TH AVE. REAR ENTRANCE
LANDOVER, MD 20785

16. Administered By Code

17a. Contractor/Offeror Code Facility Code

Telephone No. TIN:

18a. Payment Will Be Made By Code

17b. Check if Remittance is Different and Put Such Address in Offer. [ ]

18b. Submit Invoices to Address Shown in Block 18a Unless Box Below is Checked. [ ] See Addendum.

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | PLEASE NOTE PROPOSAL CLOSING DATE 13 MAY 2005 @ 2:00 P.M. | | | | |

ting and Appropriation Data

26. Total Award Amount (*For Govt. Use Only*)

[X] 27a. Solicitation incorporates by reference FAR 52.212-1, 52.212-4, FAR 52.212-3 and 52.212-5 are attached. Addenda [X] are [ ] are not attached

[ ] 27b. Contract/Purchase Order incorporates by reference FAR 52.212-4, 52.212-5 is attached. Addenda [ ] are [ ] are not attached

[ ] 28. Contractor is required to sign this document and return ______ copies to Issuing Office. Contractor agrees to furnish and deliver all items set forth or otherwise identified above and on any additional sheets subject to the terms and conditions specified herein.

[ ] 29. Award of Contract: Reference. ______ Offer Dated ______. Your offer on Solicitation (Block 5), including any additions or changes which are set forth herein, is accepted as to items:

30a. Signature of Offeror/Contractor

31a. United States of America (*Signature of Contracting Officer*)

30b. Name and Title of Signer (*Type or Print*)

30c. Date Signed

31b. Name of Contracting Officer (*Type or Print*)

31c. Date Signed

32a. Quantity in Column 21 Has Been
[ ] Received [ ] Inspected [ ] Accepted, and Conforms to the Contract, Except as Noted: ______

32b. Signature of Authorized Government Representative

32c. Date

32d. Printed Name and Title of Authorized Government Representative

32e. Mailing Address of Authorized Government Representative

32f. Telephone Number of Authorized Government Representative

32g. E-mail of Authorized Government Representative

3. Ship Number [ ] Final

34. Voucher Number

35. Amount Verified Correct For

36. Payment [ ] Complete [ ] Partial [ ] Final

37. Check Number

unt Number

39. S/R Voucher Number

40. Paid By

certify this account is correct and proper for payment

1b. Signature and Title of Certifying Officer

41c. Date

42a. Received By (Print)

42b. Received At (Location)

42c. Date Rec'd (YY/MM/DD)

42d. Total Containers

436

STANDARD FORM 1449 (REV. 4/2002)

