## 1.3 RULES OF CONDUCT

All participants in the selection process will scrupulously follow the following rules of conduct:

a. Refer all attempted communications of offerors' representatives to the Procuring Contracting Officer (PCO).

b. Do not discuss any aspect of the selection process with anyone other than participating panel members. Discussions with panel members concerning the responses received shall be conducted only within the specific evaluation areas of concern. Inquiries from outside shall be referred to the Procuring Contracting Officer. The selection and evaluation information remains privileged except as specifically approved for release by the PCO or as otherwise required by law or regulation.

c. Once the panel has been convened, contact with responding offerors for additional information or clarification shall be made only through the PCO.

d. No individual will accept any gratuity, favor, or items of value from any contractor, or communicate in any way regarding this competition with any contractor. All panel members will strictly adhere to the Standards of Conduct required by SECNAVINST 5370.2(series).

e. All source selection participants must complete a certificate of non-disclosure and statement of financial interest.

f. Security provisions will be in effect 24 hours a day, 7 days a week, in all areas where proposals are being reviewed, discussed or evaluated. It is the responsibility of each individual participating in the source selection process to assure that the highest standards for safeguarding and administering both classified and sensitive information are maintained. All evaluation material will be marked "FOR OFFICIAL USE ONLY" and be physically handled in the same manner as material classified "CONFIDENTIAL".

## 1.4 SECURITY

The source selection process demands absolute security throughout the entire proceedings, including the actions of all personnel associated with the evaluation, deliberations of the various panels, and presentations to higher authority. Inadvertent disclosures can be very damaging to the Navy, both in terms of criticisms resulting from failure to conduct business affairs properly and the loss of the competitive environment. Evaluation information will not be released outside of the TEP without the approval of the PCO. The Chairman shall have final responsibility for security.

## 1.5 PHYSICAL RESOURCES

All working papers shall be retained until one month after award. Final destruction shall be by shredding or placing in burn bags and processed accordingly.

No documents will be removed from the evaluation area for any purpose without specific authorization from the Chairman of the panel. After the one-month period following award, the members of the Panel shall not be permitted to retain any working papers, or any evaluation material, without permission of the Chairman and PCO.

## 1.6 UNAUTHORIZED DISCLOSURE

If at any time during the evaluation process, it is found that there has been an unauthorized disclosure or release of either classified information or privileged information, the matter will be brought to the attention of the PCO.

## 1.7 PROCUREMENT INTEGRITY

All personnel involved in the selection process are considered to be "procurement officials" and shall be familiar with/comply with the Federal Acquisition Regulation, specifically those areas related to Procurement Integrity, FAR Part 3. An "Executive Branch Confidential Financial Disclosure Report" (SF 450) must be executed by procurement officials before involvement in the procurement process. The SF 450s are to be retained by the requiring activity's ethics officials or as prescribed by that command's ethics procedures.

## 1.8 CONFLICT OF INTEREST/NON-DISCLOSURE

In addition to the above, all personnel participating in the source selection process shall complete a conflict of interest/non-disclosure of information certificate (attached). The Chairman of the panel and the PCO will review all certifications for possible conflicts of interest. If a conflict of interest is found to exist, the PCO, after consulting with legal, will excuse the person having such a conflict from participation in the selection process. The executed certifications shall be made a part of the official contract file.

## 2.0 ORGANIZATION AND RESPONSIBILITIES

The following organizations will participate in the source selection and evaluation process:

a. Procuring Contracting Officer (PCO), DIA Source Selection Authority

b. Technical Evaluation Panel (TEP)

## 2.1 TEP MEMBERSHIP

The following personnel will comprise the TEP:

(Washington, Don), Chairperson
(Hennigan, Mary), Member
(Creech, Terry), Member
(Kerda, Stephen), Member
(Thomas, Monica) Member

## 2.2 RESPONSIBILITIES

2.2.1 **Procuring Contracting Officer (PCO).** The PCO is responsible for the proper and effective conduct of the evaluation and selection process in accordance with the plan. By virtue of his/her office, he/she will have the ultimate responsibility for source selection (Source selection authority/SSA). He/she will determine the competitive range, conduct negotiations (in conjunction with member(s) of the TEP), and perform the cost/price analysis. In addition, the PCO will arrange with the contractors for submission of additional clarifying information, if required. The PCO will coordinate the evaluation of Past Performance with the Chairman of the TEP.

2.2.2 **Chairman, Technical Evaluation Panel.** The TEP Chairman shall:

a. Participate in the evaluation. Be responsible for security and compliance with Procurement Integrity and required certifications. Assist the PCO in the evaluation of Past Performance.

b. Review individual member's evaluation sheets and narratives for completeness and accuracy. He/she will coordinate with the panel to arrive at an evaluation of each offeror which represents the consensus of the panel.

c. Brief, coordinate and supervise personnel assigned to the TEP.

d. Prepare a detailed written summary of the TEP's consensus evaluation results and forward the results and supporting documentation to the PCO. This shall consist of an adjectival rating and supporting composite narrative by subcriteria summarizing that portion of the proposal, including strengths, deficiencies, and significant weaknesses, as applicable, for each proposal. It will also include an overall adjectival rating for each proposal and an overall narrative summary which reflects the consensus of the TEP.

2.2.3 **Technical Evaluation Panel.** The TEP shall perform the functions listed below under the direction of the TEP Chairman. Each member shall:

a. Perform technical evaluation of each proposal in accordance with the evaluation criteria contained herein. An adjectival rating of each subcriterion and supporting narrative shall

support the results. The narrative shall describe why the proposal criteria/subcriteria is "acceptable" and the extent to which any strengths, if applicable, make (or do not make) the proposal/criteria/subcriteria above "acceptable", i.e., "better" or "outstanding". Strengths and significant weaknesses must be described. For proposals with criteria/subcriteria which are "marginal" or "unacceptable", the specific "deficiencies must be specifically noted. The definition of deficiency is as follows:

**Deficiency, as used in this subpart, is a material failure of a proposal to meet a Government requirement or a combination of significant weaknesses in a proposal that increases the risk of unsuccessful contract performance to an unacceptable level.**

**Weakness, as used in this subpart, is a flaw in the proposal that increases the risk of unsuccessful contract performance. A "significant weakness" in the proposal is a flaw that appreciably increases the risk of unsuccessful contract performance.**

b. Provide an overall adjectival rating of each proposal and a summary narrative supporting that rating.

c. Prepare a list of deficiencies for each proposal, if applicable.

## 3.0 SOURCE SELECTION AND EVALUATION PROCEDURES

### 3.1 GENERAL

The procedures set forth in this section are intended to accomplish the objective of the competitive selection process, i.e.:

a. To identify all possible considerations to be used in source selection.

b. To provide guidelines to enhance efficient, impartial, equitable, and comprehensive evaluation necessary to select the offeror who represents the best value to the Navy.

### 3.2 EVALUATION DOCUMENTATION

In accordance with FAR Part 4, Subpart 4.8, contract files shall be adequate to support reconstruction or review of all decisions to fulfill contract file requirements and support any contractor debriefing inquiries.

### 3.3 EVALUATION

Each proposal shall be evaluated by the TEP using the criteria identified in this source selection plan. The evaluation forms contained herein shall be used by the TEP members and will also be the basis of the evaluation summary. This summary will include the detailed narrative, by subcriteria, and the adjectival rating, which represents the consensus of the TEP. The PCO will perform the cost evaluation of the submitted proposals. Proposals are to be

evaluated solely against the criteria in the RFP as set forth in this source selection plan and not against each other. After the evaluation the proposals may be ranked in terms of quality as compared to each other as supported by the evaluation ratings and narratives. Proposals that receive the same over-all technical adjectival rating are considered technically equivalent.

## 3.4 SELECTION

Once the technical and cost evaluations are independently determined, and once the Past Performance evaluation is complete, the PCO will combine the information. The solicitation provides that DIA may elect to pay a price premium (or whatever the PCO and the customer previously decided (and inserted in the RFP) in keeping with the "weight" associated with technical, past performance and price) to select an offeror whose technical proposal and past performance combined are superior. Selection for award will be made only after considering all factors.

## 3.5 TEP - GENERAL PROCEDURES

(a) The TEP will receive the Technical Proposals and will conduct an evaluation in accordance with this plan. The solicitation sets forth the criteria by which the proposals will be evaluated. The primary technical evaluation factors listed below are in descending order of importance

**TECHNICAL AREA**
1. Understanding and Compliance with Requirements
2. Soundness of Approach

**MANAGEMENT AREA**
1. Program Management Controls
2. Past Performance/Relevant Experience
3. Key Personnel

## 3.6 RATINGS

Proposals shall be evaluated in accordance with this plan. Each individual evaluator shall evaluate each item based upon how well the proposal meets the established criteria.

a. Scoring adjective. The following adjectives should be used as general guidance by the evaluators in assessing each technical subcriterion and the technical proposal as a whole:

| Adjective | | Definition |
|---|---|---|
| Excellent | E | The Contractor's proposal provides evidence that the Government can expect superior performance of the task and deliverables listed in the Statement of Work, with minimal risk of substandard performance. An |

| | | |
|---|---|---|
| | | excellent rating indicates that the proposal contain significant strengths and few weaknesses. |
| Good | G | The contractor's proposal provides evidence that the Government can expect performance of the tasks and deliverables listed in the Statement of Work to meet standards, with moderate risk of substandard performance. A good rating indicates that the proposal contains a number of strengths, but also some weaknesses. |
| Marginal | M | The contractor's proposal provides evidence that the Government can expect minimal performance of the tasks and deliverables listed in the Statement of Work, with excessive risk of substandard performance. A marginal rating indicates that the proposal contains strengths, but also significant weaknesses. |
| Unacceptable | U | The contractor's proposal provides evidence that the Government can expect substandard performance of the tasks and deliverables listed in the Statement of Work, with extreme risk of substandard performance. An unacceptable rating indicates that the proposal may present some strength, but it also contains significant and important weaknesses. (When applying this adjective to a proposal as a whole, the proposal must be so unacceptable in one or more areas that it would have to be significantly revised in order to attempt to make it other than unacceptable.) |

b. All Technical Evaluation Documentation must substantiate with detail adjectives assigned at every level of the evaluation process. The technical evaluation process is also designed to identify in each proposal the strengths, significant weaknesses and deficiencies, by subcriterion. The evaluation will provide the basis for negotiations, if required, and debriefing of unsuccessful offerors. This documentation is a <u>very important</u> part of the evaluation process and must be clearly documented for each offeror throughout the evaluation process.

c. **SUPPORTING NARRATIVE. FOR EACH CRITERIA/SUBCRITERIA GIVEN AN ADJECTIVAL RATING, EACH EVALUATOR MUST PROVIDE A "SUPPORTING NARRATIVE" THAT ADDRESSES THE FOLLOWING:**

(WHY GOOD, OR ABOVE. THE NARRATIVE MUST SUMMARIZE THE AREA BEING EVALUATED, AND SPECIFICALLY IDENTIFY ANY STRENGTHS WHICH MAKE THE SECTION ABOVE ACCEPTABLE)

*OR*

(WHY MARGINAL, OR BELOW. THE NARRATIVE MUST SUMMARIZE THE AREA BEING EVALUATED (INCLUDING ASPECTS THAT ARE NOT DEFICIENT), AND SPECIFICALLY IDENTIFY ANY DEFICIENCIES AND WEAKNESSES)

d. If this is a Time and Material/Labor Hour contract, the evaluation will also consider "Risk Assessment". This will occur after the initial technical evaluation is completed and only if there is concern on the part of the Contracting Officer that a cost proposal may be unrealistically low. Risk assessment has a negative impact on the technical evaluation and it reflects the degree to which there is a concern that the cost/price proposal is too low and not consistent with the technical proposal, and that the offer cannot provide quality services/ personnel over the life of the contract at the price proposed.

e. If this is a CPFF IDIQ or other form of cost reimbursement contract, the evaluation will also consider "Cost Realism". If a cost proposal appears to be unrealistically low, the evaluation by the PCO will include an adjustment in those costs.

f. The overall evaluation will also include "Past Performance" as a separate non-technical factor. The RFP contains a provision similar to the following:

## EVALUATION OF PAST PERFORMANCE

(a) In relation to the evaluation of other non-cost factors, **the evaluation of past performance will consider past performance as less important than the technical factors.**

(b) The Government will evaluate the quality of the offeror's past performance. This evaluation is separate and distinct from the Contracting Officer's responsibility determination. The assessment of the offeror's past performance will be used to evaluate the relative capability of the offeror and other competitors to successfully meet the requirements of the RFP. Past performance of significant and/or critical subcontractors will be considered to the extent warranted by the subcontractor's involvement in the proposed effort. Past performance of "key personnel", if any, shall not be considered.

(c) The Government reserves the right to obtain information for use in the evaluation of past performance from any and all sources including sources outside of the Government. Offerors lacking relevant past performance history will receive a neutral rating for past performance. However, the proposal of an offeror with no relevant past performance history, while rated neutral in past performance, may not represent the most advantageous proposal to the

Government and thus, may be an unsuccessful proposal when compared to the proposals of other offerors. The offeror must provide the information requested above for past performance evaluation or affirmatively state that it possesses no relevant directly related or similar past performance experience. The Government reserves the right not to evaluate or consider for award the entire proposal from an offeror which fails to provide the past performance information or which fails to assert that it has no relevant directly related or similar past performance experience.

(d) Contracting Officers will use the following adjectival definitions as guidelines in evaluating past performance:

NEUTRAL: No relevant past performance available for evaluation. Offeror has asserted that it has no relevant directly related or similar past performance experience. Proposal receives no merit or demerit for this factor.

OUTSTANDING: No risk anticipated with delivery of quality product, on time, or of any degradation of performance or lack of customer satisfaction (or cost growth if applicable) based upon offeror's past performance.

BETTER: Very little risk anticipated with delivery of quality product, on time, or of degradation of performance of lack of customer satisfaction (or cost growth if applicable) based upon the offeror's past performance.

SATISFACTORY: Some potential risk anticipated with delivery of quality product, on time, and of degradation or lack of customer satisfaction (or cost growth if applicable) based upon the offeror's past performance.

MARGINAL: Significant potential risk anticipated with delivery of quality product, on time, and of degradation of performance based upon the offeror's past performance. (A rating of marginal does not by itself make the proposal ineligible for award.

# SOURCE SELECTION PLAN
# TECHNICAL EVALUATION SHEETS
# HHM402-05-R-0017

**OFFEROR**____________________

# TECHNICAL PROPOSAL
# (SECTION I)

Offeror: ______________________________

Evaluator: ______________________________

EVALUATION CRITERIA: E - Excellent
G - Good
M - MARGINAL
U - UNACCEPTABLE

FACTOR I – 1. Understanding and Compliance with Requirements

The proposal should address each work area in sufficient detail to demonstrate a clear understanding of the Statement of Objectives, including personnel, materials, facilities, and organizational processes presented therein. The offeror should provide evidence of sufficient planning to show that work will be accomplished as required and on schedule, utilizing all available resources. Additionally the proposal should address requirements to service the additional building scheduled to be brought on line in the August – September 2005 timeframe.

**Evaluation Criteria:** a. Does the offeror demonstrate a firm understanding of the requirements and goals set forth in the Statement of Objective?

- Does the proposal specifically explain how the contractor intends to service:
  Office Areas Stairwells
  Escalators Common Areas
  High Traffic Areas
  How often will the contractor clean these areas? How will the contractor monitor these areas in order to keep them clean?
- Does the proposal present a plan that describes the transition to the new building that will come on line during the August-September time frame?

**E G M U**

___ ___ ___ ___

SOURCE SELECTION INFO -- SEE FAR 3.104

b. Does the proposal address requirements and goals set forth in the Statement of Objectives? Does the proposal indicate the response times to special requests?

- Does the proposal indicate special/particular attention to high visibility areas?
- Does the proposal indicate core hours of operation?
- Does the proposal provide a schedule of how often the garage will be cleaned and how that area will be monitored?
- Does the proposal provide a schedule of how often the dock area will be cleaned and how that area will be monitored?
- Does the proposal indicate that the contractor will be prepared to handle requirements of the conference rooms and conference center in the new building?

| E | G | M | U |
|---|---|---|---|
| ___ | ___ | ___ | ___ |

c. Does the proposal provide solutions to indicate custodial requirements and goals will be met on schedule? (Pay special attention as to the submitted plan to transition quickly; how the offeror intends to provide the necessary cleared personnel to start and maintain quality custodial services; and the plan to provide services to the new building.)

- Has an acceptable schedule been developed that includes all areas in the scope of work?
- Does the proposal indicate that 20% cleared personnel are immediately available?
- Does the proposal include a start up plan? If not, does the proposal indicate how escorts will be provided?

| E | G | M | U |
|---|---|---|---|
| ___ | ___ | ___ | ___ |

2. Soundness of Approach

The proposal must clearly indicate that the offeror has performed adequate planning to accomplish the custodial tasks as defined in the Statement of Objectives.

a. Does the proposal include a complete plan to accomplish each requirement? The plan should address how high traffic areas, classrooms, garage and loading dock areas will be accomplished.

- Does the service schedule indicate this include all DIAC areas?
- Does the service schedule include periodic cleaning (windows, carpet shampoo, etc.)?
- Does the service schedule address floor maintenance?

b. Does the offeror's plan demonstrate that appropriate personnel and equipment will be positioned efficiently to carry out the requirements from the start date of the contract?

- Does the proposal indicate how supplies, tools and equipment will be provided at start date?
- Does the proposal indicate how an inventory of supplies, tools and equipment will be maintained?

c. Is the proper level of effort directed towards each requirement?

- Is the offerors schedule realistic? Are enough people dedicated to each schedule?
- Does the proposal include a quality control plan that will assure cleanliness in all areas?

c. Does the offeror present evidence that cleaning supplies and equipment meet "green clean" standards? Note: this requirement was presented and explained to each offeror during the site visit.

d. Does proposal indicate how "green" standards will be met and maintained?

| | E | G | M | U |
|---|---|---|---|---|
| | ___ | ___ | ___ | ___ |
| **Overall Understanding and Compliance with Requirement** | ___ | ___ | ___ | ___ |

**TECHNICAL PROPOSAL**
**(SECTION I)(Continued)**

**OVERALL UNDERSTANDING AND COMPLIANCE WITH REQUIREMENT (continued)**

**SUPPORTING NARRATIVE**

(The following applies throughout this evaluation)

(Why acceptable, or above. The narrative must summarize the area being evaluated, and specifically identify any strengths which make the proposal above acceptable. Significant weaknesses must also be identified)

*OR*

(Why marginal or below. The narrative must summarize the area being evaluated (including aspects that are not deficient), and specifically identify any deficiencies)

STRENGTHS

DEFICIENCIES

WEAKNESSES

SUMMARY:

**TECHNICAL PROPOSAL**
**(SECTION I)(Continued)**

Offeror: ______________________________

Evaluator: ____________________________

EVALUATION CRITERIA: E - EXCELLENT
G - GOOD
M - MARGINAL
U - UNACCEPTABLE

**FACTOR II - MANAGEMENT AREA**

1. Program Management Controls

Furnish separate evidence and rosters to show that 20% of the work forcer will have their security clearances at the start of work as required by the Statement of Objectives. Furnish an organization chart showing lines of authority, responsibility, and communication for management and supervisory personnel. Indicate job titles of personnel who will perform the work items. Personnel management information such as hiring/firing authority, discipline, incentive plans (Of especial interest will be the incentive plan that addresses retention of "6" level employees. The difficulty of "6" level retention due to an "in-house" source that currently hires away custodial personnel was discussed in detail with each offeror during site visits.)

- Does the proposal indicate a plan to bring the number of "6" level employees up the requirement within the time frame specified in the Statement of Objectives?
- Does the proposal include the approximate number of employees needed to meet current and future requirements?
- Does the proposal include a recruitment plan for "6" level personnel?
- Does the proposal include a security awareness plan?
- Are the lines of authority clear?

| E | G | M | U |
|---|---|---|---|
| ___ | ___ | ___ | ___ |

2. Past Performance/Relevant Experience

Identify experience in performing similar work to that described in the Statement of Objectives within the past three (3) years, and similar contracts currently in progress. Provide date on the level of experience in specific contracts of this type. Provide information on performance in these contracts, particularly as it relates to the offeror's overall abilities.

- Does the proposal provide evidence of success in performing this type of contract during the last 3 years?

E ___ G ___ M ___ U ___

3. Key Personnel

Furnish a resume for proposed key on site supervisory personnel and senior level management staff not located on site. Resumes should include education, experience, background, accomplishments, and other pertinent information.

- Does proposal include complete resumes for management personnel?
- Does the proposal indicate how customer complaints will be handled?
- Does the proposal indicate any plants to retain current employees?
- If the proposal has a plan to retain current employees, is there a plan to retrain current employees?

E ___ G ___ M ___ U ___

| | E | G | M | U |
|---|---|---|---|---|
| **OVERALL RATING: MANAGEMENT AREA** | ___ | ___ | ___ | ___ |

STRENGTHS

DEFICIENCIES

WEAKNESSES

SUMMARY:

## SUMMARY OF PROPOSAL

The technical evaluation factors listed below are in descending order of importance

Sample Task
Overall Understanding/Approach
Key Personnel
Management Plan (Staffing Plan)

Offeror: ______________________________

Evaluator: ______________________________

| | E | G | M | U |
|---|---|---|---|---|
| **I. TECHNICAL APPROACH** | | | | |
| Understanding and Compliance | ___ | ___ | ___ | ___ |
| Soundness of Approach | ___ | ___ | ___ | ___ |
| Program Management Controls | ___ | ___ | ___ | ___ |
| Past/Performance/Relevant Experience | ___ | ___ | ___ | ___ |
| Key Personnel | ___ | ___ | ___ | ___ |

**OVERALL TECHNICAL RATING:** ___ ___ ___ ___

**Rationale for Overall Rating:** The importance of this area cannot be overemphasized. It must be consistent with the conclusions stated in the evaluation of the subcriterion and it must support the overall rating.

# Cost Estimate for Custodial Services in the DIAC

| Location | Sq. Feet | Cost/Sq Ft | Sub Total |
|---|---|---|---|
| DIAC | 767,000 | $0.23 | $176,410 |
| Loading Dock | 26,000 | $0.23 | $5,980 |
| Q-Module | 4,320 | $0.23 | $994 |
| RDF | 3,200 | $0.23 | $736 |
| T-Module | 29,000 | $0.23 | $6,670 |
| Garage | 342,000 | $0.23 | $78,660 |
| DIAC-Expansion | 470,000 | $0.23 | $108,100 |

**Base Year (Jul 01, 2005- Oct 31, 2005)**

| | |
|---|---|
| Jul-05 | $269,450 |
| Aug-05 | $269,450 |
| Sep-05 | $269,450 |
| Oct-05 | $269,450 |
| Wage rate determination | $7,764 |
| **Total Base** | **$1,085,562** |

**Option Year 1 (Nov 01, 2005- Oct 31, 2006)**

| | | | |
|---|---|---|---|
| Amount | | | $3,545,683 |
| Wage Rate Determination | | | $1,700 |
| | **subtotal** | | $3,547,383 |
| Escalation | | 4% | $124,158 |
| **Total** | | | **$3,671,542** |

**Option Year 2 (Nov 01, 2006- Oct 31, 2007)**

| | | | |
|---|---|---|---|
| Amount | | | $3,669,782 |
| Wage Rate Determination | | | $1,768 |
| | **subtotal** | | $3,671,550 |
| Escalation | | 4% | $128,442 |
| **Total** | | | **$3,798,224** |

**Option Year 3 (Nov 01, 2007- Oct 31, 2008)**

| | | | |
|---|---|---|---|
| Amount | | | $3,798,224 |
| Wage Rate Determination | | | $1,839 |
| | **subtotal** | | $3,800,063 |
| Escalation | | 4% | $132,938 |
| **Total** | | | **$3,931,162** |

**Option Year 4 (Nov 01, 2008- Oct 31, 2009)**

| | | | |
|---|---|---|---|
| Amount | | | $3,931,162 |
| Wage Rate Determination | | | $1,913 |
| | **subtotal** | | $3,933,075 |
| Escalation | | 4% | $137,591 |
| **Total** | | | **$4,068,753** |

# SOURCE SELECTION DECISION

CONTRACT NO: HHM402-06-C-0053
SOLICITATION: HHM402-05-R-0017
PURCHASE REQUEST (PR) NO.: 447/0005Z/06

CONTRACTOR: NOSLOT Cleaning Service
303 Post Office Road, Suite B-3
Waldorf, MD 20602

CONTRACTING OFFICE: Virginia Contracting Office
Office of the Acquisition Executive (AE-2A)
200 MacDill Blvd. Bldg 6000
Bolling AFB, DC 20332-5100

SUBJECT: JANITORIAL/CUSTODIAL SERVICES FOR DEFENSE INTELLIGENCE ANALYSIS CENTER AND EXPANSION

## REQUIREMENT

This requirement is for a firm-fixed-price contract to provide janitorial/custodial service for the entire Defense Intelligence Analysis Center (DIAC) at Bolling AFB. The contractor shall provide all operations to assure building 6000 is neat, clean, and dust free. The estimated square footage is 767,000 for the current building and 470,000 square footage for the new expansion building. The period of performance is for one base year and four (4) one year options.

## INTRODUCTORY SUMMARY

The requirement was synopsized in FEDBIZOPPS on April 6, 2005. As a result of the synopsis, the Agency received letters requesting a copy of solicitation HHM402-05-R-0017 from 23 prospective contractors. The proposal was due on May 13, 2005. There was a site visit that was held on April 13, 2005 for this requirement with 20 companies attending. Of the 20 companies attending the site visit, nine offerors submitted proposals to the solicitation.

An award was made to The Ravens Group on June 23, 2005 with a contract price of [redacted] On June 27, 2005, letters to all unsuccessful offerors were sent out providing the opportunity for debriefings. On June 29, 2005 NOSLOT Cleaning Services filed a GAO protest alleging improper technical evaluations. However, because the janitorial services was and is a critical service, the Head of Contracting Activity (HCA) issued an override to the

CICA stay for the continuation of services. GAO was notified of the override on July 1, 2005 and The Ravens Group was allowed to continue performance pending the resolution of the protest. Debriefings were scheduled for unsuccessful offerors beginning on July 5, 2005 and concluding on July 15, 2005. The Agency received two subsequent GAO Protests as a result of the debriefings. On July 12, 2005, the second protest was received from NOSLOT alleging that technical evaluations were erroneous. On July 19, 2005, the third protest was received from Olympus Building Services, alleging improper technical evaluations. On August 2, 2005, the Agency notified GAO of its intent to take corrective action. The Agency intended to re-evaluate the nine proposals that were received at the close of the original submission deadline on May 13, 2005. An amendment to the solicitation was issued to all nine original offerors informing them of the Agency's decision to re-evaluate all proposals received by May 13, 2005. Based on this corrective action, GAO dismissed all of the protests. In implementing the corrective action, the Agency re-evaluated the original proposals, established a competitive range, and conducted discussions with all offerors within the competitive range. After discussions were conducted, Final Proposal Revisions (FPRs) were requested from all offerors within the competitive range. As a result of the re-evaluation, the Agency made an award to Rowe Contracting Services, Inc. on 22 March 2006 for the performance period of a 7-month base period with four 1-year options.

Subsequent to the notice of award to Rowe, The Raven's Group submitted a protest to the GAO on March 29, 2006. In accordance with CICA, a stay of performance was issued on the award to Rowe, and The Raven's Group was allowed to continue performance pending the resolution of the protest. The Agency, on April 3, 2006, notified the GAO that it intended to take corrective action by conducting a new source selection and issuing a new source selection decision. The Agency clarified that it would not be conducting a new technical evaluation of proposals or accepting revised proposals from any offerors. The new source selection would be based on the offerors' previously submitted FPRs received by the Agency on November 29, 2005. Based on the Agency's notice of intent to take corrective action, GAO dismissed Raven's protest on April 6, 2006. Following the dismissal of its first protest, The Raven's Group filed multiple supplemental protests, which were each summarily dismissed by GAO. With GAO's final denial of The Raven's Group's request for reconsideration on July 14, 2006, the Agency was finally able to complete the proposed corrective action submitted in April of 2006. As the new Source Selection Authority (SSA) for this solicitation, I have conducted a new source selection. Upon careful consideration of the Technical Evaluation Panel's (TEP's) evaluation of the proposals and my own personal review of the proposals, I find that NOSLOT's offer presents the best value to the government, and NOSLOT will therefore be awarded the contract. The following documents my decision.

COST OF AWARD

In accordance with 10 U.S.C.2410(a) and FAR 32.703-3(b) annual funds may cross Fiscal Years if the period of the contract awarded does not exceed one year and the services are severable. DAN2 is the activity providing annual funds to obtain this procurement. The Independent Government Cost Estimate (IGCE) was provided by the requiring activity (DAN2) and was based on the original base year and option years specified in the solicitation.

ORIGINAL INDEPENDENT GOVERNMENT COST ESTIMATE:

| | Period Of Performance | Amount |
|---|---|---|
| Base Year | 1 July 2005 – 30 October 05 | [redacted] |
| Option Year I | 31 October 05 – 30 October 06 | |
| Option Year II | 31 October 06 – 30 October 07 | |
| Option Year III | 31 October 07 – 30 October 08 | |
| Option Year IV | 31 October 08 – 19 September 09 | |

The total IGCE, based on the original base year and option periods, was approximately [redacted] However, the IGCE is over a year old and does not adequately reflect the prices received for this solicitation. Consequently, price reasonableness is established by adequate price competition in accordance with FAR 15.404-1(b)(2)(i).

The following table depicts NOSLOT's FPR prices based on the changing base period and option years:

**NOSLOT's Final Proposed Pricing**

| | Period of Performance | Amount |
|---|---|---|
| Base Year | 1 April 2006 – 30 October 06 | [redacted] |
| Option Year I | 31 October 06 – 30 October 07 | [redacted] |
| Option Year II | 31 October 07 – 30 October 08 | [redacted] |
| Option Year III | 31October 08 – 30 October 09 | [redacted] |
| Option Year IV | 31 October 09 – 30 October 10 | [redacted] |

The total estimated cost of the contract awarded to NOSLOT (Base Period Plus four one-year Options) is [redacted]. Note also that the Government's estimate ($1,085,562.00) for base period is only for 4 months versus NOSLOT's proposal ([redacted]), which refelcts a 7-month base period.

SECTION I. SUMMARY OF KEY DOCUMENTS AND ATTACHMENTS

A. <u>Summary of Key Documents</u>:

(a) Solicitation: 14 April 2005
(b) DCAA Report: N/A
(c) ACO Report: N/A
(d) Technical Advisory Reports: 23 February 2006.

B. List of Attachments:

(a) Source Selection Plan
(b) Synopsis
(c) Solicitation
(d) Amendment 0001
(e) Amendment 0002
(f) Amendment 0003
(g) Amendment 0004
(h) Amendment 0005
(i) Amendment 0006
(j) Amendment 0007
(k) Amendment 0008
(l) Amendment 0009
(m) Amendment 0010
(n) Technical Evaluation Report
(o) Past Performance Questionnaires

**SECTION II. BACKGROUND**

A. Procurement History:

| | |
|---|---|
| 06 Apr 2005 | Synopsis issued |
| 13 Apr 2005 | Site Visit |
| 27 Apr 2005 | Amendment 0001 Issued |
| 03 May 2005 | Amendment 0002 Issued |
| 05 May 2005 | Amendment 0003 Issued |
| 13 May 2005 | Offeror's Proposal Received |
| 19 May 2005 | Technical Evaluation Received |
| 07 Jun 2005 | Amendment 0004 Issued |
| 09 Jun 2005 | Revised proposals received |
| 09 Jun 2005 | Revised technical proposal received |
| 17 Jun 2005 | Award made to The Ravens Group |
| 27 Jun 2005 | Protest received from GAO on behalf of NOSLOT |
| 29 Jun 2005 | Protest dismissed as being premature |
| 01 Jul 2005 | Override of CICA stay for critical services forwarded to GAO |
| 05-15 Jul 05 | Debriefings scheduled for all eight offerors |
| 12 Jul 2005 | Protest received from GAO on behalf of NOSLOT |
| 19 Jul 2005 | Protest received from Olympus Building Services |
| 01 Aug 2005 | Letter of Corrective action Forwarded to GAO |
| 12 Aug 2005 | Amendment 0005 Issued |
| 22 Aug 2005 | New Re-evaluation Panel established |
| 04 Nov 2005 | Tri-Arch and Magic Brite eliminated from competitive range |
| 04 Nov 2005 | Discussion letters issued to all in competitive range |

| | |
|---|---|
| 10 Nov 2005 | Laro withdraw its proposal and will not be responding |
| 17 Nov 2005 | Amendment 0006 Issued |
| 06 Dec 2005 | Amendment 0007 Issued |
| 27 Dec 2005 | EMC eliminated from consideration because of late submission of final proposal revision |
| 12 Jan 2006 | Amendment 0008 Issued |
| 09 Feb 2006 | Amendment 0009 Issued |
| 23 Feb 2006 | RE-EVALUATION Consensus Technical Report received |
| 28 Feb 2006 | Amendment 0010 Issued |
| 22 Mar 2006 | Award to Rowe |
| 29 Mar 2006 | Ravens Group files protest with GAO |
| 31 Mar 2006 | Agency issues stay of performance to Rowe |
| 04 Apr 2006 | Notice of intent to make a new source selection |
| 25 May 2006 | New Source Selection Authority (SSA) designated |

B. Negotiation Environment

This procurement uses the best value evaluation criteria identified in the RFP. Offerors were evaluated based on the following stated evaluation factors:

**Technical**

(1) **Technical Approach**
(2) **Management Area**

**Past Performance**

**Price**

**Technical, Past Performance**, and **Price** proposals were required from all offerors. In accordance with the RFP, non-price factors (Technical and Past Performance), when combined, were more important than price. Of the non-price factors, Technical is more important than Past Performance. Within the Technical evaluation factor, the **Technical Approach** and **Management Area** sub-factors were considered of equal weight. Consequently, each sub-factor was worth 50% of the overall **Technical** evaluation factor. Within the two **Technical** sub-factors (**Technical Approach** and **Management Plan**), there were a number of sub-sub-factors. The evaluation scheme is as follows:

**(1) Technical Approach (50% of Technical Factor)**

(a) Understanding and Compliance w/ Requirements (25%)
(b) Soundness of Approach (25%)

**(2) Management Area (50% of Technical Factor)**

(a) Program Management Controls (16.66%)
(b) Past Performance/Relevant Experience (16.66%)
(c) Key Personnel (16.66%)

Within the **Technical Approach** sub-factor, the two identified sub-sub-factors were considered of equal weight. Therefore, each sub-sub-factor found under the **Technical Approach** sub-factor was worth 25% of the overall **Technical** evaluation factor. Within the **Management Area** sub-factor, the three identified sub-sub-factors were also considered of equal weight to each other. Therefore, each sub-sub-factor found under the Management Area sub-factor was worth 16.66% of the overall **Technical** evaluation factor.

**Past Performance** was evaluated qualitatively in accordance with the adjectival ratings established in the RFP.

C. Extent Competition Solicited and Secured

The requirement was synopsized in FEDBIZOPS as an unrestricted procurement on April 6, 2005. Competition was sought in accordance with FAR 6.101, Full and Open competition.

The solicitation was issued on April 14, 2005 with a closing date for receipt of proposals on May 13, 2005. Several amendments were issued. Amendment 0001 published questions and answers and published a list of all site visit attendees. Amendment 0002 published questions and answers. Amendment 0003 published questions and answers. Amendment 0004 requested revised proposals. Amendment 0005 informed all offerors that a re-evaluation was required. Amendment 0006 scheduled another site visit. Amendment 0007 changed the initial period of the performance start date. Amendment 0008 changed the period of the performance start date. Amendment 0009 changed the period of the performance start date. Amendment 0010 changed the period of the performance start sate.

Twenty-three (23) companies requested copies of the solicitation and of the 23, the following nine offerors (in alphabetical order) submitted proposals:

**D&A Building Services**
**Engineering Maintenance Concepts (EMC)**
**Laro Service System, Inc.**
**Magic Brite Janitorial**
**NOSLOT**
**Olympus**
**Rowe Contracting Services (Rowe)**
**The Ravens Group**
**Tri-Arch Industries**

Pursuant to the Agency's notice of corrective action issued on April 3, 2005, the Agency conducted a new evaluation of all the proposals that had been previously submitted. Upon re-evaluation, a competitive range was established, and the following two companies were excluded from the competitive range because they did not meet an acceptable rating:

[redacted]

565

[redacted]

After discussions were initiated, two more offerors were excluded from final consideration:

[redacted]

Final Proposal Revisions were evaluated for the remaining five offerors:

**D&A Building Services**
**NOSLOT**
**Olympus**
**Rowe Contracting Services**
**The Ravens Group**

D. Contract Type

1. Award will be for a Firm-Fixed-Price contract with a base period and four 1-year Options.

2. It is possible to accurately predict the extent and duration of the service in the general terms required.

3. There is adequate price competition.

4. The new award to NOSLOT will be for a base period of two (2) months and four 1-year options.

E. Funding

The FY06 O&M funds are currently available for the base period (approximately 2 months) and additional funds for Option Years will be provided on an annual basis.

**SECTION III. EVALUATION (NON-PRICE FACTORS)**

A. Technical Evaluation

Offerors were allowed to submit FPRs responding to the Agency's discussion letters. Based upon the FPRs submitted by the five (5) remaining offerors, each of the five companies in the competitive range were evaluated and given a rating of "EXCELLENT" by the Technical Evaluation Panel (TEP) under the **Technical** evaluation factors. I have carefully reviewed the TEP's findings regarding the strengths and weaknesses of the individual proposals, and I concur with the TEP's ratings. Using my own independent judgment and based upon the recommendations of the TEP, I find all offerors to be "EXCELLENT" under the **Technical** evaluation factor. These final five proposals were evaluated in accordance with the Solicitation, the subsequent amendments, and FAR 15.305(a).

The following table summarizes the Technical ratings of all offerors under consideration for award:

**Technical Summary**

| COMPANY | RATING |
|---|---|
| D&A | Excellent |
| NOSLOT | Excellent |
| OLYMPUS | Excellent |
| ROWE | Excellent |
| THE RAVENS GROUP | Excellent |

SELECTION CRITERIA: Each company was evaluated using the same Technical Evaluation Sheets provided by the Contracting Office. The five sub-sub-factors of the **Technical** evaluation factor were: Understanding and Compliance (25%); Soundness of Approach (25%); Program Management Controls (16.66%); Past/Performance/Relevant Experience (16.66%), and Key Personnel (16.66%).

SELECTION METHODOLOGY: Each company was rated by each member of the panel and a consensus report was produced reflecting the TEP's consensus evaluation. Companies were evaluated one at a time against the selection criteria. Panel members were given blank Technical Evaluation Sheets and a copy of all proposals. Members were given as much time as needed to read the proposals and complete their evaluation sheets. Based on the submitted FPRs, the TEP rated all five offerors as "EXCELLENT" under the Technical evaluation factor.

*As the new Source Selection Authority for this procurement, I have reviewed the TEP's technical evaluations, and I concur with the TEP's evaluation.* The following assessments were found by the new SSA.

**D&A** – After carefully reviewing D&A's proposal, the new SSA concurs with the Technical Evaluation Panel's rating and finds that D&A's Technical proposal is "EXCELLENT." The TEP found:

- [redacted]
- [redacted]
- [redacted]
- [redacted]

- [redacted]

I concur with the TEP's evaluation and find these to be strengths and advantages to D&A's proposal. However, D&A's proposed price was the highest among the five final offerors. I also note that the proposal lacks detail [redacted]

**NOSLOT** - After carefully reviewing NOSLOT's proposal, the new SSA concurs with the TEP that NOSLOT'S Technical proposal is 'EXCELLENT." The TEP found:

- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]

- [redacted]
- [redacted]

I concur with the TEP's evaluation and find these to be strengths and advantages to NOSLOT's proposal. NOSLOT is the second lowest price offeror. NOSLOT's FPR was complete, precise, and exhibited both knowledge and experience. Its proposal is also very easy to [redacted] through. The bottom line is the proposal contains significant strengths, with no apparent weakness that would hinder the quality of service or the fidelity of the contract.

**Olympus** – After careful review of its proposal, the new SSA concurs with the TEP that Olympus' technical proposal is "EXCELLENT." The TEP found:

- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]

[redacted]

I concur with the TEP's evaluation and find these to be strengths and advantages to Olympus' proposal. However, the proposed price was the third highest among the five final Offerors.

**Rowe** - After carefully reviewing Rowe's proposal, the new SSA concurs with the TEP that Rowe's overall technical proposal is "EXCELLENT." The TEP found:

- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]

I concur with the TEP's evaluation and find these to be strengths and advantages to Rowe's proposal. Rowe offers the lowest proposed price among the five final offerors. However, I note that Rowe is the only offero[redacted] problematic as will be discussed later in the pricing analysis and trade-off analysis sections.

**The Ravens Group** - After careful review of its proposal, the new SSA concurs with the TEP that The Raven's Group's technical proposal is "EXCELLENT." The TEP found:

- [redacted]