- [redacted]

I concur with the TEP's evaluation and find these to be strengths and advantages to The Ravens Group's proposal. However, its price proposal was the second highest or the fourth lowest of the five final offerors.

B. Past Performance Evaluation

The Government evaluated the proposals using the adjectival rating system provided in the solicitation. It should be noted that the RFP lists **Past Performance** as both an evaluation factor and also as a sub-sub-factor of the **Technical** evaluation factor. Consistent with the RFP, the Past Performance/Relevant Experience sub-sub-factor was evaluated as 16.66% of the overall **Technical** evaluation factor. In evaluating the Past Performance/Relevant Experience sub-sub-factor, the TEP evaluated the relevant experience identified by the offerors within their proposals.

Once it was used to obtain the overall **Technical** evaluation, the Past Performance/Relevant Experience rating of the offerors' technical proposals was combined with the past performance questionnaires received from the offerors' references to derive an overall rating for the **Past Performance** evaluation factor.

The Government evaluated **Past Performance** of the offerors using the adjectival ratings and methods described in the RFP. Below is a summary of the ratings received by the companies for the **Past Performance** evaluation factor:

571

**Past Performance Evaluation Summary**

| COMPANY | RATING |
|---|---|
| D&A | Excellent |
| NOSLOT | Excellent |
| OLYMPUS | Excellent |
| ROWE | Excellent |
| THE RAVENS GROUP | Excellent |

*As the new Source Selection Authority for this procurement, I have reviewed the TEP's technical evaluations of Past Performance/Relevant Experience and past performance questionnaires and I concur with the TEP's evaluation. I find that all five offerors are 'EXCELLENT" under the* ***Past Performance*** *evaluation factor.*

**SECTION IV. PRICE/COST ANALYSIS**

PRICE ANALYSIS: The prices proposed by the five offerors in their final proposals are as follows:

**Price Summary**

| COMPANY | TOTAL COST |
|---|---|
| ROWE | [redacted] |
| NOSLOT | |
| OLYMPUS | |
| THE RAVENS GROUP | |
| D&A | |

Price analysis was based on FAR 15.404-1(b)(2)(i) and the solicitation. While all prices submitted by offerors were deemed to be realistic, not all prices were deemed to be reasonable. Labor rates proposed by the final five offerors were compared to the Wage Determination issued by the Department of Labor, and the equipment and material were compared to the GSA schedule price.

**ROWE:** Rowe submitted the lowest priced offer. However, I note [redacted]

The new SSA feels that there is a risk to the Government based on above analysis.

**NOSLOT:** As the second lowest offeror, NOSLOT's price of [redacted] is slightly higher than Rowe, the lowest offeror's

price of [redacted] However, the price differential between Rowe's and NOSLOT'S proposals is [redacted] for the entire base period and four option years. I also note that NOSLOT does [redacted]s.

**OLYMPUS:** Olympus submitted the third lowest priced offer. Its price is considered reasonable and realistic.

**RAVENS:** Although, considered reasonable and realistic, Ravens offered price is still an average of [redacted] higher than the above three offerors.

**D&A:** D&A offered price is an average of [redacted] higher than the three low offerors. Although realistic, D&A's high price borders on reasonableness when compared to the average price of its closest competitors.

**SECTION V. TRADEOFF ANALYSIS**

This procurement utilizes the best value evaluation criteria identified in the solicitation. In accordance with the RFP, non-price factors (**Technical** and **Past Performance**), when combined, were more important than **Price**. Of the non-price factors, **Technical** is more important than **Past Performance**. Award will be made to the responsible offeror whose offer, conforming to the solicitation, is determined to be the best overall value to the Government, price and other factors considered.

Of the five final offerors, Rowe proposes the lowest offer at $[redacted] for labor and [redacted]or other indirect cost. As noted earlier, however, t[redacted]are [redacted]any [redacted]. Rowe's Technical Proposal, page 00014 provides:

[redacted]

573

Nonetheless, there is no explanation o[redacted] Also, there is no explanation of how Rowe w[redacted]

[redacted] As this is a firm-fixed-price contract, the Government places value on the reduction in risk provided by offers [redacted].

NOSLOT's price was the second lowest. At [redacted], it is [redacted] higher than Rowe's proposed price of $[redacted] However, NOSLOT's proposals does include a [redacted]. NOSLOT's pricing scheme is considered a value to the Government.

In addition to NOSLOT's excellent pricing scheme, I found that NOSLOT is the only company to offe[redacted] Combined with the other previously listed merits of NOSLOT's Technical proposal, NOSLOT's offer provides advantages that are worthwhile to the Government. I find these benefits to be of value to the Government and that the benefits offered by NOSLOT outweights the small price premium over the lowest priced offeror, Rowe.

RISK ASSESSMENT: The Government does not expect that there will be any risk because NOSLOT has already provided excellent services to many other Government Agencies, including DIA, in the past and its price proposal is both reasonable and realistic in including an annual wage increase. This significantly reduces the future possibility of losing its employees or forcing the Government to later renegotiate the contract in order to maintain continuity of uninterrupted services.

**SECTION VI. SOURCE SELECTION DECISION**

In accordance with the Request for Proposal (RFP):

574

> All factors considered, award will be made to the offeror whose offer, conforming to the solicitation, provides the Best Value to the Government.

The RFP includes a notice that the Government reserves the right to award to other than the lowest offeror and that an award may be made without discussions or negotiations with offerors. Accordingly, offerors were instructed to submit proposals based on the most favorable terms they could provide.

I have conducted a price-technical tradeoff analysis and I find NOSLOT's small price premium over Rowe's price to be worthwhile because of all the advantages discussed and because NOSLOT's superior pricing scheme i[redacted]se. [redacted] is [redacted] I find that these benefits to the Government outweigh the small cost savings associated with Rowe's slightly lower price.

Accordingly, I find NOSLOT's offered price of [redacted] to be fair and reasonable and provides a better value than Rowe's proposal. Based on the above analysis, I have determined that award will be made to the best value offeror, NOSLOT.

**SECTION VII. CONTRACTOR RESPONSIBILITY & COMPLIANCES**

In accordance with FAR 9.104-1 General Standards, NOSLOT is determined to be responsible, and to:

(a) Have adequate financial resources to perform the contract, or the ability to attain them;
(b) Be able to comply with the required or proposed delivery or performance schedule, taking into consideration all existing commercial and governmental business commitments;
(c) Have a satisfactory performance record;
(d) Have a satisfactory record of integrity and business ethics;
(e) Have the necessary organization, experience, accounting and operational controls, and technical skills;
(f) Have the necessary manpower;
(g) Be otherwise qualified and eligible to receive an award under applicable laws and regulations.

In making this determination of responsibility, I have reviewed NOSLOT's Dun and Bradstreet report, as well as its past performance questionnaires. A review of the Government's Excluded Parties List System (EPLS) also indicates that NOSLOT is neither suspended nor barred from contracting with the federal government.

**SECTION VIII. CONCLUSION**

Based on the above analysis, NOSLOT's proposal represents the best value to the Government and therefore an award is made to NOSLOT. The proposed pricing is considered fair, reasonable and realistic, based on adequate competition.

Cheong J. Chon 11 Sep 06

DATE: CHEONG J. CHON
SOURCE SELECTION AUTHORITY

576

**DEFENSE INTELLIGENCE AGENCY**
Office of the Acquisition Executive
Building 6000, Bolling AFB
Washington, D.C. 20340-5100

October 25, 2006

U-2053/AE-2A

MEMORANDUM FOR MAJ Peter Tran, HQ, U.S. Army Legal Service Agency, Contract Appeals Division, Team I, ATTN: JALS-CAI, 901 North Stuart Street, Suite 500, Arlington, Virginia 22203-1837

Subject: B-296741.10; Protest of Olympus Building Services, Inc.

Contracting Officer's Notice of Corrective Action

RFP HHM402-05-R-0017 (the "Solicitation") for the procurement of janitorial and custodial services for the Defense Intelligence Analysis Center (DIAC) and its new expansion building was issued on 14 April 2005. The Solicitation closed on 13 May 2005. Nine offers were received in response to the Solicitation. Award was made to The Ravens Group, LLC, on 17 June 2005. On 12 July 2005 and 19 July 2005, two separate protests were filed with the GAO (B-296741.2 and B-296914). The Agency notified GAO that it intended to take corrective action on 3 August 2005. Consistent with the notice to GAO, the Agency re-evaluated the proposals, conducted discussions and allowed offerors the opportunity to submit final proposal revisions. From the re-evaluation, a new award was made to Rowe Contracting Service, Inc. on 22 March 2006. On 29 March 2006, GAO notified the Agency that Ravens Group had filed a protest. The Agency notified GAO on April 3, 2006 that it intended to conduct a new source selection and issue a new source selection decision. On September 13, 2006, consistent with its notice to GAO, the Agency announced award would be made to NOSLOT pursuant to the new source selection conducted by a new source selection authority. After receiving a requested debriefing, Olympus filed the present protest before GAO on October 13, 2006.

The Government has determined that the awardee, NOSLOT, does not currently possess the Top Secret (TS/SCI) security clearance required by paragraph 24 (Clause 52.999-4031d) of the Solicitation and Amendment 0002. Because NOSLOT is presently ineligible for award, the Agency has decided to take the following corrective action. The Agency intends to terminate the contract with NOSLOT for convenience and conduct a new source selection based on the current proposals. The Agency will not be conducting a new technical evaluation of proposals or accepting revised proposals from any offerors. The new source selection will be based on the offerors' previously submitted proposals. Once a new source selection is completed, a new Source Selection Decision will be issued, and the appropriate offeror will be awarded a contract for the reminder of the services required.

CHEONG J. CHON
Contracting Officer

577

DEFENSE INTELLIGENCE AGENCY
Office of the Acquisition Executive
Building 6000, Bolling AFB
Washington, D.C. 20340-5100

October 24, 2006

U-2053/AE-2A

MEMORANDUM FOR MAJ Peter Tran, HQ, U.S. Army Legal Service Agency, Contract Appeals Division, Team I, ATTN: JALS-CAI, 901 North Stuart Street, Suite 500, Arlington, Virginia 22203-1837

Subject: B-296741.9: Protest of Rowe Contracting Services, Inc.

Contracting Officer's Notice of Corrective Action

RFP HHM402-05-R-0017 (the "Solicitation") for the procurement of janitorial and custodial services for the Defense Intelligence Analysis Center (DIAC) and its new expansion building was issued on 14 April 2005. The Solicitation closed on 13 May 2005. Nine offers were received in response to the Solicitation. Award was made to The Ravens Group, LLC, on 17 June 2005. On 12 July 2005 and 19 July 2005, two separate protests were filed with the GAO (B-296741.2 and B-296914). The Agency notified GAO that it intended to take corrective action on 3 August 2005. Consistent with the notice to GAO, the Agency re-evaluated the proposals, conducted discussions and allowed offerors the opportunity to submit final proposal revisions. From the re-evaluation, a new award was made to Rowe Contracting Service, Inc. on 22 March 2006. On 29 March 2006, GAO notified the Agency that Ravens Group had filed a protest. The Agency notified GAO on April 3, 2006 that it intended to conduct a new source selection and issue a new source selection decision. On September 13, 2006, consistent with its notice to GAO, the Agency announced award would be made to NOSLOT pursuant to the new source selection conducted by a new source selection authority. Rowe filed the present protest before GAO on September 26, 2006.

The Government has determined that the awardee, NOSLOT, does not currently possess the Top Secret (TS/SCI) security clearance required by paragraph 24 (Clause 52.999-4031d) of the Solicitation and Amendment 0002. Because NOSLOT is presently ineligible for award, the Agency has decided to take the following corrective action. The Agency intends to terminate the contract with NOSLOT for convenience and conduct a new source selection based on the current proposals. The Agency will not be conducting a new technical evaluation of proposals or accepting revised proposals from any offerors. The new source selection will be based on the offerors' previously submitted proposals. Once a new source selection is completed, a new Source Selection Decision will be issued, and the appropriate offeror will be awarded a contract for the reminder of the services required.

CHEONG J. CHON
Contracting Officer

TOTAL P.002

TOTAL P.004

**DEFENSE INTELLIGENCE AGENCY**

WASHINGTON, D.C. 20340-

U-2053/AE-2A

May 15, 2006

MEMORANDUM FOR MAJ Peter Tran, HQ, U.S. Army Legal Service Agency, Contract Appeals Division, Team I, ATTN: JALS-CAI, 901 North Stuart Street, Suite 500, Arlington, Virginia 22203-1837

Subject: B-296741.5; Protest of The Ravens Group, Inc.

<u>Contracting Officer's Statement</u>

In response to GAO's request for clarification of the Contracting officer's Notice of Corrective Action, dated April 3, 2006, the following is provided. As the April 3, 2006 Notice of Corrective Action states,

> The Agency intends to conduct a new source selection and a new Source Selection Decision will be issued. If after the new source selection is conducted and a contractor other than Rowe is deemed to be the appropriate awardee, the contract with Rowe will be terminated for convenience and the appropriate offeror awarded a contract for the reminder of the services required.

The Agency simply intends to conduct a new source selection. The Agency will not be conducting a new technical evaluation of proposals or accepting revised proposals from any offerors. The new source selection will be based on the offerors' previously submitted proposals, which does not include a review of any Joint Personnel Adjudication System ("JPAS") files. The JPAS is a database managed by the DoD Agency Central Adjudication Facilities and is used to confirm the clearance validity of contractor personnel. The JPAS is a contract administration tool that is not used during the procurement process.

for [signature]
GUY A. TORRES
Contracting Officer

DEFENSE INTELLIGENCE AGENCY
Office of the Acquisition Executive
Building 6000, Bolling AFB
Washington, D.C. 20340-5100

April 3, 2006

U-2053/AE-2A

MEMORANDUM FOR MAJ Peter Tran, HQ, U.S. Army Legal Service Agency, Contract Appeals Division, Team I, ATTN: JALS-CAI, 901 North Stuart Street, Suite 500, Arlington, Virginia 22203-1837

Subject: B-296741.3; Protest of The Ravens Group, Inc.

Contracting Officer's Notice of Corrective Action

RFP HHM402-05-R-0017 (the "Solicitation") for the procurement of janitorial and custodial services for the Defense Intelligence Analysis Center (DIAC) and its new expansion building was issued on 14 April 2005. The Solicitation closed on 13 May 2005. Nine offers were received in response to the Solicitation. Award was made to The Ravens Group, LLC, on 17 June 2005. On 12 July 2005 and 19 July 2005, two separate protests were filed with the GAO (B-296741.2 and B-296914). The Agency notified GAO that it intended to take corrective action on 3 August 2005. Consistent with the notice to GAO, the Agency re-evaluated the proposals, conducted discussions and allowed offerors the opportunity to submit final proposal revisions. From the re-evaluation, a new award was made to Rowe Contracting Service, Inc. on 22 March 2006. On 29 March 2006, GAO notified the Agency that Ravens Group had filed a protest. On 31 March 2006, Rowe was notified of the protest and the required stay of performance.

The Government has reviewed the allegations contained in the protest filed by Ravens Group. Although the protest is not clearly meritorious, the Agency has decided to take the following corrective action. The Agency intends to conduct a new source selection and a new Source Selection Decision will be issued. If after the new source selection is conducted and a contractor other than Rowe is deemed to be the appropriate awardee, the contract with Rowe will be terminated for convenience and the appropriate offeror awarded a contract for the reminder of the services required.

GUY A. TORRES
Contracting Officer

**DEFENSE INTELLIGENCE AGENCY**
Office of the Acquisition Executive
Building 6000, Bolling AFB
Washington, D.C. 20340-5100

August 1, 2005

U-2053/AE-2A

MEMORANDUM FOR MAJ Peter Tran, HQ, U.S. Army Legal Service Agency, Contract Appeals Division, Team I, ATTN: JALS-CAI, 901 North Stuart Street, Suite 500, Arlington, Virginia 22203-1837

Subject: B-296741.2; Protest of NOSLOT Cleaning Services, Inc.

Contracting Officer's Notice of Corrective Action

RFP HHM402-05-R-0017 (the "Solicitation") for the procurement of janitorial and custodial services for the Defense Intelligence Analysis Center (DIAC) and its new expansion building was issued on 14 April 2005. The Solicitation closed on 13 May 2005. Nine offers were received in response to the Solicitation. Award was made to The Ravens Group, LLC, on 17 June 2005. NOSLOT Cleaning Services, Inc. was debriefed on 8 July 2005. On 12 July 2005, NOLSOT filed a protest of the award with the Government Accountability Office (GAO) (B-296741.2). Due to the essential nature of the requirements, the DIA HCA, on 13 July 2005, authorized continued performance of the contract pending the outcome of the protest.

The Government has reviewed the allegations contained in the protest filed by NOSLOT Cleaning Services, Inc. Although the protest is not clearly meritorious, the Agency has decided to take the following corrective action. The Agency intends to re-evaluate the nine proposals that were received at the close of the original submission deadline on May 13, 2005. Once the proposals have been re-evaluated, award may be made without discussions. If the Agency determines that discussions are warranted, a competitive range will be established and discussions will be conducted with all offerors within the range. Upon completion of discussions, offerors within the competitive range will be provided the opportunity to submit final revised proposals.

In light of the serious detrimental impact that would result from work stoppage under the present awarded contract, current janitorial and custodial services will continue unimpeded. If after the evaluation, another contractor is deemed the appropriate awardee, the contract with The Ravens Group, LLC, will be terminated for convenience and the appropriate offeror awarded a contract for the reminder of the services required. An amendment to the Solicitation will be issued implementing the corrective action at the close of the protest.

GUY A. TORRES
Contracting Officer

**DEFENSE INTELLIGENCE AGENCY**
Office of the Acquisition Executive
Building 6000, Bolling AFB
Washington, D.C. 20340-5100

August 2, 2005

U-2053/AE-2A

MEMORANDUM FOR MAJ Peter Tran, HQ, U.S. Army Legal Service Agency, Contract Appeals Division, Team I, ATTN: JALS-CAI, 901 North Stuart Street, Suite 500, Arlington, Virginia 22203-1837

Subject: B-296914; Protest of Olympus Building Services, Inc.

Contracting Officer's Notice of Corrective Action

RFP HHM402-05-R-0017 (the "Solicitation") for the procurement of janitorial and custodial services for the Defense Intelligence Analysis Center (DIAC) and its new expansion building was issued on 14 April 2005. The Solicitation closed on 13 May 2005. Nine offers were received in response to the Solicitation. Award was made to The Ravens Group, LLC, on 17 June 2005. Olympus Building Services, Inc. was debriefed on 12 July 2005. On 19 July 2005, Olympus filed a protest of the award with the Government Accountability Office (GAO) (B-296914).

The Government has reviewed the allegations contained in the protest filed by Olympus Building Services, Inc. Although the protest is not clearly meritorious, the Agency has decided to take the following corrective action. The Agency intends to re-evaluate the nine proposals that were received at the close of the original submission deadline on May 13, 2005. Once the proposals have been re-evaluated, award may be made without discussions. If the Agency determines that discussions are warranted, a competitive range will be established and discussions will be conducted with all offerors within the range. Upon completion of discussions, offerors within the competitive range will be provided the opportunity to submit final revised proposals.

In light of the serious detrimental impact that would result from work stoppage under the present awarded contract, current janitorial and custodial services will continue unimpeded. If after the evaluation, another contractor is deemed the appropriate awardee, the contract with The Ravens Group, LLC, will be terminated for convenience and the appropriate offeror awarded a contract for the reminder of the services required. An amendment to the Solicitation will be issued implementing the corrective action at the close of the protest.

GUY A. TORRES
Contracting Officer

# MEMORANDUM FOR THE RECORD

**FROM:** DIAC Custodial Service Contract Technical Evaluation Panel
**SUBJECT:** Vendors Exclusion from the DIAC Custodial Service Contract Competitive Range

The Technical Evaluation Panel made the decision to exclude the two vend[redacted] from the DIAC Custodial Service Contract competitive range after careful consideration. We determined their proposals are not in the competitive range. Our decision is based on the technical and past performance evaluation factors established in the solicitation.

[redacted] proposal was excluded from further consideration for the following reasons: [redacted] proposal did not clearly present:

(1) A detailed and clear understanding of the Statement of Objectives, including personnel, materials, facilities, and organizational processes.

(2) Evidence of sufficient planning to show that work will be accomplished as required and on schedule, using all available resources.

(3) A specific explanation of how the contractor intends to service office areas, escalators, high traffic areas, stairwells, and common areas. To include how often these areas will be cleaned and how these areas will be monitored to keep them clean.

(4) A plan that describes the transition to the new building (DIAC Expansion).

(5) An acceptable schedule that includes all areas in the scope of work.

(6) Indication that 20% cleared personnel are immediately available to start and maintain quality custodial services.

(7) A detailed plan addressing the provision of services to the new building (DIAC Expansion).

(8) A start-up plan addressing how employees will be hired and for ensuring a proper amount of cleared people (including escorts) providing custodial services to both the DIAC and the DIAC Expansion.

(9) A clear indication that you have performed adequate planning to accomplish the custodial tasks as defined in the Statement of Objectives.

(a) Provide a complete plan to accomplish each requirement. The plan should address how custodial servicing of high traffic areas, classrooms, garage and loading dock areas will be accomplished.

(b) Provide a detailed service schedule to include periodic cleaning of windows, carpet shampoo, floor maintenance, etc.

(10) A plan demonstrating that appropriate personnel and equipment will be positioned efficiently to carry out the requirements from the start date of the contract and how an inventory of supplies, tools, and equipment will be maintained.

(11) A plan demonstrating you can satisfy all of the Statement of Objectives level "6" security requirements for personnel.

(12) A plan indicating response times to special requests.

(13) A plan addressing the cleaning of high visibility areas.

(14) A schedule of how often the garage and dock areas will be cleaned and how it will be monitored.

(15) A detailed plan addressing how you will be prepared to handle requirements of the conference rooms and conference center in the new building (DIAC Expansion).

(16) A security awareness plan.

(17) A staffing plan addressing how you will recruit, (re)train, and retain employees.

Overall Technical Proposal was ra[redacted]

A proposal revision will not be considered.

[redacted] proposal was excluded from further consideration for the following reasons: [redacted] proposal did not clearly present:

(1) A detailed and clear understanding of the Statement of Objectives, including personnel, materials, facilities, and organizational processes (example: the proposal stated in the Quality Control section, page 2, third bullet, it would clean the "courthouse", Quality Control section, page 3, paragraph 5.1.1, would be the pest contractor, snow contractor …, Quality control section, page 6, paragraph 5.1.3, "…we guarantee the effectiveness of the water treatment program we will oversee", Staffing section, page 3, Support Staff, paragraph 3 "… MBJ employees working in the Child Development Center …", and Phase-In section, page 3, week 3, "… for the review of State of Nevada").

(2) Evidence of sufficient planning to show that work will be accomplished as required and on schedule, using all available resources.

(3) A specific explanation of how the contractor intends to service office areas, escalators, high traffic areas, stairwells, and common areas. To include how often these areas will be cleaned and how these areas will be monitored to keep them clean.

(4) A plan that describes the transition to the new building (DIAC Expansion). It only mentions it will staff and address at a later date with a revised plan.

(5) A plan addressing requirements and goals set forth in the Statement of Objectives.

(6) A plan paying special/particular attention to high visibility areas.

(7) A schedule of how often the garage and loading dock areas will be cleaned.

(8) An indication in detail that the contractor will be prepared to handle requirement of the conference rooms and conference center in the DIAC Expansion.

(9) A schedule that includes all areas in the scope of work.

(10) An indication that 20% cleared personnel are immediately available (need to be transferred from other sites out west) to start and maintain quality custodial services and does not address how services to the DIAC Expansion will be provided.

(11) A detailed starting plan addressing how employees will be hired and for ensuring a proper amount of cleared people for both sites.

(12) An indication of how escorts will be provided at contract start.

(13) A clear indication that you have performed adequate planning to accomplish the custodial tasks as defined in the Statement of Objectives.

(14) A service schedule for or address how high traffic areas, classrooms, garage, and loading dock areas will be cleaned.

(15) A service schedule indicating how periodic cleaning of windows, carpets shampoo, etc. will be accomplished.

(16) A service schedule addressing floor maintenance.

(17) A demonstration that appropriate personnel and equipment will be positioned efficiently to carry out the requirements from the start date of the contract.

(18) An indication how and inventory of supplies, tools, and equipment will be maintained.

(19) A realistic schedule (the schedule does not seem realistic because it assumes a cleared workforce in 180 days without providing a detailed recruitment plan.

(20) Evidence that cleaning supplies and equipment meet "green clean" standards.

(21) An indication how "green clean" standards will be met and maintained.

(22) A detailed recruitment and retention plan addressing "6" level personnel.

(23) A security awareness plan which is appropriate for the DIA.

(24) A detailed and specific staffing plan addressing retention and training of employees. Overall Technical Proposal was ra[redacted]

A proposal revision will not be considered.

The following offerors have submitted proposals that remain eligible for award and therefore comprise the competitive range with which the Agency will conduct discussions:

D&A Building Services
Engineering Maintenance Concepts (EMC)
Laro Service System, Inc.
NOSLOT
Olympus
Rowe Contracting Services
The Ravens Group **Prepared By:** Peter N. Starr, Chairman, Technical Evaluation Panel

olympus

VIRGINIA CONTRACTING ACTIVITY
200 MACDILL BLVD., BLDG 6000
BOLLING AIR FORCE BASE
WASHINGTON, D.C. 20340-5100

U-0934/AE-2A

SEP 1 3 2006

Mr. Anthony C. Hipple, President
Olympus Building Services, Inc.
244 S. Main Street
New Hope, PA 18938

Dear Mr. Hipple:

Your firm responded to this Agency's Request for Proposal (RFP) for the Janitorial/Custodial Services for the Defense Intelligence Agency, Bolling AFB, Washington, DC. The RFP was issued to twenty (20) contractors and only nine (9) proposals were received. A competitive range was established and, a result, there were five (5) offerors that qualified within the competitive range.

Upon careful reconsideration by the new Source Selection Authority, the following offeror's proposal was selected as being the best value to the Government, price and other factors considered:

NOSLOT Cleaning Services, Inc.
303 Post Office Road, Suite B-3
Waldorf, MD 20602

Total price including the base period and all options --- $19,401,698.00

If you desire a debriefing, please submit your request via fax to Juanita Jones at (202) 231-2831 within three (3) calendar days from receipt of this letter. The Government will provide a written debriefing.

Your proposal indicated that considerable effort was involved in its preparation and DIA appreciates your effort.

Sincerely,

CHEONG J. CHON
Contracting Officer

**VIRGINIA CONTRACTING ACTIVITY**
**200 MACDILL BLVD., BLDG 6000**
**BOLLING AIR FORCE BASE**
**WASHINGTON, D.C. 20340-5100**

U-0978/AE2A

OCT 1 1 2006

Olympus Building Services, Inc.
244 S. Main Street
New Hope, PA 18938

RE: DIA Janitorial Services Post-Award debriefing

Dear Ms. Beal:

In response to your faxed letter dated 15 September 2006, the Government provides a written debriefing in accordance with the FAR 15.506(b).

The award is made based on the solicitation announcement that the Government sought the best value reserved the right to award to other than the lowest offeror, and that an award could be made without discussions or negotiations with offerors. The Government found that Olympus' technical proposal and past performance to be "EXCELLENT." However, However, the proposed cost was not as advantageous as proposed by other comparable offerors.

SELECTION CRITERIA: Each company was evaluated using the same Technical Evaluation Sheets provided by the Contracting Office. The five sub-sub-factors of the Technical evaluation factor were: Understanding and Compliance (25%); Soundness of Approach (25%); Program Management Controls (16.66%); Past/Performance/Relevant Experience (16.66%), and Key Personnel (16.66%). Each company was rated by each member of the panel and a consensus report was produced reflecting the Technical Evaluation Panel's consensus evaluation.

As the new Source Selection Authority for this procurement, I have reviewed the Technical Evaluation Panel's (TEP's) technical evaluations, and I concur with the TEP's evaluation. The following assessments concerning your proposal were found by me.

Advantages:

[redacted]

[redacted]

**Disadvantages:**

- The offered price is the third highest priced offer.

**Basis For Award:**

This procurement utilizes the best value evaluation criteria identified in the solicitation. In accordance with the RFP, non-price factors (Technical and Past Performance), when combined, were more important than Price. Of the non-price factors, Technical is more important than Past Performance. Award will be made to the responsible offeror whose offer, conforming to the solicitation, is determined to be the best overall value to the Government, price and other factors considered. Based on those evaluation factors, NOSLOT, a comparable offeror with a lower proposed price, was awarded the contract.

If you require additional questions, please call the undersigned at (202) 231-8416.

Sincerely,

CHEONG CHON
Contracting Officer

# TECHNICAL PROPOSAL

FOR

CUSTODIAL SERVICES

AT THE

DEFENSE INTELLIGENCE ANALYSIS CENTER
(DISC)

AT

BOLLING AFB
WASHINGTON DC

FOR

SOLICITATION NUMBER
HHM402-05-R-0017

SUBMITTED

13 MAY 2005

BY

ROWE CONTRACTING SERVICE, INC.
MANDEVILLE, LOUISIANA 70471

THIS PROPOSAL INCLUDES DATA THAT SHALL NOT BE DISCLOSED OUTSIDE THE GOVERNMENT AND SHALL NOT BE DUPLICATED, USED OR DISCLOSED-IN WHOLE OR IN PART-FOR ANY PURPOSE OTHER THAN TO EVALUATE THIS PROPOSAL. IF HOWEVER, A CONTRACT IS AWARDED TO THIS OFEROR AS A RESULT OF/OR IN CONNECTION WITH THE SUBMISSION OF THIS DATA, THE GOVERNMENT SHALL HAVE THE RIGHT TO DUPLICATE, USE, OR DISCLOSE THE DATA TO THE EXTENT PROVIDED IN THE RESULTING CONTRACT. THIS RESTRICTION DOES NOT LIMIT THE GOVERNMENT'S RIGHT TO USE THE INFORMATION CONTAINED IN THIS DATA IF IT IS OBTAINED FROM ANOTHER SOURCE WITHOUT RESTRICTION. THE DATA SUBJECT TO THIS RESTRICTION ARE CONTAINED IN ALL SHEETS FOR SOLICITATION NUMBER HHM402-05-R-0017 AND ITS AMENDMENTS. THE REMAINDER OF THIS FAR PROVISION IS INCORPORATED BY REFERENCE

**PROPRIETARY INFORMATION NOT TO BE DISCLOSED**

**This proposal is in general form and order corresponding to Instructions to Offerors (Addendum 52.212-1), Special Instructions, Evaluation Criteria, respectively pages 37 thru 43. There may be some cross-indexing of references in complying.**

**This proposal is tabbed for the convenience of the government and the information offered has been confined to essential matters. All other clauses and actions are hereby acknowledged.**

TABLE OF CONTENTS

**TAB 1** [redacted]

**TAB 2**

**TAB 3**

**TAB 4**
**TAB 5**
**TAB 6**

DISCLOSURE OF DATA CONTAINED ON THIS SHEET IS SUBJECT TO THE RESTRICTIONS ON THE TITLE PAGE OF THIS PROPOSAL

1

# EXECUTIVE SUMMARY

[redacted]

DISCLOSURE OF DATA CONTAINED ON THIS SHEET IS SUBJECT TO THE RESTRICTIONS ON THE TITLE PAGE OF THIS PROPOSAL.

2

# TECHNICAL CAPABILITIES

[redacted]



DISCLOSURE OF DATA CONTAINED ON THIS SHEET IS SUBJECT TO THE RESTRICTIONS ON THE TITLE PAGE OF THIS PROPOSAL

[redacted]

[redacted]

## Scott Eugene Rowe

551 Kimberly Ann Dr.
Mandeville, La. 70471
800 521 4993 (W) 985 845 1022 (H)


## Summary of qualifications

Twenty-five (25) years of operation and management experience in operating government housekeeping and facility maintenance contracts. Posses a TS/SCI and above clearance.

1988 - Present

**ROWE Contracting Service, Inc.**
***Covington, LA***
Owner/President of Rowe Contracting Service, Inc.

## Work experience

1984 - 1988

**ROWE Contracting Service, Inc.**
***New Orleans, LA***
Vice President/President of Rowe Contracting Service, Inc. for all operations.

1983-1984

**ROWE Contracting Service, Inc.**
***New Orleans, LA.***

Project Manager , Field Station Augsburg, West Germany. Responsible for all operations of contract (building maintenance, janitorial services, grounds maintenance, classified document destruction and security escort services). Also Field Technical Rep. for all locations in Europe and England, including locations in Munich, Augsburg, Bad Aibling, Stuttgart, and West Berlin, Germany; Menwith Hill and Chicksands, England. Total number of employees responsible for varied between one hundred and twenty-five (125) and two hundred (200).

1982-1983

**ROWE Contracting Service, Inc.**
***New Orleans, LA***
Project Manager, Custodial Contract, Missile Intelligence Agency Command, Redstone Arsenal, Alabama. Responsible for all operations of contract. Also FTR for all operations in Europe and England.

## Security clearance

Possesses a top secret security clearance granted by the Defense Investigation Service with SCI access.

## Education

1985-1987

**University of New Orleans**
***New Orleans, LA.***
Completed several courses toward degree in economics.

'982-1983

**University of Alabama at Huntsville**
***Huntsville, AL.***
Completed several classes toward degree in economics.

1979 - 1981

**Louisiana State University**
***Baton Rouge, LA***
Completed several prerequisite courses toward degree in economics.

## Professional memberships

Member of Building Service Contracts Association Inc.

Member of National Rifle Association

Associate Member of the Northlake Republicans.

## Community activities

Attend First Baptist Church in Covington, LA.

Member of the Krewe of Endymion.

## Personal

Married, Three (3) children

# RESUME
# FOR
# ROBERT DUNCAN

Mr. Duncan has 15 years experience as an RCSI Management Representative, including those that require a TS/SCI Security Clearance.

[redacted]

DISCLOSURE OF DATA CONTAINED ON THIS SHEET IS SUBJECT TO THE RESTRICTIONS ON THE TITLE PAGE OF THIS PROPOSAL.

[redacted]

DISCLOSURE OF DATA CONTAINED ON THIS SHEET IS SUBJECT TO THE RESTRICTIONS ON THE TITLE PAGE OF THIS PROPOSAL.