4. Are reproductions of classified material reviewed to ensure that the markings are proper and legible? (5-602)

*Any review of a classified reproduction job should include concern for waste, trimmings, copy overruns, etc., and any materials used in production which may retain classified information or images requiring destruction or safeguarding.*

5. Is a record of reproduction maintained for accountable material and is it retained as required? (5-603)

*Remember, the NISPOM defines only TOP SECRET as accountable classified.*

## R. CLASSIFIED MEETINGS (sponsored by the Government)

1. Is Government sponsorship requested for classified meetings as required? (6-200, 6-201)

2. Are classified meetings held at approved locations? (6-201b)

3. Has the contractor developed adequate security procedures, for the requested meeting, and submitted them to the authorizing agency for approval? (6-201c)

4. Is attendance limited to persons cleared and having the need-to-know? (6-201c(2))

5. Is prior written authorization obtained, from the relevant Government Contracting Agency, before disclosure of classified information? (6-201c(3) and 6-202)

*Remember that classified presentations shall be delivered orally and/or visually. Copies of classified presentations, slides, etc. shall not be distributed at the meeting but rather safeguarded and transmitted as required in the Manual.*

6. Has a copy of the disclosure authorization been furnished to the Government agency sponsoring the meeting? (6-202b)

*Authority to disclose classified information at meetings, whether by industry or government, must be granted by the Government Contracting Agency having classification jurisdiction.*

7. Are contractor employees properly screened for clearance and need-to-know prior to attending a classified meeting? (6-203)

## S. CONSULTANTS

*For security administration purposes, the consultant shall be considered an employee of the hiring contractor or GCA. The using (hiring) contractor or GCA shall be the consumer of services offered by the consultant it sponsors for a personnel clearance.*

691

1. Has the consultant and the using contractor or GCA jointly executed a "consultant certificate" setting forth their respective security responsibilities? (2-213)

2. Does the consultant possess classified material at his/her place of business? (2-213)

## T. AUTOMATED INFORMATION SYSTEMS

1. Has the contractor obtained written accreditation from the DIS prior to processing classified on AIS? (8-102,8-200)

*Protection requires a balanced approach that includes administrative, operational, physical, and personnel controls associated with the environment of the AIS. Where similar AIS are located within the same facility, a single security plan is permitted.*

2. Has the contractor published and promulgated an AIS security policy that addresses the classified processing environment?(8-102b, 8-202)

3. Has an Information Systems Security Representative (ISSR) been appointed, and does that person carry out the ISSR responsibilities as defined by the Manual? (8-102)

4. Are AIS security custodians designated in facilities having multiple AIS or multiple working shifts? (8-102b(10))

5. Are security audit records maintained and reviewed at least weekly? (8-102b(9))

6. Is security awareness training provided prior to assigning an individual access to the AIS and is it part of an on-going AIS security education program? (8-202g, 8-102b(11))

*Interim accreditation may be granted for a specific period of time and the contractor (ISSR) may self-approve AISs that are similar to previously accredited systems, operated in the dedicated mode, provided that the self-approval plan is included in the AISSP. For details concerning these options contact your DIS Field Office.*

7. Has the ISSR determined and documented the capability of equipment not requiring AIS accreditation? (8-201)

8. Does the contractor's AIS security plan meet the standards suggested by the Manual's guidelines? (8-202)

9. Is the contractor's AIS operating in the appropriate (authorized) security mode? (8-203 thru 8-215)

*AISs processing classified information must operate in one of four security modes (i.e. dedicated, system high, compartmented, or multilevel). These security modes are authorized variations in the security environment, requirements, and methods of operation.*

10. Is the approved security mode for contractor AIS operation complemented by the required security features and security assurances? (8-203 thru 8-215)

692

11. Are appropriate physical controls being exercised over approved AIS? (8-300)

*Are non-removable seals being used for protection of hardware? If so, are they occasionally checked for tampering?*

12. Is software used during classified processing appropriately protected? (8-301)
13. Does the AISSP provide procedures for approval of installation of any software on the AIS? (8-301b)

14. Are AIS media containing classified handled in a manner consistent with the handling of classified documents? (8-302)

15. Are all AIS storage media, internal memory, and equipment properly sanitized and declassified prior to removal from continuous protection? (8-302)

16. Does the ISSR review, analyze, and annotate audit records associated with classified processing as specified in the AISSP? (8-302b)

17. Are audit trail records retained as required? (8-302c)

18. Are all sanitization actions verified and a record made of the date, the action taken, and the person responsible? (8-302f, 8-303a(4), 8-303c)

*Authorized sanitization procedures for the most commonly used memory and storage media are defined in the Clearing and Sanitization Matrix, pg. 8-3-5 and 8-3-6, NISPOM.*

19. Are instances of AIS maintenance being recorded (including addition and deletion of equipment), and are maintenance personnel appropriately cleared or escorted by knowledgeable persons? (8-303, 8-306a)

*If access to classified data cannot be precluded by the escort, either the component under maintenance must be physically disconnected from the classified AIS and sanitized before and after its maintenance, or the entire AIS must be sanitized before and after maintenance.*

20. Are AIS properly upgraded and downgraded where applicable? (8-304a-b)

21. Do system log-on passwords contain at least six characters and are they classified, controlled, and changed as required? (8-305b)

22. Are AISs networked at your facility? Have the additional security risks been considered? (8-403b)

23. Is an ISSR appointed for each approved network? (8-403)

24. Is the security support structure accredited for interconnected networks? (8-402)

## U. COMSEC/ CRYPTO

*The primary source of information for COMSEC inspections is the COMSEC Supplement to the ISM, 5220.22-S (CSISM). Paragraph reference is made to the CSISM which is now under revision, and the ISM which addresses STU-III issues. As it now stands, the NISPOM makes no reference to COMSEC.*

1. Have the COMSEC custodian and one or more alternate COMSEC custodians been appointed? (Para. 12, CSISM)

2. Do the FSO, COMSEC custodian, and all alternate custodians have a final Government clearance? (Para. 8, CSISM)

3. Have the FSO, COMSEC custodian, and all alternate COMSEC custodians received a briefing within the last year by a representative of the Government? (Para. 8a, CSISM)

4. Has the GCA representative received a COMSEC briefing? (13-911, ISM)

5. Have all STU-III users been educated in its proper use and security practices? (13-911, ISM)

6. Are all installed STU-III terminals supported by a COMSEC Account? (13-902, ISM)

7. Are all STU-III terminals installed in areas which can be controlled? (13-905, ISM)

8. Are all un-keyed STU-IIIs protected as high value items? (Para. 89, CSISM)

9. Has the FSO approved the installation of all STU-IIIs for communication with other facilities? (13-905b, ISM)

10. Are FAX machines connected to STU-III terminals protected during classified processing? (13-908, ISM)

11. Are all STU-III terminals used in conjunction with classified AIS processing appropriately safeguarded and the procedures described in the AISSP? (13-910, ISM)

12. Is all Seed Key protected by the most secure manner available? (Para. 90b(4), CSISM)

13. Are all Master Crypto Ignition Keys (MCIK), if created, safeguarded in a manner commensurate with the highest classification level of the information that the master enables the STU-III to protect? (13-907b, ISM)

14. Are all Crypto Ignition Keys (CIK) stored in the same room with the STU-III safeguarded commensurate with the highest level of the information the CIK enables the STU-III to protect? (13-907c, ISM)

15. If stored in a separate room within your facility, are all CIK stored in a locked cabinet or desk as a minimum? (13-907c, ISM)

694

16. Is each remaining CIK, not protected in the manner above, retained in the possession of the authorized user?(13-907c, ISM)

**Traditional COMSEC Accounts**

1. Has a COMSEC custodian and one or more alternate custodians been appointed and briefed by a Government representative? (Para. 12a, CSISM)

2. Are the COMSEC custodian and the alternate thoroughly familiar with the duties and responsibilities outlined for them in the COMSEC SUPPLEMENT? (Para. 18a, CSISM)

3. Do the FSO, COMSEC custodian, and all alternate COMSEC custodians have a Government-granted clearance based on a background investigation conducted within the last five years? (Para 8c, CSISM)

4. Have all employees authorized access to classified COMSEC information been properly briefed? (Para. 10, CSISM)

5. Does your facility SPP contain adequate procedures for COMSEC operations at your facility? (Para. 1e, CSISM)

   *Are sufficient copies of the COMSEC Supplement and/or applicable equipment doctrine manuals available and adequately distributed to relevant personnel?*

6. Have all COMSEC-related reports been submitted? (Sec. XVI, CSISM)

7. Has a COMSEC emergency plan been developed and approved by the CSA? (Para. 103, CSISM)

8. Have all disclosures of COMSEC information, whether to a subcontractor or other non-employees, been made only with the specific written approval of the contracting officer? (Para. 75, CSISM)

9. Is all COMSEC information in the custody of your facility properly marked and accounted for? (Para. 28, 29 and 36, CSISM)

10. Are COMSEC and keying materials marked "CRYPTO" properly stored? (Para. 90, CSISM)

11. Are COMSEC and keying materials marked "CRYPTO" properly handled in work processing areas? (Para. 88, CSISM)

12. Are access lists properly posted? (Para. 88, CSISM)

13. Is proper disposition accomplished for COMSEC and CRYPTO material? (Sec. XIV, CSISM)

14. Are COMSEC and keying materials marked "CRYPTO" properly transmitted outside the facility? (Para. 55, CSISM)

## V. INTERNATIONAL OPERATIONS

**Disclosure of U.S. Information to Foreign Interests**

1. Does the contractor have any classified contracts with foreign interests? (If YES ... continue!)

2. Was an export license or a written letter of authorization obtained prior to disclosure of classified information? (10-200, 10-202)

*Remember that an export authorization is required before the contractor makes a proposal to a foreign person that involves eventual disclosure of U.S. classified information.*

3. Is proper disclosure guidance provided by the Government Contracting Authority? (10-201)

4. Are requests for export authorizations of military equipment or classified material accompanied by Department of State, Form DSP-83, Non-Transfer and Use Certificate? (10-203)

5 Has the required security clause and classification guidance been incorporated into the subcontract document for all direct commercial arrangements with foreign contractors involving classified information? (10-204)

*For examples of security requirement clauses see page 10-2-4, NISPOM.*

**Possession of Foreign Classified Information**

1. Has the DIS been notified of all contracts, awarded by foreign governments, that involve access to classified information? (10-301)

2. Is foreign government information provided protection equivalent to that required by the originator? (10-300)

*Foreign government classified generally parallels our three-level system. However, occasionally you will see the marking "RESTRICTED." This material should be marked and protected as CONFIDENTIAL.*

3. Are U.S. documents containing foreign government classified information marked as required by the Manual? (10-303)

4. Are contractor employees, handling foreign classified information, briefed prior to access and is it acknowledged in writing? (10-305)

5. Is foreign government material stored in a manner that prevents its mingling with other material? (10-306)

6. Is transfer of classified information outside the U.S. handled on a government-to-government basis? (10-309)

*The receipt of classified material from a foreign source through non-government channels shall be promptly reported to the DIS, Field Office. (10-316)*

7. Is the subcontracting of contracts involving access to foreign government information conducted in accordance with the Manual? (10-312)

**International Transfers**

1. Do all international transfers of classified material take place through government-to-government channels? (10-401)

2. Is an appropriate transportation plan prepared for each contract involving international transfer of classified material via freight forwarder or commercial carrier? (10-401, 10-402)

3. Does the use of freight forwarders for the transfer of classified material meet the requirements of the Manual? (10-405)

4. Is classified material handcarried outside of the U.S.? If so, is such action always approved by the DIS? (10-406)

5. Are couriers provided with a Courier Certificate and do they execute a Courier Declaration before departure? (10-406b, 10-406c)

   *Paragraphs (10-406a thru j) provide detailed requirements for employees acting as couriers when handcarrying classified across international boundaries.*

6. Are all international transfers of classified controlled by a system of continuous receipts? (10-407)

7. Is adequate preparation and documentation provided for international transfer of classified pursuant to commercial/GCA sales or ITAR exemption? (10-408, 10-409)

**International Visits and Control of Foreign Nationals**

1. Has the contractor established procedures to monitor/control international visits by their employees and by foreign nationals? (10-501, 10-506, 10-507)

   *Visit authorizations shall not be used to employ the services of foreign nationals to access export controlled materials; an export authorization is required in such situations.*

2. Are requests for visits abroad by U.S. contractors submitted on a timely basis? (10-506)

   *The Visit Request format is contained on pages 10-5-4 and 10-5-5.*

3. Does the contractor properly control access to classified by on-site foreign nationals? (10-508, 10-509))

*All violations of administrative security procedures or export control regulations by foreigners shall be reported to the CSA.*

**Contractor Operations Abroad**

*The storage, custody, and control of classified information required by U.S. contractor employees abroad is the responsibility of the U.S. Government.*

1. Are employees assigned abroad properly briefed on the security requirements of their assignment? (10-604)

2. Is the CSA advised of cleared employees assigned abroad for periods exceeding 90 days? (10-605)

3. Has all transmission of classified information to cleared employees overseas been conducted through U.S. Government channels? (10-603)

*Consultants shall not be assigned outside the U.S. with responsibilities that require access to classified information.*

**NATO Information Security Requirements**

1. Are briefings/debriefings of employees accessing NATO classified conducted in accordance with the Manual, and are the appropriate certificates and records on file? (10-705)

*Remember that a clearance is not required for access to NATO RESTRICTED.*

2. Are all classified documents properly marked? (10-708)

3. Has the contractor received adequate classification guidance? (10-709)

4. Have the combinations to containers holding NATO classified been changed annually as a minimum? (10-711)

5. Has all NATO classified been properly received and transmitted? (10-712)

6. Are the accountability records for NATO classified maintained as required? (10-716)

7. Are visits of persons representing NATO properly handled and is the visit record maintained as required? (10-720)

**W. OPSEC**

1. Are OPSEC requirements implemented in accordance with contractual documentation provided by the GCA?

**X. SPECIAL ACCESS PROGRAMS**

Olympus Building Services, Inc • Solicitation # HHM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
Use of the data contained on this sheet is subject to the restriction on the title page of this proposal

Olympus
Building Services, Inc.

# Operation and Procedure Plan

May 2005

**Defense Intelligence Agency**
**Washington, DC**

| Revisions | | Rev: | One |
|---|---|---|---|
| Letter | E.O. Number - Description | Date | |
| A | Original Plan for Submission | 05/13/05 | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Used On 05/05 | Contract#: HHM402-05-R-0017 | | **Olympus Building Services, Inc.** **244 South Main Street** **New Hope, PA 18938** | | | | | |
| Prepared By: | A. Hipple | | | | | | | |
| Your Dept: | 001 | | | | | | | |
| Your Dept: | | | **Operation and Procedures Plan** | | | | | |
| Your Dept: | | | Bid # 865 | | | | | |
| Your Dept: | | | Size: | A | CAGE: | 1JJX7 | Form # C.11 (10/04) | 1 of 44 |
| | | | | | | | | |

# Table of Contents

[redacted]

700

[redacted]

701

[redacted]

[redacted]

[redacted]

704

[redacted]

[redacted]

706

[redacted]

707

[redacted]

[redacted]

[redacted]

[redacted] 709

[redacted]

[redacted]

710

[redacted]

711

[redacted]

[redacted]

712

[redacted]

713

[redacted]

714

[redacted]

[redacted]

[redacted]

717

[redacted]

[redacted]

718

[redacted]

[redacted] 719

[redacted]

[redacted]