be essentially equal based upon their "Excellent" Technical proposals, DIA selected Rowe for award because Rowe was "a comparable offeror with a lower proposed price." This approach is contrary to the cost/price-technical tradeoff approach to proposal evaluation set forth in the solicitation.

## LEGAL ARGUMENT

### I. DIA Did Not Properly Apply The Evaluation Criteria In The Solicitation When It Evaluated Offerors' Proposals.

#### A. GAO Will Examine The Agency's Evaluation Of Proposals To Confirm That It Is Reasonable And In Accordance With The Evaluation Criteria In The Solicitation.

In reviewing bid protests, GAO "will not reevaluate the technical proposals, but instead will examine the agency's evaluation to ensure that it was reasonable and in accordance with the RFP evaluation criteria." John W. Gracey, B-228740, 88-1 CPD ¶ 199. It is well established that the evaluation of technical proposals is wholly within the discretion of the contracting officer. Rainbow Technology, Inc., B-232589.2, 89-1 CPD ¶ 66; Abt Associates Inc., B-237060.2, 90-1 CPD ¶ 223. The protester's mere disagreement with the agency's judgment does not establish that an evaluation was unreasonable. Hanford Environmental Health Foundation, B-292858.2, B- 292858.5, 2004 CPD ¶ 164 at 4. However, the Government's solicitation documents, not internal evaluation materials, form the compact between the agency and offerors about how proposals will be evaluated. Lear Siegler Servs., Inc., B-280834, B-280834.2, 98-2 CPD, ¶136 at 6; Loral Aeronutronic, B-259857.2, B-259858.2, 95-2 CPD, ¶ 213 at 9.

**B. The Evaluation Of Offers Was Not Reasonable Because DIA Did Not Follow The Evaluation Plan Stated In The Solicitation.**

**1. The Evaluation Plan Expressly Stated Two Distinct Non-Price Evaluation Factors: Technical And Past Performance.**

The Evaluation Plan in the solicitation provided clear notice to offerors that there were two separate and distinct non-price evaluation factors, Technical and Past Performance, and that the agency considered offerors' technical capability and its past performance experience to be more important than price in this procurement. However, when DIA evaluated offers, it did not apply the Evaluation Plan stated in the solicitation. Instead, DIA considered Past Performance twice; once as a sub-sub-factor in the Technical evaluation, and a second time under the separate Past Performance evaluation factor. This evaluation scheme was contrary to the solicitation's stated direction for offerors to describe their Technical Capability and their Relevant Past and Present Performance in two separate sections of their proposals. Solicitation, Paragraph 6, p. 37.

DIA's explanation for its deviation from the evaluation plan stated in the solicitation is wholly without merit. DIA states that "the TEP evaluated the quality and extent of offeror's experience deemed relevant to the requirements of the Solicitation." Attachment C, p. 1. However, the solicitation does did not require offerors to list or explain "the quantity and extent" of their experience as an element in their Technical proposals. The solicitation merely required offerors to describe in their Technical proposals how they would meet the Contract Objectives listed on pages 7 and 8 of the solicitation by providing personnel, materials, and organizational processes as specified on page 6 of the solicitation.

### 2. DIA's Improper Application Of The Evaluation Criteria Prejudiced Olympus.

DIA's failure to provide notice in the solicitation that it would evaluate past performance as part of the Technical evaluation prejudiced Olympus, notwithstanding that DIA gave Olympus an "Excellent" rating for its Technical proposal. Although DIA gave Olympus an overall "Excellent" rating for its Technical proposal, DIA did not give Olympus a specific "Advantage" under the Technical factor for its past performance.

If Olympus had known that DIA was going to consider its past performance as part of the Technical evaluation, Olympus would have included detailed information on its past performance record that would have enabled DIA to recognize Olympus' past performance as a specific Advantage. This would have increased the number of Advantages identified in Olympus' Technical proposal as compared with the Advantages received by other offerors. Since Technical and Past Performance were more important than price, the addition of another Advantage to Olympus' Technical rating would have improved Olympus' relative position in DIA's technical/price best value trade-off.

## II. DIA's Past Performance Evaluation Of Olympus' Proposal Was Irrational.

### A. DIA Did Not Provide Any Explanation For Downgrading Olympus' Past Performance Rating During The Second Evaluation Of Proposals.

[redacted]

[redacted]

The GAO has repeatedly stated that although the evaluation of an offeror's past performance is a matter within the agency's discretion, it will question the agency's past performance conclusions "where they are not reasonably based or undocumented." Green Valley Trans., Inc., B-285283, 2000 CPD ¶ 133 (finding the agency's evaluation of past performance unreasonable). In this case, DIA's evaluation of Olympus' past performance was clearly unreasonable because the agency, by its own admission, incorporated inaccurate information about Olympus' past performance into the evaluation pr[redacted]

[redacted] early prejudiced Olympus in this procurement. Therefore, Olympus' protest should be sustained on this basis alone.

**B. DIA Failed To Provide Olympus The Opportunity To Clarify The Allegedly Poor Past Performance Information Included In The Questionnaire Response.**

[redacted]

See FAR §15.306(a)(2) (stating that when award is to be made without conducting discussions, offerors can be given the opportunity to clarify adverse past performance information to which the offeror has not previously had an opportunity to respond). While the GAO has stated that this FAR provision does not *require* an agency to communicate with an offeror concerning adverse past performance information, it will review an agency's exercise of discretion to ensure that it was reasonable based on the particular circumstances of the procurement:

> With regard specifically to clarifications concerning adverse past performance information to which the vendor has not previously had an opportunity to respond, we think that for the exercise of discretion to be reasonable, the agency must give the offeror an opportunity to respond where there clearly is a reason to question the validity of the past performance information.

United Coatings, B-291978.2, 2003 CPD ¶ 146 (emphasis added).

[redacted]

[redacted]

### III. DIA Did Not Perform A Proper Cost/Price-Technical Tradeoff When It Selected Rowe For Award.

#### A. DIA Performed a "Technically Acceptable, Low Price" Analysis, Instead Of The "Cost/Technical Tradeoff" Analysis Specified In The Solicitation.

The solicitation also provides clear notice to offerors that the "Government will perform a trade-off analysis of non-price factors against price to determine the best value to the Government." Solicitation, p. 40. This analysis must be performed in accordance with FAR 15.101-1:

> (b) When using a tradeoff process, the following apply:
>
> (1) All evaluation factors and significant subfactors that will affect contract award and their relative importance shall be clearly stated in the solicitation; and
>
> (2) The solicitation shall state whether all evaluation factors other than cost or price, when combined, are significantly more important than, approximately equal to, or significantly less important than cost or price.
>
> (c) <u>This process permits tradeoffs among cost or price and non-cost factors and allows the Government to accept other than the lowest priced proposal. The perceived benefits of the higher priced proposal shall merit the additional cost, and the rationale for tradeoffs must be documents in the file in accordance with 15.406.</u>

<u>Id.</u> (emphasis added). Thus, Olympus, and the other offerors, reasonably expected DIA to perform such a tradeoff analysis.

DIA did not perform a proper tradeoff analysis. It is evident from the record that DIA actually performed a "lowest price technically acceptable" analysis, as outlined in FAR 15.101-2.

When the Government intends to perform this type of evaluation, however, it must provide offerors notice of this planned evaluation scheme in the solicitation:

> (b) When using the lowest price technically acceptable process, the following apply:
>
> (1) The evaluation factors and significant subfactors that establish the requirements of acceptability shall be set forth in the solicitation. <u>Solicitations shall specify that award will be made on the basis of lowest evaluated price or proposal meeting or exceeding the acceptability standards for non-cost factors</u>.

<u>Id.</u> (emphasis added).

The first debriefing revealed that DIA had determined that the technical proposals of two or more of the offerors in the competitive range were "comparable," i.e., they were both technically acceptable. Attachment A, pp. 1-2. DIA then proceeded to make an award decision based upon low price. DIA appears to have conducted this same "technically acceptable/low price" analysis in making the latest award to Rowe. The second debriefing states that "[a]ll four (4) final offerors received "EXCELLENT" ratings on technical proposal. Attachment C, p. 1.

It is unusual for four out of five offerors in a procurement to all receive "Excellent" ratings for their Technical proposals. Specifically, FAR 15.305(a)(3) provides that when, as in this procurement, tradeoffs are performed, the agency should make an "assessment of each offeror's ability to accomplish the technical requirements...and a summary matrix or quantitative ranking, along with appropriate supporting narrative, of each technical proposal using the evaluation factors." Thus, DIA should have provided such a detailed narrative of each offeror's abilities, and its failure to do so indicates that no such evaluation was actually performed.

Instead, on information and belief, DIA performed a cursory review of each offeror's proposal and did not discriminate among them, rating all four of them "Excellent." DIA then

proceeded to make an award decision based solely on price. DIA is not prohibited from conducting such an evaluation, however, it cannot do so unless it provides notice in the solicitation to all offerors that it intends to perform a "technically acceptable, low price" evaluation to allow offerors to draft their proposals accordingly. DIA failed to do this.

**B. DIA's Failure To Perform A Proper Best Value Analysis Prejudiced Olympus.**

DIA's decision to evaluate offers based upon a "technically acceptable, low price" approach instead of the "cost/price-technical tradeoff" approach stated in the solicitation prejudiced Olympus because, in view of the solicitation's statement that non-price factors were more important than price, Olympus reasonably assumed that DIA would trade-off Olympus' Excellent Technical and Past Performance compared with those of other offerors in these areas, against price in making the award decision. Instead, DIA considered low price to be the most important evaluation factor.

**IV. DIA's Best Value Determination Is Unreasonable Because It Was Based Upon The Flawed Technical And Past Performance Evaluations And Upon An Irrational Cost/Price-Technical Tradeoff.**

**A. A Best Value Determination Is Unreasonable If It Is Based On Flawed Technical And Past Performance Evaluations.**

FAR §15.302 provides that "[t]he objective of source selection is to select the proposal that represents the best value." This objective cannot be achieved when the agency's decision is premised on defective technical, performance risk, or cost/price evaluations.

Indeed, the Comptroller General has held best value analyses to be irrational when these analyses have been based on faulty cost or technical evaluations. See, e.g. Gemmo Impianti SpA, B-290427, 2002 CPD ¶ 146 (Navy's source selection decision was unreasonable when the Navy's evaluation supporting the best value decision contained material defects under two of the three technical factors, and the tradeoff analysis was based on an erroneous assumption about relative

price difference"); Lockheed, IMS, B-248686, 92-2 CPD ¶ 180 (sustained protest on grounds of inadequate best value analysis noting that "HHS' failure to fully evaluate proposed costs makes the validity of the cost/technical tradeoff questionable"); Lockheed Aeronautical Systems Co., B-252235.2, 93-2 CPD ¶ 80 (improper life cycle cost (LCC) evaluation rendered cost/technical tradeoff flawed, even though cost was least significant evaluation factor); Bendix Oceanics, Inc., B-247225.3, 92-2 CPD ¶ 54 (improper evaluation of technical proposals requires Navy to conduct new cost/technical tradeoff based on new technical evaluation); SeaSpace, B-241564, 91-1 CPD ¶ 179 (protest sustained where the agency based its cost/technical tradeoff on flawed technical evaluations).

**B. DIA Conducted Improper Technical And Past Performance Evaluations.**

Assuming, for the purpose of argument only, that DIA performed a proper cost/price-technical tradeoff in determining that Rowe's offer represented the best value to the Government, the resultant best value decision still would be irrational because it was not based upon reasonable Technical and Past performance e[redacted]ccordance with the GAO case law detailed above, these erroneous Technical and Past Performance evaluations cannot form the foundation for a proper best value decision because these Technical and Past Performance evaluations were in themselves unreasonable.

C. **Olympus' "Excellent" Technical And Past Performance Proposals Offset Olympus' Slightly Higher Price.**

Finally, even if DIA performed proper Technical and Past Performance evaluations of offers, and even if DIA performed a proper cost/price-technical tradeoff, DIA's decision to award the contract to Rowe is irrational because Olympus' "Excellent" rated proposal is clearly most advantageous to the Government. Olympus submitted a high-quality proposal that fully complied with all of the solicitation's stated requirements. In addition, as stated above, had Olympus known that past performance information would be used to evaluate offerors' Technical proposals, Olympus would have provided additional information to demonstrate its superior quality and experience. It was unreasonable for DIA to reject Olympus' offer, in favor of Rowe's less advantageous proposal, based upon a flawed evaluation and an immaterial difference in price.

**CONCLUSION**

Based on the foregoing, we request that the Government Accountability Office ("GAO") sustain Olympus' protest because DIA's contract award to Rowe is improper and in violation of law. Accordingly, Olympus respectfully requests the following relief:

1. That the Comptroller General stay Rowe's performance of the subject contract pending the resolution of this protest, pursuant to the Competition In Contracting Act ("CICA"), 31 U.S.C. 3553(d).

2. That the Comptroller General issue a ruling sustaining this protest;

3. That the Comptroller General recommend that the agency terminate Rowe's contract, and award a contract to Olympus as representing the best value to the Government.

4. That the Comptroller General declare that Olympus is entitled to its reasonable cost of filing and pursuing this protest, including attorneys' fees, and proposal preparation costs; and

5. That the Comptroller General make such other recommendations as necessary to promote compliance and any revisions or amendments to the same.

Olympus reserves the right to request a hearing in this protest.

Pursuant to 4 C.F.R. § 21.2(d)(2) and 21.3(c), Olympus requests DIA to produce the following documents, whether or not DIA intends to include them with the Agency Report. In addition to documents and copies of documents, this request includes electronic documents or communications (E-mail), whether or not previously printed in hard copy. All of the documents requested below are relevant to this protest.

1. The contract awarded to Rowe in this procurement.

2. The complete proposals, and all revisions or amendments thereto, submitted by the offerors in this procurement.

3. DIA's Source Selection Plan and/or Acquisition Plan, required in FAR § 15.303(b)(2), for this acquisition, and all amendments thereto.

4. DIA's Source Selection Decision for this acquisition, as required by FAR § 15.308, and all related drafts of the Source Selection Decision.

5. All documents that DIA reviewed or considered in making its decision to award a contract to Rowe.

6. All documents prepared by DIA evaluators in performing analysis or review of the proposals for the purpose of selecting the best value proposal for contract award.

7. All documents reflecting communications between any other person or entity within DIA or outside that agency relating to the selection of the best value proposal for contract award.

8. All documents related to DIA's conduct of discussions with offerors from receipt of initial proposals until the date of contract award.

9. All documents reflecting or relating to DIA's evaluation of each response to the discussions from receipt of initial proposals until the date of contract award.

10. All documents identifying DIA's individual evaluators who evaluated each element in factor in the proposals.

11. All documents relating to or explaining any changes in the composition of DIA's evaluation team.

12. All documents relating to or explaining DIA's evaluation of technical proposals.

13. All documents relating to or explaining DIA's evaluation of offerors past performance.

14. All documents relating to DIA's evaluation of the offerors' price proposals.

15. All notes or evaluation forms of individual evaluators who participated in the evaluation of offerors' technical and price proposals and their past performance.

16. All documents reflecting or relating to DIA's explanation of the weights to be applied to the evaluation factors in the Solicitation.

17. All instructions provided to the members of DIA's evaluation team related to performing the evaluation of proposals in the mailing systems and services procurement.

18. All documents relating to the debriefings of offerors following DIA's selection of Rowe for award. These documents all relate to the counts set forth in Olympus' protest.

Sincerely yours,

SEYFARTH SHAW LLP

Grace Bateman
Amanda Weiner
Counsel for Olympus Building Services, Inc.

Encs.

cc: C. Chon, Contracting Officer (via facsimile and first class mail)
A. Hipple (via first class mail)

# ATTACHMENT A

VIRGINIA CONTRACTING ACTIVITY
200 MACDILL BLVD., BLDG 6000
BOLLING AIR FORCE BASE
WASHINGTON, D.C. 20340-5100

U-0978/AE2A

OCT 1 1 2006

Olympus Building Services, Inc.
244 S. Main Street
New Hope, PA 18938

RE: DIA Janitorial Services Post-Award debriefing

Dear Ms. Beal:

In response to your faxed letter dated 15 September 2006, the Government provides a written debriefing in accordance with the FAR 15.506(b).

The award is made based on the solicitation announcement that the Government sought the best value reserved the right to award to other than the lowest offeror, and that an award could be made without discussions or negotiations with offerors. The Government found that Olympus' technical proposal and past performance to be "EXCELLENT." However, However, the proposed cost was not as advantageous as proposed by other comparable offerors.

SELECTION CRITERIA: Each company was evaluated using the same Technical Evaluation Sheets provided by the Contracting Office. The five sub-sub-factors of the Technical evaluation factor were: Understanding and Compliance (25%); Soundness of Approach (25%); Program Management Controls (16.66%); Past/Performance/Relevant Experience (16.66%), and Key Personnel (16.66%). Each company was rated by each member of the panel and a consensus report was produced reflecting the Technical Evaluation Panel's consensus evaluation.

As the new Source Selection Authority for this procurement, I have reviewed the Technical Evaluation Panel's (TEP's) technical evaluations, and I concur with the TEP's evaluation. The following assessments concerning your proposal were found by me.

**Advantages:**

[redacted]

[redacted]

**Disadvantages:**

- The offered price is the third highest priced offer.

**Basis For Award:**

This procurement utilizes the best value evaluation criteria identified in the solicitation. In accordance with the RFP, non-price factors (Technical and Past Performance), when combined, were more important than Price. Of the non-price factors, Technical is more important than Past Performance. Award will be made to the responsible offeror whose offer, conforming to the solicitation, is determined to be the best overall value to the Government, price and other factors considered. Based on those evaluation factors, NOSLOT, a comparable offeror with a lower proposed price, was awarded the contract.

If you require additional questions, please call the undersigned at (202) 231-8416.

Sincerely,

CHEONG CHON
Contracting Officer

# ATTACHMENT B

VIRGINIA CONTRACTING ACTIVITY
200 MACDILL BLVD., BLDG 6000
BOLLING AIR FORCE BASE
WASHINGTON, D.C. 20340-5100

U-1084/AE-2A2

DEC 19 2006

Mr. Anthony C. [illegible], President
Olympus Building Services, Inc.
[illegible] Street
New Hope, PA 18938

Dear Mr. [illegible]:

Your firm responded to this Agency's Request for Proposal (RFP) HHM402-05-R-0017 for the Janitorial/Custodial Services for the Defense Intelligence Agency, Bolling AFB, Washington, DC. The RFP was issued to twenty (20) contractors and only nine (9) proposals were received. A competitive range was established and, as a result, there were [illegible] offerors that qualified within the competitive range.

Upon careful reconsideration by the new Source Selection Authority, The following offeror's proposal was selected as being the best value to the Government, price and other factors considered.

ROWE Contracting Services, Inc.
[illegible] Highway 22, Suite C1
Mandeville, LA 70471-3670

Total price including the base period and all options — $[redacted]

If you desire a debriefing, please submit your request via fax to Cheong Chon at (202) 231-[illegible] within three (3) calendar days from receipt of this letter. The government will provide a written debriefing.

Your proposal indicated that considerable effort was involved in its preparation and DIA appreciates your effort.

Sincerely,

CHEONG J. CHON
Contracting Officer



TOTAL P.002

# ATTACHMENT C

**VIRGINIA CONTRACTING ACTIVITY**
**200 MACDILL BLVD., BLDG 6000**
**BOLLING AIR FORCE BASE**
**WASHINGTON, D.C. 20340-5100**

U-1078/AE2A

DEC 27 2006

Olympus Building Services, Inc.
244 S. Main Street
New Hope, PA 18938

RE: DIA Janitorial Services Post-Award debriefing

Dear Ms. Beal:

In response to your faxed letter dated 15 December 2006, the Government provides a written debriefing in accordance with the FAR 15.506(b).

The basis for award in the solicitation stated that Award will be made to the responsible offeror whose offer, conforming to the solicitation, is determined to be the best overall value to the Government, price and other factors considered. It also stated that the importance of price in the evaluation for award will increase as the relative differences in non-price factors of offerors decreases. All four (4) final offerors received "EXCELLENT" ratings on technical proposals. [redacted]

The Government evaluated the proposals using the adjectival rating system provided in the solicitation. It should be noted that the RFP lists Past Performance as both an evaluation factor and also as a sub-sub-factor of the Technical evaluation factor. Consistent with the RFP, the Past Performance/Relevant Experience sub-sub-factor was evaluated as 16.66% of the overall Technical evaluation factor. In evaluating the Past Performance/Relevant Experience sub-sub-factor, the TEP evaluated the quality and extent of offeror's experience deemed relevant to the requirements of the Solicitation. It should be noted that the TEP has never reviewed the offeror's past performance questionnaires in conducting its evaluation. The TEP's Past Performance/Relevant Experience evaluation was limited to only the information presented by offerors' in their proposals.

Once it was used to obtain the overall Technical evaluation, the Past Performance/Relevant Experience rating of the offerors' technical proposals was combined with the evaluation of the past performance questionnaires received from the offerors' references to derive an overall rating for the Past Performance evaluation factor.

As the new Source Selection Authority for this procurement, I have reviewed the Technical Evaluation Panel's (TEP's) technical evaluations, and I concur with the TEP's evaluation. Olympus did receive an "Excellent" in Past Performance/Relevant Experience portion of the Technical evaluation. However, when combined with the past performance questionnaires, Olympus' overall Past Performance evaluation became "Good."

The following assessments concerning your proposal were found by me.

**Weaknesses:**

- [redacted]
- [redacted]

**Basis For Award:**

The Award is made based on evaluation factors stated in the solicitation that the importance of price in the evaluation for award will increase as the relative differences in non-price factors of offerors decreases. ROWE, a comparable offeror with a lower proposed price, was awarded the contract.

If you require additional questions, please call the undersigned at (202) 231-8416.

Sincerely,

CHEONG CHON
Contracting Officer

ATTACHMENT D

**Declaration of Susan Beal**

Now comes Susan Beal, who hereby declares as follows:

1. My name is Susan Beal. I am Vice President of Olympus Building Services, Inc., ("Olympus") which is located at 244 S. Main Street, New Hope, Pennsylvania 18938. I have been employed at Olympus since 2000.

2. In my capacity as Vice President, I am familiar with all of Olympus' contracting activities, including its contracts for the provision of janitorial services to Federal Government and private customers.

3. I am aware that the Defense Intelligence Agency ("DIA") has issued Solicitation No. HHM402-05-R-0017 for janitorial services to be provided at the Defense Intelligence Analysis center at Bolling Air Force Base. I am also familiar with the details of the proposal that Olympus submitted in response to the DIA solicitation.

4. I understand that DIA has selected another vendor for award of the above contract. In connection with this contract award, I have reviewed a letter dated December 27, 2006 from DIA providing a debriefing to Olympus of DIA's evaluation of Olympus' proposal in the subject procurement.

[redacted]

12/28/06
Date

Susan Beal
Vice President
Olympus Building Services, Inc.

SEYFARTH SHAW LLP ATTORNEYS

815 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006-4004
202-463-2400
fax 202-828-5393
www.seyfarth.com

Writer's direct phone
(202) 828-5359

Writer's e-mail
gbateman@seyfarth.com

February 8, 2007

**PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GAO PROTECTIVE ORDER**

**VIA FACSIMILE - 202-512-9749**
**AND U.S. MAIL**

Mary G. Curcio, Esq.
Senior Attorney
Procurement Law Division
Government Accountability Office
441 G Street, N.W.
Washington, D.C. 20548

Re: B-29674.11; Protest of Olympus Building Services, Inc.; Defense Intelligence Agency Solicitation No. HHM402-05-R-0017 For Janitorial Services; Olympus' Response To Intervenor's Motion To Dismiss And Comments On The Agency Report.

Dear Ms. Curcio:

Olympus Building Services, Inc. ("Olympus") hereby submits this Response to the Intervenor's Motion To Dismiss, and its Comments on the Agency Report.

The Intervenor, Rowe Contracting Services, Inc., ("Rowe") argues in its Motion to Dismiss that Olympus' protest should be dismissed because Olympus would not be in line for award, even if all of the allegations in Olympus' protest are true. The Defense Intelligence Agency ("DIA," "agency," or "Government") makes similar "no prejudice" arguments in the Agency Report, claiming that, contrary to the record, the agency performed proper Technical and Past Performance

BRUSSELS WASHINGTON, D.C. SAN FRANCISCO SACRAMENTO NEW YORK LOS ANGELES HOUSTON CHICAGO BOSTON ATLANTA

evaluations and that the best value determination was reasonable. Both the Intervenor and the agency are wrong.

We will show that the agency made material errors in the Technical and Past Performance evaluations that resulted in downgrading Olympus' evaluation ratings, and upgrading Rowe's ratings. But for these errors, Olympus' higher Technical and Past Performance ratings would have more than offset the three percent difference between Olympus' and Rowe's price proposals in the best value determination.[1]

## ARGUMENT

### I. The Agency's Past Performance Evaluation Was Irrational And Prejudiced Olympus In The Best Value Determination.

#### A. Olympus' Two Past Performance References Gave It Exclusively "Excellent" and "Outstanding" Ratings.

##### 1. Olympus Did Not Receive Any Past Performance Rating Lower Than "Excellent."

[redacted]

[1] Olympus will address the issue of prejudice that the Intervenor raised in the Motion to Dismiss and that DIA raises in the Agency Report in separately identified sections in these Comments.

[2] The Contracting Officer's Statement indicates that "The Government received three (3) Past Performance Questionnaires pertaining to Olympus." AR, Tab 2, p. unnumbered p. 6. The Source Selection Decision also states that the Government received three (3) Past Performance questionnaires for Olympus, and provides ratings and comments from all three. AR, Tag 32, p. 13. However, a January 29, 2007 e-mail message from agency counsel states that "there are only two, not three [Past Performance references for Olympus] as stated in the KO Statement and PNM." "There were actually three, but two of them were duplicates." "The duplicate was the better one, so in the evaluation, Olympus got credit for the better questionnaire twice." Given agency counsel's representations, we assume that the agency received and considered only the two Past Performance references for Olympus that are contained at Tab 29 of the Agency Report.

SEYFARTH SHAW
ATTORNEYS



[redacted]

[redacted]

---

[redacted]

**PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GAO PROTECTIVE ORDER**

SEYFARTH SHAW LLP
ATTORNEYS



[redacted]

2. **The Contracting Officer Has Substantially Misrepresented Olympus' Past Performance Ratings.**

In the Agency Report, the DIA Contracting Officer has misrepresented the record regarding Olympus' Past Performance. For example, the Contracting Officer states as follows:

[redacted]

SEYFARTH ATTORNEYS SHAW LLP



[redacted]

[4] The cases the agency cites to support this assertion are not on point because they involve the Government's evaluation of Technical proposals, not Past Performance proposals. AR, Tab 1, p. 7.

SEYFARTH ATTORNEYS SHAW LLP



[redacted]

2. **The SSA Failed To Consider The Overall Trend Of Positive Performance By Olympus On Its Prior Contracts.**

[redacted]

**PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GAO PROTECTIVE ORDER**

SEYFARTH SHAW LLP
ATTORNEYS



[redacted]

PROTECTED MATERIAL TO BE RELEASED ONLY
IN ACCORDANCE WITH GAO PROTECTIVE ORDER