D. **The Agency's Failure To Properly Evaluate Offerors' Past Performance Prejudiced Olympus.**

The agency made several material mistakes in evaluating Olympus' and Rowe's Past Performance. If the agency had performed a proper Past Performance eva[redacted] Even assuming for the purpose of argument only that Olympus' and Rowe's Technical proposals were equal, and that Rowe's price proposal did not present performance risk,[5] in the best value determination Olympus' [redacted] rating would have offset Olympus' price which was onl[redacted]t higher than Rowe's price.

II. **The SSA Did Not Perform A Proper Cost/Technical Tradeoff When Selecting Rowe For Award.**

A. **DIA Employed A "Technically Acceptable, Low Price" Approach Instead of the Cost/Technical Tradeoff Analysis Specified in the Solicitation.**

As stated in Olympus' initial protest, the solicitation required the agency to perform "a trade-off analysis of non-price factors against price to determine the best value to the Government." AR, Tab 3, p. 40. It is evident from the record that DIA failed to perform this analysis prior to selecting Rowe for award. Once the agency mistakenly concluded that all offerors would receive overall "Excellent" ratings for their Technical proposals, the SSA made the award decision based solely upon Rowe's low price.

The agency devotes only three paragraphs in the Agency Report to discussing the propriety of its trade-off analysis. The agency does not cite to any of the 37 attachments included in the

[5] See, Olympus' Supplemental Protest, pp. 3-13.

Agency Report as support for its assertion that the SSA conducted a proper cost/technical trade-off. Furthermore, the Agency Report does not address in any way Olympus' protest claim that the SSA failed to distinguish between the "Excellent" technical proposals to ensure that it was selecting the proposal that offered the best overall value. Had the SSA attempted to make meaningful distinctions between the merits of the offeror's technical proposals during the final stage of the evaluation process, the SSA would have recognized the clear superiority of Olympus' Technical Proposal over Rowe's Technical Proposal. As a result, in the best value decision the SSA would have determined that Olympus' proposal warranted the slight premium in price.[6]

An award decision is not reasonable where the agency bases it strictly on a mechanical comparison of the offerors' evaluation scores. Universal Building Maintenance, Inc., B-282456, July 15, 1999, 99-2 CPD ¶ 32 at 4; see also FAR §§ 12.602(c), 15.308. In Johnson Controls World Services, Inc.; Meridian Management Corp., B-281287.5, B-281287.6, B-287287.7, 2001 CPD ¶ 3, the protesters argued that the agency had failed to evaluate the relative technical merits of the proposals, and simply awarded the contract to the offeror with the lowest proposed price. Despite that the awardee had received slightly higher technical scores than the protesters (a perfect score of 900 points versus scores of 884 and 878 for Johnson Controls and Meridian respectively), the GAO sustained the protest on the ground that the agency had failed to follow the best value evaluation scheme included in the solicitation:

> The source selection decision document identifies only final point scores and price differences; it does not identify any differences in

[6] As discussed in Olympus' Supplemental Protest, the extent of this price premium is debatable because Rowe failed to include rate increases for the price of the goods and services to be supplied during the option years.

> technical merit. The evaluation record overall simply does not evidence consideration by the agency of differences between the proposals in technical merit...Absent a reasonable evaluation of relative technical merit, the record cannot support an award on other than a lowest price, technically acceptable basis, which is contrary to the terms of the RFP and is improper.

Id. (emphasis added). See also SOS Interpreting, LTD., B-293,026, B-293026.2, B-293026.3, 2005 CPD ¶ 26 ( award decision was unreasonable and inconsistent with the evaluation criteria where the SSA failed to consider the documented superiority of the protester's proposal when making the best value decision).

Similarly, in this case, the Source Selection Decision Document ("SSDD") does not provide any evidence that the SSA considered the differences in technical merit between the proposals when making the award decision. While the SSDD repeated verbatim the strengths and advantages of each proposal that the TEP had identified (see SSDD, pgs. 9-11), the SSA's trade-off analysis failed to discuss why Olympus' proposal, offering "excellent solutions," an "extremely detailed schedule" and "very detailed" plans for performing the contract, was not more valuable to the Government than Rowe's proposal that offered, only a "detailed plan" and "realistic schedule." Id.

Instead, the trade-off analysis was based solely on a mechanical consideration of the offerors' overall ratings and total proposed price:

> In a best value analysis, a comparison between Rowe and Olympus is not difficult. While both offerors received an "Excellent" in their Technical evaluation factor, Olympus received a lower Past Performance rating ([redacted] Additionally, not only does Olympus propose a higher price ($[redacted]ore) than

PROTECTED MATERIAL TO BE RELEASED ONLY
IN ACCORDANCE WITH GAO PROTECTIVE ORDER

> Rowe, but it proposes this higher price while offering to staff [redacted] less employees than Rowe proposes to do the work.[7]

(SSDD, pg. 15). The SSA did not discuss the substantive differences between the proposals, nor did she explain why all of the proposals were entitled to overall "Excellent" ratings under the Technical factor. Thus, the SSA's consideration of the relative technical merit of the proposals was clearly deficient, and thus Olympus' protest must be sustained.

**B. DIA's Failure to Properly Perform A Cost/Technical Tradeoff Prejudiced Olympus.**

As discussed above, the SSA was required to look beyond the overall evaluation ratings of the proposals and examine the proposals' relative technical merits before making a cost/technical trade-off decision. Rowe's assertion in its Motion to Dismiss that the agency was not required to perform this cost/technical trade-off simply because Rowe received high ratings and offered the lowest proposed price is contrary to GAO case law, as discussed above.

If the SSA had performed the required cost/technical trade-off, she would have determined that Olympus' proposal offered significant technical advantages over Rowe's incomplete and incoherent proposal, and that it warranted a three percent price premium. Instead, the SSA performed what was in essence a "technically acceptable, low price" analysis to the prejudice of Olympus whose technical proposal was clearly superior to Rowe's.

[7] Olympus has also challenged, via its Supplemental Protest, DIA's application of an unstated evaluation criteria when it considered the number of employees offered in a proposal as indicating additional technical merit. Olympus will discuss this issue in detail in its Comments on the Supplemental Agency Report.

**III. DIA's Best Value Decision Was Unreasonable Because It Was Based Upon Flawed Evaluations And An Irrational Trade Off.**

**A. The SSA's Best Value Decision Was Fatally Flawed Because It Was Based Upon Irrational Past Performance Evaluations Of Olympus And Rowe.**

In the Agency Report, DIA claims that there is no merit to Olympus' contention that the best value decision is unreasonable because Olympus' allegations are "factually incorrect."[8] AR, Tab 1, p. 10. To the contrary, we have demonstrated above that the record does not support the agency's contention. Specifically, the record reveals that Olympus should have received an [redacted].

The Contracting Officer argues that DIA's best value analysis was proper in view of the cure notice referenced in Wachenhut's Past Performance evaluation of Olympus:

> [redacted] when the awardee offered a superior capability at a lower price.

AR, Tab 2, unnumbered p. 7. Again, the Contracting Officer's statement reveals a misunderstanding of the Past Performance record in this case. [redacted] However, the Contracting Officer, who also served as the

[8] Olympus presents extensive evidence in the record showing that DIA's evaluation of Rowe's incomplete and incoherent Technical Proposal is unreasonable. Supplemental Protest, pp. 3-8.

SSA, unreasonably refers to [redacted] completely ignoring the substance of Olympus' and Rowe's actual Past Performance evaluations.

**B. The Agency's Best Value Decision Was Fatally Flawed Because It Took Account Of An Unstated Evaluation Factor.**

Similarly, the Contracting Officer/SSA mistakenly relies on Rowe's "superior capability" as a discriminator in the best value decision, notwithstanding Rowe's poorer Past Performance evaluation, and incomplete and incoherent Technical Proposal. (See, Supplemental Protest, pp. 3-8). In the Agency Report, DIA notes that [redacted] AR, Tab 1, p. 11. In its Supplemental Protest, Olympus explains in detail the agency's error in using [redacted]" offered as an evaluation factor in this performance-based procurement, because it is an unstated evaluation factor. Supplemental Protest, pp. 14-17. Thus, the use of [redacted] as a discriminator in the best value decision was unreasonable.

**C. The Irrational Best Value Decision Prejudiced Olympus.**

The prejudice Olympus suffered as a consequence of DIA's flawed best value decision is clear: if DIA had performed proper Technical and Past Performance evaluations, Olympus would have received higher scores in both areas than Rowe received. These higher scores would have more than offset the slight difference between Olympus' and Rowe's prices. Therefore, DIA would have selected Olympus as the best value in this procurement.

**CONCLUSION**

For the foregoing reasons, Olympus respectfully requests that the GAO sustain its protest and provide all other appropriate relief.

Respectfully submitted,

SEYFARTH SHAW LLP

Grace Bateman
Amanda Weiner
Counsel for Olympus Building Services, Inc.

cc: LTC. Frank A. March
Kenneth B. Weckstein, Esq.

**PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GAO PROTECTIVE ORDER**

SEYFARTH ATTORNEYS SHAW LLP

815 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006-4004
(202) 463-2400
Fax (202) 828-5393
www.seyfarth.com

# Facsimile Transmission

Date: February 8, 2007

| RECIPIENT | COMPANY | PHONE NO. | FAX NO. |
|---|---|---|---|
| LTC Frank A. March | Defense Intelligence Agency | 703-696-2826 | 703-696-1537 |
| Ken Weckstein | Epstein Becker & Green | 202-861-0900 | 202-861-3560 |

FROM: Grace Bateman

PHONE: (202) 828-5359

RE:

REPLY FAX NO.: (202) 828-5393

File No: 24134.016 **Number of Pages, Including Cover:** 15

- ☐ Hard copy to follow
- ☐ Per your request
- ☐ Please telephone me
- ☒ Hard copy will not follow
- ☐ Please review and revise if necessary

MESSAGE:

THE INFORMATION CONTAINED IN THIS FACSIMILE IS CONFIDENTIAL AND MAY ALSO CONTAIN PRIVILEGED ATTORNEY-CLIENT INFORMATION OR WORK PRODUCT. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THE FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ADDRESS ABOVE VIA THE U.S. POSTAL SERVICE. THANK YOU.

ANY TAX INFORMATION OR WRITTEN TAX ADVICE CONTAINED HEREIN (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED TO BE AND CANNOT BE USED BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON THE TAXPAYER. (THE FOREGOING LEGEND HAS BEEN AFFIXED PURSUANT TO U.S. TREASURY REGULATIONS GOVERNING TAX PRACTICE.)

**'OU DO NOT RECEIVE ALL THE PAGES, PLEASE PHONE (202) 463-2400 AS SOON AS POSSIBLE.**

DC1 30189168.1 / 24134-000016

SEYFARTH ATTORNEYS SHAW LLP

815 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006-4004
202-463-2400
fax 202-828-5393
www.seyfarth.com

3 / D [redacted] PROTEST [redacted]

Writer's direct phone
(202) 828-5359

Writer's e-mail
gbareman@seyfarth.com

**PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GAO PROTECTIVE ORDER**

B-296741-11

2006 DEC 29 PM 1:22

GAO

December 29, 2006

Report due 1.29.07
agy due 1.8

**VIA FACSIMILE 202-512-9749**
**AND U.S. MAIL**

Gary L. Kepplinger, Esq.
General Counsel
Government Accountability Office
441 G Street, NW
Washington, DC 20548

Re: Protest of Olympus Building Services, Inc., DIA Solicitation No. HHM402-05-R-0017 For Janitorial Services.

Dear Mr. Kepplinger:

We represent Olympus Building Services, Inc.,[1] ("Olympus"), an offeror in the above Defense Intelligence Agency,[2] ("DIA" or "agency") procurement for janitorial services at the Defense Intelligence Analysis Center ("DIAC") which is located at Bolling Air Force Base in Washington, D.C. Olympus protests DIA's award of a contract for this requirement to Rowe

[1] Olympus' address is 244 S. Main Street, New Hope, Pennsylvania 18938. Olympus' telephone number is (215) 862-5066 and its facsimile number is (215) 862-7066. The address, telephone and facsimile number of Olympus' counsel are set forth in our letterhead.

[2] DIA's Contracting Officer is Cheong J. Chon. Cheong Chon's mailing address is Virginia Contracting Activity, 200 MacDill Blvd., Building 6000, Bolling Air Force Base, Washington, DC 20340-5100. Cheong Chon's telephone number is 202-231-8416, and the facsimile number is 202-231-2831.

**PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GAO PROTECTIVE ORDER**

DC1 30185903.1

Protected Information To Be Disclosed Only In Accordance With United States Court of Federal Claims Protective Order

BRUSSELS WASHINGTON, D.C. SAN FRANCISCO SACRAMENTO NEW YORK LOS ANGELES HOUSTON CHICAGO BOSTON ATLANTA

SEYFARTH SHAW ATTORNEYS



Contracting Services, Inc. ("Rowe") based upon the agency's determination that Rowe's offer to provide these services for a total price of [redacted] esents the best value to the Government.

The bases for Olympus' protest are:

1. DIA did not properly apply the evaluation factors stated in the solicitation. The solicitation stated that there were two non-price evaluation factors: Technical and Past Performance. However, DIA considered offerors' Past Performance twice, once as a "sub-sub-factor" in the Technical evaluation, and again in the Past Performance evaluation.

2. DIA's Past Performance evaluation of Olympus' proposal was irrational because it was based upon erroneous past performance information and because it is inconsistent with DIA's previous evaluation of the same past performance information.

3. DIA did not perform a proper best value analysis because instead of performing a "cost/price-technical tradeoff" between offerors' proposals as specified in the solicitation, DIA performed a "technically acceptable, low price" analysis when it selected Rowe for award.

4. The agency's best value determination is unreasonable because it is based on flawed Technical and Past Performance evaluations.

This protest is timely filed within five days of December 27, 2006, the date on which DIA provided a debriefing to Olympus in accordance with Federal Acquisition Regulation ("FAR") §15.506(b), following Olympus' timely request for a debriefing. Pursuant to the Competition In Contracting Act ("CICA"), 31 U.S.C. 3553(d), Olympus is entitled to a stay of contract

SEYFARTH SHAW ATTORNEYS



performance because Olympus has filed this protest, and the agency will receive notice of the protest, within five days of the debriefing.

## SUMMARY OF FACTS

**I. DIA Solicited Offers To Provide Janitorial Services At DIAC Facility.**

**A. The Solicitation Described A Best Value Procurement Conducted Via Competitive Negotiation.**

On April 14, 2005, DIA's Virginia Contracting Activity, located at Bolling Air Force Base, issued Solicitation No. HHM402-05-R-0017 for janitorial services at DIAC. This "best value" commercial item procurement was conducted via competitive negotiation. The solicitation sought fixed-price offers for janitorial services for a base year, and four option years.

**B. The Solicitation's Evaluation Plan Identified "Technical" And "Past Performance" As The Two Non-Price Evaluation Factors.**

The Evaluation Plan in the solicitation stated that the Government would make an award to the responsible offeror whose offer, conforming to the solicitation, would be most advantageous to the Government, price and other factors considered. FAR 52.212-2. Further, the Evaluation Plan stated that the two non-price evaluation factors were "Technical" and "Past Performance:"

> The following factors shall be used to evaluate offers: **Technical and Past Performance.**

Solicitation, p. 13. Furthermore, the solicitation directed offerors to divide their proposals into three sections: Section I, "Technical Capability;" Section II, "Relevant Past and Present Performance," and Section III, "Cost/Price." Solicitation, p. 37, Paragraph 6 (Table). The solicitation did not specify that offerors were to include Past Performance information as part of the "Technical Capability" section in the solicitation. To the contrary, the solicitation provided clear notice to offerors that DIA evaluators would consider "Technical" and "Past Performance" as two separate

and distinct evaluation factors, and therefore offerors were to include Past Performance information only in the Past Performance section of their proposals.

The Addendum to the solicitation included a section entitled "Evaluation Criteria" which provided supplemental information on the agency's Evaluation Plan. The section entitled "Criteria For Contract Award" again stated that there were two non-price evaluation factors: Technical and Past Performance. The solicitation provided that of the non-price factors, Technical was more important than Past Performance, and when combined, Technical and Past Performance were more important than Price. Solicitation, p. 40.

The Addendum further provided that offerors' Technical proposals would be evaluated based upon two sub-factors: (1) Understanding and Compliance with Requirements; and (2) Soundness of Approach. Solicitation, pp. 40-41. It also provided that the other non-price factor, Past Performance, would be evaluated on the basis of three sub-factors: (1) Program Management Controls; (2) Past Performance/Relevant Experience; and (3) Key Personnel. Solicitation, p. 41.[3]

**C. The Solicitation Called For A Best Value Trade-Off Between Price And Non-Price Evaluation Factors.**

As provided in FAR §15.101-1, the solicitation stated that "[t]he Government will perform a trade-off analysis of non-price factors against price to determine the best value to the Government." Solicitation, p. 40. The solicitation did not state the relative weights of Technical, Past Performance and Price in the evaluation, however, the Evaluation Plan provided notice that DIA considered non-price factors to be more important than price:

> (c) Relative weight. Non-price factors (Technical and Past Performance), when combined, are more important than price. Of the

[3] The Addendum lists these Past Performance sub-factors under the heading "Management Area." Solicitation, p. 41.

SEYFARTH ATTORNEYS SHAW



> non-price factors, technical is more important than Past Performance. The importance of price in the evaluation for award will increase as the relative differences in non-price factors of offerors decreases.

Solicitation, p. 40, (emphasis added).

## II. Olympus Submitted A Fully-Compliant Offer.

DIA issued the solicitation to 20 contractors, and received nine proposals in response. DIA then established a competitive range consisting of five offerors, including Olympus and Rowe. Olympus submitted a proposal that fully complied with the minimum mandatory requirements of DIA solicitation, at a total price of [redacted]

## III. DIA Evaluated Offers And Selected Rowe For Contract Award.

### A. DIA Made, And Subsequently Canceled, Previous Awards.

DIA received nine proposals in response to the solicitation. DIA established a competitive range, and ultimately selected Rowe for award. Prior to selecting Rowe, DIA had selected Rowe and NOSLOT Cleaning Services ("NOSLOT"), for award. However, DIA cancelled these awards in response to GAO bid protests challenging them. Specifically, on October 13, 2006, Olympus protested the award to NOSLOT. In response to Olympus' protest, DIA took corrective action by canceling the award to NOSLOT and notifying offerors that DIA would make a new contract award based upon the offerors' initial technical, past performance, and price proposals. Olympus Building Services, Inc.; B-296741.10 (November 13, 2006).

### B. DIA Gave Olympus "Excellent" Ratings For Both Technical And Past Performance During The Initial Evaluation Of Proposals.

Prior to taking corrective action in response to Olympus' protest, DIA provided Olympus a written debriefing that summarized its analysis of Olympus' proposal. DIA's October 11, 2006 debriefing stated: "The Government found Olympus' technical proposal and past performance to be

SEYFARTH ATTORNEYS SHAW



"EXCELLENT." (Debriefing I, Attachment A.) The debriefing stated that Olympus' technical proposal had six specific Advantages, and no Disadvantages.[4] The six specific Advantages focused on aspects of Olympus' technical proposal, including scheduling, planning, employees' security clearances, orientation and recruitment, organization, and security awareness training. Attachment A, pp. 1-2.

During this initial evaluation, DIA properly excluded Past Performance from among the factors it considered in evaluating Olympus' technical proposal, because Past Performance was a separate non-price evaluation factor. The debriefing merely noted that DIA had given Olympus an "Excellent" Past Performance rating, without commenting on the details of this evaluation. Attachment A, p. 1.

**C. DIA Selected Rowe For Award; Olympus Timely Requested A Debriefing.**

By letter dated December 19, 2006, DIA informed the offerors within the competitive range that it had selected Rowe for contract award. (Attachment B.) DIA noted that there were five offerors within the competitive range, and that Rowe's proposal was determined to be the best value to the Government, price and other factors considered. Olympus timely requested a debriefing.

## IV. DIA Provided A Second Debriefing To Olympus.

**A. Without Explanation, The Second Debriefing Stated That Olympus' Past Performance Rating Was Downgraded From "Excellent" To "Good."**

DIA provided a second debriefing to Olympus by letter dated December 27, 2006. (Debriefing II, Attachment C.) In the December 27, 2006 debriefing document, DIA indicated that it had given Olympus an "Excellent" rating for Technical, but that it had downgraded Olympus'

[4] DIA debriefing mistakenly listed as a disadvantage of Olympus' technical proposal that: "The offered price is the third highest price offered." Price is clearly not part of the technical proposal.

SEYFARTH ATTORNEYS SHAW



Past Performance rating [redacted] DIA further indicated that it gave Rowe's offer "Excellent" ratings for Technical and Past Performance, and had determined Rowe's offer, at a total price of $19,217.512.35, to represent the "best value" to the Government, price and other factors considered. (Attachment A.) Rowe's proposed price is [redacted] lower than Olympus' offered price of [redacted]

The debriefing document further indicated that the relative ranking of the offerors was as follows:

> All four (4) final offerors received "EXCELLENT" ratings on technical proposals. Three of them received "EXCELLENT" ratings on Past Performance Questionnaires and one received [sic] "GOOD" rating.....The Government found Olympus' Technical proposal to be "EXCELLENT" and the Past Performance" [redacted]

Attachment C. On information and belief, based upon this ranking, Olympus is next in line for award after Rowe.

### B. The Second Debriefing Revealed That DIA Mistakenly Considered Past Performance In Both The Technical And Past Performance Evaluations.

The debriefing also revealed that instead of following the Evaluation Plan stated in the solicitation which identified Technical and Past Performance as the two non-price evaluation factors, DIA had considered Past Performance twice: once as a separate non-price evaluation factor, and a second time as a "sub-sub-factor" in the Technical evaluation. Without explanation or any citation to the solicitation, DIA stated that the Technical Evaluation Panel ("TEP") had applied the following evaluation criteria:

> <u>Consistent with the RFP</u>, the Past Performance/Relevant Experience sub-sub-factor was evaluated as 16.66% of the overall Technical evaluation factor. In evaluating the Past Performance/Relevant Experience sub-sub-factor, the TEP evaluated the quality and extent of [sic] offeror's experience deemed relevant to

SEYFARTH SHAW ATTORNEYS



> the requirements of the Solicitation. It should be noted that the TEP has never reviewed the offeror's past performance questionnaires in conducting this evaluation. The TEP's Past Performance/Relevant Experience evaluation was limited to only the information presented by offerors in their proposals.

Attachment C, p. 1 (emphasis added).

**C. The Second Debriefing Revealed That DIA Had Relied Upon Mistaken Information In Giving [redacted]r Past Performance.**

More surprisingly, the second debriefing revealed that notwithstanding that DIA gave Olympus an "Excellent" rating for past performance as part of the Technical evaluation, "when combined with the past performance questionnaires, Olympus' overall Past Performance evaluation [redacted] Attachment C, p.2. The second debriefing stated further that DIA had given Olympus a "Good" rating for Past Performance because one of Olympus' customers had indicated [redacted] Attachment C, p. 2. DIA did not explain Olympus' receipt [redacted] Past Performance during the second evaluation of proposals, when DIA reviewed the very same past performance information that had previously led to Olympus receiving a [redacted] Past Performance rating.

**D. The Second Debriefing Also Revealed That DIA Had Not Made A Proper Cost/Price-Technical Tradeoff Determination, Instead Selecting The Low-Price Technically Acceptable Offer.**

The second debriefing further revealed that DIA had not performed a proper cost/price-technical tradeoff as provided in the Evaluation Plan. Instead, the debriefing indicated that DIA had given Olympus, along with three other offerors, an "Excellent" rating for Technical, but it did not make a qualitative comparison of these "Excellent" Technical ratings. It appears that DIA simply determined that all four offerors' proposals were "comparable," and then based the award decision solely on price. Specifically, DIA noted that after determining that all four offerors were deemed to

SEYFARTH SHAW ATTORNEYS



be essentially equal based upon their "Excellent" Technical proposals, DIA selected Rowe for award because Rowe was "a comparable offeror with a lower proposed price." This approach is contrary to the cost/price-technical tradeoff approach to proposal evaluation set forth in the solicitation.

## LEGAL ARGUMENT

### I. DIA Did Not Properly Apply The Evaluation Criteria In The Solicitation When It Evaluated Offerors' Proposals.

#### A. GAO Will Examine The Agency's Evaluation Of Proposals To Confirm That It Is Reasonable And In Accordance With The Evaluation Criteria In The Solicitation.

In reviewing bid protests, GAO "will not reevaluate the technical proposals, but instead will examine the agency's evaluation to ensure that it was reasonable and in accordance with the RFP evaluation criteria." John W. Gracey, B-228740, 88-1 CPD ¶ 199. It is well established that the evaluation of technical proposals is wholly within the discretion of the contracting officer. Rainbow Technology, Inc., B-232589.2, 89-1 CPD ¶ 66; Abt Associates Inc., B-237060.2, 90-1 CPD ¶ 223. The protester's mere disagreement with the agency's judgment does not establish that an evaluation was unreasonable. Hanford Environmental Health Foundation, B-292858.2, B- 292858.5, 2004 CPD ¶ 164 at 4. However, the Government's solicitation documents, not internal evaluation materials, form the compact between the agency and offerors about how proposals will be evaluated. Lear Siegler Servs., Inc., B-280834, B-280834.2, 98-2 CPD, ¶136 at 6; Loral Aeronutronic, B-259857.2, B-259858.2, 95-2 CPD, ¶ 213 at 9.

SEYFARTH ATTORNEYS SHAW



**B. The Evaluation Of Offers Was Not Reasonable Because DIA Did Not Follow The Evaluation Plan Stated In The Solicitation.**

**1. The Evaluation Plan Expressly Stated Two Distinct Non-Price Evaluation Factors: Technical And Past Performance.**

The Evaluation Plan in the solicitation provided clear notice to offerors that there were two separate and distinct non-price evaluation factors, Technical and Past Performance, and that the agency considered offerors' technical capability and its past performance experience to be more important than price in this procurement. However, when DIA evaluated offers, it did not apply the Evaluation Plan stated in the solicitation. Instead, DIA considered Past Performance twice; once as a sub-sub-factor in the Technical evaluation, and a second time under the separate Past Performance evaluation factor. This evaluation scheme was contrary to the solicitation's stated direction for offerors to describe their Technical Capability and their Relevant Past and Present Performance in two separate sections of their proposals. Solicitation, Paragraph 6, p. 37.

DIA's explanation for its deviation from the evaluation plan stated in the solicitation is wholly without merit. DIA states that "the TEP evaluated the quality and extent of offeror's experience deemed relevant to the requirements of the Solicitation." Attachment C, p. 1. However, the solicitation does did not require offerors to list or explain "the quantity and extent" of their experience as an element in their Technical proposals. The solicitation merely required offerors to describe in their Technical proposals how they would meet the Contract Objectives listed on pages 7 and 8 of the solicitation by providing personnel, materials, and organizational processes as specified on page 6 of the solicitation.



**PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GAO PROTECTIVE ORDER**

2. **DIA's Improper Application Of The Evaluation Criteria Prejudiced Olympus.**

DIA's failure to provide notice in the solicitation that it would evaluate past performance as part of the Technical evaluation prejudiced Olympus, notwithstanding that DIA gave Olympus an [redacted] Technical factor for its past performance.

If Olympus had known that DIA was going to consider its past performance as part of the Technical evaluation, Olympus would have included detailed information on its past performance record that would have enabled DIA to recognize Olympus' past performance as a specific Advantage. This would have increased the number of Advantages identified in Olympus' Technical proposal as compared with the Advantages received by other offerors. Since Technical and Past Performance were more important than price, the addition of another Advantage to Olympus' Technical rating would have improved Olympus' relative position in DIA's technical/price best value trade-off.

II. **DIA's Past Performance Evaluation Of Olympus' Proposal Was Irrational.**

A. **DIA Did Not Provide Any Explanation For Downgrading Olympus' Past Performance Rating During The Second Evaluation Of Proposals.**

In DIA's second debriefing letter, it informed Olympus for the first time that the agency had concerns about Olympus' past performance history as the result of a past performance questionnaire response that stated that Olympus had received a cure notice for unsatisfactory performance. The contracting officer stated that the evaluators had applied this information to arrive at [redacted] rating for Olympus under the Past Performance evaluation factor. According to DIA,

SEYFARTH ATTORNEYS SHAW



Olympus' past performance rating was therefore less favorable than the "Excellent" rating for past performance received by the awardee.

DIA's decision to rate Olympus [redacted] Past Performance factor during the second evaluation of proposals is curious because: (1) the agency had reviewed the very same past performance information about Olympus during the second evaluation as it had during the first evaluation, but the rating Olympus received after the second evaluation was lower; and (2) contrary to the past performance questionnaire response quoted in the second debriefing letter, Olympus has [redacted] See Declaration of Susan Beal, Olympus Vice President, Attachment D. The debriefing letter completely failed to justify, or even address, these issues; it merely listed Olympus' past performance rating [redacted] as a proposal weakness.

The GAO has repeatedly stated that although the evaluation of an offeror's past performance is a matter within the agency's discretion, it will question the agency's past performance conclusions "where they are not reasonably based or undocumented." Green Valley Trans., Inc., B-285283, 2000 CPD ¶ 133 (finding the agency's evaluation of past performance unreasonable). In this case, DIA's evaluation of Olympus' past performance was clearly unreasonable because the agency, by its own admission, incorporated inaccurate information about Olympus' past performance into the evaluation process. As Susan Beal's Declaration clearly indicates, Olympus [redacted] The agency's use of this mistaken information to justify downgrading Olympus' rating under the Past Performance factor [redacted] (a conclusion that was not reached after an examination of the same information during the first round

SEYFARTH ATTORNEYS SHAW



of proposal evaluations), clearly prejudiced Olympus in this procurement. Therefore, Olympus' protest should be sustained on this basis alone.

**B. DIA Failed To Provide Olympus The Opportunity To Clarify The Allegedly Poor Past Performance Information Included In The Questionnaire Response.**

[redacted] as alleged in DIA's second debriefing letter, DIA should have provided Olympus the opportunity to respond to the poor past performance information included in one of the questionnaire responses. See FAR §15.306(a)(2) (stating that when award is to be made without conducting discussions, offerors can be given the opportunity to clarify adverse past performance information to which the offeror has not previously had an opportunity to respond). While the GAO has stated that this FAR provision does not *require* an agency to communicate with an offeror concerning adverse past performance information, it will review an agency's exercise of discretion to ensure that it was reasonable based on the particular circumstances of the procurement:

> With regard specifically to clarifications concerning adverse past performance information to which the vendor has not previously had an opportunity to respond, we think that for the exercise of discretion to be reasonable, the agency must give the offeror an opportunity to respond where there clearly is a reason to question the validity of the past performance information.

United Coatings, B-291978.2, 2003 CPD ¶ 146 (emphasis added).

In this case, DIA clearly should have questioned the validity of the past performance information cited in the second debriefing letter, because this information was totally inaccurate. As Olympus' Vice President has affirmed in her attached declaration, [redacted] In light of the fact that Olympus had received an "Excellent" rating under the Past Performance factor during the initial evaluation of proposals, and the fact that

it received an "Excellent" past performance rating as part of the Technical factor evaluation (whether or not it was proper for the agency to do so), when the agency received the information about Olympus' alleged poor past performance, it should have raised this issue with Olympus as FAR 15.306(a)(2) provides.

**III. DIA Did Not Perform A Proper Cost/Price-Technical Tradeoff When It Selected Rowe For Award.**

**A. DIA Performed a "Technically Acceptable, Low Price" Analysis, Instead Of The "Cost/Technical Tradeoff" Analysis Specified In The Solicitation.**

The solicitation also provides clear notice to offerors that the "Government will perform a trade-off analysis of non-price factors against price to determine the best value to the Government." Solicitation, p. 40. This analysis must be performed in accordance with FAR 15.101-1:

> (b) When using a tradeoff process, the following apply:
>
> (1) All evaluation factors and significant subfactors that will affect contract award and their relative importance shall be clearly stated in the solicitation; and
>
> (2) The solicitation shall state whether all evaluation factors other than cost or price, when combined, are significantly more important than, approximately equal to, or significantly less important than cost or price.
>
> (c) <u>This process permits tradeoffs among cost or price and non-cost factors and allows the Government to accept other than the lowest priced proposal. The perceived benefits of the higher priced proposal shall merit the additional cost, and the rationale for tradeoffs must be documents in the file in accordance with 15.406</u>.

<u>Id.</u> (emphasis added). Thus, Olympus, and the other offerors, reasonably expected DIA to perform such a tradeoff analysis.

DIA did not perform a proper tradeoff analysis. It is evident from the record that DIA actually performed a "lowest price technically acceptable" analysis, as outlined in FAR 15.101-2.

SEYFARTH SHAW ATTORNEYS



When the Government intends to perform this type of evaluation, however, it must provide offerors notice of this planned evaluation scheme in the solicitation:

> (b) When using the lowest price technically acceptable process, the following apply:
>
> (1) The evaluation factors and significant subfactors that establish the requirements of acceptability shall be set forth in the solicitation. Solicitations shall specify that award will be made on the basis of lowest evaluated price or proposal meeting or exceeding the acceptability standards for non-cost factors.

Id. (emphasis added).

The first debriefing revealed that DIA had determined that the technical proposals of two or more of the offerors in the competitive range were "comparable," i.e., they were both technically acceptable. Attachment A, pp. 1-2. DIA then proceeded to make an award decision based upon low price. DIA appears to have conducted this same "technically acceptable/low price" analysis in making the latest award to Rowe. The second debriefing states that "[a]ll four (4) final offerors received "EXCELLENT" ratings on technical proposal. Attachment C, p. 1.

It is unusual for four out of five offerors in a procurement to all receive "Excellent" ratings for their Technical proposals. Specifically, FAR 15.305(a)(3) provides that when, as in this procurement, tradeoffs are performed, the agency should make an "assessment of each offeror's ability to accomplish the technical requirements...and a summary matrix or quantitative ranking, along with appropriate supporting narrative, of each technical proposal using the evaluation factors." Thus, DIA should have provided such a detailed narrative of each offeror's abilities, and its failure to do so indicates that no such evaluation was actually performed.

Instead, on information and belief, DIA performed a cursory review of each offeror's proposal and did not discriminate among them, rating all four of them "Excellent." DIA then

proceeded to make an award decision based solely on price. DIA is not prohibited from conducting such an evaluation, however, it cannot do so unless it provides notice in the solicitation to all offerors that it intends to perform a "technically acceptable, low price" evaluation to allow offerors to draft their proposals accordingly. DIA failed to do this.

**B. DIA's Failure To Perform A Proper Best Value Analysis Prejudiced Olympus.**

DIA's decision to evaluate offers based upon a "technically acceptable, low price" approach instead of the "cost/price-technical tradeoff" approach stated in the solicitation prejudiced Olympus because, in view of the solicitation's statement that non-price factors were more important than price, Olympus reasonably assumed that DIA would trade-off Olympus' Excellent Technical and Past Performance compared with those of other offerors in these areas, against price in making the award decision. Instead, DIA considered low price to be the most important evaluation factor.

**IV. DIA's Best Value Determination Is Unreasonable Because It Was Based Upon The Flawed Technical And Past Performance Evaluations And Upon An Irrational Cost/Price-Technical Tradeoff.**

**A. A Best Value Determination Is Unreasonable If It Is Based On Flawed Technical And Past Performance Evaluations.**

FAR §15.302 provides that "[t]he objective of source selection is to select the proposal that represents the best value." This objective cannot be achieved when the agency's decision is premised on defective technical, performance risk, or cost/price evaluations.

Indeed, the Comptroller General has held best value analyses to be irrational when these analyses have been based on faulty cost or technical evaluations. See, e.g. Gemmo Impianti SpA, B-290427, 2002 CPD ¶ 146 (Navy's source selection decision was unreasonable when the Navy's evaluation supporting the best value decision contained material defects under two of the three technical factors, and the tradeoff analysis was based on an erroneous assumption about relative

price difference"); Lockheed, IMS, B-248686, 92-2 CPD ¶ 180 (sustained protest on grounds of inadequate best value analysis noting that "HHS' failure to fully evaluate proposed costs makes the validity of the cost/technical tradeoff questionable"); Lockheed Aeronautical Systems Co., B-252235.2, 93-2 CPD ¶ 80 (improper life cycle cost (LCC) evaluation rendered cost/technical tradeoff flawed, even though cost was least significant evaluation factor); Bendix Oceanics, Inc., B-247225.3, 92-2 CPD ¶ 54 (improper evaluation of technical proposals requires Navy to conduct new cost/technical tradeoff based on new technical evaluation); SeaSpace, B-241564, 91-1 CPD ¶ 179 (protest sustained where the agency based its cost/technical tradeoff on flawed technical evaluations).

**B. DIA Conducted Improper Technical And Past Performance Evaluations.**

Assuming, for the purpose of argument only, that DIA performed a proper cost/price-technical tradeoff in determining that Rowe's offer represented the best value to the Government, the resultant best value decision still would be irrational because it was not based upon reasonable Technical and Past performance evaluations. As noted above, DIA improperly considered past performance information when performing the Technical factor evaluations, and improperly concluded that Olympus' Past Performance merited a [redacted] based upon mistaken information regarding [redacted] In accordance with the GAO case law detailed above, these erroneous Technical and Past Performance evaluations cannot form the foundation for a proper best value decision because these Technical and Past Performance evaluations were in themselves unreasonable.