## CONCLUSION

Based on the foregoing, we request that the Government Accountability Office ("GAO") sustain Olympus' protest because DIA's contract award to Rowe is improper and in violation of law. Accordingly, Olympus respectfully requests the following relief:

1. That the Comptroller General stay Rowe's performance of the subject contract pending the resolution of this protest, pursuant to the Competition In Contracting Act ("CICA"), 31 U.S.C. 3553(d).

2. That the Comptroller General issue a ruling sustaining this protest;

3. That the Comptroller General recommend that the agency terminate Rowe's contract, and award a contract to Olympus as representing the best value to the Government.

4. That the Comptroller General declare that Olympus is entitled to its reasonable cost of filing and pursuing this protest, including attorneys' fees, and proposal preparation costs; and

SEYFARTH ATTORNEYS SHAW



5. That the Comptroller General make such other recommendations as necessary to promote compliance and any revisions or amendments to the same.

Olympus reserves the right to request a hearing in this protest.

Pursuant to 4 C.F.R. § 21.2(d)(2) and 21.3(c), Olympus requests DIA to produce the following documents, whether or not DIA intends to include them with the Agency Report. In addition to documents and copies of documents, this request includes electronic documents or communications (E-mail), whether or not previously printed in hard copy. All of the documents requested below are relevant to this protest.

1. The contract awarded to Rowe in this procurement.

2. The complete proposals, and all revisions or amendments thereto, submitted by the offerors in this procurement.

3. DIA's Source Selection Plan and/or Acquisition Plan, required in FAR § 15.303(b)(2), for this acquisition, and all amendments thereto.

4. DIA's Source Selection Decision for this acquisition, as required by FAR § 15.308, and all related drafts of the Source Selection Decision.

5. All documents that DIA reviewed or considered in making its decision to award a contract to Rowe.

6. All documents prepared by DIA evaluators in performing analysis or review of the proposals for the purpose of selecting the best value proposal for contract award.

7. All documents reflecting communications between any other person or entity within DIA or outside that agency relating to the selection of the best value proposal for contract award.

SEYFARTH ATTORNEYS SHAW



8. All documents related to DIA's conduct of discussions with offerors from receipt of initial proposals until the date of contract award.

9. All documents reflecting or relating to DIA's evaluation of each response to the discussions from receipt of initial proposals until the date of contract award.

10. All documents identifying DIA's individual evaluators who evaluated each element in factor in the proposals.

11. All documents relating to or explaining any changes in the composition of DIA's evaluation team.

12. All documents relating to or explaining DIA's evaluation of technical proposals.

13. All documents relating to or explaining DIA's evaluation of offerors past performance.

14. All documents relating to DIA's evaluation of the offerors' price proposals.

15. All notes or evaluation forms of individual evaluators who participated in the evaluation of offerors' technical and price proposals and their past performance.

16. All documents reflecting or relating to DIA's explanation of the weights to be applied to the evaluation factors in the Solicitation.

17. All instructions provided to the members of DIA's evaluation team related to performing the evaluation of proposals in the mailing systems and services procurement.

SEYFARTH SHAW ATTORNEYS



18. All documents relating to the debriefings of offerors following DIA's selection of Rowe for award.. These documents all relate to the counts set forth in Olympus' protest.

Sincerely yours,

SEYFARTH SHAW LLP

Grace Bateman
Amanda Weiner
Counsel for Olympus Building Services, Inc.

Encs.

cc: C. Chon, Contracting Officer (via facsimile and first class mail)
A. Hipple (via first class mail)

# ATTACHMENT A

**VIRGINIA CONTRACTING ACTIVITY**
**200 MACDILL BLVD., BLDG 6000**
**BOLLING AIR FORCE BASE**
**WASHINGTON, D.C. 20340-5100**

U-0978/AE2A

OCT 11 2006

Olympus Building Services, Inc.
244 S. Main Street
New Hope, PA 18938

RE: DIA Janitorial Services Post-Award debriefing

Dear Ms. Beal:

In response to your faxed letter dated 15 September 2006, the Government provides a written debriefing in accordance with the FAR 15.506(b).

The award is made based on the solicitation announcement that the Government sought the best value reserved the right to award to other than the lowest offeror, and that an award could be made without discussions or negotiations with offerors. The Government found that Olympus' technical proposal and past performance to be "EXCELLENT." However, However, the proposed cost was not as advantageous as proposed by other comparable offerors.

SELECTION CRITERIA: Each company was evaluated using the same Technical Evaluation Sheets provided by the Contracting Office. The five sub-sub-factors of the Technical evaluation factor were: Understanding and Compliance (25%); Soundness of Approach (25%); Program Management Controls (16.66%); Past/Performance/Relevant Experience (16.66%), and Key Personnal (16.66%). Each company was rated by each member of the panel and a consensus report was produced reflecting the Technical Evaluation Panel's consensus evaluation.

As the new Source Selection Authority for this procurement, I have reviewed the Technical Evaluation Panel's (TEP's) technical evaluations, and I concur with the TEP's evaluation. The following assessments concerning your proposal were found by me.

**Advantages:**

[redacted]

[redacted]

**Disadvantages:**

- The offered price is the third highest priced offer.

**Basis For Award:**

This procurement utilizes the best value evaluation criteria identified in the solicitation. In accordance with the RFP, non-price factors (Technical and Past Performance), when combined, were more important than Price. Of the non-price factors, Technical is more important than Past Performance. Award will be made to the responsible offeror whose offer, conforming to the solicitation, is determined to be the best overall value to the Government, price and other factors considered. Based on those evaluation factors, NOSLOT, a comparable offeror with a lower proposed price, was awarded the contract.

If you require additional questions, please call the undersigned at (202) 231-8416.

Sincerely,

CHEONG CHON
Contracting Officer

# ATTACHMENT B

VIRGINIA CONTRACTING ACTIVITY
200 MACDILL BLVD., BLDG 6000
BOLLING AIR FORCE BASE
WASHINGTON, D.C. 20340-5100

DEC 19 2006

U-1084/AE-2A2

Mr. Anthony C. [illegible], President
[illegible] Services, Inc.
[illegible]
[illegible] 18938

Dear Mr. [illegible]:

Your firm responded to this Agency's Request for Proposal (RFP) HHM402-05-R-0017 for the Janitorial/Custodial Services for the Defense Intelligence Agency, Bolling AFB, Washington, DC. The RFP was issued to twenty (20) contractors and only nine (9) [illegible] were received. A competitive range was established and, as a result, there were [illegible] that qualified within the competitive range.

[illegible] consideration by the new Source Selection Authority. The following offeror's proposal was selected as being the best value to the Government, price and other [illegible] considered:

[illegible] Services, Inc.
[illegible] Suite C1
[illegible], LA 70471-3609

[illegible] including the base period and all options — $19,217,512.36

If you desire a debriefing, please submit your request via fax to Cheong Chon at (202) 231-2831 within three (3) calendar days from receipt of this letter. The government will [illegible] a written debriefing.

Your proposal indicated that considerable effort was involved in its preparation and DIA appreciates your effort.

Sincerely,

CHEONG J. CHON
Contracting Officer

994

# ATTACHMENT C

**VIRGINIA CONTRACTING ACTIVITY**
**200 MACDILL BLVD., BLDG 6000**
**BOLLING AIR FORCE BASE**
**WASHINGTON, D.C. 20340-5100**

U-1078/AE2A

DEC 2 7 2006

Olympus Building Services, Inc.
244 S. Main Street
New Hope, PA 18938

RE: DIA Janitorial Services Post-Award debriefing

Dear Ms. Beal:

In response to your faxed letter dated 15 December 2006, the Government provides a written debriefing in accordance with the FAR 15.506(b).

The basis for award in the solicitation stated that Award will be made to the responsible offeror whose offer, conforming to the solicitation, is determined to be the best overall value to the Government, price and other factors considered. It also stated that the importance of price in the evaluation for award will increase as the relative differences in non-price factors of offerors decreases. All four (4) final offerors received "EXCELLENT" ratings on technical proposals. [redacted] Award is made based on the solicitation announcement that the Government sought the best value and reserved the right to award to other than the lowest offeror, and that an award could be made without discussions or negotiations with offerors. The Government found Olympus' Technical proposal to be "EXCELLENT" and the [redacted] Moreover, even if Olympus' overall Past Performance was deemed "EXCELLENT," Olympus' proposed cost was not as advantageous as that proposed by other comparable offerors.

The Government evaluated the proposals using the adjectival rating system provided in the solicitation. It should be noted that the RFP lists Past Performance as both an evaluation factor and also as a sub-sub-factor of the Technical evaluation factor. Consistent with the RFP, the Past Performance/Relevant Experience sub-sub-factor was evaluated as 16.66% of the overall Technical evaluation factor. In evaluating the Past Performance/Relevant Experience sub-sub-factor, the TEP evaluated the quality and extent of offeror's experience deemed relevant to the requirements of the Solicitation. It should be noted that the TEP has never reviewed the offeror's past performance questionnaires in conducting its evaluation. The TEP's Past Performance/Relevant Experience evaluation was limited to only the information presented by offerors' in their proposals.

Once it was used to obtain the overall Technical evaluation, the Past Performance/Relevant Experience rating of the offerors' technical proposals was combined with the evaluation of the past performance questionnaires received from the offerors' references to derive an overall rating for the Past Performance evaluation factor.

As the new Source Selection Authority for this procurement, I have reviewed the Technical Evaluation Panel's (TEP's) technical evaluations, and I concur with the TEP's evaluation. Olympus did receive an "Excellent" in Past Performance/Relevant Experience portion of the Technical evaluation. However, when combined with the past performance questionnaires, Olympus' overall Past Performance [redacted]

The following assessments concerning your proposal were found by me.

**Weaknesses:**

[redacted]

**Basis For Award:**

The Award is made based on evaluation factors stated in the solicitation that the importance of price in the evaluation for award will increase as the relative differences in non-price factors of offerors decreases. ROWE, a comparable offeror with a lower proposed price, was awarded the contract.

If you require additional questions, please call the undersigned at (202) 231-8416.

Sincerely,

CHEONG CHON
Contracting Officer

**ATTACHMENT D**

**Declaration of Susan Beal**

Now comes Susan Beal, who hereby declares as follows:

1. My name is Susan Beal. I am Vice President of Olympus Building Services, Inc., ("Olympus") which is located at 244 S. Main Street, New Hope, Pennsylvania 18938. I have been employed at Olympus since 2000.

2. In my capacity as Vice President, I am familiar with all of Olympus' contracting activities, including its contracts for the provision of janitorial services to Federal Government and private customers.

3. I am aware that the Defense Intelligence Agency ("DIA") has issued Solicitation No. HHM402-05-R-0017 for janitorial services to be provided at the Defense Intelligence Analysis center at Bolling Air Force Base. I am also familiar with the details of the proposal that Olympus submitted in response to the DIA solicitation.

4. I understand that DIA has selected another vendor for award of the above contract. In connection with this contract award, I have reviewed a letter dated December 27, 2006 from DIA providing a debriefing to Olympus of DIA's evaluation of Olympus' proposal in the subject procurement.

5. Specifically, I am aware that, as set forth in the December 27, 2006 debriefing [redacted]

12/28/06
Date

Susan Beal
Vice President
Olympus Building Services, Inc.

DC1 30186052.1

EPSTEIN BECKER & GREEN, P.C.
ATTORNEYS AT LAW
1227 25TH STREET, NW, SUITE 700
WASHINGTON, DC 20037-1175
202.861.0900
FAX: 202.296.2882
EBGLAW.COM

KENNETH B. WECKSTEIN
TEL: 202.861.0900
FAX: 202.861.3560
KWECKSTEIN@EBGLAW.COM

January 10, 2007

**VIA TELEFAX**

Mary G. Curcio, Esquire
U.S. Government Accountability Office
441 G Street, N.W.
Washington, D.C. 20548

Re: Protest of Olympus Building Services, Inc.
B-296741.11

Dear Ms. Curcio:

Enclosed please find Applications for Access to Materials Under Protective Order for Kenneth B. Weckstein and Pamela Reynolds in the referenced protest.

Very truly yours,

Kenneth B. Weckstein

KBW:cmj

Enclosures

cc: Grace Bateman, Esq.
Frank March, Esq.

GAO
Accountability * Integrity * Reliability

United States Government Accountability Office
Washington, DC 20548

**UNITED STATES GOVERNMENT ACCOUNTABILITY OFFICE**
**OFFICE OF THE GENERAL COUNSEL**
**PROCUREMENT LAW DIVISION**
**Washington, D.C. 20548**

**Matter of:** **Olympus Building Services, Inc.**

**File:** **B-296741.11**

**Agency:** **Defense Intelligence Agency**

## APPLICATION FOR ACCESS TO MATERIAL UNDER A PROTECTIVE ORDER FOR OUTSIDE COUNSEL

1. I, Kenneth B. Weckstein, hereby apply for access to protected material covered by the protective order issued in connection with this protest.

2. I am an attorney with the law firm of Epstein Becker & Green, P.C. which has been retained to represent Rowe Contracting Services, Inc., a party to this protest..

3. I am a member of the bar(s) of District of Columbia, Maryland, Virginia and New York; my bar membership number(s) is/are 239301 (DC); 06924 (MD); 16176 (VA).

4. My professional relationship with the party I represent in this protest and its personnel is strictly one of legal counsel. I am not involved in competitive decisionmaking as discussed in U.S. Steel Corp. v. United States, 730 F.2d 1465 (Fed. Cir. 1984), for or on behalf of the party I represent, any entity that is an interested party to this protest, or any other firm that might gain a competitive advantage from access to the material disclosed under the protective order. I do not provide advice or participate in any decisions of such parties in matters involving similar or corresponding information about a competitor. This means that I do not, for example, provide advice concerning or participate in decisions about marketing or advertising strategies, product research and development, product design or competitive structuring and composition of bids, offers, or proposals with respect to which the use of protected material could provide a competitive advantage.

5. I identify here (by writing "none" or listing names and relevant circumstances) those attorneys in my firm who, to the best of my knowledge, cannot make the representations set forth in the preceding paragraph:

NONE

(Attach additional pages for this and the following questions, if needed.)

6. I identify here (by writing "none" or listing names, position, and responsibilities) any member of my immediate family who is an officer or holds a management position with an interested party in the protest or with any other firm that might gain a competitive advantage from access to the material disclosed under the protective order:

NONE

7. I identify here (by writing "none" or identifying the name of the forum, case number, date, and circumstances) instances within the last 2 years in which I have been denied admission to a protective order, or had admission revoked, or been found to have violated a protective order issued by GAO or by an administrative or judicial tribunal:

NONE

8. I identify here (by writing "none" or listing the protest name and file number) any pending application for admission to a protective order issued by GAO:

NONE

9. I have read the protective order issued by GAO in this protest, and I will comply in all respects with that order and will abide by its terms and conditions in handling any protected material filed or produced in connection with the protest.

10. I acknowledge that any violation of the terms of the protective order may result in the imposition of such sanctions as GAO deems appropriate, including but not limited to referral of the violation to appropriate bar associations or other disciplinary bodies, and restricting my practice before GAO. I further acknowledge that a party whose protected information is improperly disclosed shall be entitled to all remedies under law or equity, including breach of contract.

CERTIFICATION

By my signature, I certify that, to the best of my knowledge, the representations set forth above (including any attached statements) are true and correct. I recognize that knowingly making a false statement on this application could render me liable to a $10,000 fine or 5 years imprisonment, or both, pursuant to 18 U.S.C. § 1001. I identify below the mailing address and facsimile number at which I may receive protected material in accordance with the terms of the protective order.

Signature

6/10/07
Date Executed

Kenneth B. Weckstein, Attorney
Typed Name and Title

Epstein Becker & Green, P.C.
1227 25th Street, N.W., Suite 500
Washington, D.C. 20037
Mailing Address

(202) 861-1860
Direct Dial Telephone Number

(202) 822-4657
Facsimile Number

kweckstein@ebglaw.com
E-mail Address

GAO
Accountability * Integrity * Reliability

United States Government Accountability Office
Washington, DC 20548

**UNITED STATES GOVERNMENT ACCOUNTABILITY OFFICE**
**OFFICE OF THE GENERAL COUNSEL**
**PROCUREMENT LAW DIVISION**
**Washington, D.C. 20548**

**Matter of:** **Olympus Building Services, Inc.**

**File:** **B-296741.11**

**Agency:** **Defense Intelligence Agency**

## APPLICATION FOR ACCESS TO MATERIAL UNDER A PROTECTIVE ORDER FOR OUTSIDE COUNSEL

1. I, Pamela A. Reynolds, hereby apply for access to protected material covered by the protective order issued in connection with this protest.

2. I am an attorney with the law firm of Epstein Becker & Green, PC which has been retained to represent Rowe Contracting Services, Inc., a party to this protest.

3. I am a member of the bar(s) of the District of Columbia and Virginia; my bar membership number(s) is/are 499417 (DC); 71395 (VA).

4. My professional relationship with the party I represent in this protest and its personnel is strictly one of legal counsel. I am not involved in competitive decisionmaking as discussed in U.S. Steel Corp. v. United States, 730 F.2d 1465 (Fed. Cir. 1984), for or on behalf of the party I represent, any entity that is an interested party to this protest, or any other firm that might gain a competitive advantage from access to the material disclosed under the protective order. I do not provide advice or participate in any decisions of such parties in matters involving similar or corresponding information about a competitor. This means that I do not, for example, provide advice concerning or participate in decisions about marketing or advertising strategies, product research and development, product design or competitive structuring and composition of bids, offers, or proposals with respect to which the use of protected material could provide a competitive advantage.

10. I acknowledge that any violation of the terms of the protective order may result in the imposition of such sanctions as GAO deems appropriate, including but not limited to referral of the violation to appropriate bar associations or other disciplinary bodies, and restricting my practice before GAO. I further acknowledge that a party whose protected information is improperly disclosed shall be entitled to all remedies under law or equity, including breach of contract.

CERTIFICATION

By my signature, I certify that, to the best of my knowledge, the representations set forth above (including any attached statements) are true and correct. I recognize that knowingly making a false statement on this application could render me liable to a $10,000 fine or 5 years imprisonment, or both, pursuant to 18 U.S.C. § 1001. I identify below the mailing address and facsimile number at which I may receive protected material in accordance with the terms of the protective order.

[signature] 1-10-2007

Signature Date Executed

Pamela A. Reynolds, Attorney
Typed Name and Title

EPSTEIN BECKER & GREEN, PC
1227 25th St., NW
Suite 600
Washington, DC 20037
Mailing Address

(202) 861-1898
Direct Dial Telephone Number

(202) 822-4657
Facsimile Number

PReynolds@cbglaw.com
E-mail Address

GAO
Accountability • Integrity • Reliability

United States Government Accountability Office
Washington, DC 20548

Office of General Counsel

# Facsimile Transmission Sheet

Number of pages, including this cover sheet: 3

If transmission problems occur, please call
202-512-9739.
Our fax number is 202-512-9749.

**Date:** January 16, 2007

**Re:** B-296741.11
Protest of Olympus Building Services, Inc.

**From:** Mary G. Curcio, Senior Attorney

| Name | Firm/Agency | Phone | Fax |
|---|---|---|---|
| Grace Bateman, Esq. | Seyfarth Shaw LLP | 202-463-2400 | 202-828-5393 |
| LTC Frank A. March | Defense Intelligence Agency | 703-696-2826 | 703-696-1537 |
| Kenneth B. Weckstein, Esq. | Epstein Becker & Green, PC | 202-861-0900 | 202-861-3560 |

**Comments:** None

GAO
Accountability * Integrity * Reliability

United States Government Accountability Office
Washington, DC 20548

January 16, 2007

Grace Bateman, Esq.
Seyfarth Shaw LLP

LTC Frank A. March
Defense Intelligence Agency

Kenneth B. Weckstein, Esq.
Epstein Becker & Green, PC

| | |
|---|---|
| **File:** | B-296741.11 |
| **Protester:** | Olympus Building Services, Inc. |
| **Agency:** | Department of Defense |
| **Solicitation No.:** | HHM402-05-R-0017 |

**NOTICE OF ADMISSION TO PROTECTIVE ORDER**

The Government Accountability Office has received and reviewed the applications of to represent it in this protest and the applications of Grace Bateman, Esq. and Amanda B. Weiner, Esq., attorneys with the firm of Seyfarth Shaw LLP, retained by Olympus Building Services, Inc., to represent it in this protest and Kenneth B. Weckstein, Esq. and Pamela A. Reynolds, Esq., attorneys with the firm of Epstein Becker & Green, PC retained by Rowe Contracting Services, Inc., to represent it in this protest.

Based on the information provided by the individuals regarding relationships with the parties to the protest, and in the absence of any objection, the Government Accountability Office concludes that the risk of inadvertent disclosure of protected material is sufficiently minimal to warrant providing access under the protective order. The individuals have represented that they have read the protective order issued by the Government Accountability Office on January 9, 2007, for this protest and will abide by its terms and conditions in handling any protected material that is produced in this matter. Accordingly, the individuals listed above are hereby authorized to receive protected material.

Unless the Government Accountability Office expressly notifies the parties otherwise, all material identified by any party as falling within the protective order shall be covered by that order. For 2 working days following production, all documents, including those not designated as protected, shall be released only to

persons admitted to the protective order, in order to permit identification of documents counsel believes should have been designated as protected.

Each individual covered under this protective order shall take all precautions necessary to prevent disclosure of protected material. In addition to physically and electronically securing, safeguarding, and restricting access to the protected material in one's possession, these precautions include, but are not limited to, sending and receiving protected material using physical and electronic methods that are within the control of individuals authorized by this protective order or that otherwise restrict access to protected material to individuals authorized by this protective order. Protected material may be sent using electronic mail unless objected to by any party in this protest. The confidentiality of protected material shall be maintained in perpetuity.

Mary G. Curcio, Senior Attorney

## NOTICE REGARDING PROTECTED MATERIALS

GAO protective orders generally require that within 60 days after the disposition of the protest(s) (or if a request for reconsideration or a claim for costs is filed, 60 days after the disposition of those matters), all protected material furnished to individuals admitted under this protective order, including all electronically transmitted material and copies of such material, with the exception of a single copy of a protected decision or letter issued by our Office, shall be: (1) returned to the party that produced them; or (2) with the prior written agreement of the party that produced the protected material, destroyed and certified as destroyed to the party that produced them; or (3) with the prior written agreement of the party that produced the protected material, retained under the terms of this order for such period as may be agreed. Within the same 60-day period, protected pleadings (including copies in archival files and computer backup files) and written and electronic transcripts of protest conferences and hearings must be destroyed, unless the parties otherwise agree or GAO so orders. The terms of the protective order (except those terms regarding the return or destruction of protected material) apply indefinitely to the single copy of the protected decision or letter issued by our Office that is retained by a party admitted under the order.

EPSTEIN BECKER & GREEN, P.C.
ATTORNEYS AT LAW
1227 25TH STREET, NW, SUITE 700
WASHINGTON, DC 20037-1175
202.861.0900
FAX: 202.296.2882
EBGLAW.COM

KENNETH B. WECKSTEIN
TEL: 202.861.0900
FAX: 202.861.3560
KWECKSTEIN@EBGLAW.COM

**PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER**

January 23, 2007

**VIA TELEFAX**

Mary G. Curcio, Esquire
U.S. Government Accountability Office
441 G Street, N.W.
Washington, D.C. 20548

Re: Request to Dismiss protest of Olympus Building Services, Inc.
B-296741.11
Solicitation No. HHM402-05-R-0017

Dear Ms. Curcio:

Rowe Contracting Services, Inc. ("Rowe"), is the awardee under the referenced solicitation and has intervened in this protest. Rowe, through its undersigned counsel, hereby submits this Request to Dismiss protest grounds 1 through 4 of the Olympus Building Services, Inc. ("Olympus") protest filed December 29, 2006 ("Protest"). Olympus' Protest should be dismissed because it cannot show that it has been prejudiced. Even if all of the allegations in its Protest are accepted as being true, it would not be in line for award. Rowe, which received ratings of "Excellent" under all of

PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER



Therefore, none of these alleged improprieties, even if taken as true, prejudiced Olympus in any way. Accordingly, GAO should dismiss this protest ground.

**V. Olympus' Request for Documents related to Rowe's evaluation should be denied**

Any documents relating to the technical or price evaluation of Rowe's proposal is irrelevant to any of the protest grounds asserted. Olympus has not asserted that DIA misevaluated Rowe. Therefore, all document requests should be denied to the extent they request any information relating to Rowe's proposal or its evaluation.

**Conclusion**

For all of the foregoing reasons, Olympus' protest should be dismissed. There is no need to decide a protest on the merits if it will have no impact on the award decision. Here, nothing Olympus has asserted will change the result that Rowe offered the best value to the Government and DIA properly made award to Rowe.

Very truly yours,

Kenneth B. Weckstein
Pamela A. Reynolds

cc: Grace Bateman, Esq.
Lt. Col. Frank March, Esq.

PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER



did Rowe. Therefore, no cost/technical tradeoff was required. Olympus' Protest here must fail because competitive prejudice is an essential element for a valid protest ground. *See MetaMetrics, Inc.*, B-248603.2, 92-2 CPD ¶ 306 (Comp. Gen. 1992) (finding no prejudice where an offeror would not have won award even if its non-cost evaluations received the highest ratings possible because it had a higher cost proposal).

**IV. DIA's best value determination was reasonable.**

Olympus claims that even if a proper cost/technical tradeoff was performed, the award here still was irrational because the best value determination was based on improper technical and past performance evaluations. *See* Protest, at 16-17. Olympus cites a number of GAO decisions that held that a best value analysis is irrational when based on defective technical, past performance, or cost/price evaluations. *See* Protest, at 16. Olympus still must show prejudice, and has failed to do so.

Again, it is essential for a protestor to show prejudice in order to prevail in a bid protest. The GAO will dismiss a protest where no prejudice occurred. *See Dube Travel Agency & Tours, Inc.*, B-270438.2, 96-1 CPD ¶ 141 (Comp. Gen. 1996); *see also Agric. Tech. Partners*, B-272978.2, 96-2 CPD ¶ 226 (Comp. Gen. 1996). As discussed above, Olympus was not prejudiced by the evaluation of past performance under its technical evaluation criteria. Moreover, even if Olympus was given the highest ratings possible for its technical and past performance, the award still would have gone to Rowe.

PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER



"permits tradeoffs among cost or price and non-cost factors and allows the Government to accept other than the lowest priced proposal." *See* FAR § 15.101-1. Olympus claims that DIA did not perform a cost/technical tradeoff, but instead performed a "lowest price technically acceptable" analysis as set forth in FAR § 15.101-2. *See* Protest, at 14.

Olympus argues that the Agency was required to evaluate each offeror's ability to accomplish the technical requirements and "should have provided such a detailed narrative of each offeror's abilities." *See* Protest, at 15. DIA's failure to provide this narrative indicated to Olympus that no proper evaluation was performed. *See id.* On information and belief, Olympus ultimately concludes that "DIA performed a cursory review of each offeror's proposal and did not discriminate among them." *See* Protest, at 15.

Rowe received the highest ratings for the technical and past performance criteria. Rowe also submitted the lowest price. Therefore, it was the highest ranked, lowest priced proposal. No cost/technical trade-off was necessary. The Agency did not have a higher technically-rated proposal to compare to Rowe's proposal. The Agency did not have a lower-priced proposal to compare to Rowe's proposal.

Even if Olympus was misevaluated as it claims, a cost/technical trade-off would not have resulted in a different award. Olympus was given an "Excellent" rating – the highest rating possible – for its technical proposal. Assuming that Olympus deserved an "Excellent" rating for past performance as well, it still proposed a higher price than

its face. For instance, there may be an obvious inconsistency "between a reference's narrative comments and the actual ratings the reference gives the offerors." *See United Coatings*, B-291978.2, 2003 CPD ¶ 146 (Comp. Gen. 2003); *see also Universal Fid. Corp.*, B-294797.2, 2005 CPD ¶ 88 (Comp. Gen. 2005) (finding that protestor had not shown that there was anything on the face of the past performance information to cause the Agency to question the information's validity). Olympus has failed to show how the Agency should have known, based on the past performance evaluation itself or compared with any other documents it received, that there was any reason to question the validity of the past performance information. (And, as noted above, even if Olympus had been given the opportunity to submit additional past performance information and even if Olympus had increased its past performance score to "Excellent", Olympus still would not have been in line for or received contract award. Again, this ground of Olympus' Protest fails for lack of prejudice.)

Based on the above, Olympus' protest ground that DIA failed to permit Olympus to clarify negative past performance information must be dismissed.

**III. Olympus' allegation that DIA failed to perform a required cost/technical trade-off is without merit.**

***A. Olympus was not prejudiced because a cost-technical trade-off was unnecessary.***

Olympus argues that the Agency failed to conduct the proper cost/technical trade-off as stated in the Solicitation. *See* Protest, at 14. A cost/technical trade-off

opportunity to respond." *See* Protest, at 13. Olympus cites to FAR § 15.306(a)(2) as authority. FAR § 15.306 did not require a clarification here.

FAR § 15.306(a)(2) states:

> If award will be made without conducting discussions, offerors ***may*** be given the opportunity to clarify certain aspects of the proposals (e.g., the relevance of an offeror's past performance information and adverse past performance information to which the offeror has not previously had an opportunity to respond) or to resolve minor or clerical errors.

(emphasis added).

Olympus agrees that GAO will not *require* an Agency to request a clarification from an offeror about negative past performance information. *See* Protest, at 13. Instead, the agency has broad discretion to determine when a clarification is necessary. *See United Coatings*, B-291978.2, 2003 CPD ¶ 146 (2003). An agency's decision to not request a clarification is unreasonable when "there is clearly a reason to question the validity of the past performance information." *See* Protest, at 13 quoting *United Coatings*, B-291978.2, 2003 CPD ¶ 146 (Comp. Gen. 2003).

Olympus claims DIA acted unreasonably for failing to question the validity of the information here because, as Olympus puts it: "the information was totally inaccurate." *See* Protest, at 13. Accepting as true Olympus' allegation that the information was inaccurate, Olympus does not reveal how or why DIA would have or should have known the information was inaccurate. The "fact" that the information is not accurate is not enough. There must be a clear basis to question the past performance information on

PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER



As stated in the Solicitation, the importance of price will increase as the differences between non-price factors decrease. Here, the Agency selected Rowe because Rowe was the highest ranked, lowest priced offeror.

Assuming that Olympus' past performance was misevaluated, Rowe still would have been the highest ranked, lowest priced offeror, and Rowe still would have been chosen for award. The Agency itself stated in its debriefing letter:

> The Government found Olympus' Technical proposal to be "EXCELLENT" and the Past Performance to be "GOOD." ***Moreover, even if Olympus' overall Past Performance was deemed "EXCELLENT," Olympus' proposed cost was not as advantageous as that proposed by other comparable offerors.***

*See* December Debriefing, at 1 (emphasis added). Thus, even if Olympus had received the highest rating possible for both past performance and its technical proposal, it still would not have been selected for award. Rowe's proposal still would have been the best value to the Government because Rowe was the lowest priced offeror. Olympus suffered no prejudice and its Protest must be dismissed. *See DePonte Invs., Inc.*, B-288871, 2002 CPD ¶ 9 (Comp. Gen. 2001) (finding no prejudice where award was made to highest ranked, lowest priced offeror and protestor would not be in line for award even if it was given a perfect technical score due to its higher price).

***B. DIA was not required to allow Olympus to submit additional past performance information.***

Olympus claims that DIA should have given it the opportunity to clarify negative past performance information "to which the offeror has not previously had an

even if this ground of Olympus' Protest were meritorious, GAO should dismiss the protest ground based on Olympus' inability to show prejudice.

Competitive prejudice is essential to any viable protest and in its absence, a protest will be dismissed. *See Dube Travel Agency & Tours, Inc.*, B-270438.2, 96-1 CPD ¶ 141 (Comp. Gen. 1996) (stating that GAO will "not sustain protests against alleged evaluation errors unless the protestors are somehow prejudiced"); *see also Agric. Tech. Partners*, B-272978.2, 96-2 CPD ¶ 226 (Comp. Gen. 1996).

The Solicitation stated that award would be "made to the responsible offeror whose offer, conforming to the solicitation, is determined to be the best overall value to the Government, price and other factors considered." *See* Solicitation, at 41. Although the non-price factors (Technical and Past Performance) were more important than price when combined, "[t]he importance of price in the evaluation for award will increase as the relative differences in non-price factors of offerors decreases." *See id.* Here, Rowe received an "Excellent" rating for its technical proposal and an "Excellent" for its past performance. *See* December Debriefing, at 1. Olympus received an "Excellent" rating under the technical criteria and a "Good" rating for its past performance. *See id.* [redacted] price. *See id.*, at 2.

---

*Sys, Inc.*, B-290971.3, 2002 CPD ¶ 186 (Comp. Gen. 2002); *see also Sci. Applications Int'l Corp.*, B-290971.2, 2002 CPD ¶ 184 (Comp. Gen. 2002) (stating that source selection officials have broad discretion and are "subject only to the test of rationality and consistency with the established evaluation criteria").

Olympus argues that had it "known that DIA was going to consider its past performance as part of the Technical Evaluation, Olympus would have included detailed information on its past performance. . . ." *See* Protest, at 11. Again, this is irrelevant because Olympus cannot show prejudice here. Olympus' technical rating would not have changed had it provided more detailed information because it was already given the highest possible rating. *See American Water Servs., Inc.*, B-295376, 2005 CPD ¶ 74 (Comp. Gen. 2005) (finding no prejudice where protestor had received the highest possible rating overall for a factor and therefore a higher rating for a subfactor could not possibly cause an upward change in the overall rating).

Because Olympus cannot show prejudice as a result of the TEP's consideration of its past performance, GAO should dismiss this protest ground.

**II. The evaluation of Olympus' Past Performance was not irrational.**

***A. Olympus was not prejudiced by the evaluation of its past performance.***

Olympus claims that the evaluation of its past performance was flawed because DIA considered "incorrect" information about its past performance. *See* Protest, at 12-13. Moreover, Olympus takes exception to the change in its past performance rating from "Excellent" [redacted] *See id. at* 11-12. Again,

---

[1] The prior corrective action required reevaluation of proposals. The fact that Olympus received a different rating after reevaluation is not a viable protest ground. So long as the Agency's award decision was reasonable, "a source selection official's failure to specifically discuss every detail regarding the relative merit of the proposals . . . does not affect the validity of the decision. . . ." *See EER*

sub-subfactor was worth only worth 16.99% and therefore, might not be considered a significant subfactor requiring disclosure in the Solicitation (even though it had been disclosed).

Because DIA acted properly in evaluating past performance/relevant experience as a sub-subfactor under the technical evaluation criterion, this protest ground should be dismissed.

***C. Olympus was not prejudiced by DIA's review of its past performance under the technical evaluation.***

Even if it was improper for DIA to consider the offerors' past performance in its technical evaluation, Olympus was not prejudiced and therefore, its Protest based on this ground must be dismissed. Before GAO will sustain a protest, a protestor must show that it suffered prejudice as a result of the alleged impropriety. *See Dube Travel Agency & Tours, Inc.*, B-270438.2, 96-1 CPD ¶ 141 (Comp. Gen. 1996) (stating that GAO will "not sustain protests against alleged evaluation errors unless the protestors are somehow prejudiced"); *see also Agric. Tech. Partners*, B-272978.2, 96-2 CPD ¶ 226 (Comp. Gen. 1996).

Olympus was not harmed by the evaluation of its past performance as part of its technical evaluation. Olympus received the highest possible rating for its technical proposal. *See* Protest, at 6 ("DIA indicated that it had given Olympus an 'Excellent' rating for Technical. . . ."). Olympus cannot show prejudice here – it could not have received a higher technical rating.

PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER



1. The Solicitation invited offerors to submit "any information currently available (letters, metrics, customers survey, independent surveys, etc.) which demonstrates customer satisfaction with overall job performance and quality of the completed product for same or similar type discipline . . . ." Solicitation, at 38. Portions of this information were undoubtedly relevant to the offerors' technical ability to complete the tasks under this contract. *See MetaMetrics, Inc.*, B-248603.2, 92-2 CPD ¶ 306 (Comp. Gen. 1992) (stating that the "agency could reasonably consider not only whether and how well [the offeror] had performed similar duties in the past, but also whether his prior activities might hinder his effectiveness in implementing the next phase of the reform program").

Moreover, the Agency limited its consideration of past performance/relevant experience under the technical criterion to that which was deemed relevant to the requirement of the Solicitation. *See* December Debriefing, at 1. Therefore, the use of past performance/relevant experience was reasonably related to the technical evaluation criterion.

Finally, FAR § 15.304(d) requires agencies to state clearly "[a]ll factors and ***significant subfactors*** that will affect contract award. . . ." (Emphasis added). GAO has held that an evaluation subfactor constituting a total of 15% of the available evaluation points was not significant and therefore, the agency was not obliged to disclose the subfactor in the solicitation. *See Mgmt. Sys. Designers*, Inc., B-244383.6, 91-2 CPD ¶ 518 (Comp. Gen. 1991). Here, past performance/relevant experience as a

PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER

Mary G. Curcio, Esq.
January 18, 2007
Page 8

Here, Olympus claims that the consideration of past performance under the Technical evaluation factor was contrary to the stated evaluation criteria in the Solicitation. If that were true, then Olympus was aware that past performance was considered a sub-sub factor under the technical evaluation factor on October 11, 2006. The filing deadline for this protest ground had long past by the time Olympus filed this current protest. Olympus essentially is trying to take "two bites at the apple."

Because Olympus failed to file within 10 days of when it was aware of the basis of this protest ground, this ground is untimely and should be dismissed.

***B. DIA may properly consider past performance in its technical evaluation because it is reasonably related to the stated technical criteria.***

Even if this protest ground is regarded as timely, it was not improper for DIA to consider past performance in its technical evaluation. An Agency may consider unstated sub-factors so long as those sub-factors are reasonably encompassed by the evaluation factor under which it was being considered. *See Mgmt. Sys. Designers*, Inc., B-244383.6, 91-2 CPD ¶ 518 (Comp. Gen. 1991) (finding that the subfactors "Compliance with Stated Minimum Requirements," "Additional Experience/Qualification of Key Personnel," and "Experience in the Topical Area" were clearly related to "Personnel Qualifications").

Here, the Agency "evaluated the quality and extent of the offeror's experience deemed relevant to the requirements of this Solicitation." *See* December Debriefing, at