**PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER**



performance/relevant experience would be considered as a sub-sub-factor under the technical evaluation. The Agency conducted its evaluation according to this understanding. Olympus disagrees and argues that it was improper for the Technical Evaluation Panel ("TEP") to consider past performance. *See* Protest, at 10. Olympus maintains in its Protest that the Solicitation actually stated that the technical evaluation would be based on only two sub-factors: (1) Understanding and Compliance with Requirements; and (2) Soundness of Approach whereas past performance would be evaluated based on three sub-factors: (1) Program Management Controls; (2) Past Performance/Relevant Experience; and (3) Key Personnel. Protest, at 4.

Even assuming that Olympus is correct and the Agency is incorrect, this protest ground must be dismissed as untimely. Olympus was aware on October 11, 2006 that the TEP would evaluate past performance of the offerors. In its first written debriefing from the Agency following the award to NOSLOT, Olympus was informed that there were five sub-sub-factors under the Technical evaluation factor. *See* October Debriefing, at 1. One of those sub-sub-factors was Past Performance/Relevant Experience and was worth 16.66% of the technical evaluation. Therefore, Olympus was alerted to the Agency's understanding of the evaluation criteria when it received its written debriefing on October 11, 2006. Under the GAO Bid Protest Regulations, an offeror must file a protest within ten (10) days of when the basis of protest is known or should have been known. *See* 4 CFR § 21.2.

Accordingly, Olympus cannot show that it was prejudiced by the errors that it alleges in its Protest. For this reason, the Protest must be dismissed.

In addition, Olympus' protest ground asserting that DIA improperly considered past performance as part of the technical evaluation is untimely. Olympus was aware of the DIA's use of past performance under both the technical evaluation and past performance criteria on October 11, 2006 when Olympus received its debriefing. In any event, the use of past performance information submitted as part of the technical proposal as a sub-sub-factor of the technical evaluation was proper and within the discretion of the Agency. Moreover, contrary to Olympus' assertion, Olympus was not entitled to submit a clarification of its past performance. And, no clarification submitted by Olympus about its past performance would have changed the result of the evaluation. At best, Olympus would have submitted a proposal that was equal to Rowe under the Technical and Past Performance criteria and higher in price. For these reasons, as explained in more detail below, Olympus' Protest should be dismissed in its entirety.

## Legal Argument

### I. DIA properly applied the evaluation factors stated in the Solicitation.

#### *A. Olympus' protest ground based on the announced evaluation criteria is untimely.*

Olympus disagrees with the Agency's interpretation of the Solicitation's stated evaluation criteria. According to the Agency, the Solicitation stated that past

PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER



Olympus filed this Protest on December 29, 2006. Rowe filed its Notice of Intervention on January 10, 2007.

Olympus sets forth four (4) protest grounds in its Protest. First, Olympus claims that the DIA did not "properly apply the evaluation factors stated in the solicitation." *See* Protest, at 2. Second, Olympus argues that the DIA's past performance evaluation of Olympus' proposal was irrational because it was (1) based on incorrect past performance information and (2) inconsistent with its prior evaluation of the same past performance information. *See id.* Olympus' third protest ground alleges that DIA failed to perform a proper best value analysis because it applied a "technically acceptable, low price" analysis rather than a "cost/price-technical tradeoff" as stated in the Solicitation. *See id.* And finally, Olympus claims that the best value determination here is unreasonable "because it was based on flawed Technical and Past Performance evaluations." *See id.*

Olympus' Protest should be dismissed because it has suffered no prejudice. Rowe received the highest possible ratings for its technical proposal and past performance and offered the lowest price. Even if Olympus is correct about every allegation in its Protest, Olympus still would not have been in line for award. If all of Olympus' arguments are accepted as true, Olympus would have received ratings of "Excellent" for Technical and Past Performance. However, Olympus' proposed price still would have been more than one half million dollars higher than Rowe's price.

PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER



new source selection based on the offerors' previously submitted offers. *See* Letter from Peter H. Tran, Esq., U.S. Army, Contract and Fiscal Law Division to Mary G. Curcio, Esq., U.S. Government Accountability Office.

In accordance with its announced corrective action, DIA made a new selection decision. As a result of this corrective action, on December 19, 2006, DIA made contract award to Rowe. Disappointed offerors were notified by letter dated December 19, 2006 of the Agency's award to Rowe.

Olympus requested a debriefing and was provided a debriefing by letter on December 27, 2006. In its debriefing letter, Olympus was informed that it received an "Excellent" rating under the technical factor. Rowe was rated "Excellent" for both its technical proposal and past performance. *See* Letter from Cheong Chon, Contracting Officer, Virginia Contracting Activity to Susan Beal, Olympus Building Services (December 27, 2006) (hereinafter "December Debriefing"), attached hereto as Exhibit 2, at 1. Moreover, Rowe was the lowest priced offeror with a total cost of $19,217,512.35. *See id.* Olympus' price was $557,546 higher than Rowe's. *See id.* The debriefing letter said of Olympus' final evaluation:

> The Government found Olympus' Technical proposal to be "EXCELLENT" and the Past Performance to be "GOOD." Moreover, ***even if Olympus' overall Past Performance was deemed "EXCELLENT," Olympus' proposed cost was not as advantageous as that proposed by other comparable offerors.***

*Id.* (emphasis added).

PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER



non-price factors against price to determine the best value to the Government. *Id.* at 41. Award would be made to the responsible offeror whose offer, conforming to the solicitation, would be most advantageous to the Government, price and other factors considered. *Id.*

Rowe was selected for award on December 19, 2006. The most recent award to Rowe followed three previous award decisions by the Virginia Contracting Activity ("Government" or "Agency") on behalf of the DIA, each subject to a corrective action. The prior award was made to NOSLOT Cleaning Services ("NOSLOT"). In its debriefing letter to Olympus following that award, the Agency listed the sub-sub-factors of the Technical evaluation:

> SELECTION CRITERIA: Each company was evaluated using the same Technical Evaluation Sheets provided by the Contracting Office. ***The five sub-sub-factors of the Technical evaluation factor were:*** Understanding and Compliance (25%); Soundness of Approach (25%); Program Management Controls (16.66%); ***Past/Performance/Relevant Experience (16.66%)***; and Key Personnel (16.66%).

Letter dated October 11, 2006 from Cheong Chon, Contracting Officer, Virginia Contracting Activity to Susan Beal, Olympus Building Services (hereinafter "October Debriefing"), attached hereto as Exhibit 1 (emphasis added).

The Agency took corrective action and cancelled the contract with NOSLOT. By letter dated October 24, 2006, the Contracting Officer advised that the Agency would not conduct new technical evaluations or accept revised proposals, but would make a

PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER



the evaluation criteria and submitted a lower price than Olympus, still would be selected for award.

**Background**

The Solicitation in question calls for janitorial/custodial services for the Defense Intelligence Agency ("DIA") at Bolling Air Force Base under Solicitation No. HHM402-05-R-0017 ("Solicitation" or "RFP"). The Solicitation originally was issued on April 14, 2005.

The Solicitation stated that the evaluation would include an evaluation of price and two non-price factors: technical and past performance. Solicitation, at 41. The technical factor was more important than past performance and together, the non-price factors were more important than price. *Id.* However, "[t]he importance of price in the evaluation will increase as the relative differences in non-price factors of offerors decreases." *Id.*

Offerors were requested to submit proposals with three sections: Section I "Technical Capability; Section II "Relevant Past and Present Performance"; and Section III "Cost/Price." Solicitation, at 38. The Solicitation stated that "[t]he following factors [would] be considered when evaluating proposals[:]" (1) understanding and compliance with requirements; (2) soundness of approach; (3) program management controls; (4) past performance/relative experience; and (5) key personnel. *Id.* at 41-42. The Solicitation further stated that the Agency intended to perform a trade-off analysis of

DEPARTMENT OF THE ARMY
UNITED STATES ARMY LEGAL SERVICES AGENCY
901 NORTH STUART STREET
ARLINGTON, VA 22203-1837
(703) 696-2826 DSN 426; Fax ext. 1537
E-mail : Frank.March@hqda.army.mil

REPLY TO
ATTENTION OF

January 26, 2006

Contract and Fiscal Law Division

Mary G. Curcio, Esq.
Office of the General Counsel
Government Accountability Office
441 G. Street, NW
Washington, D.C. 20548
**Via E-mail: protests@gao.gov**

**PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH GAO PROTECTIVE ORDER**

Subject: Protest of Olympus Building Services, Inc. (B-296741.11)

Dear Ms. Curcio:

In accordance with 4 C.F.R. § 21.3 (c), the DIA's index for the subject protest is enclosed. The Government reserves the right to revise this index upon submission of the AR. As I indicated in an earlier e-mail, please treat this index as protected due to the fact that it mentions a cure notice sent to Protester concerning its poor performance. This is also a concern because Protester submitted a declaration by one of its employees denying the existence of this cure notice.

Below is the Government's response to Protester's document request in its protest:

1. The contract awarded to Rowe in this procurement.

**Response: All documents responsive to this request are included in the AR.**

2. The complete proposals, and all revisions or amendments thereto, submitted by the offerors in this procurement.

**Response: Only the initial and revised proposals of Protester and Awardee will be included in the AR. No other proposals are relevant. The Government is not claiming that Protester is not an interested party due to not being in line for award.**

3. DIA's Source Selection Plan and/or Acquisition Plan, required by FAR 15.303(b)(2), for this acquisition, and all amendments thereto.

**Response: All documents responsive to this request are included in the AR.**

4. DIA's Source Selection Decision for this acquisition, as required by FAR 15.308, and all related drafts of the Source Selection Decision.

**Response: Only the final version Source Selection Decision is contained in the contract file. Any such drafts are not relevant because only the final signed version of the Source Selection Decision is used as the basis for the award decision. Any other versions that may exist are not relevant.**

5. All documents that DIA reviewed or considered in making its decision to award a contract to Rowe.

**Response: All documents responsive to this request are included in the AR.**

6. All documents prepared by DIA evaluators in performing analysis or review of the proposals for the purpose of selecting the best value proposal for contract award.

**Response: All documents responsive to this request are included in the AR.**

7. All documents reflecting communications between any other person or entity within DIA or outside that agency relating to the selection of the best value proposal for contract award.

**Response: There are no documents responsive to this request.**

8. All documents related to DIA's conduct of discussions with offerors from receipt of initial proposals until the date of contract award.

**Response: Only the discussion records related to Protester and Awardee are included in the AR. Records concerning other offerors are not relevant to this protest.**

9. All documents reflecting or relating to DIA's evaluation of each response to the discussions from receipt of initial proposals until the date of contract award.

**Response: See the answer to number 9 above.**

10. All documents identifying DIA's individual evaluators who evaluated each element in factor in the proposals.

**Response: All relevant documents responsive to this request are included in the AR.**

11. All documents relating to or explaining any changes in the composition of DIA's evaluation team.

**Response: There are no documents responsive to this request.**

12. All documents relating to or explaining DIA's evaluation of technical proposals.

**Response: All relevant documents responsive to this request are included in the AR.**

13. All documents relating to or explaining DIA's evaluation of offerors past performance. .

**Response: All relevant documents responsive to this request are included in the AR.**

14. All documents identifying DIA's evaluation of the offerors' price proposals.

**Response: All relevant documents responsive to this request are included in the AR.**

15. All notes or evaluation forms of individual evaluators who participated in the evaluation of offerors' technical and price proposals and their past performance.

**Response: All relevant documents responsive to this request are included in the AR.**

16. All documents reflecting or relating to DIA's explanation of the weights to be applied to the evaluation factors in the Solicitation.

**Response: All relevant documents responsive to this request are included in the AR.**

17. All instructions provided to members of DIA's evaluation team related to performing the evalution of proposals in mailing systems and services procurement .

**Response: All relevant documents responsive to this request are included in the AR, however, the Government is unclear about what documents are being requested under this item.**

18. All documents relating to the debriefings of offerors following DIA's selection of Rowe for award. These documents relate to the counts set forth in Olympus' protest.

**Response: All relevant documents responsive to this request are included in the AR. Other offerors' debriefings are not included because those debriefings are not relevant to this protest.**

If you have any questions regarding this matter, please contact LTC Frank March at (703) 696-2826, facsimile (703) 696-1537.

Sincerely,

Frank A. March
Lieutenant Colonel, U.S. Army
Chief, Trial Team I

Copies Furnished:

Protester:

Grace Bateman, Esq.
Seyfarth Shaw LLP
815 Connecticut Ave., NW, Suite 500
Washington, DC 20006-4004
Telephone: 703-256-7754
Facsimile: 703-256-7883

Intervenor :
Kenneth B. Weckstein, Esq.
Epstein Becker & Green, P.C.
1227 25th St., N.W., Suite 700
Washington, DC 20037
Telephone: 202-861-0900
Facsimile: 202-861-3560

Installation Attorney:
Virginia Contracting Activity/Defense Intelligence Agency
ATTN: Lt. Col. Joe Treanor, DIAC-DAP-2
Building 6000
Bolling Air Force Base
Washington, DC 20340-5100
Telephone: 202-231-2821
Facsimile: 202-231-2831

Directorate of Contracting:
Virginia Contracting Activity/Defense Intelligence Agency
ATTN: Cheong Chon, Contracting Officer
Building 6000
Bolling Air Force Base
Washington, DC 20840-5100,
Telephone: 202-231-8416
Facsimile: 202-231-2831

**GAO PROTEST OF**

**Olympus Building Services, Inc. (B-296741.11)**

**INDEX OF DOCUMENTS**


| TAB | DOCUMENT | DATE |
|---|---|---|
| *1 | Legal Memorandum | |
| *2 | Contracting Officer's Statement | |
| 3 | Solicitation | 4/13/05 |
| 4 | Amendment 0001 | 4/27/05 |
| 5 | Amendment 0002 | 5/3/05 |
| 6 | Amendment 0003 | 5/5/05 |
| 7 | Amendment 0004 | 5/7/05 |
| 8 | Amendment 0005 | 8/20/05 |
| 9 | Amendment 0006 | 11/17/05 |
| 10 | Amendment 0007 | 12/6/05 |
| 11 | Amendment 0008 | 1/12/06 |
| 12 | Amendment 0009 | 2/9/06 |
| 13 | Amendment 0010 | 2/28/06 |
| *14 | Source Selection Plan | |
| *15 | Independent Government Estimate | |
| *16 | Superseded Source Selection Decisions/PNMs | |
| 17 | Corrective Action Memorandums | |
| *18 | Competitive Range Determination | |

| | | |
|---|---|---|
| *19 | Superseded Notices and Debriefings to Unsuccessful Offers | |
| *20 | Rowe's Initial Proposal | |
| *21 | Rowe's Discussion Letter | |
| *22 | Rowes Revised Proposal | |
| *23 | Olympus' Initial Proposal | |
| *24 | Olympus' Discussion Letter | |
| *25 | Olympus' Revised Proposal | |
| *26 | Technical Evaluation of Rowe | |
| *27 | Technical Evaluation of Olympus | |
| *28 | Past Performance Questionnaires of Rowe | |
| *29 | Past Performance Questionnaires of Olympus | |
| *30 | Cure notice issued to Olympus | 10/13/04 |
| *31 | Technical Evaluation Panel Consensus Report | |
| *32 | Source Selection Decision/PNM | 12/15/06 |
| 33 | Contract No. HHM402-07-C-0006 | 12/__/06 |
| 34 | Unsuccessful Offeror Notice to Olympus | 12/19/06 |
| 36 | Olympus' Request for Debriefing | 12/19/06 |
| *37 | Olympus' Debriefing Letter | 12/27/07 |
| *38 | Protest of Olympus | 12/29/06 |

* CONTAINS PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH GENERAL ACCOUNTING OFICE PROTECTIVE ORDER.

GAO
Accountability • Integrity • Reliability

Comptroller General
of the United States

United States Government Accountability Office
Washington, DC 20548

**NOT FOR PUBLIC DISTRIBUTION**

**THIS DOCUMENT CONTAINS PROTECTED MATERIAL AND IS SUBJECT TO THE TERMS OF A GAO PROTECTIVE ORDER.**

# Decision

**Matter of:** Olympus Building Services, Inc.

**File:** B-296741.11

**Date:** March 2, 2007

Olympus Building Services, Inc. protests the award of a contract to Rowe Contracting Services, Inc. under request for proposals (RFP) No. HHM402-05-R-001, issued by the Defense Intelligence Agency (DIA) for janitorial services.

We dismiss the protest.[1]

[redacted]

---

[1] Olympus has filed two additional protests (B-296741.14 and B-296741.15), which are currently being developed and will be the subject of a separate decision. Further, certain arguments Olympus raised in its comments in response to the agency report--for example, that in evaluating past performance DIA improperly failed to consider reference ratings for Olympus--are new issues, not part of the initial protest, and will be addressed in our later decision.

[redacted]

The protest is dismissed.

Gary L. Kepplinger
General Counsel

*********************

*** TX REPORT ***

*********************

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 0258 |
| CONNECTION TEL | 992022312831 |
| SUBADDRESS | |
| CONNECTION ID | |
| ST. TIME | 03/06 10:46 |
| USAGE T | 02'01 |
| PGS. | 5 |
| RESULT | OK |

*HQ, U.S. ARMY LITIGATION CENTER*
*DEPARTMENT OF THE ARMY*
*CONTRACT AND FISCAL LAW DIVISION, USALSA*
*901 N. STUART STREET, SUITE 500*
*ARLINGTON, VA 22203-1837*
*Tracy.Williams@hqda.army.mil*
*(703) 696-2850 phone*
*(703) 696-1537 fax*

# *facsimile transmittal*

Date: March 6, 2007

Re: GAO Protest of **Olympus Building Services (B-296741.11)**

From: Tracy Williams, Paralegal Specialist

---

**NUMBER OF PAGES (INCLUDING THIS COVER SHEET): 5**

| Name | Firm/Agency | Phone No. | Fax No. |
|---|---|---|---|
| *Lt Col Joe Treanor* | *DIA* | *202-231-2821* | *202-231-2831* |
| *Cheong J. Chon* | *Contracting Officer* | *202-231-8416* | *202-231-2831* |

***MESSAGE*** **1035**

**Accompanying this header sheet is the GAO Decision and After Action Report for the above mentioned protest. THIS DECISION IS NOT FOR PUBLIC DISTRIBUTION, UPON RECEIPT OF THE DECISION FOR PUBLIC RELEASE A COPY WILL BE FORWARDED. If transmission problems occur, please contact Ms. Tracy Williams, (703) 696-2850, DSN: 426-2850. Direct all other questions to LTC Frank March, Trial Attorney at 703-696-2826 or DSN 426-2826.**

*HQ, U.S. ARMY LITIGATION CENTER*
*DEPARTMENT OF THE ARMY*
*CONTRACT AND FISCAL LAW DIVISION, USALSA*
*901 N. STUART STREET, SUITE 500*
*ARLINGTON, VA 22203-1837*
*Tracy.Williams@hqda.army.mil*
*(703) 696-2850 phone*
*(703) 696-1537 fax*

# *facsimile transmittal*

Date: March 6, 2007

Re: GAO Protest of **Olympus Building Services (B-296741.11)**

From: Tracy Williams, Paralegal Specialist

---

**NUMBER OF PAGES (INCLUDING THIS COVER SHEET): 5**

| Name | Firm/Agency | Phone No. | Fax No. |
|---|---|---|---|
| *Lt Col Joe Treanor* | *DIA* | *202-231-2821* | *202-231-2831* |
| *Cheong J. Chon* | *Contracting Officer* | *202-231-8416* | *202-231-2831* |

## ***MESSAGE***

**Accompanying this header sheet is the GAO Decision and After Action Report for the above mentioned protest. THIS DECISION IS NOT FOR PUBLIC DISTRIBUTION, UPON RECEIPT OF THE DECISION FOR PUBLIC RELEASE A COPY WILL BE FORWARDED. If transmission problems occur, please contact Ms. Tracy Williams, (703) 696-2850, DSN: 426-2850. Direct all other questions to LTC Frank March, Trial Attorney at 703-696-2826 or DSN 426-2826.**

**Confidentiality Notice**

**This facsimile transmission and/or the documents accompanying it may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify this office immediately by telephone or arrange the return of documents.**

**DEPARTMENT OF THE ARMY**
UNITED STATES ARMY LEGAL SERVICES AGENCY
901 NORTH STUART STREET
ARLINGTON, VA 22203-1837
(703) 696-2850 DSN 426; Fax ext. 1537
E-mail: Tracy.Williams@hqda.army.mil

REPLY TO
ATTENTION OF

**S: March 21, 2007**

JALS-KFLD (715y) March 6, 2007

MEMORANDUM FOR HQ, Virginia Contracting Activity/Defense Intelligence Agency,
ATTN: Lt Col Joe Treanor, DIAC-DAP-2, Building 6000,
Bolling Air Force Base, Washington, DC 20340-5100

SUBJECT: GAO Protest by **Olympus Building Services, Inc. (B-296741.11)**

1. We enclose for your information and appropriate action a copy of the decision dismissing the subject protest.

2. In accordance with AFARS § 33.190-1, you are required to submit a bid protest after-action report (including agency-level protest) to this office not later than 15 days following the notification of resolution of the protests, including resolution by withdrawal.

3. If you should have any questions or comments, please contact Ms. Tracy Williams, Paralegal Specialist, at DSN 426-2850 or commercial 703-696-2850. Ms. Tracy Williams e-mail address is Tracy.Williams@hqda.army.mil.

Sincerely,

RAYMOND M. SAUNDERS
Chief Attorney for Bid Protests
Contract and Fiscal Law Division

Encls
1. Decision
2. After-Action Report Form

CF:
Virginia Contracting Activity/Defense Intelligence Agency, ATTN: Cheong J. Chon, Contracting Officer, Building 6000, Bolling Air Force Base, Washington, DC 20840-5100 via facsimile: 202-231-2831

PATRICK HENRY LLP

Bid Protest

B-256741-12

7619 Little River Turnpike
Suite 340
Annandale, VA 22003
Tel: 703.256.7754
Fax: 703.256.7883

Richard E. Patrick
admitted in VA, DC

Maynard M. Henry, Sr.
admitted in VA, DC, PA, MI

Sharon J. Theodore-Lewis
admitted in MD, DC, NY, OH

Daryle A. Jordan
admitted in VA, DC, PA

Of Counsel

Yvonka Nono
admitted in VA, DC, FL

Ethel Mitchell
admitted in MD, DC, TX
US Virgin Islands, Ghana

Malik N. Drake
admitted in VA, DC
USPTO Registration

~~[illegible]~~

Maryland Office
5900 Princess Garden Parkway
Suite 640
Lanham, MD 20706
Tel: 240.296.3488
Fax: 240.296.3487

**PROTECTED MATERIAL:**
**TO BE DISCLOSED ONLY IN ACCORDANCE WITH**
**GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER**

RECEIVED
OGC/GAO
2006 DEC 29 PM 2:51

December 29, 2006

**VIA U.S. MAIL & FACSIMILE**
Office of the General Counsel
U.S. Government Accountability Office
441 G Street, N.W.
Washington, D.C. 20548

Attention: Procurement Law Control Group

**Re: Protest of the Ravens Group, Inc.**
**Under Request for Proposal No. HHM402-05-R-0017**
**Defense Intelligence Agency**

Dear Sir:

The Ravens Group, Inc. ("Ravens Group"), 9901 Business Parkway, First Floor, Suite H, Lanham, Maryland 20706, by its undersigned counsel, hereby protests the Defense Intelligence Agency's ("DIA" or "Agency") proposed revocation of its award to the Ravens Group of a contract pursuant to Request for Proposal No. HHM402-05-R-0017 (the "RFP") and award of this requirement to Rowe Contracting Services, Inc. ("Rowe"). The Ravens Group's telephone number is 301.577.8585 and its facsimile number is 301.577.9097. The Contracting Officer for this procurement is Cheong J. Chon, Virginia Contracting Activity, 200 MacDill Boulevard, Building 6000, Bolling Air Force Base, Washington, D.C. 20340-5100. The Contracting Officer's telephone number is 202.231.8416 and his facsimile number is 202.231.2831. A copy of this protest is being sent via facsimile to the Contracting Officer.

The Ravens Group first learned of the information upon which this Protest is based, including the prejudice to The Ravens Group, on December 29, 2006. Because this protest is being filed within ten (10) days of The Ravens Group's notice of the bases of the Protest, the Protest is timely filed. 4 C.F.R. § 21.2(a)(2) (2006).

***The Ravens Group requests that GAO notify the Defense Intelligence Agency today of this protest because notice today appears necessary to secure a "stay" of performance pursuant to FAR 33.104(c).***



www.patrickhenry.net

PATRICK HENRY

Government Accountability Office
December 29, 2006
Page 2

## I. SUMMARY

This is now the fourth award of this same procurement. By letter, dated June 17, 2005, DIA awarded the contract to The Ravens Group, stating that award "was determined to be in the best interest of the Government . . . price and other factors considered." By letter, dated March 23, 2006, nearly nine (9) months later, DIA awarded the same contract to Rowe Contracting Services, Inc. ("Rowe"), stating again that award "was determined to be in the best interest of the Government . . . price and other factors considered." By letter, dated September 13, 2006, received by The Ravens Group September 14, 2006, DIA awarded this contract for the third time—this time to NOSLOT. Once again, DIA stated in its ward letter that award to NOSLOT was the "best value to the Government, price and other factors considered." Now it appears that DIA has awarded this same contract a fourth time—this time again to Rowe.

In response to The Ravens Group's September 23, 2006, protest of DIA's award to NOSLOT, DIA agreed to terminate the award to NOSLOT. In addition, DIA extended The Ravens Group's contract, and advised The Ravens Group of its intent to establish a new source selection board, re-open discussions, and conduct a new award determination. In good faith, The Ravens Group relied on DIA's declared resolution. The Government Accountability Office ("GAO") also apparently relied on DIA's representations, because by decision dated December 6, 2006, GAO dismissed The Ravens Group's protest as being "of purely academic interest."

## II. BACKGROUND

### A. Initial Contract Award to The Ravens Group

DIA issued RFP No. HHM402-05-R-0017 for janitorial/custodial services at its facility located on Bolling Air Force Base on April 14, 2005.

In accordance with the evaluation criteria of the RFP, award of the contract was to be made to "the responsible offeror whose offer, conforming to the solicitation, is determined to be the "best value" to the Government." *See* RFP, p. 40. DIA awarded the Contract to The Ravens Group on June 28, 2005, and The Ravens Group began performance of the Contract on or about July 1, 2005.

### B. Protest of Original Award to The Ravens Group

In June 2005, NOSLOT filed a protest of the award to The Ravens Group. DIA, however, did not notify The Ravens Group of the protest until on or about August 30, 2005. The protest was ultimately dismissed based on DIA's agreement to take corrective action; however,

PATRICK HENRY

Government Accountability Office
December 29, 2006
Page 3

DIA never provided The Ravens Group an explanation regarding its delay in notifying The Ravens Group about the NOSLOT protest.

On March 23, 2006, nine (9) months following the original contract award, DIA notified The Ravens Group that it had completed the corrective action, and had determined that the contract should be awarded to Rowe.

C. **The Ravens Group's Protests**

In response to the award to Rowe, The Ravens Group filed the first of three (3) protests on March 27, 2006. GAO dismissed the March 27th protest on April 6, 2006, based on DIA's agreement to take corrective action.

The Ravens Group subsequently filed protests on April 6, 2006, and April 20, 2006, alleging that Rowe engaged in unfair and unethical conduct that competitively disadvantaged The Ravens Group. GAO dismissed these protests on the ground they would serve no practical consequence in light of DIA's decision to take corrective action. The Ravens Group filed a third protest on May 12, 2006, on the ground that the corrective action proposed by DIA would be inadequate due to the unfair and unethical conduct by Rowe. This protest was also dismissed by GAO.

By protest dated September 23, 2006 (Protest No. B-296741.8), The Ravens Group filed another protest. As discussed above, GAO dismissed this protest as "being of purely academic interest," due to DIA's declared determination to extend The Ravens Group's contract and to conduct a new source selection, new award determination, and re-open discussions.

Notably, in all previous protests of this procurement, DIA has avoided release of an Agency Report. Given the parade of mistakes and delays in connection with this procurement action, GAO should allow this protest to proceed and order DIA to issue an Agency Report in the interest of the integrity of the procurement system.

**III. <u>BASES OF PROTEST</u>**

**A. DIA's Award of a Contract to Rowe is in Bad Faith**

In its letter to The Ravens Group, dated October 12, 2006, DIA rescinded its termination for convenience of the award to The Ravens Group and notified The Ravens Group that its current contract would remain in effect until further notice. DIA further advised The Ravens Group of its intent extend The Ravens Group's Contract, exercise the next option, and assemble a new source selection board, re-open discussions, and conduct a new award determination. By

PATRICK HENRY



Contract Modification effective November 2, 2006, DIA extended The Ravens Group's contract and exercised the next year option.

DIA, however, never re-opened discussions with The Ravens Group as promised, and, in fact, did not communicate with The Ravens Group until it notified The Ravens Group of this latest award to Rowe. DIA's actions are outrageous and directly contradict the promises it made to The Ravens Group incident to GAO's dismissal of the previous protest.

**B. DIA Intentionally Attempted to Deny The Ravens Group an Opportunity to Challenge its New Award Decision**

Moreover, DIA's actions seem calculated to deceive and mislead The Ravens Group, and deny The Ravens Group a fair opportunity to challenge its actions. In addition to the above, DIA sent the notice of its latest award decision to the wrong facsimile number, thereby delaying The Ravens Group's receipt of the notice by nine (9) days. Although DIA's new award decision is dated December 19, 2006. The Ravens Group did not receive the notice until **today**. This is not the first time in this procurement action that DIA has delayed this important notification to The Ravens Group. DIA's failure to notify The Ravens Group of its new awards decision in a timely manner, denied The Ravens Group the opportunity to request and receive a debrief in violation of the Federal Acquisition Regulation.

## IV. CONCLUSION

The Ravens Group hereby requests that GAO recommend to DIA that it terminate its latest award to Rowe, that it issue a new solicitation and begin this procurement action again, including the receipt and review of new proposals.

## V. DISCOVERY REQUEST

The Ravens Group requests that DIA produce the following documents:[1]

1. All documents evidencing or reflecting NOSLOT's original protest of the award to The Ravens Group, including the original protest letter, the contracting officer's statement, the legal opinion, the agency report, and any other communication regarding the original protest.

[1] This request includes all information relating to DIA's original evaluation which led to the award to the Ravens Group as well as any subsequent evaluation relating to the determination to revoke the Ravens Group's award.



PROTECTED MATERIAL: TO BE DISCLOSED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER

www.patrickhenry.net

PATRICK HENRY LLP

7619 Little River Turnpike
Suite 340
Annandale, VA 22003
Tel: 703.256.7754
Fax: 703.256.7883

RICHARD E. PATRICK
admitted in VA, DC

MAYNARD M. HENRY, SR.
admitted in VA, DC, PA, MI

SHARON I. THEODORE-LEWIS
admitted in MD, DC, NY, OH

DARYLE A. JORDAN
admitted in VA, DC, PA

Of Counsel

YUVORA NONG
admitted in VA, DC, FL

ETHEL MITCHELL
admitted in MD, DC, TX
US Virgin Islands, Ghana

MALIK N. DRAKE
admitted in VA, DC
USPTO Registration

~~[illegible]~~

MARYLAND OFFICE:
5900 Princess Garden Parkway
Suite 640
Lanham, MD 20706
Tel: 240.296.3488
Fax: 240.296.3487

**PROTECTED MATERIAL**
**TO BE DISCLOSED ONLY IN ACCORDANCE WITH**
**GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER**

B 256741-.2

January 8, 2007

[redacted] 2007 JAN -8 PM 4:44 RECEIVED USGAO

**VIA FACSIMILE**
Office of the General Counsel
U.S. Government Accountability Office
441 G Street, N.W.
Washington, D.C. 20548

Attention: Mary G. Curcio, Senior Attorney
Procurement Law Control Group

Re: **Supplemental Protest of The Ravens Group, Inc.**
**B-296741.12**
**Defense Intelligence Agency**

Dear Ms. Curcio:

The Ravens Group, Inc. ("Ravens Group") hereby files this protest as a supplement to the above-referenced Protest it filed December 29, 2007, challenging the Defense Intelligence Agency's ("DIA") December 29th notice of its decision to award a custodial/janitorial services contract to ROWE Contracting Service, Inc. ("Rowe") under Request for Proposal No. HHM402-05-R-0017 (the "RFP" or "Solicitation").

The Ravens Group first learned of the bases of this protest, including the prejudice to The Ravens Group, on December 29, 2006, the date of receipt of DIA's notice of the award to ROWE. This Supplemental Protest is being filed within ten (10) days of that date, and is therefore timely. 4 C.F.R. § 21.2(a)(2)(2006).

The Ravens Group is an interested party under 4 C.F.R. § 21.0, to protest the award to ROWE, because The Ravens Group is the original awardee and incumbent contractor for this procurement action, and its economic interest would be directly, substantially, and adversely affected by DIA's latest decision to award to ROWE.

PATRICK HENRY



## I. SUPPLEMENTAL GROUNDS FOR PROTEST

The following discussion, among other things, documents DIA's violation of important statutory and regulatory requirements in connection with its latest award of this procurement to ROWE. As GAO has held, "Where an agency violates procurement requirements, a reasonable possibility of prejudice is a sufficient basis for sustaining a protest, and [GAO] will resolve any doubts concerning the prejudicial effect of the agency's action in favor of the protester." Alliant Techsystems, Inc., B-260215.4; B-260215.5; 95-2 CPD ¶ 79. The Ravens Group was clearly prejudiced by each of the errors made by DIA in this procurement action individually and in combination.

### A. DIA's Award to ROWE Violates Several Important Statutory and Regulatory Requirements

#### 1. DIA Failed to Conduct Discussions With The Ravens Group in Violation of the FAR

In its letter received by The Ravens Group on December 29, 2006, DIA acknowledged that "A competitive range [for this procurement] was established" and that five (5) offerors, including The Ravens Group, made the competitive range. See **DIA's Notice of Award to ROWE, received December 29, 2006, Exhibit A, enclosed.** Contrary to procurement statutes and regulations, however, DIA did not conduct discussions with The Ravens Group. The Federal Acquisition Regulation ("FAR") § 15.306(d)(1) requires the contracting officer to conduct discussions with all contractors in the competitive range. FAR § 15.306(d)(1)—titled "Exchanges with offerors after establishment of the competitive range," states in pertinent part as follows:

> (1) Discussions are tailored to each offeror's proposal, and **must be conducted** by the contracting officer with **each offeror within the competitive range.**
>
> (2) The primary objective of discussions is to maximize the Government's ability to obtain best value, based on the requirement and the evaluation factors set forth in the solicitation.
>
> (3) At a minimum, the contracting officer must, subject to paragraphs (d)(5) and (e) of this section and 15.307(a), indicate to, or discuss with, each offeror still being considered for award, deficiencies, significant weaknesses, and adverse past performance information to which the



PROTECTED MATERIAL: TO BE DISCLOSED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER

PATRICK HENRY



> offeror has not yet had an opportunity to respond. The contracting officer also is encouraged to discuss other aspects of the offeror's proposal that could, in the opinion of the contracting officer, be altered or explained to enhance materially the proposal's potential for award. . . .

(emphasis added). See FAR § 15.306(d).

In J.A. Jones/Bell, A Joint Venture, B-286458; B-286458.2, 2001 CPD ¶ 17, and other GAO decisions, GAO confirmed the requirement for contracting officers to conduct discussions with all offerors in the competitive range, stating:

> The Federal Acquisition Regulation ("FAR") requires that contacting officers discuss with each offeror being considered for award "significant weaknesses, deficiencies, and other aspects of its proposal . . . that could, in the opinion of the contracting officer, be altered or explained to enhance materially the proposal's potential for award. . . . The **statutory and regulatory requirement for discussions with all competitive range offerors** (41 U.S.C. § 253b(d)(1)(A)(1994); FAR § 15.306(d)(1) means that such discussions must be meaningful, equitable, and not misleading (emphasis added).

J.A. Jones/Bell, A Joint Venture, supra; see also Wackenhut, B-286193, 2001 CPD ¶ 8 ("contracting agencies generally must conduct discussions with all offerors whose proposals are within the competitive range"); Rockwell Electronic Commerce Corporation, B-286201.6, 2001 CPD ¶ 162 (discussions with competitive range offerors required "even where the discussions are corrective action" due to a challenged award).

The regulations therefore require a contracting officer to conduct in-depth discussions with offeors in the competitive range, to maximize the government's ability to obtain best value. According to DIA's December 29th notice letter, DIA reviewed the proposals, and established a competitive range, including The Ravens Group, but failed to conduct any discussions (written or oral) with The Ravens Group. DIA's omission deprived The Ravens Group of the opportunity to review and correct perceived weaknesses or deficiencies, if any, in its proposal, and denied the government the opportunity to obtain the best value. DIA's failure to comply with the FAR and conduct discussions was also prejudicial to The Ravens Group and denied it a fair opportunity to compete for this procurement.



PROTECTED MATERIAL; TO BE DISCLOSED ONLY IN ACCORDANCE
WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER

PATRICK HENRY

Government Accountability Office
January 8, 2007
Page 4

2. DIA Did Not Provide The Ravens Group Timely Notification of DIA's Award to ROWE in Violation of the FAR

DIA also failed to timely notify The Ravens Group of its award decision to ROWE in violation of the FAR. FAR § 15.503(b) provides that "Within 3 days after the date of contract award, the contracting officer shall provide written notification to each offeror whose proposal was in the competitive range but was not selected for award." Assuming that the purported award to ROWE was made on or before December 19, 2006, the date of DIA's notice, it is clear that DIA did not provide The Ravens Group notice of the purported award to ROWE until at least ten (10) days following the alleged award. This is confirmed by the facsimile date/time stamp on DIA's December notice to The Ravens Group, which clearly shows that The Ravens Group did not receive the notice until December 29, 2006. See Exhibit A.

In addition, DIA inexplicably sent the notice to a telephone number that The Ravens Group had previously notified DIA was not a proper number to which to send formal communications to The Ravens Group. Moreover, DIA's notice procedures in this instance significantly departed from its previously established notification procedures. Specifically, on previous occasions, when DIA forwarded formal communications to The Ravens Group by facsimile, it also sent a copy by email, regular mail, and/or overnight delivery. Given the timing of this particular notice—one day before the beginning of the long New Year's holiday weekend when many government as well as private offices closed early, DIA's use of a facsimile number it knew was incorrect, and its failure to follow its own practice of ensuring receipt of its notices, DIA's notice in this instance appears to have been intended to reach The Ravens Group after everyone had departed for the long weekend, and thereby deprive The Ravens Group of procedural and substantive rights to challenge DIA's surprising and improper award to ROWE.

In addition to notifying offerors that their proposals are no longer being considered for award, the required notifications also provide offerors with information necessary to challenge a selection, as well as to improve their proposals for future procurements. As a result of DIA's defective, improper, and unlawful notice in this instance, The Ravens Group was also denied an opportunity for a debrief.

1045

**B. DIA's Award to ROWE is Irrational**

DIA's award to ROWE is also irrational. By letter, dated on or about October 12, 2006, DIA notified The Ravens Group of its decision to rescind the termination of The Ravens Group's its contract, which termination DIA had proposed in September 2006 incident to its decision to award this very same procurement to NOSLOT. In addition to rescinding the previous termination for convenience notice, DIA's October 12th letter stated "The current [Ravens Group] contract remains in effect until further notice." Approximately one (1) month later, however, by Contract Modification No. P00009, executed by the contracting officer November

PATRICK HENRY LLP



20, 2006, DIA executed "Option Period II (31 October 2006 through 30 October 2007)" of the Contract. DIA's award to The Ravens Group of Option Year II of the Contract was made without reservation.

Given DIA's extensive review and determination prior to award of Option Year II to The Ravens Group, a review that DIA was required by the FAR to conduct prior to exercise of Option Year II, DIA's decision in early December 2006, to award the custodial/janitorial contract to ROWE, just days after exercising Option Year II of the Contract with The Ravens Group, is irrational, unreasonable, and grossly irregular.

The original Solicitation for this requirement stated that award would be made to the contractor whose offer was determined to be the "most advantageous" to the government. Similarly, the FAR required DIA to determine that award of the option to The Ravens Group was deemed "most advantageous" to the government. FAR Subpart 17.207, the relevant Regulation, states in pertinent part as follows:

> "17.207 Exercise of options
>
> (a) When exercising an option, the contracting officer shall provide written notice to the contractor within the time period specified in the contract.
>
> (b) . . . .
>
> **(c) The contracting officer may exercise options <u>only after</u> determining that-**
>
> (1) Funds are available;
>
> (2) The requirement covered by the option fulfills an existing Government need;
>
> (3) The exercise of the option is the **<u>most advantageous</u>** method of fulfilling the Government's need, price and other factors (see paragraphs (d) and (e) of this section) considered; and
>
> (4) The option was synopsized in accordance with Part 5 unless exempted by 5.202(a) (11) or other appropriate exemptions in 5.202.
>
> . . . . .



PROTECTED MATERIAL: TO BE DISCLOSED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER

PATRICKHENRY

Government Accountability Office
January 8, 2007
Page 6

> (f) Before exercising an option, the contracting officer shall make a written determination for the contract file that exercise is in accordance with the terms of the option, the requirements of this section, and Part 6. To satisfy requirements of Part 6 regarding full and open competition, the option must have been evaluated as part of the initial competition and be exercisable at an amount specified in or reasonably determinable from the terms of the basic contract, e.g.- . . .

Thus, DIA determined, not once but twice that award to The Ravens Group represented the "most advantageous" award decision to the government.[1] As noted above, DIA did not place any reservation in the contract modification exercising the option. Moreover, if DIA did not believe that award to The Ravens Group represented the "most advantageous" award to the government, it was under no compulsion to award the option to The Ravens Group. It is clear that DIA made an independent determination that The Ravens Group represented the best value to the government each and every time it awarded this requirement to The Ravens Group.

Given the timing of DIA's latest award to The Ravens Group, The Ravens Group reasonably relied upon this award as a final statement of DIA's intent for The Ravens Group to continue to perform this requirement. By late November 2006, DIA knew or should have known if it were still considering award to another contractor. DIA, however, did not notify The Ravens Group that it was considering any other contractor for award of this Contract and did not include any reservations in the modification exercising Option Year II. Accordingly, The Ravens Group reliance upon the exercise of Option Year II as definitive, was reasonable and warranted. By contrast, DIA's December 29th notification that it had decided to award the Contract to ROWE, was unconscionable and unfair.

### C. The Period of Performance and Contract Price Awarded to ROWE are also Irrational

The original period of performance of the Contract included a base period of one year and four (4) option periods of one (1) year each. The Ravens Group has already performed the

[1] The award of Option Year II to The Ravens Group actually represents the third (3rd) time in the history of this procurement that DIA has determined The Ravens Group to represent the "most advantageous" alternative to the government. In December 2005, pursuant to FAR Subpart 17.207, DIA awarded The Ravens Group Option Year I of the Contract.



PROTECTED MATERIAL: TO BE DISCLOSED ONLY IN ACCORDANCE
WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER

PATRICK HENRY LLP
attorneys and counselors at law



base period and the first option year, and, as noted, has been awarded Option Year II. DIA's December 29th notice of its award to ROWE, however, states that ROWE's contract price, including the base and all options is $19,217.36. On information and belief, the stated contract price is the original amount proposed by ROWE in its BAFO, to perform the entire contract (the base period and all four (4) options). Since The Ravens Group has already performed two-fifths of the Contract work, ROWE's price is unreasonable.

Similarly, because The Ravens Group has already performed two (2) of the five (5) years of the requirement, ROWE cannot perform this contract for five (5) years as suggested in DIA's December 29th notice unless it is awarded a new contract pursuant to a new solicitation that allows competition.

**D. ROWE's Unfair and Potentially Unlawful Business Practices have Also Irreparably Tainted this Procurement Action and Prejudiced The Ravens Group**

There is compelling evidence that ROWE used unfair and potentially unlawful business practices to win this procurement. As detailed below, ROWE's tactics, some of which Scott Rowe, ROWE's President and CEO, personally verified, were at best questionable, and potentially unlawful. ROWE's unfair business practices were effective, gave ROWE an unfair competitive advantage over The Ravens Group and the other offerors, and directly lead to DIA's decision to award a contract to ROWE.

1. <u>ROWE Used Unfair and Potentially Unlawful Business Practices, Including Cash Payments to Ravens Group's Personnel, to Gain an Unfair Competitive Advantage and Win this Procurement</u>

In response to NOSLOT's protest of DIA's original award of the Contract to The Ravens Group, DIA took corrective action, including conducting new evaluation of the offerors proposals, establishment of a new competitive range, re-opening of discussions (including receipt of new BAFOs), and a new source selection decision. Sworn witness statements document several face-to-face conversations between Ravens Group officials and Scott Rowe, President and CEO of ROWE, in which Mr. Rowe acknowledged and boasted regarding how he had obtained confidential and/or proprietary information regarding The Ravens Group, that he used in ROWE's BAFO to obtain award of the Contract. <u>See</u> J. Jeff Robertson Sworn Statement, dated June 1, 2006, Exhibit B, Enclosed, <u>see also</u> J. Jeff Robertson's and Milton Grant's Sworn Statements, Exhibits C, D, and E, Enclosed.

During his discussions with Ravens Group's officials, Mr. Rowe acknowledged that DIA had contacted him approximately six (6) months after the original award to The Ravens Group and requested that ROWE resubmit a bid if ROWE were still interested in the requirement. This

PATRICK HENRY LLP



communication followed DIA's decision to take corrective action in response to NOSLOT's protest of DIA's original award to The Ravens Group.[2] See Exhibits B-E.

In his June 2006 Sworn Statement, Jeff Robertson, The Ravens Group's former Vice President, recounts a discussion he had with Mr. Rowe, during which Mr. Rowe admitted that the only reason ROWE won the award after DIA's corrective action [pursuant to the NOSLOT protest], was Rowe's submission of a work schedule it developed based on one The Ravens Group had submitted in its proposal. The scheduling information in The Ravens Group's proposal was a key aspect of The Ravens Group's proposal and carefully guarded information within the company. If Rowe obtained detailed knowledge of The Ravens Group's schedule, which Mr. Rowe acknowledged he possessed, ROWE's acquisition of that information was clearly unauthorized. According to Mr. Robertson, Mr. Rowe also admitted to him that:

> He [Mr. Rowe] knew this [submission of a schedule based on the schedule in The Ravens Group's technical proposal] was the only reason Rowe did not win the original bid. . . . Rowe's resubmitted bid was $1.5 million less than The Ravens Group's price. . . [and that] he [Mr. Rowe obtained] the above information prior to [Rowe's] best and final offer being submitted . . . in response to DIA's request for a best and final offer following DIA's agreement to take corrective action based on NOSLOT's protest. Mr. Rowe asserted that he won the award after corrective action because Rowe provided a work schedule based on the one that he had learned The Ravens Group submitted.

Exhibit B.

The disclosure of key aspects of The Ravens Group's technical proposal, exposed important business practices, methods, and bidding strategies of The Ravens Group. ROWE's unauthorized acquisition and use of this information provided ROWE an unfair competitive advantage over The Ravens Group for this procurement. ROWE's acquisition of this information was either the result of an improper disclosure by government officials or unfair tactics on the part of ROWE to obtain this information. In either case, the use of information gained from one contractor's offer to improve the offer of another contractor has been described

[2] On August 2, 2005, approximately one (1) month following NOSLOT's protest of DIA's original award of this Contract to The Ravens Group in June 2005, DIA decided to take corrective action. The corrective action included re-evaluation of all of the offerors proposals, establishment of a new competitive range, re-opening of discussions, submission of new BAFOs, and a new source selection decision.

PATRICK HENRY



as "technical transfusion." In Panafax Corp., B-201176, 81-1 CPD ¶ 515, an unauthorized disclosure of information about Panafax enabled another offeror to decrease its price by 27 percent. GAO sustained the protest, noting among other things, that the improper disclosure allowed a competitor to determine Panafax's approximate price. In Compliance Corp. v. United States, 22 Cl. Ct. 193 (1990), *aff'd*, 960 F.2d (Fed. Cir. 1992), the Court of Federal Claims approved the disqualification of a company for using unfair or improper methods of obtaining information about a competitor. In this case ROWE has admitted to possession of confidential and/or proprietary information belonging to The Ravens Group that The Ravens Group clearly did not authorize ROWE to obtain.

Rowe's actions were improper and highly prejudicial. To demonstrate prejudice, the protestor generally must establish that but for the actions complained of, it would have had a substantial chance of receiving award. McDonald-Bradley, B-270126, 96-1 CPD ¶ 54. In CDA Investment Technologies, Inc., B-272093.3, 97-1 CPD ¶ 103, GAO broadened the test to include a "reasonable possibility that the protestor would have otherwise been the successful offeror", as a sufficient basis for sustaining a protest.

In this case, prejudice is clear. The Ravens Group was the initial awardee on this procurement. It is undisputed that ROWE won award of the contract only after DIA took corrective action pursuant to NOSLOT's protest and re-evaluated the proposals. It is also undisputed that DIA requested revised proposals pursuant to the corrective action. ROWE has admitted that the only reason it won the contract award, was its acquisition and use in its proposal, of information it possessed about The Ravens Group's proposal, including The Ravens Group's scheduling strategy and methodology and pricing information. ROWE obtained this information improperly and used the information to its competitive advantage and the competitive disadvantage of The Ravens Group.

2. ROWE has Demonstrated a Pattern of Using Questionable Tactics to Obtain Information About its Competitors

ROWE has a history of using questionable tactics to obtain information regarding The Ravens Group. As documented in a Sworn Statement by Milton Grant, a Ravens Group official, ROWE made cash payments to several Ravens Group employees to obtain information regarding The Ravens Group. See Milton Grant Sworn Statement, Exhibit B, enclosed. As acknowledged by Ravens Group personnel, and documented by Mr. Grant, Mr. Rowe made cash payments to two (2) Ravens Group managers to obtain information regarding The Ravens Group. Id. He also boasted to Ravens Group officials that he had obtained information regarding The Ravens Group, including information regarding The Ravens Group's price proposal, technical proposal,