PATRICK HENRY
attorneys and counselors at law



staffing methodologies, and other information which he used to ROWE's advantage during this procurement action.

Moreover, on April 14, 2006, Monica Belanger, a Ravens Group employee, was informed by her Security Manager that a routine review of her Joint Personnel Adjudication System file ("JPAS")[3] had revealed that she was employed by Rowe. This revelation surprised and greatly concerned Ms. Belanger, because she had never worked for ROWE; had no knowledge of ROWE; and had not given her permission to ROWE to access or alter her security file. Following a brief investigation to determine whether any other Ravens Group personnel had been compromised, The Ravens Group determined that ROWE had entered the JPAS and transferred all of The Ravens Group's personnel to ROWE. ROWE's action was taken without The Ravens Group's knowledge or authorization or the knowledge or authorization of The effected Ravens Group personnel.

**E. Due to the Passage of Time and The Ravens Group's Performance of a Substantial Part of the Requirement, the Scope of the Work has Changed Materially; Thus, Award to ROWE Without the Issuance of a New Solicitation Violates the Competition in Contracting Act**

As discussed above, due to the passage of time and The Ravens Group's performance of the base period of the contract and the first option period of the Contract, the scope and price of this requirement has changed substantially. Thus, ROWE's contract price as cited in DIA's December 29th notice, which is based on performance of the contract for the entire period in the original solicitation is not valid. Thus DIA will be required to modify ROWE's contract immediately upon award.

The Competition in Contracting Act requires that solicitations permit full and open competition. 10 U.S.C. § 2305 (a)(1) (2006). In this case, the scope, including the volume of work has been materially changed due to the passage of time and performance of a substantial amount of the work by The Ravens Group, such that award to ROWE of the remaining work without subjecting the requirement to full and open competition, unduly restricts competition. Further, a modification substantially reducing the amount of work, to bring the contract in line with current circumstances, constitutes a material change in the scope of the requirement. In Neil R. Gross & Co., B-237434, 90-1 CPD ¶ 212, GAO stated:

1051

[3] JPAS is an automated system for maintaining and adjudicating information for Department of Defense contractors and personnel.

PATRICK HENRY LLP
attorneys and counselors at law

Government Accountability Office
January 8, 2007
Page 11

> In weighing [whether a modification is beyond the scope of the competition], we look at whether there is a material difference between the modified contract and the prime contract that was originally competed . . . In determining the materiality of a modification, we consider factors such as the extent of any changes in the type of work, performance period and costs between the contract as awarded and as modified. .

Undoubtedly, a reduction of some level of this requirement as awarded to ROWE will occur. It reasonably can be expected that it will have a significant impact on the level of staff required, and the quantity of supplies required, among other factors. It is therefore improper to award this new requirement without subjecting it to proper competition.

Moreover, award of a contract to ROWE with the intent of modifying it after award would also be improper and unlawful. See PAI Corporation; Viking Systems International; CER Corporation, B-244287.5; B-244287.6; B-244287.7, 91-2 CPD ¶ 508 ("improper to award a contract with the intent to materially alter the contract terms after award").

**F. DIA Mis-Evaluated The Ravens Group's Proposal**

Upon information and belief, DIA's evaluation of The Ravens Group's proposal, leading to its decision to take the requirement from The Ravens Group and award it ROWE, deviated from the Solicitation, violated CICA and the FAR, and was arbitrary and capricious and not supported by the evidence in significant respect. In addition, upon information and belief, DIA unfairly and disparately scored The Ravens Group's proposal vis-à-vis ROWE's proposal in this latest round of proposal evaluations, in violation of law and regulation. We are confident that review of the agency report and discovery documents we have requested, will confirm DIA's mis-evaluation of The Ravens Group's proposal.

**G. The Initial Award to The Ravens Group was Proper; therefore, the Proposed Termination of The Ravens Group's Contract is Improper**

The initial award to The Ravens Group was entirely proper; there was no impropriety in the initial award to The Ravens Group. Thus, DIA's latest decision to award the Contract to ROWE, and thereby terminate The Ravens Group's contract, is not justified. GAO generally will not review a contracting officer's decision to terminate a contract for convenience. Where, however, the "contracting agency's action is based upon the determination that the contract was improperly awarded, our Office [GAO] will review the validity of the procedures leading to the award to the terminated contractor." See Government Associates, B-240682.5, 93-2 CPD ¶ 215 (Oct. 12, 1993).



PROTECTED MATERIAL: TO BE DISCLOSED ONLY IN ACCORDANCE
WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER
www.patrickhenry.net

PATRICKHENRY
attorneys and counselors at law

Government Accountability Office
January 8, 2007
Page 12

GAO's review of the initial award to The Ravens Group is justified in this instance because the procurement is a "best value" procurement and The Ravens Group provided the best value to the Government, a fact the Government has acknowledged three (3) times. In its June 17, 2005, award letter, the Government acknowledged in writing that The Ravens Group provided the "best value" to the Government. In December 2005, DIA again, determined that award to The Ravens Group presented the "best value" to the Government, when DIA exercised the first option period of the Contract. Through its November 20, 2006, exercise of Option Year II of the Contract, DIA has validated its original award decision to The Ravens Group and determined for a third time that the award to The Ravens Group was proper, justified, and represented the best value to the government.

**H. Under the Totality of the Circumstances, DIA's Latest Corrective Action is Insufficient to Protect the Integrity of the Competitive Procurement System**

As discussed above, the initial award to The Ravens Group was proper. Even if, however, the initial award to The Ravens Group is determined to have been improper, the termination of The Ravens Group's contract and award to ROWE, the fourth award of this same procurement action, is wholly inadequate and insufficient to protect the integrity of the competitive procurement system. As discussed above, it is well-established that GAO will review the validity of the initial award of a contract in those circumstances where the initial awardee is terminated for convenience. See Government Associates, *supra*. Even if, however, GAO determines that the initial award was improper, it must make a further finding regarding "whether the corrective action taken is sufficient to protect the integrity of the competitive procurement system." See Allied Trailer Sales & Rentals, B-224816.2, 86-2 CPD ¶ 522 (Nov. 5, 1986); O.K. Tool & Die Co., B-219806, 85-2 CPD ¶ 398 (Oct. 9, 1985).

DIA's record in this procurement action has been abysmal, and strongly suggests that the administration of this procurement action, including DIA's application of the established evaluation factors is severely and irreparably flawed. A mere review of the offerors previously submitted proposals, as was performed by DIA in connection with its award to ROWE, is wholly inadequate and insufficient to protect the integrity of the competitive procurement system.

DIA has made a number of notable, serious, and prejudicial mistakes in connection with this procurement action, including:

1. Six (6) different determinations regarding which contractor provided the "most advantageous" alternative to the government
2. failing to notify The Ravens Group in a timely manner of the NOSLOT original protest of the award to The Ravens Group

PATRICK HENRY LLP
attorneys and counselors at law



3. taking an unreasonably long period—nine months—to take corrective action following NOSLOT's protest;
4. taking an unreasonably long period—almost six months—to take corrective action following The Ravens Group's first protest;
5. allowing ROWE access to The Ravens Group's personnel and work site during the pendency of The Ravens Group's protest;
6. Unfair, unethical, and potentially unlawful acquisition of The Ravens Group's confidential and/or proprietary information;
7. Failure to conduct discussions with the contractors in the competitive range;
8. Failure to timely notify The Ravens Group of the most recent award to ROWE; and
9. Failure to allow The Ravens Group an opportunity for a debrief.

Given the above, and the fact that The Ravens Group has successfully performed this requirement for over a year, a comprehensive review of this procurement, including the issuance of a full agency report, including the RFP, source selection documents, and other discovery requested by The Ravens Group, is necessary. A comprehensive review of this procurement is essential to determine whether DIA made other prejudicial errors, and to ensure the integrity of the procurement system.

## II. ADDITIONAL REQUESTS FOR RELIEF

In view of the foregoing, GAO should recommend that DIA permanently disqualify ROWE from participation in this procurement and reaffirm its original award to The Ravens Group. In the alternative, DIA should permanently disqualify ROWE from this procurement, develop and issue a new solicitation, receive and review new proposals, and make a new source selection decision.

The Ravens Group also requests the award of its protest costs, including attorney fees, and such other relief as is appropriate.

Respectfully submitted,

Daryle A. Jordan
Counsel for The Ravens Group, Inc.

cc: Ms. Denise B. Carter

1054

**VIRGINIA CONTRACTING ACTIVITY**
**200 MACDILL BLVD., BLDG 6000**
**BOLLING AIR FORCE BASE**
**WASHINGTON, D.C. 20340-5100**

U-1077/AE-2A2

DEC 19 2006

Mr. Joseph Ballard, President
The Ravens Group, LLC
1101 Pennsylvania Avenue, N.W. 6th Floor
Washington, DC 20004

Dear Mr. Ballard:

Your firm responded to this Agency's Request for Proposal (RFP) HHM402-05-R-0017 for the Janitorial/Custodial Services for the Defense Intelligence Agency, Bolling AFB, Washington, DC. The RFP was issued to twenty (20) contractors and only nine (9) proposals were received. A competitive range was established and, as a result, there were five (5) offerors that qualified within the competitive range.

Upon careful reconsideration by the new Source Selection Authority, The following offeror's proposal was selected as being the best value to the Government, price and other factors considered:

ROWE contracting Services, Inc.
5150 Highway 22, Suite C11
Mandeville, LA 70471-3670

Total price including the base period and all options — $19,217,512.36

If you desire a debriefing, please submit your request via fax to Cheong chon at (202) 231-2831 within three (3) calendar days from receipt of this letter. The government will provide a written debriefing.

Your proposal indicated that considerable effort was involved in its preparation and DIA appreciates your effort.

Sincerely,

CHEONG J. CHON
Contracting Officer

1055

EXHIBIT
A

The Ravens GROUP INC.
*We Can Do That!*

# SWORN STATEMENT

# OF

# J. JEFF ROBERTSON

On Monday, April 3, 2005 around 7:45 am while in the Defense Intelligence Agency (DIA) cafeteria, Milton Grant and I was approached by Scott Rowe, President of Rowe Contracting Services, and one of his project managers. Scott began to engage Milton and me in a conversation about the DIA custodial contract. During the conversation Mr. Rowe informed us that during the initial bid The Ravens Group submitted a schedule whereas his company did not submit one. This schedule was a key aspect of The Ravens Group's proposal, and as such, was carefully guarded information within the company. The only y Mr. Rowe could have known about our schedule was if he inspected our proposal, and we are certain we did not authorize Mr. Rowe to review our technical proposal. Thus, any access he had to our technical proposal was unauthorized and improper. Mr. Rowe also stated that he knew this was the only reason Rowe did not win the original bid. He told us that he received a phone call from DIA 6 months after the original award to The Ravens Group requesting that he resubmit his bid. This would have been pursuant to the corrective action DIA agreed to take in response to the protest by NOSLOT. Mr. Rowe went on to say that Rowe's resubmitted bid was $1.5 million less than The Ravens Group's price. This statement suggested that Mr. Rowe had also seen our price proposal. Mr. Rowe admitted to having the above information prior to the best and final offer being submitted by Rowe in response to DIA's request for a best and final offer following DIA's agreement to take corrective action based on NOSLOT's protest. Mr. Rowe asserted that he won the award after corrective action because Rowe provided a work schedule based on the one that he had learned The Ravens Group had submitted. Furthermore, he submitted a lower quote then our quote since he was made aware of our numbers.

I solemnly swear affirm and declare under penalties of perjury and upon personal knowledge that the foregoing is true and correct.

6/01/06
Date

J. Jeff Robertson
Executive Vice President

1056

The Ravens GROUP INC.
We Can Do That!

# S-W-O-R-N S-T-A-T-E-M-E-N-T

This statement reflects a conversation that took place on Monday, March 27, 2006, inside the Defense Intelligence Agency (DIA) at Bolling Air Force Base in Washington, DC. I, Milton James Grant III (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), was introduced to Scott E. Rowe, of Rowe Contracting Services Inc., by The Ravens Group's Contracting Offices Technical Representative (COTR) Ms. Mary Hennigan. Scott introduced himself as the company's president. Scott and I talked about the fact that he was being awarded the custodial contract we currently possessed as a result of an earlier protest lodged by an unknown company. Scott then stated that he had bid about $3,000,000.00 overall less than we did for the contract, and the only reason he did not win the original bid was because The Ravens Group submitted a work schedule and he did not. I told Scott I understood his position and that business is business. Scott began to tell me how he had Mrs. Verlene Cameron (The previous company's Project Manager) in his pocket feeding him information. Scott then stated he knew of our company in great detail. He stated that initially he thought of protesting the original contract but decided against it not wanting to incur what he felt would have been unnecessary legal fees. He stated he received a phone call some six months later inviting him to submit his bid again if he was still interested in the contract. Scott stated that he bid about 1.5 million a year less than The Ravens Group did on the contract. The following week, on Monday, April 3, 2006, in the DIA cafeteria, in the presence of the company's Executive Vice President; Jeff Robertson, Scott again stated he had bid about 1.5 million a year less than The Ravens Group, and had also reviewed several of our employees via JPAS, the network for monitoring security clearances.

## E-N-D O-F S-T-A-T-E-M-E-N-T

Milton J. Grant III
Director
Facilities Management and Security
The Ravens Group Inc.
9901 Business Parkway
Suite H
Lanham, MD 20706
Tel: 301-577-8585
Fax: 301-577-9097

1057

EXHIBIT C

The Ravens GROUP INC. *We Can Do That!*

# S-W-O-R-N S-T-A-T-E-M-E-N-T

This statement reflects a conversation that began on Monday, April 3, 2006, at my residence; 4720 Lauriefrost Court, Alexandria, Virginia. I, Milton James Grant III (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), had engaged in a conversation with Ernest L. Fields, a recently terminated employee of The Ravens Group. I asked Ernest to confirm a rumor I heard involving him and Wendy Scott; the current Project Manager for the custodial contract at DIA both receiving cash payment in the amount of $500.00 each from Scott Rowe, President of Rowe Contracting Services Inc., in exchange for information on Ravens Group employees and the working and scheduling of the contract effort. Ernest stated that both he and Wendy Scott did in fact receive the $500.00 each from Scott Rowe in exchange for help and information to transition the contract from The Ravens Group to Rowe Contracting Services. According to Ernest Fields, this transaction took place on Tuesday, March 28, 2006 for Wendy Scott and on Wednesday, March 29, 2006 for him. The following day, on Tuesday, April 4, 2006 in my office at the company headquarters at 9901 Business Parkway, Lanham, Maryland 20706, Ernest repeated words to the same stating that Scott Rowe gave him and Wendy Scott $500.00 each in exchange for help and information. Ernest stated he returned his money to Scott in fear of being set up.

## E-N-D O-F S-T-A-T-E-M-E-N-T

Milton J. Grant III
Director
Facilities Management and Security
The Ravens Group Inc.
9901 Business Parkway
Suite H
Lanham, MD 20706
Tel: 301-577-8585
Fax: 301-577-9097
Cell: 703-965-6594

1058

EXHIBIT D

The Ravens GROUP INC. We Can Do That!

SWORN STATEMENT

OF

J. JEFF ROBERTSON

On Monday, April 5, 2005 around 7:45 am while in the Defense Intelligence Agency (DIA) cafeteria, Milton Grant and I was approached by Scott Rowe, President of Rowe Contracting Services, and one of his project managers. Scott began to engage Milton and me in a conversation about the DIA custodial contract. During the conversation Scott informed us that during the initial bid The Ravens Group submitted a schedule whereas his company did not submit one. He told us that he received a phone call from DIA 6 months later requesting that he resubmit his bid. Scott went on to say that his bid was $1.5 million less than our quote.

I solemnly swear affirm and declare under penalties of perjury and upon personal knowledge that the foregoing is true and correct.

4/06/06
Date

J. Jeff Robertson
Executive Vice President

1059



EXHIBIT E

Patrick Henry LLP
7619 Little River Turnpike
Suite 340
Annandale, Virginia 22003
(703) 256-7754
Fax: (703) 256-7883

2007 JAN -8 PM 4:46

RECEIVED USGAO

# FAX COVER SHEET

FROM: Daryle A. Jordan
FAX No. 703.256.7883
PHONE No. 703.256.7754
Client/Matter: The Ravens Group, Inc.
Date: January 8, 2007

| DOCUMENTS | NUMBER OF PAGES (including cover)* |
|---|---|
| | |
| Supplemental Protest–B-296741.12 | Nineteen (19) |
| | |
| | |

**PLEASE DELIVER TO THE FOLLOWING INDIVIDUALS IN YOUR ORGANIZATION**

| NAME | ORGANIZATION | PHONE # | FAX # |
|---|---|---|---|
| Ms. Mary G. Curcio, Office of the General Counsel, GAO | Procurement Law Control Group | 202.512.4788 | 202.512.9749 |
| Ms. Denise B. Carter | Defense Intelligence Agency | 202.231.2838 | 202.231.2831 |
| Mr. Joe Ballard | The Ravens Group | 301.577.8585 | 301.577.9097 |

COMMENTS:

*The information contained in this facsimile message is information protected by attorney-client and/or the attorney/work product privilege. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by facsimile. If the person actually receiving this facsimile or any other reader of the facsimile is not the named recipient or the employee or agent responsible to deliver it to the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the above address via U.S. Postal Service.*

*NOT COUNTING COVER SHEET. IF YOU DO NOT RECEIVE ALL PAGES, PLEASE TELEPHONE US IMMEDIATELY AT.

**DEFENSE INTELLIGENCE AGENCY**
Office of the Acquisition Executive
Building 6000, Bolling AFB
Washington, D.C. 20340-5100

The Ravens Group
Attn: Joseph N. Ballard
1101 Pennsylvania Avenue, N.W.
Suite 706
Washington, DC 20004

SUBJECT: HHM40206C0026, Termination for Convenience

1. You are hereby notified that Contract No. HHM40205C0026 is terminated in its entirety for the Government's convenience under the clause entitled 52.212-4(l), "Termination for the Government's Convenience", (March 2002). The termination is effective on 15 September 2006.

2. As of 15 September 2006, you will stop all work related to this contract and will immediately cause any and all of your suppliers and subcontractors to cease work. Subject to the terms of this contract, the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination. The Contractor shall not be paid for any work performed or costs incurred which reasonably could have been avoided.

3. Keep adequate records of your compliance with paragraph (2) above showing the:
   a) Date you received the Notice of Termination;
   b) Effective date of termination;
   c) Percentage of completion of performance on the effective date;
   d) Furnish notice of termination to each immediate subcontractor and supplier that will be affected by this termination.

4. Notify the Contracting Officer of all pending legal proceedings that are based on subcontracts or purchase orders under the contract, or in which a lien has been or may be placed against-termination inventory to be reported to the Government. Also, promptly notify the Contracting Officer of any such proceedings that are filed after receipt of this Notice.

5. This termination is viewed as a cost settlement to the Government. Please provide your settlement proposal to this office within 7 days of receipt of this notification.

6. If you have any questions or need further assistance, please contact the undersigned at (202) 231-8416.

CHEONG J. CHON
Contracting Officer

EBG
EPSTEIN BECKER & GREEN P.C.

EPSTEIN BECKER & GREEN, P.C.
ATTORNEYS AT LAW
1227 25TH STREET, NW, SUITE 700
WASHINGTON, DC 20037-1175
TEL: 202.861.0900
FAX: 202.296.2882

**FACSIMILE COVER SHEET**

DIRECT: 202.861.0900 DIRECT FAX: 202.861.3560

# PRIVILEGED AND CONFIDENTIAL

| To: | Fax Number: | Telephone Number: |
|---|---|---|
| Lt. Col. Frank March | (703) 696-1537 | (703) 696-2826 |

| | | | | |
|---|---|---|---|---|
| From: Kenneth B. Weckstein | Atty. No. | 052 | Pages (including cover): | 2 |
| Date: January 10, 2007 | Client No.: | 053807.001 | | |

**Comments:**

**NOTICE OF PRIVILEGE AND CONFIDENTIALITY**
THIS TELECOPY IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED SOLELY FOR THE ADDRESSEE. ANY UNAUTHORIZED DISCLOSURE, REPRODUCTION, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS INFORMATION IS PROHIBITED. IF YOU RECEIVED THIS TELECOPY IN ERROR, PLEASE NOTIFY US IMMEDIATELY.

THIS COMMUNICATION DOES NOT CONFORM TO THE STANDARDS OF A COVERED OPINION WITHIN THE MEANING OF CIRCULAR 230 ISSUED BY THE UNITED STATES SECRETARY OF THE TREASURY. ACCORDINGLY, ANY TAX ADVICE CONTAINED IN THIS COMMUNICATION CANNOT BE USED, AND WAS NOT INTENDED OR WRITTEN TO BE USED, FOR THE PURPOSE OF AVOIDING UNITED STATES TAX PENALTIES. IN ADDITION, ANY TAX ADVICE CONTAINED IN THIS COMMUNICATION MAY NOT BE USED TO PROMOTE, MARKET OR RECOMMEND A TRANSACTION TO ANOTHER PERSON.

*IF YOU DO NOT RECEIVE ALL PAGES OR HAVE ANY PROBLEMS IN RECEIVING THIS TELECOPY, PLEASE CALL THE SENDER IMMEDIATELY.*

EPSTEIN BECKER & GREEN, P.C.
ATTORNEYS AT LAW
1227 25TH STREET, NW, SUITE 700
WASHINGTON, DC 20037-1175
202.861.0900
FAX: 202.296.2882
EBGLAW.COM

KENNETH B. WECKSTEIN
TEL: 202.861.0900
FAX: 202.861.3560
KWECKSTEIN@EBGLAW.COM

January 10, 2007

**VIA TELEFAX**

Mary G. Curcio, Esquire
U.S. Government Accountability Office
441 G Street, N.W.
Washington, D.C. 20548

Re: Protest of The Ravens Group, Inc.
B-296741.12 and .13

Dear Ms. Curcio:

Rowe Contracting Services, Inc. ("Rowe"), 5150 Highway 22, Suite C11, Mandeville, Louisiana 70471, hereby intervenes in the referenced protests. Rowe was the awardee of the contract that is the subject of the protests. Accordingly, Rowe is an intervenor as defined in 4 C.F.R. § 21.0(b). I would appreciate it if GAO and the parties would provide me with copies of all materials filed in the protests. My contact information is listed above. My desktop telefax number is (202) 861-3560. If you prefer not to use email, my protected telefax number is (202) 822-4657.

Thank you.

Very truly yours,

Kenneth B. Weckstein

KBW:cmj

cc: Daryle A. Jordan, Esq.
Lt. Col. Frank March, Esq.

EPSTEIN BECKER & GREEN, P.C.
ATTORNEYS AT LAW
1227 25TH STREET, NW, SUITE 700
WASHINGTON, DC 20037-1175
202.861.0900
FAX: 202.296.2882
EBGLAW.COM

KENNETH B. WECKSTEIN
TEL: 202.861.0900
FAX: 202.861.3560
KWECKSTEIN@EBGLAW.COM

January 18, 2007

**VIA TELEFAX**

Mary G. Curcio, Esquire
U.S. Government Accountability Office
441 G Street, N.W.
Washington, D.C. 20548

Re: Request to Dismiss protest of The Ravens Group, Inc.
B-296741.12 and .13
Solicitation No. HHM402-05-R-0017

Dear Ms. Curcio:

Rowe Contracting Services, Inc. ("Rowe"), is the awardee under the referenced solicitation and has intervened in these protests. Rowe, through its undersigned counsel, hereby submits this Request to Dismiss protest Grounds A and B of The Ravens Group, Inc. ("Ravens") protest filed December 29, 2006 ("Initial Protest"). Rowe further submits this Request to Dismiss as to grounds A, B, C, E, G, and H of Ravens' protest filed January 8, 2007 ("Supplemental Protest"). By email dated January 11, 2007, the U.S. Government Accountability Office ("GAO") indicated that it will not consider grounds D and F of the Supplemental Protest. Accordingly, if this Request is

granted, both the Initial Protest and Supplemental Protest will be dismissed in their entirety.

**Background**

The Solicitation in question calls for janitorial/custodial services for the Defense Intelligence Agency ("DIA") at Bolling Air Force Base under Solicitation No. HHM402-05-R-0017 ("Solicitation" or "RFP"). The Solicitation originally was issued on April 14, 2005. The most recent award to Rowe followed three previous award decisions by the Virginia Contracting Activity ("Government" or "Agency") on behalf of the DIA, each subject to a corrective action. With respect to this most recent corrective action, by letter dated October 24, 2006, the Contracting Officer advised that the Agency would not conduct new technical evaluations or accept revised proposals, but would make a new source selection based on the offerors' previously submitted offers. *See* Letter from Peter H. Tran, Esq., U.S. Army, Contract and Fiscal Law Division to Mary G. Curcio, Esq., U.S. Government Accountability Office, attached hereto as Exhibit 1.

In accordance with its announced corrective action, DIA made a new selection decision. As a result of this corrective action, on December 19, 2006, DIA made contract award to Rowe. Disappointed offerors were notified by letter dated December 19, 2006 of the Agency's award to Rowe. Ravens claims to have received the Agency's notice of award on December 29, 2006.

Ravens did not request a debriefing from the Agency. Instead, Ravens filed its Initial Protest on December 29, 2006 – the same day that it says it received notice of award. Ravens filed a Supplemental Protest on January 8, 2007. Rowe filed its Notice of Intervention on January 10, 2007.

Ravens sets forth two protest grounds in its Initial Protest. First, Ravens argues that DIA's award of the contract to Rowe was in bad faith. Second, Ravens argues that DIA intentionally misled Ravens in order to deny it a fair opportunity to challenge DIA's actions. The Initial Protest should be dismissed because it does not set forth facts in support of the allegations, let alone facts establishing bad faith. And Ravens' allegation that it was denied an opportunity to challenge DIA's actions does not set forth a valid protest ground because Ravens had the opportunity to request a debriefing from DIA and file a protest based on the information learned at the debriefing. Ravens simply elected not to take advantage of that opportunity.

Ravens' Supplemental Protest contains the remaining six (6) protest grounds still for consideration by GAO. Ravens asserts: (1) DIA's award to Rowe violated several important statutory and regulatory requirements; (2) DIA's award to Rowe was irrational; (3) the period of performance and contract price awarded to Rowe are also irrational; (4) award to Rowe without issuance of a new solicitation violates the Competition in Contracting Act; (5) the proposed termination of The Ravens Group's contract is improper; (6) DIA's corrective action is insufficient to protect the integrity of the competitive procurement system. These remaining protest grounds should be dismissed

because they challenge issues of contract administration and are unsupported by facts and law.

In addition to the above deficiencies, Ravens' protests should be dismissed because Ravens failed to request the debriefing it was entitled to under the Federal Acquisition Regulation ("FAR"). This places DIA and GAO in the position of giving Ravens a debriefing as part of the protest process, well after the time period in FAR §15.506 for requesting debriefings. GAO's timely rules should not be interpreted so as to allow Ravens to circumvent the FAR requirements for debriefings.

**Legal Argument**

**I. GAO Should Dismiss Ravens' Initial Protest and Supplemental Protest Because They were Filed Before a Required Debriefing.**

Ravens' protest presents what Rowe believes is a timeliness issue of first impression. Specifically, in post-award cases where the FAR gives an offeror an absolute right to a debriefing but the offeror fails to request a debriefing can the offeror file a protest? Here, Ravens filed its Initial Protest on December 29, 2006, even though it had the right, under FAR § 15.506, to request a debriefing any time on or before January 4, 2007. Rowe believes that such protest should be viewed as premature. And, Ravens submitted its Supplemental Protest on January 8, 2007, again without having requested a debriefing and after the date on which it was entitled to request a debriefing. Rowe believes that the Supplemental Protest should be dismissed because Ravens did not comply with the FAR rule for required debriefings. Instead, by not

requesting a debriefing, Ravens ignored the cases and timeliness rules that are intended to encourage offerors to participate in debriefings before filing protests.

GAO's rules are designed to discourage premature protests and late protests. The GAO timeliness rules at 4 CFR § 21.2(a)(1) and (2) appear to set up timeliness rules for three categories of protests. Protests based upon alleged improprieties in a solicitation must be filed before the next closing time for receipt of proposals. This rule does not appear to apply to Ravens' protest.

When 4 CFR § 21.2(a)(1) is not applicable, the default rule is 4 CFR § 21.2(a)(2). That rule requires protests to be filed not later than 10 days after the basis is known or should have been known except for "protests challenging a procurement conducted on the basis of competitive proposals under which a debriefing is requested and, when requested, is required." For procurements based on competitive proposals "under which a debriefing is requested and, when requested, is required," Section 21.2(a)(2) of the Bid Protest Regulations states that

> with respect to any protest basis which is known or should have been known either before or as a result of the debriefing, ***the initial protest shall not be filed before the debriefing date offered to the protestor***, but shall be filed not later than 10 days after the date on which the debriefing is held.

4 CFR § 21.2(a)(2) (emphasis added). The purpose of this rule is "to encourage early and meaningful debriefings and to preclude strategic or defensive protests, i.e., protests filed before actual knowledge that a basis for protest exists or in anticipation of improper

actions by the contracting agency." *See The Real Estate Center*, B-274081, 96-2 CPD ¶ 74 (Comp. Gen. 1996).

Thus, it appears that where debriefings are available to protestors, a protest before the debriefing is premature and a protest more than 10 days after the debriefing is late. Nonetheless, the GAO rules that tie protests to debriefings are not triggered unless the debriefing is requested. The issue presented by Ravens' protest is whether Ravens, by not requesting a debriefing, can control the timing of its protest and circumvent the GAO rules that are designed to require the consideration of protests by GAO that have been developed after debriefings. Permitting offerors to protest in such circumstances would be contrary to the intent of the FAR and GAO rules and would result in piecemeal protests. Specifically, protesting to GAO without requesting a debriefing essentially would require the agency and GAO to conduct the debriefing as part of the protest process, after the time periods in FAR § 15.506.[1]

---

[1] FAR § 15.506 states as follows:

> (a)(1) An offeror, upon its written request received by the agency within 3 days after the date on which that offeror has received notification of contract award in accordance with 15.503(b), shall be debriefed and furnished the basis for the selection decision and contract award.
>
> (2) To the maximum extent practicable, the debriefing shall occur within 5 days after receipt of the written request. Offerors that requested a postaward debriefing in lieu of a preaward debriefing, or whose debriefing was delayed for compelling reasons beyond contract award, also should be debriefed within this time period.

If protestors can ignore the provisions of the FAR governing debriefings and elect for GAO to review timeliness based on the 10 day rule of 4 CFR § 21.2(a)(2), protestors always will have the right to file timely protests and shift the time period and forum for conducting debriefings. This would result in protestors obtaining their debriefings as part of the Agency Report submitted in the protest. The GAO timeliness rules should be interpreted to encourage debriefings before protests are filed and implement the intent of the FAR. For these reasons, GAO should dismiss Ravens' protest which was filed before and without requesting a required debriefing.

**II. GAO May Dismiss Protest Grounds That Lack Sufficient Legal or Factual Basis**

Even if Ravens is given a pass for filing its protest before its debriefing, each of its grounds of protest must be dismissed for failure to set forth a sufficient legal or factual basis as required by GAO's Bid Protest Regulations. *See* 4 CFR § 21.1(c)(4). A bid protest must "[s]et forth a detailed statement of the legal and factual grounds of protest. . . ." *Id.* GAO may dismiss protests that lack such a detailed statement as required by Rule 21.1(c)(4). *See* 4 CFR § 21.5(f). Moreover, although there is no technical form of pleading required, at minimum the protestor must "clearly state legally sufficient grounds of protest." *See id.* at § 21.1(f). As discussed below, each of Ravens' protest grounds is legally or factually deficient and warrants dismissal.

***A. Ravens has failed to provide any facts to support its allegation of bad faith by the Agency.***

In its Initial Protest, Ravens asserts that the DIA has acted in bad faith when it awarded this contract to Rowe. *Initial Protest*, at 3. A protestor bears a heavy burden to establish bad faith: "the protestor must [] present facts reasonably indicating, beyond mere inference and suspicion, that the actions complained of were motivated by a specific and malicious intent to harm the protestor." *See E. F. Felt Co., Inc.*, B-289,295, 2002 CPD ¶ 37 (Comp. Gen. 2002). Ravens simply asserts that the Agency's actions were "outrageous" and in direct contradiction to "promises." *Initial Protest*, at 3-4. These allegations are embarrassingly vague and unsupported by any documentation. Even assuming that the Agency promised to conduct discussions -- which it did not -- Ravens has wholly failed to present any facts to establish bad faith Accordingly, Rowe requests that GAO dismiss this ground of Ravens' protest.

***B. Ravens was not prejudiced by the delay in receiving notification of award.***

Ravens alleges that the Agency denied it "a fair opportunity to challenge [DIA's] actions." *Initial Protest*, at 4. This is incorrect. Ravens claims it received notification of award on December 29, 2006, although the notification of award was dated December 19, 2006. Even if taken as true, the delay in receiving notification of award in no way denied Ravens an opportunity to request a debriefing or challenge the DIA's actions. According to FAR 15.506, Ravens had three days from ***receipt*** of notification of contract

award, not the date of contract award, to request a debriefing. Therefore, Ravens was in no way prejudiced by this alleged delay in receiving notification of award.

Ravens repeats this allegation in its Supplemental Protest, arguing that the delay in receiving its notification of award was in violation of the FAR. *See* Supplemental Protest, at 4. Ravens fails to show how it was prejudiced by this delay. Ravens was not prevented from requesting and obtaining a debriefing and was in no way "deprive[d] [of the] procedural and substantive rights to challenge" DIA's award to Rowe. *See id.* A protestor must show that failure to receive appropriate award notice caused prejudice. *See Consolidated Photocopy Co., Inc. and Downtown Copy Center*, B-225,526, 87-1 CPD ¶322 (Comp. Gen. 1987) (finding no prejudice where agency failed to give post award notice, yet the protestor timely filed its protest). For the reasons discussed above, GAO should dismiss this protest ground.

***C. A Contracting Officer is not obligated to conduct discussions where the Agency has reserved the right to award based on initial proposals.***

Ravens claims that the Agency was required to hold discussions with Ravens and that its failure to do so prejudiced Ravens. Ravens misunderstands the law. Contrary to Ravens assertion, FAR 15.306 did not require DIA to conduct discussions with Ravens. FAR 15.306(a)(3) states

> Award may be made without discussions if the solicitation states that the Government intends to evaluate proposals and make award without discussions. If the solicitation contains such a notice and the Government determines it is necessary to conduct discussions, the rationale for doing so shall be documented in the contract file.

The Agency reserved the right to award without discussions. The Solicitation stated "[t]he offeror is reminded that the Government reserves the right to award this effort based on the initial proposal, as received, without discussion." *See* Solicitation, at 37 ¶ 3. Where the solicitation specifically instructs the offerors that award may be made without discussion, the contracting officer is generally under no obligation to conduct discussions.[2] *See Inland Service Corp.*, B-282,272, 99-1 CPD ¶ 113 (Comp. Gen. 1999); *see also Robotic Systems Technology*, B-278195.2, 98-1 CPD ¶ 20 (Comp. Gen. 1998).

Ravens cites to FAR 15.306(d)(1) to support its assertion that it was entitled to discussions with the Agency. Again, Ravens misunderstands the law. FAR 15.306(d)(1) requires that the contracting officer conduct discussions with each offeror in the competitive range whenever it conducts a discussions with one offeror. *National Beef Packing Co.*, B-296,534, 2005 CPD ¶ 168 (Comp. Gen 2005) ("[w]hen an agency conducts discussions with one offeror, it must conduct discussions with all other offerors in the competitive range."). Nowhere in Ravens' protest does it allege that the Agency conducted discussions with any offeror to the exclusion of Raven. And DIA did not conduct any such discussions with Rowe.

[2] With respect to this most recent corrective action, by letter dated October 24, 2006, the Contracting Officer advised that the Agency would not conduct new technical evaluations or accept revised proposals, but would make a new source selection based on the offerors' previously submitted offers. Therefore, there was no reason for the Agency to conduct another round of discussions. *See* Exhibit 1.

***D. Disputes relating to contract administration are not valid grounds for a bid protest.***

Several of Ravens' protest grounds relate to contract administration and should be dismissed pursuant to Rule § 21.5(a) of the Bid Protest Regulations, which states that "[d]isputes between a contactor and the agency are resolved pursuant to the disputes clause of the contract and the Contract Disputes Act of 1978."

*1. Ravens' allegation that the Agency's award to Rowe was irrational is based on a dispute relating to the Contracting Officer's exercise of an option year under Ravens' existing contract.*

Ravens argues that the Agency's award to Rowe is irrational because the Agency exercised an option year under its existing contract with Ravens. *See* Supplemental Protest, at 4-6. Ravens does not cite to any GAO case law to support this theory because there is none. The exercise of an option year of an existing contract is not a proper ground for a bid protest. *See* 4 C.F.R. § 21.5(a); *see also Good Food Service, Inc.*, B-277,145, 98-1 CPD ¶ 102 (Comp. Gen. 1997) (stating that "an agency's decision whether to extend an existing contract is a matter of contract administration beyond our bid protest jurisdiction"). Moreover, Ravens cannot show how it is prejudiced by the Agency's exercise of the option year. Here, Ravens has been permitted to perform for an extended period of time a contract for which it was not entitled to award. That does not give it a basis to protest.

*2. Raven's allegation that the period of performance and contract price awarded to Rowe is irrational is based on issues of contract administration and untimely.*

Ravens argues that the period of performance and the contract price awarded to Rowe is irrational because Raven already has been performing the contract. *See* Supplemental Protest, at 6-7. Raven alleges, based on information and belief, that the period of performance of Rowe's contract includes four (4) option years as originally stated in the Solicitation. Because Ravens has been performing this contract for over a year, it argues that it is irrational to award all the option years to Rowe. Ravens also argues that the contract price is irrational because of this very same reason, that it is based on the base year plus four (4) option years. This argument is without merit in that Rowe was awarded the contract for the base year only, with the Agency reserving the right to exercise the option years. As stated above, an Agency's decision to exercise an option year is purely a matter of contract administration and beyond the purview of the bid protest regulations. *Good Food Service, Inc.*, B-277,145, 98-1 CPD ¶ 102 (Comp. Gen. 1997); *see also Ervin and Associates*, B-279,219, 98-1 CPD ¶ 126 (Comp. Gen. 1998) (stating that "[o]nce a contract is awarded, GAO generally will not review modifications to that contract, such as a task order, because such matters are related to contract administration and are beyond the scope of the GAO's bid protest function").

Moreover, any protest grounds based on the Ravens' performance of the work under this Solicitation is untimely. Ravens was required to raise this protest ground within 10 days of when it knew or should have known the basis of the protest. *See* Rule

21.2(a)(2). At the time the Agency announced it would take the most recent corrective action, Ravens knew it had been performing work under its existing contract. Ravens should have known that the Agency would award the contract as stated in the Solicitation, which included four (4) option years. At that time, Ravens failed to raise the issue that award of this contract with all four (4) option years would be irrational. In addition to challenging issues of contract administration, this protest ground also must be dismissed as untimely.

Ravens' additional protest ground, that its performance has changed the scope of the contract so as to require issuance of a new solicitation, also should be dismissed. That protest ground also challenges issues of contract administration and is untimely.

> *3. Disputes involving the termination of Ravens' existing contract are a matter of contract administration and untimely and therefore should be dismissed.*

Ravens argues that the initial award of the contract to it was proper and therefore, the proposed termination of its contract is improper. *See* Supplemental Protest, at 11-12. Ravens acknowledges that a contracting officer's decision to terminate a contract is a matter of contract administration and not reviewed by the GAO. *See* Supplemental Protest, at 11 ("GAO generally will not review a contracting officer's decision to terminate a contract for convenience."); *see also The Writing Co.*, B-2984622.2, 2000 CPD ¶ 100 (Comp. Gen. 2000) (stating that "[t]he propriety of the termination itself involves a matter of contract administration, which we do not review as part of our bid protest function"). In limited circumstances, GAO will review a

termination that "flows from a defect the contracting agency perceived in the award process." *See Fisher-Cal Industries, Inc.*, B-285,150.2, 2000 CPD ¶ 115 (Comp. Gen. 2000). GAO will review the award procedures to determine if the initial award was improper and whether the corrective action was appropriate to protect the integrity of the competitive procurement system. *See id.* The corrective action taken by the Agency here is not improper and its decision to terminate Ravens' contract is a matter of contract administration that does not fall under the bid protest jurisdiction. Also, Ravens' time to challenge DIA's decision to take corrective action based on the initial award to Ravens, which took place in 2005, has long passed. Accordingly, Ravens' protest grounds based on the Agency's decision to terminate must be dismissed.

*4. Ravens' protest grounds based on the sufficiency of the Agency's corrective action are based on matters of contract administration and also are untimely.*

Ravens claims that the corrective action taken by the Agency is insufficient to protect the integrity of the procurement system. *See* Supplemental Protest, at 12. Ravens' protest grounds based on the impropriety of the corrective action here is untimely. The Agency announced its intent to take corrective action, as well as the manner of the corrective action on October 24, 2006. Ravens lists a number of allegations, all of which it was aware of at the time this most recent corrective action was announced. Therefore, Ravens knew or should have known the basis of this protest ground on October 24, 2006. Ravens had 10 days from that date to file its

protest. Instead, Ravens filed this protest on January 8, 2007. Therefore, this protest ground is untimely.

Moreover, GAO will "not object to an agency's proposed corrective action where the agency concludes that the award, because of the perceived flaws in the procurement process, was not necessarily made on the basis most advantageous to the government, so long as the corrective action taken is appropriate to remedy the impropriety." *See Fisher-Cal Industries, Inc.*, B-285,150.2, 2000 CPD ¶ 115 (Comp. Gen. 2000). Ravens has failed to provide any facts establishing that the corrective action here is not an appropriate remedy or is improper. For this reason also, Rowe requests that this protest ground be dismissed.

**III. Ravens' Request for Documents Should be Denied as All Documents Requested Are Irrelevant to Any of the Claims Set Forth In Raven's Protest.**

Rowe submits that Ravens' protests B-296741.12 and .13 should be dismissed in their entirety and therefore, Ravens' document requests in the .12 protest should be denied. In the alternative, Rowe submits that Ravens' document requests are irrelevant to the protest grounds it has asserted and therefore should be denied.

***A. Ravens did not dispute any offerors' technical or price evaluation***

Any documents relating to the technical or price evaluation of any offeror is irrelevant to any of the protest grounds asserted. Therefore, the following document requests should be denied:

- All documents evidencing or reflecting the technical evaluation of The Ravens Group and the other offerors.

- All documents upon which the DIA relied in evaluating the Ravens Group and the other offerors.

- All documents evidencing or reflecting DIA's evaluation of the capabilities of The Ravens Group and the other offerors.

- All documents evidencing or reflecting DIA's consideration of The Ravens Group's past performance and experience in making its award decision.

- All documents evidencing or reflecting DIA's consideration of The Ravens Group's price proposal and Rowe's price proposal in its award decision.

- The source selection plan, if any.

- Any and all other guidance provided to the evaluators, or referred to by them.

***B. Any documents relating to prior awards of this procurement are irrelevant and untimely.***

Furthermore, any protest ground alleged in this protest that does not related to the current award is untimely and irrelevant and any document requests relating to those grounds should be denied. Therefore, following document requests should be denied:

- All documents evidencing or reflecting NOSLOT's original protest of the award to The Ravens Group, including the original protest letter, the contracting officer's statement, the legal opinion, the agency report, and any other communications regarding the original protest.