**OLYMPUS BUILDING SERVICES, INC.**
**DEFENSE INTELLIGENCE AGENCY**
**OPTION YEAR 2**
**LABOR COST BREAKDOWN**
**JANITORIAL SERVICES**

[redacted]

**OLYMPUS BUILDING SERVICES, INC.**
**DEFENSE INTELLIGENCE AGENCY**
**OPTION YEAR 2**
**LABOR COST BREAKDOWN**
**JANITORIAL SERVICES**

**TOTAL COST SUMMARY:**

[redacted]

OLYMPUS BUILDING SERVICES, INC.
DEFENSE INTELLIGENCE AGENCY
OPTION YEAR 2
LABOR COST BREAKDOWN
JANITORIAL SERVICES

SALARIES CONTRACT MANAGEMENT

[redacted]

**OLYMPUS BUILDING SERVICES, INC.**
**DEFENSE INTELLIGENCE AGENCY**
**OPTION YEAR 2**
**LABOR COST BREAKDOWN**
**JANITORIAL SERVICES**

**ESCORT SERVICES**

[redacted]

**OLYMPUS BUILDING SERVICES, INC.**
**DEFENSE INTELLIGENCE AGENCY**
**OPTION YEAR 3**
**LABOR COST BREAKDOWN**
**JANITORIAL SERVICES**

[redacted]

OLYMPUS BUILDING SERVICES, INC.
DEFENSE INTELLIGENCE AGENCY
OPTION YEAR 3
LABOR COST BREAKDOWN
JANITORIAL SERVICES

[redacted]

**OLYMPUS BUILDING SERVICES, INC.**
**DEFENSE INTELLIGENCE AGENCY**
**OPTION YEAR 3**
**LABOR COST BREAKDOWN**
**JANITORIAL SERVICES**

[redacted]

**OLYMPUS BUILDING SERVICES, INC.**
**DEFENSE INTELLIGENCE AGENCY**
**OPTION YEAR 3**
**LABOR COST BREAKDOWN**
**JANITORIAL SERVICES**

**TOTAL COST SUMMARY:**

[redacted]

**OLYMPUS BUILDING SERVICES, INC.**
**DEFENSE INTELLIGENCE AGENCY**
**OPTION YEAR 3**
**LABOR COST BREAKDOWN**
**JANITORIAL SERVICES**

**SALARIES CONTRACT MANAGEMENT**

[redacted]

OLYMPUS BUILDING SERVICES, INC.
DEFENSE INTELLIGENCE AGENCY
OPTION YEAR 3
LABOR COST BREAKDOWN
JANITORIAL SERVICES

ESCORT SERVICES

[redacted]

**OLYMPUS BUILDING SERVICES, INC.**
**DEFENSE INTELLIGENCE AGENCY**
**OPTION YEAR 4**
**LABOR COST BREAKDOWN**
**JANITORIAL SERVICES**

[redacted]

OLYMPUS BUILDING SERVICES, INC.
DEFENSE INTELLIGENCE AGENCY
OPTION YEAR 4
LABOR COST BREAKDOWN
JANITORIAL SERVICES

[redacted]

OLYMPUS BUILDING SERVICES, INC.
DEFENSE INTELLIGENCE AGENCY
OPTION YEAR 4
LABOR COST BREAKDOWN
JANITORIAL SERVICES

OTHER DIRECT COSTS:

[redacted]

OLYMPUS BUILDING SERVICES, INC.
DEFENSE INTELLIGENCE AGENCY
OPTION YEAR 4
LABOR COST BREAKDOWN
JANITORIAL SERVICES

TOTAL COST SUMMARY:

[redacted]

MAR. 7. 2006 11:33AM OLYPUS BUILDING SVR NO. 522 P. 34

**OLYMPUS BUILDING SERVICES, INC.**
**DEFENSE INTELLIGENCE AGENCY**
**OPTION YEAR 4**
**LABOR COST BREAKDOWN**
**JANITORIAL SERVICES**

**SALARIES CONTRACT MANAGEMENT**

[redacted]

OLYMPUS BUILDING SERVICES, INC.
DEFENSE INTELLIGENCE AGENCY
SUMMARY
LABOR COST BREAKDOWN
JANITORIAL SERVICES

**SUMMARY**

[redacted]

EBG
EPSTEIN BECKER & GREEN P.C.

EPSTEIN BECKER & GREEN, P.C.
ATTORNEYS AT LAW
1227 25TH STREET, NW, SUITE 700
WASHINGTON, DC 20037-1175
TEL: 202.861.0900
FAX: 202.296.2882
DIRECT: 202.861.1898

# FACSIMILE COVER SHEET

**PRIVILEGED AND CONFIDENTIAL**

To: LTC Frank A. March Fax Number: 703-696-1537 Telephone Number: 703-696-2826

From: Kenneth B. Weckstein Atty. No. 00052 Pages (including cover): 18

Date: February 20, 2007

Comments:

**PROTECTED MATERIAL TO BE DISCLOSED**

**ONLY IN ACCORDANCE**

**WITH GOVERNMENT ACCOUNTABILITY**

**OFFICE PROTECTIVE ORDER**

**NOTICE OF PRIVILEGE AND CONFIDENTIALITY**
THIS TELECOPY IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED SOLELY FOR THE ADDRESSEE. ANY UNAUTHORIZED DISCLOSURE, REPRODUCTION, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS INFORMATION IS PROHIBITED. IF YOU RECEIVED THIS TELECOPY IN ERROR, PLEASE NOTIFY US IMMEDIATELY.

THIS COMMUNICATION DOES NOT CONFORM TO THE STANDARDS OF A COVERED OPINION WITHIN THE MEANING OF CIRCULAR 230 ISSUED BY THE UNITED STATES SECRETARY OF THE TREASURY. ACCORDINGLY, ANY TAX ADVICE CONTAINED IN THIS COMMUNICATION CANNOT BE USED, AND WAS NOT INTENDED OR WRITTEN TO BE USED, FOR THE PURPOSE OF AVOIDING UNITED STATES TAX PENALTIES. IN ADDITION, ANY TAX ADVICE CONTAINED IN THIS COMMUNICATION MAY NOT BE USED TO PROMOTE, MARKET OR RECOMMEND A TRANSACTION TO ANOTHER PERSON.

*IF YOU DO NOT RECEIVE ALL PAGES OR HAVE ANY PROBLEMS IN RECEIVING THIS TELECOPY, PLEASE CALL THE SENDER IMMEDIATELY.*

EPSTEIN BECKER & GREEN, P.C.
ATTORNEYS AT LAW
1227 25TH STREET, NW, SUITE 700
WASHINGTON, DC 20037-1175
202.861.0900
FAX: 202.296.2882
EBGLAW.COM

KENNETH B. WECKSTEIN
TEL: 202.861.0900
FAX: 202.861.3580
KWECKSTEIN@EBGLAW.COM

February 20, 2007

**PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER**

**VIA TELEFAX**

Mary G. Curcio, Esquire
Procurement Law Division
U.S. Government Accountability Office
441 G Street, N.W.
Washington, D.C. 20548

Re: Comments of Rowe Contracting Services, Inc. on Supplemental Agency Report
Protest of Olympus Building Services, Inc.
B-296741.14
Solicitation No. HHM402-05-R-0017

Dear Ms. Curcio:

Rowe Contracting Services, Inc. ("Rowe"), is the awardee under the referenced solicitation and has intervened in this protest. Rowe, through its undersigned counsel, hereby submits the following Comments on the Supplemental Agency Report filed on Monday, February 14, 2007 by the Defense Intelligence Agency ("DIA" or "Agency" or "Government"). These Comments are timely filed by February 20, 2007 as requested by the Government Accountability Office ("GAO"). As discussed in Rowe's prior Request for Dismissal, Olympus Building Services, Inc. ("Olympus" or "Protestor") has not been prejudiced by the award of the above-referenced contract to Rowe. Olympus'

Protest, therefore, should be dismissed. In addition, as set forth in the Supplemental Agency Report ("AR") and in these Comments, Olympus' Protest is without merit. DIA's evaluation of proposals was proper.

**Background**

As previously noted, the Solicitation was for janitorial/custodial services for the DIA at Bolling Air Force Base under Solicitation No. HHM402-05-R-0017 ("Solicitation" or "RFP"). The Solicitation stated that the resulting contract would be awarded as a firm fixed price contract. AR, Tab 3 at 27. Nine offerors submitted proposals to this Solicitation. The facts surrounding the evaluation of the proposals are provided in more detail in the Agency Report filed on January 29, 2007 and in the Supplemental Agency Report filed on February 14, 2007.

In the most recent evaluation of proposals, the Source Selection Authority ("SSA") determined that Rowe was the best value for the Government and would be awarded the Contract. AR, Tab 32 at 3. The independent government cost estimate ("IGCE") for this Solicitation was [redacted] for the base and option years. *See* AR, Tab 32 at 3. The SSA stated that because "the IGCE is over a year old and does not adequately reflect the prices received for this solicitation . . . price reasonableness is established by adequate price competition in accordance with FAR 15.404-1(b)(2)(i)." *See id.* Rowe proposed a total price of [redacted]. *See id.* at

PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER



13. The breakdown of Rowe's final proposed pricing for the base year and each option year was as follows:

| | Period of Performance | Amount |
|---|---|---|
| Base Year | 1 April 2006 – 30 October 06 | [redacted] |
| Option Year I | 31 October 06 – 30 October 07 | |
| Option Year II | 31 October 07 – 30 October 08 | |
| Option Year III | 31 October 08 – 30 October 09 | |
| Option Year IV | 31 October 09 – 30 October 10 | |

AR, Tab 32 at 3. The SSA noted that "[a]lthough Rowe's offer is *higher* than the Government's estimate (which contemplated a four-month base period rather than a seven-month base period), Rowe's price is the lowest among the remaining competitors." *See id.* at 4 (emphasis added).

Rowe's total proposed price was [redacted]ss than Olympus' total proposed price of [redacted] *See id.* at 13. The SSA found that Rowe had "adequate financial resources to perform the contract, or the ability to attain them." *See id.* at 16. The SSA also found that Rowe had submitted "the lowest priced offer and is capable of performing excellent quality work." *See id.* at 14.

In its Supplemental Protest, Olympus argues that Rowe's price was so low that it posed a "substantial performance risk" and Rowe should not have been awarded this

PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER



contract. *See* Supplemental Protest of Olympus Building Services, Inc., B-29674.11 (Feb. 2, 2007) at 9 ("Supplemental Protest") In making this argument, Olympus ignores the facts and the law. In effect, Olympus is arguing that Rowe will be performing this fixed-price contract at a loss and does not have the financial resources to absorb such loss. Even if that were true, which it is not, Olympus' protest is a challenge to an affirmative finding of responsibility, which GAO will not hear. Factually, Rowe will not be performing the contract at a loss. Rowe's price proposal shows that the contract will be profitable for Rowe. The price proposal also shows that the price for the initial year is higher than the price for the out years because at the beginning of the contract Rowe will be incurring one-time costs to purchase equipment and pay recruitment bonuses. Finally, according to Federal Acquisition Regulation ("FAR") 15.404-1(b)(2)(i), "[n]ormally, adequate price competition establishes price reasonableness...." Here, the fact that there was adequate price competition, and that the total prices of Olympus and Rowe were in the same range ([redacted]), is further evidence that Rowe's price is reasonable and does not pose any risk to the Government.

Olympus' argument that Rowe's price poses a performance risk also collapses when Rowe's proposed costs are compared to those of Olympus. Rowe's proposed labor costs were equal or greater than Olympus' proposed labor costs. Rowe's budgeted amounts for supplies and equipment were greater than the amounts budgeted

PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER



by Olympus. And, at the same time it argues th[redacted]The only difference between the proposals of both [redacted] Olympus' argument that Rowe's proposal creates a risk of non-performance lacks merit.

In its Supplemental Protest, Olympus also alleges that (1) Rowe's final proposal is incomplete, incoherent, and unresponsive and cannot form the basis of a valid government contract; (2) the SSA considered an unstated evaluation criteria when he used the number of employees offerors proposed to perform the contract as a discriminator in the best value decision; and (3) the DIA's past performance evaluation of Olympus' proposal was irrational. *See* Supplemental Protest, at 2. For the reasons discussed in the prior submissions of the parties (which already addressed the propriety of Olympus' past performance evaluation) and in the Supplemental Agency Report, these supplemental protest grounds all are without merit.

## I. DIA's Evaluation of Rowe's Price Proposal was Reasonable.

### *A. In awarding a fixed-price contract, the DIA was not required to evaluate budgeted costs.*

In its Supplemental Protest, Olympus argues that the award to Rowe should be set aside because the DIA failed to consider Rowe's failure "to make allowance for increases in the cost of janitorial supplies and increased costs associated with maintaining an experienced staff of employees. . . ." *See* Supplemental Protest at 10. In making this argument, Olympus ignores the fact that Rowe's price included more than enough cost and profit to retain staff and pay for increased costs (if any) of janitorial supplies. Similarly, Olympus fails to include any surveys or other evidence to support its argument that the cost of janitorial supplies will increase above the costs allocated by Rowe. Olympus ignores the fact that Rowe has allocated amounts for labor costs in the option years that far exceed the market rates for janitorial labor. And Olympus fails to mention that Rowe [redacted] supplies than did Olympus.

Olympus also is wrong to suggest that the DIA was required to consider whether Rowe's price would result in a loss for the contract. Although it did not do so, Rowe was entitled to offer, and the DIA was entitled to accept, an "unreasonably" low offer. "[T]here is no prohibition against a procuring agency's accepting an unreasonably low or below-cost offer on a fixed-price contract." *Property Analysts, Inc.*, B-277,266, 97-2 CPD ¶ 77 (Comp. Gen. Sept. 12, 1997).

PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER



Before awarding a fixed-price contract, all that is required of an agency with regard to the price offered is to determine whether it is fair and reasonable. FAR § 15.402(a). Rowe's price was fair and reasonable because it was the lowest priced offeror and its price was not considered higher than warranted. *See All Phase Environmental, Inc.*, B-292919.2, 2004 CPD ¶ 62 (Comp. Gen. Feb 4, 2004) (stating that reasonable price determination focuses on whether the price is *higher* than warranted). Here, the SSA determined that price reasonableness would be determined by adequate price competition in accordance with FAR 15.404-1(b)(2)(i) (stating that adequate price competition may also establish price reasonableness). Here, there was adequate price competition and Rowe's price was consistent with the prices of the other competitors (including that of the protester). Therefore, Rowe's price is considered reasonable.

But Olympus's argument is not that Rowe's price was higher than warranted, but that it was too low. As discussed above, an agency may accept an unreasonably low offer when awarding a fixed-price contract. That did not happen here. The price Rowe offered was *higher* than the IGCE, suggesting that Rowe's price was not unreasonably low. Moreover, Olympus offered to perform this contract fo[redacted]ore than Rowe. That further suggests that Rowe's price was not unreasonably low.

Aside from price reasonableness, the Contracting Officer is also required to determine that a prospective contractor is responsible. *See* FAR 14.408-2(a). Here,

the SSA made a responsibility determination when it found that Rowe was capable of performing the work at the price offered. *See* AR, Tab 32 at 14. In any event, responsibility determinations generally are not reviewed by GAO absent a showing that definitive responsibility criteria have not been met or a statute or regulation has been violated. 4 C.F. R. § 21.5(c). Olympus has not alleged any facts to suggest that GAO should review the responsibility determination here.

***B. Rowe's pricing does not present a risk of nonperformance.***

Olympus argues that because Rowe's price proposal did "not provide for price increases over the five-year period of the contract performance" Rowe poses a "substantial performance risk." *See* Supplemental Protest at 9.[1] The mere fact that Rowe's price proposal offers [redacted]oes not mean that Rowe presents a performance risk. As noted below, [redacted]Moreover, by attacking Rowe's

[1] Olympus notes that prior to the last corrective action, the Agency "recognized the performance risk associated with Rowe's price proposal. . . . " *See* Supplemental Protest, at 11. Rowe protested that finding and the Agency took corrective action. The corrective action required reevaluation of proposals. A reevaluation was performed and led to the selection of Rowe for award. As long as an award decision is rational and consistent with the stated evaluation criteria, an agency is entitled to make different findings based on a reevaluation. *See Sci. Applications Int'l Corp.*, B-290971, 2002 CPD ¶ 184 (Comp. Gen. Oct. 16, 2002) (stating that source selection officials have broad discretion and are "subject only to the test of rationality and consistency with the established evaluation criteria"). Here, in both evaluations, the Agency found that Rowe's proposal was "Excellent". And, in any event, the ultimate decision that Rowe's proposal did not present a performance risk was rational and consistent with the evaluation criteria.

price in this competitive evaluation of fixed-price proposals, Olympus is asking the Agency and GAO to perform a cost analysis of Rowe's price proposal. That, of course, is not required by the FAR. Nonetheless, an analysis of Rowe's and Olympus' proposed costs shows that Rowe's price does not pose any risk of non-performance to the Government.

Indeed, a simple comparison of the prices proposed by Rowe and Olympus shows that both companies proposed to pay janitors with cl[redacted]nd that Olympus, like Rowe, did not escalate th[redacted]rate for any of the option years. *Compare* AR, Tab 40 ("Rowe Price Proposal") at "Direct Labor" line items Janitor (FT) and Janitor Evening Shift (PT) for base year and all option years *with* AR, Tab 41 ("Olympus Price Proposal") at line item Janitor – Top Secret / SCI Clearance at 7, 13, 19, 25, 31. A comparison also shows that for most other positions, the rates proposed by Rowe for all contract years exceeded the rates proposed by Olympus. For example, Olympus proposed to pay its janitors who did not have clearance[redacted]hour—without any increase for any of the four option years in the contract. *See* Olympus Price Proposal, line item Janitor – Non Cleared Personnel at 7, 13, 19, 25, 31. Rowe proposed to pay those same janitors [redacted]n hour. *See* Rowe Price Proposal at "Direct Labor" line items Janitor (FT) and Janitor Evening Shift (PT) for base year and all option years. Similarly, Olympus proposed to pay its night managers a maximum o[redacted] an hour in the fourth option year. *See* Olympus Price Proposal "Salaries & Wages" line

PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER



item Night Supervisors at 34.[2] Rowe proposed to pay its night manager[redacted] an hour. *See* Rowe Price Proposal at "Direct Labor" line item Supervisor/Night Shift for base year and all option years. And Rowe's proposal shows [redacted] retain and attract qualified employees. *See id.* at "Other Operating Costs" line item Retention/Recruiting Bonuses for base year and all option years.[3] O[redacted]ad Olympus bothered to compare its labor rates with those of Rowe before it filed its Supplemental Protest it would have seen that it had no basis to protest that Rowe's proposal presented performance risk. Olympus also would have seen that Olympus' own proposed labor rates were, in fact, lower than those of Rowe and, accordingly, Olympus' rates had to present more risk of non-performance than did Rowe's rates.

The same story is true regarding equipment and supplies. Rowe proposed equipment costs of [redacted] Olympus' costs of [redacted]. *Compare* Rowe Price Proposal at "Other Operating Costs" line item Equipment for base year and all option years *with* Olympus Price Proposal line item "Equipment Cost" at 9, 15, 21, 27, 33. And

---

[2] For full time positions, the hourly rate is calculated by dividing the annual salary proposed by Olympus by 2080 hours. In the case of the Night Supervisor P[redacted]ansion costs for the base year and all option years. Therefore, the total cost in a particular year for a given line item is calculated by adding the base contract amount and the DIAC expansion amount. For e[redacted] for the DIAC expansion. *See* Rowe Price Proposal "Other Operating Costs" line item Retention/Recruiting Bonuses, at pp 1-2 (Base Year).

for supplies, Rowe proposed costs of [redacted] Olympus' costs of [redacted] *Compare* Rowe Price Proposal at "Other Operating Costs" line item "Supplies" for base year and all option years *with* Olympus Price Proposal line item "Supply & Material Cost" at 9, 15, 21, 27, 33. Again, to the extent there is any performance risk, the risk is created by Olympus' proposal, not Rowe's proposal.

Had Olympus bothered to look further at the basis for its Supplemental Protest it would have seen the actual reason for the price difference between the Rowe and Olympus proposals. Specifically, by performing the cost analysis that was not required in this procurement but which Olympus demands, we can answer the question as to why Rowe could propose a lower total price than Olympus but still pay employees higher labor rates. The answer is that Olympus included substantially more profit and overhead in its proposal than did Rowe. Olympus proposed a bloated overhead structure that [redacted] of management salaries for this two building contract. *See* Olympus Price Proposal line item "Total Management Salaries" at 9, 15, 21, 27, 33. Rowe, a family owned business, proposed to manage the contract with a less costly structure that relied on supervisors, project managers and a Quality Control Manager. *See* Rowe Price Proposal "Direct Labor Categories" for base year and all option years. In addition to paying an unnecessary layer of management, Olympus' proposal included approximately [redacted] more for profit than did Rowe's proposal.

PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER



*Compare* Olympus Price Proposal line item "Profit" at 9, 15, 21, 27, 33 *with* Rowe Price Proposal at line item "Profit" for base year and all option years.

As discussed above and below, Rowe's proposal did not present any risk of non-performance. Rowe's proposed price was reasonable. And a comparison of Rowe's proposed costs to the proposed costs of Olympus shows that if there is any risk of non-performance, that risk is created by the labor rates, equipment costs and supply costs proposed by Olympus—all of which generally were less than that proposed by Rowe.

1. *Rowe's labor rates were reasonable and did not pose a performance risk.*

Olympus argues that Rowe's price proposal must pose a performance risk to the Government because [redacted] the Contract. *See* Supplemental Protest at 10. [redacted]

[redacted]

[redacted]

*Compare* Rowe Price Proposal "Direct Labor" for base year and all option years *with* Olympus Price Proposal at 31, 34 (Option Year 4 wage rates). As can be seen, Rowe's proposed rates are higher or comparable to the rates proposed by Olympus.

[redacted]