G A O
Accountability * Integrity * Reliability

United States Government Accountability Office
Washington, DC 20548

Comptroller General
of the United States

NOT FOR PUBLIC DISTRIBUTION
THIS DOCUMENT CONTAINS PROTECTED MATERIAL AND IS SUBJECT TO THE TERMS OF A GAO PROTECTIVE ORDER.

# Decision

**Matter of:** Olympus Building Services, Inc.

**File:** B-296741.14; B-296741.15

**Date:**

Grace Bateman, Esq., and Amanda Weiner, Esq., Seyfarth Shaw LLP, for the protester.
Kenneth B. Weckstein, Esq., and Pamela A. Reynolds, Esq., Epstein Becker & Green, PC, for Rowe Contracting Services, Inc., an intervenor.
Frank A. March, Esq., Department of the Army, for the agency.
Mary G. Curcio, Esq., and John M. Melody, Esq., Office of the General Counsel, GAO, participated in the preparation of the decision.

## DIGEST

[redacted]

## DECISION

[redacted]

We deny the protest.

[redacted]

[redacted]

TECHNICAL EVALUATION

[redacted]

[redacted]

PRICE EVALUATION

[redacted]

[redacted]

BEST VALUE DETERMINATION

[redacted]

[redacted]

[redacted]

The protest is denied.

Gary L. Kepplinger
General Counsel

SEYFARTH ATTORNEYS SHAW LLP

815 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006-4004
(202) 463-2400
Fax (202) 828-5393
www.seyfarth.com

B-296741.16

# Facsimile Transmission

2007 FEB 27 PM 2:28 RECEIVED USGAO

Date: February 27, 2007

| RECIPIENT | COMPANY | PHONE NO. | FAX NO. |
| --- | --- | --- | --- |
| Mary G. Curcio | GAO | 202-512-4788 | 202-512-9749 |

**FROM:** Grace Bateman

**PHONE:** (202) 828-5359

**RE:**

**REPLY FAX NO.: (202) 828-5393**

| | | | |
| --- | --- | --- | --- |
| **File No:** | 24134.016 | **Number of Pages, Including Cover:** | 21 |

- [x] Hard copy to follow
- [ ] Per your request
- [ ] Please telephone me
- [ ] Hard copy will not follow
- [ ] Please review and revise if necessary

**MESSAGE:**

Protected Information To Be Disclosed Only
In Accordance With United States Court of
Federal Claims Protective Order

THE INFORMATION CONTAINED IN THIS FACSIMILE IS CONFIDENTIAL AND MAY ALSO CONTAIN PRIVILEGED ATTORNEY-CLIENT INFORMATION OR WORK PRODUCT. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THE FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ADDRESS ABOVE VIA THE U.S. POSTAL SERVICE. THANK YOU.

ANY TAX INFORMATION OR WRITTEN TAX ADVICE CONTAINED HEREIN (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED TO BE AND CANNOT BE USED BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON THE TAXPAYER. (THE FOREGOING LEGEND HAS BEEN AFFIXED PURSUANT TO U.S. TREASURY REGULATIONS GOVERNING TAX PRACTICE.)

**IF YOU DO NOT RECEIVE ALL THE PAGES, PLEASE PHONE (202) 463-2400 AS SOON AS POSSIBLE.**

DC1 30186791.1 / 24134-000016

SEYFARTH SHAW LLP
ATTORNEYS

815 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006-4004
202-463-2400
fax 202-828-5393
www.seyfarth.com

Writer's direct phone

Writer's e-mail

**PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GAO PROTECTIVE ORDER**

2007 FEB 27 PM 2:28
RECEIVED USGAO

Agency Rpt: 3/30/07
B-296741.16

(Corrected February 27, 2007)

February 20, 2007

**VIA FACSIMILE 202-512-9749**
**AND U.S. MAIL**

Mary G. Curcio, Esq.
Senior Attorney
Procurement Law Division
Government Accountability Office
441 G Street, N.W.
Washington, D.C. 20548

Re: B-29674.15; Olympus Building Services, Inc.'s Second Supplemental Protest and Comments on the Agency Report on Olympus' First Supplemental Protest.

Dear Ms. Curcio:

The protester, Olympus Building Services, Inc. ("Olympus"), hereby files its Second Supplemental Protest and its Comments on the Agency Report on Olympus' First Supplemental Protest.

**SECOND SUPPLEMENTAL PROTEST**

The bases for Olympus' Second Supplemental Protest are as follows:

1. DIA's Tradeoff Analysis is irrational because it is based upon a material error of fact regarding the manpower the awardee Rowe Contracting Services, Inc. ("Rowe") and Olympus are proposing. The SSA mistakenly concluded that Rowe offered [redacted] more employees than Olympus,

WASHINGTON, D.C. | BRUSSELS | SAN FRANCISCO | SACRAMENTO | NEW YORK | LOS ANGELES | HOUSTON | CHICAGO | BOSTON | ATLANTA

when, in fact, Olympus actually offered [redacted] more employees (Full-time Equivalents "FTE"s) than Rowe over the contract term. The SSA relied on this mistake of fact in deciding that Rowe's offer represented the best value.

2. In the alternative, GAO cannot determine whether the SSA's best value decision is reasonable in the absence of documents in the record that explain the SSA's comparative manpower analysis, or confirm whether the SSA performed any such analysis at all.

Olympus' Second Supplemental Protest is timely, in that it is filed within 10 days of February 14, 2007, the date on which DIA first provided to Olympus a copy of Rowe's price proposal which contains the data that the SSA relied on when she made the manpower comparison referenced in the agency's price analysis and best value decision. It is also filed within 10 days of February 15, 2007, the date on which Olympus received an e-mail message from DIA disclosing that the agency does not have any evaluation documents to support the SSA's analysis of the manpower the respective firms offered.

**I. The SSA's Tradeoff Analysis Is Fatally Flawed Because It Is Based Upon A Material Error Of Fact Regarding The Offerors' Proposed Manpower.**

**A. The SSA Mistakenly Concluded That Rowe Offered Five More Employees Than Olympus Offered.**

The SSA references and compares the manpower that Rowe and Olympus will provide in both the "Price/Cost Analysis" section of the Source Selection Decision ("SSD") and in the "Tradeoff Analysis" section of the SSD. AR, Tab 32, pp. 14 -16. In the "Price/Cost Analysis" section, the SSA determines that Olympus' price is reasonable and realistic, but then notes that Olympus' price exceeds Rowe's price by [redacted] ile offering [redacted] fewer employees than Rowe:

> OLYMPUS: Offered price is considered reasonable and realistic. However, the offered price is the second lowest among four offers

> and would cost the Government over $557,000 more than Rowe's offer. [redacted]

Id., at p. 14 (emphasis added).

Similarly, in the "Tradeoff Analysis" section of the SSD, the SSA compares the final four offerors and determines that Rowe's low price offer provides for [redacted] employees [redacted] more than the next lowest offeror, Olympus:

> Of the four final offerors, Rowe proposes the lowest priced offer at a firm-fixed-price in the total amount of $19, 217,912 [redacted]

Id., at p. 15 (emphasis added). The SSA obviously thought the comparison between the manpower Rowe and Olympus offered was a major discriminator between offers, because she repeated this comparison in the next paragraph in the "Tradeoff Analysis" section of the SSD:

> [redacted]

Id., at p. 15 (emphasis added).

Finally, again highlighting the importance of the manpower issue in her decision, the SSA included the number of employees each bidder offered in a separate column in the "Summary Comparison" table at the conclusion of the "Tradeoff Analysis" section in the SSD. This separate column in the table again reflects the SSA's conclusion that Rowe offered [redacted] employees, compared with Olympus' [redacted] employees.

PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE
WITH GAO PROTECTIVE ORDER

**B. The SSA Mistakenly Concluded That Rowe Offered More Employees Than Olympus By Using A "Number Of Employees" Standard Rather Than An "FTE" Measure.**

The record does not contain any documents revealing how the SSA determined that Rowe offered [redacted] more employees than Olympus offered. Rowe's incoherent and incomplete final proposal does not state that it will offer to provid[redacted] employees. See, AR, Tabs 20 and 22. Similarly, Olympus' technical proposal does not state that Olympus will provide[redacted] employees. See, AR, Tabs 23 and 25.[1] The only documents in the record that clearly indicate the manpower Rowe and Olympus will provide are the offerors' price proposals. Specifically, both offerors' price proposals provide detailed information on the number of janitors, supervisors, and managers offered, and their full-time (8 hours per day, 40 hours per week, 2080 hours per year), or a part-time (20 hours per week, 1040 hours per year) status. AR, Tabs 40 and 41.

It is not possible to compare the respective manpower proposals by comparing the "number of employees" offered, as the SSA has done, becaus[redacted]e part-time employees each working 20 hours per week are not equivalent t[redacted]ll-time employees each working 40 hours per week. To compare the manpower proposals, it is necessary to express both proposals in terms of "Full-time Equivalent" ("FTE") employees. Thus, one full-time 40-hour-per week employee would equal one FTE, and two part-time 20-hour per week employees would also equal one FTE. The following table summarizes Rowe's and Olympus' manpower proposals in terms of the number of FTEs offered. The data in this table came directly from Rowe's and Olympus' price proposals. AR Tabs 40, 41.

[1] It is possible that the SSA may have actually gotten the nu[redacted]" from the "No Wkers." Column for the DIAC in Rowe's price proposal, despite attributing this number to Olympus. See, AR, Tab 40, p.1.

SEYFARTH ATTORNEYS SHAW



**Rowe's Proposed Total Manpower (Janitorial and Management) For The DIAC And The Expansion Building)[2]**

| Contract Period | Total Annual Labor Hours | Total FTEs (Total Annual Labor Hours/2080) |
|---|---|---|
| 7-Month Base Period | [redacted] | |
| Option 1 | | |
| Option 2 | | |
| Option 3 | | |
| Option 4 | | |
| TOTAL | | |

**Olympus' Proposed Manpower Proposal (Janitorial and Management) For The DIAC And The Expansion Building[3]**

| Contract Period | Total Annual Labor Hours | Total FTEs (Total Annual Labor Hours/2080) |
|---|---|---|
| 7-Month Base Period | [redacted] | |
| Option 1 | | |
| Option 2 | | |
| Option 3 | | |
| Option 4 | | |
| TOTAL | | |

[2] Rowe's price proposal has separate pages for the DIAC and the Expansion Building for each contract period. The Total Annual Labor Hour column includes both janitorial and management employees. The first number in the parenthesis is for the DIAC, and the second is for the Expansion Building.

[3] Olympus' price proposal presents data on janitorial and management personnel on separate pages for each contract period. The first number in parenthesis in the Total Annual Labor Hours column is for janitorial personnel, including the group leader, and the second number is for management, including security escorts. All Olympus data are for both the DIAC and the Expansion Building.

**PROTECTED MATERIAL TO BE RELEASED ONLY IN ACCORDANCE WITH GAO PROTECTIVE ORDER**

Thus, when a proper analysis of Rowe's and Olympus' manpower proposals is performed based upon FTEs, instead of proposing five fewer employees than Rowe, as the SSA mistakenly concluded, Olympus actually offered [redacted] than Rowe offered over the term of the contract. Therefore, any best value tradeoff decision in favor of Rowe that is predicated upon the SSA's [redacted] analysis, instead of the correct [redacted] analysis is irrational on its face.

**C. The SSA Admits Using The Manpower Each Offeror Proposed As A Discriminator In The Best Value Decision.**

In the Legal Memorandum supporting the Agency Report on Olympus' First Supplemental Protest, DIA argues that the SSA "properly considered the number of employees offerors proposed when making the source selection decision." AR, Tab 38, pp. 5-6.

> Protester correctly observes that the Contracting Officer considered the number of employees each offeror proposed when making her source selection decision, however, this consideration was proper.

Id., at pp. 5-6 (emphasis added). In addition, in the Contracting Officer's Statement, the SSA confirms that she considered the number of employees offered in the best value tradeoff analysis:

> The number of employees offered is a factor in best value trade off analysis and a factor in the cost realism analysis in accordance with the solicitation.

AR, Tab 39, p. 2, (emphasis added).[4] These statements are consistent with DIA's statements regarding this issue in the Legal Memorandum and in the Contracting Officer's statement

[4] In the SSD, the SSA asserts that, in accordance with FAR 15. 404-1(b)92)(i), she did not need to perform a cost realism analysis, because there was adequate price competition. However, in the Contracting Officer's Statement in the Agency Report on Olympus' First Supplemental Protest, the SSA states that she took account of the number of employees offered in the cost realism analysis.

supporting the Agency Report on Olympus' initial protest. See, AR, Tab 1, p. 9; AR, Tab 2, p 8. Therefore, DIA cannot deny that the SSA relied upon her mistaken conclusion regarding the number of employees that Rowe offered compared to the number that Olympus offered when she selected Rowe for award.

**D. The Best Value Decision Is Invalid, Because The SSA Mistakenly Credited Rowe With Offering More Manpower Than Olympus When The Opposite Is True.**

GAO cannot uphold a source selection decision that is premised upon a material mistake of fact. American Development Corp., B-251,876, B-251876.4, 93-2 CPD P 49 (protest sustained where cost/technical tradeoff was based on incomplete and inaccurate information). Here, both the SSA and her attorney-adviser have repeatedly confirmed that the SSA considered Rowe's offer to represent the best value because Rowe's offer was slightly lower in price than Olympus' and Rowe offered more manpower. If the SSA had properly determined that Olympus o[redacted] than Rowe offered over the contract term, she would have realized that this increased manpower more than offset the less [redacted] between Olympus' price and Rowe's price. Gemmo Impianti SpA, B-290,427, 2002 CPD ¶146 (agency's source selection decision was unreasonable where tradeoff decision contained material defects that prejudiced protester).

---

However, there are no documents in the record to indicate that the SSA actually performed a cost realism analysis of offers.

**II. In The Alternative, GAO Cannot Determine Whether DIA's Best Value Decision Was Reasonable In The Absence Of Any Documents In The Record To Show How The SSA Evaluated Rowe's Manpower Proposal.**

**A. There Are No Documents In The Record Showing How The SSA Performed The Manpower Analysis That GAO Can Review To Determine Whether The SSA's Tradeoff Was Reasonable.**

The Agency Report in this procurement contains the entire record that supports the agency's contract award to Rowe. There are no documents in this record that shed even a ray of light on the data the SSA considered or the process she used to reach the mistaken conclusion that Rowe offered five more employees than Olympus, and therefore that Rowe represented the best value. The references to the SSA's conclusion in this regard that appear in the SSD and in the Legal Memorandum and Contracting Officer's Statements in the Agency Reports on Olympus' initial and First Supplemental Protests do not provide any reference to an evaluation document or to any type of analysis, or even to raw data in the offerors' proposals, that the SSA considered. The SSA's mistaken [redacted] conclusion appears to have dropped from the sky. Without understanding how the SSA developed th[redacted] attributes to Rowe, GAO cannot determine whether the SSA's best value tradeoff decision is reasonable.

**B. GAO Has Consistently Held That Where The Decision Record Is Incomplete, GAO Cannot Determine Whether A Procurement Decision Is Reasonable.**

It is well-established that if there is not an adequate record of the evaluation and the source selection decision in a procurement, GAO cannot determine the reasonableness of the agency's evaluation. In Biospherics Incorporated, B-278508.4, .5, .6, 98-2 CPD ¶ 96. In Biospherics, GAO sustained the protest of a disappointed offeror where the agency's Source Selection Decision memorandum failed to contain a discussion of the results of the SSA's evaluation of revised proposals after discussions. Accordingly, GAO determined that, as a consequence of the absence of

SEYFARTH SHAW ATTORNEYS



an adequate record, it could not discern the basis for the agency's conclusion that the awardee's final proposal was technically superior to the protester's:

> In sum, the evaluation and source selection record furnished to our Office—numerical scores and a blanket determination of acceptability, no post-discussion narratives, and the source selection memorandum which contains no explanation of how the revised proposal affected the initial evaluation—is insufficient for our Office to determine the reasonableness of the agency's evaluation of proposals and the reasonableness of the agency's selection decision.

Id., at p.4 (emphasis added). See also, Teltara Inc., B-280,922, 98-2 CPD ¶ 124 (protest sustained where the source selection memorandum contains only conclusory information that does not support the best value decision); Opti-Lite Optical, B-281,693, 99-1 CPD ¶ 61 (protest sustained where the record does not provide any documentation or explanation which supports the price/technical tradeoff); Green Valley Transportation, Inc., B-285,283, 2000 CPD ¶ 133 (protest sustained where record is devoid of qualitative analysis of offerors' past performance); J&J Maintenance, Inc., B-284708.3, 2000 CPD ¶ 106 (protest sustained where record does not establish the reasonableness of the evaluation or the cost/technical tradeoff underlying the source selection decision); Cortland Memorial Hospital, B-286,890, 2001 CPD ¶ 48 (protest sustained where there is inadequate support in the record for the scoring that the contracting officer relied on in making the contract award); Marshall-Putnam Soil and Water Conservation District, B-289,949, .2, 2002 CPD ¶ 90 (protest sustained where record does not contain contemporaneous documentation supporting or explaining the agency's evaluation); Midland Supply, Inc., B-298,720, .2, 2007 CPD ¶ 2 (protest sustained where record lacks any documentation reflecting a meaningful comparative analysis of proposals).

Consistent with this precedent, GAO must sustain Olympus' protest because there is not adequate documentation in the record to support the SSA's determination that Rowe offered [redacted] than Olympus offered, and therefore that Rowe represented the best value.

## COMMENTS ON THE AGENCY REPORT ON OLYMPUS' FIRST SUPPLEMENTAL PROTEST

This procurement for janitorial services at the DIA facility at Bolling AFB, Virginia began in the Spring of 2005, and has involved four successive contract awards and three agency corrective actions. Despite this tortured history, the only record before GAO in this case are the documents that pertain to the agency's decision to make a contract award worth approximately $20 million to Rowe. This record was compiled by three technical evaluators and the Contracting Officer/SSA, who performed the past performance evaluation and the price evaluation and made the source selection decision. As set forth in Olympus' First Supplemental Protest, this record contains multiple, material errors, in addition to the SSA's material error regarding the manpower evaluation, discussed above. Specifically, the record does not support the award to Rowe because:

1. DIA ignored Rowe's failure to submit a complete, coherent and responsive offer;

2. The SSA's past performance ratings of Olympus and Rowe were irrational and based upon errors of fact;

3. The SSA's evaluation of price proposals was irrational because she did not consider [redacted] presented performance risk; and

4. The overall evaluation record in this case is insufficient to enable GAO to determine whether the best value decision was reasonable.

I. **Rowe Did Not Submit A Complete, Coherent And Responsive Final Proposal.**

A. **Neither The Agency Nor The Awardee Can Produce Rowe's Final Technical Proposal.**

In its Supplemental Protest, Olympus noted the agency's identification of three weaknesses in Rowe's Technical Proposal during discussions. One of these weaknesses was the lack of a "security awareness plan." AR, Tab 21, p. 1. The document Rowe submitted in its final revised proposal entitled "Security Awareness Plan" consisted of three sentences on a quarter-page, followed by an indeterminate number of pages of generic material on terrorism and security printed from the Department of Defense website.

In the Legal Memorandum supporting the Agency Report on Olympus' First Supplemental Protest, DIA quotes the Technical Evaluation Board's ("TEB") conclusion that Rowe offered a security plan, however, the TEB does not cite to any pages in Rowe's final revised proposal that contain this alleged security awareness plan. AR, Tab 26, p. 6. Moreover, agency counsel has not been able to identify Rowe's Security Awareness Plan, or to agree with Rowe on the number of pages the "plan" includes. See, February 9, 2007 e-mail from LTC Frank March to GAO and the parties regarding missing pages from Rowe's final proposal:

> Despite the minor issue regarding the document in the AR that constitutes Rowe's proposal, <u>it is obvious that whatever the TEB evaluated satisfied them to the extent that they rated Rowe as Excellent.</u>

AR, Tab 38, p. 3 (emphasis added). The agency's extremely cavalier attitude towards whether agency evaluators had a complete copy of Rowe's final technical proposal when they evaluated it, and whether "whatever the TEB evaluated" actually contained a Security Awareness Plan, makes a mockery of the agency's competitive procurement process. If the TEB thought that Rowe's lack of

a Security Awareness Plan was sufficiently important for them to identify this lack as a "weakness" in Rowe's proposal, the TEB and the SSA should make some effort to determine whether Rowe, in fact, Rowe submitted a complete Security Awareness Plan in its final revised proposal, and to reference it in the technical evaluation and SSD. DIA has done neither.

**B. The TEB Did Not "Figure Out" How To Assemble Rowe's Final Proposal, And Consequently Gave Rowe A "Strength" For An Element Not In Rowe's Final Proposal.**

Agency counsel interprets Olympus' claim that Rowe's final proposal was incomplete and incoherent as suggesting that Olympus believes "the TEB and Contracting Officer were not smart enough to figure out how to insert the replacement pages into Rowe's original proposal." AR, Tab 38, p. 2. A close inspection of the TEB's evaluation report suggests that this was, in fact, the case. Based upon its understanding of the proper insertion of the unnumbered, partially blank pages of Rowe's final proposal into its initial proposal, the TEB concluded that Rowe's technical proposal should be given a "strength" for its strong personnel/staffing plan:

> STRENGTHS
>
> Strong personnel/staffing plan and a retention plan with compensation bonuses. Already has exceeded the 20% cleared personnel requirement [redacted]

AR, Tab 26, p. 15 (emphasis added). However, unnumbered page 17 of Rowe's final technical proposal contains a list of only [redacted] Moreover, unlike in Rowe's initial proposal, the replacement page has a blank space in the place where the [redacted]s names appeared in Rowe's original proposal, suggesting that, at the time of Rowe's final proposal, the originally-named workers may no longer have been available.

Therefore, the TEB identified as a "strength" an aspect of Rowe's technical proposal that was not in the final version because it apparently did not "figure out how to insert the replacement pages into Rowe's original proposal." Accordingly, the TEB improperly gave Rowe a "strength" for an element in its proposal that, like the Emperor's Clothes in the classic children's tale, simply was not there.

**C. The SSA Did Not Make An Independent Determination That Rowe's Final Technical Proposal Was Complete.**

Federal Acquisition Regulation (FAR) 15.308 provides that the SSA "may use reports and analyses prepared by others" in making a contract award, however "the source selection decision shall represent the SSA's independent judgment." In this case, the SSA did not follow this mandate and use her independent judgment to even determine whether Rowe had submitted a complete final proposal. Instead of reviewing Rowe's final proposal herself, she relied on the TEB to tell her that Rowe's final proposal was complete:

> Rowe submitted their final proposal in accordance with the discussion letter dated 08 Nov 2005. The final proposal was reviewed by the Technical Evaluators who found that the proposal addressed all issues. Therefore, as the Source Selection Authority, I determine that Rowe's final proposal was complete, coherent and responsive.

AR, Tab 39, p. 1 (emphasis added). The SSA cannot determine that Rowe's final proposal was "complete, coherent and responsive" based upon the Technical Evaluators conclusion to that effect. The SSA has to make her own independent judgment that Rowe's proposal was "complete, coherent and responsive." The SSA's failure to use her own independent judgment to determine that Rowe's final proposal was complete, coherent and responsive, should cause GAO to sustain Olympus' protest on this ground alone. See University Research Co. LLC, B-294,358, B-294358.2-.5, 2004 CPD ¶ 217 ("FAR 15.308 requires documentation of source selection decisions, and recognizes that

while the selection official may rely on reports and analyses prepared by others, the ultimate decision reflects the selection officials' independent judgment.").

In sum, the SSA cannot establish that Rowe's final proposal was complete, coherent and responsive, because she relied on the TEB for this information, and the TEB apparently did not "figure out" how to properly insert the unnumbered pages of Rowe's final proposal into its initial proposal, as evidenced by its giving Rowe a "strength" for an element that was not included in Rowe's final proposal.

## II. The Agency's Past Performance Evaluation Of Olympus Was Irrational, Unreasonable And Prejudicial.

### A. The SSA Mistakenly Concluded That A Government Agency Had Issued A Cure Notice To Olympus.

Olympus has consistently stated that the agency unfairly evaluated its past performance record, by downgrading its overall past performance rating from the "Excellent" the agency had given Olympus in its 2005 past performance e[redacted] which Olympus received in the agency's 2006 evaluation of this same Olympus past performance record. In 2006, the SSA, who performed the past performance evaluation, unreasonably focused on the issuance o[redacted], to the exclusion of all other available information, including an "Excellent" rating from the customer[redacted]

In response, the agency has contended that [redacted] is a sufficiently serious event to justify Olympus' lower past performance rating. It therefore came as a considerable shock to read in paragraph 4 of the Contracting Officer's Statement issued in response to Olympus' First Supplemental Protest, that at this late date, the Contracting Officer/SSA mistakenly believes tha[redacted] to

Olympus. The SSA's statement indicates that she considers this allegedly [redacted] on Olympus' past performance record because "[redacted]" AR, Tab 39, pg. 2 (emphasis added). This statement suggests that the SSA who evaluated offerors past performance, was wholly unfamiliar with Olympus' past performance record when she performed the past performance evaluation. If she had read and understood Olympus' past performance questionnaires, she would have known that [redacted]did not last "a long time," Olympus promptly developed a plan for resolving the underlying issue, and had the problem completely resolved within 30 days [redacted]ce. See, AR, Tab 29, p.5

The Contracting Officer's most recent Statement only supports Olympus' contention that the agency failed to reasonably and accurately consider all of Olympus' past performance information during the 2006 evaluation leading up to the award to Rowe. In light of the closeness of this competition, and the numerous other defects in the agency's evaluation of proposals that Olympus has identified, the SSA's obvious misunderstanding of Olympus' the facts contained in Olympus' past performance record materially affected the award decision.

**B. The SSA's Past Performance Rating Of Olympus Was Based Upon Her Mistaken Conclusio[redacted]And Did Not Give Proper Weight To Olympus' Exclusively "Excellent" and "Outstanding" Past Performance Ratings.**

In its First Supplemental Protest, Olympus argued that the SSA ignored the exclusively "Excellent" and "Outstanding" ratings Olympus received in the past performance questionnaire responses, while ignoring the several "Fair" and "Good" ratings that Rowe received from one of its past performance references. Most important, the SSA ignored the fact that Olympus received