**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(Bid Protest)**

| | |
|---|---|
| The Ravens Group, Inc.,<br>Plaintiff,<br>v.<br>United States,<br>Defendant,<br>and<br>Rowe Contracting Services, Inc.,<br>Third party/Intervenor. | CFC No. 07-243<br>Judge Baskir |

**APPENDIX TO**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INTERVENOR ROWE CONTRACTING SERVICES, INC.'S RULE 52.1(b) MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Kenneth B. Weckstein
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W.
Suite 700
Washington, D.C. 20037
(202) 861-1860
(202) 861-3560 (fax)
kweckstein@ebglaw.com

Counsel for Intervenor

Date: May 18, 2007

**PROTECTED/CONFIDENTIAL MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**

# Table of Contents

**Exhibits:**

Sworn Statement from Scott Rowe
to Guy A Torres, Contracting Officer,
Defense Intelligence Agency,
dated April 28, 2006 .......................................................... Exhibit 1

Redacted Sworn Statement by J. Jeff Robertson,
dated April 6, 2006 .............................................................. Exhibit 2

## Authorities:

Rules of the United States Court of Federal Claims
("RCFC") Rule 52.1(b) .......... Tab A

**United States Code**

28 U.S.C. § 1491 .......... Tab B

41 U.S.C. § 605(a) .......... Tab C

41 U.S.C. § 609 .......... Tab D

**Federal Acquisition Regulation ("FAR")**

FAR § 1.403 .......... Tab E

FAR § 17.207 .......... Tab F

FAR § 17.208(g) .......... Tab G

FAR § 49.502(c) .......... Tab H

FAR § 52.217-9 .......... Tab I

FAR § 52.249-4 .......... Tab J

# EXHIBIT 1

PROTECTED/CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH US COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

PROTECTED/CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH US COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

April 28, 2006

Guy A. Torres
Contracting Officer
Defense Intelligence Agency
Office of the Acquisition Executive
Building 6000, Bolling Air Force Base
Washington, D.C. 20340-5100

Re: Solicitation HHM402-05-R-0017

Dear Mr. Torres:

The Defense Intelligence Agency ("DIA") has provided us with redacted copies of protests, dated April 6 and 20, 2006, filed by The Ravens Group, Inc. ("Ravens"). Those letters include numerous false allegations about Rowe Contracting Services, Inc. ("Rowe"). The purpose of this letter is to set forth facts that respond to Ravens' allegations. As noted below, I am signing this letter in front of a notary and subject to penalties of perjury. Also, I am available to speak to you or anyone from your Office if you require any additional information regarding this matter.

I understand that the first two protests of Ravens have been dismissed and I expect that the third protest also will be dismissed. Still, because Ravens has made false accusations about my integrity and that of Rowe, I believe that it is necessary to establish the actual facts. Rowe has been providing quality services for 26 years. It has established an excellent reputation and record of performance. It would be wrong to let Ravens' false accusations go unanswered.

As I noted in my letter of April 26, 2006 to you, DIA awarded a contract to Rowe under Solicitation HHM402-05-R-0017 on March 23, 2006. The contract was

to cooperate with the incoming contractor to assure that there is a smooth transition and no disruption to services. Also, in custodial services, it is standard, at least initially, for most of the janitors to transfer from the incumbent contractor to the new contractor. That obviously is in the interest of all parties. The incumbent has lost the contract. It either has to lay off the employees, find new work for them that they are willing to accept, and/or make severance payments to the employees. The employees themselves generally want to continue working their same jobs at the same job site. The Government wants to make sure the services continue without interruption. And, no one wants to lay off large numbers of employees. To the extent that the new contractor is willing to hire some or all of the employees of the incumbent and the employees are willing to go to work for the new contractor, it makes perfect sense for the employees to transition to the new contractor.

Here, because there were only seven business days between the time of award and the start of the new contract, there was very little time for transition. Ravens, Rowe and DIA all recognized this and I believe that all parties worked in good faith to facilitate the transition.

Upon notice of award on March 23, 2006, Rowe promptly began plans to commence work. This included making arrangements to deliver approximately $100,000 of new equipment along with an initial delivery of $15,000 of supplies to the DIA building at which Rowe would be performing the contract. Rowe arranged to have the equipment and supplies delivered on Monday, April 3, 2006 between 6:30 a.m. and 9:00 a.m.

On March 27, 2006, I and Robert Duncan, Rowe's Regional Manager, met with you, Juanita Jones and Mary Hennigan at DIA Building 6000. We met at 9:00 a.m. and spoke for approximately 20 to 30 minutes in the main Lobby. Ms. Hennigan then took me and Mr. Duncan to the DIA cafeteria, where we were introduced with Milton of Ravens. I do not know Milton's last name. I understood that Milton was running the job for Ravens. Ms. Hennigan asked Milton for a smooth transition and to provide me with as much information as possible. Milton asked me what Rowe required. I said that Rowe needed current work schedules and a roster of Ravens' employees working on the job, social security numbers, clearance levels and work hours. Milton said that would be no problem. I then asked when I could get the information. Milton said in a day or two. Milton also asked me not to contact employees while they were working, but said that I could talk to the employees while they were on their breaks. Ms. Hennigan agreed to that as well. I said that I would be sitting at the table in the DIA cafeteria for a bit longer. The above conversations and statements of Milton took place in front of Ms. Hennigan, Mr. Duncan and me.

Shortly after the conversation with Milton ended, employees of Ravens came to the cafeteria to speak with me and Mr. Duncan. During that time, Wendy Scott and Ernest Fields came to the cafeteria and introduced themselves to me. I spoke to Ms. Scott and Mr. Fields separately. They each told me that they were making $60,000 per year. I told them that Rowe would have only one project manager for the job, but that the other could be a day supervisor. I also said that Rowe would pay them $60,000 per year. I told Ms. Scott and Mr. Fields that Milton had told me he would get me the

schedules and roster of Ravens' employees. Ms. Scott said that she would talk to Milton and that if it was okay with him, she would get me the employee information the next day.

About 30 employees of Ravens spoke with me and Mr. Duncan at the DIA cafeteria between approximately 9:00 a.m. and 12:30 a.m. on Monday, March 27, 2006. The employees, including Ms. Scott and Mr. Fields, indicated that they wanted to and would become employees of Rowe.

Mr. Duncan and I left the cafeteria at about 12:30 pm on March 27, 2006 to speak with Ms. Hennigan. We spoke with Ms. Hennigan for approximately 15 minutes during which time we told Ms. Hennigan that equipment and supplies for Rowe to perform the contract would be delivered on Monday, April 3, 2006 between 6:30 a.m. and 9:00 a.m. Mr. Duncan and I then left DIA Building 6000.

On March 28, 2006 at approximately 8:30 a.m., Mr. Duncan and I returned to DIA Building 6000. We met with Ms. Hennigan and one other DIA employee and started a walking tour of the building. As part of that tour, we went to the basement where we met with Wendy Scott. Ms. Scott advised me, in the presence of Ms. Hennigan, the other DIA employee and Mr. Duncan that she had the information. I told Ms. Scott that I would see her after I had finished our tour. At approximately 10:00 to 10:30 a.m., Mr. Duncan and I went to find Ms. Scott. We found her in the lobby of DIA Building 6000 on our way out of the building. At that time, Ms. Scott gave me two yellow folders which contained the Ravens' roster of employees and schedules.

I planned to leave Washington, D.C. on Wednesday, March 29, 2006 and return to Rowe's offices in Mandeville, La. I also planned to return to Washington, D.C. on Sunday, April 2, 2006 to make sure that the contract started smoothly. This left Ms. Scott to start putting together necessary paper work, personnel files, and new employee schedules on April 1, 2006. To create goodwill and to make sure that the new contract got off on the right foot, Mr. Duncan and I returned to DIA Building 6000 on March 29, 2006 at approximately 8:15 a.m. We were checked into the building by Ms. Hennigan who brought us to meet with Ms. Scott and Mr. Fields. I then met with Mr. Fields and Ms. Scott in the presence of Mr. Duncan. I gave Mr. Fields and Ms. Scott each a $500 signing bonus. I then told Mr. Fields and Ms. Scott that I would see them on Monday at 5:00 a.m. I then left DIA Building 6000. I returned to Mandeville the afternoon of Wednesday, March 29, 2006.

Between Tuesday, March 28, 2006 and Friday, March 31, 2006, Rowe continued to make preparations to begin performance of the contract on April 1, 2006. Among other things, after I received the employee roster from Ms. Scott on March 28, 2006, Rowe used that information to verify whether the employees had the security clearances and the level of clearance that each employees had. Rowe obtained that information from JPAS, which all contractors are authorized to use with the proper authorization and validations. Rowe used its authorization to access JPAS.

The information that Ravens, through Ms. Scott, gave me on March 28, 2006 contained information on 70 Ravens employees. These include the employees who I had met with on March 27, 2006 and had agreed to start work for Rowe on April

1, 2006. Between March 29, 2006 and March 31, 2006, Rowe used JPAS to attempt to verify security clearances. Rowe only was able to confirm that 14 of the employees had appropriate clearances. Ravens had provided Rowe with insufficient information for the other 56 employees. As of March 31, 2006, with the job scheduled to transfer to Rowe the next day, Rowe obtained ownership of these thru JPAS and that the 14 employees were now Rowe employees.

Later on Friday, March 31, 2006, DIA notified Rowe that DIA had received a protest. In its letter, DIA also advised Rowe that a contract performance stay was in place. DIA advised Rowe that it should cease all preparations to begin performance of the contract, which contract was set to begin the following day on April 1, 2006. Upon receipt of the notice of the bid protest on March 31, 2006, Rowe stopped its preparation to begin performance. Among other things, Rowe stopped activity on JPAS regarding the janitorial employees. This left the 14 employees being shown as working for Rowe.

On April 3, 2006, Mr. Duncan and I went to DIA Building 6000 to arrange to divert the Rowe supplies and equipment that was scheduled to arrive that day. In connection with our visit, Ms. Hennigan signed us in. I advised Ms. Hennigan that I was diverting the supplies and equipment. I was able to stop the equipment shipment at the front gate of the base.

While I was at the DIA building on April 3, 2006, I saw and spoke to Wendy Scott at the escalator for about one to two minutes. Ms. Scott seemed upset. I advised Ms. Scott that Rowe would be back in as soon as the protest was over.

On or about April 5 and 6, 2006, Ms. Scott called me several times. She told me she was unhappy with Ravens. She said that Ravens had fired Mr. Fields. She said that she was working 14-16 hour days. I told Ms. Scott to hang in there.

I spoke to Ms. Scott again on April 7, 2006. She said that she was under a lot of stress and that she was thinking of quitting Ravens. I told Ms. Scott that she should stay with Ravens. Ms. Scott was going to work as Rowe's initial Project Manager for the job and I wanted there to be a smooth transition from Ravens to Rowe when the job did transfer to Rowe.

On or about April 5 or 6, 2006, Ernest Fields called me. I returned his call and spoke with him on April 7, 2006. Mr. Fields told me he had been fired. He asked if I could use him on any job in Washington, D.C. He said he was thinking of going to Mississippi. He also said that Ms. Scott had told Ravens that I had given her $500 for information. I said that was not true and that the money was a good faith payment to get the Project Manager signed up for Rowe. Mr. Fields said that he knew that.

I never paid Mr. Fields or Ms. Scott for information about Ravens. Ms. Scott gave me the employee information, with Ravens' authorization (from Milton), on March 28, 2006. I gave Ms. Scott and Mr. Fields $500 each on March 29, 2006 to make sure that two of Rowe's new, key employees would start and keep the job running smoothly on April 1, 2006 when I would not be in Washington, D.C.

Ravens also suggests that I somehow had confidential information about Ravens because I said that Rowe had won the contract because its price was

$1,500,000 (or $3,000,000) lower than Ravens' price. I do not know what Ravens' price was for the work. I do believe that Rowe's price was substantially lower than Ravens' price. I base that on public information. In DIA's letter of June 27, 2005, DIA notified all offerors that the contract initially had been awarded to Ravens at the price of $21,731,005.09. That price was considerably higher than what the contract price should be and was considerably higher than Rowe's winning bid.

I hope that this information is helpful to you in determining that Ravens' allegations are completely frivolous and that Rowe is a responsible offeror.

I certify under penalty of perjury that the above statement is true.

Scott E Rowe
Scott Rowe

State of Louisiana :
Parish
County of St. Tammany : ss.

I certify that Scott E. Rowe appeared before me on the 2nd day of May, 2006 and executed the aforementioned statement dated April 28, 2006.

Sworn to before me and subscribed in my presence this 2nd day of May, 2006.

(SEAL)

Notary Public
My commission expires:

cc: Kenneth B. Weckstein

# EXHIBIT 2

The Ravens GROUP INC.
*We Can Do That!*

# SWORN STATEMENT

# OF

[redacted]

On Monday, April 3, 2005 around 7:45 am while in the Defense Intelligence Agency (DIA) cafeteria, [redacted] and I was approached by Scott Rowe, President of Rowe Contracting Services, and one of his project managers. Scott began to engage [redacted] and me in a conversation about the DIA custodial contract. During the conversation Scott informed us that during the initial bid The Ravens Group submitted a [redacted] He told us that he received a phone call from DIA 6 months later requesting that he resubmit his bid. Scott went on to say that his bid was $1.5 million less than our quote.

I solemnly swear affirm and declare under penalties of perjury and upon personal knowledge that the foregoing is true and correct.

4/06/06
Date

[redacted]

9901 Business Parkway • Suite H • Lanham, MD 20706 • 301-577-4585 voice • 301-577-9097 fax
1101 Pennsylvania Ave, NW • 6th Floor • Washington, DC 20004 • 202-756-4556 voice
www.theravensgroup.com

# TAB A

# RULES OF THE UNITED STATES COURT OF FEDERAL CLAIMS

As amended through June 20, 2006

documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence or appear in an opinion or memorandum of decision filed by the court. Findings of fact and conclusions of law are unnecessary on decisions of motions under RCFC 12 or 56 or any other motion except as provided in subdivision (c) of this rule.

**(b) Amendment.** On a party's motion filed no later than 10 days after entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly. The motion may accompany a motion for a new trial under RCFC 59. The sufficiency of the evidence supporting the findings may be later questioned whether or not in this court the party raising the question objected to the findings, moved to amend them, or moved for partial findings.

**(c) Judgment on Partial Findings.** If during a trial a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule.

(As revised and reissued May 1, 2002.)

**Rules Committee Note**
**2002 Revision**

The principal change in RCFC 52 relates to the enlargement of subdivision (c) to include, among issues subject to judgment on partial findings, the adjudication of issues critical to the legal sufficiency of a "defense." The amendment makes clear that judgments as a matter of law may be entered against both plaintiffs and defendants and with respect to issues or defenses that may not be wholly dispositive of a claim or defense.

**Rule 52.1 Administrative Records**

**(a) Filing the Administrative Record.** In all cases in which action by, and a record of proceedings before, an agency is relevant to a decision, the administrative record of such proceedings shall be certified by the agency or agencies and filed with the court. The court may by order, including a scheduling order entered pursuant to RCFC 16(b) and Appendix A or C, establish a time for filing the administrative record.

**(b) Motions Respecting the Administrative Record.** The parties may move for partial or other judgment on the administrative record filed with the court. Absent an order by the court setting a different procedure, in any such motion or supporting memorandum, the moving or cross-moving party shall include a Statement of Facts that draws upon and cites to the portions of the administrative record that bear on the issues presented to the court. The opposing party shall include in any response a Counter-Statement of Facts that similarly draws upon and cites to the administrative record.

(Added June 20, 2006.)

**Rules Committee Note**
**2006 Adoption**

RCFC 52.1 has no FRCP counterpart. The rule replaces an earlier rule, RCFC 56.1, that applied certain standards borrowed from the procedure for summary judgment to review of an agency decision on the basis of an administrative record. That incorporation proved to be confusing in practice because only a portion of the summary judgment standards were borrowed. Summary judgment standards are not pertinent to judicial review upon an administrative record. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1355–57 (Fed. Cir. 2005). Specifically, the now-repealed Rule 56.1 did *not* adopt the overall standard that summary judgment might be appropriate where there were no genuine issues of material fact. See RCFC 56(c). Nonetheless, despite this omission, parties, in moving for judgment on the administrative record under the prior rule, frequently would contest whether the administrative record showed the existence of a genuine dispute of material fact. To avoid this

confusion, the new rule omits any reference to summary judgment or to the standards applicable to summary judgment.

Cases filed in this court frequently turn only in part on action taken by an administrative agency. In such cases, the administrative record may provide a factual and procedural predicate for a portion of the court's decision, while other elements might be derived from a trial, an evidentiary hearing, or summary judgment or other judicial proceedings. This rule applies whether the court's decision is derived in whole or in part from the agency action reflected in the administrative record.

The standards and criteria governing the court's review of agency decisions vary depending upon the specific law to be applied in particular cases. The rule does not address those standards or criteria. Correspondingly, any motion for correction or supplementation of the administrative record should be made on the basis of either the specific law to be applied in the particular case or generally applicable principles of administrative law.

**Rule 52.2 Remand; Extension or Termination of Stay of Proceedings on Remand; Disposition of Case**

**(a) Remand.**

**(1) Issuance of Remand Order.** At the request of a party or on its own motion, the court may in any case within its jurisdiction by order remand appropriate matters to any administrative or executive body or official with such direction as may be deemed proper and just.

**(2) Content of Remand Order.** An order of remand shall (A) delineate the area of further consideration or action deemed warranted on the remand, (B) fix the duration of the remand period, not to exceed 6 months, and (C) specify the extent to which court proceedings shall be stayed during the remand period.

**(3) Service of Order.** A certified copy of any order issued pursuant to this rule shall be served by the clerk on the administrative or executive body or official to whom the order is directed. A copy of the order shall be served on each party in conformity with RCFC 5.

**(4) Transmittal of Administrative Record.** Following service of the order as provided for in this rule, the clerk shall transmit the administrative record, if any, to the Department of Justice for return to the administrative or executive body or official to whom the order of remand is directed.

**(5) Advice of Administrative Action.** In every case in which an order of remand is entered pursuant to this rule, the attorney of record for the party so designated in the order of remand shall report to the court the status of proceedings on remand at intervals of 90 days or less, beginning with the date of the order.

**(b) Extension or Termination of Stay of Proceedings on Remand; Disposition of Case.**

**(1) Extension.** If the administrative or executive body or official has not, during the period of stay provided for in an order of remand pursuant to subdivision (a), rendered a decision on the matter remanded, the party to whom opportunity was afforded to obtain further administrative consideration shall, by motion pursuant to RCFC 6, request an extension of the stay of proceedings, or, by motion pursuant to RCFC 7, request the initiation of proceedings toward otherwise disposing of the case.

**(2) Disposition at Administrative Level.** If, during the period of the stay of proceedings as provided for in a remand order, the parties dispose of the case at the administrative level, the plaintiff shall file a motion to dismiss the case with prejudice.

**(3) Decision on Remand.** Upon completion of proceedings pursuant to an order of remand under subdivision (a), the administrative or executive body or official to whom the order was directed shall forward to the clerk for filing 4 copies of the decision or final action on remand. A copy of such decision or action shall be served on each party by the clerk.

**(4) Action by the Parties.** Within 30 days after the filing of a decision or final action pursuant to subdivision (3), each party shall file with the clerk a notice indicating

# TAB B

[MS

one which read: "COURT OF CLAIMS"; substituted the item relating to section 1499 for one which read: "1499. Penalties imposed against contractors under eight-hour law"; and deleted items relating to sections 1504 and 1506, which read: "1504. Tort claims" and "1506. Transfer to cure defect of jurisdiction".

Act Sept. 3, 1982, P. L. 97-248, Title IV, § 402(c)(18)(B), 96 Stat. 669, amended the analysis of this chapter by adding the item relating to section 1508.

**1984.** Act July 18, 1984, P. L. 98-369, Division A, Title VII, Subtitle A, § 714(g)(3), 98 Stat. 962 (applicable to any claim for refund or credit filed after 7/18/84, as provided by § 714(g)(4) of such Act, which appears as 28 USCS § 1509 note), amended the analysis of this chapter by adding the item relating to section 1509.

**1992.** Act Oct. 29, 1992, P. L. 102-572, Title IX, § 902(a)(1), 106 Stat. 4516, amended the chapter heading by substituting "UNITED STATES COURT OF FEDERAL CLAIMS" for "UNITED STATES CLAIMS COURT".

**Other provisions:**

**Applicability of amendment made by Act Sept. 3, 1982.** Act Sept. 3, 1982, P. L. 97-248, Title IV, § 407(a)(1), 96 Stat. 670, which appears as 26 USCS § 6221 note, provides in part that the amendment of the analysis of this chapter "shall apply to partnership taxable years beginning after the date of the enactment of this Act".

**CROSS REFERENCES**

Organization of Court of Federal Claims, 28 USCS §§ 171 et seq.

Concurrent jurisdiction of district courts, 28 USCS § 1346.

Procedure in Court of Federal Claims, 28 USCS §§ 2501 et seq.

Court of Federal Claims, USCS Court of Federal Claims, Rules 1 et seq.

## § 1491. Claims against United States generally; actions involving Tennessee Valley Authority

(a)(1) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

(2) To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to

remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just. The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978 [41 USCS § 609(a)(1)], including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act [41 USCS § 605].

(b)(1) **[Caution: Subject to savings provisions, the jurisdiction of district courts of the United States over actions described in this paragraph terminated on January 1, 2001, as provided by § 12(d) and (e) of Act Oct. 19, 1996, P. L. 104-320, which appear as a note to this section.]** Both the Unites [United] States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

(2) To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs.

(3) In exercising jurisdiction under this subsection, the courts shall give due regard to the interests of national defense and national security and the need for expeditious resolution of the action.

(4) In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5.

(c) Nothing herein shall be construed to give the United States Court of Federal Claims jurisdiction of any civil action within the exclusive jurisdiction of the Court of International Trade, or of any action against, or founded on conduct of, the Tennessee Valley Authority, or to amend or modify the provisions of the Tennessee Valley Authority Act of 1933 [16 USCS §§ 831 et seq.] with respect to actions by or against the Authority.

(June 25, 1948, ch 646, § 1, 62 Stat. 940; July 28, 1953, ch 253, § 7, 67 Stat. 226; Sept. 3, 1954, ch 1263, § 44(a), 68 Stat. 1241; July 23, 1970, P. L. 91-350, § 1(b), 84 Stat. 449; Aug. 29, 1972, P. L. 92-415, § 1, 86 Stat. 652; Nov. 1, 1978, P. L. 95-563, § 14(i), 92 Stat. 2391; Oct. 10, 1980, P. L. 96-417, Title V, § 509, 94 Stat. 1743; April 2, 1982, P. L. 97-164, Title I, Part A, § 133(a), 96 Stat. 39; Oct. 29, 1992, P. L. 102-572, Title IX, §§ 902(a), 907(b)(1), 106 Stat. 4516, 4519; Oct. 19, 1996, P. L. 104-320, § 12(a), 110 Stat. 3874.)

# TAB C

d.b.a. Commercial Marine Services (1983, DOT CAB) 83-1 CCH BCA Dec ¶ 16232.

Board of contract appeals does not lose jurisdiction over contractor's appeal when Department of Justice files civil complaint in District Court against contractor seeking recovery under fraudulent claims provision of Contract Disputes Act of 1978 (41 USCS § 604) and civil penalties under False Claims Act (31 USCS §§ 3729–3733). Hardrives, Inc. (1991) 98 ID 23.

Board does not have jurisdiction to consider Government's claim under 41 USCS § 604 that it is entitled to award against contractor on basis of alleged misrepresentations of fact in connection with contractor's claims for cost of removing storage tanks. Appeal of Nat'l Constr. Co. (1999, PSBCA) 99-2 BCA ¶ 30509.

**3. —Suspension of board proceedings**

Proceedings before board will not be dismissed or suspended merely on government's allegation of fraudulent conduct by contractor; suspension of proceedings is warranted where government demonstrates that there is real possibility that fraud exists which is of such nature as to effectively preclude board from ascertaining facts and circumstances surrounding claim. Warren Beaves (1983, DOT CAB) 83-2 CCH BCA Dec ¶ 16648.

Pendency of civil fraud suit did not divest Board of jurisdiction requiring it to suspend its proceedings since Congress clearly foresaw that allegations of fraud would arise in government contract disputes, legislative history indicated Congressional intent that Board not be totally ousted of jurisdiction, and although board does not have jurisdiction to determine whether fraud exists, it has jurisdiction to make findings that falsification of documents has occurred. TDC Management Corp. (1989, DOT BCA) 90-1 BCA ¶ 22627.

**4. Statute of limitations**

For purposes of six-year statute of limitations in 41 USCS § 604, government claim arises no earlier than submission of contractor's certified claim under Contract Disputes Act, regardless of when conduct rendering contractor's claim false allegedly occurred. Jana, Inc. v United States (1995) 34 Fed Cl 447, 40 CCF ¶ 76862.

Six-year statute of limitations (41 USCS § 604) begins to run at earliest time that defendant could have been aware of alleged fraud; commission of misrepresentation or fraud does not actually occur until party being defrauded becomes aware of it. TS Infosystems v United States (1996) 36 Fed Cl 570, 41 CCF ¶ 77007 (criticized in Am. Heritage Bancorp v United States (2003) 56 Fed Cl 596).

**5. Remedies**

Remedies available under 41 USCS § 604 are cumulative and not alternative. UMC Elecs. Co. v United States (1999) 43 Fed Cl 776, affd (2001, CA FC) 249 F3d 1337.

Government's costs of review under 41 USCS § 604 can, if properly documented, include costs of review by contracting officer, Defense Contract Audit Agency and Department of Justice. UMC Elecs. Co. v United States (1999) 45 Fed Cl 507.

**6. Miscellaneous**

Fact that contractor's certification of claim pursuant to 41 USCS § 605 exceeds amount to which Board determines he is entitled does not subject him to liability under 41 USCS § 604, since § 604 requires proof of misrepresentation of fact or fraud as prerequisite to liability. Harnischfeger Corp. (1980, ASBCA) 80-2 CCH BCA Dec ¶ 14541.

Board has no authority to order contracting officer to pay money to contractor withheld because of alleged fraud. Fidelity Constr. Co., Inc. (1980, DOT CAB) 80-2 CCH BCA Dec ¶ 14819.

## § 605. Decision by contracting officer

**(a) Contractor claims.** All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer. Each claim by a contractor against the government relating to a contract and each claim by the government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim. The preceding sentence does not apply to a claim by the government against a contractor that is based on a claim by the contractor involving fraud. The contracting officer shall issue his decisions in writing, and shall mail or otherwise furnish a copy of the decision to the contractor. The decision shall state the reasons for the decision reached, and shall inform the contractor of his rights as provided in this Act. Specific findings of fact are not required, but, if made, shall not be binding in any subsequent proceeding. The authority of this subsection shall not

s
ear statute of limitations in
ment claim arises no earlier
actor's certified claim under
regardless of when conduct
aim false allegedly occurred.
s (1995) 34 Fed Cl 447, 40

mitations (41 USCS § 604)
t time that defendant could
eged fraud; commission of
ud does not actually occur
led becomes aware of it. TS
tates (1996) 36 Fed Cl 570,
ized in Am. Heritage Ban-
03) 56 Fed Cl 596).

under 41 USCS § 604 are
rnative. UMC Elecs. Co. v
Fed Cl 776, affd (2001, CA

of review under 41 USCS
locumented, include costs of
fficer, Defense Contract Au-
nent of Justice. UMC Elecs.
99) 45 Fed Cl 507.

certification of claim pursu-
exceeds amount to which
entitled does not subject him
USCS § 604, since § 604 re-
esentation of fact or fraud as
. Harnischfeger Corp. (1980,
CA Dec ¶ 14541.
ty to order contracting officer
actor withheld because of al-
onstr. Co., Inc. (1980, DOT
Dec ¶ 14819.

st the government re-
ted to the contracting
nst a contractor relat-
e contracting officer.
ing to a contract and
ng to a contract shall
claim. The preceding
ainst a contractor that
he contracting officer
erwise furnish a copy
te the reasons for the
rights as provided in
if made, shall not be
is subsection shall not



extend to a claim or dispute for penalties or forfeitures prescribed by statute or regulation which another Federal agency is specifically authorized to administer, settle, or determine. This section shall not authorize any agency head to settle, compromise, pay, or otherwise adjust any claim involving fraud.

**(b) Review; performance of contract pending appeal.** The contracting officer's decision on the claim shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency, unless an appeal or suit is timely commenced as authorized by this Act. Nothing in this Act shall prohibit executive agencies from including a clause in government contracts requiring that pending final decision of an appeal, action, or final settlement, a contractor shall proceed diligently with performance of the contract in accordance with the contracting officer's decision.

**(c) Amount of claim; certification; notification; time of issuance; presumption.** (1) A contracting officer shall issue a decision on any submitted claim of $100,000 or less within sixty days from his receipt of a written request from the contractor that a decision be rendered within that period. For claims of more than $100,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable, and that the certifier is duly authorized to certify the claim on behalf of the contractor.

(2) A contracting officer shall, within sixty days of receipt of a submitted certified claim over $100,000—

(A) issue a decision; or

(B) notify the contractor of the time within which a decision will be issued.

(3) The decision of a contracting officer on submitted claims shall be issued within a reasonable time, in accordance with regulations promulgated by the agency, taking into account such factors as the size and complexity of the claim and the adequacy of the information in support of the claim provided by the contractor.

(4) A contractor may request the tribunal concerned to direct a contracting officer to issue a decision in a specified period of time, as determined by the tribunal concerned, in the event of undue delay on the part of the contracting officer.

(5) Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim as otherwise provided in this Act. However, in the event an appeal or suit is so commenced in the absence of a prior decision by the contracting officer, the tribunal concerned may, at its option, stay the proceedings to obtain a decision on the claim by the contracting officer.

(6) The contracting officer shall have no obligation to render a final decision on any claim of more than $100,000 that is not certified in accordance with

paragraph (1) if, within 60 days after receipt of the claim, the contracting officer notifies the contractor in writing of the reasons why any attempted certification was found to be defective. A defect in the certification of a claim shall not deprive a court or an agency board of contract appeals of jurisdiction over that claim. Prior to the entry of a final judgment by a court or a decision by an agency board of contract appeals, the court or agency board shall require a defective certification to be corrected.

(7) The certification required by paragraph (1) may be executed by any person duly authorized to bind the contractor with respect to the claim.

**(d) Alternative means of dispute resolution.** Notwithstanding any other provision of this Act, a contractor and a contracting officer may use any alternative means of dispute resolution under subchapter IV of chapter 5 of title 5, United States Code [5 USCS §§ 571 et seq.], or other mutually agreeable procedures, for resolving claims. The contractor shall certify the claim when required to do so as provided under subsection (c)(1) or as otherwise required by law. All provisions of subchapter IV of chapter 5 of title 5, United States Code [5 USCS §§ 581 et seq.], shall apply to such alternative means of dispute resolution.

**(e) Termination of authority to engage in alternative means of dispute resolution; savings provisions.** In any case in which the contracting officer rejects a contractor's request for alternative dispute resolution proceedings, the contracting officer shall provide the contractor with a written explanation, citing one or more of the conditions in section 572(b) of title 5, United States Code, or such other specific reasons that alternative dispute resolution procedures are inappropriate for the resolution of the dispute. In any case in which a contractor rejects a request of an agency for alternative dispute resolution proceedings, the contractor shall inform the agency in writing of the contractor's specific reasons for rejecting the request.

(Nov. 1, 1978, P. L. 95-563, § 6, 92 Stat. 2384; Nov. 15, 1990, P. L. 101-552, § 6(a), 104 Stat. 2745; Oct. 29, 1992, P. L. 102-572, Title IX, § 907(a)(1), 106 Stat. 4518; Oct. 13, 1994, P. L. 103-355, Title II, Subtitle D, Part II, § 2351(a)(1), (b), (c), § 2352, 108 Stat. 3322; Feb. 10, 1996, P. L. 104-106, Div D, Title XLIII, Subtitle B, §§ 4321(a)(6), (7), 4322(b)(6), 110 Stat. 671, 677; Oct. 19, 1996, P. L. 104-320, § 6, 110 Stat. 3871; Nov. 18, 1997, P. L. 105-85, Div A, Title X, Subtitle G, § 1073(g)(3), 111 Stat. 1906.)

## HISTORY; ANCILLARY LAWS AND DIRECTIVES

**References in text:**

"This Act," referred to in this section, is popularly known as the Contract Disputes Act of 1978, which appears generally as 41 USCS §§ 601 et seq. For full classification of such Act, consult USCS Tables volumes.

**Amendments:**

**1990.** Act Nov. 15, 1990 added subsecs. (d) and (e).

**1992.** Act Oct. 29, 1992 (effective and applicable as provided by § 907(a)(4) of such Act, which appears as a note to this section), in subsec. (c), in para. (1), deleted "and" following "belief,", and inserted ", and

# TAB D

## § 609. Judicial review of board decisions

**(a) Actions in United States Court of Federal Claims; district court actions; time for filing.** (1) Except as provided in paragraph (2), and in lieu of appealing the decision of the contracting officer under section 6 [41 USCS § 605] to an agency board, a contractor may bring an action directly on the claim in the United States Claims Court [United States Court of Federal Claims], notwithstanding any contract provision, regulation, or rule of law to the contrary.

(2) In the case of an action against the Tennessee Valley Authority, the contractor may only bring an action directly on the claim in a United States district court pursuant to section 1337 of title 28, United States Code, notwithstanding any contract provision, regulation, or rule of law to the contrary.

(3) Any action under paragraph (1) or (2) shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim, and shall proceed de novo in accordance with the rules of the appropriate court.

**(b) Finality of board decision.** In the event of an appeal by a contractor or the Government from a decision of any agency board pursuant to section 8 [41 USCS § 607], notwithstanding any contract provision, regulation, or rules of law to the contrary, the decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

**(c) Remand or retention of case.** In any appeal by a contractor or the Government from a decision of an agency board pursuant to section 8 [41 USCS § 607], the court may render an opinion and judgment and remand the case for further action by the agency board or by the executive agency as appropriate, with such direction as the court considers just and proper.

**(d) Consolidation.** If two or more suits arising from one contract are filed in the United States Claims Court [United States Court of Federal Claims] and one or more agency boards, for the convenience of parties or witnesses or in the interest of justice, the United States Claims Court [United States Court of Federal Claims] may order the consolidation of such suits in that court or transfer any suits to or among the agency boards involved.

**(e) Judgments as to fewer than all claims.** In any suit filed pursuant to this Act involving two or more claims, counterclaims, cross-claims, or third-party claims, and where a portion of one such claim can be divided for purposes of decision or judgment, and in any such suit where multiple parties are involved, the court, whenever such action is appropriate, may enter a judgment as to one or more but fewer than all of the claims, portions thereof, or parties.

**(f) Boards of contract appeals; advisory opinions.** (1) Whenever an action involving an issue described in paragraph (2) is pending in a district court of the United States, the district court may request a board of contract ap-

district court ac-
ph (2), and in lieu
ection 6 [41 USCS
on directly on the
Court of Federal
on, or rule of law

ley Authority, the
in a United States
ited States Code,
of law to the con-

hin twelve months
on of the contract-
ovo in accordance

a contractor or the
t to section 8 [41
ilation, or rules of
ly question of law
estion of fact shall
decision is fraud-
o necessarily imply
evidence.

ctor or the Govern-
ction 8 [41 USCS
emand the case for
ncy as appropriate,

ontract are filed in
ederal Claims] and
or witnesses or in
ted States Court of
s in that court or

ed pursuant to this
aims, or third-party
led for purposes of
arties are involved,
judgment as to one
or parties.
Whenever an action
in a district court
ard of contract ap-



peals to provide the court with an advisory opinion on the matters of contract interpretation at issue.

(2) An issue referred to in paragraph (1) is any issue that could be the proper subject of a final decision of a contracting officer appealable under this Act.

(3) A district court shall direct any request under paragraph (1) to the board of contract appeals having jurisdiction under this Act to adjudicate appeals of contract claims under the contract or contracts being interpreted by the court.

(4) After receiving a request for an advisory opinion under paragraph (1), a board of contract appeals shall provide the advisory opinion in a timely manner to the district court making the request.

(Nov. 1, 1978, P. L. 95-563, § 10, 92 Stat. 2388; April 2, 1982, P. L. 97-164, Title I, Part B, §§ 157, 160(a)(15) in part, 161(10), 96 Stat. 47–49; Oct. 13, 1994, P. L. 103-355, Title II, Subtitle D, Part II, § 2354, 108 Stat. 3323.)

## HISTORY; ANCILLARY LAWS AND DIRECTIVES

**References in text:**

"This Act," referred to in this section, is popularly known as the Contract Disputes Act of 1978, which appears generally as 41 USCS §§ 601 et seq. For full classification of such Act, consult USCS Tables volumes.

**Explanatory notes:**

The bracketed words "United States Court of Federal Claims" have been inserted in subsecs. (a)(1) and (d) of this section on the authority of § 902(b)(1) of Act Oct. 29, 1992, P. L. 102-572, which appears as 28 USCS § 171 note, and which provides that reference to the United States Claims Court in any Federal law or document shall be deemed to refer to the United States Court of Federal Claims.

**Amendments:**

**1982.** Act April 2, 1982 (effective 10/1/82, as provided by § 402 of such Act, which appears as 28 USCS § 171 note), in subsec. (a)(1), substituted "Claims Court" for "Court of Claims"; in subsec. (c), deleted ", or, in its discretion and in lieu of remand it may retain the case and take such additional evidence or action as may be necessary for final disposition of the case" following "just and proper"; and, in subsec. (d), substituted "United States Claims Court" for "Court of Claims" in two places.

**1994.** Act Oct. 13, 1994 (effective and applicable as provided by § 10001(a) and (b) of such Act, which appear as 41 USCS § 251 note), added subsec. (f).

**Other provisions:**

**Applicability of Act Nov. 1, 1978.** For the effective date of and election to proceed under Act Nov. 1, 1978, see the Other provisions note under 41 USCS § 601.

**Applicability to American Institute on Taiwan.** This section has been specified by the President as inapplicable to procurement of services from the American Institute on Taiwan by Ex. Or. No. 12143 of June 22, 1979, 44 Fed. Reg. 37191, set out at 22 USCS § 3301 note.

## CROSS REFERENCES

This section is referred to in 5 USCS § 9003; 10 USCS § 2410m; 22 USCS §§ 3861, 3862; 28 USCS §§ 1295, 1346, 1491; 41 USCS § 603.

# TAB E

## Subpart 1.4—Deviations from the FAR

**1.400 Scope of subpart.**

This subpart prescribes the policies and procedures for authorizing deviations from the FAR. Exceptions pertaining to the use of forms prescribed by the FAR are covered in Part 53 rather than in this subpart.

**1.401 Definition.**

"Deviation" means any one or combination of the following:

(a) The issuance or use of a policy, procedure, solicitation provision (see definition in 2.101), contract clause (see definition in 2.101), method, or practice of conducting acquisition actions of any kind at any stage of the acquisition process that is inconsistent with the FAR.

(b) The omission of any solicitation provision or contract clause when its prescription requires its use.

(c) The use of any solicitation provision or contract clause with modified or alternate language that is not authorized by the FAR (see definition of "modification" in 52.101(a) and definition of "alternate" in 2.101(a)).

(d) The use of a solicitation provision or contract clause prescribed by the FAR on a "substantially as follows" or "substantially the same as" basis (see definitions in 2.101 and 52.101(a)), if such use is inconsistent with the intent, principle, or substance of the prescription or related coverage on the subject matter in the FAR.

(e) The authorization of lesser or greater limitations on the use of any solicitation provision, contract clause, policy, or procedure prescribed by the FAR.

(f) The issuance of policies or procedures that govern the contracting process or otherwise control contracting relationships that are not incorporated into agency acquisition regulations in accordance with 1.301(a).

**1.402 Policy.**

Unless precluded by law, executive order, or regulation, deviations from the FAR may be granted as specified in this subpart when necessary to meet the specific needs and requirements of each agency. The development and testing of new techniques and methods of acquisition should not be stifled simply because such action would require a FAR deviation. The fact that deviation authority is required should not, of itself, deter agencies in their development and testing of new techniques and acquisition methods. Refer to 31.101 for instructions concerning deviations pertaining to the subject matter of Part 31, Contract Cost Principles and Procedures. Deviations are not authorized with respect to 30.201-3 and 30.201-4, or the requirements of the Cost Accounting Standards Board (CASB) rules and regulations (48 CFR Chapter 99 (FAR Appendix)). Refer to 30.201-5 for instructions concerning waivers pertaining to Cost Accounting Standards.

**1.403 Individual deviations.**

Individual deviations affect only one contract action, and, unless 1.405(e) is applicable, may be authorized by the agency head. The contracting officer must document the justification and agency approval in the contract file.

**1.404 Class deviations.**

Class deviations affect more than one contract action. When an agency knows that it will require a class deviation on a permanent basis, it should propose a FAR revision, if appropriate. Civilian agencies, other than NASA, must furnish a copy of each approved class deviation to the FAR Secretariat.

(a) For civilian agencies except NASA, class deviations may be authorized by agency heads or their designees, unless 1.405(e) is applicable. Delegation of this authority shall not be made below the head of a contracting activity. Authorization of class deviations by agency officials is subject to the following limitations:

(1) An agency official who may authorize a class deviation, before doing so, shall consult with the chairperson of the Civilian Agency Acquisition Council (CAA Council), unless that agency official determines that urgency precludes such consultation.

(2) Recommended revisions to the FAR shall be transmitted to the FAR Secretariat by agency heads or their designees for authorizing class deviations.

(b) For DoD, class deviations shall be controlled, processed, and approved in accordance with the Defense FAR Supplement.

(c) For NASA, class deviations shall be controlled and approved by the Assistant Administrator for Procurement. Deviations shall be processed in accordance with agency regulations.

**1.405 Deviations pertaining to treaties and executive agreements.**

(a) "Executive agreements," as used in this section, means Government-to-Government agreements, including agreements with international organizations, to which the United States is a party.

(b) Any deviation from the FAR required to comply with a treaty to which the United States is a party is authorized, unless the deviation would be inconsistent with FAR coverage based on a law enacted after the execution of the treaty.

(c) Any deviation from the FAR required to comply with an executive agreement is authorized unless the deviation would be inconsistent with FAR coverage based on law.

(d) For civilian agencies other than NASA, a copy of the text deviation authorized under paragraph (b) or (c) of this

# TAB F

(c) The period shall be set so as to provide the contractor adequate lead time to ensure continuous production.

(d) The period may extend beyond the contract completion date for service contracts. This is necessary for situations when exercise of the option would result in the obligation of funds that are not available in the fiscal year in which the contract would otherwise be completed.

(e) Unless otherwise approved in accordance with agency procedures, the total of the basic and option periods shall not exceed 5 years in the case of services, and the total of the basic and option quantities shall not exceed the requirement for 5 years in the case of supplies. These limitations do not apply to information technology contracts. However, statutes applicable to various classes of contracts, for example, the Service Contract Act (see 22.1002-1), may place additional restrictions on the length of contracts.

(f) Contracts may express options for increased quantities of supplies or services in terms of—

(1) Percentage of specific line items,

(2) Increase in specific line items; or

(3) Additional numbered line items identified as the option.

(g) Contracts may express extensions of the term of the contract as an amended completion date or as additional time for performance; *e.g.*, days, weeks, or months.

**17.205 Documentation.**

(a) The contracting officer shall justify in writing the quantities or the term under option, the notification period for exercising the option, and any limitation on option price under 17.203(g); and shall include the justification document in the contract file.

(b) Any justifications and approvals and any determination and findings required by Part 6 shall specify both the basic requirement and the increase permitted by the option.

**17.206 Evaluation.**

(a) In awarding the basic contract, the contracting officer shall, except as provided in paragraph (b) of this section, evaluate offers for any option quantities or periods contained in a solicitation when it has been determined prior to soliciting offers that the Government is likely to exercise the options. (See 17.208.)

(b) The contracting officer need not evaluate offers for any option quantities when it is determined that evaluation would not be in the best interests of the Government and this determination is approved at a level above the contracting officer. An example of a circumstance that may support a determination not to evaluate offers for option quantities is when there is a reasonable certainty that funds will be unavailable to permit exercise of the option.

**17.207 Exercise of options.**

(a) When exercising an option, the contracting officer shall provide written notice to the contractor within the time period specified in the contract.

(b) When the contract provides for economic price adjustment and the contractor requests a revision of the price, the contracting officer shall determine the effect of the adjustment on prices under the option before the option is exercised.

(c) The contracting officer may exercise options only after determining that—

(1) Funds are available;

(2) The requirement covered by the option fulfills an existing Government need;

(3) The exercise of the option is the most advantageous method of fulfilling the Government's need, price and other factors (see paragraphs (d) and (e) of this section) considered; and

(4) The option was synopsized in accordance with Part 5 unless exempted by 5.202(a)(11) or other appropriate exemptions in 5.202.

(d) The contracting officer, after considering price and other factors, shall make the determination on the basis of one of the following:

(1) A new solicitation fails to produce a better price or a more advantageous offer than that offered by the option. If it is anticipated that the best price available is the option price or that this is the more advantageous offer, the contracting officer should not use this method of testing the market.

(2) An informal analysis of prices or an examination of the market indicates that the option price is better than prices available in the market or that the option is the more advantageous offer.

(3) The time between the award of the contract containing the option and the exercise of the option is so short that it indicates the option price is the lowest price obtainable or the more advantageous offer. The contracting officer shall take into consideration such factors as market stability and comparison of the time since award with the usual duration of contracts for such supplies or services.

(e) The determination of other factors under (c)(3) of this section should take into account the Government's need for continuity of operations and potential costs of disrupting operations.

(f) Before exercising an option, the contracting officer shall make a written determination for the contract file that exercise is in accordance with the terms of the option, the requirements of this section, and Part 6. To satisfy requirements of Part 6 regarding full and open competition, the option must have been evaluated as part of the initial competition and be exercisable at an amount specified in or reasonably determinable from the terms of the basic contract, *e.g.*—

(1) A specific dollar amount;

(2) An amount to be determined by applying provisions (or a formula) provided in the basic contract, but not including renegotiation of the price for work in a fixed-price type contract;

(3) In the case of a cost-type contract, if—

(i) The option contains a fixed or maximum fee; or

(ii) The fixed or maximum fee amount is determinable by applying a formula contained in the basic contract (but see 16.102(c));

(4) A specific price that is subject to an economic price adjustment provision; or

(5) A specific price that is subject to change as the result of changes to prevailing labor rates provided by the Secretary of Labor.

(g) The contract modification or other written document which notifies the contractor of the exercise of the option shall cite the option clause as authority.

**17.208 Solicitation provisions and contract clauses.**

(a) Insert a provision substantially the same as the provision at 52.217-3, Evaluation Exclusive of Options, in solicitations when the solicitation includes an option clause and does not include one of the provisions prescribed in paragraph (b) or (c) of this section.

(b) Insert a provision substantially the same as the provision at 52.217-4, Evaluation of Options Exercised at Time of Contract Award, in solicitations when the solicitation includes an option clause, the contracting officer has determined that there is a reasonable likelihood that the option will be exercised, and the option may be exercised at the time of contract award.

(c) Insert a provision substantially the same as the provision at 52.217-5, Evaluation of Options, in solicitations when—

(1) The solicitation contains an option clause;

(2) An option is not to be exercised at the time of contract award;

(3) A firm-fixed-price contract, a fixed-price contract with economic price adjustment, or other type of contract approved under agency procedures is contemplated; and

(4) The contracting officer has determined that there is a reasonable likelihood that the option will be exercised. For sealed bids, the determination shall be in writing.

(d) Insert a clause substantially the same as the clause at 52.217-6, Option for Increased Quantity, in solicitations and contracts, other than those for services, when the inclusion of an option is appropriate (see 17.200 and 17.202) and the option quantity is expressed as a percentage of the basic contract quantity or as an additional quantity of a specific line item.

(e) Insert a clause substantially the same as the clause at 52.217-7, Option for Increased Quantity—Separately Priced Line Item, in solicitations and contracts, other than those for services, when the inclusion of an option is appropriate (see 17.200 and 17.202) and the option quantity is identified as a separately priced line item having the same nomenclature as a corresponding basic contract line item.

(f) Insert a clause substantially the same as the clause at 52.217-8, Option to Extend Services, in solicitations and contracts for services when the inclusion of an option is appropriate. (See 17.200, 17.202, and 37.111.)

(g) Insert a clause substantially the same as the clause at 52.217-9, Option to Extend the Term of the Contract, in solicitations and contracts when the inclusion of an option is appropriate (see 17.200 and 17.202) and it is necessary to include in the contract any or all of the following:

(1) A requirement that the Government must give the contractor a preliminary written notice of its intent to extend the contract.

(2) A statement that an extension of the contract includes an extension of the option.

(3) A specified limitation on the total duration of the contract.

# TAB G

(2) An amount to be determined by applying provisions (or a formula) provided in the basic contract, but not including renegotiation of the price for work in a fixed-price type contract;

(3) In the case of a cost-type contract, if—

(i) The option contains a fixed or maximum fee; or

(ii) The fixed or maximum fee amount is determinable by applying a formula contained in the basic contract (but see 16.102(c));

(4) A specific price that is subject to an economic price adjustment provision; or

(5) A specific price that is subject to change as the result of changes to prevailing labor rates provided by the Secretary of Labor.

(g) The contract modification or other written document which notifies the contractor of the exercise of the option shall cite the option clause as authority.

**17.208 Solicitation provisions and contract clauses.**

(a) Insert a provision substantially the same as the provision at 52.217-3, Evaluation Exclusive of Options, in solicitations when the solicitation includes an option clause and does not include one of the provisions prescribed in paragraph (b) or (c) of this section.

(b) Insert a provision substantially the same as the provision at 52.217-4, Evaluation of Options Exercised at Time of Contract Award, in solicitations when the solicitation includes an option clause, the contracting officer has determined that there is a reasonable likelihood that the option will be exercised, and the option may be exercised at the time of contract award.

(c) Insert a provision substantially the same as the provision at 52.217-5, Evaluation of Options, in solicitations when—

(1) The solicitation contains an option clause;

(2) An option is not to be exercised at the time of contract award;

(3) A firm-fixed-price contract, a fixed-price contract with economic price adjustment, or other type of contract approved under agency procedures is contemplated; and

(4) The contracting officer has determined that there is a reasonable likelihood that the option will be exercised. For sealed bids, the determination shall be in writing.

(d) Insert a clause substantially the same as the clause at 52.217-6, Option for Increased Quantity, in solicitations and contracts, other than those for services, when the inclusion of an option is appropriate (see 17.200 and 17.202) and the option quantity is expressed as a percentage of the basic contract quantity or as an additional quantity of a specific line item.

(e) Insert a clause substantially the same as the clause at 52.217-7, Option for Increased Quantity—Separately Priced Line Item, in solicitations and contracts, other than those for services, when the inclusion of an option is appropriate (see 17.200 and 17.202) and the option quantity is identified as a separately priced line item having the same nomenclature as a corresponding basic contract line item.

(f) Insert a clause substantially the same as the clause at 52.217-8, Option to Extend Services, in solicitations and contracts for services when the inclusion of an option is appropriate. (See 17.200, 17.202, and 37.111.)

(g) Insert a clause substantially the same as the clause at 52.217-9, Option to Extend the Term of the Contract, in solicitations and contracts when the inclusion of an option is appropriate (see 17.200 and 17.202) and it is necessary to include in the contract any or all of the following:

(1) A requirement that the Government must give the contractor a preliminary written notice of its intent to extend the contract.

(2) A statement that an extension of the contract includes an extension of the option.

(3) A specified limitation on the total duration of the contract.

# TAB H

## Subpart 49.5—Contract Termination Clauses

**49.501 General.**

This subpart prescribes the principal contract termination clauses. This subpart does not apply to contracts that use the clause at 52.213-4, Terms and Conditions—Simplified Acquisitions (Other Than Commercial Items). For contracts for the acquisition of commercial items, this part provides administrative guidance which may be followed when it is consistent with the requirements and procedures in the clause at 52.212-4, Contract Terms and Conditions—Commercial Items. In appropriate cases, agencies may authorize the use of special purpose clauses, if consistent with this chapter.

**49.502 Termination for convenience of the Government.**

(a) *Fixed-price contracts that do not exceed the simplified acquisition threshold (short form)*— (1) *General use.* The contracting officer shall insert the clause at 52.249-1, Termination for Convenience of the Government (Fixed-Price) (Short Form), in solicitations and contracts when a fixed-price contract is contemplated and the contract amount is not expected to exceed the simplified acquisition threshold, except—

(i) If use of the clause at 52.249-4, Termination for Convenience of the Government (Services) (Short Form) is appropriate,

(ii) In contracts for research and development work with an educational or nonprofit institution on a no-profit basis,

(iii) In contracts for architect-engineer services, or

(iv) If one of the clauses prescribed or cited at 49.505(a), (b), or (e), is appropriate.

(2) *Dismantling and demolition.* If the contract is for dismantling, demolition, or removal of improvements, the contracting officer shall use the clause with its Alternate I.

(b) *Fixed-price contracts that exceed the simplified acquisition threshold*— (1)(i) *General use.* The contracting officer shall insert the clause at 52.249-2, Termination for Convenience of the Government (Fixed-Price), in solicitations and contracts when a fixed-price contract is contemplated and the contract amount is expected to exceed the simplified acquisition threshold except in contracts for —

(A) Dismantling and demolition,

(B) Research and development work with an educational or nonprofit institution on a no-profit basis, or

(C) Architect-engineer services; it shall not be used if the clause at 52.249-4, Termination for Convenience of the Government (Services) (Short Form), is appropriate (see 49.502(c)), or one of the clauses prescribed or cited at 49.505(a), (b), or (e), is appropriate.

(2) *Construction.* If the contract is for construction, the contracting officer shall use the clause with its Alternate I.

(i) *Partial payments.* If the contract is with an agency of the U.S. Government or with State, local, or foreign governments or their agencies, and if the contracting officer determines that the requirement to pay interest on excess partial payments is inappropriate, the contracting officer shall use the clause with its Alternate II. In such contracts for construction, the contracting officer shall use the clause with its Alternate III.

(ii) *Dismantling and demolition.* The contracting officer shall insert the clause at 52.249-3, Termination for Convenience of the Government (Dismantling, Demolition, or Removal of Improvements) in solicitations and contracts for dismantling, demolition, or removal of improvements, when a fixed-price contract is contemplated and the contract amount is expected to exceed the simplified acquisition threshold. If the contract is with an agency of the U.S. Government or with State, local, or foreign governments or their agencies, and if the contracting officer determines that the requirement to pay interest on excess partial payments is inappropriate, the contracting officer shall use the clause with its Alternate I.

(c) *Service contracts (short form).* The contracting officer shall insert the clause at 52.249-4, Termination for Convenience of the Government (Services) (Short Form), in solicitations and contracts for services, regardless of value, when a fixed-price contract is contemplated and the contracting officer determines that because of the kind of services required, the successful offeror will not incur substantial charges in preparation for and in carrying out the contract, and would, if terminated for the convenience of the Government, limit termination settlement charges to services rendered before the date of termination. Examples of services where this clause may be appropriate are contracts for rental of unreserved parking space, laundry and dry cleaning, etc.

(d) *Research and development contracts.* The contracting officer shall insert the clause at 52.249-5, Termination for the Convenience of the Government (Educational and Other Nonprofit Institutions), in solicitations and contracts when either a fixed-price or cost-reimbursement contract is contemplated for research and development work with an educational or nonprofit institution on a nonprofit or no-fee basis.

(e) *Subcontracts*—(1) *General use.* The prime contractor may find the clause at 52.249-1, Termination for Convenience of the Government (Fixed-Price) (Short Form), or at 52.249-2, Termination for Convenience of the Government (Fixed-Price), as appropriate, suitable for use in fixed-price subcontracts, except as noted in paragraph (e)(2) of this section; provided, that the relationship between the contractor and subcontractor is clearly indicated. Inapplicable conditions (*e.g.*, paragraph (d)) in 52.249-2 should be deleted and the periods reduced for submitting the subcontractor's termination settlement proposal (*e.g.*, 6 months), and for requesting an equitable price adjustment (*e.g.*, 45 days).

(2) *Research and development.* The prime contractor may find the clause at 52.249-5, Termination for the Convenience of the Government (Educational and Other Nonprofit Institutions), suitable for use in subcontracts placed with educational or nonprofit institutions on a no-profit or no-fee basis; provided, that the relationship between the contractor and subcontractor is clearly indicated. Inapplicable conditions (*e.g.*, paragraph (h)) should be deleted, the period for submitting the subcontractor's termination settlement proposal should be reduced (*e.g.*, 6 months), the subcontract should be placed on a no-profit or no-fee basis, and the subcontract should incorporate or be negotiated on the basis of the cost principles in Part 31 of the Federal Acquisition Regulation.

**49.503 Termination for convenience of the Government and default.**

(a) *Cost-reimbursement contracts*—(1) *General use.* Insert the clause at 52.249-6, Termination (Cost-Reimbursement), in solicitations and contracts when a cost-reimbursement contract is contemplated, except contracts for research and development with an educational or nonprofit institution on a no-fee basis.

(2) *Construction.* If the contract is for construction, the contracting officer shall use the clause with its Alternate I.

(3) *Partial payments.* If the contract is with an agency of the U.S. Government or with State, local, or foreign governments or their agencies, and if the contracting officer determines that the requirement to pay interest on excess partial payments is inappropriate, the contracting officer shall use the clause with its Alternate II. In such contracts for construction, the contracting officer shall use the clause with its Alternate III.

(4) *Time-and-material and labor-hour contracts.* If the contract is a time-and-material or labor-hour contract, the contracting officer shall use the clause with its Alternate IV. If the contract is with an agency of the U.S. Government or with State, local, or foreign governments or their agencies, and if the contracting officer determines that the requirement to pay interest on excess partial payments is inappropriate, the contracting officer shall use the clause with its Alternate V.

(b) Insert the clause at 52.249-7, Termination (Fixed-Price Architect-Engineer), in solicitations and contracts for architect-engineer services, when a fixed-price contract is contemplated.

(c) *Subcontracts.* The prime contractor may find the clause at 52.249-6, Termination (Cost-Reimbursement), suitable for use in cost-reimbursement subcontracts; provided, that the relationship between the contractor and subcontractor is clearly indicated. Inapplicable conditions (*e.g.*, paragraphs (e), (j) and (n)) should be deleted and the period for submitting the subcontractor's termination settlement proposal should be reduced (*e.g.*, 6 months).

**49.504 Termination of fixed-price contracts for default.**

(a)(1) *Supplies and services.* The contracting officer shall insert the clause at 52.249-8, Default (Fixed-Price Supply and Service), in solicitations and contracts when a fixed-price contract is contemplated and the contract amount is expected to exceed the simplified acquisition threshold. The contracting officer may use the clause when the contract amount is at or below the simplified acquisition threshold, if appropriate (*e.g.*, if the acquisition involves items with a history of unsatisfactory quality).

(2) *Transportation.* If the contract is for transportation or transportation-related services, the contracting officer shall use the clause with its Alternate I.

(b) *Research and development.* The contracting officer shall insert the clause at 52.249-9, Default (Fixed-Price Research and Development), in solicitations and contracts for research and development when a fixed-price contract is contemplated and the contract amount is expected to exceed the simplified acquisition threshold, except those with educational or nonprofit institutions on a no-profit basis. The contracting officer may use the clause when the contract amount is at or below the simplified acquisition threshold;, if appropriate (*e.g.*, if the contracting officer believes that key personnel essential to the work may be devoted to other programs).

(c)(1) *Construction.* The contracting officer shall insert the clause at 52.249-10, Default (Fixed-Price Construction), in solicitations and contracts for construction, when a fixed-price contract is contemplated and the contract amount is expected to exceed the simplified acquisition threshold. The contracting officer may use the clause when the contract amount is at or below the simplified acquisition threshold, if appropriate (*e.g.*, if completion dates are essential).

(2) *Dismantling and demolition.* If the contract is for dismantling, demolition, or removal of improvements, the contracting officer shall use the clause with its Alternate I.

(3) *National emergencies.* If the contract is to be awarded during a period of national emergency, the contracting officer may use the clause—

(i) With its Alternate II when a fixed-price contract for construction is contemplated, or

(ii) With its Alternate III when a contract for dismantling, demolition, or removal of improvements is contemplated.

**49.505 Other termination clauses.**

(a) *Facilities.* The contracting officer shall insert the clause at 52.249-11, Termination of Work (Consolidated Facilities or Facilities Acquisition), in consolidated facilities contracts and facilities acquisition contracts. If the contract is with an agency of the U.S. Government or with State, local, or foreign governments or their agencies, and if the contracting officer determines that the requirement to pay interest on excess par-

# TAB I

**52.217-4 Evaluation of Options Exercised at Time of Contract Award.**

As prescribed in 17.208(b), insert a provision substantially the same as the following:

EVALUATION OF OPTIONS EXERCISED AT TIME OF CONTRACT AWARD (JUNE 1988)

Except when it is determined in accordance with FAR 17.206(b) not to be in the Government's best interests, the Government will evaluate the total price for the basic requirement together with any option(s) exercised at the time of award.

(End of provision)

**52.217-5 Evaluation of Options.**

As prescribed in 17.208(c), insert a provision substantially the same as the following:

EVALUATION OF OPTIONS (JULY 1990)

Except when it is determined in accordance with FAR 17.206(b) not to be in the Government's best interests, the Government will evaluate offers for award purposes by adding the total price for all options to the total price for the basic requirement. Evaluation of options will not obligate the Government to exercise the option(s).

(End of provision)

**52.217-6 Option for Increased Quantity.**

As prescribed in 17.208(d), insert a clause substantially the same as the following:

OPTION FOR INCREASED QUANTITY (MAR 1989)

The Government may increase the quantity of supplies called for in the Schedule at the unit price specified. The Contracting Officer may exercise the option by written notice to the Contractor within [*insert in the clause the period of time in which the Contracting Officer has to exercise the option*]. Delivery of the added items shall continue at the same rate as the like items called for under the contract, unless the parties otherwise agree.

(End of clause)

**52.217-7 Option for Increased Quantity—Separately Priced Line Item.**

As prescribed in 17.208(e), insert a clause substantially the same as the following:

OPTION FOR INCREASED QUANTITY—SEPARATELY PRICED LINE ITEM (MAR 1989)

The Government may require the delivery of the numbered line item, identified in the Schedule as an option item, in the quantity and at the price stated in the Schedule. The Contracting Officer may exercise the option by written notice to the Contractor within [*insert in the clause the period of time in which the Contracting Officer has to exercise the option*]. Delivery of added items shall continue at the same rate that like items are called for under the contract, unless the parties otherwise agree.

(End of clause)

**52.217-8 Option to Extend Services.**

As prescribed in 17.208(f), insert a clause substantially the same as the following:

OPTION TO EXTEND SERVICES (NOV 1999)

The Government may require continued performance of any services within the limits and at the rates specified in the contract. These rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor. The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months. The Contracting Officer may exercise the option by written notice to the Contractor within _____ [*insert the period of time within which the Contracting Officer may exercise the option*].

(End of clause)

**52.217-9 Option to Extend the Term of the Contract.**

As prescribed in 17.208(g), insert a clause substantially the same as the following:

OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 2000)

(a) The Government may extend the term of this contract by written notice to the Contractor within _____ [*insert the period of time within which the Contracting Officer may exercise the option*]; provided that the Government gives the Contractor a preliminary written notice of its intent to extend at least _____ days [*60 days unless a different number of days is inserted*] before the contract expires. The preliminary notice does not commit the Government to an extension.

(b) If the Government exercises this option, the extended contract shall be considered to include this option clause.

(c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed __________ (months) (years).

(End of clause)

**52.218 [Reserved]**

**52.219-1 Small Business Program Representations.**

As prescribed in 19.308(a)(1), insert the following provision:

# TAB J

value as determined by the Contracting Officer, of property that is destroyed, lost, stolen, or damaged so as to become undeliverable to the Government or to a buyer.

(i) The cost principles and procedures of Part 31 of the Federal Acquisition Regulation, in effect on the date of this contract, shall govern all costs claimed, agreed to, or determined under this clause.

(j) The Contractor shall have the right of appeal, under the Disputes clause, from any determination made by the Contracting Officer under paragraph (e), (g), or (l) of this clause, except that if the Contractor failed to submit the termination settlement proposal within the time provided in paragraph (e) or (l) and failed to request a time extension, there is no right of appeal. If the Contracting Officer has made a determination of the amount due under paragraph (e), (g), or (l) of this clause, the Government shall pay the Contractor—

(1) The amount determined by the Contracting Officer, if there is no right of appeal or if no timely appeal has been taken; or

(2) The amount finally determined on an appeal.

(k) In arriving at the amount due the Contractor under this clause, there shall be deducted—

(1) All unliquidated advance or other payments to the Contractor under the terminated portion of this contract;

(2) Any claim which the Government has against the Contractor under this contract; and

(3) The agreed price for, or the proceeds of sale of, materials, supplies, or other things acquired by the Contractor or sold under the provisions of this clause and not recovered by or credited to the Government.

(l) If the termination is partial, the Contractor may file a proposal with the Contracting Officer for an equitable adjustment of the price(s) of the continued portion of the contract. The Contracting Officer shall make any equitable adjustment agreed upon. Any proposal by the Contractor for an equitable adjustment under this clause shall be requested within 90 days from the effective date of termination unless extended in writing by the Contracting Officer.

(m)(1) The Government may, under the terms and conditions it prescribes, make partial payments and payments against cost incurred by the Contractor for the terminated portion of the contract, if the Contracting Officer believes the total of these payments will not exceed the amount to which the Contractor will be entitled.

(2) If the total payments exceed the amount finally determined to be due, the Contractor shall repay the excess to the Government upon demand, together with interest computed at the rate established by the Secretary of the Treasury under 50 U.S.C. App 1215(b)(2). Interest shall be computed for the period from the date the excess payment is received by the Contractor to the date the excess is repaid. Interest shall not be charged on any excess payment due to a reduction in the Contractor's termination settlement proposal because of retention or other disposition of termination inventory until 10 days after the date of the retention or disposition, or a later date determined by the Contracting Officer because of the circumstances.

(n) Unless otherwise provided in this contract or by statute, the Contractor shall maintain all records and documents relating to the terminated portion of this contract for 3 years after final settlement. This includes all books and other evidence bearing on the Contractor's costs and expenses under this contract. The Contractor shall make these records and documents available to the Government, at the Contractor's office, at all reasonable times, without any direct charge. If approved by the Contracting Officer, photographs, microphotographs, or other authentic reproductions may be maintained instead of original records and documents.

(End of clause)

*Alternate I (Sept 1996).* If the contract is with an agency of the U.S. Government or with State, local, or foreign governments or their agencies, and if the contracting officer determines that the requirement to pay interest on excess partial payments is inappropriate, delete paragraph (m)(2) from the basic clause.

**52.249-4 Termination for Convenience of the Government (Services) (Short Form).**

As prescribed in 49.502(c), insert the following clause in solicitations and contracts for services, regardless of value, when a fixed-price contract is contemplated and the Contracting Officer determines that because of the kind of services required, the successful offeror will not incur substantial charges in preparation for and in carrying out the contract, and would, if terminated for the convenience of the Government, limit termination settlement charges to services rendered before the date of termination:

TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (SERVICES) (SHORT FORM) (APR 1984)

The Contracting Officer, by written notice, may terminate this contract, in whole or in part, when it is in the Government's interest. If this contract is terminated, the Government shall be liable only for payment under the payment provisions of this contract for services rendered before the effective date of termination.

(End of clause)

**52.249-5 Termination for Convenience of the Government (Educational and Other Nonprofit Institutions).**

As prescribed in 49.502(d), insert the following clause: