# THE UNITED STATES COURT OF FEDERAL CLAIMS
(Bid Protest)

| | |
|---|---|
| The Ravens Group, Inc.,<br>Plaintiff,<br>v.<br>United States,<br>Defendant,<br>and<br>Rowe Contracting Services, Inc.,<br>Third party/Intervenor. | CFC No. 07-243<br>Judge Baskir |

## MEMORANDUM OF LAW IN SUPPORT OF INTERVENOR ROWE CONTRACTING SERVICES, INC.'S RULE 11 MOTION FOR SANCTIONS

Kenneth B. Weckstein
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W.
Suite 700
Washington, D.C. 20037
(202) 861-1860
(202) 861-3560 (fax)
kweckstein@ebglaw.com

Counsel for Intervenor

Date: May 4, 2007

# Table of Contents

Table of Authorities ........................................................................ iv

Statement of the Issues .................................................................. 1

Statement of the Case ..................................................................... 2

Background ........................................................................................ 3

Discussion .......................................................................................... 10

I. RAVENS' COMPLAINT VIOLATES RULE 11(b)(2). ........................ 12

I.A Count I is unwarranted and frivolous. ........................................................ 13

I.B Count II is unwarranted and based on a misrepresentation of the law. .................................... 14

Count II is governed by the CDA is not yet ripe for the Court's review. ............................................... 15

Count II also is based on a misrepresentation of the law. ............................ 16

I.C Count III is unwarranted because it is based on a misrepresentation of the law and is otherwise not legally supported. ...................... 19

I.D Count IV is unwarranted because Ravens cannot demonstrate that it was prejudiced by the alleged lack of notice. ...................................... 21

I.E Count V is unwarranted and frivolous. ........................................................ 23

I.F Count VI is unwarranted because it is unsupported by existing law. .....23

I.G. Count VII also is unwarranted. .....24

II. THE CAUSES OF ACTION IN RAVENS' COMPLAINT LACK EVIDENTIARY SUPPORT .....25

II.A. Ravens has failed to provide evidentiary support of Rowe's alleged unfair business practices for Count I. .....28

Ravens is aware that its total offered price was released by the Agency to all other offerors in June 2005. .....29

Ravens' evidence proves that Rowe did not bribe Ravens employees.....30

Ravens' claim that its evidence is "uncontroverted" and that DIA failed to investigate its accusations is false.....31

II.B. Ravens has manipulated facts to support its Count II allegation of Irrational Contract Award.....33

II.C. Ravens' Count III for DIA's alleged Breach of the Implied Duty of Good Faith and Fair Dealing is based on a misrepresentation of the facts. .....35

II.D. Ravens' Count IV, based on its supposed lack of notice, is dependent on "stale" facts that are not credible.....35

II.E. Ravens has failed to provide evidentiary Support of Rowe's alleged unfair business practices for Count V. .....37

II.F. Ravens has failed to provide any evidence That NOSLOT was found not to be an interested party by GAO to support Count VI. ............38

II.G. Ravens has failed to provide evidentiary support for Count VII. ................................................38

III. RAVENS HAS PRESENTED THIS COMPLAINT FOR AN IMPROPER PURPOSE IN VIOLATION OF RULE 11(b)(1). ............................................38

Conclusion ..........................................................................................39

# TABLE OF AUTHORITIES

## CASES

Aldridge v. United States, 67 Fed. Cl. 113 (2005)................................... 11

Alliant Techsystems, Inc. v. United States, 178 F.3d 1260 (Fed. Cir. 1999)........................................................ 19

Balthazar v. Atlantic City Medical Center, 279 F. Supp. 2d 574 (D.N.J. 2003).................................................. 25

Berdick v. United States, 612 F.2d 533 (Ct. Cl. 1979)......................... 13-14

Caldwell & Santmyer, Inc. v. Glickman, 55 F.3d 1578 (Fed. Cir. 1995) .... 20

Carefirst of Maryland, Inc. v. First Care, P.C., 422 F. Supp. 2d 592 (E.D.Va. 2006)................................................ 25

Comprehensive Health Services, Inc. v. United States, 70 Fed. Cl. 700 (2000)................................................................. 20

James M. Ellett Construction Co., Inc., v. United States, 93 F.3d 1537 (Fed. Cir. 1996)........................................................ 16

Lockheed Martin IR Imaging Systems, Inc. v. West, 108 F.3d 319 (Fed. Cir. 1997)........................................................ 19

Manson Construction Co., v. United States, 64 Fed. Cl. 746 (2005)......... 24

New England Tank Industries of New Hampshire, Inc. v. United States, 861 F.2d 685 (Fed. Cir. 1988)................................. 19

Persyn v. United States, 35 Fed. Cl. 708 (1996), *aff'd in relevant part, rev'd on other grounds*, 135 F.3d 773 (Fed. Cir. 1997)....................... 11, 12

Ridge v. United States Postal Service, 154 F.R.D. 182 (N.D. Ill. 1992) .... 12

Statistica, Inc. v. Christopher, 102 F.3d 1577 (Fed. Cir. 1996)................. 22

Verdon v. Consolidated Rail Corp.,
828 F. Supp. 1129 (S.D.N.Y. 1993) ........................................ 14, 16

Worldwide Primates, Inc. v. McGreal,
87 F.3d 1252 (11th Cir. 1996) ........................................ 11, 29

## STATUTES

41 U.S.C. § 605(a) ........................................ 15

41 U.S.C. § 609 ........................................ 15, 16

28 U.S.C. § 1491 ........................................ 13, 23

28 U.S.C. § 1491(a)(1) ........................................ 13

28 U.S.C. § 1491(a)(2) ........................................ 15-16

## FEDERAL ACQUISITION REGULATION ("FAR")

§ 1.403 ........................................ 18

§ 15.506(a)(1) ........................................ 27

§17.207 ........................................ 17

§ 17.207(C)(3) ........................................ 17

§ 17.207(e) ........................................ 18

§ 52.217-9 ........................................ 18

§ 52.249-4 ........................................ 19

## RULES OF CIVIL PROCEDURE

RCFC Rule 11 ........................................ *passim*

Fed. R. Civ. P. 11 ........................................ *passim*

RCFC Rule 11 Rules Committee Notes (2002) ........................................ 12

Fed. R. Civ. P. Rule 11 Advisory Committee Notes (West 2007)......... 11-12

## GAO OPINIONS

*Career Quest, a division of Syllan Careers, Inc. – Costs*, B-293435.5, April 13, 2005, 2005 CPD ¶ 79 ........................................................ 23-24

# STATEMENT OF THE ISSUES

I. Whether the Court should impose Rule 11 sanctions where the claims raised in the Complaint are not warranted by existing law and not supported by a nonfrivolous argument to extend existing law and otherwise violate Rule 11(b)(2).

II. Whether the Court should impose Rule 11 sanctions where the allegations and factual contentions in the Complaint lack evidentiary support and otherwise violate Rule 11(b)(3).

III. Whether the Plaintiff brought the Complaint for an improper purpose or otherwise violated Rule 11(b)(1).

IV. Whether the Plaintiff's attorney violated his certification under Rule 11(b) that the Complaint was filed after an inquiry that was reasonable under the circumstances.

## STATEMENT OF THE CASE

The Ravens Group, Inc. ("Ravens") seeks to enjoin the Defense Intelligence Agency ("DIA" or "Government" or "Agency") from implementing its contract award to Rowe Contracting Services, Inc. ("Rowe"). DIA twice has selected Rowe's proposal as offering the best value to the Government under Solicitation No. HHM402-05-R-0017 ("Contract"). Ravens' Complaint is its eighth attempt to block the Agency's contract award to Rowe. In fact, the bulk of Ravens' Complaint in the captioned action does nothing more than regurgitate the stale allegations and arguments that Ravens raised at GAO in April 2006 and that were rejected. In the intervening year, Ravens could have looked at the law to determine whether it had a legal basis for the counts it has asserted in the Complaint. In the intervening year, Ravens could have made inquiries reasonable under the circumstances to ascertain facts to support its frivolous and rejected factual allegations. In the intervening year, Ravens could have taken and preserved testimony from the two Ravens' employees or former employees that Ravens claims sold proprietary information to Rowe. Ravens apparently did not take any of these actions.

As discussed in more detail below, at the time it filed its Complaint, through a simple examination of the applicable law, Ravens knew or should

have known that its various claims were unwarranted. Furthermore, many of the factual allegations are without evidentiary support. It is plainly evident that Ravens' Complaint was filed for an improper purpose—namely continued harassment of Rowe and unnecessary delay in the orderly transition of the Contract work to the offeror properly selected by the Agency. The Complaint violates Rule 11 of this Court. And, the Court may properly assess sanctions against Ravens and its counsel for the violation.

***Background***

The Contract at issue is for janitorial services at the Bolling Air Force Base. Ravens initially was selected for award on June 28, 2005. *See The Ravens Group, Inc.,* B-296741.12; B-296741.13, March 15, 2007 ("GAO's March 2007 Dismissal"), at Appendix ("App."), Ex. 1. DIA notified the offerors, including Rowe, of the Agency's award to Ravens by letter dated June 27, 2005. *See* Letter from Guy A. Torres, Contracting Officer, Virginia Contracting Activity to Mr. Scott Eugene Rowe, President, date stamped June 27, 2005, attached at App., Ex. 2. That letter disclosed, to all offerors, Ravens' proposed price. *Id.* Ravens knew as of June 16, 2006 at the latest, that Ravens' proposed price had been disclosed by DIA to all offerors as part of the Agency's notice of award letter sent in June 2005. *See* Letter from Kenneth B. Weckstein to Mary G. Curcio, Esq., U.S.

Government Accountability Office, with attached award notice and fax confirmation to Daryle A. Jordon, Esq., dated June 14, 2006, attached at App., Ex. 3.

On June 29, 2005, NOSLOT Cleaning Services, Inc. ("NOSLOT") protested the selection of Ravens at GAO. DIA determined that the award to Ravens was improper and elected to take corrective action. As part of the Agency's corrective action, offerors were invited to submit final proposal revisions ("FPRs"). *See The Ravens Group, Inc.—Reconsideration,* B-296741.7, July 14, 2006 ("GAO's July 2006 Dismissal"), at App., Ex. 4. To Rowe's knowledge, at the time FPRs were submitted to DIA or before, Ravens did not assert that the prior disclosure in the notice of award of Ravens' price was improper, and Ravens did not seek relief from DIA arising from the prior disclosure of Ravens' proposed price.

FPRs were submitted by the offerors in November 2005. As the result of the Agency's evaluation of the FPRs in accordance with the criteria of the Solicitation, Rowe was selected for award on March 22, 2006. *See* App., Ex. 4 (GAO's July 2006 Dismissal). The Agency specifically determined that Rowe offered the Government the "best value". The Agency evaluated Rowe's Technical Proposal as "Excellent". And, the Agency determined that Rowe offered the lowest price.

It was after the Agency's selection of Rowe in March 2006 that Ravens began raising its meritless protests. Ravens first argued in April 2006 that Rowe improperly had gained access to proprietary information of Ravens. Specifically, Ravens contended in April 2006 that Rowe had paid two Ravens' employees for confidential and proprietary information about Ravens. And, Ravens claimed that Rowe had improper access to Ravens' price proposal. In support of those two allegations, Ravens submitted a series of three sworn declarations from Ravens' employees to GAO (and DIA) in April 2006, and a fourth sworn declaration in June 2006. None of the declarations were from the Ravens' employees that allegedly had accepted or been offered improper payments from Rowe or who had otherwise allegedly provided Rowe with access to Ravens' proprietary information.

GAO (and DIA) determined that Ravens' allegations were baseless. GAO specifically found that Ravens "mischaracterized" the contents of its employees' statements, noting that none of the April 2006 declarations asserted that Rowe had access to information of Ravens prior to the submission of FPRs. Indeed, Ravens produced no factual support for its allegations that Rowe had acted improperly. According to Ravens' own submissions, after Rowe had been awarded the contract, Rowe sought

information from Ravens' employees to help transition the contract work to Rowe and nothing more. Moreover, as of June 2006, it was made clear to Ravens that the only pricing information that Rowe had regarding Ravens was Ravens' pricing for its original submission—the pricing that had been publicly released by DIA as part of the notice of award. *See* App., Ex. 3.

Ravens' Complaint raises the same substantive allegations that were rejected by GAO (and DIA) in July 2006. And, Ravens' Complaint is based on the same sworn declarations that Ravens submitted to GAO (and DIA) and were found to have "mischaracterized" the contents of those declarations. And, Ravens was on notice as of June 2006 that certain purported factual allegations included in the sworn statements were false. Among other things, as of June 2006, Ravens knew that Rowe's only knowledge of Ravens' pricing was based on DIA's notice of award letter sent in June 2005.

In April 2006, the Agency decided to take corrective action. *See* Contracting Officer's Statement, dated May 15, 2006, attached at App., Ex. 5. As part of that corrective action, the Agency did not invite proposal revisions. In fact, the Agency has not requested (or accepted) additional proposal revisions since the Agency's selection of Rowe in March 2006. Thus, after Rowe allegedly received Ravens' information in March 2006,

there was no opportunity for Rowe to use that information in any submission to DIA. Instead, the Agency limited its corrective action to reconsideration of its source selection decision.

As a result of that corrective action, NOSLOT was selected for award. Subsequently, that selection of NOSLOT was determined by the Agency to have been improper. And, the Agency again took corrective action in October 2006. Contracting Officer's Notice of Corrective Action, dated October 24, 2006, at App., Ex. 6. As with the prior corrective action, proposal revisions were not solicited or accepted.

On December 19, 2006, DIA again found that Rowe had offered the best value to the Government and selected Rowe for award. *See* App., Ex. 1 (GAO's March 2007 Dismissal). Ravens protested the selection decision to GAO. That protest was dismissed by GAO on March 15, 2007. *See id.* (A second offeror Olympus Building Services, Inc. ("Olympus") also protested the Agency's selection of Rowe at GAO. The protests of Olympus were dismissed in part and denied in part by GAO. A request for reconsideration of the Olympus protest currently is pending at GAO.)

Ravens' Complaint alleges seven counts:

- Count I: Unfair Business Practices;
- Count II: Irrational Contract Award;

- Count III: DIA's Breach of the Implied Duty of Good Faith and Fair Dealing;
- Count IV: Violation of FAR Notification Provision;
- Count V: Unfair Business Practices;
- Count VI: Initial Award to The Ravens Group Was Proper;
- Count VII: Totality of Circumstances.

None of Ravens' claims are warranted. Each are based on factual allegations that Ravens' knew or should have known were false. Every claim asserted in Ravens' Complaint was presented in Ravens' prior protests. Although Ravens has had over a year to perfect the claims it has filed and correct the deficiencies in its evidence, it has chosen to simply assert the exact arguments that were rejected by GAO. Ravens has failed to take reasonable steps to cure these deficiencies – the clear reason is that it could not.

As noted, Ravens was selected for award once—in June 2005. Ravens' Complaint does not get even this basic fact correct. Instead, Ravens falsely asserts that DIA selected Ravens three times as having represented the best value to the Government. Directly opposite to what Ravens has pled in its Complaint, DIA has determined three times that Ravens did **not** submit the offer providing the best value to the Government

under the Solicitation. Despite that, it is Ravens, not Rowe, that currently is performing the work under the Contract. In fact, due to the various protests and corrective actions taken by the Agency, Ravens has been performing the Contract for nearly two years since the Agency determined that the original award to Ravens was improper. *See* Ravens' Complaint for Injunctive and Declaratory Relief, April 18, 2007 ("Complaint") ¶¶ 13, 28 (alleging that the Agency has exercised two option years under the Contract).

The bottom line is Ravens repeatedly has filed meritless protests and now is reaching out to this Court. The transparent purpose of its Complaint is to improperly delay Rowe's performance of the Contract. This strategy has resulted in millions of dollars of revenue to Ravens for performance of this Contract for which Ravens was and is not entitled. DIA selected Rowe for award because it evaluated Rowe's price proposal as being the lowest price proposal and because it evaluated Rowe's technical proposal as being excellent. In its Complaint, Ravens has not challenged either of these findings by DIA. In addition to not challenging DIA's evaluation of Rowe's proposal, Ravens has not challenged DIA's evaluation of Ravens' own price or technical proposals. Ravens' simple motives in filing its Complaint are to delay performance by Rowe; force continued performance

of Ravens' existing contract; and continue to receive revenues for performing its improperly awarded contract. Such purposes are improper. And, as discussed in more detail below, they run afoul of Rule 11 of this Court.

## Discussion

Based on the Complaint filed before this Court and the allegations contained therein, Ravens has violated the Rules of the United States Court of Federal Claims ("RCFC" or "Rule") 11(b)(1), (b)(2), (b)(3). In compliance with Rule 11(c), Rowe served Ravens with this Motion on May 4, 2007, thereby providing notice of its intent to request sanctions, and has filed this motion after 21 days. Because Ravens has refused to voluntarily withdraw its Complaint, Rowe respectfully requests this Court to sanction Plaintiff and Plaintiff's attorney.

RCFC Rule 11(b) states that when an attorney submits a pleading, the attorney is certifying that, to the best of his or her knowledge, information, and belief, "***formed after an inquiry reasonable under the circumstances***[:]"

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous

> argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support, or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. . . .

*Id.* (emphasis added.)

This Court has stated that "The purpose of sanctions under RCFC Rule 11 is to deter baseless filings and streamline the administration of the courts." *See Aldridge v. United States*, 67 Fed. Cl. 113, 123 (2005) (citation omitted). Decisions concerning Federal Rules of Civil Procedure Rule 11 are applicable to RCFC 11. *Id.* The applicable standard for a Rule 11 inquiry is whether the conduct was reasonable under the circumstances. *See Persyn v. United States*, 35 Fed. Cl. 708, 712 (1996), *aff'd in relevant part, rev'd on other grounds*, 135 F.3d 773 (Fed. Cir. 1997)[1]. This is an objective standard and subjective bad faith is not required. *See id.; see also Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). The objective standard is intended to "eliminate any 'empty-head-pure-heart' justification for patently frivolous arguments." *See* Fed. R. Civ. P. Rule 11 Advisory Committee Notes (West 2007) (discussing 1993

---

[1] Rowe notes that this case interprets a prior version of Rule 11, however, the objective and reasonableness standards used by the court continue to apply in the Rule 11(b) analysis. *See* Fed. R. Civ. P. Rule 11 Advisory Committee Notes (West 2007) (discussing 1993 Amendments).

Amendments); *see also* RCFC Rule 11 Rules Committee Notes (2002) (discussing 2002 Revisions).

As discussed in more detail below, Ravens' conduct violates Rule 11(b) and warrants sanctions by the Court.

## I. RAVENS' COMPLAINT VIOLATES RULE 11(b)(2).

A party may be subject to sanction when it presents claims before a court that are not warranted by existing law or poses an argument for an extension or modification of existing law that is frivolous. *See* RCFC 11(b)(2). The appropriate standard is whether the party has made an objectively reasonable inquiry of the applicable law and underlying facts. *See Persyn*, 35 Fed. Cl. at 712. Reasonableness is determined based on the circumstances, and may include an examination of:

> the amount of time the attorney had to prepare the document and research the relevant law; whether the document contained a plausible view of the law; the complexity of the legal questions involved and whether the document was a good faith effort to extend or modify the law.

*See Ridge v. United States Postal Service*, 154 F.R.D. 182, 184 (N.D. Ill. 1992) (citations omitted) (quotations omitted).[2]

Ravens has asserted seven counts in its Complaint, none of which state a claim for which relief can be granted. As discussed above and below,

---

[2] *See* footnote 1.

these are frivolous causes of action, with no basis in law and/or fact, and are designed to prevent transition of this Contract to Rowe. Ravens was on notice of the deficiencies of a number of its legal arguments because several of these claims were raised before GAO and dismissed as being without merit. In addition, four of the seven claims are claims over which this Court does not have jurisdiction. This defect is clear from review of the jurisdictional statute on which Plaintiff relies. *See* Complaint ¶ 4 (citing 28 U.S.C. § 1491).

**A. Count I is unwarranted and frivolous.**

Count I (Unfair Business Practices) asserts a claim of unfair business practices against Rowe. *See* Complaint ¶¶ 34-39. This Court is without jurisdiction to consider this claim. *See* 28 U.S.C. § 1491(a)(1).

Title 28 U.S.C. 1491(a)(1) states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon **any claim against the United States** founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases **not sounding in tort**."

(emphasis added); *see also Berdick v. United States*, 612 F.2d 533, 536 (Ct. Cl. 1979) (finding that 28 U.S.C. 1491 does not confer jurisdiction over

counts naming private individuals or causes of action sounding in tort, but only judgments on claims against the United States).

Ravens' Count I is not against the United States and also sounds in tort. Thus, Count I is unwarranted. A simple search of the jurisdictional requirements of this Court was all that was required to identify the jurisdictional defect of Count I. Paragraph 4 of the Complaint cites to the statute at issue. Plaintiff's inclusion of Count I in the Complaint together with a citation to the jurisdictional statute of this Court is evidence of Ravens' failure to conduct a reasonable inquiry into the applicable law. In this circumstance, Rule 11 sanctions against Ravens properly should be assessed. *See, e.g., Verdon v. Consolidated Rail Corp.*, 828 F. Supp. 1129, 1142 (S.D.N.Y. 1993) (awarding sanctions under Fed. R. Civ. P. 11 where "even a rudimentary search into the applicable law would have informed [plaintiff] immediately" that the court lacked subject matter jurisdiction over his claims).

### B. Count II is unwarranted and based on a misrepresentation of law.

Count II (Irrational Contract Award) challenges the Agency's conduct in exercising options under Ravens' current contract and seeks to enjoin the Agency from terminating Ravens' contract with DIA. Complaint ¶¶ 40-47. Count II suffers from two defects: 1) the claim is subject to the

Contract Disputes Act ("CDA") and is not yet ripe for adjudication by this Court; and 2) the claim is based on a misrepresentation of law.

#### 1. Count II is governed by the CDA and is not yet ripe for the Court's review.

Count II concerns issues of contract administration and is not properly before the Court. *See, e.g.*, 41 U.S.C. § 605(a). Specifically, Count II argues that the Agency's exercise of an option under the Ravens' contract "without any reservation or qualification" was improper where one month later DIA selected Rowe for award. Complaint ¶¶ 44-45. (In making this allegation Ravens seems to ignore the obvious fact that Ravens still was performing under the option five months after the option was exercised.) And, Count II seeks to enjoin termination of Ravens' contract with DIA, notwithstanding the Agency's right to terminate the contract for the convenience of the Government. Complaint ¶ 47.

Contract claims, like those raised by Ravens in Count II, are governed by the CDA. Title 41 U.S.C. 605(a) says:

> All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision.

This Court does not have jurisdiction over CDA claims where a final decision has not yet been rendered by a contracting officer. *See* 28 U.S.C. § 1491(a)(2) ("The Court of Federal Claims shall have jurisdiction to render

judgment upon any claim by . . . a contractor . . . on which a decision of the contracting officer has been issued. . . ."); *see also* 41 U.S.C. § 609; *James M. Ellett Construction Co., Inc., v. United States*, 93 F.3d 1537, 1541 (Fed. Cir. 1996) (stating that for Court of Federal Claims' "jurisdiction under the CDA, there must be both a valid claim. . . and a contracting officer's final decision on that claim"). This is a standard, basic principle of government contract law that is easily discoverable with limited research by a novice attorney.

Therefore, Ravens' Count II, and any other portions of its Complaint that complain about arbitrary exercise of options by DIA and seek to prevent termination of Ravens' contract all are covered by the CDA. Ravens should have known that there is no jurisdiction in the Court to hear those complaints unless and until they have been presented to the DIA Contracting Officer for a final decision. *See* 41 U.S.C. § 609; *see also James M. Ellett Construction Co., Inc., v. United States*, 93 F. 3d at 1541. Ravens' Count II, therefore, is unwarranted, and its inclusion in the Complaint merits sanctions. *See Verdon v. Consolidated Rail Corp.*, at 1142.

**2. Count II also is based on a misrepresentation of the law.**

Not only has Ravens failed to examine the jurisdictional requirements

of the Tucker Act and the CDA, Ravens also misrepresents the law. It states in paragraph 43 of its Complaint:

> In exercising [Option Year 2], DIA was required under FAR Subpart 17.207, to make a finding that award of the option represented the "best value" to the Government.

This misstates the requirements of FAR section 17.207. Nowhere in section 17.207 do the words "best value" appear. Rather, the Government is required to determine that "[t]he exercise of the option is the most advantageous method of fulfilling the Government's need, price and other factors . . . considered . . . ." *See* FAR § 17.207(c)(3).

What Ravens is attempting to do is convert the exercise of an option into an award of a contract under evaluation criteria in a solicitation after comparison of proposals and a best value analysis. That "argument" is not supported by applicable law, which among other things, requires the Agency to evaluate proposals submitted in response to a solicitation in accordance with the stated evaluation criteria in the solicitation—and not the applicable standard for the exercise of options.

Contrary to Ravens' allegations, DIA exercised the options under Ravens' contract twice because DIA believed that, given the then pending protests (many of which were filed by Ravens), the exercise of the option was the most advantageous method of fulfilling the Government's need for

"continuity of operations." *See* FAR § 17.207(e). That finding is substantively distinct from the determination that under the Solicitation, Rowe was the offeror that offered the "best value" to the Government. Ravens' misrepresentation of the FAR to suggest otherwise in its Complaint merits sanctions.

Additionally, Ravens asserts throughout its Complaint that the exercise of option years without reservations or conditions further establishes Ravens' entitlement to this Contract. *See, e.g.,* Complaint ¶¶ 13, 28, 44, 52-53, 85; *see also id.* at 1. Counts II and III are based on this erroneous conclusion. *See* Complaint ¶¶ 44, 52. This is further evidence of Ravens' misrepresentation of the applicable law.

Title 52 CFR 52.217-9 is the standard FAR clause for the exercise of Option Years for services contracts. The standard FAR Option clause is part of the contract. That clause does not authorize DIA to exercise options with conditions or reservations. A variation of the required FAR clause would have required a deviation approved by the agency head. *See* FAR § 1.403 (Individual Deviations). And, absent such a deviation, exercise of the option by the Government with conditions or reservations would have voided the option. The law is clear that "to properly exercise that option, the government's acceptance of the offer had to be unconditional and in

exact accord with the terms of the contract being renewed." *See Lockheed Martin IR Imaging Systems, Inc. v. West*, 108 F.3d 319, 323 (Fed. Cir. 1997) (quoting *New England Tank Industries of New Hampshire, Inc. v. United States*, 861 F.2d 685, 687 (Fed. Cir. 1988)); *see also Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1275 (Fed. Cir. 1999).

Moreover, there was no reason for the Agency to exercise the Option Year 1 or 2 with any conditions or reservations. FAR section 52.249-4 is a standard Termination for Convenience clause and allows the Government to terminate a contract, "in whole or in part, when it is in the Government's interest." DIA was not required to condition its exercise of the Option Years 1 or 2 on the possibility that award would be made to a different offeror.

Given the well-established law regarding the CDA, the exercise of options and the Government's rights under the standard termination for convenience clause, Count II of Ravens' Complaint is unwarranted. Ravens properly should be sanctioned for including Count II in the Complaint.

### C. Count III is unwarranted because it is based on a misrepresentation of the law and is otherwise not legally supported.

Count III (DIA's Breach of the Implied Duty of Good Faith and Fair Dealing) is equally baseless. *See* Complaint ¶¶ 48-60. Pursuant to well-

established law, a claim that the Government has violated the implied duty of good faith and fair dealing requires "'well-nigh irrefragable proof' that the government had specific intent to injure" the contractor. *See Caldwell & Santmyer, Inc. v. Glickman*, 55 F.3d 1578, 1581 (Fed. Cir. 1995); *see also Comprehensive Health Services, Inc. v. United States*, 70 Fed. Cl. 700 (2000) (dismissing a claim for alleged breach of the implied duty of good faith and fair dealing for failing to provide evidence of subjective bad faith). The Complaint does not include any allegations of subjective bad faith by the Government directed against Ravens.

The crux of Count III appears to be that DIA did not specifically tell Ravens that the procurement challenged by Ravens' Complaint still was pending at the time that the Agency exercised the Option Year 2. Complaint ¶ 51. And, Ravens alleges that it understood the exercise of Option Year 2 to be the Agency's "final determinative" action regarding the challenged procurement. Complaint ¶ 53. Not only do those allegations fail to establish the requisite element of subjective bad faith, the allegations again are based on a misrepresentation of the applicable law.

As stated in the discussion regarding Count II above, Ravens' argument that DIA had guaranteed award of the Contract to Ravens by exercising an option year with Ravens is frivolous. *See* Section I.B above.

Because Count III is based on this same frivolous argument, Count III is unwarranted for this additional reason.

**D. Count IV is unwarranted because Ravens cannot demonstrate that it was prejudiced by the alleged lack of notice.**

Count IV (Violation of FAR Notification Requirements) alleges a purported claim against DIA for DIA's alleged failure to notify Ravens of protests in 2005 (Complaint ¶¶ 62-63) and of a Notice of Corrective Action issued on October 24, 2006 (Complaint ¶ 64). The protests from 2005 allegedly were filed in June and September of 2005. Complaint ¶¶ 62-63. All offerors, including Ravens, were permitted to file FPRs in November 2005. And, Ravens' Complaint challenges the selection decision based on DIA's evaluation of the November 2005 FPRs. Thus, Ravens simply was not prejudiced by any purported lack of notice of the 2005 protests. Ravens was permitted to submit an FPR, like all other offerors, and Ravens continued to participate in the procurement for approximately another 17 months before filing its Complaint challenging the alleged lack of prompt notice.

Similarly, Ravens was not prejudiced by any lack of receipt of the October 24, 2006 Notice of Corrective Action. Ravens does not allege that it was unaware of the protest that was resolved by the October 24, 2006

corrective action. And, Ravens does not allege that the Agency notified Ravens (or any other offeror) that the procurement had been cancelled. Thus, Ravens knew or should have known that the procurement (that it now challenges) was pending and open. Ravens' only complaint with the lack of notice in this regard appears to be tied to the exercise of Option Year 2. *See, e.g.*, Complaint ¶ 51. Under the applicable law, however, performance of Option Year 2 by Ravens was not discretionary once the Government exercised the option. Options in Government contracts may be exercised by the Government, not the contractor. Ravens had no legal right to refuse to accept or perform the option.

Prejudice is required for any valid cause of action for a bid protest type action. *See Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1581 (Fed. Cir. 1996). The alleged lack of notice has no bearing on the proposal submitted by Ravens, the evaluation of Ravens' proposal or Rowe's proposal, or the best value determination that resulted in award to Rowe. In fact, despite the alleged lack of notices in 2005 and 2006, the result was that Ravens continued to perform the Contract, for which it was compensated. And as discussed in more detail in Section II below, given the internal inconsistencies in Ravens' own Complaint and GAO's prior factual findings, Ravens' credibility as to whether it has received

correspondence is strained at best. Because Ravens cannot establish that it was prejudiced by the alleged lack of notice, Count IV is unwarranted.

**E. Count V is unwarranted and frivolous.**

Ravens asserts again, as Count V, unfair business practices against Rowe. Complaint ¶¶ 67-73. For the same reasons discussed above regarding Count I, Ravens' failure to examine the subject matter jurisdiction requirements of 28 U.S.C. § 1491 merits sanctions. *See* Section I.A above.

**F. Count VI is unwarranted because it is unsupported by existing law**

Count VI (Initial Award to The Ravens Group Was Proper) similarly has no basis in law. *See* Complaint ¶¶ 74-78. Ravens claims that NOSLOT was not an interested party because it was ineligible for award, and thus, NOSLOT's protest was invalid. *See* id. ¶ 76. Ravens concludes that because NOSLOT was not an interested party, the original award to Ravens must be proper (*see id.*) and "subsequent re-evaluations of the procurement were therefore invalid[,]" (*see id.* ¶ 77) and "*void ab inicio [sic].*" Complaint at 2.

First, DIA legally may decide to take corrective action and make a new source selection decision without any protest. *See, e.g., Career Quest, a division of Syllan Careers, Inc. – Costs*, B-293435.5, April 13,

2005, 2005 CPD ¶ 79[3] (rejecting awarding costs where protestor had not filed a "clearly meritorious" protest and agency elected to take corrective action). Second, what Ravens suggests here lacks common sense. DIA determined that corrective action was required. But because the wrong offeror protested, according to Ravens, DIA should be stuck with its bad decision. This argument lacks any support in law. Rowe also notes, and Ravens knows, that there has never been a GAO decision that found that NOSLOTS was not an interested party at the time it filed its protest against the award to Ravens.

**G. Count VII also is unwarranted.**

Ravens' final cause of action, Claim VII (Totality of the Circumstances) is merely a compilation of Counts I through VI. For the same reasons as stated above, this cause of action is equally frivolous.

For the reasons stated above, Ravens' Complaint, in it's entirety, illustrates Ravens' failure to conduct even a basic examination of the applicable law. Such failure warrants sanctions under the circumstances.

---

[3] *See Manson Construction Co., v. United States*, 64 Fed. Cl. 746, 752 n.6 (2005) (stating that "[a]though decisions of the GAO are not binding on this court, they can be used for guidance when they are found to be reasonable and persuasive").

## II. THE CAUSES OF ACTION IN RAVENS' COMPLAINT LACK EVIDENTIARY SUPPORT.

In addition to conducting a reasonable inquiry into the law, a party also must conduct a reasonable inquiry into the facts supporting its pleading. *See Balthazar v. Atlantic City Medical Center*, 279 F. Supp. 2d 574, 593-594 (D.N.J. 2003); *see also Carefirst of Maryland, Inc. v. First Care, P.C.*, 422 F. Supp. 2d 592, 607 (E.D.Va. 2006). Given that Ravens has posed the exact same accusations and presented the exact same evidence to support its allegations that it argued unsuccessfully before GAO in its Complaint here, and given that Ravens' own statements do not support its allegations, Ravens was aware that its evidence did not support its claims. Under these circumstances, this conduct warrants sanctions under Rule 11(b)(2) and 11(b)(3). *See Balthazar v. Atlantic City Medical Center,* 279 F Supp. 2d at 594-95 (sanctioning plaintiff under Fed. R. Civ. P. 11(b)(2) for failing to conduct a reasonable inquiry into the facts when he advanced identical claims that were brought unsuccessfully in state court without curing the deficiencies); *see also Carefirst of Maryland, Inc. v. First Care, P.C.*, 422 F. Supp. 2d at 607 (stating when no factual basis for a claim exists or minimal factual inquiry would disprove, the claim violates Fed. R. Civ. P. 11(b)(3)).

Ravens was on notice of the deficiencies of its evidence. It presented to GAO the same four statements that it has attached to its Complaint. GAO found that "Ravens mischaracterize[ed] the Ravens employee's statements." *See* App., Ex. 4 at 3 (GAO's July 2006 Dismissal). Ravens continues to mischaracterize those statements here. And Ravens alleges other "facts" that it was on notice were untrue. For instance,

- Ravens alleges that Ravens was the "best value" and awarded the Contract three times "applying the same work requirements, evaluation factors and award criteria." *See* Complaint ¶¶ 41, 42, 43, 46, 80, 86; *see also id.* at 2; ¶¶ 25, 28, 30. This is false.

  **Fact** –Ravens was awarded the Contract only once on June 28, 2005. *See The Ravens Group, Inc.*, B-296741.5, B-296741.6, May 19, 2006 ("GAO's May 2006 Dismissal"), attached App., Ex. 7; *see also* App., Ex. 1 (GAO's March 2007 Dismissal).

- Ravens alleges that in March 2006, the "DIA decided to take further corrective action by re-evaluating all the proposals again." Complaint ¶ 16.

  **Fact** – In April 2006, the Agency notified offerors that it would reconsider its best value determination based on the proposals already submitted and ***would not*** reevaluate proposals. *See* App., Ex. 7 (GAO's May 2006 Dismissal) (emphasis added).

- Ravens alleges that Rowe improperly obtained Ravens pricing information. Complaint ¶¶ 17, 19, 35-36, 69-70, and 83.

  **Fact** – All offerors were properly informed of Ravens' total proposed price for the base and option years in June 2005 by DIA. *See* App., Ex. 3.

- Ravens alleges that "[t]he sworn statements and Mr. Rowe's own actions provide substantial, compelling, and ***uncontroverted***

evidence" of Rowe's theft of Ravens' proprietary and confidential information. Complaint ¶ 23 (emphasis added).

**Fact** – The sworn statements attached to Ravens' Complaint were rejected by GAO (and DIA) and are disputed by Rowe. *See* App., Ex. 1 (GAO's March 2007 Dismissal).

- Ravens alleges that Rowe improperly obtained confidential and proprietary information of Ravens prior to award of the contract. Complaint ¶¶ 17, 18, 19, 69, 83; *see also id.* ¶¶ 20, 23, 38, 39, 68.

  **Fact** – Ernest Fields, a then-Ravens employee, told Milton Grant, that he and Wendy Scott received $500 from Rowe "in exchange for help and information **to transition** the contract." *See* Milton Grant's Sworn Statement, attached to Complaint as Exhibit B (emphasis added). GAO held that Ravens evidence did not show that Rowe improperly received any information about Ravens prior to award to Rowe in March 2005. *See* App., Ex. 4 (GAO's July 2006 Dismissal).

- Ravens alleges that "DIA's submission of the notice using an incorrect fax number, delayed The Ravens Group receipt of the award notice . . . ." Complaint ¶¶ 30-31.

  **Fact** – Ravens received notice of award to Rowe on December 19, 2006 to a fax machine under Ravens' control. See App., Ex. 1 (GAO's March 2007 Dismissal).

- Ravens alleges in paragraph 31 of its Complaint that "DIA's submission of the notice using the incorrect fax number, delayed The Ravens Group receipt of the award notice and deprived The Ravens Group of the opportunity to request and receive a debrief." Complaint ¶ 31.

  **Fact** – Any delay in receiving notice of award to Rowe did not prevent Ravens from requesting a debriefing. *See* Agency Motion to Dismiss Protest of The Ravens Group, Inc. (B-296741.12), dated January 18 2007, attached App., Ex. 8; *see also* FAR § 15.506(a)(1).

Ravens' Complaint relies on the above-noted allegations that Ravens already knew or should have known were false. Those allegations were unreasonable given that GAO and DIA had rejected the same allegations and claims as without merit. Rather than make further inquiry into the facts, Ravens has chosen to continue to misconstrue the facts as it did before GAO. Such conduct violates Rule 11 of this Court, and Ravens should be sanctioned.

### A. Ravens has failed to provide evidentiary support of Rowe's alleged unfair business practices for Count I.

Boiled down, Ravens' allegations of unfair business practices are that Rowe: (1) improperly obtained Ravens pricing information, (2) bribed two Ravens employees to obtain confidential and proprietary information, and (3) obtained information about Ravens' technical proposal. Ravens relies on the same four statements that were rejected by GAO as evidence that Rowe committed unfair business practices. These statements consist of hearsay, double hearsay statements, and opinions. And now Ravens provides the very same "evidence" – nothing more – before this Court.

In its Complaint, Ravens claims that this evidence is "uncontroverted." *See* Complaint ¶ 23. That is false. Both GAO and DIA reviewed this evidence (*see* Complaint ¶ 22 & App., Ex. 4 (GAO's July 2006 Dismissal)) and rejected Ravens' accusations. And considering that

both DIA and GAO determined that Ravens failed to provide evidence of wrongdoing by Rowe, one would expect Ravens to have uncovered something more in the last year to support its accusations or, at minimum, corroborate the "evidence" that was already rejected by GAO and DIA. Given the amount of time Ravens' attorney had to further investigate its claims, it was unreasonable for him to rely exclusively on his client's statements and to forgo an independent investigation of the facts underlying Ravens' claims. *See Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (awarding Fed. R. Civ. P. Rule 11 sanctions and holding that the attorney had an obligation to conduct an independent investigation of the facts underlying his client's claims rather than rely solely on the representations made by his client). The fact that Ravens has no additional evidence, given the circumstances, illustrates its failure to conduct a reasonable inquiry into the facts before it filed this Complaint. Significantly, Ravens has failed to provide statements from Ernest Fields or Wendy Scott, the employees who were allegedly offered bribes, despite the fact that Ravens was aware that its "evidence" did not support its accusation.

**1. Ravens is aware that its total offered price was released by the Agency to all other offerors in June 2005.**

Ravens again accuses Rowe of improperly obtaining Ravens' pricing

information to enhance Rowe's own price proposal. *See, e.g.,* Complaint ¶ ¶¶ 17, 19, 35-36, 69, 83. Ravens is undoubtedly aware this is a false accusation. DIA notified all offerors by letter dated June 27, 2005, eight months prior to March 2006, of Ravens' pricing information. *See* App., Ex. 2. Therefore, all offerors were aware that Ravens' proposed a price of $21,731,005.09 for the base and option years of the contract. Accordingly, Rowe properly had knowledge of Ravens' contract price and Rowe previously had and subsequently did submit a proposal below that price. Further, Ravens became aware of the June 27, 2005 letter, at the latest on June 14, 2006, and well before filing this Complaint, when it received Rowe's response to Ravens' Request for Reconsideration. *See* App., Ex. 3. Yet despite this, Ravens continues to make this mischaracterization in its Complaint.

**2. Ravens' evidence proves that Rowe did not bribe Ravens employees.**

And Ravens again accuses Rowe of paying Ravens employees to provide proprietary and confidential information about Ravens. *See* Complaint ¶¶ 20, 68. This is another baseless accusation. Ravens relies solely on Milton Grant's undated statement marked as Exhibit B to Ravens' Complaint. In his statement, Milton Grant admits that any information Rowe allegedly received was only after award to Rowe. Such information,

by definition, could not have been used to enhance Rowe's proposal before award. Grant's statement actually says that $500 was given to Wendy Scott and Ernest Fields "for help and information to transition the contract . . . ." Complaint, Exhibit B.

GAO held that this exact same statement by Milton Grant did not establish that Rowe used any confidential or proprietary information of Ravens in Rowe's proposal. *See* App., Ex. 4 at 3 (GAO's July 2006 Dismissal). ("Further in this regard, Ravens stated in its April 6 protest that its employees admitted that Rowe had paid them for information regarding Ravens' schedule and employees 'during the pendency of the Ravens Group's Protest.' Ravens' protests, as discussed above, were submitted after Rowe received the contract award and, therefore, after Rowe's FPR had been submitted."). Yet Ravens continues to mischaracterize Milton Grant's recollection of his conversation with Ernest Fields. Ravens ignores the fact that the Milton Grant admits that Rowe's interaction with Fields and Scott was for purposes of transition.

**3. Ravens' claim that its evidence is "uncontroverted" and that DIA failed to investigate its accusations is false.**

Ravens claims the evidence it presents before this Court is "uncontroverted." *See* Complaint ¶ 23. That is false. GAO determined that the "statements do not indicate that the Rowe official stated that its

employees viewed Raven's work schedule before, or even after Rowe submitted its FPR, or stated that the firm's work schedule was based on Ravens's." *See* App., Ex. 4 at 3 (GAO's July 2006 Dismissal). GAO also determined that "Ravens stated in its April 6 protest that its employees admitted that Rowe had paid them for information regarding Ravens's schedule and employees 'during the pendency of the Ravens Group's Protest.' Ravens's protests, as discussed above, were submitted after Rowe received the contract." *Id.* GAO carefully reviewed Ravens' evidence and determined that "Ravens mischaracterize[d] the Ravens employee's statements." *Id.* In the last 10 months, rather than investigating its facts and providing this Court and Rowe with credible evidence, or even presenting statements from the employees who had allegedly received the payments, Ravens has chosen to continue to mischaracterize what was rejected by GAO.

Ravens' evidence of Rowe's alleged admission of improper conduct lacked credibility when presented to GAO **and DIA** and continues to lack credibility today. Ravens' claim that "DIA never investigated Rowe's conduct" is false. Complaint ¶ 22. Ravens has no idea what Rowe submitted to DIA. Ravens has no idea what DIA reviewed and investigated. Ravens never made any effort to inquire as to whether DIA

conducted any review. Instead, Ravens automatically presumes that DIA acted in bad faith. Ravens makes those presumptions even though it knew that DIA had reviewed the allegations that Ravens had made in its GAO protests and opposed those protests at GAO.

Given that Ravens was aware that: (1) all offerors, including Rowe, were provided with Ravens' offered price in June 2005; (2) Rowe did not obtain information from Ravens' employees prior to award to Rowe in March 2006 and (3) both GAO and DIA reviewed and rejected Ravens' evidence, it is unreasonable for Ravens to continue its accusations here without any further investigation. Ravens' attorney has unreasonably relied solely on the same statements of his client to support Ravens' claims with no independent investigation into the facts.

To the extent that these statements are relied on to support any of Ravens' Counts in this Complaint, Ravens has failed to make a reasonable inquiry into the facts and has failed to provide any credible evidentiary support for its claims.

**B. Ravens has manipulated facts to support its Count II allegation of Irrational Contract Award.**

Count II is based on misrepresentations of facts. Ravens claims "DIA has awarded this single procurement a total of six (6) times to three (3) different contractors, under the same solicitation, under the same scope of

work, and applying the same evaluation factors." *See* Complaint ¶ 41. Thus, Ravens claims that it was awarded the contract three times. *See id.* ¶ 42. Factually, this is false. This procurement was not awarded three times to Ravens as Ravens claims. Rather, Ravens was awarded the Contract once in June 2005 and DIA twice exercised options in the Contract – first in December 2005 and a second time in November 2006. *See id.* ¶¶ 7, 13, 28.

Considering Ravens' manipulation of the facts surrounding the exercise of the option years, and its outright misrepresentation of the FAR as discussed in Section I.B above, it had no basis to claim in paragraph 46 of its Complaint that:

> **[g]iven the prior awards** to The Ravens Group on the basis that award to The Ravens Group represented the **'best value'** to the Government, including its **most recent award in November 2006**, the subsequent award to Rowe was inexplainable [sic], irrational and unreasonable.

(emphasis added). There was no December 2005 award to Ravens. There was no November 2006 award to Ravens. There were no determination by DIA in December 2005 or November 2006 that Ravens represented the "best value" to the Government.

### C. Ravens' Count III for DIA's alleged Breach of the Implied Duty of Good Faith and Fair Dealing is based on a misrepresentation of the facts.

Count III of Ravens' Complaint is based on the same factual misrepresentations as Count II and for the same reasons is equally baseless. *See* discussion II.B above.

### D. Ravens' Count IV, based on its supposed lack of notice, is dependent on stale "facts" that are not credible.

Ravens claims the Agency failed to provide notice on a number of occasions, including in June 2005 and September 2005. *See* Complaint ¶¶ 8-12, 30, 31, 62-65. Ravens somehow argues that these late notices in 2005 give rise to a valid Complaint in April 2007—even though Ravens admits that it had the opportunity to submit a revised proposal on or around November 2005 and it has been performing the contract work since July 2005.

Even if these late notices somehow gave rise to a cause of action, Ravens' factual allegations are not credible. Ravens has a history of claiming to not receive notice to serve its purpose. For instance, in paragraphs 30 and 31 of its Complaint, Ravens states:

> By letter dated December 19, 2006, **received by the Ravens Group on December 29, 2006**, DIA notified The Ravens Group of its decision to award the Contract to Rowe. . . . The Ravens Group learned of the new award decision in the afternoon of December 29, 2006, just hours before the onset of a long New

> Years holiday weekend. Notably, DIA faxed the notice to a fax number that The Ravens Group had advised DIA on numerous occasions was not the correct fax number to which to send information regarding the Contract.
>
> DIA's submission of the notice using an incorrect fax number, delayed The Ravens Group receipt of the award notice and deprived The Ravens Group of the opportunity to request and receive a debrief.

(emphasis added). Contrary to its allegation in the Complaint, Ravens received the December 19, 2006 letter on December 19, 2006. It just did not receive the letter at the fax number at which it allegedly had told DIA it had wanted to receive the letter. That is quite different than not receiving the letter.

Ravens made this same allegation in its earlier protests with GAO. Ravens filed a supplemental protest on January 8, 2007 and argued that DIA sent notice of award to the wrong fax number, thereby asserting that GAO timeliness rules ran from December 29, 2006 and not December 19, 2006—the date DIA had first faxed the notice of award to Ravens. As with many other "facts" in Ravens Complaint, GAO found this statement to be misleading. GAO noted first that the Agency was unaware of any written instructions from Ravens to send communications to this second fax number. *See* App., Ex. 1 at 2 (GAO's March 2007 Dismissal). But more

importantly, after giving Ravens an opportunity to refute that it received notice on December 19, 2006, GAO stated the following:

> DIA also notes that it has communicated with Ravens using the 202 area code number on a regular basis, and has submitted a copy of a notice that it faxed to Ravens at the 202 number as late in September 2006. . . . **Ravens does not deny that the 202 area code number is under its control, and does not deny that the notice was received at that number on December 19.**

*Id.* (emphasis added). Despite the fact that GAO found Ravens' claim in this regard to be a misleading, Ravens persists with its half-truths here.

As discussed above, Ravens attempted to claim it did not receive timely notice of award to Rowe in December 2006. But when pressed for evidence refuting receipt, Ravens failed to substantiate any of its accusations. And even assuming that that misrepresentation regarding receipt was an isolated incident and Ravens, in fact, did not receive notices of a protest in June 2005, September 2005, or notice of corrective action in October 2006, as it claims, this does not support a valid cause of action.

**E. Ravens has failed to provide evidentiary support of Rowe's alleged unfair business practices for Count V.**

For the same reasons discussed in Section II.A above, Ravens has failed to provide evidence of Rowe's alleged unfair business practices to support Count V.

**F. Ravens has failed to provide any evidence that NOSLOT was found not to be an interested party by GAO to support Count VI.**

As discussed in Section I.F. this Count misrepresents the law. Further, it claims that NOSLOT was not an interested party to protest award to Ravens. GAO never determined that NOSLOT was not an interested party at the time that NOSLOT filed its initial protest against Ravens.

**G. Ravens has failed to provide evidentiary support for Count VII.**

Count VII of Ravens' Complaint is a compilation of the other Counts of its Complaint and therefore suffers from the same evidentiary deficiencies as discussed in Sections II.A through II.F above.

**III. <u>RAVENS HAS PRESENTED THIS COMPLAINT FOR AN IMPROPER PURPOSE IN VIOLATION OF RULE 11(b)(1).</u>**

Ravens' Complaint is the culmination of over a year's worth of litigation against award to Rowe: a total of six protests and one request for reconsideration.

Rather than addressing the merits of the evaluation, Ravens has instead chosen to sling mud at Rowe. Ravens has accused and continues to accuse Rowe of cheating to obtain award of this Contract. As discussed in detail above in Section II, these accusations are completely baseless

and have been found to lack any credible support by the DIA and GAO. Further, as discussed in Section I above, Ravens has failed to conduct a reasonable inquiry into the applicable law to support its claims. It has misconstrued provisions in the FAR to support its claim. In short, Ravens has attacked Rowe's integrity without any credible evidence, Ravens has misrepresented its own evidence and the law to serve its purpose, and Ravens has failed to adequately present legitimate causes of action.

Due, in no small part, to Ravens' repeated protests at GAO, Ravens has received an almost two year windfall in revenue for performing this Contract. And as one can see from the examples discussed in Sections I and II above, and other actions, Ravens' tactics go beyond zealous representation. Such conduct is unbecoming a member of the bar of this Court and should be discouraged.

## Conclusion

In sum, Ravens has again unfairly accused Rowe of unethical and unlawful practices without any evidence to substantiate its allegations. Ravens was on notice that its "evidence" did not support its accusations when both GAO and DIA rejected its claims. Under those circumstances, Ravens should have made further inquiry into the facts. At minimum, Ravens should have interviewed Wendy Scott and Ernest Fields and

included their sworn statements with this Complaint. Ravens did not and instead chose to file this shot-gun Complaint with this Court in its obvious attempt to delay transition. Such actions should not be tolerated. Rowe respectfully submits that Ravens' litigation tactics violated Rule 11(b)(1), (2), and (3) and merit sanctions under Rule 11(c).

Respectfully submitted,

/s/ Kenneth B. Weckstein

Kenneth B. Weckstein
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W.
Suite 700
Washington, D.C. 20037
(202) 861-1860
(202) 861-3560 (fax)
kweckstein@ebglaw.com
Counsel for Intervenor

DATED: May 4, 2007

**Certificate of Service**

I hereby certify that on this 4th day of May, 2007, I caused a copy of the foregoing Memorandum of Law in Support of Intervenor Rowe Contracting Services, Inc.'s Rule 11 Motion for Sanctions and Appendix to be served via email on:

Roger A. Hipp, Esquire
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
Room 12072
Washington, DC 20530
Telefax No. (202) 307-0992

And via email and hand delivery on:

Daryle A. Jordan, Esquire
Patrick Henry LLP
7619 Little River Turnpike
Suite 340
Annandale, VA 22003.

/s/ Kenneth B. Weckstein

Kenneth B. Weckstein
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W.
Suite 700
Washington, D.C. 20037
(202) 861-1860
(202) 861-3560 (fax)
kweckstein@ebglaw.com
Counsel for Intervenor