**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(Bid Protest)**

| | |
|---|---|
| The Ravens Group, Inc.,<br>Plaintiff,<br>v.<br>United States,<br>Defendant,<br>and<br>Rowe Contracting Services, Inc.,<br>Third party/Intervenor. | CFC No. 07-243<br>Judge Baskir |

**APPENDIX TO**
**MEMORANDUM OF LAW IN SUPPORT OF INTERVENOR ROWE CONTRACTING SERVICES, INC.'S RULE 11 MOTION FOR SANCTIONS**

Kenneth B. Weckstein
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W.
Suite 700
Washington, D.C. 20037
(202) 861-1860
(202) 861-3560 (fax)
kweckstein@ebglaw.com

Counsel for Intervenor

Date: May 4, 2007

# Table of Contents

**Exhibits:**

*The Ravens Group, Inc.*, B-296741.12; B-296741.13,
March 15, 2007 .......... Exhibit 1

Letter from Guy A. Torres, Contracting Officer,
Virginia Contracting Activity,
to Mr. Scott Eugene Rowe, President,
date stamped June 27, 2005 .......... Exhibit 2

Letter from Kenneth B. Weckstein
to Mary G. Curcio, Esq.,
U.S. Government Accountability Office
with attached award notice and
fax confirmation to Daryle A. Jordan
Esq., dated June 14, 2006 .......... Exhibit 3

*The Ravens Group, Inc.—Reconsideration*, B-296741.7,
July 14, 2006 .......... Exhibit 4

Contracting Officer's Statement,
dated May 15, 2006 .......... Exhibit 5

Contracting Officer's Notice of Corrective Action,
dated October 24, 2006 .......... Exhibit 6

*The Ravens Group, Inc.*, B-296741.5, B-296741.6,
May 19, 2006 .......... Exhibit 7

Agency Motion to Dismiss Protest of The Ravens Group, Inc.
(B-296741.12), dated January 18 2007 .......... Exhibit 8

## Authorities:

Rules of the United States Court of Federal Claims
("RCFC") Rule 11 .......... Tab A

Fed. R. Civ. P. Rule 11 Advisory Committee Notes
(West 2007).......... Tab B

**United States Code**

28 U.S.C. § 1491.......... Tab C

41 U.S.C. § 605(a).......... Tab D

41 U.S.C. § 609.......... Tab E

**Federal Acquisition Regulation ("FAR")**

FAR § 1.403.......... Tab F

FAR § 15.506(a)(1) .......... Tab G

FAR § 17.207.......... Tab H

FAR § 52.217-9.......... Tab I

FAR § 52.249-4.......... Tab J

# EXHIBIT 1

GAO
Accountability * Integrity * Reliability
United States Government Accountability Office
Washington, DC 20548

Comptroller General
of the United States

# Decision

**Matter of:** The Ravens Group, Inc.

**File:** B-296741.12; B-296741.13

**Date:** March15, 2007

**DECISION**

The Ravens Group, Inc. protests the award of a contract to Rowe Contracting Services, Inc. under request for proposals (RFP) No. HHM402-05-R-0017, issued by the Defense Intelligence Agency (DIA) for janitorial services.

We dismiss the protest.

The solicitation was issued on April 14, 2005 and DIA made award to Ravens on June 28. However, that award was challenged in a series of protests filed in our Office by various offerors, and subsequent corrective actions by DIA resulted in reevaluations and new award determinations, with award finally being made to Rowe.

Ravens challenges various aspects of the award decision. Our Bid Protest Regulations contain strict rulès for the timely submission of protests. Under those Regulations, a protest based on other than a solicitation impropriety must be filed within 10 days after the protester knows or should have known the basis of protest. 4 C.F.R. § 21.2(a)(2) (2006). Ravens's challenges are raised in a January 8 protest, which is based on information contained in the award notice DIA faxed to Ravens on December 19. Supplemental Protest, Jan. 8, 2007, at 1. Ravens therefore knew or should have known of the basis for its January 8 protest no later than December 19, and its protest, filed more than 10 days later, is untimely.

Ravens claims that its January 8 protest is timely because DIA sent the December 19 award notice to the wrong fax number; this prevented Ravens from receiving the notice in a timely fashion. In this regard, the agency faxed the award notice to a 202 area code number on the cover sheet of its proposal. Ravens states that, on June 17, 2006, one of its principals specifically told the contracting officer to send formal communications to a different fax number (also on its proposal cover sheet), this one with a 301 area code. Ravens claims that, since that time, on a number of

occasions over the course of the procurement, it advised the agency that it had used the wrong–i.e., the 202 area code–number, but that the agency last used the 202 number in March 2006. Ravens concludes that the protest is timely because it did not receive the December 19 notice at its preferred 301 area code fax number until December 29.[1]

Ravens's argument is unpersuasive. The principal agency contracting officials who conducted this procurement--a contracting specialist who was responsible for the procurement until June 2006, and the current contracting officer, who became involved at that time–deny that they were ever given instructions by Ravens to send correspondence to the 301 area code number, E-mail from Army to GAO, Jan. 31, 2007, and the agency states that it does not know of any written instructions from Ravens to that effect. E-mail from Army to GAO, Jan. 26, 2007. DIA also notes that it has communicated with Ravens using the 202 area code number on a regular basis, and has submitted a copy of a notice that it faxed to Ravens at the 202 number as late in September 2006. Id. Ravens does not deny that the 202 area code number is under its control, and does not deny that the notice was received at that number on December 19. Nor has Ravens provided any evidence corroborating its claim that it asked the agency to send correspondence to the 301 area code number.[2] Given these facts, we find that faxing the award notice to the 202 area code number listed on Ravens's proposal was a reasonable means of providing the notice to Ravens, and that Ravens therefore was on notice of its protest grounds on December 19. Ravens's failure to monitor its fax machine does not excuse its failure to raise the issues in its supplemental protest within 10 days after December 19.[3]

---

[1] Ravens has not explained how the notice made its way from the location of the 202 area code fax machine to the location of the 301 area code machine. However, documentation Ravens submitted to our Office shows that the notice was faxed to the 301 area code number on December 29.

[2] Ravens argues that DIA should have known that the 301 area code number was its preferred fax number because in January 2006 Ravens provided DIA a novation agreement explaining that Ravens was incorporating and changing its name, and that its principal office was in Lanham, Maryland, with a 301 area code. In light of the evidence discussed above–including the fact that the agency used the 202 area code number as late as September 2006–this argument does not change our conclusion. In any case, we note that the novation agreement shows that Ravens's principal place of business also was in Lanham prior to the date of the agreement. Novation Agreement at 1.

[3] Ravens asserts that the agency previously followed up its faxes with a phone call, e-mail, or a mailed hard copy. However, the agency's prior actions are irrelevant given our conclusion that the December 19 fax was sufficient to put Ravens on notice of its protest grounds.

Ravens also argues that DIA improperly made award to Rowe without providing Ravens with discussions, as it allegedly promised to do in an October 12 letter. This argument is timely (since it was raised in Ravens's original protest, which was filed on December 29), but is clearly without merit. We have reviewed the letter (Ravens provided it to our Office in response to our specific request) and it does not even mention discussions.

The protest is dismissed.

Gary L. Kepplinger

# EXHIBIT 2

VIRGINIA CONTRACTING ACTIVITY
200 MACDILL BLVD., BLDG 6000
BOLLING AIR FORCE BASE
WASHINGTON, D.C. 20340-5100

U-0115/AE-2A

JUN 27 2005

Mr. Scott Eugene Rowe, President
5150 Hwy 22, Ste C-11
Mandeville, LA 70471

Dear Mr. Rowe

Your firm responded to this Agency Request for Proposal (RFP) for the Janitorial/Custodial Services for the Defense Intelligence Agency, Bolling AFB, Washington, DC. RFP was issued to 20 contractors and only nine (9) proposals were received.

After through evaluation of all proposals utilizing the evaluation criterial set forth in the RFP, it was determined to be in the best interest of the Government to award to the following contractor as being the best value to the Government, price and other factors considered:

The Ravens Group, LLC
1101 Pennsylvania Avenue N.W.
Washington, DC 20004

Total price including the base period and all options --- $21,731,005.09

If you desire a debriefing, please submit your request via fax to (202) 231-2831 as soon as possible but no later than 13 July 2005 to Juanita Jones (202) 231-3613.

Your proposal indicated that considerable effort was involved in its preparation and DIA desires to express its appreciation for your request in this effort.

Sincerely,

GUY A. TORRES
Contracting Officer

U.S. OFFICIAL MAIL
PENALTY FOR PRIVATE USE $300
JUN 29 05
$1.87
PB METER 7250983
U.S. POSTAGE

Rc'd July 20, 2005

# EXHIBIT 3

EPSTEIN BECKER & GREEN, P.C.
ATTORNEYS AT LAW
1227 25TH STREET, NW, SUITE 700
WASHINGTON, DC 20037-1175
202.861.0900
FAX: 202.296.2882
EBGLAW.COM

KENNETH B. WECKSTEIN
TEL: 202.861.0900
FAX: 202.861.3560
KWECKSTEIN@EBGLAW.COM

June 14, 2006

**VIA TELEFAX**

Mary G. Curcio, Esquire
U.S. General Accountability Office
441 G Street, N.W.
Washington, D.C. 20548

Re: Protest of The Ravens Group, Inc.
Request For Reconsideration
B-296741.007

Dear Ms Curcio:

This firm is counsel to Rowe Contracting Services, Inc. ("Rowe") regarding the referenced Request For Reconsideration ("Request") filed by The Ravens Group, Inc. ("Ravens"). Based on the information in the redacted Request that has been provided to Rowe, the Request should be denied.

The heart of the Request is the June 1, 2006, Sworn Statement attached as Exhibit A to the Request. To the extent that the Sworn Statement introduces new facts based on the alleged April 3, 2006 conversation, the statement should be disregarded. Arguments based on such alleged facts are untimely.

Secondly, as discussed below, Rowe denies any wrongdoing of any kind. While Rowe cannot discern the specific facts alleged by Ravens (because portions of the Request have been redacted), if Ravens is claiming that Rowe obtained proprietary data of Ravens and used such data to submit its proposal, Ravens is wrong. And, significantly, any such allegation would require a full-scale, private litigation between Ravens and Rowe in which Rowe would have the opportunity to obtain full discovery from Ravens, assert appropriate counterclaims (for defamation and other causes of action) and question any witnesses for Ravens under cross-examination before a jury. The Government Accountability Office ("GAO") is not the proper forum to resolve such disputes between private parties. This is especially so when the allegations are totally devoid of merit.

Thirdly, Ravens' Request is based on two allegations. First, Ravens speculates that Scott Rowe "inspected our [Ravens'] proposal..." See Sworn Statement. As best we can tell, this allegation was not in the two protests that are the subject of the Request. And, in any event, Mr. Rowe never has seen Ravens' proposal. Second, Ravens objects to the fact that, as part of DIA's corrective action last year, DIA asked Rowe to "resubmit his bid" and Mr. Rowe said that "Rowe's resubmitted bid was [redacted] less than The Ravens Group's price." See Sworn Statement.

In its Request, Ravens apparently is alleging that Rowe was able to underbid Ravens because it knew Ravens' price. Rowe did not (and does not) know what price Ravens proposed in the most-recent and ongoing competition. However, Rowe did know what price Ravens proposed in the initial procurement. This is because by letter dated June 27, 2005, DIA notified all offerors, included Rowe, that the contract had been awarded to Ravens at the price of $21,731,005.09. A copy of DIA's letter is attached. Rowe properly had this information about Ravens' contract price and Rowe did submit a proposal below that price. That fact does not provide a basis for a protest or for Ravens' Request For Reconsideration.

For the above reasons, Rowe submits that GAO should deny Ravens' Request For Reconsideration.

Very truly yours,

Kenneth B. Weckstein

KBW:cmj

Enclosures

cc: Major Peter H. Tran, Esq.
Daryle A. Jordan, Esq.

VIRGINIA CONTRACTING ACTIVITY
200 MACDILL BLVD., BLDG 6000
BOLLING AIR FORCE BASE
WASHINGTON, D.C. 20340-5100

U-0115/AE-2A

JUN 27 2005

Mr. Scott Eugene Rowe, President
5150 Hwy 22, Ste C-11
Mandeville, LA 70471

Dear Mr. Rowe

Your firm responded to this Agency Request for Proposal (RFP) for the Janitorial/Custodial Services for the Defense Intelligence Agency, Bolling AFB, Washington, DC. RFP was issued to 20 contractors and only nine (9) proposals were received.

After through evaluation of all proposals utilizing the evaluation criterial set forth in the RFP, it was determined to be in the best interest of the Government to award to the following contractor as being the best value to the Government, price and other factors considered:

The Ravens Group, LLC
1101 Pennsylvania Avenue N.W.
Washington, DC 20004

Total price including the base period and all options --- $21,731,005.09

If you desire a debriefing, please submit your request via fax to (202) 231-2831 as soon as possible but no later than 13 July 2005 to Juanita Jones (202) 231-3613.

Your proposal indicated that considerable effort was involved in its preparation and DIA desires to express its appreciation for your request in this effort.

Sincerely,

GUY A. TORRES
Contracting Officer

U.S. OFFICIAL MAIL
PENALTY FOR PRIVATE USE $300
JUN 29 05
$1.87
PB METER 7350783
U.S. POSTAGE

Rc'd July 20, 2005

JOB STATUS REPORT

TIME : 06/14/2006 12:13
NAME :
FAX# :
TEL# :
SER.# : 000005040275

| | |
|---|---|
| DATE,TIME | 06/14 12:12 |
| FAX NO./NAME | 52#53807#2#17032567883 |
| DURATION | 00:00:39 |
| PAGE(S) | 04 |
| RESULT | OK |
| MODE | STANDARD ECM |

EBG
EPSTEIN BECKER & GREEN P.C.

EPSTEIN BECKER & GREEN, P.C.
ATTORNEYS AT LAW
1227 25TH STREET, NW, SUITE 700
WASHINGTON, DC 20037-1175
TEL: 202.861.0900
FAX: 202.296.2882

FACSIMILE COVER SHEET

DIRECT: 202.861.0900 DIRECT FAX: 202.861.3560

## PRIVILEGED AND CONFIDENTIAL

| To: | Fax Number: | Telephone Number: |
|---|---|---|
| Daryle A. Jordan | (703) 256-7883 | (703) 256-7754 |

**From:** Kenneth B. Weckstein **Atty. No.** 052 **Pages (including cover):** 4

**Date:** June 14, 2006 **Client No.:** 53807.002

**Comments:**

# EXHIBIT 4

GAO
Accountability * Integrity * Reliability
Comptroller General of the United States
United States Government Accountability Office
Washington, DC 20548

# Decision

**Matter of:** The Ravens Group, Inc.–Reconsideration

**File:** B-296741.7

**Date:** July 14, 2006

**DECISION**

The Ravens Group, Inc. requests reconsideration of our May 16, 2006 dismissal (B-296741.5, B-296741.6) of its protest regarding request for proposals (RFP) No. HHM402-05-R-0017, issued by the Defense Intelligence Agency (DIA) for janitorial and custodial services.

We deny the request.

The solicitation was issued on April 14, 2005, and DIA made award to Ravens on June 28. On June 29, NOSLOT Cleaning Services, Inc. challenged the award in a protest filed in our Office. We dismissed the protest on August 4 (B-296741.2), after DIA notified our Office that it intended to take corrective action. In implementing the corrective action, DIA reevaluated the proposals it had received, conducted discussions, received and evaluated final proposal revisions, evaluated the revised proposals, and selected Rowe Contracting Services for award on March 22, 2006. Ravens protested the award decision on March 27 and April 6. We dismissed those protests (B-296741.3, B-296741.4) as academic on April 6 and April 17, respectively, after the agency again proposed corrective action, this time in the form of reconsidering the award decision.

While DIA was implementing the second round of corrective action, Ravens filed two additional protests (B-296741.5, B-296741.6), in which it alleged that Rowe had improperly obtained access to the automated system (JPAS) the Department of Defense uses to maintain information regarding its employees and contractors, and manipulated data to make it appear that Ravens's personnel were Rowe employees. Ravens further asserted that, while its initial protest was pending in our Office, Rowe improperly obtained information about Ravens's proposal by making payments to Ravens employees. Ravens argued that these actions compromised the procurement and required that Rowe be eliminated from the competition. We dismissed the protests on May 19 for failure to state a valid protest basis, because the proposals on

which the award to Rowe was based were submitted prior to the actions about which Ravens was complaining. Since DIA's proposed corrective action was to be based on a reevaluation of those same proposals, and Rowe therefore would be unable to use any of the allegedly improperly acquired information to gain a competitive advantage, we concluded, Ravens would not be competitively prejudiced even if its allegations were correct. Ravens requests that we reconsider our decision.

To obtain reconsideration, the requesting party either must show that our prior decision contains errors of fact or law, or must present information not previously considered that warrants reversal or modification of the decision. 4 C.F.R. § 21.14(a) (2006). We will not reconsider a decision where the request is based on information that was available to the requester and could have been presented during our initial consideration of the protest. Department of Commerce--Recon., B-294121.5, Apr. 12, 2005, 2005 CPD ¶ 64; Specialty Marine, Inc.--Recon., B-292053.2, July 29, 2003, 2003 CPD ¶ 135 at 3 n.2.

Ravens argues that our decision is based on errors of fact and law because at least some of Rowe's allegedly improper conduct took place while NOSLOT's protest was pending, that is, prior to the time that offerors submitted their revised proposals. Thus, Ravens asserts, our decision wrongly concluded that the new evaluation and award decision will be based on proposals submitted before Rowe's improper conduct. To support this argument, Ravens points to sworn statements by Ravens employees that were submitted with Ravens's April 6 protest. Ravens maintains that these statements recount how, on April 3, 2006[1] and March 27, 2006, respectively, a Rowe official told these Ravens employees that Rowe received the award following the original corrective action because Rowe submitted a work schedule that was based on the schedule that Ravens submitted with its initial proposal.[2] Ravens argues that these statements show both that Rowe obtained information--Ravens's

---

[1] This statement actually indicates that the conversation took place on April 3, 2005. However, since this is before the solicitation was issued, it appears that the date in the statement is a typographical error.

[2] Ravens's reconsideration request includes another sworn statement by this employee, dated June 1, 2006, in which the employee now recounts that during the April 3 communication the Rowe official admitted having certain information about Ravens's proposal while the agency was implementing the corrective action in response to the NOSLOT protest, that is, before final proposal revisions (FPR) were submitted. This conversation allegedly took place on April 3, however, so that the information was available on April 6, when Ravens first protested Rowe's allegedly improper conduct. Since the information was not presented at that time, it cannot now be used to form the basis of a reconsideration request. Department of Commerce--Recon., supra; Specialty Marine, Inc.--Recon., supra.

work schedule--from Ravens's proposal before Rowe submitted its final proposal revision, and that Rowe used the information in its final proposal revision to win the award.

Ravens mischaracterizes the Ravens employee's statements. The first statement declares, in relevant part, that "[the Rowe representative] informed me that during the initial bid The Ravens Group submitted a schedule whereas his company did not submit one." Similarly, the second statement recounts, in relevant part, that "[the Rowe representative stated] the only reason he did not win the original bid was because The Ravens Group submitted a work schedule and he did not." These statements do not indicate that the Rowe official stated that its employees viewed Ravens's work schedule before, or even after, Rowe submitted its FPR, or stated that the firm's work schedule was based on Ravens's. Further in this regard, Ravens stated in its April 6 protest that its employees admitted that Rowe had paid them for information regarding Ravens's schedule and employees "during the pendency of the Ravens Group's Protest."[3] Ravens's protests, as discussed above, were submitted after Rowe received the contract award and, therefore, after Rowe's FPR had been submitted. We conclude that Ravens has not demonstrated that our decision was based on an error of fact or law.

The request for reconsideration is denied.

Gary L. Kepplinger
General Counsel

---

[3] Ravens also reiterates its argument that we should require the agency to eliminate Rowe from the competition based on its allegedly improper business practices --accessing the JPAS database and paying Ravens's employees for information. However, this constitutes no more than disagreement with our conclusion that these actions did not cause any competitive harm to Ravens. Accordingly, this argument provides no basis for us to reconsider the decision. See HK Sys., Inc.--Protest and Recon., B-291647.6, B-291647.7, Aug. 29, 2003, 2003 CPD ¶ 159.

# EXHIBIT 5

DEFENSE INTELLIGENCE AGENCY

WASHINGTON, D.C. 20340-

U-2053/AE-2A

May 15, 2006

MEMORANDUM FOR MAJ Peter Tran, HQ, U.S. Army Legal Service Agency, Contract Appeals Division, Team I, ATTN: JALS-CAI, 901 North Stuart Street, Suite 500, Arlington, Virginia 22203-1837

Subject: B-296741.5; Protest of The Ravens Group, Inc.

Contracting Officer's Statement

In response to GAO's request for clarification of the Contracting officer's Notice of Corrective Action, dated April 3, 2006, the following is provided. As the April 3, 2006 Notice of Corrective Action states,

> The Agency intends to conduct a new source selection and a new Source Selection Decision will be issued. If after the new source selection is conducted and a contractor other than Rowe is deemed to be the appropriate awardee, the contract with Rowe will be terminated for convenience and the appropriate offeror awarded a contract for the remainder of the services required.

The Agency simply intends to conduct a new source selection. The Agency will not be conducting a new technical evaluation of proposals or accepting revised proposals from any offerors. The new source selection will be based on the offerors' previously submitted proposals, which does not include a review of any Joint Personnel Adjudication System ("JPAS") files. The JPAS is a database managed by the DoD Agency Central Adjudication Facilities and is used to confirm the clearance validity of contractor personnel. The JPAS is a contract administration tool that is not used during the procurement process.

for GUY A. TORRES
Contracting Officer

# EXHIBIT 6

DEFENSE INTELLIGENCE AGENCY
Office of the Acquisition Executive
Building 6000, Bolling AFB
Washington, D.C. 20340-5100

October 24, 2006

U-2053/AE-2A

MEMORANDUM FOR MAJ Peter Tran, HQ, U.S. Army Legal Service Agency, Contract Appeals Division, Team I, ATTN: JALS-CAI, 901 North Stuart Street, Suite 500, Arlington, Virginia 22203-1837

Subject: B-296741.9; Protest of Rowe Contracting Services, Inc.

Contracting Officer's Notice of Corrective Action

RFP HHM402-05-R-0017 (the "Solicitation") for the procurement of janitorial and custodial services for the Defense Intelligence Analysis Center (DIAC) and its new expansion building was issued on 14 April 2005. The Solicitation closed on 13 May 2005. Nine offers were received in response to the Solicitation. Award was made to The Ravens Group, LLC, on 17 June 2005. On 12 July 2005 and 19 July 2005, two separate protests were filed with the GAO (B-296741.2 and B-296914). The Agency notified GAO that it intended to take corrective action on 3 August 2005. Consistent with the notice to GAO, the Agency re-evaluated the proposals, conducted discussions and allowed offerors the opportunity to submit final proposal revisions. From the re-evaluation, a new award was made to Rowe Contracting Service, Inc. on 22 March 2006. On 29 March 2006, GAO notified the Agency that Ravens Group had filed a protest. The Agency notified GAO on April 3, 2006 that it intended to conduct a new source selection and issue a new source selection decision. On September 13, 2006, consistent with its notice to GAO, the Agency announced award would be made to NOSLOT pursuant to the new source selection conducted by a new source selection authority. Rowe filed the present protest before GAO on September 26, 2006.

The Government has determined that the awardee, NOSLOT, does not currently possess the Top Secret (TS/SCI) security clearance required by paragraph 24 (Clause 52.999-4031d) of the Solicitation and Amendment 0002. Because NOSLOT is presently ineligible for award, the Agency has decided to take the following corrective action. The Agency intends to terminate the contract with NOSLOT for convenience and conduct a new source selection based on the current proposals. The Agency will not be conducting a new technical evaluation of proposals or accepting revised proposals from any offerors. The new source selection will be based on the offerors' previously submitted proposals. Once a new source selection is completed, a new Source Selection Decision will be issued, and the appropriate offeror will be awarded a contract for the reminder of the services required.

CHEONG J. CHON
Contracting Officer

# EXHIBIT 7

GAO
Accountability * Integrity * Reliability
United States Government Accountability Office
Washington, DC 20548

Comptroller General
of the United States

# Decision

**Matter of:** The Ravens Group

**File:** B-296741.5; B-296741.6

**Date:** May 19, 2006

**DECISION**

The Ravens Group protests the award of a contract to Rowe Contracting Services, Inc., under Defense Logistics Agency (DLA) request for proposals (RFP) No. HHM402-05-R-0017, for janitorial and custodial services.

We dismiss the protest.

The solicitation, issued on April 14, 2005, provided for award on a "best value" basis, considering cost and technical factors. On June 28, DLA made award to Ravens. On June 29, NOSLOT Cleaning Services, Inc. protested the award to our Office. On August 2, DLA decided to take corrective action in response to the NOSLOT protest by allowing offerors to submit final proposal revisions, reevaluating the proposals and making a new best value determination. As a result, our Office dismissed NOSLOT's protest (B-296741.2, Aug. 4, 2005). Following the submission of revised proposals and the reevaluation, DLA selected Rowe for award. Ravens filed a protest in our Office challenging that decision (B-296741.3; B-296741.4). The agency again proposed corrective action, this time in the form of reconsidering the award decision; accordingly, we dismissed Ravens's protest. DLA is currently implementing the proposed corrective action.

Ravens protests certain actions by Rowe that allegedly occurred after DLA selected Rowe for award following the NOSLOT protest. Specifically, Ravens claims that Rowe obtained access to the automated system the Department of Defense uses to maintain information regarding its employees and contractors (JPAS), and manipulated the data to make it appear that Ravens's personnel were Rowe employees, all without the knowledge of Ravens or the personnel involved. Ravens further asserts that, while its initial protest was pending in our Office, Rowe obtained information about Ravens's proposal by making payments to Ravens employees. According to Ravens, these actions compromised the procurement and warrant eliminating Rowe from the competition.

Our role in resolving bid protests is to ensure that the statutory requirements for full and open competition are met. Pacific Photocopy and Research Servs., B-278698, B-278698.3, Mar. 4, 1998, 98-1 CPD ¶ 69 at 4. Toward this end, our Bid Protest Regulations, 4 C.F.R. § 21.1(c)(4) and (f) (2006), require that a protest include a detailed statement of the legal and factual grounds for protest, and the grounds stated be legally sufficient. These requirements contemplate that protesters will provide, at a minimum, either allegations or evidence sufficient, if uncontradicted, to establish the likelihood that the protester will prevail in its claim of improper agency action. Id.

Ravens's assertions do not constitute a valid basis of protest because, even if we found them meritorious, they would not provide a basis for sustaining the protest. In this regard, prejudice is an essential element of any viable protest and, even where the record establishes a procurement deficiency, we will sustain a protest only where the deficiency resulted in competitive prejudice to the protester. See Johnson Controls World Servs., Inc., B-285144, July 6, 2000, 2000 CPD ¶ 108 at 3. Ravens has not demonstrated competitive prejudice here. Proposals were submitted prior to the alleged actions about which Ravens complains, and DLA's proposed corrective action is limited to reconsidering its award decision based on the proposals as already submitted; DLA will not request new or revised proposals, and will not reevaluate the proposals but, rather, will only review the evaluations that followed NOSLOT's protest and the award to Rowe, and make a new best value determination. Since the new award decision will be based on the proposals as submitted before Rowe's alleged improper actions, Rowe will be unable to gain any competitive advantage from those actions. It follows that Ravens was not competitively prejudiced, and that there would be no basis for sustaining the protest.[1]

The protest is dismissed.

Anthony H. Gamboa
General Counsel

[1] Ravens irrationally asserts that the only way to eliminate competitive harm to Ravens is to allow offerors to submit revised proposals. If Ravens's allegations are correct, Rowe would potentially benefit from its actions if DLA solicits revised proposals. Thus, DLA's plan not to allow offerors to submit revised proposals is the appropriate way to protect Ravens from competitive harm.

# EXHIBIT 8

DEPARTMENT OF THE ARMY
UNITED STATES ARMY LEGAL SERVICES AGENCY
901 NORTH STUART STREET
ARLINGTON VA 22202-1837
(703)696-2826; DSN 426; FAX EXT. 1537
E-MAIL: frank.march@HQDA.ARMY.MIL

REPLY TO
ATTENTION OF

Contract and Fiscal Law Division

January 18, 2007

Mary G. Curcio, Esq.
Office of the General Counsel
U.S. General Accountability Office
441 G Street, NW
Washington, D.C. 20548
VIA FACSIMILE: 202-512-9749

Subject: Protest of The Ravens Group, Inc. (B-296741.12)

Dear Ms. Curcio:

Pursuant to 4 Code of Federal Regulations ("C.F.R.") § 21.3(b), enclosed please find the Army's motion to summarily dismiss the subject protest. Because this protest does not state legally sufficient grounds of protest, the Army does not plan to file an Agency Report ("AR") unless requested by the GAO. A redacted copy of this motion has been sent to Daryle A. Jordan, Esq., counsel for The Ravens Group, Inc. (hereafter "Protester" or "Ravens") on this date. This motion does contain protected material. Any comments by the Protester regarding this motion should be sent directly to your office with a copy forwarded to:

LTC Frank A. March
Contract and Fiscal Law Division, Team I
ATTN: JALS-KFLD
901 North Stuart Street, Suite 500
Arlington, Virginia 22203-1837

Printed on Recycled Paper

## I. Statement of the Facts

As Ravens notes in its protest, The Defense Intelligence Agency ("DIA") is on its fourth award decision in the procurement under protest. The previous award decisions were the subject of corrective actions.

In its latest protest, Ravens alleges two grounds of protest: A. DIA's award of a contract to Rowe is in bad faith; and B. DAI intentionally attempted to deny The Ravens Group an opportunity to challenge its new award decision. This motion addresses only the facts that relate to those two protest issues.

Protester was notified on December 19, 2006 that DIA awarded the contract under Request for Proposals ("RFP") HHM402-05-R-0017 to Rowe Contracting Service, Inc. ("Rowe"). (Enclosure 1) This award decision was based on a new source selection decision as a result of corrective action in a previous protest. (Enclosure 2) Protester was notified that the corrective action would consist of terminating the awarded contract and conducting a new source selection based on the current proposals. The notice of corrective action specifically stated: "The Agency will not be conducting a new technical evaluation of proposals or accepting revised proposals from any offerors. The new source selection will be based on the offerors' previously submitted proposals."

## II. Argument

4 C.F.R. § 21.1(c)(4) requires a protest to "[s]et forth a detailed statement of the legal and factual grounds of protest including copies of relevant documents." In addition, 4 C.F.R. § 21.1(f) requires grounds for protest to be "legally sufficient." "These requirements contemplate that protesters provide, at a minimum, either allegations or evidence that the protester will prevail in its claim of improper agency action." <u>American Analytical & Technical Services, Inc.</u>,

B-292100, Jun. 11, 2003, 2003 U.S. Comp. Gen. LEXIS 93, at *5, citing Military Agency Servs. Pty., Ltd., B-290414 et al., Aug. 1, 2002, 2002 CPD ¶ 130 at 4 n.4. As discussed more fully below, the Protester's unsubstantiated allegations fail to meet this legal burden and should be dismissed.

**A. Protester has not shown bad faith.**

Protester's sole allegation of bad faith is that DIA promised it that it would re-open discussions with it and conduct new evaluations before making a new source selection decision. The facts do not support Protester's claim that DIA promised that it would conduct discussions. DIA did not make any such promise.

Protester chose to allege this ground of protest as bad faith. Protester's allegation, unsupported by documentation, does not rise to the level necessary to establish bad faith. To maintain a legally sufficient allegation of bad faith, a protester must submit essentially irrefutable proof that the contracting agency directed its actions with the specific and malicious intent to injure the protester. Telestar International Corp., B-247557, B-247557.2, June 18, 1992, 92-1 CPD ¶ 530. Protester has chosen to pursue this protest allegation as bad faith and referenced facts that are wrong, but that even if true do not substantiate its claim of bad faith. Additionally, Protester fails to produce documentary evidence to support its claim. Indeed, it is clear from the Agency's letter notifying the Protester of the intended corrective action that the Agency did NOT intend to hold discussions. (Enclosure 2) Protester was informed in the corrective action notice that the Agency would not be accepting revised proposals. That statement unequivocally precludes discussions. Finally, assuming arguendo that the Agency had a duty to hold discussions, which it did not, the Protester makes no claim that it was prejudiced by such lack of discussions.

**B. DIA did not deny The Ravens Group an opportunity to challenge the new award decision.**

Protester alleges that DIA faxed the award notice to the wrong facsimile number and delayed Protester's receipt of the award notice by nine days. The fact is that the Contracting Officer faxed the unsuccessful offeror notice to Protester on December 19, 2006. In that letter, Protester is informed that it may request a debriefing within three calendar days from receipt of the letter. Protester fails to establish how it received the notice nine days late.

Regardless of when Protester received its award notice, its rights to request a debriefing and file a protest run from the date of actual notice. Protester's remedy for late receipt of a notification is not to protest the fact that the notice was late, but rather to file a request for a debriefing or file a protest with the notation that it had just received its notice. As long as it establishes the date it received the notice, any timeliness rules imposed on Protester runs from its receipt of notice. Protester should have requested a debriefing within three days of receiving the notice or filed a protest within ten days of receiving the letter, if it believed it had a basis to file a protest. Protester's allegation that it received late notice is not a legally sufficient ground of protest and it was in no way prejudiced by any such late receipt.

**III. Conclusion**

For the reasons discussed above the Army respectfully requests that the protest be dismissed.

Sincerely,

Frank A. March
Lieutenant Colonel, U.S. Army
Chief, Trial Team I

Enclosures:
1. Ravens' notice of award

2. KO corrective action memorandum

Copies Furnished:

Protester:
Daryle A. Jordan, Esq.
Patrick Henry LLP
7619 Little River Turnpike
Suite 340
Annandale, Virginia 22003
Telephone: 703-256-7754
Facsimile: 703-256-7883

Intervenor :
Kenneth B. Weckstein, Esq.
Epstein Becker & Green, P.C.
1227 25th St., N.W., Suite 700
Washington, DC 20037
Telephone: 202-861-0900
Facsimile: 202-861-3560

Installation Attorney:
Virginia Contracting Activity/Defense Intelligence Agency
ATTN: Lt. Col. Joe Treanor, DIAC-DAP-2
Building 6000
Bolling Air Force Base
Washington, DC 20340-5100
Telephone: 202-231-2821
Facsimile: 202-231-2831

Directorate of Contracting:
Virginia Contracting Activity/Defense Intelligence Agency
ATTN: Cheong Chon, Contracting Officer
Building 6000
Bolling Air Force Base
Washington, DC 20840-5100,
Telephone: 202-231-8416
Facsimile: 202-231-2831

# TAB A

# RULES OF THE UNITED STATES COURT OF FEDERAL CLAIMS

As amended through June 20, 2006

was omitted as not in conformity with the FRCP and because it was deemed unnecessary.

**Rule 11. Signing of Pleadings, Motions, and Other Papers; Representations to Court; Sanctions**

**(a) Signature.** Every pleading, motion, and other paper shall be signed by or for the attorney of record in the signing attorney's own individual name, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the signer's address and telephone number, if any. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. An unsigned paper shall be stricken unless the omission is corrected promptly after being called to the attention of the attorney or party.

**(b) Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support, or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence, or, if specifically so identified, are reasonably based on a lack of information or belief.

**(c) Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

**(1) How Initiated.**

**(A) By Motion.** A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in RCFC 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

**(B) On Court's Initiative.** On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

**(2) Nature of Sanction; Limitations.** A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

**(A)** Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).

**(B)** Monetary sanctions may not be

awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

**(3) Order.** When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

**(d) Inapplicability to Discovery.** Subdivisions (a) through (c) of this rule do not apply to disclosures and discovery requests, responses, objections, and motions that are subject to the provisions of RCFC 26 through 37.

(As revised and reissued May 1, 2002.)

**Rules Committee Note**
**2002 Revision**

The changes to RCFC 11 reflect the corresponding revision of FRCP 11 that was introduced in December 1993. For a detailed explanation of the reasons for revision of FRCP 11, see 28 U.S.C.A. Rule 11 Advisory Committee Notes (West Supp. 2001).

### Rule 12. Defenses and Objections—When and How Presented—By Pleading or Motion—Motion for Judgment on Pleadings

**(a) When Presented.**

**(1)** The United States shall file its answer to the complaint within 60 days after service of the pleading in which the claim is asserted. After service of an answer containing a counterclaim, offset, or plea of fraud, plaintiff shall have 20 days within which to file a reply to the counterclaim, offset, or plea of fraud. If a reply to an answer or a responsive pleading to a third-party complaint or answer is ordered by the court, the reply or responsive pleading shall be filed within 20 days after service of the order unless the order otherwise directs.

**(2)** Unless a different time is fixed by court order, the service of a motion permitted under this rule or RCFC 56 alters these periods of time, as follows:

**(A)** if the court denies or partially denies or partially allows the motion or postpones its disposition until the trial on the merits or the motion is withdrawn, the responsive pleading shall be filed within 10 days after notice of the court's action or the date on which the motion is withdrawn or by the date the response otherwise would have been due, whichever is later;

**(B)** if the court grants a motion for a more definite statement, the responsive pleading shall be filed within 10 days after the service of the more definite statement.

**(b) How Presented.** Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person,(3) [not used]; (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under RCFC 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, the adverse party may assert at the trial any defense in law or fact to that claim for relief. If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in RCFC 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by RCFC 56.

**(c) Motion for Judgment on the Pleadings.** After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the

# TAB B

endment

al. No substantive change is

Amendment

dicial Code provides for appeal of * * * district courts * * * abilities of the parties to admi- [illegible] are allowed." [illegible] of civil vil Rule 73(h) was amended at the § 1292(a)(3) reference "to [illegible] to mean admiralty and meaning of Rule 9(h)." This Rule 9(h) when the Appellate

both admiralty or maritime s or parties. This combination statement in present Rule 9(h) n admiralty "case." An order abilities of the parties" within ily resolve only a nonadmiralty resolve interdependent admi- [illegible] appeal be taken as to [illegible] is part of a case that [illegible] appeal limited to the

[illegible] full uniformity in [illegible] an order "deter- [illegible] is common [illegible] construed narrowly, exceptions to the final judg- [illegible] This policy would uld be resolved by limiting the [illegible] that determine the rights [illegible] admiralty claim.

by this amendment for two o admiralty "cases," and may an order that disposes of a ned in a single case with an ule of court may help to clarify int of jurisdiction, the line is [illegible] implementation and jurisdiction. In addition, so of the rights and liabilities of of § 1292(a)(3), it may prove s to the nonadmiralty claim. ty claim, for example, may der the admiralty claim and e and parties as disposition of admiralty and nonadmiralty An illustration is provided by nberg Express, 899 F.2d 1292 es of ocean shipments were ne subject to admiralty juris- mary judgment was granted ant and against the nonadmi- ralty defendant's appeal was that the determination of its ith the determination of non- fendant, and that "section dmiralty claims; instead, it refers to admiralty cases." 899 F.2d at 1297. The advantages of permitting appeal by the nonadmiralty defendant would be particularly clear if the plaintiff had appealed the summary judgment in favor of the admiralty defendant.

It must be emphasized that this amendment does not rest on any particular assumptions as to the meaning of the § 1292(a)(3) provision that limits interlocutory appeal to orders that determine the rights and liabilities of the parties. It simply reflects the conclusion that so long as the case involves an admiralty claim and an order otherwise meets statutory requirements, the opportunity to appeal should not turn on the circumstance that the order does—or does not—dispose of an admiralty claim. No attempt is made to invoke the authority conferred by 28 U.S.C. § 1292(e) to provide by rule for appeal of an interlocutory decision that is not otherwise provided for by other subsections of § 1292.

**GAP Report on Rule 9(h).** No changes have been made in the published proposal.

#### 2006 Amendment

Rule 9(h) is amended to conform to the changed title of the Supplemental Rules.

## Rule 10. Form of Pleadings

**(a) Caption; Names of Parties.** Every pleading shall contain a caption setting forth the name of the court, the title of the action, the file number, and a designation as in Rule 7(a). In the complaint the title of the action shall include the names of all the parties, but in other pleadings it is sufficient to state the name of the first party on each side with an appropriate indication of other parties.

**(b) Paragraphs; Separate Statements.** All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings. Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth.

**(c) Adoption by Reference; Exhibits.** Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.

### ADVISORY COMMITTEE NOTES

#### 1937 Adoption

The first sentence is derived in part from the opening statement of former Equity Rule 25 (Bill of Complaint—Contents). The remainder of the rule is an expansion in conformity with usual state provisions. For numbered paragraphs and separate statements, see Conn.Gen.Stat., 1930, § 5513; Smith-Hurd Ill.Stats. ch. 110, § 157(2); N.Y.R.C.P., (1937) Rule 90. For incorporation by reference, see N.Y.R.C.P., (1937) Rule 90. For written instruments as exhibits, see Smith-Hurd Ill.Stats. ch. 110, § 160.

## Rule 11. Signing of Pleadings, Motions, and Other Papers; Representations to Court; Sanctions

**(a) Signature.** Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the signer's address and telephone number, if any. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.

**(b) Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

**(c) Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

**(1) How Initiated.**

**(A) By Motion.** A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It

shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

**(B) On Court's Initiative.** On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

**(2) Nature of Sanction; Limitations.** A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

**(A)** Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).

**(B)** Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

**(3) Order.** When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

**(d) Inapplicability to Discovery.** Subdivisions (a) through (c) of this rule do not apply to disclosures and discovery requests, responses, objections, and motions that are subject to the provisions of Rules 26 through 37.

(As amended Apr. 28, 1983, eff. Aug. 1, 1983; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993.)

## ADVISORY COMMITTEE NOTES

### 1937 Adoption

This is substantially the content of [former] Equity Rules 24 (Signature of Counsel) and 21 (Scandal and Impertinence) consolidated and unified. Compare former Equity Rule 36 (Officers Before Whom Pleadings Verified). Compare to similar purposes, *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 19, r. 4, and *Great Australian Gold Mining Co. v. Martin*, L.R. 5 Ch.Div. 1, 10 (1877). Subscription of pleadings is required in many codes. 2 Minn.Stat. (Mason, 1927) § 9265; N.Y.R.C.P. (1937) Rule 91; 2 N.D.Comp.Laws Ann. (1913) § 7455.

This rule expressly continues any statute which requires a pleading to be verified or accompanied by an affidavit, such as: U.S.C., Title 28:

§ 381 [former] (Preliminary injunctions and temporary restraining orders)

§ 762 [now 1402] (Suit against the United States)

U.S.C., Title 28, § 829 [now 1927] (Costs; attorney liable for, when) is unaffected by this rule.

For complaints which must be verified under these rules, see Rules 23(b) (Secondary Action by Shareholders) and 65 (Injunctions).

For abolition of former rule in equity that the averments of an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances, see 12 P.S.Pa. § 1222; for the rule in equity itself, see *Greenfield v. Blumenthal*, C.C.A.3, 1934, 69 F.2d 294.

### 1983 Amendment

Since its original promulgation, Rule 11 has provided for the striking of pleadings and the imposition of disciplinary sanctions to check abuses in the signing of pleadings. Its provisions have always applied to motions and other papers by virtue of incorporation by reference in Rule 7(b)(2). The amendment and the addition of Rule 7(b)(3) expressly confirms this applicability.

Experience shows that in practice Rule 11 has not been effective in deterring abuses. See 6 Wright & Miller, *Federal Practice and Procedure: Civil* § 1334 (1971). There has been considerable confusion as to (1) the circumstances that should trigger striking a pleading or motion or taking disciplinary action, (2) the standard of conduct expected of attorneys who sign pleadings and motions, and (3) the range of available and appropriate sanctions. See Rodes, Ripple & Mooney, *Sanctions Imposable for Violations of the Federal Rules of Civil Procedure* 64–65, Federal Judicial Center (1981). The new language is intended to reduce the reluctance of courts to impose sanctions, see Moore, **Federal Practice** ¶ 7.05, at 1547, by emphasizing the responsibilities of the attorney and reenforcing those obligations by the imposition of sanctions.

The amended rule attempts to deal with the problem by building upon and expanding the equitable doctrine permitting the court to award expenses, including attorney's fees, to a litigant whose opponent acts in bad faith in instituting or conducting litigation. See, e.g., *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980); *Hall v. Cole*, 412 U.S. 1, 5 (1973). Greater attention by the district courts to pleading and motion abuses and the imposition of sanctions when appropriate, should discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses.

The expanded nature of the lawyer's certification in the fifth sentence of amended Rule 11 recognizes that the litiga-

ngs Verified). Compare to
s Under the Judicature Act
19, r. 4, and Great Australian
L.R. 5 Ch.Div. 1, 10 (1877).
required in many codes. 2
5; N.Y.R.C.P. (1937) Rule 91;
7455.

any statute which requires a
npanied by an affidavit, such

injunctions and temporary

t the United States)
1927] (Costs; attorney liable
rule.

e verified under these rules
ion by Shareholders) and 65

in equity that the averments
e overcome by the testimony
ss sustained by corroborating
1222; for the rule in equity
nthal, C.C.A.3, 1934, 69 F.2d

ndment

on, Rule 11 has provided for
he imposition of disciplinary
he signing of pleadings. Its
to motions and other papers
ference in Rule 7(b)(2). The
f Rule 7(b)(3) expressly co

actice Rule 11 has not been
See 6 Wright & Miller, Feder
vil § 1334 (1971). There has
to (1) the circumstances th
ng or motion or taking dis
of conduct expected of atto
motions, and (3) the range
tions. See Rodes, Ripple
for Violations of the Feder
65, Federal Judicial Cent
ntended to reduce the re
nctions, see Moore, Fede
phasizing the responsibilit
ng those obligations by

to deal with the problem
he equitable doctrine per
s, including attorney's fee
in bad faith in instituting
., *Roadway Express, Inc.*
*l v. Cole*, 412 U.S. 1, 5 (197
rict courts to pleading
ion of sanctions when ap
ry or abusive tactics and
ocess by lessening frivol

lawyer's certification in
11 recognizes that the lit

process may be abused for purposes other than delay. e.g., *Browning Debenture Holders' Committee v. DASA*, 560 F.2d 1078 (2d Cir.1977).

The words "good ground to support" the pleading in the original rule were interpreted to have both factual and legal elements. See, e.g., *Heart Disease Research Foundation v. General Motors Corp.*, 15 Fed.R.Serv.2d 1517, 1519 (S.D.N.Y.1972). They have been replaced by a standard of conduct that is more focused.

The new language stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances. See *Kinee v. Abraham Lincoln Fed. Sav. & Loan Ass'n*, 365 F.Supp. 975 (E.D.Pa.1973). This standard is more stringent than the original good-faith formula and thus it is expected that a greater range of circumstances will trigger its violation. See *Nemeroff v. Abelson*, 620 F.2d 339 (2d Cir.1980).

The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. Thus, what constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.

The rule does not require a party or an attorney to disclose privileged communications or work product in order to show that the signing of the pleading, motion, or other paper is substantially justified. The provisions of Rule 26(c), including appropriate orders after *in camera* inspection by the court, remain available to protect a party claiming privilege or work product protection.

Amended Rule 11 continues to apply to anyone who signs a pleading, motion, or other paper. Although the standard is the same for unrepresented parties, who are obliged themselves to sign the pleadings, the court has sufficient discretion to take account of the special circumstances that often arise in *pro se* situations. See *Haines v. Kerner*, 404 U.S. 519 (1972).

The provision in the original rule for striking pleadings and motions as sham and false has been deleted. The passage has rarely been utilized, and decisions thereunder have tended to confuse the issue of attorney honesty with the merits of the action. See generally Risinger, *Honesty in Pleading and its Enforcement: Some "Striking" Problems with Fed.R.Civ.P. 11*, 61 Minn.L.Rev. 1 (1976). Motions under this provision generally present issues better dealt with under Rules 8, 12, or 56. See *Murchison v. Kirby*, 27 F.R.D. 14 (S.D.N.Y.1961); 5 Wright & Miller, *Federal Practice and Procedure: Civil* § 1334 (1969).

The former reference to the inclusion of scandalous or indecent matter, which is itself strong indication that an improper purpose underlies the pleading, motion, or other paper, also has been deleted as unnecessary. Such matter may be stricken under Rule 12(f) as well as dealt with under the more general language of amended Rule 11.

The text of the amended rule seeks to dispel apprehensions that efforts to obtain enforcement will be fruitless by insuring that the rule will be applied when properly invoked. The word "sanctions" in the caption, for example, stresses a deterrent orientation in dealing with improper pleadings, motions or other papers. This corresponds to the approach in imposing sanctions for discovery abuses. See *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639 (1976) (per curiam). And the words "shall impose" in the last sentence focus the court's attention on the need to impose sanctions for pleading and motion abuses. The court, however, retains the necessary flexibility to deal appropriately with violations of the rule. It has discretion to tailor sanctions to the particular facts of the case, with which it should be well acquainted.

The references in the former text to wilfulness as a prerequisite to disciplinary action has been deleted. However, in considering the nature and severity of the sanctions to be imposed, the court should take account of the state of the attorney's or party's actual or presumed knowledge when the pleading or other paper was signed. Thus, for example, when a party is not represented by counsel, the absence of legal advice is an appropriate factor to be considered.

Courts currently appear to believe they may impose sanctions on their own motion. See *North American Trading Corp. v. Zale Corp.*, 73 F.R.D. 293 (S.D.N.Y.1979). Authority to do so has been made explicit in order to overcome the traditional reluctance of courts to intervene unless requested by one of the parties. The detection and punishment of a violation of the signing requirement, encouraged by the amended rule, is part of the court's responsibility for securing the system's effective operation.

If the duty imposed by the rule is violated, the court should have the discretion to impose sanctions on either the attorney, the party the signing attorney represents, or both, or on an unrepresented party who signed the pleading, and the new rule so provides. Although Rule 11 has been silent on the point, courts have claimed the power to impose sanctions on an attorney personally, either by imposing costs or employing the contempt technique. See 5 Wright & Miller, *Federal Practice and Procedure: Civil* § 1334 (1969); 2A Moore, *Federal Practice* ¶ 11.02, at 2104 n. 8. This power has been used infrequently. The amended rule should eliminate any doubt as to the propriety of assessing sanctions against the attorney.

Even though it is the attorney whose signature violates the rule, it may be appropriate under the circumstances of the case to impose a sanction on the client. See *Browning Debenture Holders' Committee v. DASA Corp.*, supra. This modification brings Rule 11 in line with practice under Rule 37, which allows sanctions for abuses during discovery to be imposed upon the party, the attorney, or both.

A party seeking sanctions should give notice to the court and the offending party promptly upon discovering a basis for doing so. The time when sanctions are to be imposed rests in the discretion of the trial judge. However, it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation, and in the case of motions at the time when the motion is decided or shortly thereafter. The procedure obviously must comport with due process requirements. The particular format to be followed should depend on the circumstances of the situation and the severity of the sanction

under consideration. In many situations the judge's participation in the proceedings provides him with full knowledge of the relevant facts and little further inquiry will be necessary.

To assure that the efficiencies achieved through more effective operation of the pleading regimen will not be offset by the cost of satellite litigation over the imposition of sanctions, the court must to the extent possible limit the scope of sanction proceedings to the record. Thus, discovery should be conducted only by leave of the court, and then only in extraordinary circumstances.

Although the encompassing reference to "other papers" in new Rule 11 literally includes discovery papers, the certification requirement in that context is governed by proposed new Rule 26(g). Discovery motions, however, fall within the ambit of Rule 11.

### 1987 Amendment

The amendments are technical. No substantive change is intended.

### 1993 Amendments

**Purpose of revision.** This revision is intended to remedy problems that have arisen in the interpretation and application of the 1983 revision of the rule. For empirical examination of experience under the 1983 rule, see, *e.g.*, New York State Bar Committee on Federal Courts, *Sanctions and Attorneys' Fees* (1987); T. Willging, *The Rule 11 Sanctioning Process* (1989); American Judicature Society, *Report of the Third Circuit Task Force on Federal Rule of Civil Procedure 11* (S. Burbank ed., 1989); E. Wiggins, T. Willging, and D. Stienstra, *Report on Rule 11* (Federal Judicial Center 1991). For book-length analyses of the case law, see G. Joseph, *Sanctions: The Federal Law of Litigation Abuse* (1989); J. Solovy, *The Federal Law of Sanctions* (1991); G. Vairo, *Rule 11 Sanctions: Case Law Perspectives and Preventive Measures* (1991).

The rule retains the principle that attorneys and pro se litigants have an obligation to the court to refrain from conduct that frustrates the aims of Rule 1. The revision broadens the scope of this obligation, but places greater constraints on the imposition of sanctions and should reduce the number of motions for sanctions presented to the court. New subdivision (d) removes from the ambit of this rule all discovery requests, responses, objections, and motions subject to the provisions of Rule 26 through 37.

**Subdivision (a).** Retained in this subdivision are the provisions requiring signatures on pleadings, written motions, and other papers. Unsigned papers are to be received by the Clerk, but then are to be stricken if the omission of the signature is not corrected promptly after being called to the attention of the attorney or pro se litigant. Correction can be made by signing the paper on file or by submitting a duplicate that contains the signature. A court may require by local rule that papers contain additional identifying information regarding the parties or attorneys, such as telephone numbers to facilitate facsimile transmissions, though, as for omission of a signature, the paper should not be rejected for failure to provide such information.

The sentence in the former rule relating to the effect of answers under oath is no longer needed and has been eliminated. The provision in the former rule that signing a paper constitutes a certificate that it has been read by the signer also has been eliminated as unnecessary. The obligations imposed under subdivision (b) obviously require that a pleading, written motion, or other paper be read before it is filed or submitted to the court.

**Subdivisions (b) and (c).** These subdivisions restate the provisions requiring attorneys and pro se litigants to conduct a reasonable inquiry into the law and facts before signing pleadings, written motions, and other documents, and prescribing sanctions for violation of these obligations. The revision in part expands the responsibilities of litigants to the court, while providing greater constraints and flexibility in dealing with infractions of the rule. The rule continues to require litigants to "stop-and-think" before initially making legal or factual contentions. It also, however, emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable and by generally providing protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention.

The rule applies only to assertions contained in papers filed with or submitted to the court. It does not cover matters arising for the first time during oral presentations to the court, when counsel may make statements that would not have been made if there had been more time for study and reflection. However, a litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit. For example, an attorney who during a pretrial conference insists on a claim or defense should be viewed as "presenting to the court" that contention and would be subject to the obligations of subdivision (b) measured as of that time. Similarly, if after a notice of removal is filed, a party urges in federal court the allegations of a pleading filed in state court (whether as claims, defenses, or in disputes regarding removal or remand), it would be viewed as "presenting"—and hence certifying to the district court under Rule 11—those allegations.

The certification with respect to allegations and other factual contentions is revised in recognition that sometimes a litigant may have good reason to believe that a fact is true or false but may need discovery, formal or informal, from opposing parties or third persons to gather and confirm the evidentiary basis for the allegation. Tolerance of factual contentions in initial pleadings by plaintiffs or defendants when specifically identified as made on information and belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it is not a license to join parties, make claims, or present defenses without any factual basis or justification. Moreover, if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention. Subdivision (b) does not require a formal amendment to pleadings for which evidentiary support is not obtained, but rather calls upon a litigant not thereafter to advocate such claims or defenses.

The certification is that there is (or likely will be) "evidentiary support" for the allegation, not that the party will prevail with respect to its contention regarding the fact. That summary judgment is rendered against a party does

.t has been read by the
unnecessary. The obli-
)) obviously require that
paper be read before it is

subdivisions restate the
'o se litigants to conduct
and facts before signing
er documents, and pre-
these obligations. The
bilities of litigants to the
raints and flexibility in
The rule continues to
before initially making
o, however, emphasizes
gants to potential sanc-
er it is no longer tenable
ion against sanctions if
s after a potential viola-

ns contained in papers
rt. It does not cover
ng oral presentations to
atements that would not
nore time for study and
igations with respect to
' measured solely as of
nitted to the court, but
id advocating positions
tions after learning that
ample, an attorney who
on a claim or defense
e court" that contention
tions of subdivision (b)
ly, if after a notice of
ral court the allegations
her as claims, defenses,
' remand), it would be
ertifying to the district
s.

allegations and other
nition that sometimes a
ve that a fact is true or
nal or informal, from
gather and confirm the
Tolerance of factual
plaintiffs or defendants
n information and belief
obligation to conduct an
acts that is reasonable
license to join parties,
out any factual basis or
ry support is not ob-
/ for further investiga-
y under the rule not to
vision (b) does not re-
s for which evidentiary
alls upon a litigant not
defenses.
likely will be) "eviden-
ot that the party will
on regarding the fact.
l against a party does

not necessarily mean, for purposes of this certification, that it had no evidentiary support for its position. On the other hand, if a party has evidence with respect to a contention that would suffice to defeat a motion for summary judgment based thereon, it would have sufficient "evidentiary support" for purposes of Rule 11.

Denials of factual contentions involve somewhat different considerations. Often, of course, a denial is premised upon the existence of evidence contradicting the alleged fact. At other times a denial is permissible because, after an appropriate investigation, a party has no information concerning the matter or, indeed, has a reasonable basis for doubting the credibility of the only evidence relevant to the matter. A party should not deny an allegation it knows to be true; but it is not required, simply because it lacks contradictory evidence, to admit an allegation that it believes is not true.

The changes in subdivisions (b)(3) and (b)(4) will serve to equalize the burden of the rule upon plaintiffs and defendants, who under Rule 8(b) are in effect allowed to deny allegations by stating that from their initial investigation they lack sufficient information to form a belief as to the truth of the allegation. If, after further investigation or discovery, a denial is no longer warranted, the defendant should not continue to insist on that denial. While sometimes helpful, formal amendment of the pleadings to withdraw an allegation or denial is not required by subdivision (b).

Arguments for extensions, modifications, or reversals of existing law or for creation of new law do not violate subdivision (b)(2) provided they are "nonfrivolous." This establishes an objective standard, intended to eliminate any "empty-head pure-heart" justification for patently frivolous arguments. However, the extent to which a litigant has researched the issues and found some support for its theories even in minority opinions, in law review articles, or through consultation with other attorneys should certainly be taken into account in determining whether paragraph (2) has been violated. Although arguments for a change of law are not required to be specifically so identified, a contention that is so identified should be viewed with greater tolerance under the rule.

The court has available a variety of possible sanctions to impose for violations, such as striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; referring the matter to disciplinary authorities (or, in the case of government attorneys, to the Attorney General, Inspector General, or agency head), etc. *See Manual for Complex Litigation, Second*, § 42.3. The rule does not attempt to enumerate the factors a court should consider in deciding whether to impose a sanction or what sanctions would be appropriate in the circumstances; but, for emphasis, it does specifically note that a sanction may be nonmonetary as well as monetary. Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants: all of these may in a particular case be proper considerations. The court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons.

Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty. However, under unusual circumstances, particularly for (b)(1) violations, deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation. Accordingly, the rule authorizes the court, if requested in a motion and if so warranted, to award attorney's fees to another party. Any such award to another party, however, should not exceed the expenses and attorneys' fees for the services directly and unavoidably caused by the violation of the certification requirement. If, for example, a wholly unsupportable count were included in a multi-count complaint or counterclaim for the purpose of needlessly increasing the cost of litigation to an impecunious adversary, any award of expenses should be limited to those directly caused by inclusion of the improper count, and not those resulting from the filing of the complaint or answer itself. The award should not provide compensation for services that could have been avoided by an earlier disclosure of evidence or an earlier challenge to the groundless claims or defenses. Moreover, partial reimbursement of fees may constitute a sufficient deterrent with respect to violations by persons having modest financial resources. In cases brought under statutes providing for fees to be awarded to prevailing parties, the court should not employ cost-shifting under this rule in a manner that would be inconsistent with the standards that govern the statutory award of fees, such as stated in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978).

The sanction should be imposed on the persons—whether attorneys, law firms, or parties—who have violated the rule or who may be determined to be responsible for the violation. The person signing, filing, submitting, or advocating a document has a nondelegable responsibility to the court, and in most situations is the person to be sanctioned for a violation. Absent exceptional circumstances, a law firm is to be held also responsible when, as a result of a motion under subdivision (c)(1)(A), one of its partners, associates, or employees is determined to have violated the rule. Since such a motion may be filed only if the offending paper is not withdrawn or corrected within 21 days after service of the motion, it is appropriate that the law firm ordinarily be viewed as jointly responsible under established principles of agency. This provision is designed to remove the restrictions of the former rule. *Cf. Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120 (1989) (1983 version of Rule 11 does not permit sanctions against law firm of attorney signing groundless complaint).

The revision permits the court to consider whether other attorneys in the firm, co-counsel, other law firms, or the party itself should be held accountable for their part in causing a violation. When appropriate, the court can make

an additional inquiry in order to determine whether the sanction should be imposed on such persons, firms, or parties either in addition to or, in unusual circumstances, instead of the person actually making the presentation to the court. For example, such an inquiry may be appropriate in cases involving governmental agencies or other institutional parties that frequently impose substantial restrictions on the discretion of individual attorneys employed by it.

Sanctions that involve monetary awards (such as a fine or an award of attorney's fees) may not be imposed on a represented party for causing a violation of subdivision (b)(2), involving frivolous contentions of law. Monetary responsibility for such violations is more properly placed solely on the party's attorneys. With this limitation, the rule should not be subject to attack under the Rules Enabling Act. See *Willy v. Coastal Corp.*, — U.S. — (1992); *Business Guides, Inc. v. Chromatic Communications Enter. Inc.*, — U.S. — (1991). This restriction does not limit the court's power to impose sanctions or remedial orders that may have collateral financial consequences upon a party, such as dismissal of a claim, preclusion of a defense, or preparation of amended pleadings.

Explicit provision is made for litigants to be provided notice of the alleged violation and an opportunity to respond before sanctions are imposed. Whether the matter should be decided solely on the basis of written submissions or should be scheduled for oral argument (or, indeed, for evidentiary presentation) will depend on the circumstances. If the court imposes a sanction, it must, unless waived, indicate its reasons in a written order or on the record; the court should not ordinarily have to explain its denial of a motion for sanctions. Whether a violation has occurred and what sanctions, if any, to impose for a violation are matters committed to the discretion of the trial court; accordingly, as under current law, the standard for appellate review of these decisions will be for abuse of discretion. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) (noting, however, that an abuse would be established if the court based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence).

The revision leaves for resolution on a case-by-case basis, considering the particular circumstances involved, the question as to when a motion for violation of Rule 11 should be served and when, if filed, it should be decided. Ordinarily the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely. In other circumstances, it should not be served until the other party has had a reasonable opportunity for discovery. Given the "safe harbor" provisions discussed below, a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention).

Rule 11 motions should not be made or threatened for minor, inconsequential violations of the standards prescribed by subdivision (b). They should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, to intimidate an adversary into withdrawing contentions that are fairly debatable, to increase the costs of litigation, to create a conflict of interest between attorney and client, or to seek disclosure of matters otherwise protected by the attorney-client privilege or the work-product doctrine. As under the prior rule, the court may defer its ruling (or its decision as to the identity of the persons to be sanctioned) until final resolution of the case in order to avoid immediate conflicts of interest and to reduce the disruption created if a disclosure of attorney-client communications is needed to determine whether a violation occurred or to identify the person responsible for the violation.

The rule provides that requests for sanctions must be made as a separate motion, i.e., not simply included as an additional prayer for relief contained in another motion. The motion for sanctions is not, however, to be filed until at least 21 days (or such other period as the court may set) after being served. If, during this period, the alleged violation is corrected, as by withdrawing (whether formally or informally) some allegation or contention, the motion should not be filed with the court. These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation. Under the former rule, parties were sometimes reluctant to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11; under the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions.

To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the "safe harbor" period begins to run only upon service of the motion. In most cases, however, counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion.

As under former Rule 11, the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions. However, service of a cross motion under Rule 11 should rarely be needed since under the revision the court may award to the person who prevails on a motion under Rule 11—whether the movant or the target of the motion—reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion.

The power of the court to act on its own initiative is retained, but with the condition that this be done through a show cause order. This procedure provides the person with notice and an opportunity to respond. The revision provides that a monetary sanction imposed after a court-initiated show cause order be limited to a penalty payable to the court and that it be imposed only if the show cause order is issued before any voluntary dismissal or an agreement of the parties to settle the claims made by or against the litigant. Parties settling a case should not be subsequently faced with an unexpected order from the court leading to monetary sanctions that might have affected their willingness to settle or voluntarily dismiss a case. Since show cause orders will ordinarily be issued only in situations that are akin to a contempt of court, the rule does not provide a "safe harbor" to a litigant for withdrawing a claim, defense, etc., after a show cause order has been issued on the court's own initiative. Such corrective action, however, should be taken into account in deciding what—if any—sanction to impose if, after

'e or the work-product doc-
e court may defer its ruling
tity of the persons to be
of the case in order to avoid
id to reduce the disruption
ey-client communications is
a violation occurred or to
r the violation.

sts for sanctions must be
not simply included as an
ied in another motion. The
ver, to be filed until at least
s the court may set) after
iod, the alleged violation is
ether formally or informal-
, the motion should not be
isions are intended to pro-
st motions under Rule 11 in
to sanctions on the basis of
ter receiving the motion, it
or to acknowledge candidly
vidence to support a speci-
er rule, parties were some-
uestionable contention lest
violation of Rule 11; under
awal of a contention will
or sanctions.

motion for sanctions and to
ned to violate the rule, the
arbor" period begins to run
. In most cases, however,
give informal notice to the
or by a telephone call or
fore proceeding to prepare

he filing of a motion for
equirements of the rule and
, service of a cross motion
e needed since under the
he person who prevails on a
the movant or the target of
s, including attorney's fees,
g the motion.

ct on its own initiative is
that this be done through a
re provides the person with
ond. The revision provides
l after a court-initiated show
ty payable to the court and
show cause order is issued
r an agreement of the par-
by or against the litigant
be subsequently faced with
court leading to monetary
d their willingness to settle
ince show cause orders will
uations that are akin to a
not provide a "safe harbor"
claim, defense, etc., after a
d on the court's own initia-
vever, should be taken into
—sanction to impose if, after

consideration of the litigant's response, the court concludes that a violation has occurred.

**Subdivision (d).** Rules 26(g) and 37 establish certification standards and sanctions that apply to discovery disclosures, requests, responses, objections, and motions. It is appropriate that Rules 26 through 37, which are specially designed for the discovery process, govern such documents and conduct rather than the more general provisions of Rule 11. Subdivision (d) has been added to accomplish this result.

Rule 11 is not the exclusive source for control of improper presentations of claims, defenses, or contentions. It does not supplant statutes permitting awards of attorney's fees to prevailing parties or alter the principles governing such awards. It does not inhibit the court in punishing for contempt, in exercising its inherent powers, or in imposing sanctions, awarding expenses, or directing remedial action authorized under other rules or under 28 U.S.C. § 1927. *See Chambers v. NASCO,* — U.S. — (1991). Chambers cautions, however, against reliance upon inherent powers if appropriate sanctions can be imposed under provisions such as Rule 11, and the procedures specified in Rule 11—notice, opportunity to respond, and findings—should ordinarily be employed when imposing a sanction under the court's inherent powers. Finally, it should be noted that Rule 11 does not preclude a party from initiating an independent action for malicious prosecution or abuse of process.

## Rule 12. Defenses and Objections—When and How Presented—By Pleading or Motion—Motion for Judgment on Pleadings

**(a) When Presented.**

(1) Unless a different time is prescribed in a statute of the United States, a defendant shall serve an answer

(A) within 20 days after being served with the summons and complaint, or

(B) if service of the summons has been timely waived on request under Rule 4(d), within 60 days after the date when the request for waiver was sent, or within 90 days after that date if the defendant was addressed outside any judicial district of the United States.

(2) A party served with a pleading stating a cross-claim against that party shall serve an answer thereto within 20 days after being served. The plaintiff shall serve a reply to a counterclaim in the answer within 20 days after service of the answer, or, if a reply is ordered by the court, within 20 days after service of the order, unless the order otherwise directs.

(3)(A) The United States, an agency of the United States, or an officer or employee of the United States sued in an official capacity, shall serve an answer to the complaint or cross-claim— or a reply to a counterclaim—within 60 days after the United States attorney is served with the pleading asserting the claim.

(B) An officer or employee of the United States sued in an individual capacity for acts or omissions occurring in connection with the performance of duties on behalf of the United States shall serve an answer to the complaint or cross-claim—or a reply to a counterclaim—within 60 days after service on the officer or employee, or service on the United States attorney, whichever is later.

(4) Unless a different time is fixed by court order, the service of a motion permitted under this rule alters these periods of time as follows:

(A) if the court denies the motion or postpones its disposition until the trial on the merits, the responsive pleading shall be served within 10 days after notice of the court's action; or

(B) if the court grants a motion for a more definite statement, the responsive pleading shall be served within 10 days after the service of the more definite statement.

**(b) How Presented.** Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, the adverse party may assert at the trial any defense in law or fact to that claim for relief. If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

**(c) Motion for Judgment on the Pleadings.** After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

# TAB C

ЭF FEDERAL CLAIMS

; involving Tennes-

nent; claim against

:ions

ɔrs under Contract

ax shelter promoter

DIRECTIVES

of title 28, U.S.C., item

2, amended the analysis

241, amended the analy-
:tions involving Tennes-
93, which read: "1493.

856, amended the anal-
ıd copyright".
912, amended the analy-

1306(b)(9)(B), 90 Stat.
ing item 1507.
t A, § 133(e)(2)(B), (f),
ed by § 402 of such Act,
l the chapter heading for



one which read: "COURT OF CLAIMS"; substituted the item relating to section 1499 for one which read: "1499. Penalties imposed against contractors under eight-hour law"; and deleted items relating to sections 1504 and 1506, which read: "1504. Tort claims" and "1506. Transfer to cure defect of jurisdiction".

Act Sept. 3, 1982, P. L. 97-248, Title IV, § 402(c)(18)(B), 96 Stat. 669, amended the analysis of this chapter by adding the item relating to section 1508.

**1984.** Act July 18, 1984, P. L. 98-369, Division A, Title VII, Subtitle A, § 714(g)(3), 98 Stat. 962 (applicable to any claim for refund or credit filed after 7/18/84, as provided by § 714(g)(4) of such Act, which appears as 28 USCS § 1509 note), amended the analysis of this chapter by adding the item relating to section 1509.

**1992.** Act Oct. 29, 1992, P. L. 102-572, Title IX, § 902(a)(1), 106 Stat. 4516, amended the chapter heading by substituting "UNITED STATES COURT OF FEDERAL CLAIMS" for "UNITED STATES CLAIMS COURT".

**Other provisions:**

**Applicability of amendment made by Act Sept. 3, 1982.** Act Sept. 3, 1982, P. L. 97-248, Title IV, § 407(a)(1), 96 Stat. 670, which appears as 26 USCS § 6221 note, provides in part that the amendment of the analysis of this chapter "shall apply to partnership taxable years beginning after the date of the enactment of this Act".

### CROSS REFERENCES

Organization of Court of Federal Claims, 28 USCS §§ 171 et seq.

Concurrent jurisdiction of district courts, 28 USCS § 1346.

Procedure in Court of Federal Claims, 28 USCS §§ 2501 et seq.

Court of Federal Claims, USCS Court of Federal Claims, Rules 1 et seq.

## § 1491. Claims against United States generally; actions involving Tennessee Valley Authority

(a)(1) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

(2) To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to

remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just. The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978 [41 USCS § 609(a)(1)], including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act [41 USCS § 605].

(b)(1) **[Caution: Subject to savings provisions, the jurisdiction of district courts of the United States over actions described in this paragraph terminated on January 1, 2001, as provided by § 12(d) and (e) of Act Oct. 19, 1996, P. L. 104-320, which appear as a note to this section.]** Both the Unites [United] States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

(2) To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs.

(3) In exercising jurisdiction under this subsection, the courts shall give due regard to the interests of national defense and national security and the need for expeditious resolution of the action.

(4) In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5.

(c) Nothing herein shall be construed to give the United States Court of Federal Claims jurisdiction of any civil action within the exclusive jurisdiction of the Court of International Trade, or of any action against, or founded on conduct of, the Tennessee Valley Authority, or to amend or modify the provisions of the Tennessee Valley Authority Act of 1933 [16 USCS §§ 831 et seq.] with respect to actions by or against the Authority.

(June 25, 1948, ch 646, § 1, 62 Stat. 940; July 28, 1953, ch 253, § 7, 67 Stat. 226; Sept. 3, 1954, ch 1263, § 44(a), 68 Stat. 1241; July 23, 1970, P. L. 91-350, § 1(b), 84 Stat. 449; Aug. 29, 1972, P. L. 92-415, § 1, 86 Stat. 652; Nov. 1, 1978, P. L. 95-563, § 14(i), 92 Stat. 2391; Oct. 10, 1980, P. L. 96-417, Title V, § 509, 94 Stat. 1743; April 2, 1982, P. L. 97-164, Title I, Part A, § 133(a), 96 Stat. 39; Oct. 29, 1992, P. L. 102-572, Title IX, §§ 902(a), 907(b)(1), 106 Stat. 4516, 4519; Oct. 19, 1996, P. L. 104-320, § 12(a), 110 Stat. 3874.)





**HISTO**

**Prior law and r**

Based on title 28
36 Stat. 1136).
District courts ar
United States un
that section and
Court.)
The proviso in se
growing out of
other claims wh
any court, depar
omitted as obsol
The exception in
claims appears i
Words "in respe
against the Unit
the United States
of Claims manif
against the Unite
of Claims has n
sections 741-75
jurisdiction over
courts. *Sanday &*
For additional p
war contract set
ed., Public Contr
Changes were m

**Explanatory no**

The bracketed w
word probably in

**Amendments:**

**1953.** Act July 2
and substituted a
**1954.** Act Sept.
nessee Valley A
States" precedin
upon" preceding
tion", "(4) foun
and inserted "eit
**1970.** Act July 2
appears as 28 US
purpose of this p
and Air Force
changes, Coast
Aeronautics and
implied contract
**1972.** Act Aug.
appears as a note
beginning "To p
jurisdiction . . .
**1978.** Act Nov.

# TAB D

d.b.a. Commercial Marine Services (1983, DOT CAB) 83-1 CCH BCA Dec ¶ 16232.

Board of contract appeals does not lose jurisdiction over contractor's appeal when Department of Justice files civil complaint in District Court against contractor seeking recovery under fraudulent claims provision of Contract Disputes Act of 1978 (41 USCS § 604) and civil penalties under False Claims Act (31 USCS §§ 3729–3733). Hardrives, Inc. (1991) 98 ID 23.

Board does not have jurisdiction to consider Government's claim under 41 USCS § 604 that it is entitled to award against contractor on basis of alleged misrepresentations of fact in connection with contractor's claims for cost of removing storage tanks. Appeal of Nat'l Constr. Co. (1999, PSBCA) 99-2 BCA ¶ 30509.

**3. —Suspension of board proceedings**

Proceedings before board will not be dismissed or suspended merely on government's allegation of fraudulent conduct by contractor; suspension of proceedings is warranted where government demonstrates that there is real possibility that fraud exists which is of such nature as to effectively preclude board from ascertaining facts and circumstances surrounding claim. Warren Beaves (1983, DOT CAB) 83-2 CCH BCA Dec ¶ 16648.

Pendency of civil fraud suit did not divest Board of jurisdiction requiring it to suspend its proceedings since Congress clearly foresaw that allegations of fraud would arise in government contract disputes, legislative history indicated Congressional intent that Board not be totally ousted of jurisdiction, and although board does not have jurisdiction to determine whether fraud exists, it has jurisdiction to make findings that falsification of documents has occurred. TDC Management Corp. (1989, DOT BCA) 90-1 BCA ¶ 22627.

**4. Statute of limitations**

For purposes of six-year statute of limitations in 41 USCS § 604, government claim arises no earlier than submission of contractor's certified claim under Contract Disputes Act, regardless of when conduct rendering contractor's claim false allegedly occurred. Jana, Inc. v United States (1995) 34 Fed Cl 447, 40 CCF ¶ 76862.

Six-year statute of limitations (41 USCS § 604) begins to run at earliest time that defendant could have been aware of alleged fraud; commission of misrepresentation or fraud does not actually occur until party being defrauded becomes aware of it. TS Infosystems v United States (1996) 36 Fed Cl 570, 41 CCF ¶ 77007 (criticized in Am. Heritage Bancorp v United States (2003) 56 Fed Cl 596).

**5. Remedies**

Remedies available under 41 USCS § 604 are cumulative and not alternative. UMC Elecs. Co. v United States (1999) 43 Fed Cl 776, affd (2001, CA FC) 249 F3d 1337.

Government's costs of review under 41 USCS § 604 can, if properly documented, include costs of review by contracting officer, Defense Contract Audit Agency and Department of Justice. UMC Elecs. Co. v United States (1999) 45 Fed Cl 507.

**6. Miscellaneous**

Fact that contractor's certification of claim pursuant to 41 USCS § 605 exceeds amount to which Board determines he is entitled does not subject him to liability under 41 USCS § 604, since § 604 requires proof of misrepresentation of fact or fraud as prerequisite to liability. Harnischfeger Corp. (1980, ASBCA) 80-2 CCH BCA Dec ¶ 14541.

Board has no authority to order contracting officer to pay money to contractor withheld because of alleged fraud. Fidelity Constr. Co., Inc. (1980, DOT CAB) 80-2 CCH BCA Dec ¶ 14819.

## § 605. Decision by contracting officer

**(a) Contractor claims.** All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer. Each claim by a contractor against the government relating to a contract and each claim by the government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim. The preceding sentence does not apply to a claim by the government against a contractor that is based on a claim by the contractor involving fraud. The contracting officer shall issue his decisions in writing, and shall mail or otherwise furnish a copy of the decision to the contractor. The decision shall state the reasons for the decision reached, and shall inform the contractor of his rights as provided in this Act. Specific findings of fact are not required, but, if made, shall not be binding in any subsequent proceeding. The authority of this subsection shall not





extend to a claim or dispute
regulation which another F
ter, settle, or determine. Tl
settle, compromise, pay, or

**(b) Review; performance**
ficer's decision on the clai
review by any forum, tribu
is timely commenced as au
hibit executive agencies f
requiring that pending final
contractor shall proceed di
dance with the contracting

**(c) Amount of claim; certi**
**tion.** (1) A contracting o
of $100,000 or less wit
from the contractor that
of more than $100,000,
good faith, that the supp
his knowledge and belic
contract adjustment for
able, and that the certifi
of the contractor.

(2) A contracting office
certified claim over $10

(A) issue a decision;

(B) notify the contrac
sued.

(3) The decision of a co
within a reasonable time
agency, taking into acc
claim and the adequacy
by the contractor.

(4) A contractor may re
officer to issue a decisio
tribunal concerned, in tl
ing officer.

(5) Any failure by the
claim within the perioc
contracting officer deny
of the appeal or suit on t
in the event an appeal o
cision by the contractin
stay the proceedings to
ficer.

(6) The contracting offi
on any claim of more tl

**nitations**

of six-year statute of limitations in government claim arises no earlier of contractor's certified claim under :s Act, regardless of when conduct :tor's claim false allegedly occurred. .ed States (1995) 34 Fed Cl 447, 40

te of limitations (41 USCS § 604) . earliest time that defendant could e of alleged fraud; commission of n or fraud does not actually occur defrauded becomes aware of it. TS nited States (1996) 36 Fed Cl 570, 7 (criticized in Am. Heritage Ban- ates (2003) 56 Fed Cl 596).

ilable under 41 USCS § 604 are not alternative. UMC Elecs. Co. v 399) 43 Fed Cl 776, affd (2001, CA 37.

costs of review under 41 USCS iperly documented, include costs of acting officer, Defense Contract Au- Department of Justice. UMC Elecs. ites (1999) 45 Fed Cl 507.

s

ractor's certification of claim pursu- § 605 exceeds amount to which s he is entitled does not subject him r 41 USCS § 604, since § 604 re- nisrepresentation of fact or fraud as ability. Harnischfeger Corp. (1980, CH BCA Dec ¶ 14541.

uthority to order contracting officer contractor withheld because of al- elity Constr. Co., Inc. (1980, DOT BCA Dec ¶ 14819.

gainst the government re- ıbmitted to the contracting against a contractor relat- by the contracting officer. relating to a contract and elating to a contract shall he claim. The preceding it against a contractor that d. The contracting officer · otherwise furnish a copy state the reasons for the his rights as provided in but, if made, shall not be of this subsection shall not



extend to a claim or dispute for penalties or forfeitures prescribed by statute or regulation which another Federal agency is specifically authorized to administer, settle, or determine. This section shall not authorize any agency head to settle, compromise, pay, or otherwise adjust any claim involving fraud.

**(b) Review; performance of contract pending appeal.** The contracting officer's decision on the claim shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency, unless an appeal or suit is timely commenced as authorized by this Act. Nothing in this Act shall prohibit executive agencies from including a clause in government contracts requiring that pending final decision of an appeal, action, or final settlement, a contractor shall proceed diligently with performance of the contract in accordance with the contracting officer's decision.

**(c) Amount of claim; certification; notification; time of issuance; presumption.** (1) A contracting officer shall issue a decision on any submitted claim of $100,000 or less within sixty days from his receipt of a written request from the contractor that a decision be rendered within that period. For claims of more than $100,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable, and that the certifier is duly authorized to certify the claim on behalf of the contractor.

(2) A contracting officer shall, within sixty days of receipt of a submitted certified claim over $100,000—

(A) issue a decision; or

(B) notify the contractor of the time within which a decision will be issued.

(3) The decision of a contracting officer on submitted claims shall be issued within a reasonable time, in accordance with regulations promulgated by the agency, taking into account such factors as the size and complexity of the claim and the adequacy of the information in support of the claim provided by the contractor.

(4) A contractor may request the tribunal concerned to direct a contracting officer to issue a decision in a specified period of time, as determined by the tribunal concerned, in the event of undue delay on the part of the contracting officer.

(5) Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim as otherwise provided in this Act. However, in the event an appeal or suit is so commenced in the absence of a prior decision by the contracting officer, the tribunal concerned may, at its option, stay the proceedings to obtain a decision on the claim by the contracting officer.

(6) The contracting officer shall have no obligation to render a final decision on any claim of more than $100,000 that is not certified in accordance with

paragraph (1) if, within 60 days after receipt of the claim, the contracting officer notifies the contractor in writing of the reasons why any attempted certification was found to be defective. A defect in the certification of a claim shall not deprive a court or an agency board of contract appeals of jurisdiction over that claim. Prior to the entry of a final judgment by a court or a decision by an agency board of contract appeals, the court or agency board shall require a defective certification to be corrected.

(7) The certification required by paragraph (1) may be executed by any person duly authorized to bind the contractor with respect to the claim.

**(d) Alternative means of dispute resolution.** Notwithstanding any other provision of this Act, a contractor and a contracting officer may use any alternative means of dispute resolution under subchapter IV of chapter 5 of title 5, United States Code [5 USCS §§ 571 et seq.], or other mutually agreeable procedures, for resolving claims. The contractor shall certify the claim when required to do so as provided under subsection (c)(1) or as otherwise required by law. All provisions of subchapter IV of chapter 5 of title 5, United States Code [5 USCS §§ 581 et seq.], shall apply to such alternative means of dispute resolution.

**(e) Termination of authority to engage in alternative means of dispute resolution; savings provisions.** In any case in which the contracting officer rejects a contractor's request for alternative dispute resolution proceedings, the contracting officer shall provide the contractor with a written explanation, citing one or more of the conditions in section 572(b) of title 5, United States Code, or such other specific reasons that alternative dispute resolution procedures are inappropriate for the resolution of the dispute. In any case in which a contractor rejects a request of an agency for alternative dispute resolution proceedings, the contractor shall inform the agency in writing of the contractor's specific reasons for rejecting the request.

(Nov. 1, 1978, P. L. 95-563, § 6, 92 Stat. 2384; Nov. 15, 1990, P. L. 101-552, § 6(a), 104 Stat. 2745; Oct. 29, 1992, P. L. 102-572, Title IX, § 907(a)(1), 106 Stat. 4518; Oct. 13, 1994, P. L. 103-355, Title II, Subtitle D, Part II, § 2351(a)(1), (b), (e), § 2352, 108 Stat. 3322; Feb. 10, 1996, P. L. 104-106, Div D, Title XLIII, Subtitle B, §§ 4321(a)(6), (7), 4322(b)(6), 110 Stat. 671, 677; Oct. 19, 1996, P. L. 104-320, § 6, 110 Stat. 3871; Nov. 18, 1997, P. L. 105-85, Div A, Title X, Subtitle G, § 1073(g)(3), 111 Stat. 1906.)

## HISTORY; ANCILLARY LAWS AND DIRECTIVES

**References in text:**

"This Act," referred to in this section, is popularly known as the Contract Disputes Act of 1978, which appears generally as 41 USCS §§ 601 et seq. For full classification of such Act, consult USCS Tables volumes.

**Amendments:**

**1990.** Act Nov. 15, 1990 added subsecs. (d) and (e).

**1992.** Act Oct. 29, 1992 (effective and applicable as provided by § 907(a)(4) of such Act, which appears as a note to this section), in subsec. (c), in para. (1), deleted "and" following "belief,", and inserted ", and





that the certifier is duly
contractor".
Such Act further (effecti
such Act, which appears
paras. (6) and (7).
**1994.** Act Oct. 13, 1
§§ 2351(a)(2) and 10001(
as a note to this section
Feb. 10, 1996 (effective
enacted, as provided by §
§ 1206a note), in subsec.
the government relating
against a contractor relati
after the accrual of the c
claim by the governmen
the contractor involving
substituted "$100,000"
"tribunal concerned" fo
"request the", and subst
ing "by the" and, in par
in subec. (e), substituted
inserted "In any case in
request for alternative d
ficer shall provide the co
more of the conditions i
such other specific reaso
inappropriate for the re
contractor rejects a requ
proceedings, the contra
contractor's specific reas
**1996.** Act Feb. 10, 1996
Oct. 13, 1994 as enacted
amended Act Oct. 13, 1
Such Act further (effecti
Act, which appears as 41
"(as in effect on Septem
wherever appearing.
Act Oct. 19, 1996, in sub
contractor shall certify
means of dispute resolu
used, the contractor shal
the supporting data are
knowledge and belief, a
contract adjustment for v
able."; and, in subsec. (
alternative means of dis
shall cease to be effecti
shall continue in effect
proceedings which, in th
proceedings, require suc
preceding "In any case"

# TAB E

## § 609. Judicial review of board decisions

**(a) Actions in United States Court of Federal Claims; district court actions; time for filing.** (1) Except as provided in paragraph (2), and in lieu of appealing the decision of the contracting officer under section 6 [41 USCS § 605] to an agency board, a contractor may bring an action directly on the claim in the United States Claims Court [United States Court of Federal Claims], notwithstanding any contract provision, regulation, or rule of law to the contrary.

(2) In the case of an action against the Tennessee Valley Authority, the contractor may only bring an action directly on the claim in a United States district court pursuant to section 1337 of title 28, United States Code, notwithstanding any contract provision, regulation, or rule of law to the contrary.

(3) Any action under paragraph (1) or (2) shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim, and shall proceed de novo in accordance with the rules of the appropriate court.

**(b) Finality of board decision.** In the event of an appeal by a contractor or the Government from a decision of any agency board pursuant to section 8 [41 USCS § 607], notwithstanding any contract provision, regulation, or rules of law to the contrary, the decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

**(c) Remand or retention of case.** In any appeal by a contractor or the Government from a decision of an agency board pursuant to section 8 [41 USCS § 607], the court may render an opinion and judgment and remand the case for further action by the agency board or by the executive agency as appropriate, with such direction as the court considers just and proper.

**(d) Consolidation.** If two or more suits arising from one contract are filed in the United States Claims Court [United States Court of Federal Claims] and one or more agency boards, for the convenience of parties or witnesses or in the interest of justice, the United States Claims Court [United States Court of Federal Claims] may order the consolidation of such suits in that court or transfer any suits to or among the agency boards involved.

**(e) Judgments as to fewer than all claims.** In any suit filed pursuant to this Act involving two or more claims, counterclaims, cross-claims, or third-party claims, and where a portion of one such claim can be divided for purposes of decision or judgment, and in any such suit where multiple parties are involved, the court, whenever such action is appropriate, may enter a judgment as to one or more but fewer than all of the claims, portions thereof, or parties.

**(f) Boards of contract appeals; advisory opinions.** (1) Whenever an action involving an issue described in paragraph (2) is pending in a district court of the United States, the district court may request a board of contract ap-





peals to provide the c
interpretation at issu
(2) An issue referred
subject of a final dec
(3) A district court sl
of contract appeals h
of contract claims u
court.
(4) After receiving a
board of contract app
ner to the district cou
(Nov. 1, 1978, P. L. 95-
Title I, Part B, §§ 157,
1994, P. L. 103-355, Ti

**HISTORY;**

**References in text:**
"This Act," referred
Disputes Act of 197
For full classificatio

**Explanatory notes:**
The bracketed words
inserted in subsecs.
§ 902(b)(1) of Act O
§ 171 note, and whic
Court in any Federal
States Court of Fede

**Amendments:**
**1982.** Act April 2, 1
Act, which appears a
"Claims Court" for
its discretion and in
additional evidence o
the case" following
"United States Claim
**1994.** Act Oct. 13, 19
and (b) of such Act,
(f).

**Other provisions:**
**Applicability of Act**
to proceed under Act
USCS § 601.
**Applicability to Am**
specified by the Presi
the American Institute
44 Fed. Reg. 37191, s

This section is referred
§§ 3861, 3862; 28 USCS

**:laims; district court ac-**
paragraph (2), and in lieu
under section 6 [41 USCS
g an action directly on the
d States Court of Federal
regulation, or rule of law

see Valley Authority, the
ıe claim in a United States
28, United States Code,
, or rule of law to the con-

filed within twelve months
ıe decision of the contract-
ed de novo in accordance

peal by a contractor or the
pursuant to section 8 [41
ɔn, regulation, or rules of
·d on any question of law
any question of fact shall
ıless the decision is fraud-
ɔus as to necessarily imply
ɔstantial evidence.

contractor or the Govern-
t to section 8 [41 USCS
ıt and remand the case for
.ve agency as appropriate,
:oper.

ı one contract are filed in
rt of Federal Claims] and
parties or witnesses or in
rt [United States Court of
ıch suits in that court or
olved.

suit filed pursuant to this
ross-claims, or third-party
ıe divided for purposes of
ltiple parties are involved,
:nter a judgment as to one
:reof, or parties.

. (1) Whenever an action
ɔending in a district court
st a board of contract ap-



peals to provide the court with an advisory opinion on the matters of contract interpretation at issue.

(2) An issue referred to in paragraph (1) is any issue that could be the proper subject of a final decision of a contracting officer appealable under this Act.

(3) A district court shall direct any request under paragraph (1) to the board of contract appeals having jurisdiction under this Act to adjudicate appeals of contract claims under the contract or contracts being interpreted by the court.

(4) After receiving a request for an advisory opinion under paragraph (1), a board of contract appeals shall provide the advisory opinion in a timely manner to the district court making the request.

(Nov. 1, 1978, P. L. 95-563, § 10, 92 Stat. 2388; April 2, 1982, P. L. 97-164, Title I, Part B, §§ 157, 160(a)(15) in part, 161(10), 96 Stat. 47–49; Oct. 13, 1994, P. L. 103-355, Title II, Subtitle D, Part II, § 2354, 108 Stat. 3323.)

## HISTORY; ANCILLARY LAWS AND DIRECTIVES

**References in text:**

"This Act," referred to in this section, is popularly known as the Contract Disputes Act of 1978, which appears generally as 41 USCS §§ 601 et seq. For full classification of such Act, consult USCS Tables volumes.

**Explanatory notes:**

The bracketed words "United States Court of Federal Claims" have been inserted in subsecs. (a)(1) and (d) of this section on the authority of § 902(b)(1) of Act Oct. 29, 1992, P. L. 102-572, which appears as 28 USCS § 171 note, and which provides that reference to the United States Claims Court in any Federal law or document shall be deemed to refer to the United States Court of Federal Claims.

**Amendments:**

**1982.** Act April 2, 1982 (effective 10/1/82, as provided by § 402 of such Act, which appears as 28 USCS § 171 note), in subsec. (a)(1), substituted "Claims Court" for "Court of Claims"; in subsec. (c), deleted ", or, in its discretion and in lieu of remand it may retain the case and take such additional evidence or action as may be necessary for final disposition of the case" following "just and proper"; and, in subsec. (d), substituted "United States Claims Court" for "Court of Claims" in two places.

**1994.** Act Oct. 13, 1994 (effective and applicable as provided by § 10001(a) and (b) of such Act, which appear as 41 USCS § 251 note), added subsec. (f).

**Other provisions:**

**Applicability of Act Nov. 1, 1978.** For the effective date of and election to proceed under Act Nov. 1, 1978, see the Other provisions note under 41 USCS § 601.

**Applicability to American Institute on Taiwan.** This section has been specified by the President as inapplicable to procurement of services from the American Institute on Taiwan by Ex. Or. No. 12143 of June 22, 1979, 44 Fed. Reg. 37191, set out at 22 USCS § 3301 note.

## CROSS REFERENCES

This section is referred to in 5 USCS § 9003; 10 USCS § 2410m; 22 USCS §§ 3861, 3862; 28 USCS §§ 1295, 1346, 1491; 41 USCS § 603.

# TAB F

## Subpart 1.4—Deviations from the FAR

**1.400 Scope of subpart.**

This subpart prescribes the policies and procedures for authorizing deviations from the FAR. Exceptions pertaining to the use of forms prescribed by the FAR are covered in Part 53 rather than in this subpart.

**1.401 Definition.**

"Deviation" means any one or combination of the following:

(a) The issuance or use of a policy, procedure, solicitation provision (see definition in 2.101), contract clause (see definition in 2.101), method, or practice of conducting acquisition actions of any kind at any stage of the acquisition process that is inconsistent with the FAR.

(b) The omission of any solicitation provision or contract clause when its prescription requires its use.

(c) The use of any solicitation provision or contract clause with modified or alternate language that is not authorized by the FAR (see definition of "modification" in 52.101(a) and definition of "alternate" in 2.101(a)).

(d) The use of a solicitation provision or contract clause prescribed by the FAR on a "substantially as follows" or "substantially the same as" basis (see definitions in 2.101 and 52.101(a)), if such use is inconsistent with the intent, principle, or substance of the prescription or related coverage on the subject matter in the FAR.

(e) The authorization of lesser or greater limitations on the use of any solicitation provision, contract clause, policy, or procedure prescribed by the FAR.

(f) The issuance of policies or procedures that govern the contracting process or otherwise control contracting relationships that are not incorporated into agency acquisition regulations in accordance with 1.301(a).

**1.402 Policy.**

Unless precluded by law, executive order, or regulation, deviations from the FAR may be granted as specified in this subpart when necessary to meet the specific needs and requirements of each agency. The development and testing of new techniques and methods of acquisition should not be stifled simply because such action would require a FAR deviation. The fact that deviation authority is required should not, of itself, deter agencies in their development and testing of new techniques and acquisition methods. Refer to 31.101 for instructions concerning deviations pertaining to the subject matter of Part 31, Contract Cost Principles and Procedures. Deviations are not authorized with respect to 30.201-3 and 30.201-4, or the requirements of the Cost Accounting Standards Board (CASB) rules and regulations (48 CFR Chapter 99 (FAR Appendix)). Refer to 30.201-5 for instructions concerning waivers pertaining to Cost Accounting Standards.

**1.403 Individual deviations.**

Individual deviations affect only one contract action, and, unless 1.405(e) is applicable, may be authorized by the agency head. The contracting officer must document the justification and agency approval in the contract file.

**1.404 Class deviations.**

Class deviations affect more than one contract action. When an agency knows that it will require a class deviation on a permanent basis, it should propose a FAR revision, if appropriate. Civilian agencies, other than NASA, must furnish a copy of each approved class deviation to the FAR Secretariat.

(a) For civilian agencies except NASA, class deviations may be authorized by agency heads or their designees, unless 1.405(e) is applicable. Delegation of this authority shall not be made below the head of a contracting activity. Authorization of class deviations by agency officials is subject to the following limitations:

(1) An agency official who may authorize a class deviation, before doing so, shall consult with the chairperson of the Civilian Agency Acquisition Council (CAA Council), unless that agency official determines that urgency precludes such consultation.

(2) Recommended revisions to the FAR shall be transmitted to the FAR Secretariat by agency heads or their designees for authorizing class deviations.

(b) For DoD, class deviations shall be controlled, processed, and approved in accordance with the Defense FAR Supplement.

(c) For NASA, class deviations shall be controlled and approved by the Assistant Administrator for Procurement. Deviations shall be processed in accordance with agency regulations.

**1.405 Deviations pertaining to treaties and executive agreements.**

(a) "Executive agreements," as used in this section, means Government-to-Government agreements, including agreements with international organizations, to which the United States is a party.

(b) Any deviation from the FAR required to comply with a treaty to which the United States is a party is authorized, unless the deviation would be inconsistent with FAR coverage based on a law enacted after the execution of the treaty.

(c) Any deviation from the FAR required to comply with an executive agreement is authorized unless the deviation would be inconsistent with FAR coverage based on law.

(d) For civilian agencies other than NASA, a copy of the text deviation authorized under paragraph (b) or (c) of this

# TAB G

award document includes information that is different than the signed proposal, as amended by the offeror's written correspondence, the first page shall include the contractor's agreement statement from Block 14 of the OF 307 and the signature of the contractor's authorized representative.

**15.505 Preaward debriefing of offerors.**

Offerors excluded from the competitive range or otherwise excluded from the competition before award may request a debriefing before award (10 U.S.C. 2305(b)(6)(A) and 41 U.S.C. 253b(f) - (h)).

(a)(1) The offeror may request a preaward debriefing by submitting a written request for debriefing to the contracting officer within 3 days after receipt of the notice of exclusion from the competition.

(2) At the offeror's request, this debriefing may be delayed until after award. If the debriefing is delayed until after award, it shall include all information normally provided in a postaward debriefing (see 15.506(d)). Debriefings delayed pursuant to this paragraph could affect the timeliness of any protest filed subsequent to the debriefing.

(3) If the offeror does not submit a timely request, the offeror need not be given either a preaward or a postaward debriefing. Offerors are entitled to no more than one debriefing for each proposal.

(b) The contracting officer shall make every effort to debrief the unsuccessful offeror as soon as practicable, but may refuse the request for a debriefing if, for compelling reasons, it is not in the best interests of the Government to conduct a debriefing at that time. The rationale for delaying the debriefing shall be documented in the contract file. If the contracting officer delays the debriefing, it shall be provided no later than the time postaward debriefings are provided under 15.506. In that event, the contracting officer shall include the information at 15.506(d) in the debriefing.

(c) Debriefings may be done orally, in writing, or by any other method acceptable to the contracting officer.

(d) The contracting officer should normally chair any debriefing session held. Individuals who conducted the evaluations shall provide support.

(e) At a minimum, preaward debriefings shall include—

(1) The agency's evaluation of significant elements in the offeror's proposal;

(2) A summary of the rationale for eliminating the offeror from the competition; and

(3) Reasonable responses to relevant questions about whether source selection procedures contained in the solicitation, applicable regulations, and other applicable authorities were followed in the process of eliminating the offeror from the competition.

(f) Preaward debriefings shall not disclose—

(1) The number of offerors;

(2) The identity of other offerors;

(3) The content of other offerors' proposals;

(4) The ranking of other offerors;

(5) The evaluation of other offerors; or

(6) Any of the information prohibited in 15.506(e).

(g) An official summary of the debriefing shall be included in the contract file.

**15.506 Postaward debriefing of offerors.**

(a)(1) An offeror, upon its written request received by the agency within 3 days after the date on which that offeror has received notification of contract award in accordance with 15.503(b), shall be debriefed and furnished the basis for the selection decision and contract award.

(2) To the maximum extent practicable, the debriefing should occur within 5 days after receipt of the written request. Offerors that requested a postaward debriefing in lieu of a preaward debriefing, or whose debriefing was delayed for compelling reasons beyond contract award, also should be debriefed within this time period.

(3) An offeror that was notified of exclusion from the competition (see 15.505(a)), but failed to submit a timely request, is not entitled to a debriefing.

(4)(i) Untimely debriefing requests may be accommodated.

(ii) Government accommodation of a request for delayed debriefing pursuant to 15.505(a)(2), or any untimely debriefing request, does not automatically extend the deadlines for filing protests. Debriefings delayed pursuant to 15.505(a)(2) could affect the timeliness of any protest filed subsequent to the debriefing.

(b) Debriefings of successful and unsuccessful offerors may be done orally, in writing, or by any other method acceptable to the contracting officer.

(c) The contracting officer should normally chair any debriefing session held. Individuals who conducted the evaluations shall provide support.

(d) At a minimum, the debriefing information shall include—

(1) The Government's evaluation of the significant weaknesses or deficiencies in the offeror's proposal, if applicable;

(2) The overall evaluated cost or price (including unit prices) and technical rating, if applicable, of the successful offeror and the debriefed offeror, and past performance information on the debriefed offeror;

(3) The overall ranking of all offerors, when any ranking was developed by the agency during the source selection;

(4) A summary of the rationale for award;

(5) For acquisitions of commercial items, the make and model of the item to be delivered by the successful offeror; and

(6) Reasonable responses to relevant questions about whether source selection procedures contained in the solicita-

# TAB H

(c) The period shall be set so as to provide the contractor adequate lead time to ensure continuous production.

(d) The period may extend beyond the contract completion date for service contracts. This is necessary for situations when exercise of the option would result in the obligation of funds that are not available in the fiscal year in which the contract would otherwise be completed.

(e) Unless otherwise approved in accordance with agency procedures, the total of the basic and option periods shall not exceed 5 years in the case of services, and the total of the basic and option quantities shall not exceed the requirement for 5 years in the case of supplies. These limitations do not apply to information technology contracts. However, statutes applicable to various classes of contracts, for example, the Service Contract Act (see 22.1002-1), may place additional restrictions on the length of contracts.

(f) Contracts may express options for increased quantities of supplies or services in terms of—

(1) Percentage of specific line items,

(2) Increase in specific line items; or

(3) Additional numbered line items identified as the option.

(g) Contracts may express extensions of the term of the contract as an amended completion date or as additional time for performance; *e.g.*, days, weeks, or months.

**17.205 Documentation.**

(a) The contracting officer shall justify in writing the quantities or the term under option, the notification period for exercising the option, and any limitation on option price under 17.203(g); and shall include the justification document in the contract file.

(b) Any justifications and approvals and any determination and findings required by Part 6 shall specify both the basic requirement and the increase permitted by the option.

**17.206 Evaluation.**

(a) In awarding the basic contract, the contracting officer shall, except as provided in paragraph (b) of this section, evaluate offers for any option quantities or periods contained in a solicitation when it has been determined prior to soliciting offers that the Government is likely to exercise the options. (See 17.208.)

(b) The contracting officer need not evaluate offers for any option quantities when it is determined that evaluation would not be in the best interests of the Government and this determination is approved at a level above the contracting officer. An example of a circumstance that may support a determination not to evaluate offers for option quantities is when there is a reasonable certainty that funds will be unavailable to permit exercise of the option.

**17.207 Exercise of options.**

(a) When exercising an option, the contracting officer shall provide written notice to the contractor within the time period specified in the contract.

(b) When the contract provides for economic price adjustment and the contractor requests a revision of the price, the contracting officer shall determine the effect of the adjustment on prices under the option before the option is exercised.

(c) The contracting officer may exercise options only after determining that—

(1) Funds are available;

(2) The requirement covered by the option fulfills an existing Government need;

(3) The exercise of the option is the most advantageous method of fulfilling the Government's need, price and other factors (see paragraphs (d) and (e) of this section) considered; and

(4) The option was synopsized in accordance with Part 5 unless exempted by 5.202(a)(11) or other appropriate exemptions in 5.202.

(d) The contracting officer, after considering price and other factors, shall make the determination on the basis of one of the following:

(1) A new solicitation fails to produce a better price or a more advantageous offer than that offered by the option. If it is anticipated that the best price available is the option price or that this is the more advantageous offer, the contracting officer should not use this method of testing the market.

(2) An informal analysis of prices or an examination of the market indicates that the option price is better than prices available in the market or that the option is the more advantageous offer.

(3) The time between the award of the contract containing the option and the exercise of the option is so short that it indicates the option price is the lowest price obtainable or the more advantageous offer. The contracting officer shall take into consideration such factors as market stability and comparison of the time since award with the usual duration of contracts for such supplies or services.

(e) The determination of other factors under (c)(3) of this section should take into account the Government's need for continuity of operations and potential costs of disrupting operations.

(f) Before exercising an option, the contracting officer shall make a written determination for the contract file that exercise is in accordance with the terms of the option, the requirements of this section, and Part 6. To satisfy requirements of Part 6 regarding full and open competition, the option must have been evaluated as part of the initial competition and be exercisable at an amount specified in or reasonably determinable from the terms of the basic contract, *e.g.*—

(1) A specific dollar amount;

(2) An amount to be determined by applying provisions (or a formula) provided in the basic contract, but not including renegotiation of the price for work in a fixed-price type contract;

(3) In the case of a cost-type contract, if—

(i) The option contains a fixed or maximum fee; or

(ii) The fixed or maximum fee amount is determinable by applying a formula contained in the basic contract (but see 16.102(c));

(4) A specific price that is subject to an economic price adjustment provision; or

(5) A specific price that is subject to change as the result of changes to prevailing labor rates provided by the Secretary of Labor.

(g) The contract modification or other written document which notifies the contractor of the exercise of the option shall cite the option clause as authority.

**17.208 Solicitation provisions and contract clauses.**

(a) Insert a provision substantially the same as the provision at 52.217-3, Evaluation Exclusive of Options, in solicitations when the solicitation includes an option clause and does not include one of the provisions prescribed in paragraph (b) or (c) of this section.

(b) Insert a provision substantially the same as the provision at 52.217-4, Evaluation of Options Exercised at Time of Contract Award, in solicitations when the solicitation includes an option clause, the contracting officer has determined that there is a reasonable likelihood that the option will be exercised, and the option may be exercised at the time of contract award.

(c) Insert a provision substantially the same as the provision at 52.217-5, Evaluation of Options, in solicitations when—

(1) The solicitation contains an option clause;

(2) An option is not to be exercised at the time of contract award;

(3) A firm-fixed-price contract, a fixed-price contract with economic price adjustment, or other type of contract approved under agency procedures is contemplated; and

(4) The contracting officer has determined that there is a reasonable likelihood that the option will be exercised. For sealed bids, the determination shall be in writing.

(d) Insert a clause substantially the same as the clause at 52.217-6, Option for Increased Quantity, in solicitations and contracts, other than those for services, when the inclusion of an option is appropriate (see 17.200 and 17.202) and the option quantity is expressed as a percentage of the basic contract quantity or as an additional quantity of a specific line item.

(e) Insert a clause substantially the same as the clause at 52.217-7, Option for Increased Quantity—Separately Priced Line Item, in solicitations and contracts, other than those for services, when the inclusion of an option is appropriate (see 17.200 and 17.202) and the option quantity is identified as a separately priced line item having the same nomenclature as a corresponding basic contract line item.

(f) Insert a clause substantially the same as the clause at 52.217-8, Option to Extend Services, in solicitations and contracts for services when the inclusion of an option is appropriate. (See 17.200, 17.202, and 37.111.)

(g) Insert a clause substantially the same as the clause at 52.217-9, Option to Extend the Term of the Contract, in solicitations and contracts when the inclusion of an option is appropriate (see 17.200 and 17.202) and it is necessary to include in the contract any or all of the following:

(1) A requirement that the Government must give the contractor a preliminary written notice of its intent to extend the contract.

(2) A statement that an extension of the contract includes an extension of the option.

(3) A specified limitation on the total duration of the contract.

# TAB I

**52.217-4 Evaluation of Options Exercised at Time of Contract Award.**

As prescribed in 17.208(b), insert a provision substantially the same as the following:

EVALUATION OF OPTIONS EXERCISED AT TIME OF CONTRACT AWARD (JUNE 1988)

Except when it is determined in accordance with FAR 17.206(b) not to be in the Government's best interests, the Government will evaluate the total price for the basic requirement together with any option(s) exercised at the time of award.

(End of provision)

**52.217-5 Evaluation of Options.**

As prescribed in 17.208(c), insert a provision substantially the same as the following:

EVALUATION OF OPTIONS (JULY 1990)

Except when it is determined in accordance with FAR 17.206(b) not to be in the Government's best interests, the Government will evaluate offers for award purposes by adding the total price for all options to the total price for the basic requirement. Evaluation of options will not obligate the Government to exercise the option(s).

(End of provision)

**52.217-6 Option for Increased Quantity.**

As prescribed in 17.208(d), insert a clause substantially the same as the following:

OPTION FOR INCREASED QUANTITY (MAR 1989)

The Government may increase the quantity of supplies called for in the Schedule at the unit price specified. The Contracting Officer may exercise the option by written notice to the Contractor within [*insert in the clause the period of time in which the Contracting Officer has to exercise the option*]. Delivery of the added items shall continue at the same rate as the like items called for under the contract, unless the parties otherwise agree.

(End of clause)

**52.217-7 Option for Increased Quantity—Separately Priced Line Item.**

As prescribed in 17.208(e), insert a clause substantially the same as the following:

OPTION FOR INCREASED QUANTITY—SEPARATELY PRICED LINE ITEM (MAR 1989)

The Government may require the delivery of the numbered line item, identified in the Schedule as an option item, in the quantity and at the price stated in the Schedule. The Contracting Officer may exercise the option by written notice to the Contractor within [*insert in the clause the period of time in which the Contracting Officer has to exercise the option*]. Delivery of added items shall continue at the same rate that like items are called for under the contract, unless the parties otherwise agree.

(End of clause)

**52.217-8 Option to Extend Services.**

As prescribed in 17.208(f), insert a clause substantially the same as the following:

OPTION TO EXTEND SERVICES (NOV 1999)

The Government may require continued performance of any services within the limits and at the rates specified in the contract. These rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor. The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months. The Contracting Officer may exercise the option by written notice to the Contractor within _____ [*insert the period of time within which the Contracting Officer may exercise the option*].

(End of clause)

**52.217-9 Option to Extend the Term of the Contract.**

As prescribed in 17.208(g), insert a clause substantially the same as the following:

OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 2000)

(a) The Government may extend the term of this contract by written notice to the Contractor within _____ [*insert the period of time within which the Contracting Officer may exercise the option*]; provided that the Government gives the Contractor a preliminary written notice of its intent to extend at least _____ days [*60 days unless a different number of days is inserted*] before the contract expires. The preliminary notice does not commit the Government to an extension.

(b) If the Government exercises this option, the extended contract shall be considered to include this option clause.

(c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed __________ (months) (years).

(End of clause)

**52.218 [Reserved]**

**52.219-1 Small Business Program Representations.**

As prescribed in 19.308(a)(1), insert the following provision:

# TAB J

value as determined by the Contracting Officer, of property that is destroyed, lost, stolen, or damaged so as to become undeliverable to the Government or to a buyer.

(i) The cost principles and procedures of Part 31 of the Federal Acquisition Regulation, in effect on the date of this contract, shall govern all costs claimed, agreed to, or determined under this clause.

(j) The Contractor shall have the right of appeal, under the Disputes clause, from any determination made by the Contracting Officer under paragraph (e), (g), or (l) of this clause, except that if the Contractor failed to submit the termination settlement proposal within the time provided in paragraph (e) or (l) and failed to request a time extension, there is no right of appeal. If the Contracting Officer has made a determination of the amount due under paragraph (e), (g), or (l) of this clause, the Government shall pay the Contractor—

(1) The amount determined by the Contracting Officer, if there is no right of appeal or if no timely appeal has been taken; or

(2) The amount finally determined on an appeal.

(k) In arriving at the amount due the Contractor under this clause, there shall be deducted—

(1) All unliquidated advance or other payments to the Contractor under the terminated portion of this contract;

(2) Any claim which the Government has against the Contractor under this contract; and

(3) The agreed price for, or the proceeds of sale of, materials, supplies, or other things acquired by the Contractor or sold under the provisions of this clause and not recovered by or credited to the Government.

(l) If the termination is partial, the Contractor may file a proposal with the Contracting Officer for an equitable adjustment of the price(s) of the continued portion of the contract. The Contracting Officer shall make any equitable adjustment agreed upon. Any proposal by the Contractor for an equitable adjustment under this clause shall be requested within 90 days from the effective date of termination unless extended in writing by the Contracting Officer.

(m)(1) The Government may, under the terms and conditions it prescribes, make partial payments and payments against cost incurred by the Contractor for the terminated portion of the contract, if the Contracting Officer believes the total of these payments will not exceed the amount to which the Contractor will be entitled.

(2) If the total payments exceed the amount finally determined to be due, the Contractor shall repay the excess to the Government upon demand, together with interest computed at the rate established by the Secretary of the Treasury under 50 U.S.C. App 1215(b)(2). Interest shall be computed for the period from the date the excess payment is received by the Contractor to the date the excess is repaid. Interest shall not be charged on any excess payment due to a reduction in the Contractor's termination settlement proposal because of retention or other disposition of termination inventory until 10 days after the date of the retention or disposition, or a later date determined by the Contracting Officer because of the circumstances.

(n) Unless otherwise provided in this contract or by statute, the Contractor shall maintain all records and documents relating to the terminated portion of this contract for 3 years after final settlement. This includes all books and other evidence bearing on the Contractor's costs and expenses under this contract. The Contractor shall make these records and documents available to the Government, at the Contractor's office, at all reasonable times, without any direct charge. If approved by the Contracting Officer, photographs, microphotographs, or other authentic reproductions may be maintained instead of original records and documents.

(End of clause)

*Alternate I (Sept 1996).* If the contract is with an agency of the U.S. Government or with State, local, or foreign governments or their agencies, and if the contracting officer determines that the requirement to pay interest on excess partial payments is inappropriate, delete paragraph (m)(2) from the basic clause.

### 52.249-4 Termination for Convenience of the Government (Services) (Short Form).

As prescribed in 49.502(c), insert the following clause in solicitations and contracts for services, regardless of value, when a fixed-price contract is contemplated and the Contracting Officer determines that because of the kind of services required, the successful offeror will not incur substantial charges in preparation for and in carrying out the contract, and would, if terminated for the convenience of the Government, limit termination settlement charges to services rendered before the date of termination:

TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (SERVICES) (SHORT FORM) (APR 1984)

The Contracting Officer, by written notice, may terminate this contract, in whole or in part, when it is in the Government's interest. If this contract is terminated, the Government shall be liable only for payment under the payment provisions of this contract for services rendered before the effective date of termination.

(End of clause)

### 52.249-5 Termination for Convenience of the Government (Educational and Other Nonprofit Institutions).

As prescribed in 49.502(d), insert the following clause: