# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## (Bid Protest)

| | | |
|---|---|---|
| THE RAVENS GROUP, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | CFC No. 07-243 |
| | ) | Judge Baskir |
| THE UNITED STATES *et al.* | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD [PUBLIC VERSION]

**PLAINTIFF THE RAVENS GROUP** hereby moves to supplement the Administrative Record in the above-styled case. The Ravens Group moves to supplement the Record with the following documents as follows:

1. Sworn Statement by Joe N. Ballard, President and CEO of The Ravens Group, dated May 22, 2007, attached hereto as Exhibit 1.

[redacted]

2. Letter from Joe N. Ballard to Guy Torres, the Contracting Officer, Defense Intelligence Agency, dated May 5, 2006, attached hereto as Exhibit 2.

3. Letter (with enclosure) from Joe N. Ballard to Mark Bogart, Chief of Acquisitions, Defense Intelligence Agency, dated June 14, 2006, attached hereto as Exhibit 3.

The above-referenced documents are relevant to allegations in the Complaint and Defendant's and Intervenor's Motions to Dismiss and Motions for Judgment on the Administrative Record.

Counsel for Defendant and Counsel for Intervenor were contacted and provided copies of the above documents. Neither has yet to determine whether he will oppose the Motion.

For the above reasons, The Ravens Group respectfully requests that the attached three (3) documents be added to the Record.

Respectfully submitted,

/s/ Daryle A. Jordan

DATED: May 25, 2007

By: ____________________

Daryle A. Jordan
Patrick Henry LLP
7619 Little River Turnpike
Suite 340
Annandale, Virginia 22003
703.256.7754
703.256.7883 (Facsimile)
Counsel for Plaintiff

# CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of May 2007, I caused a copy of the foregoing Motion to Supplement the Administrative Record and the attached Exhibits to be filed electronically. I understand that notice will be sent by the Court's electronic filing system to the following individuals through the Court's system:

Counsel for the United States, Roger Hipp, Esq., United States Department of Justice, Civil Division, Commercial Litigation Branch, 1100 L Street, N.W., Room 12072, Washington, DC 20530, Telephone No. (202) 305-3091 and Facsimile No. (202) 514-8640

And

Counsel for Intervenor Rowe Contracting Services, Inc., Kenneth B. Weckstein, Epstein Becker & Green, P.C., 1227 25th Street, N.W. Suite 700, Washington, D.C. 20037-1156, Telephone No. (202) 861-1860 and Facsimile No. (202) 861-3560.

/s/ Daryle A. Jordan

Daryle A. Jordan

# EXHIBIT 1

[redacted]

SWORN DECLARATION

0 F

Joe N. Ballard

I, Joe N. Ballard, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a witness over the age of twenty-one (21) and have personal knowledge of the facts stated herein.

2. This sworn declaration is being filed in connection with The Ravens Group, Inc.'s Complaint and Protest currently pending at the U.S. Court of Federal Claims, styled The Ravens Group, Inc. v United States, Case No. 07-243C, protesting the Defense Intelligence Agency's ("DIA") December 19, 2006, award of a contract to Rowe Contracting Services, Inc. ("Rowe") under DIA Solicitation No. HHM402-05-R-0017.

3. I am the President and Chief Executive Officer of The Ravens Group, Inc.

4. I have reviewed and am familiar with Rowe's June 14, 2006, letter (through its counsel), and its enclosure (a letter from DIA to Rowe, dated June 27, 2005). The June 27, 2005, letter from DIA to Rowe disclosed the total price of the contract awarded to The Ravens Group by DIA on or about June 28, 2005.

5. DIA did not advise me or anyone at The Ravens Group of its release of The Ravens Group's contract price in June 2005 prior to or after it awarded the Contract to The Ravens Group. DIA has never advised The Ravens Group of the release of this information. The Ravens Group's first and only notice of DIA's release of our Contract price was Rowe's June 14, 2006, letter enclosing the June 27, 2005, letter from DIA.

6. Following the original award of the Contract to The Ravens Group on or about June 28, 2005, NOSLOT filed a bid protest. In response to NOSLOT's protest, DIA agreed to take corrective action and subsequently asked The Ravens Group, Rowe, and other offerors to submit new best and final offers. DIA never, however, advised The Ravens Group of the release of our Contract price to the other offerors.

7. Because DIA never informed The Ravens Group or me of the release of our Contract price, we were not aware that the other offerors possessed our Contract price at the time DIA requested the revised proposals. The fact that all of the other offerors possessed The Ravens Group's Contract price without our knowledge, placed The Ravens Group at a substantial competitive disadvantage when we prepared and submitted our revised proposals. If we had known of DIA's release of The Ravens Group's Contract price to the other offerors before we submitted our revised proposal on or about November 29, 2005, we would have revised our

EXHIBIT
1

price proposal to be more competitive.

8. I also learned from Rowe via a letter dated January 18, 2007, that DIA through its counsel notified Rowe and another contractor, Olympus Building Services, Inc. of its intent to take corrective action in October 24, 2006. DIA did not notify The Ravens Group of its intent even though The Ravens Group was one of the proposals in the competitive range that DIA was continuing to review for contract award. Specifically, I was not aware of DIA's continued corrective action when DIA executed Option Year II of the Contract in November 2006.

In accordance with 28 U.S.C. § 1746, I solemnly swear affirm and declare under the penalties of perjury and upon personal knowledge that the foregoing is true and correct.

May 22, 2007
Date

Joe N. Ballard

# EXHIBIT 2

[redacted]

The Ravens GROUP INC.
*We Can Do That!*

May 5, 2006

**Via U.S. Mail and Facismile**
Mr. Guy A. Torres
Contracting Officer
Virginia Contracting Activity
Bolling Air Force Base
200 MacDill Boulevard—Building 6000
Washington, D.C. 20340-5100

Re: **DIA Corrective Action Pursuant to GAO Protest No. B-296741.3**

Dear Mr. Torres:

This responds to your letter, dated May 4, 2006, and requests clarification of the corrective action you agreed to take in response to our above-referenced protest.

Your letter states that there will be a "new source selection and new source selection decisio but that there will not be a new evaluation. How can there be a new source selection decision witho a new evaluation? In addition, your letter states that the "new source selection will be based on the current evaluation of all offerors' final proposals." We interpret this provision to mean that The Ravens Group would be allowed to revise our proposal for this requirement. In our April 6, 2006, Protest letter, our April 20th supplement to that protest, and our April 21st letter to you, we notified y of compelling and credible evidence we had obtained, including sworn statements, that Rowe Contracting Services, Inc. ("Rowe") had paid for and obtained confidential and proprietary informat regarding our proposal. Thus, it is essential that you allow us, at a minimum, to revise our proposal. To deny us an opportunity to revise our proposal would place this company at a severe competitive disadvantage in the "new source selection" process, and render the "corrective action" you promisec take meaningless. It is undisputable that the integrity of our proposal has been compromised by Rowe's improper, unethical, and potentially unlawful business practices. **Your refusal to honor o valid request to revise our proposal, would leave us no choice but to file another protest to protect our rights.**

Relatedly, we have not heard from you regarding our request for you to disqualify Rowe froi further participation in this procurement action based on its unethical and unfair business practices. We raised serious concerns regarding Rowe's business practices as well as its potential breach of security. We are surprised and concerned that the Defense Intelligence Agency has not acted on our request or contacted us to investigate these serious charges.

We request your response to our request for clarification by close of business Wednesday, M 10, 2006, so we will have adequate time to determine whether we will have to file another protest.

Sincerely,

Joe N. Ballard
President
The Ravens Group, Inc.

EXHIBIT 2

# EXHIBIT 3

[redacted]

THE RAVENS GROUP INC.
9901 Business Parkway Suite H
Lanham, Maryland 20706

June 14, 2006

<u>Via U.S. Mail and Facismile</u>
Mr. Mark Bogart
Chief of Acquisition
Defense Intelligence Agency
The Pentagon—AE-Building 6000
Washington, D.C. 20340

**Re: Request For Assistance Regarding Contract No. HHM40206C0026**

Dear Mr. Bogart:

The Ravens Group, Inc., a Service-Disabled, Veteran Owned Small Business, is the incumbent contractor for Contract No. HHM40206C0026 (the "Contract"), a Defense Intelligence Agency ("DIA") custodial/janitorial contract. We are writing to request your immediate intervention and assistance regarding the Contracting Officer for this procurement, Guy Torres' refusal to address serious concerns we have raised regarding the administration of our Contract. We have attempted to address our concerns with Mr. Torres; however, he has failed to respond to our numerous communications. Thus, as stated below, and detailed in the enclosed "Summary of Concerns," your immediate intervention is required. Among other concerns, Mr. Torres:

1. allowed Rowe Contracting Services, Inc. ("Rowe"), a competitor, unsupervised physical access to The Ravens Group's work area, and its confidential and proprietary information;
2. allowed Rowe access to private information regarding our employees;
3. allowed Rowe to tamper with our security clearance;
4. failed to investigate well-documented evidence of unfair, unethical, and potentially unlawful business practices of Rowe directly related to our performance of the Contract;
5. allowed other contracting officials under his supervision to make false, unverified, and damaging statements to third parties regarding our performance; and
6. without justification, failed to pay The Ravens Group for services performed in April and May 2006.

Mr. Torres' failure to properly administer the Contract and his refusal to respond to our legitimate concerns violate well-established government-wide policies in support of small businesses, including President Bush's Executive Order 13170, which expressly requires all Federal agencies to assist Service-Disabled Veteran Owned Small businesses.

We thank you in advance for your prompt attention to this matter of critical importance to this small business.

Sincerely,

Joe N. Ballard, LTG (ret), US Army, PE
President and CEO

Enclosure

EXHIBIT 3

THE RAVENS GROUP INC.
9901 Business Parkway Suite H
Lanham, Maryland 20706

## SUMMARY OF CONCERNS

### I. BACKGROUND

#### A. Original Contract Award to The Ravens Group

DIA issued RFP No. HHM402-05-R-0017 on April 14, 2005. The RFP solicited proposals to perform janitorial/custodial services at DIA's facility located on Bolling Air Force Base. The Ravens Group was awarded the "Contract" on June 28, 2005, and began performance of the Contract on or about July 1, 2005.

#### B. NOSLOT Protest

On August 30, 2005, DIA notified The Ravens Group, that on June 29, 2005, one day following award of the Contract to The Ravens Group, NOSLOT ("NOSLOT Protest"), one of the offerors, had protested the award of the Contract to The Ravens Group. The protest was ultimately dismissed based on DIA's agreement to take corrective action.[1]

On March 23, 2006, nine (9) months following the original contract award to The Ravens Group, DIA notified The Ravens Group that it had completed the corrective action, and had decided to revoke award to The Ravens Group and re-award the procurement to Rowe.

#### C. The Ravens Group's First Protest

On March 27, 2006, The Ravens Group filed a protest in response to DIA's March 23rd notice that it was revoking the Contract award to The Ravens Group. GAO dismissed this protest April 6, 2006, based on DIA's agreement to take corrective action.

Between March 27, 2006, and April 3, 2006, the following occurred: 1) DIA allowed Scott Rowe, President of Rowe and his representatives access to The Ravens Group's offices and personnel located at DIA's secured facility; 2) several Ravens Group's managers working at the DIA facility admitted that they had accepted significant cash payments from Rowe to provide Rowe with information regarding The Ravens Group; 3) Mr. Rowe admitted that he had previously obtained confidential and proprietary information regarding The Ravens Group, which Rowe used to revise its proposal in response to the corrective action DIA took pursuant to the NOSLOT Protest; and 4) Rowe accessed private information regarding Ravens Group employees that it used to tamper with The Ravens Group's security clearance files located on the Joint Personnel Adjudication System ("JPAS").

---

[1] The corrective action DIA took included re-evaluation of the proposals, including the opportunity for offerors to submit revised proposals.

## II. THE CONTRACTING OFFICER'S REFUSAL TO ADDRESS OUR CONCERNS

### A. Additional Protests Filed by The Ravens Group

Based on the above concerns and others that subsequently learned about, we filed two (2) more protest actions, and asked the General Accountability Office ("GAO") to disqualify Rowe from further participation in this procurement.

In a bid protest letter, dated April 6, 2006, as supplemented on April 20, 2006, we notified Mr. Torres about Rowe's serious misconduct discussed above, including Rowe's unethical and potentially unlawful acquisition and use of confidential information regarding The Ravens Group, and Rowe's unauthorized acquisition of private information concerning Ravens Group's personnel and its use of this information to tamper with the security clearances of our employees—potentially a serious security breach.

Thus, the April 6th and 20th letters contained credible evidence of misconduct and a breach of security that required DIA's investigation and review independent of the protest proceedings.

Notwithstanding the serious nature of the concerns, Mr. Torres **did not** investigate our claims; nor did he report the alleged security breach to the appropriate DIA security official for his/her review or investigation.

### B. Additional Letters to the Contracting Officer

In a May 5, 2006, letter, we again asked Mr. Torres to investigate Rowe's improper, unethical, and potentially unlawful business practices and the undisputed evidence that Rowe had tampered with our employees' security clearances. Mr. Torres **has not** responded to our May 5th letter.

In an earlier letter dated March 29, 2006, we advised Mr. Torres of our receipt of information that Mary Hennigan, the COTR, had provided inaccurate and damaging assessments of The Ravens Group's performance to other agencies with which The Ravens Group had submitted proposals. Ms. Hennigan's negative and untrue assessment of our performance was particularly troubling because DIA officials, including Ms. Hennigan had advised us that our work was outstanding. Indeed, we have not been notified of any deficiency with our work during the entire period of performance. In our March 29th letter, we asked Mr. Torres to intervene to halt the dissemination of unverified and damaging information regarding our performance. Mr. Torres **never** responded to this letter.

## III. DIA'S REFUSAL TO PAY THE RAVENS GROUP FOR WORK PERFORMED AND ACCEPTED BY DIA

Recently, we have made numerous attempts to contact Mr. Torres regarding DIA's failure to process our invoices and pay us in a timely manner. In particular, DIA has not paid The Ravens Group for work we performed and that DIA accepted in April and May 2006. The amount overdue exceeds $1.2 million, and has severely damaged the cash flow of this small business.

Failure to pay the last two invoices submitted by The Ravens Group compels me to ask the following questions. Is this failure to pay the invoices retribution or punishment to financially harm The Ravens Group due to the current protest?

## IV. CONCLUSION

We relied upon DIA to protect our confidential and proprietary information within its control. We relied upon DIA to be a fair and impartial representative of the Government. DIA, however, allowed our competitor to enter our work space on DIA's facility, which access our competitor used to bribe our personnel and obtain our confidential and proprietary information. The Contracting Officer has ignored the well-documented and credible evidence of the unethical and/or unlawful acquisition of our confidential information and the use of that information to competitively disadvantage The Ravens Group.

The Contracting Officer also has ignored our request for payment and our request that contracting officials under his supervision refrain from distributing false and damaging information regarding our performance.

Thus, given the serious nature of our concerns and the Contracting Officer's apparent refusal to communicate with us, your immediate intervention and assistance is critical.