# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## (Bid Protest)

| | | |
|---|---|---|
| THE RAVENS GROUP, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | CFC No. 07-243<br>Judge Baskir |
| THE UNITED STATES et al. | ) | |
| Defendant. | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S AND INTERVENOR'S MOTIONS TO DISMISS AND FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD, AND PLAINTIFF'S CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD [PUBLIC VERSION]

Daryle A. Jordan
Patrick Henry LLP
7619 Little River Turnpike
Suite 340
Annandale, Virginia 22003
703.256.7754
703.256.7883 (Facsimile)
djordan@patrickhenry.net
Counsel for Plaintiff

DATED: May 25, 2007

[redacted]

# TABLE OF CONTENTS

Table of Authorities......................................................*iii.*

Statement of the Issues......................................................2

I. Introduction......................................................2

II. Statement of the Case......................................................3

II.A Motion to Dismiss......................................................3

II.B Motion for Judgment on the Administrative Record......................................................4

III. DIA ABUSED ITS DISCRETION BY NOT INVESTIGATING THE RAVENS GROUP CLAIM THAT ROWE ENGAGED IN UNFAIR BUSINESS PRACTICES..........................5

III. A DIA had a Duty to Investigate Serious Documented Allegations of Unfair Business Practices Asserted by The Ravens Group......................................................5

III.B DIA Abused its Discretion When it Failed to Investigate The Raven's Group's Claims of Unfair Business Practices......................................................9

IV. DIA'S AWARD DECISION TO ROWE WAS IRRATIONAL AND IS NOT SUPPORTED BY THE RECORD..........................14

IV.A The Ravens Group's Technical Proposal was Superior to Rowe's......................15

IV.B DIA Irrationally Raised Rowe's Past Performance Rating..............................17

IV.C DIA's Unreasonable Upgrade of Rowe's Technical Proposal and Past Performance

Rating Resulted in an Improper Cost/Price-
Technical Evaluation....................................18

IV.D DIA's December 2006 Award to Rowe
was Unreasonable........................................20

IV.E DIA's Original Contract Award to The
Ravens Group was Proper...........................21

V. DIA BREACHED ITS DUTY OF GOOD FAITH AND
FAIR DEALING..............................................................23

V.A DIA Failed to Notify The Ravens Group
Of the Release of Its Contract Price
to the Public..............................................25

V.B DIA's Contract Award to Rowe in December 2006
also Constituted Bad Faith...........................26

VI. DIA FAILED TO PROVIDE IMPORTANT
NOTICES.....................................................................26

VI.A DIA's Failure to Notify The Ravens Group
of NOSLOT's Protest..................................26

VI.B DIA Failed to Notify The Ravens Group
of the Public Release of its Contract
Price.......................................................27

VI.C DIA also Failed to Notify The Ravens Group
of Corrective Action.......................................28

VII. NOSLOT WAS NOT AN INTERESTED PARTY
ELIGBLE TO PROTEST THE CONTRACT AWARD TO
THE RAVENS GROUP.....................................................28

VIII. PLAINTIFF IS ENTITLED TO JUDGMENT
UNDER THE TOTALITY OF THE CIRCUMSTANCES,................30

IX. CONCLUSION.............................................................31

# TABLE OF AUTHORITIES

## CASES

Albert L. De Graffenried v. United States,
29 Fed. Cl. 384, 392 (Oct. 1993)....................................30

Am-Pro Protective Agency, Inc. v. United States,
281 F.3d 1234, 1239 (Fed. Cir. 2002)..............................24

Camp v. Pitt, 411 U.S. 138, 142-43 (1973).................................18

Colon v. United States, 35 Fed. Cl. 337 (1996).............................3

Compliance Corporation v. United States,
22 Cl. Ct. (Dec. 12, 1990)........................................5-9,14

Computer Science Corp. v. United States,
51 Fed. Cl. 297, 308..............................................17-18

CW Government Travel, Inc. v. United States,
53 Fed. Cl. 580, 590 (2002).........................................14

Essex Electro Engineers, Inc. v. United states,
757 F.2d 247, 252-54 (Fed.Cir.1985)...............................30

Gajic-Stajic v. United States, 36 Fed. Cl. 422 (1996).....................3

Gargoyles, Inc. and Pro-Tech, Inc. v. United States,
45 Fed. Cl. 139, 146, 147 (Oct. 1999)..............................30

Juda v. United States, 6 Cl Ct 441 (1984)...................................4

Moden v. United States, 404 F.3d 1335 (Fed. Cir. 2005).................4

Morris v. United States, 33 Fed. Cl. 733, 743 (1995).....................4

NKF Engineering, Inc. v. United States,
9 Cl. Ct. 585, 805 F.2d 372, 374 (Fed. Cir. 1986)..............5-9

Precision Pine & Timber, inc. v. United States,
62 Fed. Cl. 635, 652.........................................26

R&W Flammann GmbH v. United States,
339 F.3d 1320, 1324.........................................5

SECURENET Co. v. United States,
72 Fed. Cl. 800, 806 (2006).........................................4

Tech Systems, Inc. v. United States,
50 Fed. Cl. 216, 222 (2001).........................................4

TECOM, Inc. v. United States,
66 Fed. Cl. 736 (Jun. 27, 2005).................................23-26

TravelService v. United States,
49 Fed. Cl. 431, 438 (2001).........................................4

STAUTUES

31 U.S.C. § 3553 (a) .........................................28

31 U.S.C. § 3551(2) .........................................28

FEDERAL ACQUISITION REGULATION ("FAR")

§ 1.602-2.........................................5,14

§ 1.602-2(b).........................................5,14

§ 15.101-1.........................................19

§33.104.........................................26

CODE OF FEDERAL REGULATIONS

48 C.F.R § 1.602-2 (2000).........................................5

## GAO OPINIONS

Admiral Towing and Barge Co., B-29284, B-291849.2, 2003 Comp. Gen. Proc. Dec. ¶ 164 (March 6, 2003)..........................29

Allied Trailer Sales & Rentals, B-224816.2, 86-2 CPD¶522 (Nov. 5, 1986)..............................................................22

Bendix Oceanics, Inc., B-252235.3, 92-2 CPD ¶ 54.....................19

Gemmo Impianti Spa, B-290427, 2002 CPD ¶ 146.....................19

Government Associates, B-240682.5, 93-2CPD¶215 (Oct. 12, 1993).............................................................22

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(Bid Protest)**

| | | |
|---|---|---|
| THE RAVENS GROUP, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | CFC No. 07-243<br>Judge Baskir |
| THE UNITED STATES *et al.* | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S AND INTERVENOR'S MOTIONS TO DISMISS AND FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD, AND PLAINTIFF'S CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**
**[PUBLIC VERSION]**

**COMES NOW** Plaintiff, The Ravens Group, Inc. ("The Ravens Group"), by and through the undersigned counsel, pursuant to the Rules of the Court of Federal Claims, and files Plaintiff's Opposition to Defendant's and Intervenor Rowe Contracting Services, Inc.'s ("Rowe") Motions to Dismiss and For Judgment Upon the Administrative Record, and Plaintiff's Cross-Motion for Judgment Upon the Administrative Record. We ask the Court to deny Defendant's and Intervenor's Motions and enter judgment in favor of Plaintiff.

## STATEMENT OF THE ISSUES

- Whether DIA acted unreasonably when it failed to take any steps to verify the validity of The Ravens Group's Allegations that Rowe Engaged in Unfair Business Practices against The Ravens Group.

- Whether DIA acted Irrationally and Unreasonably in its Multiple Contract Awards of this Procurement.

- Whether DIA breached the duty of good faith.

- Whether DIA's failure to provide notices to The Ravens Group, prejudiced The Ravens Group.

- Whether NOSLOT was eligible to protest the contract award to The Ravens Group.

- Whether Plaintiff is entitled to judgment under the totality of the circumstances.

## I.

## INTRODUCTION

At the outset, we advise the Court that after review of the Complaint, and record, we hereby withdraw the contention in Counts I and V of the Complaint, that Rowe improperly obtained The Ravens Group's contract price.[1] In addition, the evidence and theory we rely upon in Counts I and V are essentially the same; accordingly, we will combine our discussions of these Counts.

## II.

## STATEMENT OF THE CASE

The case concerns the Defense Intelligence Agency's ("DIA") attempt over a period of almost two years to award a contract for janitorial services to be performed at DIA's facility located at Bolling Air Force Base.

After nearly two (2) years, four (4) contract awards to three (3) different contractors, fifteen (15) bid protests by four (4) different contractors, issuance of three (3) notices of corrective action, and DIA's three attempts to correct errors in its source selection process, this procurement action is still unresolved. The standards applicable to the motions are as follows:

### A. Motion to Dismiss

In considering Defendant's and Intervenor's motions to dismiss, the Court generally will accept the allegations in the Complaint as true, and draw all reasonable inferences in Plaintiff's favor. Colon v United States, 35 Fed. Cl. 337 (1996). If the facts reveal any possible basis on which nonmovant may prevail, the motion must be denied. Gajic-Stajic v. United States, 36 Fed. Cl. 422 (1996).

[1] Upon review of our file, we determined that Intervenor is correct in its assertion that it provided credible evidence to The Ravens Group on June 16, 2006, that DIA had provided it Plaintiff's contract price. Our suggestion in the

The issue is not whether plaintiff ultimately will prevail, but rather, whether plaintiff is entitled to offer evidence to support facts alleged in the complaint. Juda v United States, 6 Cl Ct 441 (1984). Subject matter jurisdiction "exists when a petitioner asserts a nonfrivolous claim." See Moden v. United States, 404 F.3d 1335, 1340 (Fed. Cir. 2005); see also Morris v. United States, 33 Fed. Cl. 733, 743 (1995) (if plaintiff alleges justiciable claim, court should assume jurisdiction and address the merits).

**B. Motion for Judgment on the Administrative Record**

Bid protest actions are generally considered upon cross-motions for judgment on the administrative record." TravelService v. United States, 49 Fed. Cl. 431, 438 (2001). In a review of the administrative record pursuant to a bid protest, the question is "given all the disputed and undisputed facts, [has] a protester . . . met its burden of proof that an award is arbitrary, capricious . . . or violates to prejudicial effect an applicable procurement regulation. Tech Systems, Inc. v. United States, 50 Fed. Cl. 216, 222 (2001). An agency decision will be set aside if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. SECURENET Co. v. United States, 72 Fed. Cl. 800, 806 (2006).

---

Complaint that Intervenor had improperly obtained that information was inadvertent.

## III.

## DIA ABUSED ITS DISCRETION BY NOT INVESTIGATING THE RAVENS GROUP'S CLAIM THAT ROWE ENGAGED IN UNFAIR BUSINESS PRACTICES

"Procurement officers **must act** to prevent even an appearance of impropriety in order to meet FAR requirements of 'safeguarding the interests of the United States in its contractual relationships,' 48 C.F.R. § 1.602-2 (2000), and ensuring that 'contractors receive impartial, fair, and equitable treatment,' *id.* § 1.602-2(b)(2000) (emphasis added)." See R&W Flammann GmbH v. United States, 339 F.3d 1320, 1324, *citing* NKF Engineering, Inc. v. United States, 9 Cl. Ct. 585, 805 F.2d 372, 374 (Fed. Cir. 1986). See also Federal Acquisition Regulation ("FAR") § 1.602-2 (contracting officers responsible for "safeguarding the interests of the United States in its contractual relationships"); FAR § 1.602-2(b) (contracting officers must "ensure that contractors receive impartial, fair, and equitable treatment").

### A. DIA Had a Duty to Investigate Serious Documented Allegations of Unfair Business Practices Asserted by The Ravens Group

Under the Court's holding and rationale in Compliance Corporation v. United States, 22 Cl. Ct. (Dec. 12, 1990) and NKF Engineering, *supra*. DIA had an affirmative duty to review the validity of the unfair business

practices asserted by The Ravens Group. DIA abused its discretion and acted when it failed to properly review The Ravens Group's claims.

In Compliance, plaintiff—Compliance's bid protest action arose from plaintiff's complaint seeking injunctive and declaratory relief relative to its disqualification from the bidding process pursuant to a solicitation for administrative support services conducted by the Navy. Id. at 194. The incumbent contractor had alleged that Compliance had attempted to obtain bid information from the incumbent's employees. Id.

The Navy contracting officer investigated the incumbent contractor's claim, and, as a result, disqualified Compliance. Id. at 196. The General Accounting Office ("GAO")[2] sustained the Navy contracting officer's decision to disqualify Compliance based on allegations of unfair business practices, and Compliance filed a protest in this Court. Id.

In its protest, Compliance alleged, among other things, that there was no express statute or regulation authorizing the government to disqualify a contractor based on allegations of unfair business tactics. Compliance also argued that a long line of GAO precedent prohibited this type of agency action. Id. Specifically, Compliance argued that "industrial espionage" involving two contractors without improper government action

---

[2] The agency is now referred to as the Government Accountability Office.

cannot be the sole basis for disqualifying a bidder to protect the integrity of the procurement process. Id. at 201.

The Court acknowledged the GAO precedent. Id. at 202. The Court stated, however, that it "views with disfavor the type of conduct alleged here." Moreover, declared the Court, "when one bidder **attempts** to obtain, **or does obtain**, vital bid information, such as the bid proposal, or employee data, from a competing bidder, **then the integrity of the procurement system is at risk** (emphasis added)." Id. at 203.

The Court stated that the contracting officer has a duty to protect the integrity of the procurement process and ensure that each bid is fairly and honestly considered, "which cannot be done unless each bid is fairly and honestly prepared." Id. Thus, observed the Court, "allowing bidders to underbid their competitors by means of 'industrial espionage' falls within the realm of conduct that impugns the integrity of the procurement, and which is the type of conduct **the contracting officer has a right and a duty to deter** (emphasis added)." Id.

The Court in Compliance next addressed Compliance's contention that the government lacked authority to disqualify it because it did not actually receive proprietary information belonging to the incumbent. Compliance argued that since it received no proprietary information, the

integrity of the procurement was not affected and the government had no authority to act. Id. at 203. The Court concluded that actual or attempted "'industrial espionage' . . . [is] . . . outside the realm of normal business practices." Id.

The plaintiff in NKF Engineering, likewise, initiated a protest challenging the contracting officer's decision to disqualify it based on the perception that it had an unfair competitive advantage. NKF Engineering at 587. In this case, the alleged "unfair competitive" advantage was the intended awardee's hiring of the contracting officer's technical representative who had assisted the contracting officer in the solicitation and award process. Id. at 588.

Like the Court in Compliance, the Court in NKF Engineering concluded that "the contracting officer's responsibility of 'safeguarding the interests of the United States in its contractual relationships,' is sufficient to support the exercise of authority that was asserted." Id.

Thus, under the holding and rationale of Compliance and NKF Engineering, "actual or attempted 'industrial espionage'" is beyond the scope of normal business practices, and the contracting officer has the authority and the duty to discourage, prevent, and address such practices,

including, where appropriate, ordering the disqualification of a suspected offending contractor. Compliance at 204; NKF Engineering at 593.

**B. DIA abused its Discretion When it Failed to Investigate The Ravens Group's Claims of Unfair Business Practices**

In this case, it is reasonableness and rationality of the contracting officer's failure to act that is at issue.

The Ravens Group first notified DIA in April 2006, of its concern that Rowe had engaged in unfair business practices to win award of the DIA janitorial contract in March 2006. The evidence upon which The Ravens Group relied for its contention that Rowe had engaged in unfair business practices, were the statements of Scott Rowe, Rowe's own President. In written and signed witness statements, two (2) senior Ravens Group officials, J. Jeff Robertson, The Ravens Group's Executive Vice President and Milton Grant, The Ravens Group's Facilities Management Director, described in-person discussions they had with Mr. Rowe, in which he detailed how he had obtained confidential and proprietary information about The Ravens Group that he used to enhance the best and final proposal Rowe submitted resulting in the March 2006 contract award to Rowe. See Complaint Exhibits A, C, and D; see also AR1056, AR1057, and AR1059.

In one of his written statements, Mr. Grant recalled that Ms. Hennigan had introduced him to Mr. Rowe. See Compliant, Exhibit A; AR1057. This is consistent with Mr. Rowe's recollection in his sworn statement. Mr. Rowe introduced himself as Rowe's president. He told Mr. Grant that Rowe had bid "about $3,000,000 overall less than" The Ravens Group. This is also consistent with the evidence, and Mr. Rowe's sworn statement. It is undisputed that Rowe's winning contract price in the amount of [redacted], was approximately $3,000,000 less than The Ravens Group's contract price in the amount of $[redacted]. Thus, Mr. Grant's recollection that Mr. Rowe admitted to having The Ravens Group's contract price is supported by the evidence and corroborated by Mr. Rowe's own sworn statement. What Mr. Grant and no one else at The Ravens Group knew at the time of Mr. Grant's discussion with Mr. Rowe, was that DIA had released The Ravens Group's contract price to Rowe.

Mr. Rowe also boasted that he had obtained information from Mrs. Verlene Cameron, the previous contractor's Project Manager. In Mr. Rowe's words, he had Ms. Cameron "in his pocket feeding him information." AR1057. Mr. Rowe also stated that "the only reason he did not win the original bid was because The Ravens Group submitted a work schedule and he did not." AR1056, AR1057. Since information regarding

The Ravens Group's technical proposal, including its staffing methodology, was confidential information and closely held by company officials, Mr. Rowe could only have obtained the information in two ways. Either he saw the proposal or talked to someone who had.

In Mr. Grant's account of his discussion with Mr. Rowe, it is clear that Mr. Rowe is discussing information that he obtained regarding The Ravens Group during the period between NOSLOT's protest of The Ravens Group's original contract award and Rowe's submission of a revised proposal, which lead to Rowe's contract award on March 22, 2006. In GAO's May 19, 2006, decision, however, GAO misinterpreted Mr. Grant's statements as alleging that Mr. Rowe obtained information regarding The Ravens Group's proposal following the parties' submission of revised proposals.

In his written witness statement, dated June 1, 2006, Jeff Robertson, Executive Vice President of The Ravens Group, and a witness and participant to the discussion with Mr. Rowe, clarified that Mr. Rowe's statement concerned information he received about The Ravens Group and used to enhance Rowe's proposal following DIA's attempted corrective action following the original award to The Ravens Group. GAO, however, declined to consider this clarification on the merit when it issued its July 14,

2006, decision in response to The Ravens Group's Request for Reconsideration. See AR241-42, fn 2.

According to Mr. Robertson, Mr. Rowe admitted to "having information [regarding Ravens Group's proposal] prior to the best and final offer being submitted by Rowe in response to DIA's request for a best and final offer following DIA's agreement to take corrective action based on NOSLOT's protest." See generally Complaint, Exhibits C and D; AR228; AR1056.

In addition to the above, Mr. Grant recalled in a separate statement, how, on April 3, 2006, Ernest Fields, a Ravens Group manager, had informed him [Mr. Grant] that Rowe had made cash payments to Mr. Fields and Wendy Scott, another Ravens Group manager for information regarding The Ravens Group's Contract. See Complaint, Exhibit B; AR1058. Subsequently, on April 14, 2006, Monica Belanger, another Ravens Group employee complained to Ravens Group officials that someone had tampered with her security record located on the Joint Personnel Adjudication System ("JPAS") and transferred her employment status from Ravens Group employee to Rowe employee. AR193. This both surprised and concerned Ms. Belanger because she had never

worked for Rowe and did not give anyone permission to change her employment status. Id.

An investigation into Ms. Belanger's concerns revealed that all of The Ravens Group's personnel had been transferred to Rowe without The Ravens Group's knowledge or approval. Id. Rowe did not use this information to enhance its proposal leading to its March 22, 2006, contract award; however, the actions discussed above do indicate Rowe's proclivity to engage in questionable business activities.

The Ravens Group also complained about alleged Rowe misconduct directly to DIA contracting officials, in two letters, dated May 5, 2006, to Guy Torres, the Contracting Officer, and dated June 14, 2006, to Mark Bogart, the Chief of Acquisition. In both instances The Ravens Group directed DIA's attention to this potential serious problem and asked for DIA to intervene. Notwithstanding The Ravens Group's plea for assistance, DIA did not respond to either communication.

In fact, there is no evidence in the record that DIA ever responded to The Ravens Group's concerns or that it took any action whatsoever to address The Ravens Group's allegations of unfair business practices.

Rowe's assertion in its Motion to Supplement the Administrative Record, that Mr. Rowe's April 28, 2006, statement was "part of the record

considered by Defendant [DIA] in making the decisions that are the subject of Plaintiff's Complaint" is not supported by the record. First, it is clear from Mr. Rowe's statement, that he provided the statement on his own volition and not in response to any investigation or request by DIA. The statement does not indicate anywhere that it was prepared pursuant to a request for information from DIA. Further, there is no evidence in the record that indicates what, if anything, DIA did with Rowe's sworn statement.

Given the serious charges raised by The Ravens Group, DIA had a duty to investigate. See Compliance, *supra*. at 203 (contracting officer has duty to protect integrity of procurement process); see also FAR § 1.602-2, FAR § 1.602-2(b). The Court 'must determine whether that decision was the result of a considered process rather than an arbitrary and capricious choice." CW Government Travel, Inc. v. United States, 53 Fed. Cl. 580, 590 (2002).

**IV.**

**DIA'S AWARD DECISION TO ROWE WAS IRRATIONAL AND IS NOT SUPPORTED BY THE RECORD**

DIA's contract award decision to Rowe was irrational and is not supported by the Administrative Record. As detailed below, the record shows: (1) that The Ravens Group's technical proposal was superior to

Rowe's; (2) DIA irrationally upgraded Rowe's past performance; (3) DIA's irrational upgrade of Rowe's technical proposal and past performance rating resulted in a defective cost/price-technical evaluation and prejudiced The Ravens Group; (4) DIA's December 2006 contract award to Rowe was unreasonable; and (5) DIA's original contract award to The Ravens Group was proper.

### A. The Ravens Group's Technical Proposal was Superior to Rowe's

The Record shows that The Ravens Group's technical proposal was clearly superior to Rowe's technical proposal. DIA's determination that Rowe's and The Ravens Group's technical proposals both deserved an "Excellent" rating was irrational and not supported or supportable in the record.

The report of the Technical Evaluation Panel ("TEP") states clearly that The Ravens Group presented the superior technical approach. See AR896 (TEP Evaluation of Best & Final Offers for the DIAC Custodial Contract). The TEP stated as follows regarding The Ravens Group technical proposal:

[redacted].

See AR898.

By contrast, the TEP [redacted] Rowe's technical proposal. TEP [redacted] Rowe's technical proposal was [redacted], stating: [redacted] The TEP next describes Rowe's technical proposal as a [redacted] The TEP stated in pertinent part: as follows:

[redacted]

(emphasis added) Id.

Thus, by contrast to its review of The Ravens Group's technical proposal, the TEP [redacted] of Rowe's technical proposal.

Accordingly, the TEP does not support the conclusion that Rowe's technical proposal was [redacted] as compared to The Ravens Group's

technical proposal, which also received an [redacted] rating but none of the [redacted] at Rowe's proposal. See AR895, AR898.

The Source Selection Decision ("SSD") also does not provide support for the proposition that DIA properly rated Rowe's and The Ravens Group's technical proposals as [redacted] The SSD ranks both technical proposals as [redacted] but provides no explanation for the comparable rankings in light of the multiple [redacted] of Rowe's technical proposal. See AR901 – AR917. See Computer Science Corp. v. United States, 51 Fed. Cl. 297, 308 (2001) (courts and GAO have held that an agency's source selection decision is invalid when the underlying evaluation record does not support it).

**B. DIA Unreasonably Raised Rowe's Past Performance Rating**

DIA also unreasonably raised Rowe's past performance rating to [redacted] to match the [redacted] rating earned by The Ravens Group. The SSD states that The Ravens Group earned its [redacted] past performance rating based on [redacted] past performance questionnaires, both of which rated The Ravens Group as [redacted] See AR913.

The SSD notes that [redacted] of the past performance questionnaires for Rowe rated Rowe as [redacted] but incorrectly stated that the other questionnaire for Rowe rated the company's past performance as

[redacted] AR913. In fact, the DEA Fort Worth Alliance Airport Facility rated Rowe as [redacted]. Of the nineteen (19) past performance evaluation factors rated, [redacted] AR872 - AR875.

Rowe's past performance questionnaires were clearly inferior to The Ravens Group, which received all [redacted] ratings—[redacted] ratings. The record does not reflect a rational basis for DIA to award Rowe the same [redacted] past performance rating achieved by The Ravens Group. See Computer Science Corp., *supra*.; see also Camp v. Pitts, 411 U.S. 138, 142-43 (1973) (proper focus of Court's scrutiny is the agency's articulated rationale for the decision, and the administrative record underlying it).

**C. DIA's Unreasonable [redacted] of Rowe's Technical Proposal and Past Performance Resulted in an Improper Cost/Price-Technical Evaluation**

DIA's irrational [redacted] of Rowe's technical proposal and past performance proposals to [redacted] resulted in an improper and invalid cost/price-technical evaluation.

The Solicitation provided for cost/price-technical analysis under FAR § 15.101-1, "to determine the best value to the Government." FAR § 15.101-1 states in pertinent part:

> (c) This process permits tradeoffs among cost or price and non-cost factors and allows the Government to accept other than the lowest priced proposal . . . the rationale for tradeoffs must be documented in the file in accordance with 15.406.

The Evaluation Plan of the Solicitation notified the offerors that DIA considered non-price factors to be more important than price, as follows:

> ( c) Relative weight. Non-price (Technical and Past Performance), when combined, are more important than price. Of the non-price factors, technical is more important than Past Performance. The importance of price in the evaluation for award will increase as the relative differences in non-price factors of offerors decreases

Solicitation, p. 40, AR475.

In this case, the cost/price-technical tradeoff analysis was severely flawed because it was based on DIA's unreasonable technical and past performance evaluation of Rowe. See Gemmo Impianti SpA, B-290427, 2002 CPD ¶ 146 (Navy's source selection decision was unreasonable because best value decision contained material defects); Bendix Oceanics, Inc., B-252235.3, 92-2 CPD ¶ 54 (improper evaluation of technical

proposals requires Navy to conduct new cost/technical tradeoff based on new technical evaluation).

D. <u>DIA's December 2006 Award to Rowe was Unreasonable</u>

Under the circumstances of this case, DIA's decision to award a contract to Rowe within 30 days of executing Option Year II of The Ravens Group's contract for identical services, was unreasonable.

By letter, dated October 18, 2006, DIA notified The Ravens Group of its decision to rescind its second convenience termination of The Ravens Group's Contract. The October 18th letter also stated "The current [Ravens Group] contract remains in effect until "further notice."

DIA's next communication with The Ravens Group regarding the Contract was in November 2006, when DIA executed "Option Period II (31 October 2006 through 30 October 2007)" of the Contract.

DIA knew or should have known at the time it executed Option Year II, that it was continuing to evaluate Rowe's and the other offerors' proposals and that it would be making another award decision within days of its execution of Option Year II to The Ravens Group. Notwithstanding its superior knowledge, however, DIA did not advise The Ravens Group of its continued evaluation of other offerors or of its intent to make a contract

award (and potentially terminate for convenience The Ravens Group's Contract) within a few days of the execution of Option Year II.

DIA's failure to provide The Ravens Group any notice of its intended award of the contract in December was particularly unreasonable given the fact of DIA's notices to Rowe (see October 24, 2006, letter and enclosure, AR373 – AR3750, and Olympus (see October 25, 2006, letter and enclosure, AR414 – AR416). DIA notified Rowe and Olympus, but not The Ravens Group of its continued review and evaluation of proposals. Under these circumstances, DIA's actions were unreasonable.

At the time DIA awarded Option Year II to The Ravens Group, it was not under any pressure or compulsion to do so. Thus, the clear indication to The Ravens Group upon which it reasonably relied was that the execution of Option Year II was DIA's final award decision.

**E. DIA's Original Contract Award to The Ravens Group was Proper**

Under some circumstances, it is appropriate to review an agency's actions in connection with its decision to terminate a contract for convenience. Where, as here, the "contracting agency's action [to terminate a contract for convenience] is based upon the determination that the contract was improperly awarded, the Government Accountability Office has held that it would review the validity of the procedures leading to

the award to the terminated contractor." See Government Associates, B-240682.5, 93-2 CPD ¶ 215 (Oct. 12, 1993). It is not the termination for convenience itself that is challenged, but rather, whether the agency made a rationale and reasonable decision in awarding the contract in the first place.

In cases where GAO determines that the initial award was improper, GAO must make a further finding regarding "whether the corrective action taken is sufficient to protect the integrity of the competitive procurement system." See Allied Trailer Sales & Rentals, B-224816.2, 86-2 CPD ¶ 522 (Nov. 5, 1986).

On June 28, 2005, DIA awarded the Contract to The Ravens Group on the basis that award to The Ravens Group represented the "best value" to the government. There is no evidence in the Record of any determination that the award to The Ravens Group was defective. Further, even if there were information in the Record demonstrating that the original award to The Ravens Group was flawed, the corrective action DIA has taken has been totally insufficient to protest the integrity of the procurement system.

## V.

## DIA BREACH ITS DUTY OF GOOD FAITH AND FAIR DEALING

"When a government official acts under a duty to employ discretion, granted formally by law, regulation, or contract, and a lack of good faith is alleged that does not sink to the level of fraud or quasi-criminal wrongdoing, clear and convincing evidence is not needed to rebut the presumption. Instead, this **may be inferred from a lack of substantial evidence, gross error, or the like** (emphasis added)." TECOM, Inc. v. United States, 66 Fed. Cl. 736,769 (2005). DIA has committed gross errors in its handling of this procurement action that individually and collectively arise to the level of bad faith.

In TECOM, the contractor sued the Air Force for breach of a term of the contract requiring additional compensation to perform work deferred by an out-going contractor. Id. The plaintiff alleged a "breach of the government's duty of good faith." Id. at 757. In response, the government argued that the "presumptions of regularity and good faith conduct apply here, raising the plaintiff's evidentiary burden to clear and convincing proof of a breach of these duties." Id.

The Court in TECOM discussed the presumption of good faith on the part of government officials and the reviewed the history of the

presumption. It noted that the Supreme Court has been less willing to presume good faith on the part of government actors. See TECOM at 761.

The Court also discussed the origin of the "irrefragable" proof standard upon which Intervenor relies in its brief. The Court changed this standard to "clear and convincing" in its decision in AM-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239 (Fed. Cir. 2002). The Court also stated that in Am-Pro, the "Circuit held that the 'well-nigh irrefragable' or 'clear evidence to the contrary' standard meant 'clear and convincing proof' when the presumption is invoked 'in the situation where a government official allegedly engaged in fraud or in some other quasi-criminal wrongdoing."

The Court concluded that:

> When a government official acts under a duty to employ discretion, . . . clear and convincing evidence is not needed to rebut the presumption. Instead, this **may be inferred from a lack of substantial evidence, gross error, or the like**. And when the government actions . . . alleged are . . . . actions that might be taken by a party to a contract, **the presumption of good faith has no application** (emphasis added).

TECOM at 769.

Thus, "well-nigh irrefragable proof" is not required to rebut the presumption of good faith on the part of government officials. Under the

rationale of TECOM, DIA's substantial gross errors may be deemed as bad faith.

## A. DIA Failed to Notify The Ravens Group of the Release of Its Contract Price to the Public

DIA provided all of the offerors in the competitive range with The Ravens Group's Contract price following the original award to The Ravens Group in June 2005; however, DIA never notified The Ravens Group of its release of The Ravens Group's contract price.

The email and Contract Modification 0005, DIA provided to The Ravens Group in August 2005, after DIA agreed to take corrective action, did not alert The Ravens Group that DIA would re-evaluate price proposals.

This omission was extremely prejudicial to The Ravens Group because it allowed the other offerors to reduce their price proposals with full knowledge of The Ravens Group's contract price. The Ravens Group did not possess the other offerors prices and did not know that they possessed its contract price.

As we know, price became the determining factor in the award of this procurement. Thus, The Ravens Group was at a severe competitive disadvantage vis-à-vis the other offerors when it submitted its revised proposal in response to the corrective action taken in connection with the

protest of the original award to The Ravens Group. DIA's failure to provide this critical information was in bad faith and lacks any rational basis. Precision Pine & Timber, Inc. v. United States, 62 Fed. Cl. 635, 652 (government has obligation of good faith and fair dealing).

**B. DIA's Contract Award to Rowe in December 2006 also Constituted Bad Faith**

Likewise, as discussed above, DIA's award of a contract under this Solicitation in December 2006 within thirty (30) days of its execution of Option Year II of The Ravens Group's Contract, constituted bad faith.

TECOM also established that bad faith "may be inferred from a lack of substantial evidence, gross error, or the like." TECOM, *supra*. at 769.

## VI.

## DIA FAILED TO PROVIDE IMPORTANT NOTICES

DIA also failed to provide timely notifications of its actions to The Ravens Group, which, contrary to Defendant's and Intervenor's view, significantly prejudiced The Ravens Group.

**A. DIA Failed to Notify The Ravens Group of NOSLOT's Protest**

FAR § 33.104 (a)(2) states that "Immediately after receipt of the GAO's written notice that a protest has been filed, the agency shall give notice of the protest to the contractor if the award has been made."

DIA did not notify The Ravens Group of NOSLOT's protest until August 11, 2005, over a month following NOSLOT's protest and after DIA had already decided to take corrective action.

Timely notice to the apparent awardee allows the awardee to intervene, independently assess the protest, and take steps to protect its interest, particularly during the early proceedings of the protest. Here, due to DIA negligence or intent, The Ravens Group missed an important opportunity to protect its property interest in the contract.

If, for example, DIA had properly notified The Ravens Group, The Ravens Group might have been able to negotiate a resolution with NOSLOT resulting in a withdrawal of the protest and resolution of the award with The Ravens Group.

Regrettably, we will never know if this situation could have been avoided because DIA abused its discretion and unreasonably failed to provide The Ravens Group timely notice of NOSLOT's protest of the original award to The Ravens Group.

### B. DIA Failed to Notify The Ravens Group of the Public Release of its Contract Price

As noted above, DIA's failure to timely and adequately notify The Ravens Group of its release of The Ravens Group Contract price resulted

in a substantial competitive disadvantage to The Ravens Group vis-à-vis the other offerors.

### C. DIA also Failed to Notify The Ravens Group of Corrective Action

In addition to the above, DIA failed to notify The Ravens Group of its continued corrective action, information that it provided to Rowe but not to The Ravens Group even though The Ravens Group was the incumbent and its proposal was one of the proposals DIA intended to review.

## VII.

## NOSLOT WAS NOT AN INTERESTED PARTY ELIGIBLE TO PROTEST THE CONTRACT AWARD TO THE RAVENS GROUP

NOSLOT was not an interested party to protest the original award to The Ravens Group in June 2005. Indeed, NOSLOT was clearly not eligible for award, a fact DIA should have known. Thus, the Court should deem NOSLOT's protest of DIA's original award to The Ravens Group *void ab initio*.

The Comptroller General (GAO) has authority only to decide protests submitted by an "interested party." 31 U.S.C. § 3553 (a). An interested party is defined as "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract." See 31 U.S.C. § 3551(2). Contractors that are not eligible for award do not have a direct economic interest in contract award, and have no standing to

protest. See Admiral Towing and Barge Co., B-29284,B-291849.2, 2003 Comp. Gen. Proc. Dec. ¶ 164 (March 6, 2003) (GAO will not consider protest where business is "ineligible for award and is thus not an interested party that would be affected by the resolution of these issues").

The SSD signed by the Contracting Officer on December 15, 2006, stated at AR907 acknowledge that NOSLOT was not eligible for contract award. It stated [redacted]

Intervenor's argument that DIA could have taken corrective action with or "without" a protest, is irrelevant. According to DIA it took corrective action pursuant to NOSLOT's protest.

Similarly, Intervenor's argument that because DIA determined that corrective action was required, it should not be stuck with its bad decision, is without merit. First, there is no evidence anywhere in the record that the decision to award the Contract to The Ravens Group was a "bad" decision. According to the AR, DIA rated The Ravens Group's proposal as "Excellent" in every regard. More importantly, if, as DIA asserts, the corrective action it agreed to take in July 2005, was a result of NOSLOT's

protest, DIA would not have had the occasion to take such corrective action but for NOSLOT's invalid protest.

## VIII.

## PLAINTIFF IS ENTITLED TO JUDGMENT UNDER THE TOTALITY OF THE CIRCUMSTANCES

The "totality of the circumstances" is a standard with which the Court is familiar. The Court has applied the standard in a variety of situations, including Albert L. De Graffenried v. United States, 29 Fed. Cl. 384, 392 (Oct. 1993), *citing* Essex Electro Engineers, Inc. v. United States, 757 F.2d 247,252-54 (Fed. Cir. 1985) (reasonableness of position is evaluated on the totality of the circumstances); see also Gargoyles, Inc. and Pro-Tech, Inc. v. United States, 45 Fed. Cl. 139, 146, 147 (Oct. 1999) (under totality of the circumstances, "position can be substantially justified even though it may have taken an unreasonable stance during an individual phase of the dispute").

Where, as here, the procurement action is plagued by multiple errors, oversights, and defects, we believe the Court may exercise its authority to evaluate the cumulative weight of the errors, oversights, and defects, to determine whether the decision of the procuring agency was reasonably justified.

## IX.

## CONCLUSION

It is understandable that after nearly two years, four contract awards to three different contractors, fifteen bid protests, and issuance of three notices of corrective action, that DIA would be eager to reach a final resolution regarding this procurement action. It would, however, compromise the integrity of the competitive procurement process to uphold the award to Rowe merely to bring an end to this process.

Based on the above, Plaintiff requests judgment as stated in the Complaint.

Respectfully submitted,

DATED: May 25, 2007

By: /s/ Daryle A. Jordan

Daryle A. Jordan
Patrick Henry LLP
7619 Little River Turnpike
Suite 340
Annandale, Virginia 22003
703.256.7754
703.256.7883 (fax)
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of May 2007, I caused a copy of the foregoing Opposition to Defendant's and Intervenor's Motions for Dismissal and Judgment on the Administrative Record and Plaintiff's Motion for Judgment to be filed electronically. I understand that the notice will be sent by the Court's electronic filing system to the following individuals through the Court's system:

Counsel for the United States, Roger Hipp, Esq., United States Department of Justice, Civil Division, Commercial Litigation Branch, 1100 L Street, N.W., Room 12072, Washington, DC 20530, Telephone No. (202) 305-3091, Facsimile No. (202) 514-8640

and

Counsel for Intervenor Rowe Contracting Services, Inc., Kenneth B. Weckstein, Epstein Becker & Green, P.C., 1227 25th Street, N.W. Suite 700, Washington, D.C. 20037-1156, Telephone No. (202) 861-1860, Facsimile No. (202) 861-3560.

/s/ Daryle A. Jordan

Daryle A. Jordan