**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(Bid Protest)**

| | | |
|---|---|---|
| THE RAVENS GROUP, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | CFC No. 07-243 |
| | ) | Judge Baskir |
| THE UNITED STATES et al. | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S AND INTERVENOR'S REPLIES TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S AND INTERVENOR'S MOTIONS TO DISMISS AND FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND PLAINTIFF'S CROSS MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD [PUBLIC VERSION]**

Daryle A. Jordan
Patrick Henry LLP
7619 Little River Turnpike
Suite 340
Annandale, Virginia 22003
703.256.7754
703.256.7883 (Facsimile)
djordan@patrickhenry.net
Counsel for Plaintiff

DATED: June 11, 2007

[redacted]

# TABLE OF CONTENTS

Table of Authorities.......................................................................iii

I. Discussion.......................................................................2

II. THE RECORD FAILS TO PROVIDE A RATIONAL BASIS FOR DIA'S FAILURE TO INVESTIGATE THE RAVENS GROUP'S CLAIM THAT ROWE HAD ENGAGED IN UNFAIR BUSINESS PRACTICES........................3

II. A The Record Confirms that DIA Did Not Review the Available Evidence And took No Action to Address The Ravens Group's Contentions that Rowe had Engaged In Unfair Business Practices to Obtain its March 2006 Contract Award..............................4

II.B The Record Also Does not Reflect that DIA Provided GAO with a Complete Record of the Relevant Material and Information Sufficient to Reach a Reasonable Decision..............................................6

II.C. Defendant's and Intervenor's Attempt to Construct a New Record for the Court's Consideration is Improper..............................7

II.D. Defendant and Intevenor Contradict Each Other Regarding Key Evidence........................9

II.E. The Lack of an Adequate Record in this Case Stems in Part from DIA's Refusal to Produce an Agency Report..........................11

III. DIA'S CONTRACT AWARD TO ROWE WAS IRRATIONAL..............................................................11

IV. DIA'S GROSS ERRORS DURING THIS PROCUREMENT ESTABLISH BAD FAITH........................................................14

V. DEFENDANT'S ACKNOWLEDGEMENT THAT THERE WERE THREE (3) PROTESTS OF THE ORIGINAL AWARD TO THE RAVENS GROUP PROVIDES FURTHER EVIDENCEOF DIA'S GROSS NEGLIGENCE AND/OR INDIFFERENCE TO ITS RESPONSIBILITIES TO CONDUCT A PROPER AND FAIR PROCUREMENT...............................................15

VI. UNDER THE TOTALITY OF THE CIRCUMSTANCES, THE COURT HAS AUTHORITY TO DETERMINE WHETHER THE ACCUMULATION OF DIA'S ERRORS REQUIRES JUDGEMENT IN FAVOR OF THE RAVENS GROUP........................................................................16

VII. CONCLUSION..........................................................17

Note: Two (2) asterisks (**) mark proposed protected information

# TABLE OF AUTHORITIES

## CASES

Albert L. De Graffenried v. United States,
29 Fed. Cl. 384, 392 (Oct. 1993)....................................16

Bannum, Inc. v. United States,
69 Fed. Cl. 311, 314 (2006)............................................11

Camp v. Pitt, 411 U.S. 138, 142-43 (1973)..................................2

Chas. H. Thompkins Co. v. United States,
43 Fed. Cl. 716, 719 (1999).......................................8-9,12

Cherry Hill Sand & Gravel Co., v. United States,
8 Cl. Ct. 757 (1985)...................................................17

Compliance Corporation v. United States,
22 Cl. Ct. (Dec. 12, 1990)...............................................3

Computer Science Corp. v. United States,
51 Fed. Cl. 297, 308 (2001)............................................12

Dismas Charities, Inc. v. United States,
61 Fed. Cl. 191, 198 (2004)..........................................2,7

Essex Electro Engineers, Inc. v. United states,
757 F.2d 247, 252-54 (Fed.Cir.1985)...............................16

Florida Power & Light v. Loriono,
470 U.S. 729, 743 (1985)...............................................2

Gargoyles, Inc. and Pro-Tech, Inc. v. United States,
45 Fed. Cl. 139, 146, 147 (Oct. 1999)..............................16

Manson Construction Co. v. United States,
64 Fed. Cl. 746, 749 (2005).....................................2,9,11

NKF Engineering, Inc. v. United States,
9 Cl. Ct. 585, 805 F.2d 372, 374 (Fed. Cir. 1986)....................3

R&W Flammann GmbH v. United States,
339 F.3d 1320, 1324 (Fed. Cir. 2003)..................................3

TECOM, Inc. v. United States,
66 Fed. Cl. 736 (Jun. 27, 2005).......................................14

FEDERAL ACQUISITION REGULATION ("FAR")

§ 1.602-2..............................................................4

§ 1.602-2(b)...........................................................4

§33.104 (a)(3)(i)......................................................7,11

§33.104 (a)(3)(ii).....................................................11

CODE OF FEDERAL REGULATIONS

48 C.F.R § 1.602-2 (2000)..............................................3

GAO OPINIONS

Allied Trailer Sales & Rentals, B-224816.2, 86-2 CPD ¶ 522
(Nov. 5, 1986)........................................................14

Cortland Memorial Hospital, B-286890, 2001 CPD ¶ 48...............12

Government Associates, B-240682.5, 93-2CPD ¶ 215
(Oct. 12, 1993).......................................................14

Midland Supply, Inc., B-298720, B-298720.2, 2007
CPD ¶ 2..............................................................12

Teltara, Inc., B-280922, 98-2 CPD ¶ 124.............................12

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(Bid Protest)**

| | | |
|---|---|---|
| THE RAVENS GROUP, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | CFC No. 07-243 |
| | ) | Judge Baskir |
| THE UNITED STATES *et al.* | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S AND INTERVENOR'S REPLIES TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S AND INTERVENOR'S MOTIONS TO DISMISS AND FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND PLAINTIFF'S CROSS MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD [PUBLIC VERSION]**

**COMES NOW** Plaintiff, The Ravens Group, Inc. ("The Ravens Group"), by and through the undersigned counsel, and submits this Response to Defendant's and Intervenor's Reply to Plaintiff's Opposition to Defendant's and Intervenor's Motions to Dismiss and for Judgment Upon the Administrative Record and Plaintiff's Cross-Motion for Judgment Upon the Administrative Record.

The Administrative Record ("AR" or "Record") (or lack thereof) in this case provides clear and persuasive evidence of the Defense Intelligence

Agency's ("DIA") abuse of discretion, gross negligence, and mismanagement of this procurement action. The inadequate, incomplete, and improper Record illustrates why DIA's fourth (4th) "best value" award of this procurement should be overturned, and why DIA should, at a minimum, be directed to commence this procurement anew in the interest of justice and the integrity of the procurement system.

## I.

## DISCUSSION

The Court's review of DIA's actions in this procurement is limited to the Administrative Record already in existence, "not some new record made initially in the reviewing court." See Dismas Charities, Inc. v. United States, 61 Fed. Cl. 191,198 (2004), *citing* Camp v. Pitts, 411 U.S. 138, 142, 36 L. Ed. 2d 106 (1973). The record consists of the materials and files that were before the agency at the time the decision was made. Florida Power & Light v. Loriono, 470 U.S. 729, 743 (1985). The agency must have actually considered the materials and files before it in reaching its decision. See Dismas at 198 ("court 'must determine whether decision was the result of a considered process, rather than an arbitrary and capricious choice based on factors lacking any intrinsic rational basis or relationship to the questions at issue'"); see also Manson Construction Co.

v. United States, 64 Fed. Cl. 746, 749 (2005) (Court's review of the agency's actions requires "that the final decision by an agency be the result of a process which 'considers the relevant factors and is within the bounds of reasoned decisionmaking'").

After fifteen (15) protests, four (4) awards to three (3) different contractors, and at least three (3) attempts at correcting its mistakes and errors, DIA has produced an incomplete, inadequate, and improper Record, that fails to show that DIA considered relevant information and factors in reaching important decisions regarding the procurement.

## II.

## THE RECORD FAILS TO PROVIDE A RATIONAL BASIS FOR DIA'S FAILURE TO INVESTIGATE THE RAVENS GROUP'S CLAIM THAT ROWE HAD ENGAGED IN UNFAIR BUSINESS PRACTICES

"Procurement officers **must act** to prevent even an appearance of impropriety in order to meet FAR requirements of 'safeguarding the interests of the United States in its contractual relationships,' 48 C.F.R. § 1.602-2 (2000), and ensuring that 'contractors receive impartial, fair, and equitable treatment,' *id.* § 1.602-2(b)(2000) (emphasis added)." See R&W Flammann GmbH v. United States, 339 F.3d 1320, 1324, (Fed. Cir. 2003) *citing* NKF Engineering, Inc. v. United States, 9 Cl. Ct. 585, 805 F.2d 372, 374 (Fed. Cir. 1986). See also Compliance Corporation v. United States,

22 Cl. Ct. 193, 203 (1990) (agency has duty to protect integrity of procurement system); Federal Acquisition Regulation ("FAR") § 1.602-2 (contracting officers responsible for "safeguarding the interests of the United States in its contractual relationships"); FAR § 1.602-2(b) (contracting officers must "ensure that contractors receive impartial, fair, and equitable treatment").

The Record in this instance fails to establish that DIA complied with its duty and exercised its discretion to ferret out unfair business practices.

### A. The Record Confirms that DIA Did Not Review the Available Evidence and took NO Action to Address The Ravens Group's Contentions that Rowe had Engaged in Unfair Business Practices to Obtain its March 2006 Contract Award

The Record shows that DIA breached its duty to protect the integrity of the procurement when it failed to review the evidence and respond to The Ravens Group's allegations of unfair business practices.

The Ravens Group filed several protests alleging unfair business practices by Rowe Contracting Services, Inc. ("Rowe") including: April 6, 2006, protest (see AR182); April 20, 2006 supplemental protest (see AR192); May 12, 2006 protest (see AR205); and June 1, 2006, request for reconsideration (see AR223), as well as several direct communications to DIA contracting officials expressing its concerns regarding Rowe's actions, including: April 21, 2006, letter to the contracting officer (see AR197); May

5, 2006, letter to the contracting officer (see AR204); and June 4, 2006, letter to DIA's Chief of Contracting (see Plaintiff's Motion to Supplement the Record, Exhibit 3).

In addition, Rowe submitted two (2) communications of its own attempting to rebut The Ravens Group's allegations—a letter from Scott Rowe to the contracting officer, dated April 26, 2006, and Scott Rowe's eight (8) page sworn statement, dated April 28, 2006.

Notwithstanding the substantial record of allegations and rebuttals submitted by The Ravens Group and Rowe, my review has revealed nothing in the Record produced by DIA pursuant to this proceeding that shows that DIA considered or even reviewed the above communications. There is no memorandum, email, letter, or note in the Record that discusses DIA's review of The Ravens Group's allegations or Rowe's rebuttal. Likewise, there is no evidence of any investigation (formal or informal), considerations, findings, or conclusions regarding this important matter.

On its face, the Record is wholly inadequate to explain DIA's actions or lack thereof regarding The Ravens Group's allegations and Rowe's explanation of its actions.

### B. The Record Also Does Not Reflect that DIA Provided GAO with a Complete Record of the Relevant Material and Information Sufficient to Reach a Reasonable Decision

The Record also does not establish that DIA provided GAO with all of the relevant material and information in the protest file to allow GAO to make a reasoned decision based on all of the available evidence. DIA's failure to provide GAO a complete file is inexcusable and further evidence of DIA's abuse of discretion and unreasonableness in this procurement.

First, DIA's omission of several clearly relevant documents from the Record it produced in this proceeding is consistent with its established pattern in this procurement of failing to provide required information. In this case, the Record initially provided by DIA failed to provide Mr. Rowe's sworn statement (see Intervenor's Motion to Supplement the Record, Exhibit 1), Mr. Rowe's April 26, 2006, letter to the contracting officer (see Defendant's Motion to Supplement the Record), and The Ravens Group's June 14, 2006, letter to DIA's Chief of Acquisition (see Plaintiff's Motion to Supplement the Record).

The evidence, including DIA's history and the lack of any comment on these materials by GAO, strongly suggests that DIA did not provide the above information to GAO.

In four (4) decisions responding in whole or in part to The Ravens Group's claims of unfair business practices, GAO never—not once—mentioned or even referred to Mr. Rowe's April 26th letter or his sworn statement even though both purport to clear Rowe of any wrongdoing. See GAO Decisions: May 19, 2006 (AR220); July 14, 2006 (AR241); December 6, 2006 (AR293); and March 15, 2007 (AR1132). Certainly, if DIA had provided this information to GAO, GAO would have discussed the evidence in its decisions. In its July 14th Decision, GAO discussed J. Jeff Robertson's June 1, 2006, written statement even though GAO declined to consider the statement on the merits. It is evident that DIA neglected to provide GAO information it was required by law to provide GAO pursuant to The Ravens Group's protests. See FAR §33.104(a)(3)(i) ("The agency shall submit a complete report to the GAO within 30 days after the GAO notifies the agency . . . that a protest has been filed.")

### C. Defendant's and Intervenor's Attempt to Construct a New Record for the Court's Consideration is Improper

"It is well-settled that 'the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'" Dismas at 198. In this instance, both Defendant and Intervenor urge the Court to review the Record as they

would like it to exist not as it existed at the time DIA made the decisions forming the basis of this protest.

Defendant alleges in this proceeding that: 1) The Ravens Group did not allege an unfair business practice concerning Rowe; 2) The Ravens Group did not allege an unfair business practice concerning the schedules in The Ravens Group's and Rowe's proposals, and 3) The Ravens Group did not allege an unfair business practice concerning Rowe's cash payments to Ravens Group managers. DIA, however, never made any such findings and/or conclusions even though both The Ravens Group and Rowe had provided DIA substantial communications on this subject.

Rowe also argues that DIA and GAO both determined that The Ravens Group's allegations of unfair business practices lacked any merit. This clearly is not true. As noted, GAO declined to consider J. Jeff Robertson's written witness statement clarifying that Rowe's unfair business practices prejudiced The Ravens Group. See AR241-42, fn 2. Moreover, in bid protest cases, "it is the agency's decision, not the decision of the GAO that is the subject of judicial review." Chas H. Tompkins Co. v. United States, 43 Fed. Cl. 716, 719 (1999) (GAO opinion is only advisory).

There simply is no evidence in the Record that DIA or its contracting officer investigated, reviewed, or assessed The Ravens Group's claims or

Rowe's rebuttals. See Chas Tompkins at 919 (Court defers to GAO's technical expertise unless it is without substantial basis in fact); see also Manson Construction at 749 (decision reached by agency must be the result of a process which considers the relevant factors).

**D. Defendant and Intervenor Contradict Each Other Regarding Key Evidence**

Defendant's and Intervenor's Responses to Plaintiff's Opposition and Cross-Motion provide contradictory information regarding their arguments that Rowe did not engage in any unfair business practices in connection with this procurement.

In their June 6, 2006, briefs, both Defendant and Intervenor argue that there is no basis for The Ravens Group's contention that Rowe acquired information about The Ravens Group's technical proposal and then used that information to enhance its own proposal leading to the March 2006 contract award to Rowe. Defendant's and Intervenor's arguments, however, conflict with each other.

Intervenor argues that Rowe did not revise its original technical proposal in its best and final offer in response to the corrective action DIA undertook in connection with NOSLOT's protest of the original award to The Ravens Group. On the other hand, Defendant argues that Rowe did revise and change its technical proposal in its best and final offer.

Specifically, Intervenor argues that "DIA could quickly determine that Ravens' allegation that Rowe had improperly obtained and used Ravens' work schedule to enhance Rowe's best and final proposal was false . . . [because Rowe] **did not** alter that work schedule in its best and final proposal (emphasis added)." See Intervenor's Reply and Opposition to Plaintiff's Cross-Motion, dated June 6, 2006, p. 17. By contrast, Defendant argues in its June 6, 2007, submission, that Rowe submitted a "revised technical proposal that included a schedule for inventory and maintenance." See Defendant's Reply in Support of Defendant's Motion to Dismiss et al., dated June 6, 2006, p. 5.

In addition, it is not relevant whether or not DIA **could have** "quickly" determined that The Ravens Group's "allegation that Rowe had improperly obtained and used Ravens' work schedule to enhance Rowe's best and final proposal was false." The fact is the Record does not reflect that DIA made any such determination.

Finally, contrary to Intervenor's submission, DIA did not determine that Rowe's access of The Ravens Group's personnel security file via the JPAS, was "proper and appropriate." Rowe argues that it's transfer of Ravens Group personnel to Rowe via the JPAS was proper; however, there is nothing in the Record that shows that DIA reached this conclusion.

### E. The Lack of an Adequate Record in this Case Stems in Part from DIA's Refusal to Produce an Agency Report

FAR §33.104(a)(3)(i) states that "The agency shall submit a complete report to the GAO within 30 days after the GAO notifies the agency . . . that a protest has been filed." In addition, FAR§33.104(a)(3)(ii) states that the procuring agency shall "provide actual or prospective offerors reasonable access to the protest file." DIA and Intervenor aggressively fought the release of an agency report in this case and in the end DIA did not produce an agency report in this case. See DIA Counsel's Letter, dated October 4, 2006, AR253-54 ("we [DIA] do not plan to file a formal agency report unless so directed by the GAO"); see also Rowe Letter, dated January 18, 2007, AR1065, AR1079-81 ("Ravens request for documents should be denied").

## III.

## DIA'S CONTRACT AWARD TO ROWE WAS IRRATIONAL

The contracting agency must provide a coherent and reasonable explanation of its exercise of discretion. Bannum, Inc. v. United States, 69 Fed. Cl. 311, 314 (2006). When a challenge is made against the contracting officer's decisionmaking, the "test is whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." Manson Construction at 750. While the agency's decision is

entitled to a "presumption of regularity," that presumption does not shield the agency's decision from a "'thorough, probing, in-depth review.'" Chas. Tompkins at 719.

In addition, the Court and GAO have held that an agency's source selection decision is invalid when the underlying evaluation record does not support the decision. See Computer Science Corp. v. United States, 51 Fed. Cl. 297, 308 (2001); see also Midland Supply, Inc., B-298720, B-298720.2, 2007 CPD ¶ 2 (protest sustained where record lacks any documentation reflecting a meaningful comparative anaylsis of proposals); Cortland Memorial Hospital, B-286890, 2001 CPD ¶ 48 (protest sustained where there is inadequate support in the record for the scoring that the contracting officer relied on in making the contract award); Teltara, Inc., B-280922, 98-2 CPD ¶ 124 (protest sustained where the source selection memorandum contains only conclusory information that does not support the best value determination).

In this case, in light of the multiple criticisms of Rowe's technical proposal *vis-à-vis* The Ravens Group's proposal, the Record simply does not justify DIA's determination that Rowe's proposal deserved the same [redacted] rating that The Ravens Group's proposal received. See

generally Plaintiff's Opposition to Defendant's and Intervenor's Motions to Dismiss and for Judgment on the Administrative Record, pp. 15-17.

Similarly, given the [redacted] ratings Rowe received in one past performance report, the Record does not support the [redacted] rating Rowe received from DIA for its past performance evaluation.

As discussed, DIA's unsupported, unjustified, and unreasonable upgrade of Rowe's technical proposal and past performance resulted in an irrational, improper, and invalid cost/price-technical evaluation.

In addition, DIA's failure to provide The Ravens Group any notice of its continued review of proposals and intended award of the contract in December was unreasonable given the fact of DIA's notices to Rowe (see October 24, 2006, letter and enclosure, AR373 – AR3750, and Olympus Building Services, Inc. ("Olympus") (see October 25, 2006, letter and enclosure, AR414 – AR416). There simply is no rational basis for DIA's abuse of its discretion to notify Rowe and Olympus, but not The Ravens Group of its continued review and evaluation of proposals. Given this abuse of discretion and DIA's execution of Option Year II of the Contract in November 2006, DIA's subsequent award of the contract to Rowe less than 30 days later was unreasonable and in bad faith.

Finally, other than Intervenor's comment that "the initial award to Ravens is not at issue in this case," and its continued assertion that The Ravens Group is asserting a contract administration matter, neither Intervenor nor Defendant addressed The Ravens Group's contention that it is entitled to a review to determine whether its original award was proper. See Government Associates, B-240682.5, 93-2 CPD ¶ 215 (Oct. 12, 1993) (It is not the termination for convenience itself that is challenged, but rather, whether the agency made a rational and reasonable decision in awarding the contract in the first place); see also Allied Trailer Sales & Rentals, B-224816.2, 86-2 CPD ¶ 522 (Nov. 5, 1986) (where GAO determines that the initial award was improper, GAO must make a further finding regarding "whether the corrective action taken is sufficient to protect the integrity of the competitive procurement system").

## IV.

## DIA'S GROSS ERRORS DURING THIS PROCUREMENT CONSTITUTES BAD FAITH

Notwithstanding Defendant's and Intervenor's arguments to the contrary, the Court in TECOM, Inc. v. United States, 66 Fed. Cl. 736,769 (2005), established that bad faith **may be inferred from a lack of substantial evidence, gross error, or the like**.

DIA's multiple gross errors, including its failure to respond to The Ravens Group's allegations of unfair business practices, its failures to provide required notices, and its failure to properly document the record, among other errors, provides substantial evidence of DIA's gross errors and therefore its bad faith during the conduct of this procurement.

## V.

## DEFENDANT'S ACKNOWLEDGEMENT THAT THERE WERE THREE (3) PROTESTS OF THE ORIGINAL AWARD TO THE RAVENS GROUP PROVIDES FURTHER EVIDENCE OF DIA'S GROSS NEGLIGENCE AND/OR INDIFFERENCE TO ITS RESPONSIBILITIES TO CONDUCT A PROPER AND FAIR PROCUREMENT

In its brief, Defendant argues that there were actually three (3) protests of the original award to The Ravens Group—a June 29, 2005, protest by NOSLOT that was dismissed as premature, a second NOSLOT protest filed on July 12, 2005, and a third filed by Olympus. Thus, argues Defendant, DIA's failure to provide notice of the protests to The Ravens Group was not prejudicial. Further, argues Defendant, the fact that NOSLOT may not have been eligible to protest the original award to The Ravens Group is of no consequence.

We previously discussed the prejudice The Ravens Group suffered as a result of DIA's failures to provide required notices. We believe, however, that DIA's acknowledgement now that there were three (3)

protests rather than one (1) of the original award to The Ravens Group, is further evidence of DIA's irrational, unreasonable, and inexplicable failure to provide timely notifications to The Ravens Group during this procurement. The "Notification of GAO Protest" that DIA provided The Ravens Group in August 2005 long after it had decided to take corrective action discusses only one protest—by NOSLOT. See AR229. The notice fails to notify The Ravens Group of two (2) other protests. DIA was either incapable or unwilling to provide required information to The Ravens Group.

## VI.

## UNDER THE TOTALITY OF THE CIRCUMSTANCES, THE COURT HAS AUTHORITY TO DETERMINE WHETHER THE ACCUMULATION OF DIA'S ERRORS REQUIRES JUDGMENT IN FAVOR OF THE RAVENS GROUP

As discussed in our initial brief, the "totality of the circumstances" is a standard with which the Court is familiar. See Albert L. De Graffenried v. United States, 29 Fed. Cl. 384, 392 (Oct. 1993), a patent case, where the court, *citing* Essex Electro Engineers, Inc. v. United States, 757 F.2d 247,252-54 (Fed. Cir. 1985); see also Gargoyles, Inc. and Pro-Tech, Inc. v. United States, 45 Fed. Cl. 139, 146, 147 (Oct. 1999) (under totality of the circumstances, "position can be substantially justified even though it may

have taken an unreasonable stance during an individual phase of the dispute"); Cherry Hill Sand & Gravel Co., v. United States, 8 Cl. Ct. 757 (1985) (contract provision unreasonable given the totality of the circumstances).

We acknowledge that the above cases are not bid protest cases. We believe, however, that the above-referenced cases support our fundamental proposition. Thus, an individual error, omission, oversight, or defect may not by itself establish sufficient ground for overturning the decision of the procuring agency. Where, however, as in this case, the procurement action is plagued by multiple errors, oversights, and defects, the Court may exercise its authority to evaluate the cumulative weight of the errors, oversights, and defects, and determine whether the decision of the procuring agency was reasonably justified.

Given DIA's numerous errors in this procurement, we assert that the Court is justified in exercising such authority in this case.

## VII.

## CONCLUSION

For the foregoing reasons, as well as those expressed in our initial brief, we respectfully request that the Court grant judgment upon the administrative record in favor of Plaintiff and grant Plaintiff the relief

requested in its Complaint, or, in the alternative, direct DIA to commence this procurement action anew in the interest of justice and the integrity of the procurement system.

Respectfully submitted,

/s/ Daryle A. Jordan

Date: June 11, 2007

By: ______________________

Daryle A. Jordan
Patrick Henry LLP
7619 Little River Turnpike
Suite 340
Annandale, Virginia 22003
703.256.7754
703.256.7883 (fax)
Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of June 2007, I caused a copy of the foregoing Plaintiff's Response to Defendant's and Intervenor's Replies to Plaintiff's Opposition to Defendant's and Intervenor's Motions to Dismiss and for Judgment Upon the Administrative Record and Plaintiff's Cross-Motion for Judgment Upon the Administrative Record to be filed electronically. I understand that the notice will be sent by the Court's electronic filing system to the following individuals through the Court's system:

Counsel for the United States, Roger Hipp, Esq., United States Department of Justice, Civil Division, Commercial Litigation Branch, 1100 L Street, N.W., Room 12072, Washington, DC 20530, Telephone No. (202) 305-3091, Facsimile No. (202) 514-8640

and

Counsel for Intervenor Rowe Contracting Services, Inc., Kenneth B. Weckstein, Epstein Becker & Green, P.C., 1227 25th Street, N.W. Suite 700, Washington, D.C. 20037-1156, Telephone No. (202) 861-1860, Facsimile No. (202) 861-3560.

/s/ Daryle A. Jordan

Daryle A. Jordan