**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(Bid Protest)**

| | |
|---|---|
| The Ravens Group, Inc.,<br>Plaintiff,<br>v.<br>United States,<br>Defendant,<br>and<br>Rowe Contracting Services, Inc.,<br>Third party/Intervenor. | CFC No. 07-243<br>Judge Baskir<br>REDACTED VERSION |

**INTERVENOR ROWE CONTRACTING SERVICES, INC.'S REPLY AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

Kenneth B. Weckstein
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W.
Suite 700
Washington, D.C. 20037
(202) 861-1860
(202) 861-3560 (fax)
kweckstein@ebglaw.com

Counsel for Intervenor

Date: June 6, 2007

~~PROTECTED AND CONFIDENTIAL MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH UNITED STATES COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

## TABLE OF CONTENTS

Table of Authorities ........ iii

Statement of the Questions Involved ........ v

Discussion ........ 1

I. Ravens' Count I (Unfair Business Practices) should be dismissed pursuant to Rule 12(b)(1) and (6) ........ 3

II. Ravens' Count II (Irrational Contract Award) should be dismissed pursuant to Rule 12(b)(1) and (6) and is unsupported in the Record. ........ 3

*Ravens' Count II involves issues of contract administration governed by the CDA.* ........ 3

*The Record shows that the Agency's Evaluation was Reasonable.* ........ 5

III. Ravens' Count III (DIA's Breach of the Implied Duty of Good Faith and Fair Dealing) should be dismissed pursuant to 12(b)(1) and (6) and is unsupported in the Record ........ 8

IV. Ravens' Count IV (Violation of Notification Requirements) should be dismissed pursuant to Rule 12(b)(6). ........ 10

V. Ravens' Count V should be dismissed pursuant to Rule 12(b)(1) and (6) and is unsupported in the Record. ........ 11

*Ravens' allegation that DIA abused its discretion by not investigating Ravens' claim was not alleged in Ravens' Complaint.* ........ 11

*Ravens' allegations of unfair business practices on their face fail to show any wrongdoing by Rowe.* ........ 12

*DIA was under no further obligation to investigate Ravens' accusations that DIA knew to be incorrect.* ........ 15

VI. Ravens' Count VI (Initial Award to Ravens was Proper) should be dismissed pursuant to Rule 12(b)(6). ........ 21

VII. Ravens' Count VII should be dismissed pursuant to Rule 12(b)(1) and (6). ........ 21

Conclusion ........ 22

# TABLE OF AUTHORITIES

## CASES

*AT&T Info. Sys., Inc. v. Gen. Servs. Admin.*,
627 F. Supp. 1396 (D.D.C. 1986) ........................................ 9

*Compliance Corp. v. United States*,
22 Cl. Ct. 193 (1990) ........................................ 15

*Danka De Puerto Rico, Inc. v. United States*,
63 Fed. Cl. 20 (2004) ........................................ 1

*EP Prods., Inc. v. United States*,
63 Fed. Cl. 220 (2004) ........................................ 6

*NKF Eng'g, Inc. v. United States*,
805 F.2d 372 (1986) ........................................ 15, 16

*Park Tower Mgmt., Ltd. v. United States*,
67 Fed. Cl. 548 (2005) ........................................ 2, 6

*University Research Co., LLC v. United States*,
65 Fed. Cl. 500 (2005) ........................................ 6

## STATUTES

31 U.S.C. § 605(a) ........................................ 3, 9

28 U.S.C. § 1491(a)(1) ........................................ 2, 4

28 U.S.C. § 1491(a)(2) ........................................ 4

48 C.F.R. § 15.506(d)(2) ........................................ 9

## GAO OPINIONS

*Government Associates*, B-240682.5,
October 12, 1993, 93-2 CPD ¶ 215 ........................................ 4, 5

*Carlson Wagonlit Travel*, 2001 CPD ¶ 49 (2000) ........................................6

## STATEMENT OF THE QUESTIONS INVOLVED

1. Whether the Complaint should be dismissed, in whole or in part, for lack of jurisdiction over the subject matter pursuant to Rule 12(b)(1).

2. Whether the Complaint should be dismissed, in whole or in part, for failure to state a claim pursuant to Rule 12(b)(6).

3. To the extent that the Complaint has even alleged a viable cause of action, whether judgment should be granted for Defendant and Intervenor because the Administrative Record demonstrates that the actions of the Defendant United States were not arbitrary, not capricious, not an abuse of discretion, and were otherwise in accordance with law.

## Discussion

Having been given the opportunity to review the Administrative Record ("Record" or "AR") in this case, Ravens persists in making the same unsupported and jurisdictionally deficient allegations from its Complaint. Aside from the statements attached to its Complaint, Ravens did not even bother to cite to many portions of the Record to support its claims. And, where Ravens did cite to the Record, it was mostly to argue (wrongly) that DIA had misevaluated Rowe's proposal -- a claim not even encompassed in Ravens' Complaint.

Again, Ravens has failed to state claims over which this Court may grant relief. Ravens' Complaint contained causes of action over which this Court does not have jurisdiction or are claims relating to questions of contract administration over which Ravens has not exhausted its administrative remedies. This Court must grant a motion to dismiss when it finds that the Court does not possess jurisdiction over the plaintiff's claims. *See Danka De Puerto Rico, Inc. v. United States*, 63 Fed. Cl. 20, 22 (2004). Ravens' Opposition to Defendant's and Intervenor's Motions to Dismiss ("Opposition") continues to set forth allegations that do not support a valid cause of action in this forum. As previously submitted, Ravens'

Complaint should be dismissed in its entirety pursuant to Rules 12(b)(1) and/or 12(b)(6).

Moreover, to the extent that Ravens has alleged any viable cause of action, Ravens' Cross-Motion for Judgment Upon the Administrative Record has not pointed to any evidence in the Record that demonstrates that the actions of the United States were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance of law. And, Ravens ignores facts in the Record that directly contradict its claims. For instance, Ravens continues to argue that Rowe stole Ravens' work schedule and used it to enhance Rowe's Final Proposal Revision ("FPR"). That ignores the fact that Rowe included its own work schedule in its original proposal (AR at 612-616) and did not modify that schedule in its FPR (AR at 660). Therefore, to the extent that the Court does not dismiss Ravens' Complaint, Intervenor Rowe requests that this Court enter judgment on the Administrative Record against Ravens for its failure to show that the Agency's conduct was arbitrary, capricious, or otherwise not in accordance with law. *See Park Tower Mgmt., Ltd. v. United States*, 67 Fed. Cl. 548, 560 (2005).

**I. Ravens' Count I (Unfair Business Practices) should be dismissed pursuant to Rule 12(b)(1) and (6).**

The allegations in Ravens' Complaint fails to support a viable cause of action for "unfair business practices" against Rowe. *See* Complaint at ¶¶ 34-39. This Court does not have jurisdiction over this claim against Rowe. *See* 28 U.S.C. § 1491(a)(1). Nothing in the Record cures this jurisdictional deficiency. Therefore, Ravens' Count I fails as a matter of law.[1] Ravens' contention that DIA's decision to not further investigate Ravens' accusation of unfair business practices was an abuse of discretion is addressed in Section V below.

**II. Ravens' Count II (Irrational Contract Award) should be dismissed pursuant to Rule 12(b)(1) and (6) and is unsupported in the Record.**

*A. Ravens' Count II involves issues of contract administration governed by the CDA.*

Ravens Count II (Irrational Contract Award) involves issues of contract administration and therefore fails to state a claim for which relief can be granted. Ravens continues to argue that DIA's "execution of Option Year II was DIA's final award decision." *See* Opposition at 21. The exercise of an option year under FAR § 17.207 is not a best value

[1]Ravens' Opposition simply *combined* its discussion of Counts I and V. Rowe notes that Ravens has not amended Counts I and V of its Complaint. Therefore, Count I and V of the Complaint at ¶¶ 34-39 and ¶¶ 67-73 continue to allege a cause of action against Rowe for unfair business practices over which this Court does not have jurisdiction.

determination under the evaluation criteria of a solicitation. DIA's exercise of Option Year II does not state a basis for a claim. Moreover, a contractor claim relating to the exercise of option years is a matter of contract administration and therefore is governed by the Contract Disputes Act ("CDA"). *See* 31 U.S.C. § 605(a). This Court does not have jurisdiction over CDA claims where a claim has not been submitted to the contracting officer for decision and/or a decision has been rendered by the contracting officer. *See* 28 U.S.C. § 1491(a)(2). The Record does not contain any documentation of an attempt by Ravens to submit a claim relating the exercise of the option years to the Contracting Officer.

To support its Count II, Ravens now also argues that DIA's termination for convenience should be reviewed and that the initial award to Ravens was proper. *See* Opposition at 20-21 ("Under some circumstances, it is appropriate to review an agency's actions in connection with its decision to terminate a contract for convenience."). First, the initial award to Ravens is not at issue in this case. Furthermore, any claim Ravens has regarding the Agency's termination for convenience of its contract is a matter of contract administration and governed by the CDA. Again, this Court does not have jurisdiction over CDA claims until a claim has been submitted to the contracting officer for decision and/or a decision

has been rendered by the contracting officer. *See* 28 U.S.C. § 1491(a)(2). The GAO case to which Ravens cites on page 22 of the Opposition affirms this basic principle. "Whether a binding contract exists and whether [the contractor] might be entitled to damages from the cancellation of the [contract] are matters of contract administration not subject to the protest review by our Office." *See Government Associates*, B-240682.5, October 12, 1993, 93-2 CPD ¶ 215.

*B. The Record shows that the Agency's evaluation was reasonable.*

Ravens also now claims for the first time that DIA's technical evaluation was flawed and that Rowe's proposal did not merit the same technical rating as Ravens received. *See* Opposition at 14-18. Nowhere in Ravens' Complaint did Ravens allege that DIA's evaluation was flawed. The evaluation of Ravens' or Rowe's proposals are not at issue in this case.

And even if the Court allows Ravens to inject this new argument into this case, Ravens has not alleged or pointed to any facts in the Record that support a finding that DIA's evaluation was flawed. Ravens merely argues that it believed that its technical proposal was superior to Rowe's. *See* Opposition at 15-17. Ravens also believes that it deserved a better past performance rating than Rowe. *See* Opposition at 17-18. But Ravens

does not allege that DIA's evaluation was contrary to the evaluation criteria. Ravens does not allege that DIA's evaluation violated a statute or regulation. Ravens simply disagrees with the Agency that Rowe and Ravens deserved the same ratings. Ravens' arguments fail as a matter of law.

An agency has substantial discretion to determine whether a proposal represents the best value for the Government and a plaintiff before this Court bears a "heavy burden" of showing that the agency lacked a rational basis for its decision. *See Park Tower Mgmt., Ltd. v. United States*, 67 Fed. Cl. 548, 559-60 (2005). Also, when the Court of Federal Claims considers an agency's past performance evaluation, it grants "the greatest deference possible . . . to the agency." *See University Research Co., LLC v. United States*, 65 Fed. Cl. 500, 505 (2005). Mere disagreement with the agency's judgment is not sufficient to establish that the agency acted unreasonably. *See EP Prods., Inc. v. United States*, 63 Fed. Cl. 220, 226 (2004) (quoting *Carlson Wagonlit Travel*, 2001 CPD ¶ 49 (2000)). Ravens' mere disagreement with the Agency's evaluation does not establish that DIA's conduct was unreasonable or contrary to law.

The Record shows that Ravens' contention that its technical and past performance was superior is misguided. First, Ravens relies on statements

the Technical Evaluation Panel ("TEP") made regarding the relative improvements in each offeror's respective FPR. Ravens ignores the fact that after submission of final proposals the TEP ranked Ravens' proposal third and Rowe's proposal second. AR at 895.

Ravens cites to the Source Selection Decision (*see* AR at 901-917) and asks how Rowe was given an Excellent technical rating when there was "no explanation for the comparable rankings in light of the multiple negative criticisms of Rowe's technical proposal." *See* Opposition at 17. The Source Selection Decision was based on the overall rating of the technical proposals, not on the relative improvements provided by the FPRs. The Source Selection Decision was clear: "Some offers improved more than others, and, though all are excellent proposals, some are stronger than others." *See* AR at 897. Ravens' proposal was found to have improved more than Rowe's (from sixth to third, AR at 895). That does not change the fact that the Agency believed that Rowe's proposal was better than that of Ravens. *Id.*

Ravens also claims that Rowe should not have received the same rating for past performance as did Ravens. *See* Opposition at 17-18. It claims that "Rowe's past performance questionnaires were clearly inferior to the Ravens Group . . . ." *See id.* at 18. This is not true. The

Government received two past performance questionnaires for Rowe – one gave Rowe a [redacted][2] and the other a [redacted] *See* AR at 913. The average of Rowe's past performance rating is *[redacted]([redacted]* divided by two). The Government also received two past performance questionnaires for Ravens. Both gave Ravens a *[redacted] ([redacted]).* *See id.* Therefore, Ravens averaged a rating of [redacted]. Rowe's average past performance rating of [redacted] was higher than Ravens' average rating of [redacted] Accordingly, it was not unreasonable for the Agency to conclude that Ravens and Rowe deserved the same rating for past performance. Ravens' Count II fails as a matter of law and fact.

**III. Ravens' Count III (DIA's Breach of the Implied Duty of Good Faith and Fair Dealing) should be dismissed pursuant to 12(b)(1) and (6) and is unsupported in the Record.**

Ravens continues to argue that DIA breached its implied duty of good faith and fair dealing when it awarded the Contract to Rowe. *See* Opposition at 23. Nowhere does Ravens point to any evidence of bad faith on the part of the Agency. Instead, Ravens make repeated conclusory statements that the Agency acted in bad faith. More is needed – Ravens

---

[2] Pursuant to the Protective Order dated April 20, 2007, Rowe has highlighted with bold and underlined font and asterisks what it believes is protected information. Information highlighted in this manner will be redacted in the public version that will be filed on June 13, 2007.

must present proof that the Agency acted in bad faith. Ravens' "proof" of DIA's bad faith is (1) DIA failed to tell Ravens that its total proposed price was provided to disappointed offerors in June 2005 and (2) DIA awarded the contract to Rowe after exercising Option Year II of Ravens' contract. Neither allegation provides proof of bad faith. Opposition at 25-26.

The fact that Ravens (claims it) was unaware that its total offered contract price was released to the disappointed offerors in June of 2005 is not proof of bad faith. *See* Opposition at 25. Ravens should have known that its award price would become public information once it was awarded a contract with the Government:

> There is a strong public interest in release of component and aggregate prices in Government contract awards, and [d]isclosure of prices charged the Government is a cost of doing business with the Government.

*AT&T Info. Sys., Inc. v. Gen. Servs. Admin.*, 627 F. Supp. 1396 (D.D.C. 1986); *see also* 48 C.F.R. § 15.506(d)(2) (stating that post-award debriefings ***must*** contain, at a minimum, the overall evaluated cost or price of the successful offeror). DIA's release of Ravens' total proposed price to the disappointed offerors should not have been a surprise to Ravens and does not support a viable cause of action. Indeed, consistent with the above legal authority, every experienced Government contractor should know that its contract price becomes public after award.

Second, the exercise of option years is a matter of contract administration and is governed by the CDA. *See* 31 U.S.C. § 605(a). To the extent Ravens argues that the termination for convenience of its contract was in bad faith, that claim should also be rejected. Like the exercise of option years, the Agency's termination for convenience is a matter of contract administration for which Ravens has not exhausted its administrative remedies.

**IV.Ravens' Count IV (Violation of Notification Requirements) should be dismissed pursuant to Rule 12(b)(6).**

Ravens' Count VI for DIA's alleged failure to provide timely notice of the NOSLOT Cleaning Services, Inc. ("NOSLOT") protest ***in 2005*** does not support a viable cause of action here. Ravens claims that had it received notice of NOSLOTS' protest, it "might have been able to negotiate a resolution with NOSLOT resulting in a withdrawal of the protest . . . ." *See* Opposition at 27. Ravens suffered no prejudice. Ravens was not prevented from and, in fact, did submit an FPR along with the other offerors in the competitive range.

Ravens claims it was harmed by the DIA's alleged failure to notify Ravens of further corrective action. Opposition at 28. Ravens cannot ignore the fact that the Agency did not conduct new discussions or accept additional FPRs after November 2005. Ravens also was aware that the

Agency had not yet made a final award of the Contract. And Ravens was allowed to continue to perform the contract and receive payment for its work while the Agency continued its corrective action. It is unclear how exactly Ravens was harmed by DIA's alleged failure to notify it of any continued corrective action under these circumstances.

Finally, Ravens again claims that DIA did not inform Ravens that its total proposed price was released to the disappointed offerors. Opposition at 27. As discussed in Section III above, this is not a valid protest ground.

**V. Ravens' Count V should be dismissed pursuant to Rule 12(b)(1) and (6) and is unsupported in the Record.**

*A. Ravens' allegation that DIA abused its discretion by not investigating Ravens' claim was not alleged in Ravens' Complaint.*

In its Opposition, Ravens elected to combine the discussion of Counts I and V of its Complaint. *See* Opposition at 2. And in its Opposition, Ravens now asserts under its cause of action for unfair business practices against Rowe that DIA abused its discretion by not investigating Ravens' claim that Rowe engaged in unfair business practices. Ravens' Counts I and V do not contain this contention. *See* Complaint at ¶¶ 34-39; 67-73. Instead, Count I of the Complaint alleged that Rowe obtained confidential and/or proprietary information about Ravens and that Rowe obtained a competitive advantage by using this

information. *See id.* at ¶¶ 34-39. Ravens' Count V repeated the allegations that Rowe engaged in unfair business practices. *See id.* at ¶¶ 67-72. And for Count V, Ravens' only mention of DIA was that "DIA's actions were prejudicial to The Ravens Group, and The Ravens Group respectfully requests that the Court declare that DIA's actions are in violation of law and regulation and enjoin DIA from terminating The Ravens Group's Contract, or from beginning or continuing performance of any other contract under Solicitation No. HHM402-05-R-0017." Complaint at ¶ 73. Ravens is now attempting to inject new allegations against DIA to cure Ravens' failure to assert a valid cause of action before this Court.

*B. Ravens' allegations of unfair business practices on their face fail to show any wrongdoing by Rowe.*

Ravens blindly asserted in its Complaint that it has presented "evidence" of purported unfair business practices by Rowe. This same "evidence" was rejected by both GAO and DIA as evidence of wrongdoing by Rowe. Ravens points to ***nothing*** in the Record to support its claims other than the same four statements it attached to its Complaint. Ravens has repeatedly ignored the inadequacy of its own evidence. For instance, Ravens now admits that Rowe did not improperly obtain information regarding Ravens' price proposal (*see* Opposition at 2) and that Ravens, in fact, was informed of DIA's release of its pricing information on June 16,

2006, ten months prior to filing this Complaint (*see* Opposition at 3 n.1). Yet despite this knowledge almost a year earlier, Ravens continued to mischaracterize its evidence to "suggest" that Rowe had improperly obtained and then used Ravens' pricing information to enhance Rowe's best and final proposal. *See* Complaint at ¶¶ 17, 19, 35, 69, 83. This is but one example of Ravens' mischaracterization of its own evidence, which, in reality, recounts Rowe's proper transition activities.

In its Opposition, Ravens claims that its "evidence" showed that Rowe enhanced its best and final proposal with information Rowe improperly obtained about Ravens. *See* Opposition at 9. But Ravens' allegations, including the false accusation regarding the pricing information, simply fail to support a finding that Rowe engaged in unfair business practices.

Ravens continues to draw unsupported conclusions by mischaracterizing the statements attached to its Complaint. Ravens claims that this "evidence," "detail[s] how [Mr. Rowe] had obtained confidential and proprietary information about The Ravens Group that he used to enhance the best and final proposal Rowe submitted resulting in the March 2006 contract award to Rowe." *See* Opposition at 9. That is not true. Nowhere in Milton Grant's statements does he recall Mr. Rowe admitting that he

used any information about Ravens to enhance Rowe's best and final proposal. *See* Complaint, Exhibits A & B. And nowhere in J. Jeff Robertson's April 6, 2006 statement does Mr. Robertson recall Mr. Rowe admitting that he used any information to enhance Rowe's best and final proposal. *See* Complaint, Exhibit C.

In particular, Ravens claims that "[i]n Mr. Grant's account of his discussion with Mr. Rowe, it is clear that Mr. Rowe is discussing information that he obtained regarding The Ravens Group during the period between NOSLOT's protest of The Ravens Group's original contract award and Rowe's submission of a revised proposal, which lead [sic] to Rowe's contract award on March 22, 2006." *See* Opposition at 11. Again, nowhere in either of Milton Grant's statements does he recall Mr. Rowe stating he had any information about Ravens prior to FPRs. In fact, Milton Grant's own statement proves that Rowe's interaction with Ravens employees was to obtain "help and information to ***transition the contract*** from The Ravens Group to Rowe Contracting Services." *See* Complaint, Exhibit B (emphasis added). And Ravens admitted in its April 6, 2006 protest to GAO that Rowe made the alleged "bribes" to Ravens' employees "during the pendency of the Ravens Group's protest," which was filed after

the FPRs were submitted. *See* AR at 184. Contrary to Ravens' argument, GAO did not misinterpret Mr. Grant's statement.

*C. DIA was under no further obligation to investigate Ravens' accusations that DIA knew to be incorrect.*

Ravens cites primarily to two Court of Federal Claims cases to support its argument that DIA was obligated to do something further under these circumstances. Both of these cases involve facts that are not present here. First, *Compliance Corporation* involved a disqualified bidder challenging its disqualification from the bidding process. *See Compliance Corp. v. United States*, 22 Cl. Ct. 193 (1990). The Court ultimately found that in that pre-award case, the Agency's action was not unreasonable when it disqualified a bidder who had appeared to receive information prior to award of the contract. *See id.* at 203-4. The Court also noted that the plaintiff failed to allege bad faith in the Agency's decision to disqualify and that "[s]uch a decision is a judgment call, and a government official is presumed to carry out his duties in good faith, absent strong proof to the contrary." *See id.* at 203. Here, DIA is entitled to the same presumption.

*NKF Engineering, Inc. v. United States* also involved a challenge by a disqualified bidder. 805 F.2d 372 (1986). Again, the question was whether the Agency acted reasonably in its decision to disqualify the offeror. In that case, after submitting an initial bid, the plaintiff contractor had hired a

government employee from the procuring agency for whom it was currently bidding for a contract. *See id.* at 373-74. The employee, in fact, had procurement sensitive information. The plaintiff contractor then submitted an FPR that drastically decreased its price causing it to become the lowest priced offeror. *See id.* The Agency determined that this was highly suspicious and the plaintiff was disqualified. Unlike in *NKF Engineering*, DIA was not confronted with any apparent impropriety or with a suspicious improvement in Rowe's proposals.

Here, DIA was simply under no obligation to investigate allegations that were clearly erroneous. For instance, DIA knew that Rowe properly was informed of Ravens' total proposed price in June 2005. AR at 233. Therefore, it was reasonable for DIA to determine that Ravens' allegation that Rowe improperly obtained Ravens' pricing information was baseless. Aside from the pricing information, DIA was aware that Ravens' other allegations also were incorrect. Ravens' remaining allegations of unfair business practices were that Rowe (1) enhanced its best and final proposal using Raven's work schedule; (2) bribed Ravens' employees in order to obtain confidential and/or proprietary information to enhance its best and final proposal; and (3) accessed and reviewed employee files in the JPAS

system. As with Ravens' allegations regarding its pricing information, DIA knew that these allegations of "unfair business practices" were unjustified.

First, DIA could quickly determine that Ravens' allegation that Rowe had improperly obtained and used Ravens' work schedule to enhance Rowe's best and final proposal was false. Contrary to J. Jeff Robertson's second statement dated June 1, 2006, stating that Mr. Rowe stated he did not have a work schedule in his initial proposal and admitted to enhancing Rowe's final proposal with information about Ravens' work schedule (*see* Complaint, Exhibit D), Rowe had in fact submitted a work schedule in its original proposal (AR at 612-616) and did not alter that work schedule in its best and final proposal (*see* AR 660). (Rowe's FPR included only replacement pages. The Table of Contents highlights the portions of Rowe's proposal that were changed. Rowe notes that the Work Schedule section is not highlighted and no replacement pages were provided to the Agency for that section.) DIA, therefore, was able to conclude, without further investigation, that this allegation was false.

Second, Milton Grant's second statement, recounting alleged bribes made to Ravens' employees also was clearly misguided. Rowe's proposal included recruiting and retention bonuses. AR at 642-643. It was quite clear that these alleged bribes actually were retention bonuses and were

entirely proper. And it was clear from the Milton Grant's statement itself that these "bribes," in fact, occurred after award and for the purpose of transition. Complaint, Exhibit B. This fact was further corroborated by Scott Rowe's sworn, notarized statement which was provided to DIA on April 28, 2006. *See* Sworn Statement from Scott Rowe to Guy Torres, Contracting Officer, Defense Intelligence Agency, dated April 28, 2006, attached hereto as Exhibit 1.

Ravens' remaining allegation regarding Rowe's access of the JPAS system also lacks merit. Rowe provided information to DIA about Rowe's access to the JPAS system. *See* Letter from Scott E. Rowe to Guy Torres, Contracting Officer, Virginia Contracting Activity, dated April 26, 2006, attached hereto as Exhibit 2; *see also* Exhibit 1. This activity was a proper and appropriate step in the transition process and did not suggest any wrongdoing by Rowe. In fact, Ravens itself admits that Rowe's access of the JPAS system did not affect the integrity of the procurement process because "Rowe did not use this information to enhance its proposal leading to its March 22, 2006, contract award." *See* Opposition at 13.

And finally, Ravens asserts a number of red herrings, none of which validate Ravens' allegations or would require further investigation by DIA. For instance, Ravens states that "Mr. Rowe boasted that he had obtained

information from Mrs. Verlene Cameron, the ***previous contractor's*** Project Manager." *See* Opposition at 10 (emphasis added). This has nothing to do with Ravens' confidential and/or proprietary information. Ravens claims that Rowe could only have obtained information about Ravens' technical proposal by looking at it or speaking with someone who had. *See* Opposition at 11. That may be true, but the facts available to DIA showed that Rowe did not obtain information about Ravens' technical proposal.

Further, Ravens has pointed to nothing in the Record, including the statements it has attached to its Complaint, that suggests that Rowe committed unfair business practices. Ravens' own evidence proved that the alleged "unfair business practices" occurred only after award and were for the purpose of transition. In fact, when it filed its Opposition, Ravens blatantly ignored evidence in the Record that Rowe did not change its work schedule in its FPR. Moreover, DIA had in its possession information, now disclosed in the Record, that Ravens' allegations were without merit. Therefore, DIA was under no obligation to further investigate Ravens' baseless allegations.

Ravens' new argument that DIA arbitrarily did not investigate Ravens' unfounded allegations also ignores the fact that those same allegations already were the subject of protests by Ravens at GAO. DIA was

contesting those protests and GAO was considering the same allegations. DIA had no obligation to respond to Ravens' letter repeating claims of unfair business practices when those identical claims already were the subject of a separate GAO protest.

As discussed above, a simple review of Rowe's proposals, which are disclosed in the Record, reveal that Ravens' allegations lacked merit. Ravens accused Rowe of using its work schedule to enhance Rowe's FPR. This is not true. Rowe's initial proposal contained a work schedule. AR at 612-616. Rowe's FPR, also contained in the Record, did not alter the work schedule provided in Rowe's initial proposal. See AR 660. Ravens accused Rowe of bribing its employees in order to obtain confidential and/or proprietary information. This is also not true. Rowe paid recruiting bonuses to new hires. Rowe's proposal offered recruiting and retention bonuses (AR at 642-643) which was considered a strength by the Agency. See AR at 852. And Scott Rowe's sworn statement that was provided to DIA is further evidence that Rowe did nothing improper. See Exhibit 1. That sworn statement merely corroborates what was already clear from Rowe's proposals – that all of Ravens' allegations of unfair business practices lacked merit. Ravens has not presented any other "evidence" or pointed to any "evidence" at all in the Record to support its allegations of

unfair business practices. Accordingly, Ravens' cause of action for unfair business practices fails as a matter of law and fact.

**VI. Ravens' Count VI (Initial Award to Ravens was Proper) should be dismissed pursuant to Rule 12(b)(6).**

Ravens continues to argue that award to Rowe is improper because NOSLOT did not have standing to protest the initial award to Ravens. Accepting Ravens allegation as true, it has no impact on DIA's ability to legally determine to reevaluate proposals and make a new selection decision without any protest. Ravens has not alleged any new information that changes this essential fact. Count VI should be dismissed for failure to state a claim for which relief can be granted.

**VII. Count VII should be dismissed pursuant to Rule 12(b)(1) and (6).**

Count VII (Totality of the Circumstances) is a compilation of Ravens' complaints in Counts I though VI. Ravens has not articulated a valid cause of action for Count VII and therefore it should be dismissed pursuant to Rule 12(b)(1) and (6) for the reasons discussed above.

## Conclusion

For the reasons discussed above, Intervenor Rowe requests that Ravens' Complaint be dismissed, in its entirety, with prejudice, or that judgment be entered against Ravens on any counts that are not dismissed.

Respectfully submitted,

/s/Kenneth B. Weckstein

Kenneth B. Weckstein
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W.
Suite 700
Washington, D.C. 20037
(202) 861-1860
(202) 861-3560 (fax)
kweckstein@ebglaw.com
Counsel for Intervenor

DATED: June 6, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of June, 2007 I caused a copy of the foregoing Intervenor Rowe Contracting Services, Inc.'s Reply and Opposition to Plaintiff's Cross-Motion for Judgment Upon the Record and Appendix to be filed electronically. I understand that notice will be sent by the Court's electronic filing system to the following persons who can access the filing through the Court's system:

Roger A. Hipp, Esquire
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
Room 12072
Washington, DC 20530
Telefax No. (202) 307-0992

Daryle A. Jordan, Esquire
Patrick Henry LLP
7619 Little River Turnpike
Suite 340
Annandale, VA 22003.

/s/Kenneth B. Weckstein
Kenneth B. Weckstein
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W.
Suite 700
Washington, D.C. 20037
(202) 861-1860
(202) 861-3560 (fax)
kweckstein@ebglaw.com
Counsel for Intervenor