IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BID PROTEST

| | | |
|---|---|---|
| THE RAVENS GROUP, INC., Plaintiff, | ) | |
| v. | ) | No. 07-243C (Judge Baskir) |
| THE UNITED STATES, Defendant, | ) | |
| and | ) | |
| ROWE CONTRACTING SERVICES, INC., Intervenor. | ) | |

DEFENDANT'S REPLY IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS, IN PART, AND FOR
JUDGMENT UPON THE ADMINISTRATIVE RECORD, AND
RESPONSE TO PLAINTIFF'S CROSS-MOTION
FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD
(REDACTED PUBLIC VERSION)

Defendant, the United States, respectfully submits this consolidated reply in support of its motion to dismiss, in part, and for judgment upon the administrative record, and response in opposition to plaintiff's cross-motion for judgment upon the administrative record.

# ARGUMENT

## I. The Court Should Dismiss Count I And Count V Of The Complaint, Or, In The Alternative, Grant Judgment Upon The Administrative Record In Favor Of The United States

In our initial brief, we established that count I and count V of the complaint, which are both subtitled "Unfair Business Practices," fail to state a claim against the Government within the Court's jurisdiction. We also established, in the alternative, that none of the allegations by plaintiff, The Ravens Group, Inc. ("Ravens") of unfair practices by intervenor, Rowe Contracting Services, Inc. ("Rowe"), even if true, could have affected the integrity of the bidding process, and therefore judgment upon the administrative record was appropriate.

Ravens asserts in its brief that the agency abused its discretion by failing to investigate allegations that Rowe engaged in unfair business practices. We do not dispute that a procuring agency may, in its discretion, investigate parties suspected of corrupting the bidding process. However, none of Ravens's allegations of misconduct by Rowe implicated the integrity of the bidding process.

Ravens's brief relies upon four allegations of unfair business practices, some of which were supposedly substantiated in sworn

statements that Ravens provided to the agency (Compl., Exs. A-D). The alleged unfair business practices consisted of: (1) learning the amount of Ravens's bid (Pl. Br. at 10); (2) obtaining unspecified "information" from an employee of the previous contractor (Id.); (3) learning that Ravens had submitted a schedule as part of its bid (Pl. Br. at 10-11); and (4) modifying security clearance information to reflect its intention to hire some of Ravens's employees. We will address each of the alleged unfair business practices in turn.

### A. Rowe Did Not Commit An Unfair Practice By Learning The Price Of Rowe's Bid

Counsel for Ravens has already stated, in a letter to Rowe's counsel, that Ravens "will no longer assert . . . in this litigation" that Rowe employed improper business practices to obtain Ravens's bid price.[1] It is unclear, then, why Ravens mentions this issue in its discussion of counts I and V. Pl. Br. at 10.

The agency disclosed the amount of Ravens's bid when it notified the unsuccessful bidders of the initial award to Ravens on July 27, 2005.

---

[1] May 23, 2007 Letter from Daryle A. Jordan to Kenneth B. Weckstein, Exhibit 1 to "Supplement To Intervenor Rowe Contracting Services, Inc.'s Rule 11 Motion For Sanctions," filed on May 25, 2007.

AR233.[2] 48 C.F.R. § 15.503(b)(1)(iv) expressly required the agency to disclose the awardee's bid price to the unsuccessful bidders. There can be no doubt, then, that Rowe acquired this information legally.

B. Ravens Did Not Allege An Unfair Business Practice Concerning Information Provided By The Former Contractor

The sworn statement of Milton Grant, Compl. Ex. A, alleges that Scott Rowe told him that the previous contractor's project manager, was "in [Mr. Rowe's] pocket feeding him information." This allegation that an employee of the previous contractor provided unspecified "information" at an unspecified time to Rowe was too vague to constitute an allegation of an unfair business practice.

C. Ravens Did Not Allege An Unfair Business Practice Concerning The Schedule In Its Bid

Ravens contends that Mr. Rowe stated, in conversations in March and April 2006,[3] that the only reason why Ravens had a received an initial award was that Ravens's original technical proposal included a work

---

[2] "AR___" refers to the administrative record.

[3] The June 1, 2006 statement of Jeff Robertson refers to a conversation that allegedly occured on April 3, 2005, instead of 2006. The reference to an April 3, 2005 conversation appears to be a typographical error, because the agency did not even solicit proposals until April 14, 2005. AR436.

schedule, whereas Rowe's original technical proposal did not. Compl. Exs. A, C, and D; Pl. Br. at 10. From this alleged statement by Mr. Rowe, Ravens speculates: "Rowe could have only obtained the information in two ways. Either [Mr. Rowe] saw the proposal or talked to someone who had." Pl. Br. at 11.

Assuming for the sake of argument that Mr. Rowe made the statements attributed to him, the statements do not support an inference that Rowe committed an unfair business practice. In a letter dated November 8, 2005, the agency advised Rowe that its proposal was within the competitive range, and that the agency would be conducting further discussions. AR654. The letter advised Rowe of certain weaknesses in its initial technical proposal, including the lack of a "schedule of arrival involving supplies, tools, and equipment and how they will be inventoried and maintained." Id. Rowe responded to the letter by submitting a revised technical proposal that included a schedule for inventory and maintenance of supplies. AR664.

There was no need for Rowe to engage in "industrial espionage" to determine that Ravens had submitted a schedule in its initial technical proposal. Rowe could easily have inferred that Ravens had provided a

schedule from the fact that the agency identified Rowe's failure to do so as a weakness of Rowe's proposal.

D. Ravens Did Not Allege An Unfair Business Practice Concerning Alleged Offers Of Payment To Ernest Fields And Wendy Scott

Ravens contends that Rowe committed an unfair business practice by offering $500 payments to Ernest Fields (a former Ravens employee) and Wendy Scott (a current Ravens employee) in March 2006. Compl. Ex. B; Pl. Br. at 12. This allegation, even if true, did not warrant investigation by the agency.

According to Milton Grant's statement, Rowe made the alleged offers of payment on March 28 and 29, 2006. Compl. Ex. B. At that time, Rowe believed that it would begin performance on April 1, 2006, pursuant to an award dated March 22, 2006.[4] Under those circumstances, it would not have been improper for Rowe to offer payments to a current and former employee of Ravens for assistance in the anticipated transition of the contract from Ravens to Rowe.

---

[4] On March 27, 2006, Ravens filed a GAO protest concerning the March 22, 2006 award. AR151-160. On April 3, 2006, the agency agreed to take corrective action by conducting a new source selection. Id.

### E. Ravens Did Not Allege An Unfair Business Practice In Connection With Security Clearances

Ravens alleged in one of its GAO briefs that Rowe had accessed the Joint Personnel Adjudication System and transferred the security clearances of Ravens's personnel to Rowe. AR193; Pl. Br. at 12-13. Rowe explained its conduct in a letter to the agency dated April 26, 2006. Ex. A, attached.[5] The March 22, 2006 award to Rowe allowed Rowe only nine days to prepare for performance on April 1, 2006. Ex. A at 1. As often happens when one contractor replaces another, Rowe intended to retain many employees of the incumbent, which was Ravens. Id. In order to do so, Rowe needed to verify the security clearances of Ravens's employees and convert their status to Rowe employees. Id. Rowe was in the process of verifying and converting Ravens's employees when it was advised of Ravens's GAO protest on March 29, 2006. Id. Rowe stopped the process after being advised of the protest. Id.

Rowe persuasively explained to the agency that it had not acted improperly with respect to the security clearance system. Therefore, the

[5] The April 26, 2006 letter was inadvertently omitted from the administrative record. We will file a separate motion to supplement the record.

agency did not abuse its discretion in declining to conduct a further investigation.

## II. The Court Should Dismiss Count II Of The Complaint For Failure To State A Claim Upon Which Relief Can Be Granted, Or, In The Alternative, Should Grant The United States Judgment Upon The Administrative Record

In count II of the complaint, Ravens alleges that the award to Rowe was irrational because the agency had, prior to taking corrective action, awarded the contract to Ravens, and exercised an option to continue that contract until the various bid protests to GAO were resolved. In our initial brief, we established that dismissal or judgment in favor of the Government was appropriate because the complaint does not allege a legally cognizable theory for overturning the contract award.

In response, Ravens alleges, for the first time, that the award to Rowe was irrational because the agency mis-evaluated Rowe’s technical proposal and past performance. In fact, however, the administrative record reveals nothing irregular concerning the agency’s evaluations.

### A. The Agency’s Technical Evaluation Was Not Irrational

With respect to the evaluation of technical proposals, the scope of the agency’s discretion is especially broad. Challenges regarding "the minutiae of the procurement process in such matters as technical ratings

. . . involve discretionary determinations of procurement officials that a court will not second guess." Beta Analytics Intern., Inc. v. United States, 67 Fed. Cl. 384, 395 (2005) (quoting E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (Fed. Cir. 1996)). "The evaluation of proposals for their technical excellence or quality is a process that often requires the special expertise of the procurement officials, and thus reviewing courts give the greatest deference possible to these determinations." Id. (citations omitted).

Ravens contends that the agency irrationally rated Rowe's revised technical proposal as "excellent." Pl. Br. 15-17. Ravens's argument is based upon the fact that the technical evaluation panel noted its "disappointment" with some aspects of the revised proposal. AR898. Ravens falls far short of proving that the agency's overall evaluation of Rowe's technical proposal was irrational.

The technical evaluation panel used five factors to analyze the technical proposals: (1) understanding and compliance; (2) soundness of approach; (3) program management controls; (4) past performance and relevant experience; and (5) key personnel. AR848-856. Using the specific criteria identified in the analysis, the panel rated Rowe as

"excellent" in each category. The source selection authority, Cheong Chon, concurred. AR910-911.

The fact that the technical evaluation panel expressed disappointment with some aspects of Rowe's revised proposal is insufficient to establish that the overall evaluation was irrational. The panel noted in its summary that Rowe's initial proposal was "excellent." AR898. The panel then stated that Rowe's revised proposal was "an improvement, but a disappointment." Id. That is, Rowe had improved upon an already excellent proposal, but the panel had hoped to find even more improvement. Rowe's proposal did not have to be perfect, nor did it have to satisfy every expectation of the panel, in order to receive an "excellent" rating. The agency rationally concluded that Rowe's proposal was excellent according to all of the identified criteria.

B. The Agency's Past Performance Evaluation Was Not Irrational

Ravens argues that the agency should not have given Rowe an "excellent" rating for past performance. Pl. Br. at 17-18. In fact, however, the agency's evaluation is consistent with the questionnaire responses that the agency received.

The questionnaire asked recipients to rank Rowe's performance

according to the following scale:

| | |
|---|---|
| 0 | Not applicable |
| 1 | Unsatisfactory |
| 2 | Poor |
| 3 | Fair |
| 4 | Good |
| 5 | Excellent |
| 6 | Outstanding |

One recipient ranked Rowe as “outstanding” in 22 categories and “excellent” in two categories, with an overall technical performance rating of “outstanding.” AR867-871. The other recipient ranked Rowe as “excellent” in nine categories, “good” in three categories, “fair” in one category, with an overall technical performance rating of “excellent.” AR872-875.

In summary, one of the questionnaire recipients rated Rowe as “outstanding” – better than “excellent” – in nearly every category. The other recipient ranked Rowe as “excellent” in most categories and technically “excellent” overall. Therefore, the source selection authority did not act irrationally when she determined that Rowe’s past performance was “excellent.” AR913.

C. The Agency’s Cost/Price Evaluation Was Not Irrational

Ravens’s arguments concerning the cost/price evaluation are

premised upon its arguments that the agency mis-evaluated Rowe's technical proposal and past performance. Pl. Br. at 18-20. We have demonstrated above that the agency did not err in rating Rowe "excellent" in both categories. Therefore, the agency could not have erred in determining that Rowe, whose bid price was **[REDACTED]**,[6] offered better value than Ravens, whose bid price was **[REDACTED]**. AR913.

## III. The Court Should Dismiss Count III Of The Complaint For Lack Of Jurisdiction, Or, In The Alternative, Should Grant Judgment Upon The Administrative Record In Favor Of The United States

We established in our initial brief that the Court should dismiss count III or grant judgment upon the administrative record in favor of the Government. Count III alleges a breach of the implied duty of good faith and fair dealing.

Ravens argues that the agency breached the implied duty by failing to notify Ravens that the agency had disclosed Ravens's bid price to unsuccessful bidders. Pl. Br. at 25-26. The agency was required by 48 C.F.R. § 15.503(b)(1)(iv) to disclose the price of Ravens's successful bid to the unsuccessful bidders. If Ravens was unaware of this regulatory

[6] Pursuant to the provisional protective order dated April 20, 2007, we have redacted what we believe to be protected information.

requirement, it was not the fault of the agency. Parties are presumed to be familiar with Federal regulations. See Bank Advance Corp. v. United States, 7 Cl. Ct. 784, 786 (1985).

Ravens also argues that it was bad faith for the agency to exercise an option to extend Ravens's existing contract, then subsequently make an award to Rowe. Pl. Br. at 26. Ravens devotes only two sentences to this argument and cites no authority, so it is not clear what Ravens is arguing.

We understand Ravens to be arguing that the agency breached its existing contract with Ravens by taking corrective action and making a new contract award. We established in our initial brief that the Court does not possess jurisdiction in a bid protest case to enjoin the termination of an existing contract. E.g., Data Monitor Systems, Inc. v. United States, 74 Fed. Cl. 66, 71 (2006). Ravens has not attempted to challenge or distinguish the cases cited in our initial brief. Therefore, the Court should dismiss count III or grant judgment upon the administrative record in favor of the United States.

## IV. The Court Should Grant Judgment Upon The Administrative Record In Favor Of The United States Upon Count IV Of The Complaint

Count IV of the complaint alleges that the agency failed to promptly notify Ravens upon three occasions: (1) the filing of NOSLOT Cleaning

Services, Inc. ("NOSLOT")'s GAO protest in June 2005; (2) the filing of NOSLOT's GAO protest in "September"; and (3) the contracting officer's decision to take corrective action on October 24, 2006. Ravens is not entitled to relief for any of these alleged violations.

In our initial brief, we established that Ravens could not have been prejudiced by untimely notice of NOSLOT's June 29, 2005 GAO bid protest. "[T]o prevail in a protest the protestor must show not only a significant error in the procurement process, but also that the error prejudiced it.' " Galen Med. Assocs. v. United States, 369 F.3d 1324, 1330 (Fed. Cir. 2004) (quoting Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996)). A protestor can establish prejudice by showing a "substantial chance" that it would have received the award but for errors in the bid process. Bannum, Inc. v. United States, 404 F.3d 1346, 1353 (Fed. Cir. 2005).

GAO dismissed NOSLOT's June 29, 2005 bid protest as premature. AR74. NOSLOT filed a second protest on July 12, 2005. AR78-111. In response the second protest, the agency overrode the automatic stay of the Competition in Contracting Act in order to allow Ravens to continue performing. AR111. On August 1, 2005, the agency decided to take

corrective action by re-evaluating all nine timely proposals. AR135.

Ravens speculates that had the agency provided timely notice of NOSLOT's protest in 2005, Ravens "might have been able to negotiate a resolution with NOSLOT resulting in a withdrawal of the protest." Pl. Br. at 27. Speculation cannot establish prejudice. See Asia Pacific Airlines v. United States, 68 Fed. Cl. 8, 24 (2005) ("This court must make its determination regarding prejudice based on evidence in the record, not mere speculation by the plaintiff that it might win if there were to be a re-solicitation.").

The agency's decision to take corrective action also resolved a GAO bid protest by another bidder, Olympus Building Services, Inc. ("Olympus"). AR1-13. Therefore, Ravens would have needed to negotiate resolutions with both NOSLOT and Olympus in 2005 in order to eliminate all challenges to the initial award. There is no reason to believe that Olympus would have been willing to settle with Ravens. As of April 27, 2007, Olympus was still pursing a GAO protest. AR1311-1319. Because Ravens has failed to establish prejudice in connection with the late notices, the Court should grant judgment upon the administrative record in favor of the United States for count IV.

## V. The Court Should Grant Judgment Upon The Administrative Record In Favor Or The United States Upon Count VI Because Ravens Cannot Show That The Agency Abused Its Discretion By Taking Corrective Action

In count VI, Ravens alleges that the agency should not have taken corrective action in response to the NOSLOT protest because NOSLOT was ineligible for contract award and therefore not an "interested party" pursuant to 31 U.S.C. § 3553(a). In our initial brief, we established that the agency acted within its broad discretion to take corrective action.

Ravens accurately notes that the agency subsequently determined that NOSLOT was ineligible for contract award because of an expired facility clearance. Pl. Br. at 29 (citing AR907). At the time of NOSLOT's protest, however, it appeared that NOSLOT was an interested party. AR80. Ravens appears to be arguing that if an agency subsequently determines that a corrective action was not necessary, the agency should rescind the corrective action. Ravens cites no authority for this proposition.

Moreover, as discussed in the preceding section, the agency's corrective action also resolved a simultaneous protest by Olympus. Even if one assumes for the sake of argument that the agency could have rescinded its corrective action after determining that NOSLOT was ineligible for an award, doing so would have revived the Olympus protest.

Therefore, Ravens cannot show that it was prejudiced by the agency's decision to take corrective action in response to the NOSLOT protest. Accordingly, the Court should grant judgment upon the administrative record in favor of the United States for count VI.

## VI. The Court Should Deny Ravens Any Relief For Count VII, Which Merely Summarizes Allegations From The Other Counts Of The Complaint

Count VII, subtitled "Totality of the Circumstances," does not include any new allegations or theories of liability. Instead, count VII merely summarizes the previous six counts of the complaint. There is no such thing as a "totality of the circumstances" bid protest. The cases cited by Ravens in support of count VII, Pl. Br. at 30, are not bid protest cases. Therefore, the Court should deny Ravens any relief pursuant to count VII for the same reasons that the Court should dismiss or grant judgment upon the administrative record in favor of the United States with respect to the other counts.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court: (1) dismiss counts I, II, III, V, and VII of the complaint; and (2) grant judgment upon the administrative record in favor of the United States upon

counts IV and VI of the complaint, and also grant judgment upon the administrative record in favor of the United States upon any of the other counts that survive our motion to dismiss.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

s/ Roger A. Hipp
ROGER A. HIPP
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L St., N.W.
Attn: Class. Unit - 8th Fl.
Washington, D.C. 20530
Tel.: (202) 305-3091

July 25, 2007

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2007, a copy of the foregoing "DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, IN PART, AND FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD, AND RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD (REDACTED PUBLIC VERSION)" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Roger A. Hipp