**SCHEDULE Continued**

| Item No. | Supplies/Services | Quantity | Unit | Unit Price | Amount |
|---|---|---|---|---|---|
| | FAX PROPOSALS WILL NOT BE ACCEPTED.<br><br>PLEASE SUBMIT ALL QUESTIONS BY 28 APRIL 2005 @ 3:00P.M. | | | | |
| 0001 | BASE YEAR 1 July 2005 through 30 Oct 2005.<br><br>The contractor shall provide all personnel, supervision, equipment and material, except as specified by the Government, to accomplish Custodial Services at the Defense Intelligence Analysis Center (DIAC) at Bolling AFB, Washington, DC in accordance with the attached Statement of Objectives (SOO), and technical exhibits. | 0 | EA | ______ | ______ |
| 0001AA | PROVIDE BASIC CLEANING SERVICES | 4 | EA | ______ | ______ |
| 0001AB | DIAC EXPANSION (AUG 2005 THROUGH 30 OCTOBER 2005).<br><br>This CLIN should be an estimate IAW attached SOO and Drawings. The DIAC Expansion is scheduled for occupancy Aug 2005. The estimated square footage is 470,000. | 3 | EA | ______ | ______ |
| 0002 | OPTION PERIOD I (31 OCT 2005 THROUGH 30 SEPTEMBER 2006)<br><br>The contractor shall provide all personnel, supervision, equipment and material, except as specified by the Government, to accomplish Custodial Services at the Defense Intelligence Analysis Center (DIAC) at Bolling AFB, Washington, DC in accordance with the attached Statement of Objectives (SOO), and technical exhibits. | 0 | EA | ______ | ______ |
| 0002AA | PROVIDE BASIC CLEANING SERVICES | 12 | MO | ______ | ______ |
| 0002AB | DIAC EXPANSION (31 OCT 2005 THROUGH 30 SEPT 2006)<br><br>This CLIN should be an Estimate IAW attached SOO and Drawings. The estimated sqaure footage is 470,000. | 12 | MO | ______ | ______ |
| )003 | OPTION PERIOD II ( 31 OCT 2006 THROUGH 30 SEPTEMBER 2007)<br><br>The contractor shall provide all personnel, supervision, equipment and material, except as specified by the Government, to accomplish Custodial Services at the Defense Intelligence Analysis Center (DIAC) at Bolling AFB, Washington, DC in accordance with the attached Statement of Objectives (SOO), and technical exhibits. | 0 | EA | ______ | ______ |
| ______ | PROVIDE BASIC CLEANING SERVICES. | 12 | MO | ______ | ______ |
| 003AB | DIAC EXPANSION (31 OCT 2006 THROUGH 30 SEPT 2007) | 12 | MO | ______ | |

437

## SCHEDULE Continued

| Item No. | Supplies/Services | Quantity | Unit | Unit Price | Amount |
|---|---|---|---|---|---|
| | This CLIN should be an Estimate IAW attached SOO and Drawings. The estimated sqaure footage is 470,000. | | | | |
| 0004 | OPTION III PERIOD OF PERFORMANCE ( 31 OCT 2007 THROUGH 2008)<br><br>The contractor shall provide all personnel, supervision, equipment and material, except as specified by the Government, to accomplish Custodial Services at the Defense Intelligence Analysis Center (DIAC) at Bolling AFB, Washington, DC in accordance with the attached Statement of Objectives (SOO), and technical exhibits. | 0 | EA | ________ | ________ |
| 0004AA | PROVIDE BASIC CLEANING SERVICES | 12 | EA | ________ | ________ |
| 0004AB | DIAC EXPANSION (31 Oct 2007 through 30 Sept 2008)<br><br>THIS CLIN should be an extimate IAW attached SOO and Drawing . The estimated square footage is 470,000. | 12 | EA | ________ | ________ |
| 0005 | OPTION YEAR IV PERIOD OF PERFORMANCE (31 OCT 2008 THROUGH 30 SEPT 2009)<br><br>The contractor shall provide all personnel, supervision, equipment and material, except as specified by the Government, to accomplish Custodial Services at the Defense Intelligence Analysis Center (DIAC) at Bolling AFB, Washington, DC in accordance with the attached Statement of Objectives (SOO), and technical exhibits. | 0 | EA | ________ | ________ |
| 0005AA | PROVIDE BASIC CLEANING SERVICE | 12 | EA | ________ | ________ |
| 0005AB | DIAC EXPANSION (31 Oct 2008 through 30 Sept 2009)<br><br>THIS CLIN should be an extimate IAW attached SOO and Drawing . The estimated square footage is 470,000. | 12 | EA | ________ | ________ |

# Statement of Objectives
## Custodial Contract

## Introduction

fense Intelligence Agency (DIA), established in 1961, is a primary element of an extensive intelligence :c\ iity. Our mission is to provide timely, objective and cogent military intelligence to war fighters, defense planners, and defense and national security policymakers. The Defense Intelligence Analysis Center (DIAC) houses the personnel who support this highly visible mission and thus reflects upon the image of the United States Government.

Visitors to the DIAC include high level members of the intelligence community, high ranking military officials, congressmen, senators and ambassadors of other nations.

## 1.0 Overall Objectives

### Personnel

I... ractor shall provide an on-site Project Manager who shall be responsible for monitoring the quality and performance of the work. The Project Manager shall create and maintain a security plan.

Before award of the contract the contractor shall have 20% of their security clearances approved as required for performance of this contract. This requirement can be waived only if the contractor has ample cleared personnel to escort cleaning employees to fully satisfy all cleaning objectives. However, within six months after contract award the contractor must have a minimum of 60% cleared cleaning personnel. The contractor will maintain, throughout the life of the award, ample cleared personnel to achieve all contract objectives.

Personnel will conduct themselves in a professional manner and maintain a professional appearance at all times. Personnel will possess the proper skill mix and experience to perform all custodial requirements.

The DIAC is a high security facility and all direct employees assigned to the DIAC must meet the investigative requirement for a Top Secret with access to Special Compartmented Information (TS-SCI). Any employee or subcontractor without the TS-SCI clearance must be escorted at all times by authorized escorts and will have no access to certain areas. The contractor is responsible for all escorts at no additional cost to the Government.

### Materials

The contractor shall provide all hand towels, toilet paper, toilet seat covers, soap, equipment, tools and material cleaning supplies) necessary to insure all DIAC areas covered in this contract are clean, neat and dust free. All vacuum equipment shall meet any federal standards. The government will provide soap dispensers, toilet paper ...s and recycling containers.

### Facilities

The government shall furnish without cost to the contractor designated spaces in the building as needed for storage of materials, equipment and office space with a reasonable amount of utilities to be used in connection with this contract.

### Organizational Processes

The contractor shall develop and maintain a service schedule, approved by the Contracting Officer's Representative, that includes all areas in the scope of work and assures timely cleaning. This schedule will include quality control inspections, periodic cleaning time tables (frequencies) and supply inventory control. Final bids will include the proposed service schedule.

## 2.0 Contract Objectives

Office and common areas, to include stairwells, escalators and elevators, should be cleaned to industry tandards and present a clean and professional appearance.

- Sanitary areas should be clean to industry standards with particular attention given to appropriate health, safety and sanitary practices. These areas must look, smell and be clean each workday.
- High visibility/traffic areas should present a sparkling clean and professional appearance at all times, which will be identified on site visit.
- With the exception of classified waste, trash cans in all areas shall be emptied daily.
- Inside windows and inside window coverings shall be cleaned on a monthly basis.
- Provide custodial service inside DIAC and up to 50' around all DIA buildings on Bolling Air Force Base to include loading docks, parking garages and remote delivery facilities. Custodial service to include emptying trash cans in exterior shelters (bus shelters and parking areas). See attached drawing for building parameters.
- Provide necessary cleared personnel, supplies and equipment to perform contract requirements without support from DIA.
- Provide an onsite project manager clearable up to level 6.

ustodial services to be provided Monday through Friday between 0400 and 2300.

- At the discretion of DIA management, odd hours and special cleaning shall be conducted as required. Examples are, but not limited to, out of routine cleaning for tours and special events; plumbing and facility emergencies; weekends and holidays
- Contract objectives will be performed in accordance with jointly approved custodial timetables provided in the service schedule.
- Performance areas will be as shown in the attached documents

## 2.0 Contract Objectives

ᵓerformance areas are as follows:

[he DIAC currently consists of Building 6000 (68 restrooms, 4 locker rooms and 10 pantries) which includes office ·pace in the Power House, the Remote Delivery Facility (2 restrooms and 1 shower area), the T-Modules which are ›rimarily classrooms (3 restrooms) and the Q-Modules (2 restrooms).

ˀhe estimated square footage of Building 6000 is 767,000, the Remote Delivery Facility is 3,200, the T-Module is :8,702 and the Q-Module is 4,320.

'o be included in the contract will be the trash and debris removal in the loading dock and the parking garage. The stimated square footage of the loading dock is 26,000 and the parking garage is 342,000.

'o be included in the contract will be trash and debris removal in the bus shelters located on the perimeter of the DIAC, s shown in the attached drawing.

ı July 2005, the DIAC Expansion is scheduled to open for occupancy. The estimated square footage is 470,000 (21 :strooms and 18 pantries). Drawings of the Expansion are included in the attachment.

443

Table of Contents

Page

1. 52.212-1 INSTRUCTIONS TO OFFERORS--COMMERCIAL ITEMS (JAN 2005) .......... 10
2. 52.212-2 EVALUATION--COMMERCIAL ITEMS (JAN 1999) .......... 13
3. 52.212-3 OFFEROR REPRESENTATIONS AND CERTIFICATIONS--COMMERCIAL ITEMS (JAN 2005)... 13
4. 52.212-4 CONTRACT TERMS AND CONDITIONS--COMMERCIAL ITEMS (APR 1998) .......... 22
5. 52.212-5 CONTRACT TERMS AND CONDITIONS REQUIRED TO IMPLEMENT STATUTES OR EXECUTIVE ORDERS--COMMERCIAL ITEMS (Jan 2005).......... 24
6. 52.216-1 TYPE OF CONTRACT (APR 1984).......... 27
7. 52.217-8 OPTION TO EXTEND SERVICES (NOV 1999).......... 27
8. 52.217-9 OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 2000) .......... 28
9. 52.222-1 NOTICE TO THE GOVERNMENT OF LABOR DISPUTES (FEB 1997) .......... 28
10. 52.223-3 HAZARDOUS MATERIAL IDENTIFICATION AND MATERIAL SAFETY DATA (JAN 1997).... 28
11. 52.228-5 INSURANCE--WORK ON A GOVERNMENT INSTALLATION (JAN 1997) .......... 29
12. 52.232-11 EXTRAS (APR 1984).......... 29
13. 52.232-17 INTEREST (JUNE 1996).......... 29
14. 52.232-19 AVAILABILITY OF FUNDS FOR THE NEXT FISCAL YEAR (APR 1984).......... 30
15. 52.237-2 PROTECTION OF GOVERNMENT BUILDINGS, EQUIPMENT, AND VEGETATION (APR 1984) .......... 30
16. 52.237-3 CONTINUITY OF SERVICES (JAN 1991) .......... 30
17. 52.242-15 STOP-WORK ORDER (AUG 1989).......... 31
18. 52.243-1 CHANGES--FIXED-PRICE (AUG 1987).......... 31
19. 52.245-4 GOVERNMENT-FURNISHED PROPERTY (SHORT FORM) (JUNE 2003).......... 32
20. 52.246-4 INSPECTION OF SERVICES--FIXED-PRICE (AUG 1996).......... 33
21. 52.249-4 TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (SERVICES) (SHORT FORM) (APR 1984) .......... 33
22. 52.249-8 DEFAULT (FIXED-PRICE SUPPLY AND SERVICE) (APR 1984) .......... 33
23. 52.999-4024 CONTRACTOR CONTRACT ADMINISTRATOR(S).......... 34
24. 52.999-4031 SECURITY REQUIREMENTS.......... 34
25. Proposal instructions .......... 35
26. EVALUATION CRITERIA.......... 40

444

1. 52.212-1 INSTRUCTIONS TO OFFERORS--COMMERCIAL ITEMS (JAN 2005)

(a) "North American Industry Classification System (NAICS) code and small business size standard." The NAICS code and small business size standard for this acquisition appear in Block 10 of the solicitation cover sheet (SF 1449). However, the small business size standard for a concern which submits an offer in its own name, but which proposes to furnish an item which it did not itself manufacture, is 500 employees.

(b) "Submission of offers." Submit signed and dated offers to the office specified in this solicitation at or before the exact time specified in this solicitation. Offers may be submitted on the SF 1449, letterhead stationery, or as otherwise specified in the solicitation. As a minimum, offers must show--

(1) The solicitation number;
(2) The time specified in the solicitation for receipt of offers;
(3) The name, address, and telephone number of the offeror;
(4) A technical description of the items being offered in sufficient detail to evaluate compliance with the requirements in the solicitation. This may include product literature, or other documents, if necessary;
(5) Terms of any express warranty;
(6) Price and any discount terms;
(7) "Remit to" address, if different than mailing address;
(8) A completed copy of the representations and certifications at FAR 52.212-3 (see FAR 52.212-3(j) for those representations and certifications that the offeror shall complete electronically);
(9) Acknowledgment of Solicitation Amendments;
(10) Past performance information, when included as an evaluation factor, to include recent and relevant contracts for the same or similar items and other references (including contract numbers, points of contact with telephone numbers and other relevant information); and
(11) If the offer is not submitted on the SF 1449, include a statement specifying the extent of agreement with all terms, conditions, and provisions included in the solicitation. Offers that fail to furnish required representations or information, or reject the terms and conditions of the solicitation may be excluded from consideration.

(c) "Period for acceptance of offers." The offeror agrees to hold the prices in its offer firm for 30 calendar days from the date specified for receipt of offers, unless another time period is specified in an addendum to the solicitation.

(d) "Product samples." When required by the solicitation, product samples shall be submitted at or prior to the time specified for receipt of offers. Unless otherwise specified in this solicitation, these samples shall be submitted at no expense to the Government, and returned at the sender's request and expense, unless they are destroyed during preaward testing.

(e) "Multiple offers." Offerors are encouraged to submit multiple offers presenting alternative terms and conditions or commercial items for satisfying the requirements of this solicitation. Each offer submitted will be evaluated separately.

(f) "Late submissions, modifications, revisions, and withdrawals of offers."

(1) Offerors are responsible for submitting offers, and any modifications, revisions, or withdrawals, so as to reach the Government office designated in the solicitation by the time specified in the solicitation. If no time is specified in the solicitation, the time for receipt is 4:30 p.m., local time, for the designated Government office on the date that offers or revisions are due.

(2)

(i) Any offer, modification, revision, or withdrawal of an offer received at the Government office designated in the solicitation after the exact time specified for receipt of offers is "late" and will not be considered unless it is received before award is made, the Contracting Officer determines that accepting the late offer would not unduly delay the acquisition; and--

(A) If it was transmitted through an electronic commerce method authorized by the solicitation, it was received at the initial point of entry to the Government infrastructure not later than 5:00 p.m. one working day prior to the date specified for receipt of offers; or

(B) There is acceptable evidence to establish that it was received at the Government installation designated for receipt of offers and was under the Government's control prior to the time set for receipt of offers; or

(C) If this solicitation is a request for proposals, it was the only proposal received.

(ii) However, a late modification of an otherwise successful offer, that makes its terms more favorable to the Government, will be considered at any time it is received and may be accepted.

(3) Acceptable evidence to establish the time of receipt at the Government installation includes the time/date stamp of that installation on the offer wrapper, other documentary evidence of receipt maintained by the installation, or oral testimony or statements of Government personnel.

(4) If an emergency or unanticipated event interrupts normal Government processes so that offers cannot be received at the Government office designated for receipt of offers by the exact time specified in the solicitation, and urgent Government requirements preclude amendment of the solicitation or other notice of an extension of the closing date, the time specified for receipt of offers will be deemed to be extended to the same time of day specified in the solicitation on the first work day on which normal Government processes resume.

(5) Offers may be withdrawn by written notice received at any time before the exact time set for receipt of offers. Oral offers in response to oral solicitations may be withdrawn orally. If the solicitation authorizes facsimile offers, offers may be withdrawn via facsimile received at any time before the exact time set for receipt of offers, subject to the conditions specified in the solicitation concerning facsimile offers. An offer may be withdrawn in person by an offeror or its authorized representative if, before the exact time set for receipt of offers, the identity of the person requesting withdrawal is established and the person signs a receipt for the offer.

(g) "Contract award (not applicable to Invitation for Bids)." The Government intends to evaluate offers and award a contract without discussions with offerors. Therefore, the offeror's initial offer should contain the offeror's best terms from a price and technical standpoint. However, the Government reserves the right to conduct discussions if later determined by the Contracting Officer to be necessary. The Government may reject any or all offers if such action is in the public interest; accept other than the lowest offer; and waive informalities and minor irregularities in offers received.

(h)" Multiple awards." The Government may accept any item or group of items of an offer, unless the offeror qualifies the offer by specific limitations. Unless

otherwise provided in the Schedule, offers may not be submitted for quantities less than those specified. The Government reserves the right to make an award on any item for a quantity less than the quantity offered, at the unit prices offered, unless the offeror specifies otherwise in the offer.

(i) "Availability of requirements documents cited in the solicitation."

(1)

(i) The GSA Index of Federal Specifications, Standards and Commercial Item Descriptions, FPMR Part 101-29, and copies of specifications, standards, and commercial item descriptions cited in this solicitation may be obtained for a fee by submitting a request to--
GSA Federal Supply Service Specifications Section
Suite 8100
470 East L'Enfant Plaza, SW
Washington, DC 20407
Telephone (202) 619-8925
Facsimile (202) 619-8978.

(ii) If the General Services Administration, Department of Agriculture, or Department of Veterans Affairs issued this solicitation, a single copy of specifications, standards, and commercial item descriptions cited in this solicitation may be obtained free of charge by submitting a request to the addressee in paragraph (i)(1)(i) of this provision. Additional copies will be issued for a fee.

(2) The DoD Index of Specifications and Standards (DoDISS) and documents listed in it may be obtained from the--
Department of Defense Single Stock Point (DoDSSP)
Building 4, Section D
700 Robbins Avenue
Philadelphia, PA 19111-5094
Telephone (215) 697-2667/2179
Facsimile (215) 697-1462.

(i) Automatic distribution may be obtained on a subscription basis.

(ii) Order forms, pricing information, and customer support information may be obtained--

(A) By telephone at (215) 697-2667/2179; or

(B) Through the DoDSSP Internet site at http://dodssp.daps.mil.

(3) Nongovernment (voluntary) standards must be obtained from the organization responsible for their preparation, publication, or maintenance.

(j) "Data Universal Numbering System (DUNS) Number." (Applies to all offers exceeding $25,000, and offers of $25,000 or less if the solicitation requires the Contractor to be registered in the Central Contractor Registration (CCR) database. The offeror shall enter, in the block with its name and address on the cover page of its offer, the annotation "DUNS" or "DUNS+4" followed by the DUNS or DUNS+4 number that identifies the offeror's name and address. The DUNS+4 is the DUNS number plus a 4-character suffix that may be assigned at the discretion of the offeror to establish additional CCR records for identifying alternative Electronic Funds Transfer (EFT) accounts (see FAR Subpart 32.11) for the same parent concern. If the offeror does not have a DUNS number, it should contact Dun and Bradstreet directly to obtain one. An offeror within the United States may contact Dun and Bradstreet by calling 1-866-705-5711 or via the internet at http://www.dnb.com. An offeror located outside the United States must contact the local Dun and Bradstreet office for a DUNS number.

(k) "Central Contractor Registration." Unless exempted by an addendum to this solicitation, by submission of an offer, the offeror acknowledges the requirement that a prospective awardee shall be registered in the CCR database prior to award, during performance and through final payment of any contract resulting from this solicitation. If the Offeror does not become registered in the CCR database in the time prescribed by the Contracting Officer, the

Contracting Officer will proceed to award to the next otherwise successful registered Offeror. Offerors may obtain information on registration and annual confirmation requirements via the internet at http://www.ccr.gov or by calling 1-888-227-2423 or 269-961-5757.

(l) "Debriefing." If a post-award debriefing is given to req uesting offerors, the Government shall disclose the following information, if applicable:

(1) The agency's evaluation of the significant weak or deficient factors in the debriefed offeror's offer.
(2) The overall evaluated cost or price and technical rating of the successful and the debriefed offeror and past performance information on the debriefed offeror.
(3) The overall ranking of all offerors, when any ranking was developed by the agency during source selection.
(4) A summary of the rationale for award;
(5) For acquisitions of commercial items, the make and model of the item to be delivered by the successful offeror.
(6) Reasonable responses to relevant questions posed by the debriefed offeror as to whether source-selection procedures set forth in the solicitation, applicable regulations, and other applicable authorities were followed by the agency.

(End of provision)

**2. 52.212-2 EVALUATION--COMMERCIAL ITEMS (JAN 1999)**

(a) The Government will award a contract resulting from this solicitation to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered. The following factors shall be used to evaluate offers: **TECHNICAL AND PAST PERFORMANCE**

Technical and past performance, when combined, are more important than price.

(b) "Options." The Government will evaluate offers for award purposes by adding the total price for all options to the total price for the basic requirement. The Government may determine that an offer is unacceptable if the option prices are significantly unbalanced. Evaluation of options shall not obligate the Government to exercise the option(s).

(c) A written notice of award or acceptance of an offer, mailed or otherwise furnished to the successful offeror within the time for acceptance specified in the offer, shall result in a binding contract without further action by either party. Before the offer's specified expiration time, the Government may accept an offer (or part of an offer), whether or not there are negotiations after its receipt, unless a written notice of withdrawal is received before award.

(End of provision)

**3. 52.212-3 OFFEROR REPRESENTATIONS AND CERTIFICATIONS--COMMERCIAL ITEMS (JAN 2005)**

An offeror shall complete only paragraph (j) of this provision if the offeror has completed the annual representations and certifications electronically at http://orca.bpn.gov. If an offeror has not completed the annual representations and certifications electronically at the ORCA website, the offeror shall complete only paragraphs (b) through (i) of this provision.

(a) "Definitions." As used in this provision:

"Emerging small business" means a small business concern whose size is no greater than 50 percent of the numerical size standard for the NAICS code designated.

"Forced or indentured child labor" means all work or service--

(1) Exacted from any person under the age of 18 under the menace of any penalty for its nonperformance and for which the worker does not offer himself voluntarily; or
(2) Performed by any person under the age of 18 pursuant to a contract the enforcement of which can be accomplished

by process or penalties.

"Service-disabled veteran-owned small business concern"--

(1) Means a small business concern--

(i) Not less than 51 percent of which is owned by one or more service-disabled veterans or, in the case of any publicly owned business, not less than 51 percent of the stock of which is owned by one or more service-disabled veterans; and

(ii) The management and daily business operations of which are controlled by one or more service-disabled veterans or, in the case of a service-disabled veteran with permanent and severe disability, the spouse or permanent caregiver of such veteran.

(2) Service-disabled veteran means a veteran, as defined in 38 U.S.C. 101(2), with a disability that is service-connected, as defined in 38 U.S.C. 101(16).

"Small business concern" means a concern, including its affiliates, that is independently owned and operated, not dominant in the field of operation in which it is bidding on Government contracts, and qualified as a small business under the criteria in 13 CFR part 121 and size standards in this solicitation.

"Veteran-owned small business concern" means a small business concern--

(1) Not less than 51 percent of which is owned by one or more veterans (as defined at 38 U.S.C. 101(2)) or, in the case of any publicly owned business, not less than 51 percent of the stock of which is owned by one or more veterans; and

(2) The management and daily business operations of which are controlled by one or more veterans.

"Women-owned business concern" means a concern which is at least 51 percent owned by one or more women; or in the case of any publicly owned business, at least 51 percent of its stock is owned by one or more women; and whose management and daily business operations are controlled by one or more women.

"Women-owned small business concern" means a small business concern--

(1) That is at least 51 percent owned by one or more women; or, in the case of any publicly owned business, at least 51 percent of the stock of which is owned by one or more women; and

(2) Whose management and daily business operations are controlled by one or more women.

(b) "Taxpayer Identification Number (TIN) (26 U.S.C. 6109, 31 U.S.C. 7701)." (Not applicable if the offeror is required to provide this information to a central contractor registration database to be eligible for award.)

(1) All offerors must submit the information required in paragraphs (b)(3) through (b)(5) of this provision to comply with debt collection requirements of 31 U.S.C. 7701(c) and 3325(d), reporting requirements of 26 U.S.C. 6041, 6041A, and 6050M, and implementing regulations issued by the Internal Revenue Service (IRS).

(2) The TIN may be used by the Government to collect and report on any delinquent amounts arising out of the offeror's relationship with the Government (31 U.S.C. 7701(c)(3)). If the resulting contract is subject to the payment reporting requirements described in FAR 4.904, the TIN provided hereunder may be matched with IRS records to verify the accuracy of the offeror's TIN.

(3) "Taxpayer Identification Number (TIN)."

/_/ TIN: ______________________.

/_/ TIN has been applied for.

/_/ TIN is not required because:

/_/ Offeror is a nonresident alien, foreign corporation, or foreign partnership that does not have income effectively connected with the conduct of a trade or business in the United States and does not have an

office or place of business or a fiscal paying agent in the United States;
/_/ Offeror is an agency or instrumentality of a foreign government;
/_/ Offeror is an agency or instrumentality of the Federal Government.

(4) "Type of organization."
/_/ Sole proprietorship;
/_/ Partnership;
/_/ Corporate entity (not tax-exempt);
/_/ Corporate entity (tax-exempt);
/_/ Government entity (Federal, State, or local);
/_/ Foreign government;
/_/ International organization per 26 CFR 1.6049-4;
/_/ Other ______________________.

(5) "Common parent."
/_/ Offeror is not owned or controlled by a common parent;
/_/ Name and TIN of common parent:
Name ____________________.
TIN ______________________.

(c) Offerors must complete the following representations when the resulting contract will be performed in the United States or its outlying areas. Check all that apply.

(1) "Small business concern." The offeror represents as part of its offer that it o is, o is not a small business concern.

(2) "Veteran-owned small business concern." [Complete only if the offeror represented itself as a small business concern in paragraph (c)(1) of this provision.] The offeror represents as part of its offer that it /_/ is, /_/ is not a veteran-owned small business concern.

(3) "Service-disabled veteran-owned small business concern." [Complete only if the offeror represented itself as a veteran-owned small business concern in paragraph (c)(2) of this provision.] The offeror represents as part of its offer that it /_/ is, /_/ is not a service-disabled veteran-owned small business concern.

(4) "Small disadvantaged business concern." [Complete only if the offeror represented itself as a small business concern in paragraph (c)(1) of this provision.] The offeror represents, for general statistical purposes, that it /_/ is, /_/ is not a small disadvantaged business concern as defined in 13 CFR 124.1002.

(5) "Women-owned small business concern." [Complete only if the offeror represented itself as a small business concern in paragraph (c)(1) of this provision.] The offeror represents that it /_/ is, /_/ is not a women-owned small business concern.
Note: Complete paragraphs (c)(6) and (c)(7) only if this solicitation is expected to exceed the simplified acquisition threshold.

(6) "Women-owned business concern (other than small business concern)." [Complete only if the offeror is a women-owned business concern and did not represent itself as a small business concern in paragraph (c)(1) of this provision.] The offeror represents that it o is a women-owned business concern.

(7) "Tie bid priority for labor surplus area concerns." If this is an invitation for bid, small business offerors may identify the labor surplus areas in which costs to be incurred on account of manufacturing or production (by offeror or first-tier subcontractors) amount to more than 50 percent of the contract price: